
U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AFM:TRP
F. #2025V02069

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 14, 2025

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Approximately 127,271 Bitcoin
Civil Docket No. 25-5745 (RPK)

Dear Judge Kovner:

      The government writes in opposition to the motions for extension of time filed in this civil forfeiture action by potential claimant Chen Zhi ("Chen"), ECF No. 6 (the "Chen Motion") and potential claimant Warp Data Technology Lao Sole Co. Ltd ("Warp Data"), ECF No. 9 (the "Warp Data Motion").

      Chen asks the Court to extend his deadline to file a claim from November 18, 2025 to January 19, 2026. In addition, both movants seek to extend the deadline for potential claimants who (unlike Chen) did not receive direct notice from December 15, 2025 to January 19, 2026.

      Neither has stated "good cause" for the Court to extend the claim filing deadlines under Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"). In particular, Chen does not need months upon months of "around the clock" cryptocurrency tracing services to decide whether he wishes to claim the Defendant Cryptocurrency that was in his possession, and his arguments on behalf of other potential claimants are inapposite. Warp Data, for its part, has a month left in which to make its claim and similarly cannot interpose claims on behalf of other potential claimants who have not yet emerged. Finally, Chen's argument that the deadlines for direct notice and publication claimants should be "harmonized" or "synched" flies in the face of Rule G, which expressly lays out a two-track scheme imposing strict, earlier deadlines on claimants who receive direct notice.

A. Procedural Background

On October 8, 2025, Chen was indicted by a grand jury sitting in the Eastern District of New York. *See United States v. Chen Zhi*, No. 25-cr-321 (RPK), ECF No. 1 (the "Indictment"). The Indictment alleges that Chen operated forced-labor scam compounds across Cambodia that engaged in cryptocurrency investment fraud schemes. Chen personally possessed images of tortured individuals, Indictment ¶ 40, records of discussions in which he directed beatings, *id.*, and ledgers reflecting bribes to public officials, *id.* ¶ 38. The Indictment also contained forfeiture allegations for the same 127,271 BTC that is at issue in this case. *Id.* ¶¶ 58-61. The disposition of this property would normally be determined through the post-verdict forfeiture phase of the criminal proceeding. *See* Fed. R. Crim. P. 32.2(b)(1), (5), (c)(1).

On October 14, 2025, the Indictment was unsealed. On that same day, the government filed a complaint in the above-captioned case (the "Complaint"), seeking to forfeit, as proceeds of fraud and property involved in money laundering, the Defendant Cryptocurrency—the private keys to which Chen personally maintained. Compl. ¶ 44 n.6; *see also* Indictment ¶ 53.

Pursuant to Rule G(4)(b)(i), the government sent direct notice of the forfeiture action to Chen on October 14, 2025 by mail and email. Chen's direct notice advised that the deadline for his claim is 35 days from the date of the Notice, *i.e.* November 18, 2025, consistent with Rule G(4)(b)(ii)(B). In addition, pursuant to Rule G(4)(a)(iv)(C), the government published notice of this action on its official forfeiture website, advising that the deadline to file claims for potential claimants who did *not* receive direct notice is 60 days from the first day of publication (October 16, 2025), *i.e.* December 15, 2025.[1]

Chen, who is aware of the Indictment, is in hiding abroad; his lawyers have declined to tell the government whether he will surrender or even where he is located. He nevertheless seeks to avail himself of this Court's jurisdiction, moving to extend his own deadline and that of all other potential claimants. Warp Data, a now-sanctioned[2] Prince Group affiliate, has filed its own ostensibly independent application seeking to adopt many of Chen's arguments.

B. Applicable Law

Rule G supplies the procedural framework applicable to civil forfeiture actions. A person who "asserts an interest" in the defendant property "may contest the forfeiture by filing a claim." Rule G(5)(a)(i). The substantive requirements for filing a claim are simple: subject to penalty of perjury, the claimant must "identify the specific property claimed" and "state the claimant's interest in the property." *Id.*

---

[1] Warp Data did not receive direct notice and so is subject to the December 15, 2025 deadline.

