UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>      v.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>                         Defendant, *In Rem*. | Civil Action No. 1:2025-cv-05745 (RPK) |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM**

The O'Neill Claimants include over 3,000 family members and estate representatives of approximately 600 individuals who were victims of the September 11, 2001 terrorist attacks (the "9/11 Attacks"). The O'Neill Claimants have been awarded compensatory damages judgments totaling approximately $21,372,196,237 under 28 U.S.C. §§1605A and 1605B against the Islamic Republic of Iran ("Iran") for its role in sponsoring the 9/11 Attacks.[1]

The O'Neill Claimants just recently learned about this forfeiture action, and the allegations in *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 1:25-cv-07093 (E.D.N.Y.), and the claims of the *Fritz* plaintiffs recently set forth in this action, ECF No. 29, that the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ("Iran-China Group"). The O'Neill Claimants promptly sought leave to file this Notice upon learning of this information and this proceeding.

---

[1] A full list of the O'Neill Claimants and the amount of compensatory damages they have each been awarded against Iran is included as Exhibit 1 to the accompanying Verification of O'Neill Claimants' Claims.

As alleged by the *Fritz* plaintiffs, the Iran-China Group, doing business on the blockchain as Lubian.com or LuBian, is an agency or instrumentality of Iran that has materially supported Iran's efforts to evade U.S. sanctions by mining cryptocurrency in Iran. Through this scheme, sanctioned Iranian oil and gas are converted into electricity, which miners then use to generate cryptocurrency for the Iranian government to use outside the traditional global banking systems.

Based on the information newly revealed by the allegations in the *Fritz* Suit, under the Terrorism Risk Insurance Act ("TRIA"), Pub. L. 107-297, 116 Stat. 2322 (Nov. 26, 2002), codified at 28 U.S.C. § 1610 Note, the O'Neill Claimants have the right to attach and execute on the property of Iran and its agencies and instrumentalities, including the Iran-China Group, "[n]otwithstanding any other provision of law." Accordingly, the O'Neill Claimants hereby assert their superior interest in so much of the Defendant Cryptocurrency as may ultimately be necessary to satisfy the O'Neill Claimants' outstanding compensatory damages judgments against Iran, plus post-judgment interest thereon. TRIA makes the O'Neill Claimants' interest in the Defendant Cryptocurrency senior to any interest of the U.S. government.

In support of this Notice, the O'Neill Claimants state as follows:

### I.  O'Neill Claimants Have Been Awarded Approximately $21,415,277,028 in Compensatory Damages Against Iran.

1. The O'Neill Claimants are representatives, and surviving family members, of over 3,000 family members and estate representatives of approximately 600 individuals who were victims of the 9/11 Attacks.

2. Between 2019 and 2025, the U.S. District Court for the Southern District of New York determined that Iran was liable under 28 U.S.C. §§ 1605A and 1605B for causing the O'Neill Claimants' damages and entered a series of judgments awarding the O'Neill Claimants compensatory damages and pre-judgment interest.

4. The compensatory damages judgments awarded to the O'Neill Claimants for pain and suffering, economic loss, and solatium total approximately $21,372,196,237.

5. The name of each O'Neill Claimant, the amount of compensatory damages awarded to such claimant, and the date and ECF No. of such judgment is listed in Exhibit 1 to the accompanying Verification of O'Neill Claimants' Claims.

## II. The O'Neill Claimants Are Entitled To Enforce Their Iran Judgments

6. All of the above-referenced O'Neill Claimants' judgments have been served on Iran through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4).

7. To date, Iran has not paid any portion of any of the O'Neill Claimants' judgments, and not one of the O'Neill Claimants' judgments has been satisfied. The O'Neill Claimants' judgments continue to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

## III. The U.S. Government Commenced This Forfeiture Action Against the Defendant Cryptocurrency Without Disclosing Its Extensive Connections To Iran

8. On October 14, 2025, the U.S. government initiated the instant civil forfeiture action against approximately 127,271 Bitcoin once stored in the virtual-currency addresses identified in Attachment A of its complaint. *See* ECF 1 ("Forfeiture Compl.") at 1 & Attachment. On the same day, this Court issued an arrest warrant *in rem* for Defendant Cryptocurrency pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* ECF 3.

9. The U.S. government alleges the Defendant Cryptocurrency is subject to condemnation and forfeiture by the United States: (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an

3

attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956. *See* Forfeiture Compl. ¶ 2A. Specifically, the U.S. government alleges that the Defendant Cryptocurrency was involved in or derived from money-laundering operations conducted by Chen Zhi and Prince Holding Group, an alleged front for Chen's transnational criminal organization. *Id.* at ¶¶ 20, 38-43.

10. According to the U.S. government, one such scheme involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds." *Id*. ¶ 42.

