UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>　　　　　　　　Defendants *In Rem*. | Civil Action No. 1:25-cv-05745-RPK<br><br>**MOTION FOR LEAVE<br>TO FILE VERIFIED CLAIM** |

Claimant Lawrence D. Van Dyn Hoven, by and through his undersigned counsel, respectfully submits this motion for leave to file a verified claim pursuant to Rule G(5)(a)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, 18 U.S.C. § 983(a)(2), and the Court's inherent equitable authority.  Mr. Van Dyn Hoven's proposed verified claim ("Verified Claim" or "Claim") is attached hereto.

**Preliminary Statement**

1.　　Mr. Van Dyn Hoven—a 70-year-old retiree residing in Wisconsin—is the victim of a complex, online cryptocurrency investment fraud that occurred in 2022 and resulted in over $2,500,000—most of his life savings—being wrongfully stolen from him.

2.　　The fraud, which involved social engineering and theft of cryptocurrency by one or more individuals believed to be located in Southeast Asia (the "Scammers"), exactly matches the "pig-butchering" scams alleged in the government's indictment against Chen Zhi (25-cv-132) (the "Zhi Indictment") and the complaint in this civil forfeiture action ("Complaint").  Upon

1

information and belief, Mr. Van Dyn Hoven is one of the victims of the scams alleged in the Zhi Indictment and the Complaint.

3. Based on the information set forth in the Verified Claim, Mr. Van Dyn Hoven has every reason to believe that at least some portion of the approximately 127,271 bitcoin ("BTC") (the "Defendant Cryptocurrency") is traceable to and constitutes proceeds of the cryptocurrency stolen from him (the "Stolen Cryptocurrency"), such that he has in interest the Defendant Cryptocurrency. *See, e.g.*, *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 245 (2d Cir. 2011) (recognizing that under state law of "constructive trust," victims to a crime may have a legal interest in proceeds of property stolen from them); *U.S. v. Watts*, 786 F.3d 152 (2d Cir. 2015) (recognizing the same under New York law).

4. Despite engaging several asset recovery firms to perform tracing analyses, and despite repeatedly asking the federal government for assistance, Mr. Van Dyn Hoven has been unable to locate the Stolen Cryptocurrency or the proceeds therefrom. Given his limited resources and the limited time available to file a claim under the applicable rules, Mr. Van Dyn Hoven therefore seeks leave to file the Verified Claim with the reasonable expectation that the evidence will eventually show that some portion of the Defendant Cryptocurrency is traceable to and constitutes proceeds of the Stolen Cryptocurrency.

5. As set forth below, there is good cause to permit Mr. Van Dyn Hoven to file his Verified Claim after the deadline.

## Background

6. The factual background of Mr. Van Dyn Hoven's claim is set forth in greater detail in the accompanying Verified Claim and is summarized here.

### A. The Underlying Fraud.

7. Mr. Van Dyn Hoven retired in late 2021 after nearly 35 years in the insurance industry. Claim ¶ 11.

8. In February 2022, Mr. Van Dyn Hoven was contacted online by one of the Scammers. Over several subsequent communications, the Scammers, who claimed to be "crypto investment advisors," represented that they would invest and manage Mr. Van Dyn Hoven's assets for him, ultimately returning the proceeds (as well as the underlying principal funds) to him. *Id.* ¶ 12.

9. Over the course of several months in spring 2022, the Scammers convinced and directed Mr. Van Dyn Hoven to transfer more than $2,500,000 in fiat currency from his bank account to an account at Coinbase (another cryptocurrency exchange), convert the funds to cryptocurrency (primarily USDT as well as ETH and BTC), and then transfer the cryptocurrency to various wallets held by the Scammers. *Id.* ¶¶ 13–14, Ex. A.

10. Despite many requests, the Scammers never returned any of the funds they misappropriated from Mr. Van Dyn Hoven and cut off all contact with him. To date, and despite significant effort, Mr. Van Dyn Hoven has not recovered any of the more than $2.5 million the Fraudsters stole from him. *Id.* ¶¶ 13–16.

### B. Investigative Efforts and Attempts at Recovery:

11. Since 2022, Mr. Van Dyn Hoven has taken numerous steps to try and recover the Stolen Cryptocurrency, including by seeking assistance from the government. Those steps are detailed in the accompanying Verified Claim.

12. Recently, in July 2025, Mr. Van Dyn Hoven commissioned additional investigation by Rexxfield Cybercrime Investigations ("Rexxfield"), which prepared an open source intelligence report (the "Rexxfield OSINT Report").

13. According to the Rexxfield OSINT Report, at least one of the Scammers is located in Southeast Asia. *Id*. ¶ 24.

14. On October 30, 2025, Mr. Van Dyn Hoven shared the Rexxfield OSINT Report with the FBI Special Agent with whom he had previously interacted, who subsequently shared it with the IRS Special Agent with whom he had previously interacted.

