**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>                Defendants *In Rem*. | Civil Action No. 1:25-cv-05745-RPK |

### Verified Claim of Lawrence D. Van Dyn Hoven

Lawrence D. Van Dyn Hoven, pursuant to 28 U.S.C. § 1746, hereby declares under the penalties of perjury that the following is true and correct:

1. I am a 70-year-old citizen of the United States of America and reside in Wisconsin.

2. I am not an attorney and have no legal training.

3. In spring of 2022, I was the victim of a complex, online cryptocurrency investment fraud. As a result of the fraud, I lost over $2,500,000, which constituted most of my life and retirement savings.

4. The fraud was committed by one or more individuals that I have come to understand were located in Southeast Asia. The fraud exactly matches the description of the "pig-butchering" scams alleged in the government's indictment against Chen Zhi (25-cv-132) and the complaint in this action. I believe I was one of the victims of such scams.

1

5. I am submitting this Verified Claim in this proceeding because, for reasons discussed herein, I have reason to believe that some portion of the approximately 127,271 bitcoin ("BTC") at issue in this case is traceable to and constitute proceeds of the cryptocurrency stolen from me, such that I have an interest in such property.

6. I never received from the government any notice of this case. I also did not see and was not otherwise made aware of any published notice of this case.

7. Despite repeatedly asking the government for assistance in recovering my stolen cryptocurrency, I was not made aware of any deadline to file a claim in this proceeding until late last week. On the contrary, as recently as October 2025, I was told by special agents of the Federal Bureau of Investigation ("FBI") and the Internal Revenue Service ("IRS") that they did not "see any actionable leads which would reasonably be expected to lead . . . to the recovery of [my] funds."

8. It was not until late last week that I was advised that I should consider filing a claim in this action based on the understanding that some portion of the seized BTC are likely traceable to and constitute proceeds of the cryptocurrency stolen from me.

9. I understand that the deadline to file third party claims was December 29, 2025.

10. I humbly ask that the Court permit me file this late Verified Claim for the reasons to discussed herein.

**The Underlying Fraud:**

11. I retired in late 2021 after nearly 35 years in the insurance industry. By early 2022, I was concerned about the negative impact the state of the domestic and global economies (and associated market volatility) were having on the funds I had saved for retirement.

2

12. In approximately February of 2022, I was contacted online by an individual calling herself "Aleen," who presented herself as an experienced "crypto investment advisor" working for (or with) Coinbase—a reputable company that operates a large cryptocurrency exchange—and other crypto investment advisors (collectively, the "Scammers"). Over the course of several weeks in early 2022, the Scammers made numerous representations and promises to me about the nature of the investment services they could provide me, the returns I could expect, and the risks (mostly the lack thereof) involved with these services and investments. I would subsequently learn that nearly all the Scammers' representations (including their affiliation with Coinbase) and promises were untrue.

13. After weeks of extensive conversations with the Scammers, I decided to invest with/through them. The funds I "invested" constituted a significant portion of my overall life and retirement savings.

14. From March into May of 2022, at the direction of the Scammers, I transferred approximately $2,500,000 in fiat currency from a bank account I held at Associated Bank to an account I held at/with Coinbase. I then converted nearly all my fiat funds to cryptocurrency (primarily USDT, as well as ETH and BTC) (collectively the "Stolen Cryptocurrency") and transferred nearly all of the Stolen Cryptocurrency to wallets held by the Scammers. A true and correct copy of the transaction log from my Coinbase account during this time is attached hereto as Exhibit A.

15. In May of 2022, after the aforementioned transactions were completed, Associated Bank froze my account. When I contacted Associated regarding the freeze, I was told they suspected I was the victim of a scam/fraud. I quickly investigated, including by confronting the Scammers with this allegation. I received no meaningful response from the Scammers. This lack

of response, combined with other information I then came to learn, caused me to realize I had been defrauded. The Scammers never invested or otherwise managed the Stolen Cryptocurrency I transferred to them as they promised they would. Instead, they stole it and, upon information and belief, used much of it to enrich themselves.

16. None of the Stolen Cryptocurrency I sent the Scammers has been returned to me, nor have I received any "proceeds" or "earnings" from these funds as the Scammers promised I would. Since confronting the Scammers with their deception in May of 2022, I have had no contact with them, nor received any funds of any kind from them.

**Investigative Efforts and Initial Attempts at Recovery:**

17. I have taken numerous steps to try and recover the Stolen Cryptocurrency, including by seeking assistance from the government.

