UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: 
UNITED STATES OF AMERICA, :
:
                      Plaintiff, :
:
      -against- : No. 1:25-cv-05745-RPK
:
APPROXIMATELY 127,271 BITCOIN ("BTC") :
PREVIOUSLY STORED AT THE VIRTUAL :
CURRENCY ADDRESSES LISTED IN :
ATTACHMENT A, AND ALL PROCEEDS :
TRACEABLE THERETO, :
:
                Defendants *In Rem*. :
:
---------------------------------------------------------------x

**VERIFIED CLAIM OF THE *HAVLISH*, *HOGLAN*, *RAY*, AND *MAHER* JUDGMENT CREDITORS PURSUANT TO SUPPLEMENTAL RULE G(5)**

The *Havlish* Judgment Creditors, *Hoglan* Judgment Creditors, *Ray* Judgment Creditors, and *Maher* Judgment Creditors (collectively, "Havlish Claimants") are judgment creditors of the Islamic Republic of Iran, various of its political subdivisions, and certain of its agencies and instrumentalities (collectively, "Iranian Judgment Debtors" or Iran). Collectively, the Havlish Claimants hold outstanding final judgments for compensatory damages in an amount exceeding $6 billion. Their damages were caused by Iran, through its participation in, and its direct provision of material support for, the terrorist attacks of September 11, 2001. At least three of these Iranian Judgment Debtors, specifically the Islamic Republic of Iran, Islamic Revolutionary Guard Corps, and the Central Bank of Iran a/k/a Bank Markazi, play significant roles in funding Iran's international terrorism syndicate.

1

The Havlish Claimants recently learned from the allegations in a separate proceeding, *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-cv-07093 (E.D.N.Y.) ("*Fritz* Suit"), and from the Notice of Claim filed by the Fritz Claimants in this proceeding, that the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ("Iran-China Group"). Upon learning this information, the Havlish Claimants promptly sought leave to file this Notice.

As alleged in the *Fritz* Suit, the Iran-China Group, doing business on the blockchain as Lubian.com or LuBian, is an agency or instrumentality of Iran within the meaning of Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"). *Pub. L. No. 107-297, § 201, 116 Stat. 2322, 2337-40, as amended, Pub. L. No. 112-158, 126 Stat. 1214, 1260 (codified at 28 U.S.C. § 1610 note).* Iran has used the Iran-China Group to evade U.S. sanctions by mining cryptocurrency in Iran. Through this scheme, sanctioned Iranian oil and gas are converted into electricity, which miners then use to generate cryptocurrency for the Iranian government. The Iran-China Group's activities enabled Iran to transact business outside traditional global banking systems, enabling Iran to evade U.S. sanctions and fund its worldwide terrorism network.

Currently, the United States is in possession of approximately 127,271 Bitcoin ("BTC") belonging to the Iran-China Group. The BTC is blocked in an FBI BTC wallet.

TRIA expressly authorizes the Havlish Claimants to attach and execute on any blocked asset of any agency or instrumentality of Iran – including the Iran-China Group – "notwithstanding any other provision of law." Consequently, TRIA gives, and the Havlish Claimants assert, a superior interest in all of the Defendant Cryptocurrency, or at least so much of it as may ultimately be necessary to satisfy their outstanding compensatory damages, plus pre- and post-judgment interest. The Havlish Claimants' right to execute on the Defendant Cryptocurrency is statutorily superior to any interest the government or any other non-TRIA claimant might assert.

The Havlish Claimants submit this Verified Claim pursuant to Rule G(5)(a). In addition, they will also be filing a complaint in a separate action seeking turnover under TRIA, NY CPLR 5225(b), and NY CPLR 5227 ("TRIA Complaint"). Both this Rule G Claim and the TRIA Complaint seek to enforce their respective compensatory damages judgments against the Defendant Cryptocurrency.

**I.   The Havlish Claimants Have Judgments Against a Terrorist Party for an Act of Terrorism.**

1.   The Havlish Claimants consist of four groups of judgment creditors of Iran. Their judgments arise out of Iran's participation in, and its direct provision of material support for, the terrorist attacks of September 11, 2001. After an evidentiary hearing including videotaped sworn testimony from former Iranian intelligence officials, documents from Iran's intelligence services concerning Iran's involvement in the attacks, expert testimony (including affidavits from staff members of the 9/11 Commission), and many other kinds of evidence, the United States District Court for the Southern District of New York ("SDNY") held Iran liable pursuant to 28 U.S.C. § 1605A for causing the deaths of those killed in the 9/11 attacks and for the damages caused to the estates and family members who comprise the *Havlish* Judgment Creditors, the *Hoglan* Judgment Creditors, the *Ray* Judgment Creditors, and the *Maher* Judgment Creditors.

   a.   In *Havlish, et. al v. bin Laden, et al.*, 1:03-cv-09848, 03-md-1570 (GBD)(FM)(S.D.N.Y.), the SDNY entered a final and enforceable judgment on October 12, 2012, in the amount of $1,362,277,884 in compensatory damages and $4,686,235,921 in punitive damages plus pre-judgment interest. The Havlish Judgment, identifying each Havlish Judgment Creditor, and the amount of their individual judgment, is attached as Exhibit A to this Notice of Claim.

