

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

January 19, 2026

**BY ECF**

Honorable Rachel P. Kovner
United States District Judge
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Approximately 127,271 Bitcoin*,
                Case No. 25 Civ. 5745 (RPK)

Dear Judge Kovner:

      We represent Chen Zhi ("Claimant"), who timely filed a claim on December 29, 2025 [ECF No. 27]. Pursuant to Your Honor's Individual Practice IV(A)(2), Claimant writes to request a pre-motion conference and to set out the primary bases for his anticipated motions under Federal Rule of Civil Procedure 12 and Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. We understand that pursuant to the Court's Individual Practices, this letter "constitute[s] timely service of a motion made pursuant to those provisions."

      As set out below, Claimant intends to move pursuant to Rule 12(b)(1) because there is no subject matter jurisdiction over the defendants *in rem*; pursuant to Rule 12(b)(6) because the government's Complaint fails in numerous ways to adequately allege that the defendants *in rem* are subject to forfeiture and because its claims are barred by the applicable statute of limitations; and under Rule 12(e) for a more definite statement.

## Relevant Background

      On or about December 28, 2020, the largest known theft of digital assets in history occurred. Unknown thieves exploited a highly sophisticated weakness in popular cryptocurrency software to steal at least 127,426 Bitcoin held in the wallets of Lubian.com.[1] Lubian was a cryptocurrency mining pool and, according to the government (Compl. ¶¶ 42, 45, 47), funds belonging to, or in custody of, Claimant were held in Lubian's digital wallets.

      This hack and multi-billion-dollar theft went publicly unknown for years, until it was discovered and revealed by security researchers just months before this case was filed. *See* note 1. By that time, the Bitcoin had somehow made their way into the hands of the government—and, in fact, at least one foreign government agency has connected the 2020 Lubian hack itself to the U.S. government.[2]

---

[1]     https://info.arkm.com/announcements/arkham-uncovers

[2]     https://www.coindesk.com/policy/2025/11/09/china-accuses-u-s-of-stealing-127k-btc-in-high-profile-crypto-hack



Nearly five years after it was stolen from Lubian, the government filed this case seeking to forfeit the Bitcoin. The crux of the government's case—as it must be, in any civil forfeiture action—is that the seized Bitcoin were the proceeds of, or were involved in, certain criminal activity. But the Complaint's asset tracing allegations end at the very latest in December 2020 (Compl. ¶ 44 & n.7), at which point the Complaint merely alleges that the Bitcoin was "subsequently transferred in its entirety to multiple additional addresses. It is currently in the custody of the United States." Compl. ¶ 58. The Complaint entirely omits the Lubian hack, or any connection between the assets purportedly traced through 2020, the Defendant Assets, and the underlying allegations of criminal conduct. In other words, the Complaint does not allege *any* transactions after 2020—criminal or otherwise—that would connect the Bitcoin in the government's custody to its allegations of criminal conduct. Meanwhile, the pre-2020 allegations are themselves vague and inadequate, and not sufficient to support forfeiture of the Defendant Assets.

## Grounds For Dismissal

***The Complaint Fails to Allege How the Government Acquired the Defendant Assets***. Under Supplemental Rule G(2)(d), a complaint must "state [the Defendants Assets'] location when any seizure occurred and—if different—its location when the action is filed." *See* Stefan Cassella, *Asset Forfeiture Law in the United States*, 2d ed. § 7-7(b)(5).[3] As set out above, the Complaint is silent on these points. Had the government satisfied Rule G(2)(d), it necessarily would have had to acknowledge the significance of the Lubian hack and theft, because it would have needed to identify the location of the seizure. The Complaint fails to do so, and is inadequate for that reason alone.

***The Tracing Allegations Are Inadequate.*** Under Supplemental Rule G(2)(f), the Complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial"—a more rigorous standard than for other civil pleading. *See United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 16–17 (D.D.C. 2008) ("Rule G (and its predecessor Rule E(2)) creates a heightened burden for pleading on the plaintiff."). "This heightened particularity requirement is designed to guard against the improper use of seizure proceedings and to protect property owners against the threat of seizure upon conclusory allegations." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013).

