UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTEDI N ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendant *In Rem*. | Civil Action No. 25-5745 (RPK) |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE *IN REM*__**

Claimants here are 1321 victims of terrorist attacks (the "Gold Star Claimants")[1] who collectively hold judgments for more than $20 billion dollars: $5,631,853,135 in compensatory damages, $10,136,913,071.31 in punitive damages, and $4,668,778,255.31 in pre-judgment interest against the Islamic Republic of Iran ("Iran") for its role in sponsoring the terrorist attacks that injured them.[2] These judgments are founded on the terrorism exception to the Foreign Sovereign Immunities Act, *see* 28 U.S.C. § 1605A, and its predecessor statute, *see* 28 U.S.C. § 1605(a)(7). The Gold Star Claimants recently learned, from allegations filed in a separate turnover proceeding, *see Fritz v. Iran and China Development Grp. d/b/a Lubian.com*, No. 25-07093

---

[1] A full list of Claimants and the damages they have been awarded in various judicial proceedings is included as Attachment A to the accompanying Verification of Gold Star Claimants' Claims.

[2] These figures include forty-nine (49) claimants whose judgments have not yet been served. Excluding these, the Gold Star Claimants' claims are worth a total of $19,417,127,354.92: $5,405,603,135 in compensatory damages, $9,626,704,467.96 in punitive damages, and $4,384,819,751.96 in pre-judgment and post-judgment interest.

(E.D.N.Y.) (the "*Fritz* Action"), that the Defendant *In Rem* in this forfeiture action (the "Defendant Cryptocurrency") is the property of the Iran and China Investment Development Group (the "Iran-China Group"), which is an agency or instrumentality of Iran. Upon learning of the connection between the Defendant Cryptocurrency and Iran, the Gold Star Claimants promptly filed this Notice along with the accompanying Letter Motion for an Extension of Time.

As also alleged in the *Fritz* Action, the Iran-China Group, doing business on the blockchain as Lubian.com or LuBian, is an agency or instrumentality of Iran that has materially supported Iran's efforts to evade U.S. sanctions by "mining" cryptocurrency in Iran.

The Gold Star Claimants have the right, under the Terrorism Risk Insurance Act ("TRIA"), to execute on the property of Iran and its agencies and instrumentalities, including the Iran-China Group, "[n]otwithstanding any other provision of law." Terrorism Risk Insurance Act, Pub. L. No. 107–297, § 201, 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note. Accordingly, the Gold Star Claimants hereby assert their superior interest in so much of the Defendant Cryptocurrency as may be necessary to satisfy the outstanding judgments against them, which TRIA makes senior to any interest that the Government or other claimants could assert.[3]

In support of this Notice, the Gold Star Claimants state as follows:

I. **The Gold Star Claimants Have Been Awarded Over $20 Billion Against Iran.**

1. The Gold Star Claimants are 1321 individuals who are direct victims, or the surviving family members of victims of Iranian-sponsored terrorism. They have each been injured by Iranian-backed proxy militias, which carried out the kidnapping, murder, or attempted

---

[3] Because the value of Bitcoin can vary widely from day-to-day, the amount of Bitcoin necessary to satisfy the Gold Star Claimants' judgments cannot be fully determined until the Bitcoin is transferred or otherwise liquidated in satisfaction of the judgments.

2

murder of U.S. servicemembers and civilian contractors deployed in Iraq and Afghanistan during the Global War on Terror.

2.  The U.S. District Court for the District of Columbia (the "D.D.C.") has, across five separate actions, repeatedly determined that Iran is liable to the Gold Star Claimants for its role in supporting the terrorist attacks that injured or killed these Americans, and has awarded the Gold Star Claimants more than $20 billion in damages for their suffering, including $5,631,853,135 in compensatory damages, *see supra* nn.1 & 2.

### A.  The *Neiberger* Plaintiffs

3.  Thirty-nine (39) *Neiberger* plaintiffs obtained final judgments against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Iraq during the Global War on Terror.  *See Neiberger v. Islamic Republic of Iran*, Case No. 16-cv-02193-EGS-ZMF (D.D.C.).  On September 30, 2022 the D.D.C. awarded these plaintiffs $148,846,224 in compensatory damages, $78,762,459.50 in prejudgment interest, and $227,608,683 in punitive damages, for a total of $455,217,367 in damages.  *Id.*  Dkt. No. 92.

