UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>        Defendant, *In Rem*. | Civil Action No. 1:25-cv-05745 (RPK) |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM**

The *Federal Insurance* Claimants[1] are commercial entities that sustained billions of dollars in property damage, business interruption, and other losses as a consequence of the September 11, 2001 terrorist attacks (the "9/11 Attacks"). The *Federal Insurance* Claimants have been awarded a compensatory damages judgment totaling $7,009,501,372.00 ($3,040,998,426.03 in compensatory damages + $3,968,502,945.97 in prejudgment interest) under 28 U.S.C. §1605A against the Islamic Republic of Iran ("Iran") for its role in sponsoring the 9/11 Attacks.

The *Federal Insurance* Claimants just recently learned about this forfeiture action, the allegations and evidence in *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 1:25-cv-07093 (E.D.N.Y.) (hereinafter "*Fritz* Action"), and the claims of the

---

[1] The *Federal Insurance* Claimants are Vigilant Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Federal Insurance Company, Chubb Insurance Company of New Jersey, Chubb Insurance Company of Canada, Pacific Indemnity Company, Great Northern Insurance Company, AXA Art Insurance Corp., AXA Global Risks (UK) Ltd., AXA CSA UK Branch, AXA Insurance Company, AXA Reinsurance Company, AXA RE, AXA RE Canadian Branch, AXA RE UK Plc, AXA Versicherung, SPS RE, American Alternative Insurance Company, Princeton Excess and Surplus Lines Insurance Company, Great Lakes UK Reinsurance Company, and OneBeacon Insurance Company.

*Fritz* plaintiffs recently set forth in this action at ECF No. 29, that the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ("Iran-China Group"). The *Federal Insurance* Claimants promptly sought leave to file this Notice upon learning of this information and this proceeding.

As alleged by the *Fritz* plaintiffs at ECF No. 29, the Iran-China Group, doing business on the blockchain as Lubian.com or LuBian, is an agency or instrumentality of Iran that has materially supported Iran's efforts to evade U.S. sanctions by mining cryptocurrency in Iran. Through this scheme, sanctioned Iranian oil and gas are converted into electricity, which miners then use to generate cryptocurrency for the Iranian government to use outside the traditional global banking systems.

Based on the information newly revealed by the allegations in the *Fritz* Action, under the Terrorism Risk Insurance Act ("TRIA"), Pub. L. 107-297, 116 Stat. 2322 (Nov. 26, 2002), codified at 28 U.S.C. § 1610 Note, the *Federal Insurance* Claimants have the right to attach and execute on the property of Iran and its agencies and instrumentalities, including the Iran-China Group, "[n]otwithstanding any other provision of law." Accordingly, the *Federal Insurance* Claimants hereby assert their superior interest in so much of the Defendant Cryptocurrency as may ultimately be necessary to satisfy the *Federal Insurance* Claimants' outstanding compensatory damages judgments against Iran, plus post-judgment interest thereon. TRIA makes the *Federal Insurance* Claimants' interest in the Defendant Cryptocurrency senior to any interest of the U.S. government.

In support of this Notice, the *Federal Insurance* Claimants state as follows:

I. **The *Federal Insurance* Claimants Have Been Awarded $7,009,501,372.00 In Compensatory Damages Against Iran.**

1. The *Federal Insurance* Claimants are commercial entities that sustained billions of dollars in property damage, business interruption, and other losses as a consequence of the 9/11 Attacks.[2]

2. Between 2015 and 2016, the U.S. District Court for the Southern District of New York determined that Iran was liable under 28 U.S.C. § 1605A, and for causing the *Federal Insurance* Claimants' damages, and entered judgment awarding the *Federal Insurance* Claimants compensatory damages and prejudgment interest.

4. The damages judgment awarded to the *Federal Insurance* Claimants totals $7,009,501,372.00 ($3,040,998,426.03 in compensatory damages + $3,968,502,945.97 in prejudgment interest). *See* Judgment, Case No. 1:03-md-01570 (S.D.N.Y.), MDL ECF No. 3233, attached hereto as Exhibit 1. *See also* Amended Judgment, MDL ECF No. 3890 (tracking the compensatory damage awards for each of the individual member company plaintiffs), attached hereto as Exhibit 2.

