

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AFM:BW
F. #2024R00105

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 27, 2026

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Approximately 127,271 Bitcoin
                  Civil Docket No. 25-5745 (RPK)

Dear Judge Kovner:

      The government respectfully submits this letter in response to the Court's January 20, 2026 Order (the "Order") directing the government to respond to various putative claimants' motions for leave or for extensions of time to file claims.

      With the exception of LuBian, the putative claimants generally fall into two categories: (1) claimants who assert that they are cryptocurrency investment fraud victims (the "Investment Fraud Claimants") and (2) claimants who possess judgments against the state of Iran and assert that the Defendant Cryptocurrency or some part of it is subject to those judgments (the "Iran Claimants"). The table below identifies the claimants, the dates and docket numbers of their submissions, and the categories into which they fall:

| ECF No. | Filing Date | Claimant | Category |
|---|---|---|---|
| 48 | 1/12/2026 | Danli Wang | Investment Fraud |
| 52 | 1/14/2026 | Iranian Terrorism Victims | Iran |
| 53 | 1/14/2026 | Ravi Anand | Investment Fraud |
| 54 | 1/15/2026 | Andy Yan[1] | Investment Fraud |
| 56 | 1/16/2026 | Chairnoff Claimants | Iran |
| 62 | 1/16/2026 | LuBian | N/A |
| 66 | 1/19/2026 | O'Neill Claimants | Iran |
| 68 | 1/19/2026 | Pennington and Driscoll Claimants | Iran |
| 72 | 1/19/2026 | Lawrence D. Van Dyn Hoven | Investment Fraud |
| 73 | 1/19/2026 | Havlish Claimants | Iran |
| 85 | 1/20/2026 | Gold Star Claimants | Iran |
| 106 | 1/23/2026 | Kristen Breitweiser, Caroline Breitweiser, Patricia Ryan, Laura Ryan, Colin Ryan, Kristen Ryan, Jacqui Eaton-Garland (collectively, the "Breitweiser Claimants") | Iran |
| 111 | 1/23/2026 | Fishbeck Claimants | Iran |
| 125 | 1/27/2026 | Federal Insurance Claimants[2] | Iran |

With the exception of the motion for an extension of time filed by LuBian (ECF No. 62), each of the motions for leave or for extensions of time was filed after the expiration of the applicable Court-imposed December 29, 2025 filing deadline—itself an extension of the statutorily specified December 15, 2025 deadline.[3]  The Court should deny these putative claimants leave to file out of time because they have not established "excusable neglect."  To the contrary, these claimants' failure to file on time flows from their fundamental lack of standing.  They were unaware of their purported interests within the prescribed timeframe, *not* because they were unlucky and failed to hear about the government's forfeiture action in time, but because—as discussed below—their purported interests are not sufficiently definite and direct to support a cognizable claim against the Defendant Cryptocurrency.

In addition, the Court should deny the motions because permitting these claimants to enter the case despite their untimely claims would prejudice the government, and overwhelm

---

[1]   Andy Yan filed an untimely claim on January 15, 2026, but did not file a motion for an extension of time or for leave to file.  Although Yan's claim is not covered by the Order, the government addresses it here as well.

[2]   Subsequent to the Order, the Gold Star, Breitweiser, Fishbeck and Federal Insurance Claimants also filed motions for extension of time or to leave to file.  This letter addresses the motions filed by these putative claimants, in addition to the motions identified in the Order.

[3]   Unlike the other putative claimants, LuBian was required to file its claim by January 19, 2026.  *See* Dec. 18, 2025 Order.  LuBian filed its motion for extension of time on January 16, 2026.  ECF No. 62.

2

the Court's docket, by opening the floodgates to countless more untimely claims by similarly situated—and similarly unmeritorious—claimants.

In the alternative, the government proposes that the Court reserve decision on the instant motions pending Your Honor's adjudication of similarly situated—but timely—claims that the government intends to oppose for lack of standing. If the Court determines that those claimants in fact have standing, it can then reassess the pending motions for extension in light of that determination.

### A. Procedural Background

On October 8, 2025, Chen Zhi ("Chen") was indicted by a grand jury sitting in the Eastern District of New York. *See United States v. Chen Zhi*, No. 25-cr-321 (RPK), ECF No. 1 (the "Indictment"). The Indictment charges that Chen operated and profited from forced-labor scam compounds across Cambodia that engaged in cryptocurrency investment fraud schemes. On October 14, 2025, the Indictment was unsealed. On that same day, the government filed a civil complaint in the above-captioned case (the "Complaint"), seeking to forfeit, as proceeds of fraud and property involved in money laundering, 127,271 Bitcoin (the "Defendant Cryptocurrency"). Compl. ¶ 44 n.6; *see also* Indictment ¶ 53.

