UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>        Defendant *In Rem*. | Civil Action No. 25-5745 (RPK) |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE *IN REM***

Claimants here are approximately 250 victims of terrorist attacks (the "Hamen Claimants")[1] who collectively hold judgments for more than $2.9 billion dollars in unsatisfied judgment against the Islamic Republic of Iran ("Iran") for its role in sponsoring the terrorist attacks that injured them.[2] Specifically, the Hamen Claimants hold $2,903,406,321.46 in judgements: $937,450,837.00 in compensatory damages, $1,858,943,115.86 in punitive damages, and $107,012,368.60 in pre-judgment interest.

These judgments are founded on the terrorism exception to the Foreign Sovereign Immunities Act, *see* 28 U.S.C. § 1605A, and its predecessor statute, *see* 28 U.S.C. § 1605(a)(7). The Hamen Claimants recently learned, from allegations filed in a separate turnover proceeding,

---

[1] A full list of the Hamen Claimants and the damages they have been awarded in various judicial proceedings is included as Attachment A to the accompanying Verification of the Hamen Claimants' Claims.

[2] These figures include forty-nine some claimants whose judgments have not yet been served, but are in the process of being served. Excluding these, the Hamen Claimants' claims are worth a total of $1,595,328,773.86: $665,368,848.00 in compensatory damages, $922,981,073.26 in punitive damages, and $6,978,852.60 in pre-judgment interest.

*see Fritz v. Iran and China Development Grp. d/b/a Lubian.com*, No. 25-07093 (E.D.N.Y.) (the "*Fritz* Action"), that the Defendant *In Rem* in this forfeiture action (the "Defendant Cryptocurrency") is the property of the Iran and China Investment Development Group (the "Iran-China Group"), which is an agency or instrumentality of Iran. Upon learning of the connection between the Defendant Cryptocurrency and Iran, the Hamen Claimants promptly filed this Notice along with the accompanying Letter Motion for an Extension of Time.

As also alleged in the *Fritz* Action, the Iran-China Group, doing business on the blockchain as Lubian.com or LuBian, is an agency or instrumentality of Iran that has materially supported Iran's efforts to evade U.S. sanctions by "mining" cryptocurrency in Iran.

The Hamen Claimants have the right, under the Terrorism Risk Insurance Act ("TRIA"), to execute on the property of Iran and its agencies and instrumentalities, including the Iran-China Group, "[n]otwithstanding any other provision of law." Terrorism Risk Insurance Act, Pub. L. No. 107–297, § 201, 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note. Accordingly, the Hamen Claimants hereby assert their superior interest in so much of the Defendant Cryptocurrency as may be necessary to satisfy the outstanding judgments against them, which TRIA makes senior to any interest that the Government or other claimants could assert.[3]

In support of this Notice, the Hamen Claimants state as follows:

**I.     The Hamen Claimants Have Been Awarded Over $2.9 Billion Against Iran.**

1. The Hamen Claimants are nearly 250 individuals who are the victims of Iranian-sponsored terrorism or their surviving family members. Each victim was either injured or killed

---

[3] Because the value of Bitcoin can vary widely from day-to-day, the amount of Bitcoin necessary to satisfy the Hamen Claimants' judgments cannot be fully determined until the Bitcoin is transferred or otherwise liquidated in satisfaction of the judgments.

by means of an act of extrajudicial killing or hostage taking carried out by Iranian-backed proxy militias in Iraq, Afghanistan, and/or Yemen.

2. The United States District Court for the District of Columbia (the "D.D.C.") has, across ten separate actions, determined that Iran is liable to the Hamen Claimants for its role in providing material support for these terrorist acts, and has awarded the Hamen Claimants more than $2.9 billion in damages for their injuries and suffering, including $937 million in compensatory damages, *see supra* nn.1 & 2.

A. **The *Hamen* Plaintiffs**

3. In October 2015, John Hamen and Mark McAlister—private U.S. Government contractors assisting in the renovation of a hotel in Yemen reserved for United Nations personnel—were abducted by members of the Yemeni militant group known as the Houthis. Hamen was strangled to death sixteen days later by members of the Houthis. They held McAlister hostage in a room with no light or toilet for the next six months until releasing him in exchange negotiated concessions. McAlister suffered, and continues to suffer, from severe anxiety, depression and PTSD as a result of his captivity, as do his wife and children.

