**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

**VIA ECF**

February 3, 2026

Hon. Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Approximately 127,271 Bitcoin*, No. 1:25-cv-5745 (RPK)

Dear Judge Kovner:

The Gold Star Claimants respectfully submit this letter in reply to the government's submission of January 27, 2026 (ECF No. 126).

The government opposes the Gold Star Claimants' motion for an extension of time (and that of other judgment creditors of Iran) in part on the grounds that "TRIA . . . does not provide a basis for the Iran Claimants to assert a claim and recover against the Defendant Cryptocurrency in this forfeiture action," arguing that the "Defendant Cryptocurrency is not a blocked asset under TRIA, because it was not seized or frozen 'under' TWEA or IEEPA. It was seized and brought within this Court's *in rem* jurisdiction in a civil forfeiture proceeding based on criminal violations of the wire fraud and money laundering statutes." ECF No. 126, at 7.

The government's argument is foreclosed by binding Second Circuit precedent. Although "the TRIA on its face applies only to 'blocked assets'—which the statute defines as 'asset[s] seized or frozen by the United States under' one of two statutes," the Second Circuit "held in *Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107 (2d Cir. 2016),[1] that—regardless of whether it has been frozen or seized—any property belonging to the Government of Iran (as well as its agencies or instrumentalities) under the relevant executive orders is 'blocked' within the meaning of TRIA." *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022); *see Kirschenbaum*, 830 F.3d at 137 ("[A]ll assets belonging to an entity that satisfies Executive Order 13,599's definition of 'Government of Iran' are automatically blocked."); *id.* at 139-40 (holding that even though the "control [a] court-appointed monitor has over [the assets] is insufficient to render them blocked for purposes of the TRIA . . . ,

---

[1] *Abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018).

nevertheless . . . pursuant to Executive Order 13,599, the United States has acquired a 'possessory interest'" in the assets, sufficient to "render that property blocked within the meaning of TRIA").[2]

The government's principal argument against the validity of the Gold Star Claimants' claims, and those of the other Iran creditors, is therefore without merit. It follows that the government is also wrong that the "late-filing movants failed to become aware of their putative claims precisely because they lacked [the] necessary interest," *i.e.*, a property interest, in the Defendant Cryptocurrency on the grounds that it was not "blocked." ECF No. 126, at 5. And the government is, therefore, *also* wrong that "in staying or denying these motions, therefore, the Court will not prejudice anyone with a legally cognizable claim to the Defendant Cryptocurrency." *Id.* Instead, as the government recognizes, whether the Iran creditors have such a claim depends on the factual questions relating to LuBian's status as an agency or instrumentality of Iran that the Gold Star Claimants and the other Iran creditors seek to resolve in this proceeding.

The government also opposes the motion on the grounds that the Gold Star Claimants (and other Iran creditors) have not demonstrated "excusable neglect," which the government contends is the applicable standard here. ECF No. 126, at 3-4. But the standard for extending the deadline to file a claim under Rule G—even after the filing deadline has expired—is "good cause," not "excusable neglect." As the Second Circuit observed in *United States v. Starling*, Rule G "sets deadlines for when a claim to the defendant assets 'must be filed . . . unless the court *for good cause* sets a different time,'" and "gives no indication that a harsher standard should govern a later motion." 76 F.4th 92, 100 (2d Cir. 2023) (quoting Suppl. Rule G). The Second Circuit held in *Starling* that the "good cause" standard applies when a claimant "seeks to file an untimely claim against seized assets after default has been entered but before default judgment has been granted." *Id.* at 102. It follows that a motion for leave to file an untimely claim *even earlier in the case*—before any entry of default—is similarly governed by the more lenient "good cause" standard. *See id.* (noting that "trial courts" should "consider untimely claims with particular indulgence").

