# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

445 HAMILTON STREET • SUITE 402 • WHITE PLAINS • NEW YORK • 10601
TEL: 914.278.5100 • FAX: 917.591.5245 • WEB: WWW.FBRLLP.COM                    EMAIL: jbonner@fbrllp.com

---

February 6, 2026

**VIA ECF**

Hon. Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: *United States v. Approximately 127,271 Bitcoin*, No. 1:25-cv-5745 (RPK)

Dear Judge Kovner:

      The Chairnoff Claimants respectfully submit this letter in reply to the government's submission of January 27, 2026 (ECF No. 126) opposing the motions of the Chairnoff Claimants and other victims of Iranian terrorism for an extension of time to file claims in this action shortly after the initial December 29, 2025 deadline. Several groups of victims of Iranian terrorism have now fully briefed the reasons why the Court should reject the government's contentions. Rather than burden the Court with repetitive briefing, the Chairnoff Claimants incorporate by reference the arguments raised by the other victims of Iranian terrorism, particularly those set forth in the filings by the Goldstar Claimants in their letter of February 3, 2026 (ECF No. 167), the Pennington and Driscoll Claimants in their letter of February 6, 2026 (ECF No. 185), and the "9/11 Claimants" in their letter of the same date (ECF No. 187). The reasons those claimants advance for rejecting the government's positions apply equally with respect to the Chairnoff Claimants.

      We write separately to make three additional points: (a) Executive Order 13,902 Imposing Sanctions With Respect to Additional Sectors of Iran, issued on January 10, 2020, provides an independent basis for concluding that the relevant Bitcoin are blocked pursuant to the International Emergency Economic Powers Act ("IEEPA"); (b) the cases the government cites are distinguishable for reasons beyond those noted by other claimants; and (c) there is also good cause for the Chairnoff Claimants' slight delay in filing their claims.

**The Bitcoin at Issue Here Is Blocked and
Subject to TRIA Pursuant to Executive Order 13,902**

      The government's contention that the relevant Bitcoin do not qualify as blocked assets also ignores the impact of President Trump's January 10, 2020 Executive Order 13,902 Imposing Sanctions With Respect to Additional Sectors of Iran. That Order, which the President issued

Hon. Rachel P. Kovner
February 6, 2026
Page 2

pursuant to IEEPA, specifically blocks any "property or interest in property that . . . comes within the United States" of any person that "operate[s] in the … mining ... sectors of the Iranian economy." *Id.* at § 1(a)(i).  Thus, to the extent that the 127,271 Bitcoin that is now in the United States constitutes the proceeds of the mining of cryptocurrency in Iran, as alleged in the claims of the Chairnoff Claimants (and other victims of Iranian terrorism), those assets are blocked pursuant to Executive Order 13,902 and IEEPA.  Accordingly, those assets are available to satisfy the Chairnoff Claimants' judgments under TRIA.

**The Cases the Government Cites Provide No
Basis for Rejecting the Chairnoff Claimants' Claims**

The Goldstar Claimants (among others) demonstrate that the government fails to address the Second Circuit's holdings in *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 137 (2d Cir. 2016) ("we conclude that (1) all assets belonging to an entity that satisfies Executive Order 13,599's definition of "Government of Iran" are automatically blocked….")[1] and *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 97 (2d Cir. 2022) (*see* ECF No. 167 at 1-2). We write briefly to explain that other cases the government cites do not justify rejecting the Chairnoff Claimants' claims.

In *Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63 (E.D.N.Y. 2004), the government intervened to assert that the Iranian bank assets at issue were not blocked and, therefore, were not subject to attachment under the TRIA.  *Id.* at 64.  In contrast to this case, the three Iranian banks whose assets were the subject of Iran judgment creditors' claims in *Weinstein* had OFAC licenses permitting the banks to hold the relevant funds at the Bank of New York.  The *Weinstein* court held that those licenses had "'the effect of removing a prohibition,' *i.e.,* the blocking prohibition." *Id*. at 74.  Thus, by virtue of the licenses, the banks' assets were neither blocked nor seized, as TRIA uses those terms.  *Id*.  The circumstances here are markedly different because multiple Executive Orders issued pursuant to IEEPA blocked the Bitcoin assets at issue as soon as they came into the United States, and no entity maintains a license to hold those assets.

*Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910 (11th Cir. 2013) is also inapposite.  Unlike here, *Stansell* involved assets that were never blocked or seized pursuant to IEEPA; rather, they were seized exclusively under the Kingpin Act.  *Id*. at 914.

*United States v. BNP Paribas S.A.,* No. 14 Cr. 460 LGS, 2015 WL 1962882 (S.D.N.Y. Apr. 30, 2015) also lacks relevance.  *BNP Paribas* involved $8 billion the bank defendant agreed to forfeit in pleading guilty to criminal charges for violating IEEPA by engaging in unlawful financial transactions with banned nations – Iran, Sudan and Cuba.  Third-party proposed intervenors, who

---

[1] A*brogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018).

Hon. Rachel P. Kovner
February 6, 2026
Page 3

were judgment creditors of Cuba, sought to enforce their judgments against those assets. The court denied the proposed intervenors' attempt to execute against the assets because they belonged to BNP Paribas, not Cuba. Thus, the assets were never blocked. 2015 WL 1962882, at *3. Here, Iran's ownership of the Bitcoin provides the statutory basis for blocking those assets.

**There is Good Cause for the Chairnoff Claimants' Slight Delay in Filing Their Claim**

The government also fails to show that Claimants have not satisfied the applicable good cause standard for extending the deadline to file under Rule G. *See* ECF No. 167 at 2. The Chairnoff Claimants acted expeditiously upon learning that an Iranian entity had an interest in the subject 127,271 Bitcoin. Specifically, the Chairnoff Claimants promptly filed their claim within 18 days of the deadline the Court set and within days of learning of Iran's interest in the Bitcoin. That short interval starkly contrasts with the 5-year delay at issue in *Levin v. United States*, 774 F. App'x 49, 50 (2d Cir. 2019), upon which the government relies. *Id.* (holding that petitioners' inexplicable five-year delay in filing their claim violated Rule G(5)). Given the brevity of the Chairnoff Claimants' delay, the lack of prejudice to the government, and the other reasons stated herein and in the submissions of the other claimants who are victims of Iranian terrorism, this Court should accept the Chairnoff Claimants' claim as timely.

Respectfully submitted,

James P. Bonner

cc: All counsel of record (via ECF)