# Mitchell Allyn, Ltd.

1000 North Green Valley Parkway, Suite 440-575
Henderson, Nevada 89074-6170

Tel: +1 702 350 1208
Email: dmitchell@mitchellallyn.com

February 6, 2026

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    **Re:**    *United States v. Approximately 127,271 Bitcoin,*
             Case No. 1:25-cv-05745 (RPK)

Dear Judge Kovner:

    The Havlish Claimants – estates and family members of victims of the September 11, 2001 terrorist attacks who hold more than $6 billion in final judgments against the Islamic Republic of Iran – reply to the government's opposition to their motion for leave to file a verified claim to the Defendant Cryptocurrency pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"). (ECF No. 126).

    The government prioritizes procedural rigidity over substantive justice. They seek to forfeit billions of dollars in potential terrorist assets to the U.S. Treasury while barring the victims of that terrorism from the opportunity to establish their superior claims. However, its opposition advocates for the wrong legal standard for determining when district courts may accept claims filed after the deadline and uses a fundamentally flawed interpretation of Section 201(a) of the Terrorism Risk Insurance Act ("TRIA"). Its arguments are legally untenable under controlling Second Circuit precedent and factually inequitable under the specific circumstances of this case.

    However, binding Second Circuit precedent forecloses the government's position. Specifically, the government's attempt to prevent the Havlish Claimants from filing their claims relies on (1) an erroneous "excusable neglect" standard for untimely filings that contradicts *United States v. Starling*; (2) a restrictive view of Article III standing that conflates standing with the merits, in violation of *United States v. Ross*; and (3) an atextual interpretation of "blocked assets" under TRIA that ignores the scope and import of TRIA's "notwithstanding" clause confirmed in *Havlish v. Taliban* and the definition of blocking established in *Kirschenbaum*.[1]

The Honorable Rachel P. Kovner
February 6, 2026
Page 2

The stakes in this litigation are high. The Defendant Cryptocurrency, currently valued at approximately $9 billion, represents one of the largest asset seizures in the history of the Department of Justice. The Government alleges the assets are proceeds of a massive transnational criminal enterprise involving the Prince Holding Group, human trafficking, and large-scale, international fraud. However, the Havlish Claimants contend that these assets are also, in whole or in part, the property of agencies or instrumentalities of Iran. *See* Havlish Notice of Claim at ECF 73. To deny the Claimants the opportunity to prove this nexus—based on procedural technicalities or premature merits determinations—would frustrate Congress' remedial purposes underlying its enactment of TRIA and also the policies underlying the Civil Asset Forfeiture Recovery Act ("CAFRA").

Accordingly, the Havlish Claimants ask the Court to reject the government's opposition and grant them leave to file their claim.

I. **THE GOVERNMENT CONTRAVENES CIRCUIT PRECEDENT BY INCORRECTLY ADVOCATING FOR A "HARSHER STANDARD" GOVERNING UNTIMELY CLAIMS.**

The threshold dispute in this forfeiture action concerns the standard the Court must apply to motions for an extension of time to file a claim. The government vigorously opposes the motions of the Claimants on the grounds that they have failed to demonstrate "excusable neglect".[1] This position is legally untenable. The text of the Federal Rules of Civil Procedure and controlling Second Circuit authority dictate that the appropriate standard is "good cause," a standard characterized by "particular indulgence" toward claimants seeking to be heard on the merits.

    A. **Supplemental Rule G Mandates a "Good Cause" Inquiry, Not Excusable Neglect When Considering Motions for Leave to Extend the Rule G(5)(a)(ii) Deadline.**

Supplemental Rule G(5)(a)(ii) of the Federal Rules of Civil Procedure explicitly governs the timing of claims in civil forfeiture actions. The Rule states that a claim "must be filed . . . unless the court for *good cause* sets a different time." (emphasis added). The Rule's language is deliberate. It does not invoke the "excusable neglect" standard found in Federal Rule of Civil Procedure 6(b) for general civil litigation deadlines. Instead, it creates a specific, flexible mechanism for forfeiture cases that takes into account the unique due process concerns inherent in government seizures of property.

