AFM:RMS
F. #2024R00105

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

Case No. 25-CV-5745 (RPK)

APPROXIMATELY 127,271 BITCOIN, AND ALL PROCEEDS TRACEABLE THERETO,

Defendants *In Rem*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE CLAIM AND ANSWER FILED BY ATH LEEPINYO

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Alexander F. Mindlin
Tanisha R. Payne
Andrew D. Reich
Benjamin L. Weintraub
Rebecca M. Schuman
Assistant U.S. Attorneys
(Of Counsel)

## Table of Contents

PRELIMINARY STATEMENT ........ 1
BACKGROUND ........ 1
APPLICABLE LAW ........ 2
I. Motion to Strike a Claim or Answer Under Rule G(8)(c) ........ 2
II. Standing in Civil Forfeiture Actions ........ 3
DISCUSSION ........ 6
CONCLUSION ........ 9

## PRELIMINARY STATEMENT

Pursuant to Rule G(8)(c)(ii)(B) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the government respectfully moves to strike the claim and answer filed by Ath Leepinyo for failure to allege facts that, even if true, would be sufficient to establish Article III standing to contest the instant forfeiture action.[1]

## BACKGROUND

On October 14, 2025, the government filed a civil complaint *in rem* (the "Complaint"), seeking to forfeit 127,271 Bitcoin (the "Defendant Cryptocurrency") as proceeds of fraud and property involved in money laundering. ECF No. 1. As described in the Complaint, Chen Zhi served as Chairman of Prince Holding Group ("Prince Group"), a Cambodian corporate conglomerate that operated dozens of business entities, including Prince Real Estate Group. *Id.* ¶¶ 15, 16(r). While ostensibly focused on real estate development, financial services, and consumer services, Prince Group, under Chen's direction, made enormous profits for Chen and his associates by operating forced-labor scam compounds across Cambodia that engaged in cryptocurrency investment fraud schemes and used its vast network of seemingly legitimate business enterprises to launder its criminal proceeds. *Id.* ¶ 15.

On November 11, 2025, Leepinyo, proceeding *pro se*, filed a claim (the "Leepinyo Claim") asserting that he "is a victim of fraud perpetrated by Prince Real Estate [Group] and its legal representative, Chen Zhi." ECF No. 11, ¶ 1. The Leepinyo Claim asserts that Leepinyo entered into a written contract with these parties to purchase a condominium unit and paid for the unit in full with cash, but that Prince Real Estate Group and Chen "failed to deliver the contracted

[1] Because Leepinyo is a *pro se* litigant, the government did not request a pre-motion conference before filing this motion, pursuant to the Court's Individual Practice Rule IV.A.

condominium unit." *Id.* ¶¶ 2, 4, 6. The Leepinyo Claim further asserts that his "cash payments were converted into Bitcoin, some or all of which is now [included in the Defendant Cryptocurrency]." *Id.* ¶ 9.

On December 26, 2025, Leepinyo filed an answer to the Complaint (the "Leepinyo Answer"), asserting, among other things, "a lawful ownership and/or possessory interest in portions of the [Defendant Cryptocurrency]." ECF No. 34, ¶ 4.

## APPLICABLE LAW

In a civil forfeiture action like the instant case, the government is the plaintiff, the property is the defendant, and any claimant is an intervenor seeking to challenge the forfeiture action. *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012); *United States v. $822,694.81 in U.S. Currency*, 2019 WL 4369936, *1 n.1 (D. Conn. Sep. 12, 2019); *cf. United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014) (underscoring that "the defendant in [a civil forfeiture] action is the res, not the claimant"). To that end, such an action "is an *in rem* proceeding brought directly against the property," not an action against the property owner. *United States v. Assa Co. Ltd.*, 934 F.3d 185, 190 (2d Cir. 2019).

