UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendant *In Rem*. | Civil Action No. 25-05745 (RPK) |

**VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT
IN PROPERTY SUBJECT TO FORFEITURE *IN REM***

The Estates of Naama and Eitam Henkin, along with Matan Henkin, I.Z.H. (a minor), N.E.H. (a minor), and N.Y.H. (a minor) (collectively, the "Henkin Claimants") are judgment creditors of the Islamic Republic of Iran ("Iran") and several of Iran's agencies and instrumentalities. The Henkin Claimants' allegations stemmed from the attempted-kidnapping-turned-murders, by Hamas terrorists, of Eitam and Naama Henkin in front of their four minor children in Israel in 2015, for which Iran has been found responsible. The United States District Court for the District of Columbia, following default proceedings and evidentiary submissions pursuant to 28 U.S.C. § 1608(e), entered final judgment establishing Iran's liability and awarding damages to the Henkin Claimants. The Henkin Claimants hold a final, enforceable judgment under the FSIA terrorism exception, including 28 U.S.C. §1605A, and applicable foreign law causes of action against Iran for damages arising from Iran's material support for the terrorist attack.[1]

---

[1] Iran has not paid any portion of any of the Henkins' judgment. The Henkin Claimants have received partial distributions through the United States Victims of State Sponsored Terrorism

1

Counsel for the Henkin Claimants very recently learned of this forfeiture proceeding and the allegations plaintiffs set forth in *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, Civil Action No. 25-cv-07093 (E.D.N.Y.). While the U.S. makes one passing reference to Iran in the complaint initiating this proceeding,[2] the *Fritz* matter later detailed credible claims that Iran has used Iran and China Investment Development Group ("ICG"), doing business as Lubian, to evade U.S. sanctions by mining cryptocurrency in Iran. *See generally Fritz*, ECF 70, Memorandum of Law in Support of Plaintiffs' Emergency Motion for *Ex Parte* Order of Attachment, dated Dec. 28, 2025 ("*Fritz* Mem."). Among other allegations, the *Fritz* details how ICG miners used electricity converted from sanctioned Iranian oil and gas to generate cryptocurrency for the Iranian government. *Id.* at 4-5. ICG's activities enabled Iran to transact business undetected through the use of cryptocurrency, allowing Iran to evade U.S. sanctions and fund its worldwide terrorism network. Thus, ICG—the bitcoin mining operation at the center of this forfeiture action—is an agency or instrumentality of Iran within the meaning of Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"). Pub. L. No. 107-297, 116 Stat. 2322, codified at 28 U.S.C. § 1610 note.

The United States is in possession of approximately 127,271 bitcoins ("BTC at issue") belonging to ICG which are blocked in an FBI bitcoin wallet. TRIA expressly authorizes the Henkin Claimants to attach and execute on any blocked asset of any agency or instrumentality of Iran, including ICG, "notwithstanding any other provision of law." Accordingly, Henkin Claimants assert, pursuant to TRIA, a superior interest in the BTC at issue, or at least enough to satisfy their

---

Fund, but their judgment remains substantially unsatisfied. The Henkins' judgment continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

[2] *See* ECF 1 at ¶ 16(u) ("Lubian was a Chinese bitcoin mining operation that maintained bitcoin mining facilities across Asia, including in China and Iran.")

2

outstanding compensatory damages, plus post-judgment interest. The Henkin Claimants' right to execute on the BTC at issue is statutorily superior to any interest the government or any other non-TRIA claimant might assert.

The Henkin Claimants submit this Verified Claim pursuant to Rule G(5)(a) to enforce their respective compensatory damages judgments against the BTC at issue.

## I. The Henkin Claimants Have a Judgment Against a Terrorist Party for an Act of Terrorism

1. In *Estate of Eitam Henkin et al. v. Islamic Republic of Iran et al.*, No. 1:19-cv-1184 (D.D.C.), the United States District Court for the District of Columbia entered a final and enforceable judgment on June 18, 2024, in the amount of $52,049,000 in compensatory damages and $179,048,560 in punitive damages ("Henkin Judgment"). The Henkin Judgment is attached as Exhibit A. A list identifying each Henkin judgment creditor and their corresponding plaintiff-specific damages award is attached as Exhibit B.

## II. Iran is a Terrorist Party.

2. Since 1984, Iran has been designated the by the United States as a State Sponsor of Terrorism pursuant to Section 6(j) of the Export Administration Act of 1979, previously codified at 50 U.S.C. § 4605(j), Section 620A of the Foreign Assistance Act, 22 U.S.C. § 2371, and Section 40(d) of the Arms Export Control Act, 22 U.S.C. § 2780(d). Accordingly, the government of Iran, its political subdivisions, and its agencies and instrumentalities are terrorist parties within the meaning of TRIA.

## III. ICG Was an Agency or Instrumentality of Iran.

3. The allegations in *Fritz* detail the relationship between Iran and ICG (to Iran's benefit) which consisted of, among other things, a cryptocurrency mining operation in Rafsanjan, Iran. *Fritz* Mem. at 13-17. ICG is an agency or instrumentality of Iran because (1) it was a means

through which a material function of Iran was accomplished; (2) it provided material support to Iran; or (3) it was owned, controlled, or directed by Iran. *Kirschenbaum v. 650 Fifth Ave. and Related Props.*, 830 F.3d 107, 132 (2d Cir. 2016). Even though only one of these three prongs needs to be satisfied for ICG to be an agency or instrumentality of Iran, evidence alleged in *Fritz* shows ICG satisfies all three tests.

