UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>        Defendant *In Rem*. | Civil Action No. 25-5745 (RPK) |

## THE HAMEN CLAIMANTS' ANSWER TO VERIFIED COMPLAINT *IN REM*

Pursuant to Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the *Hamen*, *Frost*, *W.A.*, *Bernhardt*, *Coombs*, *M.M.*, *Gidada*, *Roberts*, *Strauss*, and *Hammons* Plaintiffs (collectively, the "Hamen Claimants")[1] hereby answer the Government's Verified Complaint *In Rem*, ECF No. 1, as follows:

1. The Hamen Claimants admit the allegations in Paragraph 1, but deny that the United States has any right, title, or interest in the Approximately 127,271 Bitcoin ("BTC") referenced in the Complaint (the "Defendant Cryptocurrency").

2. Paragraph 2 contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

3. Paragraph 3 contains legal conclusions to which no response is required. To the extent a response is required, the Hamen Claimants admit that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

---

[1] A full list of the Hamen Claimants and the damages they have been awarded in various judicial proceedings is included as Attachment A to the accompanying Verification of the Hamen Claimants' Claims.

4. Paragraph 4 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the Hamen Claimants lack sufficient knowledge to admit or deny the allegation that acts and omissions giving rise to the forfeiture took place in the Eastern District of New York.

5. The Hamen Claimants admit that the Defendants *In Rem* do consist of the Defendant Cryptocurrency. The Hamen Claimants further admit that the Defendant Cryptocurrency is the 127,271 Bitcoin that was previously stored at the addresses listed in Attachment A to the Verified Complaint. However, the Hamen Claimants specifically deny that the Defendant Cryptocurrency is the property of the United States Government. Rather, the Defendant Cryptocurrency is owned by the Iran and China Investment Development Group ("Iran-China Group"), an Iranian joint-stock company doing business as LuBian, which partnered with the Iranian government to build a Bitcoin mining facility in Rafsanjan, Iran to assist Iran's efforts to evade economic sanctions imposed on it by the United States and other countries.

6. The Hamen Claimants admit the allegations of Paragraph 6.

7. The allegations of Paragraph 7 assert legal conclusions and describe a statute that speaks for itself, to which no response is required.

8. The allegations of Paragraph 8 assert legal conclusions and describe a statute that speaks for itself, to which no response is required.

9. The allegations of Paragraph 9 assert legal conclusions and describe a statute that speaks for itself, to which no response is required.

10. The allegations of Paragraph 10 assert legal conclusions and describe a statute that speaks for itself, to which no response is required.

11. The allegations of Paragraph 11 assert legal conclusions and describe a statute that speaks for itself, to which no response is required.

12. The allegations of Paragraph 12 assert legal conclusions and describe a statute that speaks for itself, to which no response is required.

13. The allegations of Paragraph 13 assert legal conclusions and describe a statute that speaks for itself, to which no response is required.

14. The allegations of Paragraph 14 assert legal conclusions and describe a statute that speaks for itself, to which no response is required.

15. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 15 and therefore deny them.

16. The Hamen Claimants admit that the Iran-China Group, through LuBian, maintained a bitcoin mining operation in Iran. The Hamen Claimants specifically deny that "Lubian was a Chinese bitcoin mining operation that maintained bitcoin mining facilities across Asia, including China." To the contrary, LuBian was the cryptocurrency mining operation and front for the Iran-China Group, an Iranian joint-stock company backed by Chinese investors that partnered with the Iranian government to build a large Bitcoin mining operation in Rafsanjan, Iran to assist Iran's longstanding efforts to evade sanctions imposed on Iran by the United States and other countries. The Hamen Claimants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 16.

17. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 17 and therefore deny them.

18. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 18 and therefore deny them.

19. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 19 and therefore deny them.

20. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 20 and therefore deny them.

21. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 21 and therefore deny them.

22. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 22 and therefore deny them.

23. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 23 and therefore deny them.

24. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 24 and therefore deny them.

25. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 25 and therefore deny them.

26. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 26 and therefore deny them.

27. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 27 and therefore deny them.

28. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 28 and therefore deny them.

29. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 29 and therefore deny them.

30. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 30 and therefore deny them.

31. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 31 and therefore deny them.

32. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 32 and therefore deny them.

33. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 33 and therefore deny them.

34. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 34 and therefore deny them.

35. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 35 and therefore deny them.

36. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 36 and therefore deny them.

37. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 37 and therefore deny them.

38. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 38 and therefore deny them.

39. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 39 and therefore deny them.

40. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 40 and therefore deny them.

41. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 41 and therefore deny them.

42. The Hamen Claimants admit that the Iran-China Group, doing business as LuBian, operated a BTC mining facility that "produced large sums of clean bitcoin dissociated from criminal proceeds" and that, at times, this operation "was the sixth largest bitcoin mining operation in the world." The Hamen Claimants specifically deny that the Iran-China Group was based in China. To the contrary, the Iran-China Group was an Iranian joint-stock company funded by Chinese investors that partnered with the Iranian government to build a large BTC mine in Rafsanjan, Iran. LuBian was the name of its cryptocurrency mining pool. The Hamen Claimants deny any implication or assertion that Chen provided the entirety of the financial support for the Iran-China Group's mining operations. The Hamen Claimants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 42 and therefore deny them.

43. The Hamen Claimants deny any allegation that the wallets containing the Defendant Cryptocurrency were exclusively controlled by Chen. Instead, the Iran-China Group, doing business as LuBian, controlled the wallets containing the Defendant Cryptocurrency. Additionally, some, or all, of the Defendant Cryptocurrency was mined by Iran, through the Iran-China Group, doing business as LuBian, as part of a scheme to evade economic sanctions imposed by the United States and other countries. The Hamen Claimants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 43 and therefore deny them.

44. The Hamen Claimants admit the allegations of Footnote 7 and that the Government is seeking to forfeit the Defendant Cryptocurrency which is described in more detail in Paragraph 44. The Hamen Claimants specifically deny any allegation that the wallets containing the Defendant Cryptocurrency were exclusively controlled by Chen. Instead, the Iran-China Group,

doing business as LuBian, controlled the wallets containing the Defendant Cryptocurrency. The Hamen Claimants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 44 and therefore deny them.

45. The Hamen Claimants admit that at least some of the cryptocurrency addresses were funded using BTC mined by the Iran-China Group, doing business as LuBian. The Hamen Claimants specifically deny any allegation that the wallets containing the Defendant Cryptocurrency were exclusively controlled by Chen. Instead, the Iran-China Group, doing business as LuBian, controlled the wallets containing the Defendant Cryptocurrency. The Hamen Claimants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 45 and therefore deny them.

46. The Hamen Claimants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 46 and therefore deny them.

47. The Hamen Claimants admit that at least some of the cryptocurrency addresses were funded using BTC mined by the Iran-China Group, doing business as LuBian. The Hamen Claimants specifically deny any allegation that the wallets containing the Defendant Cryptocurrency were exclusively controlled by Chen. Instead, the Iran-China Group, doing business as LuBian, controlled the wallets containing the Defendant Cryptocurrency. The Hamen Claimants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 47 and therefore deny them.

48. The Hamen Claimants deny that all of the Defendant Cryptocurrency went "through a process of high-volume disaggregation and funneling before it ultimately converged" because at least some of the Defendant Cryptocurrency was BTC that was newly mined by the Iran-China

Group, doing business as LuBian. The Hamen Claimants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 48 and therefore deny them.

49. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 49 and therefore deny them.

50. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 50 and therefore deny them.

51. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 51 and therefore deny them.

52. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 52 and therefore deny them.

53. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 53 and therefore deny them.

54. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 54 and therefore deny them.

55. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 55 and therefore deny them.

56. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 56 and therefore deny them.

57. The Hamen Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 57 and therefore deny them.

58. The Hamen Claimants admit that the Defendant Currency is currently in the possession of the United States. The Hamen Claimants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 58 and therefore deny them.

59.     The Hamen Claimants admit the allegations of Paragraph 59 only to the extent that criminal and regulatory actions have been brought as alleged. The Hamen Claimants specifically deny any allegation that they require a license from the United States Department of Treasury's Office of Foreign Assets Control to attach and execute against the Defendant Cryptocurrency under the Terrorism Risk Insurance Act ("TRIA"). The Hamen Claimants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 59 and therefore deny them.

### FIRST CLAIM FOR RELIEF
### (Proceeds Traceable to Wire Fraud)

60.     The Hamen Claimants repeat, incorporate, and reallege each and every response to the foregoing Paragraphs of the Complaint as though fully set forth herein.

61.     The allegations of Paragraph 61 allege legal conclusions to which no response is required. To the extent a response is required, the Hamen Claimants deny that any of the allegations in Paragraph 61 provide the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, and interest of the Hamen Claimants.

62.     The allegations of Paragraph 62 allege legal conclusions to which no response is required. To the extent a response is required, the Hamen Claimants deny that any of the allegations in Paragraph 62 provide the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, and interest of the Hamen Claimants.

### SECOND CLAIM FOR RELIEF
### (Property Involved in Money Laundering)

63.     The Hamen Claimants repeat, incorporate, and reallege each and every response to the foregoing Paragraphs of the Complaint as though fully set forth herein.

64.     The allegations of Paragraph 64 allege legal conclusions to which no response is required. To the extent a response is required, the Hamen Claimants deny that any of the allegations

in Paragraph 64 provide the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, and interest of the Hamen Claimants.

65. The allegations of Paragraph 65 allege legal conclusions to which no response is required. To the extent a response is required, the Hamen Claimants deny that any of the allegations in Paragraph 65 provide the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, and interest of the Hamen Claimants.

## **AFFIRMATIVE AND OTHER DEFENSES**

1. All allegations not expressly admitted above are denied.

2. As judgment creditors, the Hamen Claimants possess a statutory interest in the Defendant Cryptocurrency sufficient to confer standing in this action and priority execution rights pursuant to TRIA § 201 that are superior to any competing forfeiture claims asserted by the Complaint.

3. The Defendant Cryptocurrency was "blocked" by operation of law under Executive Order 13599 as soon as it entered the United States, and remains so, as an asset of a terrorist party, Iran, and/or an agency or instrumentality of a terrorist party, the Iran-China Group.

4. The Hamen Claimants are entitled to attach and execute upon the Defendant Cryptocurrency because they have satisfied TRIA's requirements. Specifically, the Hamen Claimants obtained their judgments against Iran, a terrorist party, on the basis of Iran's material support for acts of terrorism and the Defendant Cryptocurrency is blocked because it is owned by the Iran-China Group, an agency or instrumentality of Iran.

5. Claims of law and equity in this forfeiture action brought by the United States cannot override statutory priority rights conferred by TRIA or constitutional due process protections owed to the Hamen Claimants. To the extent a forfeiture may be imposed in a manner

that operates punitively against the Hamen Claimants' asserted statutory interests, such forfeiture would be constitutionally excessive and invalid.

6. Alternatively, any forfeiture or disposition of the Defendant Cryptocurrency must comply with the U.S. Victims of State Sponsored Terrorism Fund statutory scheme. *See* 34 U.S.C. § 20144(e).

7. The Hamen Claimants reserve the right to amend this Answer and to raise additional defenses, cross-claims, and third-party claims not yet asserted herein as may be warranted by the discovery of information during further proceedings, and/or to pursue alternative remedies under any and all applicable laws.