[2] *See* https://ofac.treasury.gov/recent-actions/20251014 (last accessed Nov. 14, 2025)

The deadlines for filing a claim vary according to whether a potential claimant received direct notice (like Chen) or notice by publication (like Warp Data). In either case, the deadlines imposed by Rule G apply "[u]nless the court for good cause sets a different time" and are intended to be enforced strictly. As the Second Circuit has stated, "a critical purpose of Rule G is that 'it forces claimants to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay.'" *United States v. $417,143.48*, 682 F. App'x 17, 19 (2d Cir. 2017) (quoting *United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007)). "That purpose would be thwarted if claimants came to view the strictures of Rule G as mere suggestions rather than as rules that will presumptively be enforced." *Id.* at 19-20; *see also, e.g.*, *$487,825.00*, 484 F.3d at 664-65 (explaining that "[t]he requirement that the claimant file a timely verified statement" is "no mere procedural technicality") (internal quotations omitted).

While the deadline may be extended for good cause, "the court's discretion is not unbounded," and "[t]he court should exercise its discretion to allow a late claim only if the goals underlying the time restriction and the verification requirement are not thwarted." *United States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1318 (10th Cir. 1994) (internal quotations omitted).

District courts throughout the United States have emphasized the same. *See, e.g.*, *United States v. $40,000 U.S. Currency*, 2022 WL 17814208 (S.D. Miss. Nov. 30, 2022) (collecting cases and requiring strict compliance with the filing deadlines); *United States v. $5,548.00 in U.S. Currency*, 2014 WL 4072096 (D. Neb. Aug. 14, 2014) (same); *United States v. Land and Buildings Located at 99 Sheffield Road*, 2006 WL 827809 (D.N.H. Mar. 29, 2006) (collecting cases).[3]

C. <u>Argument</u>

Rule G seeks to "force[] claimants to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay.'" *$417,143.48*, 682 F. App'x at 19 (internal quotation marks omitted). The deadlines in the Rule serve a practical purpose; they speedily bring to the table parties who may have an interest in defendant property, so that the court can efficiently identify and resolve competing claims.

What the Rule does *not* provide is precisely what Chen evidently seeks—an opportunity to tactically delay while identifying corporate alter egos that can be substituted for him in this litigation.

---

[3] Cases decided before 2007 cite to Supplemental Rule C(6), the predecessor to Rule G(5).

1. *Chen Does Not Need to Conduct Cryptocurrency Tracing to File a Claim*

As a starting point, Chen concededly has access to the facts that he needs in order to state a claim. The Complaint alleges that the private keys to the Defendant Cryptocurrency were in Chen's personal possession. *See* Compl. ¶ 44 n.6; s*ee generally SEC v. Payward, Inc.*, 2024 WL 4511499, at *1 (N.D. Cal. Aug. 23, 2024) ("Whoever controls the private key to a crypto asset, controls that asset."). Apparently agreeing, Chen explicitly states that he has "an interest in the seized Bitcoin." Chen Mot. 3.[4] As such, it should be a simple matter for him to "identify the specific property claimed" and "state [his] interest in the property." R. G(5)(a)(i).

Chen nonetheless asserts that he has "engaged forensic and cryptocurrency experts" to work "virtually around the clock" in order to "accurately trace the seized Bitcoin to its source," Chen Mot. 2-3, and to determine whether it is his. This assertion does not stand up to scrutiny. Chen does not need an army of experts to tell him whether he has an interest in the 127,271 Bitcoin whose private keys were in his possession. In any event, Chen's arguments about tracing go to the merits of this case, not to whether he will file a claim. Tracing in a civil forfeiture case is an issue for trial; it is not required to satisfy the government's pleading requirements set forth in Rule G(2)(f), nor does it bear on the potential claimant's ability to file a timely claim. *See United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015) (explaining that tracing is not an issue at pleading stage of a civil forfeiture case and "the Government is not required to prove its case simply to get in the courthouse door"); *Medina-Rodriguez v. United States*, 471 F. Supp.3d 465 (D.P.R. 2020) (explaining that, at the pleading stage, the government is not required to "demonstrate full tracing" of the funds in a bank account following *United States v. All Funds on Deposit in Dime Sav. Bank*, 255 F. Supp.2d 56, 68 (E.D.N.Y. 2003)).[5]

---

[4] The government did not, as Chen incorrectly suggests, *see* Chen Mot. 3, concede Chen's standing by providing him with direct notice. Rule G requires direct notice to any party "who *reasonably appears* to be a *potential* claimant," R. G(4)(b)(i) (emphases added), and the government routinely provides notice out of an abundance of caution to potential claimants like Chen even where, in the government's view, they either lack standing or cannot carry their affirmative burden of showing innocent ownership under 18 U.S.C. § 983(d), *see United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement)*, 69 F. Supp. 2d 36, 56 n.22 (D.D.C. 1999) (explaining that the government should be encouraged to send notice as widely as possible and, therefore, sending notice does not estop the government from moving to dismiss claim for lack of standing).