11. The U.S. government describes "Lubian" as "a Chinese bitcoin mining operation that maintained bitcoin mining facilities across Asia, including in China and **Iran**." *Id.* ¶ 16(u) (emphasis added). However, the U.S. government did not include information that put the O'Neill Claimants on notice that the bitcoin mining operation involved conduct attributable to the Iranian Government, or otherwise that the O'Neill Claimants had a basis to claim any of the Defendant Cryptocurrency.

**IV. The O'Neill Claimants Recently Learned of the Relationship Between the Defendant Cryptocurrency and the Government of Iran**

12. Based on information the O'Neill Claimants only recently learned, it appears that the Defendant Cryptocurrency is directly tied to Iran, which was not clear from the forfeiture pleadings commenced by the U.S. government.

13. On December 26, 2025, other victims of Iran's state-sponsored terrorism commenced a separate action alleging that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist Iran's longstanding efforts to evade U.S. sanctions. *See*

4

DOCS-100880881.1

*Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 1:25-cv-07093 (E.D.N.Y.), Complaint for Execution and Turnover, ECF No. 1.

14. The *Fritz* plaintiffs in the *Fritz* action, along with another group of victims of Iran's state-sponsored terrorism (the "*Baxter* Victims"), filed Notices of Verified Claims in this action on December 29, 2025. *See* ECF Nos. 29 and 30.

15. Based on the information revealed in the allegations in the *Fritz* action and summarized by the Notices of Verified Claims filed by the other terrorism victim claimants in this action, the O'Neill Claimants now submit this Notice of Verified Claim. *See, generally*, ECF Nos. 29 and 30.

### V. Under TRIA, the O'Neill Claimants Have a Senior Interest in the Defendant Cryptocurrency

16. In the context of a forfeiture action, at this stage of the proceedings, the O'Neill Claimants need only assert that they have a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (citation omitted). "[W]hether [they] ultimately prove[ ] the existence of that interest is a question for a later stage in the proceedings." *Id*. (citation omitted). Here, based on the information alleged in the *Fritz* action and summarized by the Notices of Verified Claims filed by the other terrorism victim claimants in this action, the O'Neill Claimants have far more than a "facially colorable interest" in the Defendant Cryptocurrency.

17. The O'Neill Claimants are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. As has now been alleged, because the Iran-China Group was or is an agent or instrumentality of Iran, TRIA entitles the O'Neill Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the O'Neill Claimants have a possessory interest in the Defendant Cryptocurrency, which permits them to bring the claims asserted here.

18. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note. TRIA's cornerstone is the statute's broad "notwithstanding" clause, which aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). The notwithstanding clause "mak[es] plain that the force of the [statute] extends everywhere" and "'supersede[s] all other laws.'" *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (citation omitted). Accordingly, because it expressly overrides "conflict[ing] laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

19. Because the O'Neill Claimants satisfy the requirements of TRIA, their interest in the Defendant Cryptocurrency necessarily is superior to the claims of the U.S. government, as well as all other non-TRIA claimants, in this forfeiture action. First, as explained above, the O'Neill Claimants hold judgments for compensatory damages against Iran based on an act of terrorism under 28 U.S.C. §§ 1605A and 1605B. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. *See* TRIA § 201(d)(4); Executive Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012). Third, as alleged in the *Fritz* action, the Iran-China Group operated as Iran's agency or instrumentality by materially helping Iran avoiding U.S. sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction and behest. *Fritz* Suit, ECF 70, Plaintiffs' Memorandum of Law in Support of Motion for Attachment, at 13-17 (Dec. 28,

6

2025); *see Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016). Fourth, under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act. TRIA § 201(d)(2)(A).

20. The U.S. government has used its authority under that statute to "block" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 120. As a result, if the Iran-China Group is an agency or instrumentality of Iran, all property of the Iran-China Group qualifies as a blocked asset under TRIA. *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022). Because the Defendant Cryptocurrency is property of the Iran-China Group, it is therefore blocked and subject to execution by the O'Neill Claimants under TRIA.

Pursuant to 28 U.S.C. § 983(a) and Rule G, the O'Neill Claimants hereby assert a protective, prophylactic claim against such amount of the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—as may ultimately be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran, plus post-judgment interest, based on the date the Defendant Cryptocurrency is valued for purposes of judgment. The O'Neill Claimants' claim is senior to the U.S. government's claim. Notwithstanding the U.S. government's forfeiture efforts, the O'Neill Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency.

Dated: January 19, 2026

Respectfully submitted,

*/s/ Jerry S. Goldman*

Jerry S. Goldman, Esq.
Bruce Strong, Esq.
Ethan Greenberg, Esq.
Samuel Braverman, Esq.
Alexander Greene, Esq.
Amy Weiss, Esq.
ANDERSON KILL P.C.
7 Times Square, 15th Floor
New York, NY 10036
Telephone: (212) 278-1000
jgoldman@andersonkill.com
bstrong@andersonkill.com
egreenberg@andersonkill.com
sbraverman@andersonkill.com
agreene@andersonkill.com
aweiss@andersonkill.com

*Attorneys for O'Neill Claimants*