15. In response, the IRS Special Agent described how the fraud on Mr. Van Dyn Hoven by the Scammer is likely part of the "pig butchering" investment frauds operating in Southeast Asia and China. In other words, it perfectly matches the allegations in the Complaint and the Zhi Indictment.

16. Nevertheless, neither Special Agent advised Mr. Van Dyn Hoven to file a claim in this action. On the contrary, the agent stated: "I don't see any actionable leads which would reasonably be expected to lead . . . to the recovery of his funds."

17. On November 25, 2025, the Rexxfield representative with whom Mr. Van Dyn Hoven has been dealing told him what he described as "good news": that, although he could not say with 100% certainty, he believed that the proceeds of Mr. Van Dyn Hoven's Stolen Cryptocurrency was with the Prince Group and was part of the seizure. He did not elaborate. Nor did he advise Mr. Van Dyn Hoven that he should consider filing a clam in this action.

18. Unfortunately, the representative at Rexxfield who performed the underlying analysis has recently left Rexxfield and was therefore not available to provide further information in preparing this claim at this time concerning the basis for his belief that proceeds of the Stolen

Cryptocurrency was part of the seizure. *Id.* ¶ 30. But his statement nevertheless gives Mr. Van Dyn Hoven a reasonable basis for believing that this is the case and can be shown in due course.

## Legal Standard and Argument

### I. The Court Should Allow Late Filing of Mr. Van Dyn Hoven's Verified Claim.

19. Under Supplemental Rule G(5)(a)(ii), the Court may allow the late filing of a claim for "good cause." As the Court correctly observed in its December 11, 2025 Order, a finding of good cause is within the Court's discretion. *Cf. United States v. $417,143.48*, 682 F. App'x 17, 19 (2d Cir. 2017) (noting that a court has "'discretion in appropriate circumstances to depart from the strict compliance standard' embodied by Rule G(5)" (citation omitted)).

20. "Although *in rem* forfeiture actions are governed by Supplemental Rule G . . . , they are generally buttressed by the Federal Rules of Civil Procedure." *United States v. $11,585.00 & $24,077.00 in United States Currency*, No. 518CV810GLSDEP, 2019 WL 1877295, at *2 n. 3 (N.D.N.Y. Apr. 26, 2019) (citation omitted) "As such, although Supp. R. G(5)(a)(ii) refers to 'good cause,' courts within the Second Circuit generally permit the filing of an untimely claim if the would-be claimant demonstrates "excusable neglect" pursuant to Fed. R. Civ. P. 6(b)(1)(B). *Id.*

21. The Second Circuit, following the United States Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), has described "'excusable neglect' as an 'elastic concept.'" *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir.2003).

22. At its core, the concept is "'an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395). "Factors to be considered in evaluating excusable neglect include '[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason

for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" *Id.*

23. Here, balancing the relevant factors, there is good cause to permit Mr. Van Dyn Hoven to file the late Verified Claim.

24. First, the government is not prejudiced by this three week delay. Having learned of the claims deadline late last week, Mr. Van Dyn Hoven has hustled to file his claim within the January 19, 2026 deadline that was extended to certain other claimants, including Chen Zhi and Warp Data, pursuant to the Court's December 11, 2025 Order. Thus, Mr. Van Dyn Hoven's late claim should have no substantial impact on the timing of this case at this point.

25. Second, Mr. Van Dyn Hoven has acted in good faith. He did not receive any direct notice of this action, nor did he see any published notice. He was never informed of any requirement to file a claim in this forfeiture proceeding. Meanwhile, Mr. Van Dyn Hoven has repeatedly sought assistance from the government. But even after the government commenced this forfeiture action, the FBI and IRS Special Agents with whom Mr. Van Hoven was interacting never told him he should file a claim. On the contrary, they told him there was no "actionable lead which would reasonably be expected to lead . . . to the recovery of his funds."

26. Under the circumstances, Mr. Van Dyn Hoven respectfully submits that there is good cause to allow the late filing.

## Conclusion

27. For the foregoing reasons, Mr. Van Dyn Hoven respectfully requests that the Court permit the late filing of the attached Verified Claim.

Dated: January 19, 2026 	Respectfully submitted,

                                                **SIMONSON LAW PLLC**

                                                *s/Leif T. Simonson*
                                                Leif T. Simonson
                                                Telephone: +1 612 448 3330
                                                Email: Leif.Simonson@simonsonlaw.com

                                                Minnesota Office Address:
                                                400 South Fourth Street, Suite 401
                                                Minneapolis, Minnesota 55415

                                                New York Office Address:
                                                95 Allens Creek Road, Building 1, Suite 271
                                                Rochester, New York 14618

                                                *Counsel for Lawrence D. Van Dyn Hoven*

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2026, I electronically filed the foregoing Verified Claim of Interest via CM/ECF for the United States District Court for the Eastern District of New York and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the government, in the above-captioned matter.

Dated:  January 19, 2026                            */s/ Leif T. Simonson*
                                                    Leif T. Simonson