18. Starting in approximately August of 2022, I engaged an asset recovery firm called "PayBack." PayBack and I contacted international law enforcement and regulatory authorities in an attempt to bring the Scammers to justice and recover my funds. However, to date, our efforts have been unsuccessful. I have not recovered any of the funds the Scammers illegally took from me.

19. In February 2023, I was contacted by special agents with the FBI and IRS. I provided them with the evidence I have and will continue to assist their investigations however I can.

20. In March 2023, I submitted an FBI Internet Crime Complaint Center (IC3) claim.

21. However, by late 2023, law enforcement indicated to me that they could or would not further investigate the fraud committed against me due to resource limitations. This was not because they do not believe I was defrauded (they do) but rather due to resource limitations.

4

22. In July 2024, I commissioned another crypto tracing report by CNC Intelligence Inc. A true and correct copy of the tracing and intelligence report from CNC is attached hereto as Exhibit B.

23. In July 2025, I commissioned additional investigation by Rexxfield Cybercrime Investigations ("Rexxfield"). Rexxfield performed a further tracing report, attached as Exhibit C. Rexxfield also prepared an open source intelligence report (the "Rexxfield OSINT Report").

24. According to the Rexxfield OSINT Report, at least one of the Scammers is located in Southeast Asia.

25. In October 2025, I learned of the government's seizure of the $15 billion in Bitcoin from the Prince Group. I subsequently asked Rexxfield whether the Scammer that Rexxfield had identified in the Rexxfield OSINT Report was connected to the Prince Group.

26. On October 30, 2025, I shared the Rexxfield OSINT Report with the FBI special agent with whom I had previously interacted, who subsequently shared it with the IRS special agent with whom I had previously interacted. A true and correct copy of the response from the representatives (with names redacted) is attached as Exhibit D.

27. In response, the IRS Special Agent stated:

> Thank you for forwarding this report. The report identifies an individual apparently based in China who registered one of the websites which was used to defraud Mr. Van Dyn Hoven. It is an interesting and well-written Open Source Intelligence report that draws the link between the website used to defraud Mr. Van Dyn Hoven, additional fraud-related websites, and then to an info stealer that was analyzed by Rexxfield. The info stealer analysis showed links to subjects in Thailand and Laos along with a few Gmail, Microsoft, and social media accounts. This would be consistent with the crypto analysis I did back in 2023, as it appeared that the crypto accounts where the funds were ultimately sent to were also linked to Thai, Laotian, Chinese, and Vietnamese nationals.

> Unfortunately, however, I don't see any actionable leads which would reasonably be expected to lead to a prosecution for what happened to Mr. Van Dyn Hoven nor to the recovery of his funds. Many of the subpoena recommendations are for overseas entities, including ones in China, which we would have difficulty fulfilling. There are some Google, Microsoft, and Facebook subpoena recommendations, but I believe they would have minimal value in identifying the parties specifically responsible for Mr. Van Dyn Hoven's loss, nor would they develop evidence of culpability or intent as it related specifically to Mr. Van Dyn Hoven's fraud.
>
> The report appears to confirm that the organization that targeted Mr. Van Dyn Hoven was likely a Chinese organized criminal enterprise operating within SE Asia and China. Based on the research I've completed and our knowledge of these types of groups, Mr. Van Dyn Hoven's funds were likely transferred off the blockchain to entities in China sometime in 2022. In similar "pig butchering" crypto-investment frauds, the parties who have direct contact with the victims, and who set up the accounts to receive the funds from victims, are many times the victims of human trafficking themselves. Those ultimately responsible for running the criminal enterprise and controlling these activities well-insulated from the "victim facing" aspects of the fraud.

The FBI Special Agent stated she concurred.

28. Neither Special Agent informed me I should consider filing a claim in this action.

29. On November 25, 2025, the Rexxfield representative with whom I have been dealing called to tell me what he described as "good news": that, although he could not say with 100% certainty, he believed that the proceeds of my Stolen Cryptocurrency was with the Prince Group and was part of the seizure. He did not elaborate. Nor did he advise me that I should consider filing a clam in this action.

30. I understand that the representative at Rexxfield who performed the underlying analysis has recently left Rexxfield and was therefore not available to provide further information in preparing this claim at this time concerning the basis for his belief that proceeds of my Stolen Cryptocurrency was part of the seizure.

I declare under penalty of perjury (pursuant to 28 U.S.C. § 1746) that the foregoing is true and correct to the best of my knowledge and belief.

Date:   January 19, 2026

Lawrence D. Van Dyn Hoven