3

  b. In *Hoglan, et al. v. Islamic Republic of Iran, et al.*, 1:11-cv-07550, 03 MDL 1570 (GBD)(SN) (S.D.N.Y.), the SDNY entered a partial, final and enforceable judgment[1] on February 26, 2018, in the amount of $1,841,840,035 in compensatory damages plus pre-judgment interest. The Hoglan Judgment, identifying each Hoglan Judgment Creditor, and the amount of their individual judgment, is attached as Exhibit B to this Notice of Claim.

  c. In *Ray, et al. v. Islamic Republic of Iran, et. al.*, 1:19-cv-00012, 03 MDL 1570 (GBD)(SN) (S.D.N.Y.), the SDNY entered a partial, final and enforceable judgment[2] on February 19, 2020, in the amount of $459,491,860 in compensatory damages plus pre-judgment interest. The Ray Judgment, identifying each Ray Judgment Creditor, and the amount of their individual judgment, is attached as Exhibit C to this Notice of Claim.[3]

  d. In *Maher, et al. v. Islamic Republic of Iran, et al.*, 1:20-cv-00266 (GBD)(SN) (S.D.N.Y.), the SDNY entered partial, final and enforceable judgments[4] totaling $222,356,450 in compensatory damages plus pre-judgment interest.[5] The Maher Judgments, identifying each Maher Judgment Creditor, and the amount of their individual judgment, is attached as Exhibit D to this Notice of Claim.

---

[1] The SDNY entered a final judgment on compensatory damages in favor of the *Hoglan* Judgment Creditors. The *Hoglan* judgment is a partial final judgment because the SDNY reserved the *Hoglan* Plaintiffs' entitlement to punitive damages for a later date. The SDNY then certified the partial judgment as a final and enforceable judgment pursuant to Fed. R. Civ. P. 54(b).

[2] See FN1.

[3] Two Ray Judgment Creditors had their judgments against Iran entered in another liability action, *Ashton, et al. v. al Qaeda Islamic Army, et al.*, by prior counsel. Those judgments are included in Exhibit C. Current counsel is in the process of transferring these final enforceable judgments from *Ashton* into the *Ray* matter via motion in the In Re Terrorist Attacks on September 11, 2001, MDL

[4] See FN1.

[5] The dates of entry of judgment vary because the Maher Plaintiffs were formerly represented by other counsel in two other liability actions, *Bauer v. al Qaeda Islamic Army* and *Burnett, et al. v. Islamic Republic of Iran*. These judgments are included in Exhibit D.

2. Each of the above-stated judgments accrue post-judgment interest pursuant to 28 U.S.C. § 1961. None have been fully satisfied.

3. A comprehensive list of all Havlish Claimants from all of the above-stated cases, together with the amount of their individual damage awards, is attached as Exhibit E.

## II. Iran Is A Terrorist Party.

4. Islamic Republic of Iran is a designated state sponsor of terrorism. It was first designated in 1984. It remains a state sponsor of terrorism to this day. Consequently, the government of Iran, its political subdivisions, and its agencies and instrumentalities are terrorist parties within the meaning of TRIA, including without limitation each of the Iranian Judgment Debtors.

## III. The Iran-China Group Was an Agency or Instrumentality of Iran.

5. The Iran-China Group was part of a large, transnational criminal enterprise that engaged in a variety of cybercrime schemes. *See* Complaint in *U.S. v. Approximately 127,271 Bitcoin ("BTC") Previously Stored at the Currency Addresses Listed in Attachment A, and All Proceeds Traceable Thereto*, 1:25-cv-05745-RPK at ECF 1. Among activities undertaken in furtherance of the enterprise, the Iran-China Group operated a massive Bitcoin mine in Rafsanjan, Iran. The facility is believed to utilize 54,000 miners, making it the largest authorized cryptocurrency operation in Iran.

6. The Iran-China Group will be deemed an agency or instrumentality of Iran if (1) it was a means through which a material function of Iran was accomplished; (2) it provided material support to Iran; or (3) it was owned, controlled, or directed by Iran. *Kirschenbaum v. 650 Fifth Ave. and Related Props.*, 830 F.3d 107, 132 (2d Cir. 2016). The Iran-China Group needs to meet only one of the three tests to be an agency or instrumentality of Iran.