The Court should dismiss the Complaint because it fails under this standard to adequately allege that the Defendant Assets are subject to forfeiture—both because it fails to adequately allege the underlying conduct, and because it fails to adequately trace that conduct to the Defendant Assets. The Complaint does not connect a single victim to the Defendant Assets. Instead, the Complaint alleges that widespread fraud existed prior to 2020, then makes somewhat more specific allegations about conduct from 2021 onward. But funds from victims allegedly defrauded in 2021 and later cannot possibly, let alone plausibly, have been part of the Defendant Assets, which were stolen in

---

[3] The government may attempt to argue that the Defendant Assets are intangible property, but whether that is even arguably true is unknowable without understanding the circumstances surrounding their seizure and storage. For example, if the government seized Bitcoin stored on "hardware wallets" or otherwise in "cold storage," it would have necessarily effected a seizure and come into possession of tangible property. The Complaint is silent as to how the Defendant Assets were seized, whether they were seized physically, and where they are now—presumably all as part of the government's efforts to avoid acknowledging the Lubian hack. In any event, the government failed to follow the procedure for forfeiture of intangible assets under Rule E(4).



2020. The government cannot rely on unrelated narratives regarding fraud generally to establish that the Defendant Assets are proceeds of fraud. *See, e.g., One Gulfstream*, 941 F. Supp. 2d 1 ("Although the government describes a disconcerting pattern of corruption in Equatorial Guinea, the complaint does not link the jet to any specific illicit acts."). The Complaint cannot meet the Rule G pleading standard where there is no connection between the Defendant Assets and any specific acts of fraud.

So, too, with the Complaint's allegations of money laundering. The Complaint alleges that the Defendant Assets were "involved in" at least one violation of § 1956(a)(2)(B)(i)—international concealment money laundering—but does not allege a single transfer into or out of the United States that meets the elements. Every international transaction alleged post-dates 2020, and even these later transactions cannot plausibly support the international concealment allegations.

***There Is No Connection Between the Defendant Assets and This District.*** The Complaint relies on general allegations that a so-called "Brooklyn Network" provided "assistance" to the Prince Group. But the Complaint's allegations (at ¶¶ 32-37) about the Brooklyn Network are exclusively in the 2021-2022 time period, meaning that they are necessarily unconnected to the Defendant Assets, which had already been stolen from Lubian at that time. Although the allegations about the Brooklyn Network contain (at ¶ 37 & n.2) references to specific, although obscured, virtual currency wallets, those wallets are never again mentioned in the Complaint, let alone traced to the Defendant Assets. In a civil forfeiture case, this failure not only goes to whether the government adequately pleaded its claims, but it also goes to subject matter jurisdiction. Absent sufficient allegations that conduct "giving rise to the forfeiture" occurred in this District—or that the Defendant Assets are "found" here—the Court lacks jurisdiction. *See* 28 U.S.C. §§ 1355(b), 1395.[4]

## Motion for a More Definite Statement

Regardless of its obligation to allege the circumstances surrounding its seizure under Rule G(2)(b), the government should be compelled to disclose those circumstances now because they go to other critical questions, including tracing, the statute of limitations, constitutional Due Process, and ultimately whether this action was even filed in good faith.

Under the Due Process Clause, for example, the Court can dismiss based on unreasonable delay. *See United States v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983). Similarly, under the applicable statute of limitations, 19 U.S.C. § 1621, a civil forfeiture action must be dismissed if not filed within five years of the government learning of the underlying offense conduct. But—despite being required to, as explained above—the Complaint does not allege how, when, and from whom the Defendant Assets were seized, including whether the U.S. government was involved in the 2020 hack, as at least one foreign government has claimed. Accordingly, Claimant will move this Court pursuant to Rule 12(e) for a more definite statement detailing the seizure of the Defendant Assets, including when any agency of the government first took control (actual or constructive) of them.

## Conclusion

For the above reasons, Claimant respectfully requests the Court hold a pre-motion conference, or in the alternative, set a briefing schedule on Claimant's anticipated motions.

---

[4] For similar reasons, the Complaint fails to adequately allege domestic application of the relevant criminal statutes. *See generally RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016).

Thank you for your consideration.

                        Respectfully,

                        /s/ *Matthew L. Schwartz*
Matthew L. Schwartz
Peter M. Skinner
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001

Dan G. Boyle
John K. Kucera (*pro hac vice* forthcoming)
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, California 90067