### B.  The *Cabrera* Plaintiffs

4.  One thousand and seventy-five (1,075) *Cabrera* plaintiffs have obtained final judgments against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Afghanistan during the Global War on Terror.  *See Cabrera v. Islamic Republic of Iran*, Case No. 19-cv-03835-JDB (D.D.C.).  To date, the *Cabrera* plaintiffs have been awarded $4,474,525,000 in compensatory damages, $3,263,690.567.46 in prejudgment interest, and $7,738,215,567.46 in punitive damages, for a total of $15,476,431,134.92 in damages.  *Id.* Dkt. Nos. 77, 127, 138, 250, 264, 273, 285, 286, 302, 304, and 314.

### C. The *Martino* Plaintiffs

5. One hundred and forty-nine (149) *Martino* plaintiffs have obtained final judgments against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Iraq during the Global War on Terror. *See Martino v. Islamic Republic of Iran*, Case No. 21-cv-01808-RDM (D.D.C.). To date, the *Martino* plaintiffs with final judgments have been awarded $706,281,778 in compensatory damages, $954,598,439 in prejudgment interest, and $1,660,880,217 in punitive damages, for a total of $3,321,760,434 in damages. *Id.* Dkt. Nos. 72 and 92.

6. The *Martino* plaintiffs also include thirty-five (35) individuals who have obtained a judgment which is still in the process of being served upon Iran. These plaintiffs have been awarded $170,000,000 in compensatory damages, $250,689,939 in prejudgment interest, and $420,689,939 in punitive damages, for a total of $841,379,979 in damages. *Id.* Dkt. No. 105.

7. Together, the *Martino* Plaintiffs have been awarded $876,281,778 in compensatory damages, $1,205,288,378 in prejudgment interest, and $2,081,570,256 in punitive damages, for a total of $4,163,140,412 in damages.

### D. The *Zambon* Plaintiffs

8. Eleven (11) *Zambon* plaintiffs obtained a final judgment against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Iraq during the Global War on Terror. *See Zambon v. Islamic Republic of Iran*, Case No. 16-cv-02193-EGS-ZMF (D.D.C.). On April 25, 2025 the D.D.C. awarded these plaintiffs $75,950,133 in compensatory damages, and $87,768,286 in prejudgment interest, for a total of $163,718,419 in damages.[4] *Id.* Dkt. No. 304.

---

[4] A motion for punitive damages remains pending. *See Zambon*, Dkt. No. 329 (Nov. 14, 2025).

### E. The *Adamkavicius* Plaintiffs

9. Fourteen (14) *Adamkavicius* plaintiffs obtained a judgment against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Iraq during the Global War on Terror. *See Adamkavicius v. Islamic Republic of Iran*, Case No. 23-cv-03571-EGS-ABJ (D.D.C.). The judgment has not yet been served on Iran. On April 25, 2025 the D.D.C. awarded these plaintiffs $56,250,000 in compensatory damages $33,268,564.36 in prejudgment interest, and $89,518,564.35, for a total of $179,037,128.70 in damages. *Id.* Dkt. No. 42.

## II. The Gold Star Claimants Are Entitled To Enforce Their Judgments.

10. Claimants are all judgment-holders—either directly or as the estate, heir, or other beneficiary or successor-in-interest of the original judgment holder—in the above actions.

11. In total, the Gold Star Claimants in this action have been awarded damages of $20,437,544,562.62 against Iran, including $5,631,853,135 in compensatory damages. These judgments were entered to provide justice and compensation to the direct victims and family members of victims of Iran's sponsorship of, and responsibility for, devastating acts of terrorism. To date, Iran has refused to engage with any of the lawsuits against it and has not paid any of the judgments, which continue to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

12. The Gold Star Claimants and the damages they have been awarded are listed in Attachment A to the Verification of their Claims.

## III. The Government Commenced This Forfeiture Action Against The Defendant Cryptocurrency—But Without Disclosing Its Extensive Connections To Iran.

13. On October 14, 2025, the Government initiated the instant civil forfeiture action against approximately 127,271 Bitcoin once stored in the virtual-currency addresses identified in Attachment A of its complaint. *See* Dkt. 1 ("Forfeiture Compl.") at 1 & Attachment A.

5

14. On the same day, this Court issued an arrest warrant *in rem* for Defendant Cryptocurrency pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* Dkt. 3.

15. The Government alleges the Defendant Cryptocurrency is subject to condemnation and forfeiture by the United States (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956. *See* Forfeiture Compl. ¶ 2.