5. To date, Iran has not paid any portion of any of the *Federal Insurance* Claimants' judgment. The *Federal Insurance* Claimants' judgment continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

II. **The U.S. Government Commenced This Forfeiture Action Against The Defendant Cryptocurrency Without Disclosing Its Extensive Connections To Iran.**

8. On October 14, 2025, the U.S. government initiated the instant civil forfeiture action against approximately 127,271 Bitcoin once stored in the virtual-currency addresses

---

[2] *See Federal Insurance, et al. v. Al Qaida, et al.*, Case No. 1:03-cv-06978 (S.D.N.Y.) (GBD) (SN), consolidated into the multidistrict litigation, *In Re: Terrorist Attacks on September 11, 2001*, Case No. 1:03-md-01570 (S.D.N.Y.) (GBD) (SN).

identified in Attachment A of its complaint. *See* ECF No. 1 ("Forfeiture Compl.") at 1 & Attachment. On the same day, this Court issued an arrest warrant *in rem* for Defendant Cryptocurrency pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* ECF No. 3.

9. The U.S. government alleges the Defendant Cryptocurrency is subject to condemnation and forfeiture by the United States: (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956. *See* Forfeiture Compl. ¶ 2. Specifically, the U.S. government alleges that the Defendant Cryptocurrency was involved in or derived from money-laundering operations conducted by Chen Zhi and Prince Holding Group, an alleged front for Chen's transnational criminal organization. *Id.* at ¶¶ 20, 38-43.

10. According to the U.S. government, one such scheme involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds." *Id.* ¶ 42.

11. The U.S. government describes "Lubian" as "a Chinese bitcoin mining operation that maintained bitcoin mining facilities across Asia, including in China and Iran." *Id.* ¶ 16(u) (emphasis added). However, the U.S. government did not include information that put the *Federal Insurance* Claimants on notice of the Iranian government's interest in the bitcoin mining operation and assets in issue, or otherwise that the *Federal Insurance* Claimants had a basis to claim any of the Defendant Cryptocurrency.

**III. The *Federal Insurance* Claimants Just Recently Learned Of The Relationship Between The Defendant Cryptocurrency And The Government Of Iran.**

12. Based on information the *Federal Insurance* Claimants only recently learned, it appears that the Defendant Cryptocurrency is directly tied to the Iranian government, which was not clear from the forfeiture pleadings commenced by the U.S. government.

13. On December 26, 2025, other victims of Iran's state-sponsored terrorism commenced a separate action alleging that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist Iran's longstanding efforts to evade U.S. sanctions. *See Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, Case No. 1:25-cv-07093 (E.D.N.Y.), Complaint for Execution and Turnover, ECF No. 1.

14. Plaintiffs in the *Fritz* Action, along with another group of victims of Iran's state-sponsored terrorism (the "*Baxter* Victims"), filed Notices of Verified Claims in this action on December 29, 2025. *See* ECF Nos. 29 and 30. Additional Notices of Verified Claims have since been filed in this action. *See, e.g.,* ECF Nos. 39, 52, 69, 70, 86, 88, 107, 112, 118.

15. Based on the information revealed in the allegations in the *Fritz* Action and summarized by the Notices of Verified Claims filed by the other terrorism victim claimants in this action, the *Federal Insurance* Claimants now submit this Notice of Verified Claim.

**IV. Under TRIA, the *Federal Insurance* Claimants Have A Senior Interest In The Defendant Cryptocurrency.**

16. In the context of a forfeiture action, at this stage of the proceedings, the *Federal Insurance* Claimants need only assert that they have a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (citation omitted). "[W]hether [they] ultimately prove[ ] the existence of that interest is a question for a later stage in the proceedings." *Id.* (citation omitted). Here, based on the information alleged in the *Fritz* Action and

5

summarized by the Notices of Verified Claims filed by the other terrorism victim claimants in this action, the *Federal Insurance* Claimants have far more than a "facially colorable interest" in the Defendant Cryptocurrency.

17. The *Federal Insurance* Claimants are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. As has now been alleged, because the Iran-China Group was or is an agent or instrumentality of Iran, TRIA entitles the *Federal Insurance* Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the *Federal Insurance* Claimants have a possessory interest in the Defendant Cryptocurrency, which permits them to bring the claims asserted here.

18. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note. TRIA's cornerstone is the statute's broad "notwithstanding" clause, which aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). The notwithstanding clause "mak[es] plain that the force of the [statute] extends everywhere" and "'supersede[s] all other laws.'" *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (citation omitted). Accordingly, because it expressly overrides "conflict[ing] laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

19. Because the *Federal Insurance* Claimants satisfy the requirements of TRIA, their interest in the Defendant Cryptocurrency necessarily is superior to the claims of the U.S. government, as well as all other non-TRIA claimants, in this forfeiture action. First, as explained above, the *Federal Insurance* Claimants hold a judgment for compensatory damages against Iran based on an act of terrorism under 28 U.S.C. § 1605A. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. *See* TRIA § 201(d)(4); Executive Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012). Third, as alleged in the *Fritz* Action, the Iran-China Group operated as Iran's agency or instrumentality by materially helping Iran avoiding U.S. sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction and behest. *See Fritz* Action, ECF No. 70, Plaintiffs' Memorandum of Law in Support of Motion for Attachment, at 13-17 (Dec. 28, 2025); *see also Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016). Fourth, under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act. TRIA § 201(d)(2)(A).

20. The U.S. government has used its authority under that statute to "block" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 120. As a result, if the Iran-China Group is an agency or instrumentality of Iran, all property of the Iran-China Group qualifies as a blocked asset under TRIA. *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022). Because the Defendant Cryptocurrency is property of the Iran-China Group, it is therefore blocked and subject to execution by the *Federal Insurance* Claimants under TRIA.

21. Pursuant to 28 U.S.C. § 983(a) and Rule G, the *Federal Insurance* Claimants hereby assert a protective, prophylactic claim against such amount of the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—as may ultimately be necessary to satisfy the outstanding compensatory damages owed to them under their judgment against Iran, plus post-judgment interest, based on the date the Defendant Cryptocurrency is valued for purposes of judgment. The *Federal Insurance* Claimants' claim is senior to the U.S. government's claim. Notwithstanding the U.S. government's forfeiture efforts, the *Federal Insurance* Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency.

Dated: January 27, 2026					Respectfully submitted,

*/s/ John B. Galligan*
John B. Galligan, Esq.
Guy A. Bell, Esq.
COZEN O'CONNOR
3WTC
175 Greenwich Street, 55th Floor
New York, NY 10007
Telephone: (212) 509-9400
jgalligan@cozen.com
gbell@cozen.com

*Attorneys for Federal Insurance Claimants*

LEGAL\112745921\1

# Exhibit 1

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

TERRORIST ATTACKS ON,            03 MDL 1570 (GBD) (FM)
SEPTEMBER 11, 2001

**JUDGMENT**

------------------------------------------------------------X

This document relates to:

Federal Insurance Co. v. al Qaida, 03-cv-6978 (GBD) (FM)

    Whereas on December 28, 2015, Magistrate Judge Maas, having issued a Report and Recommendation concerning the motions of certain plaintiffs in Ashton v. al Qaeda Islamic Army, 02-cv6977 (GBD) (FM) ("Ashton") and Federal Insurance Co. v. Al Qaida, 03-cv-6978 (GBD) (FM) (Federal Insurance") for assessments of damages in relation to certain categories of their claims against Iran; ("Report"); in particular, those applications sought an assessment of damages in favor of the wrongful death plaintiffs in Ashton solely as to the pre-death conscious pain and suffering components of their claims, and an assessment of damages in favor of the Federal Insurance plaintiffs relative to their property damage claims; with regard to the Federal Insurance plaintiffs (See Attached Exhibit A), the Report recommended they be award a default judgment in the amount of $3,040,998,426.03; the Report also recommended that to the extent that the plaintiffs' claims arise out of injuries in New York State, they should be awarded prejudgment interest at the statutory simple interest rate of nine percent per annum from September 11, 2001, through the date judgment is entered; to the extent that the claims arise out of injuries occurring elsewhere, the Report recommended awarding interest for the same period at the rate of 4.96 percent per annum, compounded annually should this Court deem annually compounded interest appropriate, and the

matter having come before the Honorable George B. Daniels, United States District Judge, and the Court, on March 9, 2016, having rendered its Memorandum Opinion and Order adopting the findings and recommendations set forth in the Report in their entirety, as amended (See Amended Order of Judgment, ECF No. 3226), and awarding the Federal Insurance plaintiffs a default judgment against Iran in the amount of $3,040,998,426.03, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion and Order dated March 9, 2016, the Federal Insurance plaintiffs are awarded a default judgment against Iran in the amount of $3,040,998,426.03; to the extent that the plaintiffs' claims arise out of injuries in New York State, they are awarded prejudgment interest at the statutory simple interest rate of nine percent per annum from September 11, 2001, through the date of the Amended Order of Judgment, ECF No. 3226, (March 8, 2016); and to the extent that the claims arise out of injuries occurring elsewhere, they are awarded interest for the same period at the rate of 4.96 percent per annum, compounded annually.