Pursuant to Rule G(4)(a)(iv)(C), the government published notice of this action on its official forfeiture website, advising that the deadline to file claims for potential claimants who did *not* receive direct notice is 60 days from the first day of publication (October 16, 2025), *i.e.* December 15, 2025. On December 11, 2025, the Court extended the filing deadline until December 29, 2025. *See* Dec. 11, 2025 Order. On December 18, 2025, the Court extended the filing deadline for LuBian until January 19, 2026. *See* Dec. 18, 2025 Order.

Of particular relevance here, on December 26, 2025, a group comprising hundreds of individuals who are judgment creditors of Iran filed a complaint against LuBian seeking to attach the Defendant Cryptocurrency pursuant to the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, sec. 201(a), 116 Stat. 2322, 2337–40 (2012) (codified at 28 U.S.C. § 1610 note) under New York procedural law, *see* N.Y. CPLR §§ 5225(b) and 5227 (governing attachment of assets). *See* Complaint for Execution and Turnover, *Fritz, et al. v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-CV-07093 (E.D.N.Y.) (the "Fritz Suit") (ECF No. 1). On December 29, 2025, those individuals filed a claim in this case (the "Fritz Claim"). *See* ECF No. 29. The Fritz Claim and the Fritz Suit allege that LuBian is an agency or instrumentality of Iran. *See* ECF No. 29 at 1-2. The majority of the Iran Claimants' assertions are predicated on the allegations in the Fritz Suit and the Fritz Claim.

### B. Applicable Law

Rule G(5)(a)(ii)(B) requires claimants who did not receive direct notice to file their claims within 60 days of publication on the government's forfeiture website, "[u]nless the court for good cause sets a different time." Rule G(5)(a)(ii)(B). Although a court may alter the deadlines set forth in Rule G "for good cause," once a deadline is set "courts generally permit a party to file a belated claim [only] if the party demonstrates excusable neglect for failure to

3

timely file." *United States v. $417,143.48*, No. 13-CV-5567 (MKB), 2015 WL 5178121, at *9 (E.D.N.Y. Sept. 2, 2015) (aff'd *United States v. $417,143.48*, 682 F. App'x 17 (2d Cir. 2017)); *see also United States v. All Assets of Blue Chip Coffee, Inc.*, 836 F. Supp. 104, 108 (E.D.N.Y. 1993) ("A claimant in a civil forfeiture action may file a late claim only upon a showing of excusable neglect.") (internal quotation marks omitted). "The late claimant has the burden of proving excusable neglect." *United States v. $96,000 in United States Currency*, No. 18-CV-5993 (ALC), 2019 WL 3334493, at *3 (S.D.N.Y. July 25, 2019) (citing *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005)).

In evaluating whether a party has demonstrated excusable neglect, the Supreme Court has directed courts to consider: (i) the danger of prejudice to the non-movant, (ii) the length of the delay and its potential impact on judicial proceedings, (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). In addition, courts in this district consider (i) "when the claimant became aware of the seizure" and (ii) "whether the government was aware of the claimant's interest." *$417,143.48*, 2015 WL 5178121, at *9; *see also* Report and Recommendation at *2, *United States v. Approximately $168,052.25*, No. 14-CV-4219 (NGG) (RER) (E.D.N.Y. Mar. 16, 2016). "When balancing these factors, the 'reason for delay' factor 'predominates, and the other three [factors set forth in *Pioneer*] are significant only in close cases.'" *$96,000*, 2019 WL 3334493, at *3 (quoting *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004)).

In all cases, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

### C. Argument

The Court should deny the motions filed by the Investment Fraud Claimants and the Iran Claimants because the putative claimants have not satisfied their burden of establishing that their failure to file timely claims was the result of excusable neglect. Further, were the Court to grant the motions, it would prejudice the government by opening the door to an extremely large number of similarly situated—and similarly untimely—putative claimants. In the alternative, the Court should reserve judgment on these applications in order to manage its docket and permit the efficient progress of the central litigation. The Court should also deny LuBian's motion because LuBian's proffered justification for needing an extension of time—to assess the effect of the Fritz Claim on LuBian's claim—does not constitute good cause for a delay.