4. On July 1, 2016, McAlister, Hamen's Estate, and their affected family members (the "*Hamen* Plaintiffs") filed suit against Iran in D.D.C. for providing material military and economic support to the Houthis. *See Hamen et al. v. Islamic Republic of Iran et al.*, Case No. 16-cv-01394-RDM.

5. On August 7, 2019, the *Hamen* Plaintiffs obtained judgment against Iran. The court found sufficient evidence in the record to demonstrate that Iran provided material support to the Houthis, which was "not only a 'substantial factor' but a necessary precondition to the Houthis kidnapping of McAlister and Hamen." *Id.,* Dkt. No. 63, at 26, 28.

6. The *Hamen* Plaintiffs were awarded $84,289,948 in compensatory damages and $168,579,896 in punitive damages, for a total award of $252,869,844.

7. On January 27, 2021, the D.D.C. entered an order pursuant to 28 U.S.C. § 1610(c), specifically authorizing enforcement of the *Hamen* Plainitffs' judgment.

**B.    The *Frost* Plaintiffs**

8. In January 2016, Waiel El-Maadawy, Amr Mohamed, and Russell Frost—U.S. citizens serving as private defense contractors in Baghdad, Iraq—were kidnapped and held hostage for one month by the militant group Saraya al-Salaam, which was supported by Iran. The three men were detained in cells too small to stand or lay down in. They were forced to endure several forms of torture, including mock executions, electric shocks from a car battery, and in one instance, El-Maadawy was forced to eat his own feces. Less than two years later, Frost died in part because of the injuries suffered during his captivity.

9. On April 4, 2017, El-Maadawy, Mohamed, Frost's estate, and their affected family members (the "*Frost* Plaintiffs") filed suit against Iran in D.D.C. *Frost et al. v. Islamic Republic of Iran*, Case No. 17-cv-00603-TJK.

10. On March 31, 2019, the *Frost* Plaintiffs obtained judgment against Iran. The court found that Iran "provided material support for the torture and hostage-taking of El-Maadawy, Mohamed, and Frost." *Id.,* Dkt. No. 65, at 19.

11. The *Frost* Plaintiffs were awarded $80,180,000 in compensatory damages and $160,360,000 in punitive damages, for a total award of $240,540,000.

12. On December 10, 2020, D.D.C. entered an order pursuant to 28 U.S.C. § 1610(c), specifically authorizing enforcement of the *Frost* Plaintiffs' judgment.

### C. The *W.A.* Plaintiffs

13. In May 2006, S.F.—a citizen of Iraq working for the U.S. government—was kidnapped by an Iranian militant group known as the Badr Organization. S.F. was held for ransom and tortured by the Badr Organization before being killed. His family found his body at the morgue several days later. He had a bullet in his skull, broken bones, and drill wounds in nonlethal areas—a signature torture method of the Badr Organization.

14. On August 10, 2018, S.F.'s estate and his affected family members (the "*W.A.* Plaintiffs) filed suit against the Islamic Republic of Iran in D.D.C. *W.A. et al. v. Islamic Republic of Iran et al.*, Case No. 18-cv-01883-CKK.

15. On December 16, 2019, the *W.A.* Plaintiffs obtained judgment against Iran. The court found that Iran provided material support for the Badr Organization during the relevant period. *Id.,* Dkt. No. 28, at 4.

16. The *W.A.* Plaintiffs were awarded $52,000,000 in compensatory damages and $150,000,000 in punitive damages, for a total award of $202,000,000.

17. On June 29, 2021, the D.D.C. entered an order pursuant to 28 U.S.C. § 1610(c), specifically authorizing enforcement of the *W.A.* Plaintiffs' judgment.