Under that standard, the Gold Star Claimants' motion should be granted. "While excusable neglect penalizes negligent parties for failing to prosecute their cases, the good cause standard attaches consequences only to bad faith or tactical violations of court orders," none of which are present here. *Id.* In the default context, good cause looks to "(i) the willfulness of the defaulting party, (ii) prejudice to the non-movant, and (iii) whether the defaulting party has a meritorious defense," *id.*, and good cause is plainly present here under analogous considerations. No party has alleged the requisite level of "willfulness" (*i.e.*, "egregious or deliberate conduct") for the Gold Star Claimants' delay, and there was none. *Id.* The Gold Star Claimants' claim is also "meritorious" in the relevant sense of being at least sufficient to "give the factfinder some determination to make." *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 189 (E.D.N.Y. 2025) (cleaned up). Nor has the government identified any cognizable prejudice from permitting the Gold Star Claimants (and the other Iran creditors) to pursue their claims

---

[2] The government's fallback argument, that "TRIA does not reach property that is already subject to a forfeiture proceeding," ECF No. 126, at 7, relies on *Levin v. United States*, 774 F. App'x 49, 50 (2d Cir. 2019) (summary order), a nonprecedential summary order whose narrow reading of TRIA's "notwithstanding" clause has, in any event, been superseded by *Havlish v. Taliban*, in which the Second Circuit confirmed that the "notwithstanding" clause is a "broad provision that overcomes any other provision of the law that conflicts with the TRIA." 152 F.4th 339, 359 (2d Cir. 2025) (cleaned up).

February 3, 2026
Page 3

in this proceeding. The government does not dispute that granting the motions would be consistent with Rule G's purpose to ensure "that the court may hear all interested parties and resolve the dispute without delay." Order, *United States v. Approximately 127,271 Bitcoin*, No. 1:25-cv-5745 (E.D.N.Y. Dec. 11, 2025) (cleaned up). Instead, the government's sole assertion of prejudice is that granting the motions would permit a large number of claimants to assert claims, and speculation that more claimants may appear in the future. ECF No. 126, at 8. But it is hardly surprising—and certainly not prejudicial—that, having effectuated the "Largest Ever Forfeiture Action Against Approximately $15B in Bitcoin,"[3] the government would ultimately have to confront a large number of competing claims, or that Iran's many judgment creditors would appear to assert their rights after learning of facts giving rise to a TRIA claim against the Defendant Cryptocurrency.

      For these reasons, and for those set forth in the Gold Star Claimants' opening letter-motion, the "good cause" standard is satisfied here, including as it applies to the Rule G context.[4] The Gold Star Claimants are veterans or family members of servicemembers who were killed or maimed in terrorist attacks materially supported by Iran. Iran has made every effort to avoid compensating these victims for their injuries. Upon learning that the Defendant Cryptocurrency is, in whole or in part, an asset of an agency or instrumentality of Iran, the Gold Star Claimants filed their claim promptly. At bottom, the government's submission asks this Court to adjudicate and even extinguish competing rights to billions of dollars' worth of assets based upon filing delays of a few days or weeks that gave rise to no cognizable prejudice. It would be highly inequitable to deny billions of dollars of potentially meritorious claims on those grounds or in this posture. The Iran creditors' motions for extension of time—and certainly those who, like the Gold Star Claimants, sought extensions and filed claims by January 20, 2026—should be granted.

                                                   Respectfully submitted,

                                                   /s/ Aaron E. Nathan

                                               Michael J. Gottlieb
                                             WILLKIE FARR & GALLAGHER LLP
                                             2029 Century Park East
                                             Los Angeles, CA 90067-2905
                                             Tel:  (310) 855-3000
                                             Fax:  (310) 855-3099
                                             mgottlieb@willkie.com

---

[3]    https://www.justice.gov/opa/pr/chairman-prince-group-indicted-operating-cambodian-forced-labor-scam-compounds-engaged.

[4] Even if the "excusable neglect" standard applied, it would be satisfied here because that standard looks to "(1) the danger of prejudice to the party opposing the extension; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the party seeking the extension; and (4) whether the party seeking the extension acted in good faith." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) (cleaned up). The government's failure to identify any cognizable prejudice from permitting the Gold Star Claimants' participation is fatal their opposition under this standard as well.

February 3, 2026
Page 4

    Nicholas Reddick (admitted *pro hac vice*)
    WILLKIE FARR & GALLAGHER LLP
    333 Bush Street
    San Francisco, CA 94104
    Tel: (415) 858-7400
    Fax: (415) 858-7599
    nreddick@willkie.com

    Lee Wolosky
    Aaron E. Nathan
    WILLKIE FARR & GALLAGHER LLP
    787 Seventh Avenue
    New York, NY 10019-6099
    Tel: (212) 728-8000
    Fax: (212) 728-8111
    lwolosky@willkie.com
    anathan@willkie.com

    *Counsel for Gold Star Claimants*