The Honorable Rachel P. Kovner
February 6, 2026
Page 3

The government's request to apply "excusable neglect" ignores the Second Circuit's holding in *United States v. Starling*, 76 F.4th 92 (2d Cir. 2023). In *Starling*, the Court held that the good cause clause in Rule G(5)(a)(ii) "gives no indication that a harsher standard should govern a later motion." *Id*. at 100. The Court clarified that the "good cause" standard applies even when a claimant seeks to file an untimely claim after the initial deadline has expired, provided that a default judgment has not yet been entered. *Id*. at 102.

The difference between the "excusable neglect" and "good cause" standards is not just a matter of wording. For instance, "excusable neglect" imposes penalties on parties who are negligent in pursuing their cases. In contrast, the "good cause" standard reserves consequences only for violations of court orders that stem from bad faith or tactical maneuvering. *Id*. citing *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991). Here, nothing suggests the Havlish Claimants acted in bad faith or deliberately delayed. Quite the opposite: they are victims of terrorism and their families who have demonstrated diligence since finding the potential connection between the Defendant Cryptocurrency and Iran.

    **B.**    **The Consolidated Claimants Satisfy the Three-Factor "Good Cause" Test**

Under *Starling*, the "good cause" analysis in the context of defaulted claims looks to three primary factors: (1) the willfulness of the defaulting party; (2) prejudice to the non-movant; and (3) whether the defaulting party has a meritorious defense or claim. *Id*. at 102. Applying these factors to the Havlish Claimants demonstrates their request to extend the claim deadline should be granted.

    **1.**    **Absence of Willfulness or Bad Faith**

The first and most critical factor is willfulness. The Second Circuit defines willfulness in this context as "egregious or deliberate conduct" designed to thwart the proceedings. *Id*. citing *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Mere negligence or administrative delay does not constitute willfulness.

The Havlish Claimants' delay in filing was neither egregious nor deliberate. The forfeiture action involves a complex web of international criminal activity, cryptocurrency laundering, and obscured ownership structures involving the Prince Group and Chen Zhi.[1] The connection between these assets and the Iranian instrumentality LuBian is a nuanced factual development that required investigation.[1]

The Honorable Rachel P. Kovner
February 6, 2026
Page 4

### 2. Absence of Prejudice to the Government

The government assets prejudice. However, the government fails to identify any *cognizable* legal prejudice. Instead, the government argues that granting the motions would permit a large number of claimants to assert claims and speculates that "there is no reason to think the flood is over." ECF 126 at p. 8,   4.

This argument improperly conflates administrative convenience with legal prejudice. But "administrative burden, litigation complexity, or the number of claimants does not constitute legal prejudice." See *United States v. $417,143.48*, 682 F. App'x 17, 20 (2d Cir. 2017); *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004). Legal prejudice refers to a party's impaired ability to fairly prosecute or defend against the allegations on their merits—for example, due to the loss of evidence or the death of witnesses. Id.

The government suffers no such handicap here. It must already prove that the Defendant Cryptocurrency is subject to forfeiture by a preponderance of the evidence. The participation of the Claimants does not alter the government's burden of proof or the nature of the evidence required. Furthermore, it is "hardly surprising and certainly not prejudicial" that a forfeiture action involving more than $9 billion in Bitcoin (and potentially much more if the value of Bitcoin increases) with a connection to the Iranian government would attract a significant number of competing claims from terror victims.  Indeed, Rule G's very purpose is to ensure that the court may hear all interested parties and resolve the dispute comprehensively.  To bar these claims on the grounds that there are "too many" of them would be to punish the victims for the scale of Iran's illicit wealth and the breadth of its terrorist activities.

### 3. The Havlish Claimants Have Meritorious Claims.

The third factor requires the Havlish Claimants to present a "meritorious" claim. In the context of a motion for leave to file to extend the deadline, a claim is meritorious if it is sufficient to give the factfinder some determination to make.  *United States v. Veeraswamy*, 765 F. Supp. 168, 169 (E.D.N.Y. 2025). The Claimants need not prove their case at this stage. Instead, they must merely raise a non-frivolous factual or legal dispute.