### I. Motion to Strike a Claim or Answer Under Rule G(8)(c)

"[T]he government may move to strike a claim or answer" at "any time before trial" on the basis that "the claimant lacks standing." Supp. R. G(8)(c)(i)(B). Such a challenge to a claimant's standing "may be presented as a motion for judgment on the pleadings," Supp. R. G(8)(c)(ii)(B), which, in turn, is governed by Rule 12(c) of the Federal Rules of Civil Procedure, *United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, 2015 WL 5178121, at *5 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three*

*Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Generally speaking, a Rule 12(b)(6) motion to dismiss should be granted if the complaint does not "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

II. Standing in Civil Forfeiture Actions

In order to assert a claim over property that is subject to a civil forfeiture action, a claimant "must have both standing under the statute or statutes governing [its] claims *and* standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (emphasis added); *see also, e.g.*, *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025); *United States v. Technodyne*, 753 F.3d 368, 380 (2d Cir. 2014). Standing is "a prerequisite to challenging the forfeiture," *Vazquez-Alvarez*, 760 F.3d at 197; *accord United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (1st Cir. 2013) ("Standing is a threshold consideration in all cases, including civil forfeiture cases"); *United States v. $38,570 in U.S. Currency*, 950 F.2d 1108, 1111–13 (5th Cir. 1992) ("Unless claimant can first establish his standing he has no right to put the government to its proof."), and the burden of proof to establish standing rests with the claimant, *Mercado v. United States Customs Service*, 873 F.2d 641, 644 (2d Cir. 1989); *United States v. The M/Y Amadea*, 770

F. Supp. 3d 558, 606 (S.D.N.Y. 2025).[2] "Without standing, the claimant lacks the right to bring any motion, regardless of the basis." *Vazquez-Alvarez*, 760 F.3d at 197.

To establish Article III standing, a claimant must demonstrate (1) an injury-in-fact; (2) that is fairly traceable to the complained-of conduct; and (3) that can likely be redressed by a favorable decision. *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015); *In re 650 Fifth Ave. & Related Props.*, 2013 WL 4572527, at *4 (S.D.N.Y. Aug. 27, 2013), *aff'd*, 581 F. App'x 61 (2d Cir. 2014); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). This typically requires the claimant to establish an ownership or possessory interest in the specific property at issue. *See Cambio Exacto*, 166 F.3d at 527; *In re 650 Fifth Ave.*, 2013 WL 4572527, at *4; *cf. United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004) (finding that standing in a civil forfeiture action requires a showing of an ownership interest in the forfeited property, not merely a right to payment). In this context, "an interest 'in' property must be an interest in *a particular, specific asset*, as opposed to a general interest in an entire forfeited estate or account." *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997) (emphasis added). "[A] bare assertion of ownership of the res, without more, is inadequate to prove an ownership interest sufficient to establish standing." *United States v. All Funds on Deposit on or Before Nov. 8, 1994 in Citibank Acct. No. 42773634 in the Name Imtiaz Ahmed Kahn*, 955 F. Supp. 23, 27 (E.D.N.Y. 1997).

---

[2] The goal of this requirement is "to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." *United States v. $557,993.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002) *cf. Mercado*, 873 F.2d at 645 (recognizing "a substantial danger of false claims in forfeiture proceedings"); *United States v. $421,090.00 in U.S. Currency*, 2011 WL 3235632, at *4 (E.D.N.Y. July 27, 2011) (noting "the likelihood of false claims of ownership in civil forfeiture actions—where the government must publish notice of the proceedings—is high").