4. First, Iran used ICG to generate cryptocurrencies so that the country can evade U.S. sanctions and fund international terrorism by financing its activities outside traditional global banking systems. Therefore, ICG was a means through which Iran accomplished a material function. Second, the bitcoin generated by ICG allowed Iran to carry out sanctioned activities. Cryptocurrencies enable Iran to evade detection of its criminal activity from the international community, including the U.S. Accordingly, ICG provided material support to Iran. Third, Iran was deeply involved in ICG's activities. ICG was only able to operate its bitcoin mine in Iran with the country's approval and support. What is more, the Islamic Revolutionary Guard Corps (a subdivision of the state of Iran) controls cryptocurrency mining in Iran. Therefore, ICG was controlled or directed by Iran.

5. Accordingly, ICG was an agency or instrumentality of Iran.

**IV. The BTC at Issue Is a Blocked Asset of Iran or of Its Agency or Instrumentality.**

6. The BTC at issue is a blocked asset of a terrorist party within the meaning of TRIA. Under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A).

7. The U.S. government through IEEPA has "blocked" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 560.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 132. Therefore, as an agency or instrumentality of Iran, all property of ICG in the United States qualifies as blocked assets for purposes of TRIA. *See*

4

*Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022).

**V.     The United States Commenced This Forfeiture Action Without Disclosing Iran's Extensive Involvement with the BTC at issue.**

8.     On October 14, 2025, the government filed the instant civil forfeiture action against approximately 127,271 bitcoins once stored in the virtual-currency addresses identified in Attachment A of its complaint. *See* ECF 1 at 1 & Attachment. On the same day, this Court issued an arrest warrant *in rem* for BTC at issue pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* ECF 3.

9.     The government describes "Lubian" as "a Chinese bitcoin mining operation" and acknowledges that it had at least one facility in "Iran." *Id.* at ¶ 16(u). The government did not include information that put the Henkin Claimants on notice that the bitcoin mining operation involved conduct attributable to Iran, or that the Henkin Claimants had a basis to claim any of the BTC at issue.

**VI.    Under TRIA, the Henkin Claimants Have a Superior Interest in the BTC at issue.**

10.    At the claim stage of a civil forfeiture proceeding, a claimant is not required to prove the merits of its interest in the property. Rather, the claimant need only demonstrate a "facially colorable interest" sufficient to establish standing. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025). Whether that interest is ultimately proven "is a question for a later stage in the proceedings." *Id.* The Henkin Claimants easily meet this burden.

11.    The Henkin Claimants are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. Because ICG was an agent or instrumentality of Iran, as set forth above, TRIA entitles the Henkin Claimants to execute on the BTC at issue to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the Henkin Claimants have a possessory interest in the BTC at issue, which permits them to bring the claims asserted

here.

12. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" arising out of an "act of terrorism" may execute on the "blocked assets" of that terrorist party or "any agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." TRIA, Section 201(a). TRIA's "notwithstanding" clause "mak[es] plain that the force of the [statute] extends everywhere" and "'supersede[s] all other laws.'" *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (citation omitted). Accordingly, because it expressly overrides "conflict[ing] laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

13. The Henkin Claimants satisfy each element required for TRIA execution rights. First, the Henkin Claimants hold judgments pursuant to 28 U.S.C. § 1605A for compensatory damages against Iran based on an act of terrorism. *See supra* ¶ 1. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. *See supra* ¶ 2. Third, ICG operated as Iran's agency or instrumentality by materially serving that country in avoiding sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction. *See supra* ¶¶ 3-5; *Fritz* Mem. at 13-17. Fourth, the BTC at issue are "[b]locked assets" within the meaning of TRIA. *See supra* ¶¶ 6-7.

14. Pursuant to 28 U.S.C. § 983(a) and Rule G, the Henkin Claimants hereby assert a claim against such amount of the BTC at issue—as the property of an agency or instrumentality of Iran—as may be necessary to satisfy the outstanding compensatory damages owed to them under their judgment against Iran, plus post-judgment interest.

6

15. The Henkin Claimants' claim is superior to the government's claim and superior to any other non-TRIA claimant.

16. This claim is verified under penalty of perjury by the attached verifications from the Henkin Claimants (or legal guardians *ad litem* or estate personal representatives, as applicable).

17. Notwithstanding the government's forfeiture efforts, the Henkin Claimants reserve all rights and remedies available in law and equity to enforce their interest in the BTC at issue.

Dated: February 13, 2026                              Respectfully submitted,

                                                          /s/ *Melissa S. Fox*
Melissa S. Fox
Robert B. Gilmore (D.C. Bar No. 492424)
Kevin L. Attridge (D.C. Bar No. 1012349)
STEIN MITCHELL BEATO & MISSNER LLP
2000 K Street, N.W., Suite 600
Washington, D.C. 20006
Tel: (202) 737-7777
Fax: (202) 296-8312
mfox@steinmitchell.com
rgilmore@steinmitchell.com
kattridge@steinmitchell.com

Gavriel Mairone
MM~LAW LLC
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590
ctlaw@mm-law.com

*Counsel for the Henkin Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, I electronically filed the foregoing Henkin Claimants' Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture In Rem via CM/ECF for the United States District Court for the Eastern District of New York and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the Government, in the above-captioned matter.

                                                                  /s/ *Melissa S. Fox*
                                                                  Melissa S. Fox