## CROSS-CLAIMS & COUNTERCLAIMS
### (TRIA Attachment & Priority)

The Hamen Claimants assert the following cross-claims and counterclaims ("TRIA Claims") against the United States and all other claimants asserting an interest in the Defendant Cryptocurrency who appear in this action. Therein, the Hamen Claimants seek a declaration that, as a matter of New York and federal law, their claims are entitled to priority over all competing claims for the purpose of attachment and execution, including but not limited to competing forfeiture claims, terrorism judgment creditors, execution creditors, and non-TRIA claimants, and allege as follows:

1. This Court has jurisdiction over the TRIA Claims pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Supplemental Rule G.

2. Venue is proper in this District because the TRIA Claims are ancillary to, and arise from, the same proceeding pending before this Court.

3. The Hamen Claimants are judgment creditors of the Islamic Republic of Iran, holding final, unsatisfied judgments for damages arising from acts of state-sponsored terrorism.

4. The defendants to the TRIA Claims include the United States and all other parties who assert any legal, equitable, possessory, or contingent interest in the Defendant Cryptocurrency.

5. The TRIA Claims are asserted for the limited purpose of preserving the Hamen Claimants' priority rights and does not seek adjudication of priority until the universe of claimants in this action is established. The TRIA Claims do not assert any cause of action against the United States, or any foreign sovereign, other than execution against blocked assets as specifically permitted and authorized by TRIA.

6. The Hamen Claimants have timely filed a Verified Claim in this action and either obtained or are pursuing judicial authorization under 28 U.S.C. § 1610(c) to execute on their judgments.

7. The Defendant Cryptocurrency constitutes blocked assets of Iran and/or its agency or instrumentality, and is therefore subject to attachment and execution by the Hamen Claimants pursuant to TRIA § 201.

8. Multiple parties now assert competing interests in the Defendant Cryptocurrency, including the United States, other terrorism judgment creditors, and non-TRIA claimants.

## FIRST COUNT
**(Priority under CPLR 5234 – Executions)**

9. The Hamen Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

10. This Count is pleaded in the alternative and only to the extent that state-law execution or attachment principles apply in aid of federal judgment enforcement.

11. Federal courts routinely apply state execution priority rules, including, but not limited to, CPLR 5234, in aid of federal execution proceedings.

12. CPLR 5234(b) establishes a priority regime among judgment creditors executing on the same property, keyed to the time of delivery of execution, levy, and related enforcement steps.

13. Under CPLR 5234(c), where executions are returned unsatisfied or partially satisfied, priority is preserved for creditors who first perfect execution rights.

14. The Hamen Claimants have acted diligently and in good faith to: (i) pursue authorization orders under 28 U.S.C. § 1610(c); (ii) assert their claims in this action; and (iii) pursue execution against the Defendant Cryptocurrency.

15. To the extent competing judgment creditors have not satisfied the statutory prerequisites for execution, or did so later in time, their claims are subordinate to the Hamen Claimants under CPLR 5234.

## SECOND COUNT
### (Priority under CPLR Article 62 – Attachment)

16. The Hamen Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

17. This Count is pleaded in the alternative and only to the extent that state-law execution or attachment principles are determined to apply in aid of federal judgment enforcement.

18. CPLR Article 62 governs prejudgment and post-judgment attachment and establishes priority based on the timing of attachment orders, levy, and perfection.

19. The Hamen Claimants' attachment rights arise from final judgments, statutory authorization under TRIA, and judicial permission under FSIA § 1610(c).

20. To the extent other claimants seek attachment of the Defendant Cryptocurrency without satisfying TRIA or FSIA requirements, their attachments are invalid or subordinate to the Hamen Claimants' TRIA Claims as a matter of law.