[5] Even if tracing were required to satisfy the pleading standard, that would properly be the subject of a motion to dismiss the complaint under Rule G(8)(b). Such a motion cannot be addressed by the Court until the claimant filing the motion has established standing, and he cannot establish standing until he files a verified claim. *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014) (holding that a claimant must establish standing before the court will consider the merits of any motion he may file, because the defendant in the forfeiture action is the *res*, not the claimant, and until the claimant establishes standing, "he is simply a stranger to the litigation"). Chen puts the cart before the horse in seeking time to conduct tracing before he files a claim.

As such, Chen's claimed need to conduct "round the clock" tracing is irrelevant to his decision whether to file a claim.

### 2. *"Synching" Claim Deadlines Is Not a Valid Reason for Delay*

Chen next argues that he needs an extension so that "other potential claimants" can file their own claims. More time is needed, he argues, so that his counsel can "work through complicated conflict and representation issues," and overcome delays caused by U.S. sanctions and the fact that some corporate agents have resigned or "refused to act" according to Chen's wishes. Chen Mot. 1, 4. But Chen cannot establish good cause for an extension of his own claim deadline based on the legal and administrative difficulties faced by other potential claimants. If these corporate entities wish to be heard, they must retain counsel and file a motion on their own behalf.

Perhaps recognizing that asking for an extension of his own deadline based on the concerns of other potential claimants is a *non sequitur*, Chen moves the Court for a general extension of the deadline "applicable to all other claimants." *Id.* at 4. Chen claims that doing so would "have the benefit of synching all claims deadlines" so that this litigation "can be as orderly as possible." *Id.*

But the mere desire to rewrite the claim deadlines codified in Rule G cannot constitute good cause. The framers of Rule G could have created a single, harmonized deadline that applies to all potential claimants, but they chose not to do so. Instead, they created two distinct tracks for notice and claims—one for direct notice, and one for publication notice. *Compare* R. G(4)(b)(ii)(B), G(5)(a)(ii)(A) (direct notice) *with* R. G(4)(a)(i)-(iv) (publication notice). Given the dual-track scheme set forth in Rule G, good cause must require more than an abstract desire to facilitate "orderly" litigation by merging the two deadlines.

### 3. *Rule G's Claim Deadline Promotes Efficiency and Discourages Gamesmanship*

While Chen lacks good cause for an extension, the government and the Court have a strong interest in enforcing Rule G's claim deadline. The parties in this case have an obligation to move efficiently toward a resolution on the merits—as provided under the Rules—in order to facilitate the lawful disposition of the criminal proceeds and the property involved in money laundering that constitutes the Defendant Cryptocurrency. *See, e.g.*, *$417,143.48*, 662 F. App'x at 19 (emphasizing that the purpose of claim deadline is the need to "resolve the dispute without delay"); *$487,825.00*, 484 F.3d at 664 (same).

Requiring all claimants to file their claims as the Rule contemplates will allow the government to commence discovery to determine which, if any, of the claimants have standing to contest the forfeiture. That is particularly important here, where Chen suggests that he and his counsel might bring claims for the same property through various Prince Group-affiliated corporations under his control. As the First Circuit observed in *United States v. Union Bank for Savings & Investment (Jordan)*, 487 F.3d 8 (1st Cir. 2007), establishing who is claiming what at the outset of a civil forfeiture case is particularly important when there are competing claims to the same assets. *Id.* at 24.

Chen could elect to file a claim asserting that he is the owner of the Defendant Cryptocurrency or asserting that he has an interest in a corporate entity and is filing a claim on its behalf. But as the court observed in *United States v. Funds in the Amount of $130,000 U.S. Currency*, 2021 WL 2433733 (N.D. Ill. June 15, 2021), the uncertainties that may arise in this situation "only reinforce the importance of filing timely verified claims that spell out, at the outset of the proceedings, the nature of a claimant's interest in the property." *Id.* at *4.

The court made the same point in *United States v. $40,000 U.S. Currency*, 2022 WL 17814208 (S.D. Miss. Nov. 30, 2022), which held that uncertainty as to whether the claimant "is filing in his individual capacity or on behalf of his business" had "caused months of confusion as to which party is the claimant in this matter"—a predicament that the filing deadline in Rule G(5)(a) was designed precisely to avoid—and that waiving the deadline after the fact to allow the claimant to clarify the situation "would thwart the purposes of the requirements of [the rule]." *Id.* at *2, *4.