5

7. Even at this very early stage, evidence shows the Iran-China Group satisfies all three tests.

    a. <u>Means through which Iran accomplishes a material function</u>. Iran uses the Iran-China Bitcoin mine at Rafsanjan to generate cryptocurrencies it uses to evade U.S. sanctions and to fund international terrorism by financing its activities outside traditional global banking systems.

    b. <u>Material support to Iran</u>. Generating large sums of clean, dissociated cryptocurrency enabled Iran to more easily carry out otherwise sanctioned activities. The cryptocurrency makes it harder for monitors like the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") and its Financial Intelligence Unit, known as "FinCen," to link activity to Iran and makes it much easier for malign financial institutions and business counterparties to do business with Iran with impunity.

    c. <u>Controlled or directed by Iran</u>. Evidence shows the government of Iran, including the Islamic Revolutionary Guard Corps ("IRGC"), the Central Bank of Iran a/k/a/ Bank Markazi ("CBI"), and Iran's Ministry of Information and Security (each of which is an Iranian Judgment Debtor) were deeply involved in the Iran-China Group's activities. Indeed, it would be unlikely for the Iran-China Bitcoin mine at Rafsanjan to operate without their approval, support, and direction.

For example, the Rafsanjan Bitcoin mine's power consumption needs were so large that, by January 2021, the Rafsanjan Bitcoin mine was causing electricity blackouts in Tehran.[6] Yet, the Iranian government supplied the mine with effectively costless

---

[6] Kia, Shahariar, *Bitcoin Mining in Iran, IRGC Operations and the Power Grid Crisis*, National Council for Resistance for Iran (May 26, 2025) https://www.ncr-iran.org/en/publications/special-reports/bitcoin-mining-in-iran-irgc-operations-and-the-power-grid-crisis/.

electricity through its state-owned electricity company.[7] The government also impeded efforts to reduce the facility's electricity consumption.[8] The IRGC itself controls cryptocurrency mining in Iran. In a 2021 incident, for instance armed IRGC units physically prevented a raid by the Ministry of Energy, preventing the attempt to shut down an illegal mining center and ensuring mining operations continued.[9] And, the Rafsanjan Bitcoin mine was operated in conjunction with powerful IRGC-affiliated entities.[10]

8. The Iran-China Group was an agency or instrumentality of Iran, and upon information and belief still operates as such today.

### IV. The Defendant Cryptocurrency Is a Blocked Asset of Iran or of Its Agency or Instrumentality.

9. The Defendant Cryptocurrency is a blocked asset of a terrorist party within the meaning of TRIA. Under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A).

10. The U.S. government long ago exercised its IEEPA authority to "block" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 132. As a result, because the Iran-China Group is an agency or instrumentality of Iran, all property of the Iran-China Group in the United States qualifies as blocked assets for purposes of TRIA. *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022).

---

[7] *Id*.

[8] *Id.*

[9] *Id*.

[10] Wisconsin Project on Nuclear Arms Control, Iran Watch, *Astan Quds Razavi* (September 29, 2022) https://www.iranwatch.org/iranian-entities/astan-quds-razavi.

**V.     The United States Commenced This Forfeiture Action Without Disclosing Iran's Extensive Involvement with the Defendant Cryptocurrency.**

11.     On October 14, 2025, the government filed the instant civil forfeiture action against approximately 127,271 Bitcoin once stored in the virtual-currency addresses identified in Attachment A of its complaint. *See* ECF 1 ("Forfeiture Complaint") at 1 & Attachment. On the same day, this Court issued an arrest warrant *in rem* for Defendant Cryptocurrency pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* ECF 3.

12.     The government alleges the Defendant Cryptocurrency is subject to condemnation and forfeiture by the United States: (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956. *See* Forfeiture Complaint.  Specifically, the government alleges that the Defendant Cryptocurrency was involved in or derived from money-laundering operations conducted by Chen Zhi and Prince Holding Group, an alleged front for Chen's transnational criminal organization. *Id.* at ¶¶ 20, 38-43.

13.     According to the government, one such scheme involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds." *Id*. ¶ 42.

14.     The government describes "Lubian" as "a Chinese bitcoin mining operation" and acknowledges that it had at least one facility in "Iran." *Id.* at ¶ 16(u). The government did not include information that put the Havlish Claimants on notice that the bitcoin mining operation

8

involved conduct attributable to the Iranian Government, or that the Havlish Claimants had a basis to claim any of the Defendant Cryptocurrency.