16. Specifically, the Government alleges that the Defendant Cryptocurrency was involved in or derived from money-laundering operations conducted by Chen Zhi and Prince Holding Group, an alleged front for Chen's transnational criminal organization. Forfeiture Compl. ¶¶ 20, 38-43. According to the Government, one such scheme involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds." *Id.* ¶ 42.

17. The Government describes "Lubian" as "a Chinese bitcoin mining operation" and acknowledges that it had at least one facility in "Iran." Forfeiture Compl. ¶ 16(u). The Government did not include information that put the Gold Star Claimants on notice that the operation involved conduct attributable to the Iranian Government, or otherwise that the Gold Star Claimants had a basis to claim any of the relevant funds.

**IV.    The Gold Star Claimants Recently Learned of the Relationship Between the Defendant Cryptocurrency and the Government of Iran**

18.    Based on information that the Gold Star Claimants only recently learned, it appears that the Defendant Cryptocurrency is directly tied to Iran—something that was not clear from the Government's forfeiture pleadings.

19.    On December 26, 2025, other victims of Iran's state-sponsored terrorism filed a separate action alleging that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian Government to build a large Bitcoin mine in Rafsanjan, Iran, to assist Iran's longstanding efforts to evade U.S. sanctions.  *See generally Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-cv-07093 (E.D.N.Y.), Dkt. No. 1.

20.    Plaintiffs in the *Fritz* Action, along with another group of victims of Iran's state-sponsored terrorism (the "*Baxter* Victims"), filed Notices of Verified Claims in proceeding on December 29, 2025.  *See* Dkt. Nos. 29, 30.

21.    Based on the information just revealed in the allegations in the *Fritz* Action and summarized by the Notices of Verified Claims filed by the other victim-claimants, *see generally* Dkt. Nos. 29, 30, the Gold Star Claimants now submit their own Notice of Verified Claim.

22.    The Gold Star Claimants have learned that the Court previously ordered that any third-party claims be filed by December 29, 2025.  However, the Gold Star Claimants did not receive notice of this order and were not aware of their interest in the Defendant Cryptocurrency prior to the *Fritz* Action.

23.    As described in the Letter Motion filed contemporaneously with this Notice, any delay by the Gold Star Claimants in filing their claims is not the result of inexcusable neglect because the Gold Star Claimants had no reason to know of their interest in the instant action prior

to the filing of the revelatory allegations in the *Fritz* Action, and the Gold Star Claimants acted swiftly upon becoming aware of that potential interest.

24. As described in the Letter Motion filed contemporaneously with this Notice, multiple groups of terrorist victim claimants have recently filed claims in this action after the December 29, 2025, deadline, or else requested an extension of that deadline to file claims in the future. *See* Dkt. No. 52 (noticed claims of Iranian Gold Star Claimants); Dkt. No. 56 (motion for extension of time and noticed claims of the Chairnoff Claimants); Dkt. Nos. 66, 67, 70 (motion for extension of time and noticed claims of the O'Neill Claimants); Dkt. No. 69 (motion for extension of time filed by the Pennington and Driscoll Claimants).

25. As also described in the Letter Motion filed contemporaneously with this Notice, allowing the Gold Star Claimants to file this claim at this time will not prejudice any other party, including because the deadline for other parties to file claims opposing the forfeiture has not yet lapsed. *See, e.g.*, December 18, 2025 Order (extending deadline to January 19, 2026, for claimants Yang and LuBian to file claims opposing forfeiture); *see also* Fed. R. Civ. P. 6(a)(1)(C) (explaining that when a time period ends on a legal holiday, "the period continued to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Further, the Gold Star Claimants' claims are similar to the claims already asserted by the victims in *Fritz* and *Baxter*, and therefore the Government already is on notice of the type of claim being asserted here. Moreover, as noted above, other claimants have likewise been permitted to make claims after the December 29, 2025, deadline, up to and including January 20, 2025, meaning that there will be no prejudice to the government or to the Court's adjudication of this forfeiture proceeding..

8

### V.  Under TRIA, the Gold Star Claimants Have a Senior Interest in the Defendant Cryptocurrency

26. In the context of a forfeiture action, at this stage of the proceedings the Gold Star Claimants need only assert that they have a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (quoting *United States v. $577,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 & n.10 (2d Cir. 2002)). "[W]hether [they] 'ultimately prove[] the existence of that interest' is a question for a later stage in the proceedings." *Id.* (quoting *$577,933.89*, 287 F.3d at 79 & n.10)).