Dated:   New York, New York
         March 16, 2016

                                                    RUBY J. KRAJICK
                                                    _____
                                                    Clerk of Court
                                            BY:     _____
                                                    Deputy Clerk

**THIS DOCUMENT WAS ENTERED ON THE DOCKET ON** _____

## Exhibit A

## The Federal Insurance Plaintiffs

| CARRIER | AMOUNT |
|---|---|
| AXA | $539,784,217.34 |
| Chubb | 2,217,468,721.70 |
| MRAm | 107,230,501.59 |
| OneBeacon | 176,514,985.40 |
| Total | $3,040,998,426.03 |

# Exhibit 2

Case 1:25-cv-05745-RPK Document 125 Filed 01/27/26 Page 14 of 16 PageID #:
Case 1:03-md-01570-GBD-SN Document 3890 Filed 01/26/18 Page 1 of 3
2952

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/26/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
| | ECF Case |

This document relates to: *Federal Insurance Co., et al. v. al Qaida, et al.*
03 CV 06978 (GBD) (SN)

## AMENDED JUDGMENT

Whereas, this matter having come before the Honorable George B. Daniels, United States District Judge, on the motion of certain plaintiffs for entry of a monetary judgment against defendant Iran, and the Court, on March 9, 2016, having adopted the December 28, 2015 Report and Recommendation made by Magistrate Judge Frank Maas concerning that motion in its entirety, and directing the Clerk of Court to enter judgments against Iran and in favor of the moving plaintiffs in accordance with the Report and Recommendation and the March 9, 2016 Order adopting same, it is:

**ORDERED, ADJUDGED and DECREED:** That for the reasons stated in the Court's Order dated March 9, 2016, judgment is hereby entered against defendant Iran and in favor of the moving plaintiffs on their claims arising under 28 U.S.C. §1605A(d) as follows:

| Plaintiff | Judgment |
|---|---|
| Vigilant Insurance Company | $42,305,933.24 |
| Chubb Custom Insurance Company | $612,585.00 |
| Chubb Indemnity Insurance Company | $4,083,878.20 |
| Federal Insurance Company | $1,513,667,597.39 |

| | |
|---|---|
| Chubb Insurance Company of New Jersey | $412,681.71 |
| Chubb Insurance Company of Canada | $50,452,395.71 |
| Pacific Indemnity Company | $9,936,536.66 |
| Great Northern Insurance Company | $595,997,113.79 |
| AXA Art Insurance Corp. | $14,287,543.00 |
| AXA Global Risks (UK) Ltd. | $10,986,623.57 |
| AXA CSA UK Branch | $64,779,883.00 |
| AXA Insurance Company | $131,696,044.96 |
| AXA Reinsurance Company | $82,714,778.00 |
| AXA RE | $105,790,023.00 |
| AXA RE Canadian Branch | $26,138,407.11 |
| AXA RE UK Plc | $18,162,701.70 |
| AXA Versicherung | $923,053.00 |
| SPS RE | $84,305,160.00 |
| American Alternative Insurance Company | $3,922,782.07 |
| Princeton Excess and Surplus Lines Insurance Company | $3,796,292.50 |
| Great Lakes UK Reinsurance Company | $99,511,427.02 |
| OneBeacon Insurance Company | $176,514,985.40 |

2

**IT IS FURTHER ORDERED, ADJUDGED and DECREED:** That to the extent that the plaintiffs' claims under 28 U.S.C. § 1605A(d) arise out of injuries in New York State, they are awarded prejudgment interest at the statutory simply interest rate of nine percent per annum from September 11, 2001, through the date of the Amended Order of Judgment, ECF No. 3226 (March 8, 2016); and to the extent that the claims arise out of injuries occurring elsewhere, they are awarded interest for the same period at the rate of 4.96 percent per annum, compounding annually.

Dated: January 26, 2018
New York, New York

RUBY J. KRAJICK

_____
Clerk of Court

BY:

_____
Deputy Clerk