1. *The Investment Fraud and Iran Claimants Have Not Provided a Compelling Reason for their Delay in Filing*

The Investment Fraud Claimants and Iran Claimants offer similar justifications for failing to file timely claims. Claimants in both groups generally assert that they were

4

unaware of the instant action or did not realize the supposed connection between their losses and the Defendant Cryptocurrency until it was too late to file a timely claim.[4]

At best, these reasons amount to mere neglect, rather than excusable neglect. Both the Indictment and Complaint were highly publicized. Furthermore, the 60-day window for claimants who did not receive direct notice to file claims—which the Court has already once extended by 14 days—exists precisely to provide putative claimants with time to learn of the forfeiture action and file a claim. Neither set of claimants cites any case in which a court has found neglect to be excusable on the mere basis that a putative claimant was unaware of the forfeiture action or failed to realize that it had a basis to file a claim. To the contrary, courts have tended to find neglect excusable only where concrete, real-world obstacles intervened to prevent timely filing. *Compare United States v. $153,115.00 United States Currency*, No. 21-CV-380 (WMS), 2021 WL 3507894, at *3 (W.D.N.Y. Aug. 10, 2021) (finding excusable neglect where six-day delay was result of claimant's attorney being "adversely impacted due to COVID-19 and other health related reasons"); *United States v. $10,990.00 in United States Currency*, No. 18-CV-15 (JCH), 2019 WL 1332585, at *3 (D.N.M. Mar. 25, 2019) (finding excusable neglect where claimant asserted that his "incarceration has made it difficult to file pleadings on time because he does not have access to electronic filing"); *and $96,000*, 2019 WL 3334493, at *4 (finding excusable neglect where missed deadline caused by counsel's "administrative office failure" to record filing deadline) *with Blue Chip Coffee*, 836 F. Supp. at 108 (claimant who "believed in her husband's innocence and therefore did not make a claim to the property prior to his conviction" did not demonstrate excusable neglect for late filing) *and United States v. Funds in the Amount of $130,000 United States Currency*, No. 19-CV-3440 (EEB), 2021 WL 2433733, at *3 (N.D. Ill. June 15, 2021) (counsel's failure to realize he needed to file a claim despite being so advised by the government did not constitute excusable neglect).

In any event, the putative claimants' untimeliness reflects a fundamental, substantive defect in their claims. As discussed below, forfeiture proceedings are open only to those who can demonstrate an "ownership or possessory interest in the property at issue." *United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004). The late-filing movants failed to become aware of their putative claims precisely because they lacked that necessary interest. In staying or denying these motions, therefore, the Court will not prejudice anyone with a legally cognizable claim to the Defendant Cryptocurrency.

---

[4] In particular, the Iran Claimants typically assert that they only "realized" that they had a basis to file a claim upon learning of the Fritz Claimants' civil lawsuit and/or forfeiture claim, or upon seeing a follow-on suit that itself relied on the Fritz Claimants' applications. *See, e.g.*, ECF No. 52 ("As the Iranian Terrorism Victims just recently learned from the allegations in a separate proceeding [the Fritz Suit] . . . the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ('Iran-China Group'). Upon learning this information, the Iranian Terrorism Victims promptly filed this Notice."); ECF No. 56 ("We have just recently learned, from the allegations in [the Fritz Suit], that the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ('Iran-China Group')"; ECF No. 85 (The Gold Start claimants' "counsel only recently learned—after the December 29, 2025, deadline—of Iran's interest in the Defendant Cryptocurrency by its review of the filings in [the Fritz Suit].").

5

### a. *The Investment Fraud Claimants Lack Standing*

"To establish standing in a civil forfeiture proceeding, the claimant must demonstrate some ownership or possessory interest in the property at issue." *United States v. Agnello,* 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004). "A claim of entitlement to payment is not the same as claiming an ownership interest in seized accounts." *Id.* (citing *United States v. All Funds on Deposit on or Before November 8, 1994 in Citibank Account Number 42773634 In The Name of Kahn,* 955 F. Supp. 23, 26 (E.D.N.Y. 1997), *aff'd,* 129 F.3d 114 (2d Cir. 1997)). "Fraud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property; instead, such victims acquire a debt against their wrongdoers." *United States v. 8 Gilcrease Lane, Quincy Florida 32351*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *Agnello*). This "generalized legal interest . . . does not equate to the necessary particularized interest in any specific asset . . . required for standing" in a civil forfeiture proceeding. *Id.* A fraud victim's "ability to trace his property to defendant's assets is irrelevant." *Id.* at n.2.