### D. The *Bernhardt* Plaintiffs

18. On December 30, 2009, Humam Khalil al-Balawi, a Jordanian doctor and al-Qaeda operative, detonated a vest containing over thirty pounds of C-4 explosives and shrapnel, killing himself and nine others at Forward Operating Base Chapman ("Camp Chapman"), a clandestine CIA installation in Khost, Afghanistan. The attack was the "single deadliest episode" for the CIA since September 11, 2001. Dane Paresi and Jeremy Wise were American CIA contractors among

those killed in the attack. The surviving family members of Paresi and Wise suffered, and continue to suffer, from severe anxiety, depression, and PTSD as a result of the brutal killings.

19. On November 26, 2018, the estates of Paresi and Wise, together with their affected family members, (the "*Bernhardt* Plaintiffs") filed suit against the Islamic Republic of Iran in D.D.C. for providing material military and economic support to al-Qaeda. *Bernhardt et al. v. Islamic Republic of Iran et al.*, Case No. 18-cv-2739 (TJK).

20. The *Bernhardt* Plaintiffs obtained judgment against Iran on March 22, 2023. The court found sufficient evidence in the record to demonstrate that "Iran materially supported al-Qaeda in its efforts to plan and execute the Camp Chapman attack," by serving as "al-Qaeda's main artery for funds, personnel, and communication." *Id.,* Dkt. No. 50, at 21-22.

21. The *Bernhardt* Plaintiffs were awarded $67,138,421 in compensatory damages and $201,415,263 in punitive damages, for a total award of $268,553,684.

22. On February 13, 2024, D.D.C. entered an order pursuant to 28 U.S.C. § 1610(c), specifically authorizing enforcement of the *Bernhardt* Plaintiffs' Judgment.

E. **The *Coombs* Plaintiffs**

23. In 2015, Casey Coombs, Scott Darden, Haisam Farran, and Wallead Luqman—American citizens working in Yemen—were each abducted by the Houthis. Coombs, a journalist, was held for sixteen days and was treated in such a manner as to cause serious spinal injury. Darden and Farran were held for 177 days, during which they were interrogated, beaten, and otherwise mistreated physically and emotionally. Luqman was abducted in front of his family and held and tortured in a variety of unsafe and inhumane locations over the course of 582 days. All four men suffered, and continues to suffer, from personal injuries and severe emotional distress.

24. On November 7, 2019, Coombs, Darden, Farran, and Luqman, and their affected family members (the "*Coombs* Plaintiffs") filed suit against Iran in D.D.C. for providing material military and economic support to the Houthis. *See Coombs et al. v. Islamic Republic of Iran*, Case No. 19-cv-03363-RDM.

25. On November 6, 2023, the *Coombs* Plaintiffs obtained judgment against Iran. The court found sufficient evidence in the record to demonstrate that Iran provided material support to the Houthis, leading to the hostage taking of Coombs, Darden, Farran, and Luqman. *Id.,* Dkt. No. 29, at 1–2.

26. The *Coombs* Plaintiffs were awarded $121,894,357 in compensatory damages and $182,841,535.50 in punitive damages, for a total award of $304,735,892.50.

27. On January 16, 2025, the D.D.C. entered an order pursuant to 28 U.S.C. § 1610(c), specifically authorizing enforcement of the *Coombs* Plainitffs' judgment. *Id.,* Dkt. No. 44 at 1.

    **F.**    **The *M.M.* Plaintiffs**

28. On May 31, 2017, a truck containing over three thousand pounds of explosives was detonated on a busy Kabul intersection, known as Zanbaq Square, adjacent to the city's diplomatic quarter. The explosion killed at least 150 people, including John Does 1–8, who were Afghan citizens employed by the United States as security personnel. Some of these men bravely approached the truck, causing the perpetrator to detonate the explosives before reaching his intended target.

29. On October 7, 2021, the estates of John Does 1–8 and their affected family members (the "*M.M.* Plaintiffs) filed suit against the Islamic Republic of Iran in D.D.C. *M.M. et al. v. Islamic Republic of Iran*, Case No. 21-cv-02783-TNM.

30. On December 22, 2023, the *M.M.* Plaintiffs obtained judgment against Iran. The court found "that Iran's material support to the Taliban and Haqqani Network proximately caused the Contractors' extrajudicial killings." *Id.,* Dkt. No. 38, at 12.