The Havlish Claimants easily meet this threshold.  They assert the Defendant Cryptocurrency is an asset of the Iran-China Group) (also known as LuBian) and that the Iran-China Group is an agency or instrumentality of the Government of Iran. *See* ECF 73 at ¶¶ 5-8.  This is a specific, factual allegation that, if proven, would render the assets subject to execution under TRIA. Whether LuBian is in fact an Iranian instrumentality, and whether it owns the Defendant Cryptocurrency, are questions for the factfinder. By raising these material issues,

The Honorable Rachel P. Kovner
February 6, 2026
Page 5

the Havlish Claimants have satisfied the merit requirement applicable to the "good cause" standard.

### C. In the Alternative, "Excusable Neglect" Standard is Also Satisfied

Even if this Court were to accept the government's invitation to apply the harsher "excusable neglect" standard—a course of action the Second Circuit discouraged in *Starling*—the Claimants would still be entitled to relief. The excusable neglect inquiry under *In re Am. Express Fin. Advisors Sec. Litig.* considers (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the party acted in good faith.[1]

The government' opposition fails to identify any prejudice. Without prejudice, the balance of equities tilts overwhelmingly in favor of the Claimants, particularly given the "good faith" nature of their filings and the minimal length of the delay relative to the complexity of the case. Additionally, there was no long delay or impact on management of the case. In fact, the Havlish Plaintiffs sought leave to file their claim on the same day the Court had already set for other parties to file their claims, January 19, 2026. See Order on Motion for Extension of Time to File (text only order) Dec. 18, 2025. And none of the parties to the forfeiture proceeding had, as of January 19, 2026, filed an answer to the forfeiture complaint. In fact, to avoid any potential delay, the Havlish Claimants filed their Answer on the same day as this reply.

## II. THE GOVERNMENT ERRONEOUSLY CONFLATES STANDING WITH THE MERITS.

Beyond the procedural timing issue, the government attempts to block the Havlish Claimants at the threshold by arguing they lack Article III standing. The government asserts that the Claimants' standing depends on the success of a third party (LuBian) and is therefore speculative. This argument misapprehends the low bar for establishing standing in civil forfeiture cases and ignores the TRIA's impact on the Defendant Cryptocurrency.

### A. The "Facially Colorable Interest" Standard is "Hardly Onerous."

The Second Circuit has repeatedly held that the requirement to demonstrate Article III standing in a forfeiture proceeding is hardly onerous. A claimant need not prove ownership at the pleading stage. Instead, they only need to demonstrate a "facially colorable interest" in the seized property. *In Re: Enforcement of Philippine Forfeiture Judgment against All Assets of Arelma, S.A., Formerly Held at Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Including,*

The Honorable Rachel P. Kovner
February 6, 2026
Page 6

*But Not Limited To, Account Number 16*, 153 F.4th 142, 165 (2d Cir. 2025) citing *United States v. $557,933.89, More or Less, in U.S. Funds,* 287 F.3d 66, 78-79 (2d Cir. 2002).

The question of whether the Havlish Claimants "ultimately prove[] the existence of that interest" is reserved for the merits phase or summary judgment, not the standing inquiry. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (citation omitted). At this preliminary stage, the court does not weigh competing claims, resolve ownership disputes, or require a claimant to prove priority over others.  *United States v. Ross*, 161 F.4th 100, 2025 U.S. App LEXIS 31557 at *14.

The Havlish Claimants have alleged a clear, facially colorable interest: they are judgment creditors of a terrorist party (Iran) whom they allege owns the seized assets through its instrumentality, LuBian, see ECF 73 at ¶¶ 5-8, and the Government acknowledges that reality. (ECF No. 126 at 6-7).  This allegation establishes a direct economic stake in the outcome of the forfeiture proceeding. The fact that the government disputes LuBian's ownership—and thus the Claimants' interest—merely highlights that there is a disputed claim requiring adjudication of the merits, not prohibition for a lack of standing..

      **B.**     **TRIA Cures Standing Defects in Forfeiture**

The government's standing challenge also fails to account for the statutory operation of TRIA. As the Seventh Circuit recognized in *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, TRIA's "notwithstanding" clause functions to "cure the standing defect under civil forfeiture law." *R.J. O'Brien*, 783 F.3d 607, 621 (7th Cir. 2015).