As follows, an unsecured creditor "does not possess a legal right, title, or interest in the property that [is] forfeited as required for standing." *DSI Assocs. LLC v. United States,* 496 F.3d 175, 184 (2d Cir. 2007) (internal quotation marks omitted); *accord United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995) ("[A] general creditor can never have an interest in specific forfeited property."); *United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994) (explaining "the federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property" because they "cannot claim an interest in any particular asset"). To that end, numerous courts have found that where a fraud victim voluntarily transfers money to a wrongdoer, the victim lacks standing to contest the forfeiture of the wrongdoer's property because once the transfer was made, the money became the wrongdoer's property and the victim became his unsecured creditor, even if the fraud victim can trace his money to the property being forfeited. *See, e.g.*, *United States v. $16,816 in Funds*, 2023 WL 6613774, *2 (N.D. Ga. Sept. 28, 2023); *United States v. 1976 Sabreliner Business Jet*, 2017 WL 5691009, *6 (E.D. Tenn. Mar. 7, 2017); *United States v. $7,599,358.09*, 2011 WL 3611451, *3 (D.N.J. Aug. 15, 2011); *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009).[3] The same is true where the claimant transferred money as

[3] Instead of contesting forfeiture actions, such victims must rely on the government's authority to remit forfeited funds to victims once the civil forfeiture action is complete. *See* 18 U.S.C. § 981(e)(6) (authorizing the Attorney General to remit forfeited property to non-owner victims); *cf. $7,599,358.09*, 2011 WL 3611451, at *4 (finding that fraud victims were unsecured creditors who thus lacked standing to contest the forfeiture action and noting they instead could file remission petitions with the Attorney General); *8 Gilcrease*, 641 F. Supp. 2d at 6 (explaining that fraud victims lacked standing to contest the forfeiture of the wrongdoer's property in the forfeiture proceeding but "are not without remedy" and could file remission petitions with the Attorney General). For example, while holding that the family of a murder victim lacked standing to contest forfeiture of the alleged murderer's property, the First Circuit explained that "Congress has provided for justice a different way: it has provided that the Government, which stands for all the citizens, may take the criminal's property by forfeiture" and has authorized the victims to

part of a contract for the purchase of goods or services but did not receive the promised goods or services in return: such a person may have a cause of action for breach of contract against the counterparty, but lacks a legal interest in the counterparty's assets sufficient to establish standing to contest the forfeiture of those assets in a civil forfeiture case. *See, e.g.*, *Khan*, 955 F. Supp. at 26. Put another way, once a victim of fraud voluntarily transfers his property to a wrongdoer, he becomes the wrongdoer's unsecured creditor regardless of whether he can trace his losses to the wrongdoer's property. *See, e.g.*, *United States v. $299,218.48 in U.S. Currency*, 719 F. Supp. 3d 85, 92 (D.D.C. 2024) (finding claimant to be "without standing" where claimant had paid funds to a wrongdoer that the wrongdoer refused to return, notwithstanding that the res was alleged to be "a portion of this payment").

DISCUSSION

Pursuant to Rule G(8)(c)(ii)(B), the government submits this motion for judgment on the pleadings to strike the Leepinyo Claim and Leepinyo Answer for failure to allege facts that, even if true, would be sufficient to establish Article III standing to contest the instant forfeiture action.

As noted above, the asserted basis for the Leepinyo Claim is that Leepinyo was defrauded by Prince Real Estate Group and Chen when they "failed to deliver the contracted condominium unit" for which he had paid them in cash that subsequently they converted into Bitcoin. ECF No. 11, ¶¶ 1, 6, 9. Based on these allegations, Leepinyo asserts that he has "a legal interest" in the Defendant Cryptocurrency. *Id.* ¶ 12; *see also* ECF No. 34, ¶ 4 (asserting "a lawful ownership and/or possessory interest in portions of the [Defendant Cryptocurrency]").

---

petition the Attorney General for remission. *United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 45 (1st Cir. 2003).

Accepting as true all the allegations contained in the Leepinyo Claim, Leepinyo lacks standing to challenge the instant forfeiture action because he is merely an unsecured creditor of Prince Real Estate Group and Chen, and "'a general creditor has no interest in particular assets or funds' sufficient to challenge an order of forfeiture." *Khan*, 955 F. Supp. at 26 (quoting *United States v. Schwimmer*, 968 F.2d 1570, 1581 (2d Cir. 1992)).