21. The Hamen Claimants are therefore entitled to priority over all competing attachments under CPLR Article 62.

## THIRD COUNT
### (Priority under TRIA § 201)

22. The Hamen Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

23. TRIA § 201(a) provides that, "[n]otwithstanding any other provision of law," blocked assets of a terrorist party or its agency or instrumentality shall be subject to execution by holders of terrorism judgments.

24. TRIA's "notwithstanding" clause preempts inconsistent state and federal law, overrides competing claims not grounded in TRIA, and elevates qualifying terrorism judgment creditors over all non-TRIA claimants.

25. Federal courts have consistently recognized that TRIA creates a priority execution regime favoring holders of terrorism judgments over competing non-TRIA claimants, subject to the procedural sequencing required by forfeiture and execution law.

26. Accordingly, even if competing claimants satisfy federal forfeiture and/or state-law execution or attachment requirements, their claims are subordinate to the Hamen Claimants' TRIA Claims.

## FOURTH COUNT
### (Declaratory Relief)

27. The Hamen Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

28. An actual and justiciable controversy exists concerning the relative priority of the parties' interests in the Defendant Cryptocurrency.

29. The Hamen Claimants seek a declaration that: (i) they hold priority rights for attachment and execution purposes; (ii) any competing executions and/or attachments are subordinate to the TRIA Claims; and (iii) any distribution of the Defendant Cryptocurrency must respect that priority.

## PRAYER FOR RELIEF

WHEREFORE, the Hamen Claimants respectfully request that the Court:

30. Declare the Hamen Claimants' interests have priority over all other parties for attachment and execution purposes under CPLR 5234, CPLR Article 62, TRIA § 201, FSIA § 1610, and all other applicable federal laws;

31. Declare that any competing executions, attachments, liens, or asserted interests are subordinate to the Hamen Claimants' rights for attachment and execution purposes;

32. Order that the Defendant Cryptocurrency be preserved and maintained subject to the Court's jurisdiction, and that no distribution or disposition affecting the priority of claimants occur unless and until the Hamen Claimants' asserted statutory rights are adjudicated;

33. In the alternative, and only if the Court determines that the Defendant Cryptocurrency, or any portion thereof, is not lawfully subject to attachment and execution by the Hamen Claimants, the Court should declare that any forfeiture, remission, or other disposition of such assets must comply with the United States Victims of State Sponsored Terrorism Fund statutory scheme set forth in 34 U.S.C. § 20144(e), and that no disposition inconsistent with that statutory framework may occur; and

34. Grant the Hamen Claimants such other and further relief as the Court deems just and proper.

Dated: February 17, 2026

Respectfully submitted,

*/s/Richard P. Donoghue*
Randy Singer (*pro hac vice* forthcoming)
Kevin Hoffman (*pro hac vice* forthcoming)
Singer Hoffman, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Telephone: (757) 301-9995
Email: randy.singer@singerhoffman.com
Email: kevin.hoffman@singerhoffman.com

Richard P. Donoghue
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd St.
New York, NY 10019
Telephone: (212) 858-1000
Email: richard.donoghue@pillsburylaw.com

William M. Bosch (*pro hac vice* forthcoming)
Thomas L. Howard III (*pro hac vice* forthcoming)
Pillsbury Winthrop Shaw Pittman LLP
1200 17th St. NW
Washington, DC 20036
Telephone: (202) 663-8000
Email: william.bosch@pillsburylaw.com
Email: thomas.howard@pillsburylaw.com

*Counsel for the Hamen Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2026, I electronically filed the foregoing Answer to Verified Complaint *In Rem* via CM/ECF for the United States District Court for the Eastern District of New York and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the Government, in the above-captioned matter.

Dated: February 17, 2026

                                                                   */s/Richard P. Donoghue*
                                                                   Richard P. Donoghue
                                                                   Pillsbury Winthrop Shaw Pittman LLP
                                                                   31 West 52nd St.
                                                                   New York, NY 10019
                                                                   Telephone: (212) 858-1000
                                                                   Email: richard.donoghue@pillsburylaw.com