The principal tool for testing a claimant's standing in a civil forfeiture case is through special interrogatories pursuant to Rule G(6). *See United States v. $284,950 in U.S. Currency*, 933 F.3d 971, 973 (8th Cir. 2019) (explaining that the purpose of special interrogatories is to test validity of claimant's claim and allow the government to obtain evidence to challenge standing in a motion for summary judgment). By its terms, however, Rule G(6) permits the service of special interrogatories only after a verified claim is filed. R. G(6)(a) ("The Government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time *after the claim is filed* and before discovery is closed.") (emphasis added).

Hence, to allow this threshold discovery process to begin, the Court must strictly enforce the filing deadline. As the court said in *United States v. $25,790 U.S. Currency*, 2010 WL 2671754 (D. Md. July 2, 2010), "[a] claim is an important safeguard against the filing of false or frivolous claims because the Government has an opportunity to know the nature of the interest in the property at the outset of the forfeiture action *and to conduct discovery, in accordance with Supplemental Rule G(6)*, to verify that interest." Id. at *3 (emphasis added).

It would be a waste of judicial resources either to delay the commencement of preliminary discovery or to commence it without a clear understanding of the nature of the interest asserted by a given corporate claimant. Accordingly, for this reason as well, the Court should require the timely filing of claims that will clearly identify which entities are filing claims to the defendant property, and the nature of the interests that they may be asserting.

The Chen Motion relies heavily on cases where courts have excused the noncompliance of petitioners who involuntarily failed to comply with Rule G's requirements, including because they were out of the country (*United States v. Khan*, 497 F.3d 204, 207 (2d Cir. 2007)), were "incarcerated and [] proceeding *pro se*" (*United States v. $175,918.00 In U.S. Currency*, 755 F. Supp. 630, 633 (S.D.N.Y. 1991)), or misunderstood the verification requirement (*United States v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 562 (7th Cir. 1988)). Chen Mot. 3. Chen cites no case that supports his position, where a movant asks the court to bend the rules prospectively, in large part for the benefit of other, hypothetical claimants.

Separately, Chen cites *United States v. $175,918.00 In U.S. Currency*, 755 F. Supp. 630, 633 (S.D.N.Y. 1991), for the proposition that extensions of time should be freely granted "where putative claimants have placed the court and the government on notice of their interest in the property and their intent to contest the forfeiture." Chen Mot. 3. That is true, but this is not such a case. Chen has *not* indicated that he intends to contest the forfeiture; instead, in communications with the government, his counsel has stated that he does not know whether he will file a claim. And in the instant motion, he indicates that his experts are seeking "to confirm the extent of Mr. Chen's interests before any claim is filed." *Id.*

In short, Chen is not seeking to be excused after the fact for accidental noncompliance. Rather, he is trying to push off prospectively a deadline of which his counsel is well aware. The reason for that is presumably strategic: pushing his deadline back will allow Chen to keep his powder dry, weighing whether his claim is best brought personally or through a corporate affiliate. The rules are designed to prevent such gamesmanship by forcing parties to state promptly whether they possess an interest in seized property.

### 4. *Warp Data's Extension Request Should Also Be Denied*

The government respectfully submits that the Court should also deny Warp Data's request to postpone its claim deadline from December 15, 2025 to January 19, 2026. Warp Data evidently has been able to quickly retain able counsel and file a detailed legal brief. It cannot credibly claim ignorance as to whether billions of dollars' worth of its cryptocurrency were in Chen's personal wallet. Much less can Warp Data credibly assert that it cannot figure this out over the course of the next 30 days.

To the extent that Warp Data's counsel seeks to assert the interests of "one or more additional potential claimants" whom they do not represent, this argument fails, much as Chen's similar argument does. Those potential claimants must file their own motions, and offer their own particularized arguments for consideration by the Court.

D. Conclusion

For all of these reasons, the requests of Chen and Warp Data to extend the deadline for filing verified claims pursuant to Rule G(5)(a) should be denied.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/
Alexander Mindlin
Tanisha R. Payne
Benjamin Weintraub
Rebecca Schuman
Andrew Reich
Assistant U.S. Attorneys
(718) 254-7000

Christopher B. Brown
Supervisory Trial Attorney
National Security Cyber Section
National Security Division