15. Based on information the Havlish Claimants only recently learned, the Defendant Cryptocurrency appears to be directly tied to Iran and activity directly involving the Iranian government, which was not clear from the forfeiture pleadings.

16. On December 26, 2025, other victims of Iran's state-sponsored terrorism filed a separate action alleging that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions. *See Fritz* Suit.

17. The Fritz Claimants, along with another group of victims of Iran's state sponsored terrorism (the "*Baxter* Victims"), filed Notices of Verified Claims in this instant proceeding on December 29, 2025. *See* ECF Nos. 29 and 30.

18. Based on the information revealed in the allegations in the *Fritz* Suit, and summarized by the Notices of Verified Claims filed by the other terrorism victim claimants, the Havlish Claimants now submit this Notice of Verified Claim.

## VI. Under TRIA, the Havlish Claimants Have a Superior Interest in the Defendant Cryptocurrency.

19. At this stage of the proceedings in a forfeiture action, the Havlish Claimants need only assert that they have a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (citation omitted). "[W]hether [they] ultimately prove[ ] the existence of that interest is a question for a later stage in the proceedings." *Id*. (*citation omitted*). Here, based on the information alleged in the *Fritz* Suit, the Havlish Claimants have far more than a "facially colorable interest" in the Defendant Cryptocurrency.

9

20. The Havlish Claimants are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. As has now been alleged, because the Iran-China Group was an agent or instrumentality of Iran, TRIA entitles the Havlish Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the Havlish Claimants have a possessory interest in the Defendant Cryptocurrency, which permits them to bring the claims asserted here.

21. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" arising out of an "act of terrorism" may execute on the "blocked assets" of that terrorist party or "any agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." TRIA, Section 201(a).

22. TRIA's cornerstone is the statute's broad "notwithstanding" clause. The clause aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). The notwithstanding clause "mak[es] plain that the force of the [statute] extends everywhere" and "'supersede[s] all other laws.'" *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (citation omitted). Accordingly, because it expressly overrides "conflict[ing] laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

23. Because, as explained above, the Havlish Claimants satisfy the requirements of TRIA, their interest in the Defendant Cryptocurrency necessarily is superior to the claims of the government, as well as all other non-TRIA claimants, in the forfeiture action here.

    a. First, the Havlish Claimants hold judgments pursuant to 28 U.S.C. § 1605A for compensatory damages against Iran based on an act of terrorism.

10

  b. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. *See* TRIA § 201(d)(4); Executive Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012).

  c. Third, as now alleged in the *Fritz* suit, the Iran-China Group operated as Iran's agency or instrumentality by materially serving that country in avoiding sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction. *See* Plaintiffs' Memorandum of Law in Support of Motion for Attachment in the *Fritz* Suit, dated Dec. 28, 2025 (ECF No. 70), at 13-17; *see also Kirschenbaum*, 830 F.3d at 135-36.

  d. Fourth, the Defendant Cryptocurrency are "[b]locked assets" within the meaning of TRIA.

24. Pursuant to 28 U.S.C. § 983(a) and Rule G, the Havlish Claimants hereby assert a claim against such amount of the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—as may be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran, plus post-judgment interest, based on the date the Defendant Cryptocurrency is valued for purposes of judgment.

25. The Havish Claimants' claim is superior to the government's claim and superior to any other non-TRIA claimant.

26. Notwithstanding the government's forfeiture efforts, the Havlish Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency.

Dated: New York, New York
January 19, 2026

*s/Andrew C. Levitt*
Robert A. O'Hare Jr.
Andrew C. Levitt
O'HARE PARNAGIAN LLP
20 Vesey Street, Suite 300
New York, NY 10007
(212) 425-1401
rohare@ohareparnagian.com
alevitt@ohareparnagian.com

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
(*pro hac vice* motion forthcoming)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC (*Lead Counsel*)
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Timothy B. Fleming (DC Bar No. 351114)
(*pro hac vice* motion forthcoming)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, PLLC
2202 18th Street, NW, #110
Washington, DC  20009-1813
(202) 467-4489

Douglass A. Mitchell
(*pro hac vice* motion forthcoming)
MITCHELL ALLYN, LTD.
1000 Green Valley Parkway
Suite 440-575
Henderson, Nevada 89074
(70) 350-1208
dmitchell@mitchellallyn.com

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
(*pro hac vice* motion forthcoming)
RAMEY & HAILEY
951 N. Delaware St.
Indianapolis, IN 46202
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
(*pro hac vice* motion forthcoming)
FOOTE, MIELKE, CHAVEZ
& O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

*Attorneys for the Havlish Claimants*

13