27. Here, based on the information alleged in the *Fritz* Action, the Gold Star Claimants clearly have a "facially colorable" interest in the Defendant Cryptocurrency. They are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. As has now been alleged, because the Iran-China Group was an agent or instrumentality of Iran, the TRIA entitles the Gold Star Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments '[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the Gold Star Claimants have a possessory interest in the Defendant Cryptocurrency, which permits them to bring the claims asserted here.

28. Thus, in accordance with Federal Rule G, the Gold Star Claimants assert a protective, prophylactic claim against such amount of the Defendant Cryptocurrency as may ultimately be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran, plus post-judgment interest, based on the date the Defendant Cryptocurrency is valued for purposes of judgment, *see supra* n.2.

29. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any

9

compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note.

30. TRIA's cornerstone is the statute's broad "notwithstanding" clause. The clause aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). The notwithstanding clause "mak[es] plain that the force of the [statute] extends everywhere," *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010), and "is unambiguous and effectively supersedes all previous laws," *Hill v. Republic of Iraq*, No. Civ. A 1:99CV03356, 2003 WL 21057173, at *2 (D.D.C. Mar. 11, 2003) (quoting *Energy Transp. Grp., Inc. v. Skinner*, 752 F. Supp. 1, 10 (D.D.C. 1990)). Accordingly, because it expressly overrides "conflict[ing] laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

31. Because the Gold Star Claimants satisfy the requirements of TRIA, their interest in the Defendant Cryptocurrency necessarily is superior to the claims of the Government, as well as all other non-TRIA claimants, in the forfeiture action here.

32. *First*, as explained above and like the other victim-claimants, the Gold Star Claimants hold judgments for damages against Iran based on an act of terrorism under 28 U.S.C. § 1605A or its predecessor statute, 28 U.S.C. § 1605(a)(7).

33. *Second*, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. *See* TRIA § 201(d)(4); Exec. Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012).

34. *Third*, as now alleged in the *Fritz* Action, the Iran-China Group operated as Iran's agency or instrumentality by materially serving that country in avoiding sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction and behest. *Fritz* Action, Dkt. 70, Plaintiffs' Memorandum of Law in Support of Motion for Attachment, at 13-17 (Dec. 28, 2025) ("*Fritz* Attachment Motion"); *see Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016).

35. *Fourth*, under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act. TRIA § 201(d)(2)(A). The Government has used its authority under that statute to "block" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 120. As a result, if the Iran-China Group is an agency or instrumentality of Iran, all property of the Iran-China Group qualifies as a blocked asset under TRIA. *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022). Because the Defendant Cryptocurrency is property of the Iran-China Group, it is therefore blocked and subject to execution by the Gold Star Claimants under TRIA.

36. *Fifth*, to the extent that the requirements of 28 U.S.C. § 1610(c) apply to a TRIA claim, they are satisfied for all of the final judgments because "a reasonable period of time has elapsed following the entry of judgment and the giving of notice required under [28 U.S.C. §] 1608(e)." 28 U.S.C. § 1610(c); *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 WL 1155576, at *35 (S.D.N.Y. Mar. 13, 2013). Even for those that have not yet been served, "a reasonable period of time has elapsed following the entry of judgment." 28 U.S.C. § 1610(c).

\* \* \*

11

37.     Pursuant to 28 U.S.C. § 983(a) and Rule G, the Gold Star Claimants hereby assert a protective, prophylactic claim to the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—that is senior to the Government's claim. Notwithstanding the Government's forfeiture efforts, the Gold Star Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency.

Dated: January 20, 2026                                        Respectfully submitted,

/s/ Aaron E. Nathan

Michael J. Gottlieb
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East
Los Angeles, CA 90067-2905
Tel:  (310) 855-3000
Fax:  (310) 855-3099
mgottlieb@willkie.com

Nicholas Reddick (*pro hac vice forthcoming*)
WILLKIE FARR & GALLAGHER LLP
333 Bush Street
San Francisco, CA 94104
Tel:  (415) 858-7400
Fax:  (415) 858-7599
nreddick@willkie.com

Lee Wolosky
Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Tel:  (212) 728-8000
Fax:  (212) 728-8111
lwolosky@willkie.com
anathan@willkie.com

*Counsel for Gold Star Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2026, I electronically filed the foregoing Gold Star Claimants' Notice of Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem* via CM/ECF for the United States District Court for the Eastern District of New York and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the Government, in the above-captioned matter.

/s/ Aaron E. Nathan

Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Tel: (212) 728-8000
Fax: (212) 728-8111
anathan@willkie.com