Put simply, fraud victims who are unsecured creditors of fraudsters do not have standing to assert a claim in a civil forfeiture action involving property belonging to the fraudster. *See id.*; *see also United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003) ("[F]ederal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.") (quoting *United States v. $20,193.39,* 16 F.3d 344, 346 (9th Cir.1994) (collecting cases)); *United States v. 1976 Sabreliner Business Jet and Log Books*, No. 12-CV-368 (TAV), 2017 WL 5691009, at *6 (E.D. Tenn. Mar. 7, 2017) ("[F]raud victims do not retain a legal interest in property when they voluntarily transfer the property to fraudsters."); *United States v. $58,000.00 in U.S. Currency*, No. 11-CV-95 (RLV), 2012 WL 2884697, at *3 (W.D.N.C. July 13, 2012) ("Because [fraud victim claimant] is a mere unsecured creditor under the facts alleged in his Verified Complaint, the Court finds that he lacks constitutional standing to challenge forfeiture"); *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, No. 11-CV-4175 (MFK), 2012 WL 1032904, at *6 (N.D. Ill. Mar. 27, 2012).

The Investment Fraud Claimants purport to be fraud victims who claim they can trace their lost assets to the Defendant Cryptocurrency. As such, they are paradigmatic unsecured creditors and so lack standing to assert a claim in this civil forfeiture proceeding. In light of this fundamental defect in the Investment Fraud Claimants' claims, the Court should not grant them leave to file untimely claims, or should reserve judgment on the motions pending further briefing on the underlying standing issues.

### b. *The Iran Claimants Lack Standing*

The Iran Claimants' purported claims are similarly invalid. As a preliminary matter, the Iran Claimants are, at best, judgment creditors of the LuBian mining operation, and as such they face the same challenges in establishing standing that the Investment Fraud Victims face. Their claims are also premised on the assertion that the Defendant Cryptocurrency "is property of" LuBian, which they characterize as an agency or instrumentality of Iran. *See, e.g.*, ECF No. 73, at 1 (Havlish Claimants). Their claims therefore depend on LuBian prevailing on

its own claim of ownership over the Defendant Cryptocurrency—a disputed claim that will be contested by the government as well as by other competing claimants, including the defendant Chen Zhi and his alter ego the Prince Holding Group. *See Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 438 (D.D.C. 2012) ("[J]udgment debtors normally pay for whatever caused the adverse judgment against them—third parties do not usually pick up the tab.").

   The Iran Claimants' claims fail for a more fundamental reason. They assert that TRIA provides them with an interest in the Defendant Cryptocurrency and a basis to assert claims in the instant forfeiture proceeding. Under the plain text of the statute, however, TRIA only applies to the "blocked assets" of a terrorist party. *See Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi,* 556 U.S. 366, 374, (2009) (TRIA permits "a person with a terrorism-related judgment to attach an asset . . . provided the asset was a 'blocked asset' "). A "blocked asset" is defined in the statute as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act ['TWEA'] . . . or under sections 202 and 203 of the International Emergency Economic Powers Act ['IEEPA']." TRIA § 201(d)(2)(A). That means that a blocked asset must have been "seized or frozen," and it must have been seized or frozen "under" either TWEA or IEEPA. *See Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63, 75 (E.D.N.Y. 2004) ("[T]he term 'blocked' under the TRIA is specifically limited to assets that are 'seized or frozen'—a limitation that this Court cannot ignore."). The Defendant Cryptocurrency is not a blocked asset under TRIA, because it was not seized or frozen "under" TWEA or IEEPA. It was seized and brought within this Court's *in rem* jurisdiction in a civil forfeiture proceeding based on criminal violations of the wire fraud and money laundering statutes.

   TRIA, therefore, does not provide a basis for the Iran Claimants to assert a claim and recover against the Defendant Cryptocurrency in this forfeiture action. *See, e.g.*, *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 915 (11th Cir. 2013) (holding that TRIA did not reach funds frozen under a different statute, the Foreign Narcotics Kingpin Designation Act, explaining: "Section 201(d)(2)(A) declares that 'blocked asset' *means* an asset frozen under select provisions of the Trading Act and the Economic Powers Act. Assets frozen under the Kingpin Act, however, are absent from that definition. The unavoidable conclusion is that 'blocked assets' under the Terrorism Act does not mean assets frozen pursuant to the Kingpin Act." (emphasis in the original)). And even if this Court were to disregard the words of the statute by holding that an asset seized for forfeiture under criminal wire fraud and money laundering theories counts as an asset "seized or frozen by the United States under [IEEPA] or under [TWEA]," TRIA § 201(d)(2)(A), numerous courts in this Circuit and elsewhere have held that TRIA does not reach property that is already subject to a forfeiture proceeding. *See, e.g.*, *Levin v. United States*, 774 F. App'x 49, 50 (2d Cir. 2019) (TRIA does not "extend so far" as to permit a judgment creditor against Iran to "seek a distribution of property *seized by the Government*" for forfeiture) (emphasis in the original); *United States v. BNP Paribas S.A.*, No. 14-CR-460 (LGS), 2015 WL 1962882, at *3 (S.D.N.Y. Apr. 30, 2015) (third party petitioner seeking to assert a lien based on TRIA on funds forfeited in criminal case lacked standing because the criminal forfeiture did not involve any "blocked assets"); *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, 783 F.3d 607, 622-25 (7th Cir. 2015) (denying TRIA-based claim where the subject funds were not "blocked" as defined by TRIA and noting that once the United States "executed its warrants of arrest *in rem,* the funds . . . were no longer