31. The *M.M.* Plaintiffs were awarded $239,659,299 in compensatory damages and $1,659,299 in punitive damages, for a total award of $241,318,598.

32. On August 4, 2025, the D.D.C. entered an order pursuant to 28 U.S.C. § 1610(c), specifically authorizing enforcement of the *M.M.* Plaintiffs' judgment. *Id.,* Dkt. No. 49, at 3.

### G. The *Gidada* Plaintiffs

33. Mikael Gidada and Sandra Loli—American citizens working in Yemen—were each abducted by the Houthis, on April 30, 2018 and June 11, 2019, respectively. Gidada was held for 899 days. Loli was held for 491 days. Gidada and Loli suffered, and continues to suffer, from personal injuries and severe emotional distress.

34. On September 3, 2021, Gidada and Loli, and their affected family members (the "*Gidada* Plaintiffs") filed suit against Iran in D.D.C. for providing material military and economic support to the Houthis. *See Gidada et al. v. Islamic Republic of Iran*, Case No. 21-cv-02338-RDM.

35. The *Gidada* Plaintiffs obtained judgment against Iran. The court found that Iran "knowingly and intentionally provid[ed] material support and resources to enable and assist the Houthis in carrying out acts of terrorism against Americans," leading to the hostage taking of Gidada and Loli. *Id.,* Dkt. No. 21, at 2.

36. On July 1, 2024, the *Gidada* Plaintiffs were awarded $47,378,852.61 in compensatory damages and $59,223,565.76 in punitive damages, for a total award of $106,602,418.37.

37. On April 17, 2025, the D.D.C. entered an order pursuant to 28 U.S.C. § 1610(c), specifically authorizing enforcement of the *Gidada* Plainitffs' judgment. *Id.,* Dkt. No. 40 at 1.

**H.    The *Roberts* Plaintiffs**

38. Between 2004 and 2011, Iranian-sponsored militias in Iraq carried out a vast number of roadside bombing attacks using a specialized device known as an explosively formed penetrator ("EFP"). The EFP design, capabilities, and components were imported into Iraq by Iran. Among the victims of those attacks were United States government contractors Jaco Botes, Leon Botha, Dean Capazorio, Pierre du Plessis, George Kieser, Abdul Mughal, George Riekert, and Johann Steenberg.

39. On May 11, 2020, Botes, Botha, Capazorio, du Plessis, Kieser, Mughal, Riekert, Steenberg, and their affected family members (the "*Roberts* Plaintiffs") filed suit against Iran in D.D.C. *Roberts et al. v. Islamic Republic of Iran*, Case No. 20-cv-01227-RCL.

40. On May 30, 2025, the *Roberts* Plaintiffs obtained judgment against Iran. The court previously found Iran liable for providing material support towards the EFP attacks.

41. The *Roberts* Plaintiffs were awarded $56,675,915 in compensatory damages and $194,965,147.60 in punitive damages, for a total award of $251,641,062.60. *Id.,* Dkt. No. 70.

42. The *Roberts* Plaintiffs initiated the final step towards serving Iran with their judgment on August 11, 2025. *Id.,* Dkt. No. 75.

**I.    The *Strauss* Plaintiffs**

43. In 2005, victims of EFP attacks in Iraq included United States government contractors Johannes Strauss, Johannes Potgieter, and Ignatius du Preez.

44. On January 10, 2022, the family members of Strauss, Potgieter, and du Preez (the "*Strauss* Plaintiffs") filed suit against Iran in D.D.C. *Strauss et al. v. Islamic Republic of Iran*, Case No. 22-cv-00052-RCL.

45. On May 30, 2025, the *Strauss* Plaintiffs obtained judgment against Iran. The court previously found Iran liable for providing material support towards the EFP attacks.

46. The *Strauss* Plaintiffs were awarded $49,000,000 in compensatory damages and $168,560,000 in punitive damages, for a total award of $217,560,000. *Id.,* Dkt. No. 41.

47. The *Strauss* Plaintiffs initiated the final step towards serving Iran with their judgment on August 11, 2025. *Id.,* Dkt. No. 48.