In a typical forfeiture case, a general creditor might lack standing because they do not hold a specific lien on the seized asset. However, TRIA § 201(a) creates a substantive right of execution against the blocked assets of a terrorist party "notwithstanding any other provision of law." 28 U.S.C. 1610 note.  This statutory grant of authority elevates the terrorism victim's interest above that of a standard creditor, providing the necessary standing to contest the government's seizure.

**III.**    **THE DEFENDANT CRYPTOCURRENCY ARE "BLOCKED ASSETS" SUBJECT TO EXECUTION WITHIN THE MEANING OF TRIA.**

The substantive core of the government's opposition is the assertion that the Defendant Cryptocurrency is not a "blocked asset" under TRIA. The government contends that because the assets were seized pursuant to criminal wire fraud and money laundering statutes (Title 18), rather than "under" the Trading with the Enemy Act (TWEA) or the International Emergency Economic Powers Act (IEEPA), they fall outside TRIA's reach. ECF 126 at p. 7,   2.

The Honorable Rachel P. Kovner
February 6, 2026
Page 7

This formalistic argument is foreclosed by binding Second Circuit precedent and the plain language of the relevant Executive Orders.

### A. *Kirschenbaum* Establishes that "Blocked" Status is Determined by Ownership, Not Seizure Method

The government's theory that the *method* of seizure determines the "blocked" status was explicitly rejected by the Second Circuit in *Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107 (2d Cir. 2016). In that case, the Court held that "regardless of whether it has been frozen or seized," any property belonging to the Government of Iran (or its agencies and instrumentalities) is "blocked" within the meaning of TRIA if it falls within the scope of the relevant Executive Orders. *Kirschenbaum*, 830 F.3d at 132; *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022).

Specifically, Executive Order 13,599 blocks "[a]ll property and interests in property of the Government of Iran, including the Central Bank of Iran, that are in the United States or within the possession or control of any United States person." Exec. Order 13599, 77 Fed. Reg. 6659 (Feb. 8, 2012). The Second Circuit reasoned that assets belonging to an entity satisfying this definition are "automatically blocked" by operation of law. *Levinson* at note 6.

The Havlish Claimants allege that the Defendant Cryptocurrency belongs to the Iran-China Group, an Iranian agency or instrumentality. See ECF 73 at ¶¶ 5-8. If this factual allegation is proven, the assets are "automatically blocked" under E.O. 13,599 the moment they enter the United States or the possession of a U.S. person, including the government. Exec. Order 13599, Section 1, 77 Fed. Reg. 6659 (Feb. 8, 2012). The fact that the government *also* seized them for forfeiture under Title 18 does not strip them of their "blocked" status under IEEPA and the Executive Order 13,559. As *Kirschenbaum* clarified, the United States acquiring a "possessory interest" in the assets is sufficient to render them blocked for TRIA purposes. *Levinson v. Kuwait Fin. House (Malaysia) Berhad)*, 44 F.4th 91, 98 (2d Cir. 2022) (quoting *Kirschenbaum v. 650 Fifth Avenue & Related Properties*, 830 F.3d 107 (2d Cir. 2016)).

### B. The "Notwithstanding" Clause Supersedes Conflicting Forfeiture Laws

The government relies on *Levin v. United States*, 774 F. App'x 49 (2d Cir. 2019), a summary order without precedential value, to argue that TRIA does not reach property already subject to a forfeiture proceeding. ECF 126 at p. 7, 3. This reliance is misplaced for two reasons. First, the comments in *Levin* regarding TRIA were *dicta* and did not form the basis of the holding. Second, and more importantly, the *Levin* summary order has been superseded by the

The Honorable Rachel P. Kovner
February 6, 2026
Page 8

Second Circuit's precedential opinion in *Havlish v. Taliban*, 152 F.4th 339 (2d Cir. 2025).

In *Havlish*, the Court reaffirmed the supremacy of TRIA's "notwithstanding" clause. This clause is a "broad provision that overcomes any other provision of the law that conflicts with the TRIA." Havlish at 359 citing *Peterson v. Islamic Republic of Iran*, 758 F.3d 185, 190 n.2 (2d Cir. 2014), *aff'd sub nom*. *Bank Markazi v. Peterson*, 578 U.S. 212, 136 S.Ct. 1310, 194 L.Ed.2d 463 (2016). If TRIA provides a right of execution against blocked assets, and the civil forfeiture statutes would act to defeat that right by transferring title to the government, there is a clear conflict. In that case, given the plain text of § 201(a), TRIA prevails. The "notwithstanding" clause acts as a trump card, ensuring that the remedial purpose of the statute—compensating victims of terrorism—is not thwarted by the government's competing desire for forfeiture revenue.