Even assuming that Leepinyo can trace his funds to the Defendant Cryptocurrency, as he claims he can, he still lacks a sufficient interest in these assets because once he voluntarily transferred his money, that money became the property of Prince Real Estate Group and Chen. *See, e.g.*, *id.* (underscoring that "a claim of entitlement to payment is not synonymous with a claim to an ownership interest in [ seized property]"); *accord United States v. Real Property Located in Los Angeles*, 2023 WL 3564732, *5 (C.D. Cal. Apr. 17, 2023) (explaining that "a person who surrenders his money to a third party by putting his money in the third party's bank account becomes, at most, an unsecured creditor with a cause of action against the account holder" and "[s]uch unsecured creditors lack Article III standing to contest the forfeiture of property owned by their debtors)". In *$299,218.48*, the court found that the claimant, a California-based company that had entered into contract with a Colorado-based company to purchase microchips, lacked constitutional standing to participate in the government's civil forfeiture action against funds seized from the Colorado-based company. 719 F. Supp. 3d at 92. The court observed that the claimant was an unsecured general creditor, notwithstanding its argument that "[t]he defendant funds are a portion of th[e] payment" the claimant had made to the Colorado-based company, because its interest stemmed from an alleged breach of contract by that company. *Id.*

Leepinyo similarly is an unsecured creditor whose asserted interest stems from a breach of contract. Taking his assertions as true, he paid Prince Real Estate Group and Chen Zhi

for an apartment that they did not deliver. That claim cannot confer on Leepinyo Article III standing to challenge the forfeiture of the Defendant Cryptocurrency, regardless of whether his cash payments were converted to cryptocurrency and incorporated into the Defendant Cryptocurrency, as he asserts. *See, e.g.*, *id.*; *Real Property Located in Los Angeles*, 2023 WL 3564732, at *5. Therefore, the Leepinyo Claim and Leepinyo Answer should be dismissed. *See, e.g.*, *United States v. $10,000 in U.S. Currency*, 2020 WL 5757471, at *5–6 (N.D.N.Y. Sept. 28, 2020) (striking claim and answer where the claimant "demonstrate[d] a general unsecured interest in [the property]" but did not establish standing to challenge the forfeiture action); *United States v. All Right, Title & Int. in Real Prop., Appurtenances, & Improvements Known as 479 Tamarind Drive, Hallandale, Fla.*, 2005 WL 2649001, at *4 (S.D.N.Y. Oct. 14, 2005) (granting the government's motion to dismiss on the basis that the claimants lacked standing to contest forfeiture); *Kahn*, 955 F. Supp. at 27 (granting the government's motion for judgment on the pleadings where the claimant was, "at most, a general creditor" and thus failed to demonstrate standing).[4]

[4] To be clear, Leepinyo is not without remedy. On the same day as the submission of the Leepinyo Claim, Leepinyo also filed a remission petition, which, as discussed above, is the proper procedure for fraud victims to seek compensation.

## CONCLUSION

Even accepting as true all allegations in the Leepinyo Claim, Leepinyo has alleged only that he is an unsecured creditor of the owner(s) of the Defendant Cryptocurrency with no legal interest in the assets, which, for the reasons discussed above, is insufficient to establish Article III standing in this civil forfeiture action. Accordingly, the Leepinyo Claim and Leepinyo Answer should be dismissed on the pleadings pursuant to Rule G(8)(c)(ii)(B).

Dated: Brooklyn, New York
February 9, 2026

Respectfully submitted,
JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Alexander F. Mindlin
Tanisha R. Payne
Andrew D. Reich
Benjamin L. Weintraub
Rebecca M. Schuman
Assistant U.S. Attorneys
(718) 254-7000

By: */s/*
Christopher B. Brown
Deputy Chief
National Security Cyber Section
United States Department of Justice

cc: Clerk of Court (RPK) (via ECF)
Ath Leepinyo (via certified mail)