7

'seized or frozen' as TRIA contemplates the terms" but rather "were seized under civil forfeiture"); *United States v. Holy Land Foundation for Relief and Development*, 722 F.3d 677, 685 (5th Cir. 2013) (TRIA does not "reach those funds which the government has been given authorization to control through another means" outside those stated in TRIA); *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 139 (2d Cir. 2016) (citing *Holy Land Foundation* for principle that "the plain text of the TRIA permits attachment of assets 'seized or frozen by the United States . . . under sections 202 and 203 of the [IEEPA],' but it "does not reach" assets seized "through other means" such as the appointment of a court monitor).

Because the Iran Claimants' claims are not only untimely, but fundamentally unmeritorious, the Court should deny leave to file out of time, or should, at minimum, reserve judgment on the late-filed claims until it has had the opportunity to rule on the Fritz Claim.

> 2. *Granting Investment Fraud and Iran Claimants' Motions Would Prejudice the Government by Opening the Floodgates to Numerous Meritless Claims*

Since the expiration of the claims deadline in this case, 13 putative claimants have already filed submissions, representing more than 6,500 individuals and multiple entities. These claims are being filed with such frequency that four of the latest groups of purported claimants appeared in the case *after* the Court's ruling attempting to consolidate and expand the scope of the government's response and "catch up" with recently arrived claimants. Several Iran Claimants have also filed actions before other judges, seeking attachment of the Defendant Cryptocurrency and pointing to the growing pool of competing Iran Claimants as evidence that the Defendant Cryptocurrency is subject to "dissipation" requiring an emergency remedy. *See, e.g.*, *Fritz*, ECF No. 85, at 2 (complaining of "thousands of other claimants with billions of dollars of claims against the Bitcoin all seeking to jump the line").

There is no reason to think that the flood is over. The claimants in this case alone have amassed over $80 billion of outstanding judgments against Iran, and there are almost certainly additional plaintiffs with judgments against Iran who have not yet come forward. Each of those additional creditors has a rational incentive to file a claim in this case, and to take action in other courts seeking to box out competing creditors. *See id.* (calling separate action in the Southern District of New York a "blatant attempt to circumvent this Court").

In light of the unchecked influx of potential claimants, the government respectfully suggests that the Court deny the motions for untimely filing that are at issue here. The Court may, if it wishes, reopen the claims period if it finds that the timely-filed claims are meritorious.

> c. *In the Alternative, the Court Should Reserve Judgment on the Motions*

As noted above, the Court has the inherent authority to take necessary steps to manage its docket. The government intends shortly to begin opposing timely motions filed by claimants who are similarly situated to the Investment Fraud and Iran Claimants. Additionally, the government is required to file a response in the Fritz Case by February 9, 2026. Though the government respectfully submits that the Court should deny the instant motions outright, the

Court may, as an alternative, manage its docket by reserving decision pending adjudication of timely claims by similarly situated claimants.

### 3. *The Court Should Deny LuBian's Motion for an Extension of Time*

LuBian seeks an extension of time "to permit adequate review" of the claims advanced in the Fritz suit. *See* ECF No. 61 at 1. However, LuBian does not explain what bearing the allegations in the Fritz Suit could possibly have on LuBian's ability to file a claim. Those allegations, describing LuBian as an Iranian instrumentality, do not controvert LuBian's ownership or possessory interest in the Defendant Cryptocurrency.

To the extent LuBian needs maneuvering room in order to make a tactical decision about its positioning in light of the recent flood of Iran Claimants, that request is not one that this Court should indulge, because it is unrelated to the facts of the case and does not constitute good cause under Rule G.

### D. Conclusion

For all of the reasons discussed above, the Court should deny the pending motions for leave or for extensions of time to file claims, or should, in the alternative, reserve judgment on those motions.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/
Alexander Mindlin
Tanisha R. Payne
Benjamin Weintraub
Rebecca Schuman
Andrew Reich
Assistant U.S. Attorneys
(718) 254-7000

Christopher B. Brown
Supervisory Trial Attorney
National Security Cyber Section
National Security Division
U.S. Department of Justice

9