**J.     The *Hammons* Plaintiffs**

48. On January 4, 2016, a truck containing over three thousand pounds of explosives was detonated just outside of Camp Sullivan, a residential facility for American contractors in Kabul, Afghanistan. Andrew Babbitt, Ryan Buytenhuys, Allen Cox, Ryan Hammons, William Harris, Brandon Jones, Aaron Money, Robert Nadeau II, Derek Pleiman, Dale Smith, David Evans, and Bradley Busby were among those injured in the blast.

49. On August 20, 2019, Babbitt, Buytenhuys, Cox, Hammons, Harris, Jones, Money, Nadeau, Pleiman, Smith, Evans, and Busby, together with their affected family members, (the "*Hammons* Plaintiffs") filed suit against the Islamic Republic of Iran in D.D.C. for providing material support to the Taliban, who claimed responsibility for this attack. *Hammons et al. v. Islamic Republic of Iran*, Case No. 19-cv-2518 (ACR).

50. The *Hammons* Plaintiffs obtained judgment against Iran on August 6, 2025. The court had previously found sufficient evidence in the record to demonstrate that Iran materially supported the Taliban towards the commission of the Camp Sullivan bombing.

51. The *Hammons* Plaintiffs were awarded $166,406,074 in compensatory damages, $100,033,516 in prejudgment interest, and $572,436,895 in punitive damages, for a total award of $838,876,484. *Id.,* Dkt. No. 48.

52. The *Hammons* Plaintiffs initiated the final step towards serving Iran with their judgment on October 10, 2025. *Id.,* Dkt. No. 50.

## II. The Hamen Claimants Are Entitled To Enforce Their Judgments.

53. The Hamen Claimants are all judgment holders—either directly or as the estate, heir, or other beneficiary or successor-in-interest of the original judgment holder—in the above actions.

54. In total, the Hamen Claimants in this action have been awarded damages of $2.9 billion against Iran, including $937 million in compensatory damages. These judgments were entered to provide justice and compensation to the direct victims and family members of victims of Iran's sponsorship of, and responsibility for, devastating acts of terrorism. To date, Iran has refused to engage with any of the lawsuits against it and has not paid any of the judgments, which continue to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

55. The Hamen Claimants and the damages they have been awarded are listed in Attachment A to the Verification of their Claims.

## III. The Government Commenced this Forfeiture Action Against the Defendant Cryptocurrency—Without Disclosing Its Extensive Connections to Iran.

56. On October 14, 2025, the Government initiated the instant civil forfeiture action against approximately 127,271 Bitcoin once stored in the virtual-currency addresses identified in Attachment A of its complaint. *See* Dkt. 1 ("Forfeiture Compl.") at 1 & Attachment A.

57. On the same day, this Court issued an arrest warrant *in rem* for the Defendant Cryptocurrency pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* Dkt. 3.

58. The Government alleges the Defendant Cryptocurrency is subject to condemnation and forfeiture by the United States (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956. *See* Forfeiture Compl. ¶ 2.

59. Specifically, the Government alleges that the Defendant Cryptocurrency was involved in or derived from money-laundering operations conducted by Chen Zhi and Prince Holding Group, an alleged front for Chen's transnational criminal organization. Forfeiture Compl. ¶¶ 20, 38-43. According to the Government, one such scheme involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds." *Id*. ¶ 42.

60. The Government describes "Lubian" as "a Chinese bitcoin mining operation" and acknowledges that it had at least one facility in "Iran." Forfeiture Compl. ¶ 16(u). The Government did not include information that put the Hamen Claimants on notice that the operation involved conduct attributable to the Iranian Government, or otherwise that the Hamen Claimants had a basis to claim any of the relevant funds.

**IV. The Hamen Claimants Recently Learned of the Relationship Between the Defendant Cryptocurrency and the Government of Iran.**

61. Based on information that the Hamen Claimants only recently learned, it appears that the Defendant Cryptocurrency is directly tied to Iran—something that was not clear from the Government's forfeiture pleadings.