      C.      **Distinguishing *Holy Land Foundation* and *BNP Paribas***

The government also cites *United States v. Holy Land Foundation* 722 F.3d 677, 685 (5th Cir. 2013) and *United States v. BNP Paribas*, No. 14-CR-460 (LGS), 2015 WL 1962882, at *3 (S.D.N.Y. Apr. 30, 2015) to support its position. Both cases are factually distinguishable.

In *Holy Land Foundation*, the Fifth Circuit found that assets were not blocked because the government had obtained a specific OFAC license that authorized the transfer of the funds, effectively removing the "blocked" status before the plaintiffs could execute on them.[1] In the instant case, there is no evidence the government has obtained an OFAC license to unblock the Defendant Cryptocurrency. The block imposed by E.O. 13,599 remains in full force. Furthermore, unlike in *Holy Land*, the Havlish Claimants obtained their judgments, and thus their TRIA rights, *before* the government seized the assets, strengthening their priority claim..

Similarly, *BNP Paribas* involved a situation where the court found there were no "terrorist assets" to confer standing. *United States v. BNP Paribas, S.A.*, 2015 WL 1962882 at *6-7 (S.D.N.Y. Apr 30, 2015). But, here, the very core of the dispute centers on the Havlish Claimants' allegation that these *are* terrorist assets via Iran's agency and instrumentality, the Iran-China Group. This is a factual question that is properly addressed on the merits, not a legal bar to participation in the forfeiture proceeding.

IV.      **EQUITABLE CONSIDERATIONS AND THE "INCORRECT RESOLUTION" OF FACTUAL QUESTIONS**

The government's position is not only legally flawed but also "highly inequitable." The Havlish Claimants are victims of the September 11, 2001 terrorist attacks and family members of

The Honorable Rachel P. Kovner
February 6, 2026
Page 9

those victims. They have spent decades chasing the assets of Iran, which has made every effort to evade payment.

### A. The Inequity of Forfeiture

The government seeks to forfeit approximately $9 billion in Bitcoin (based on today's valuation)—a huge sum—while denying victims the chance to prove their entitlement to those funds based on filing delays of "a few weeks," but one that fell within extensions given to another claimant. To extinguish potentially meritorious claims of this magnitude on such thin procedural grounds would be a miscarriage of justice.

The "good cause" standard is designed precisely to prevent such outcomes. It allows the court to prioritize substance over form, ensuring that this large, and valuable, forfeiture action does not escape the victims Congress intended to protect.

### B. The Necessity of Fact-Finding Regarding LuBian.

The government's opposition effectively asks the Court to prejudge the merits of Iran's connection to the Iran-China Group. By arguing that the assets are not "blocked" or that the Havlish Claimants lack standing, the government is essentially asking the Court to rule that the Iran-China Group is not an Iranian instrumentality or that it does not own the Bitcoin.

However, as the Second Circuit noted in *Kirschenbaum* and again in *Havlish*, questions regarding an entity's status as an agency or instrumentality are fact-intensive inquiries. They require an assessment of ownership, control, and function. The Havlish Claimants must be permitted to participate in discovery to develop the record regarding the Iran-China Group's relationship with the Iranian regime.

### CONCLUSION

The government's attempt to bar the Havlish Claimants from this forfeiture action is a contravention of Circuit precedent, a denial of the statutory rights Congress granted to victims of terrorism, and a manifest injustice.

The Honorable Rachel P. Kovner
February 6, 2026
Page 10

    For these reasons, the Consolidated Claimants ask the Court to grant their request to extend the deadline for filing their claims, accept the verified notice of claim, and reject the government's attempt to extinguish the rights of these victims of the 9/11 terrorist attacks before they can be heard on the merits.

                                             Sincerely,

                                             /s/ Douglass A. Mitchell

                                           Douglass A. Mitchell