62. On December 26, 2025, other victims of Iran's state-sponsored terrorism filed a separate action alleging that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian Government to build a large Bitcoin mine in Rafsanjan, Iran, to assist Iran's longstanding efforts to evade U.S. sanctions. *See generally Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-cv-07093 (E.D.N.Y.), Dkt. No. 1.

63. Plaintiffs in the *Fritz* Action, along with another group of victims of Iran's state-sponsored terrorism (the "*Baxter* Victims"), filed Notices of Verified Claims in this proceeding on December 29, 2025. *See* Dkt. Nos. 29, 30.

64. Based on the information just revealed in the allegations in the *Fritz* Action and summarized by the Notices of Verified Claims filed by the *Fritz* Plaintiffs and the *Baxter* Victims, *see generally* Dkt. Nos. 29, 30, the Hamen Claimants now submit their own Notice of Verified Claim.

65. The Hamen Claimants have learned that the Court previously ordered that any third-party claims be filed by December 29, 2025. However, the Hamen Claimants did not receive notice of this order and were not aware of their interest in the Defendant Cryptocurrency prior learning of allegations in the *Fritz* Action.

66. As described in the Letter Motion filed contemporaneously with this Notice, any delay by the Hamen Claimants in filing their claims is not the result of inexcusable neglect because the Hamen Claimants had no reason to know of their interest in the instant action prior to the filing of the revelatory allegations in the *Fritz* Action, and the Hamen Claimants acted swiftly upon becoming aware of that potential interest.

67. Multiple groups of terrorist victim claimants have recently filed claims in this action after the December 29, 2025, deadline, or else requested an extension of that deadline to file claims in the future. *See* Dkt. No. 52 (noticed claims of Iranian Gold Star Claimants); Dkt. No. 56 (motion for extension of time and noticed claims of the Chairnoff Claimants); Dkt. Nos. 66, 67, 70 (motion for extension of time and noticed claims of the O'Neill Claimants); Dkt. No. 69 (motion for extension of time filed by the Pennington and Driscoll Claimants); Dkt. Nos. 85, 86 (motion for extension of time and noticed claims of the Gold Star Claimants).

68. As also described in the Letter Motion filed contemporaneously with this Notice, allowing the Hamen Claimants to file this claim at this time will not prejudice any other party, including because the Court has previously extended the deadline for other parties to file claims opposing the forfeiture, and several other claimants have requested leave to file after the deadline. Further, the Hamen Claimants' claims are similar to the claims already asserted by the victims in *Fritz* and *Baxter*, and therefore the Government already is on notice of the type of claim being asserted here. Because other claimants have been permitted to make claims after the original December 29, 2025, deadline, there will be no prejudice to the government or to the Court's adjudication of this forfeiture proceeding.

## V. Under TRIA, the Hamen Claimants Have a Senior Interest in the Defendant Cryptocurrency

69. In the context of a forfeiture action, at this stage of the proceedings the Hamen Claimants need only assert that they have a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (quoting *United States v. $577,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 & n.10 (2d Cir. 2002)). "[W]hether [they] 'ultimately prove[] the existence of that interest' is a question for a later stage in the proceedings." *Id*. (quoting *$577,933.89*, 287 F.3d at 79 & n.10)).

70. Here, based on the information alleged in the *Fritz* Action, the Hamen Claimants clearly have a "facially colorable" interest in the Defendant Cryptocurrency. They are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. As has now been alleged, because the Iran-China Group was an agent or instrumentality of Iran, TRIA entitles the Hamen Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments '[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the Hamen Claimants have a possessory interest in the Defendant Cryptocurrency, which permits them to bring the claims asserted here.

71. Thus, in accordance with Federal Rule G, the Hamen Claimants assert a protective, prophylactic claim against such amount of the Defendant Cryptocurrency as may ultimately be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran, plus post-judgment interest, based on the date the Defendant Cryptocurrency is valued for purposes of judgment, *see supra* n.2.

72. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note.

73. TRIA's cornerstone is the statute's broad "notwithstanding" clause. The clause aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). The notwithstanding clause "mak[es] plain that the force of the [statute] extends

everywhere," *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010), and "is unambiguous and effectively supersedes all previous laws," *Hill v. Republic of Iraq*, No. Civ. A 1:99CV03356, 2003 WL 21057173, at *2 (D.D.C. Mar. 11, 2003) (quoting *Energy Transp. Grp., Inc. v. Skinner*, 752 F. Supp. 1, 10 (D.D.C. 1990)). Accordingly, because it expressly overrides "conflict[ing] laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

74. Because the Hamen Claimants satisfy the requirements of TRIA, their interest in the Defendant Cryptocurrency necessarily is superior to the claims of the Government, as well as all other non-TRIA claimants, in the forfeiture action here.

75. First, as explained above and like the other victim-claimants, the Hamen Claimants hold judgments for damages against Iran based on an act of terrorism under 28 U.S.C. § 1605A or its predecessor statute, 28 U.S.C. § 1605(a)(7).

76. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. See TRIA § 201(d)(4); Exec. Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012).

77. Third, as now alleged in the *Fritz* Action, the Iran-China Group operated as Iran's agency or instrumentality by materially serving that country in avoiding sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction and behest. *Fritz* Action, Dkt. 70, Plaintiffs' Memorandum of Law in Support of Motion for Attachment, at 13-17 (Dec. 28, 2025) ("*Fritz* Attachment Motion"); see *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016).

78. Fourth, under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act. TRIA §

201(d)(2)(A).  The Government has used its authority under that statute to "block" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran.  31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 120.  As a result, if the Iran-China Group is an agency or instrumentality of Iran, all property of the Iran-China Group qualifies as a blocked asset under TRIA.  *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022).  Because the Defendant Cryptocurrency is property of the Iran-China Group, it is therefore blocked and subject to execution by the Hamen Claimants under TRIA.

79. Fifth, to the extent that the requirements of 28 U.S.C. § 1610(c) apply to a TRIA claim, they are satisfied for all of the final judgments because "a reasonable period of time has elapsed following the entry of judgment and the giving of notice required under [28 U.S.C. §] 1608(e)." 28 U.S.C. § 1610(c); *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 WL 1155576, at *35 (S.D.N.Y. Mar. 13, 2013).  Even for those that have not yet been served, "a reasonable period of time has elapsed following the entry of judgment." 28 U.S.C. § 1610(c).

\* \* \*

Pursuant to 28 U.S.C. § 983(a) and Rule G, the Hamen Claimants hereby assert a protective, prophylactic claim to the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—that is senior to the Government's claim.  Notwithstanding the Government's forfeiture efforts, the Hamen Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency.

Dated: January 28, 2026                                    Respectfully submitted,

/s/Richard P. Donoghue
Randy Singer (*pro hac vice* forthcoming)
Kevin Hoffman (*pro hac vice* forthcoming)
Singer Hoffman, LLC

>1209A Laskin Road
>Virginia Beach, VA 23451
>Telephone: (757) 301-9995
>Email: randy.singer@singerhoffman.com
>Email: kevin.hoffman@singerhoffman.com
>
>Richard P. Donoghue
>Pillsbury Winthrop Shaw Pittman LLP
>31 West 52nd St.
>New York, NY 10019
>Telephone: (212) 858-1000
>Email: richard.donoghue@pillsburylaw.com
>
>William M. Bosch (*pro hac vice* forthcoming)
>Thomas L. Howard III (*pro hac vice* forthcoming)
>Pillsbury Winthrop Shaw Pittman LLP
>1200 17th St. NW
>Washington, DC 20036
>Telephone: (202) 663-8000
>Email: william.bosch@pillsburylaw.com
>Email: thomas.howard@pillsburylaw.com
>
>*Counsel for the Hamen Claimants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2026, I electronically filed the foregoing Notice of Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem* via CM/ECF for the United States District Court for the Eastern District of New York and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the Government, in the above-captioned matter.

Dated: January 28, 2026

                                             */s/Richard P. Donoghue*
                                             Richard P. Donoghue
                                             Pillsbury Winthrop Shaw Pittman LLP
                                             31 West 52nd St.
                                             New York, NY 10019
                                             Telephone: (212) 858-1000
                                             Email: richard.donoghue@pillsburylaw.com