UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

UNITED STATES OF AMERICA,

   Plaintiff,

 v.

APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,

   Defendant, *In Rem*.

---------------------------------------------------------------x

Civil Action No. 1:25-cv-5745 (RPK)

### AMBUSH CLAIMANTS' ANSWER TO VERIFIED COMPLAINT IN REM AND REQUEST FOR JURY TRIAL AS PERMITTED BY LAW

  Pursuant to Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Ambush Claimants, *i.e.*, 434 judgment creditors who have been awarded compensatory damages judgments totaling approximately $1.6 billion, plus post-judgment interest, arising from acts of state-sponsored terrorism by the Islamic Republic of Iran, hereby answer the United States Government's Verified Complaint In Rem, dated October 14, 2025 (ECF No. 1), as follows:

### NATURE OF THE ACTION

  **1.** The Ambush Claimants admit the allegations in Paragraph 1, but deny that the United States has any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Ambush Claimants in the Defendant Cryptocurrency.

  **2.** Paragraph 2 contains legal conclusions to which no response is required. To the extent a response is required, the Ambush Claimants deny that any of the authorities referenced in

Paragraph 2 confer on the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Ambush Claimants in the Defendant Cryptocurrency.

## JURISDICTION AND VENUE

3. Paragraph 3 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the Ambush Claimants admit that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Paragraph 4 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the Ambush Claimants lack knowledge sufficient to confirm or deny the allegation that acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## THE DEFENDANTS IN REM

5. The Ambush Claimants admit that the Defendant Cryptocurrency is the 127,271 Bitcoin that was once stored at the addresses listed in Attachment A to the Verified Complaint. The Defendant Cryptocurrency is owned by the Iran and China Investment Development Group ("Iran-China Group"), an Iranian joint-stock company doing business as LuBian that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions.

6. On information and belief, the Ambush Claimants admit the allegations in Paragraph 6.

## RELEVANT STATUTES AND REGULATIONS

### *Wire Fraud*

7. Paragraph 7 characterizes a statute that speaks for itself, and no response is required.

8. Paragraph 8 characterizes a statute that speaks for itself, and no response is required.

### *Money Laundering*

9. Paragraph 9 characterizes a statute that speaks for itself, and no response is required.

10. Paragraph 10 characterizes a statute that speaks for itself, and no response is required.

11. Paragraph 11 characterizes a statute that speaks for itself, and no response is required.

12. Paragraph 12 characterizes and purports to quote a statute that speaks for itself, and no response is required.

### *Forfeiture Statutes*

13. Paragraph 13 characterizes a statute that speaks for itself, and no response is required. To the extent a response is required, the Ambush Claimants deny that any of the authorities referenced in Paragraph 13 confer on the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Ambush Claimants in the Defendant Cryptocurrency.

14. Paragraph 14 characterizes a statute that speaks for itself, and no response is required. To the extent a response is required, the Ambush Claimants deny that any of the

3

authorities referenced in Paragraph 14 confer on the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Ambush Claimants in the Defendant Cryptocurrency.

## FACTS

### *Introduction*

15.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 15.

### *Relevant Individuals and Entities*

16.     On information and belief, the Ambush Claimants admit that LuBian was the cryptocurrency mining pool and front for the Iran-China Group, an Iranian joint-stock company backed by Chinese investors that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions. The Ambush Claimants further admit that the Iran-China Group maintained a Bitcoin mining facility in Iran. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 16, including subsections (a) through (t) and (v) through (y).

### *Relevant Terms and Definitions*

17.     The Ambush Claimants admit the allegations in subsections (d) through (l) of Paragraph 17. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 17, including subsections (a) through (c).

## THE CRIMINAL SCHEMES

### *Background*

18.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 18.

19.     Paragraph 19 purports to quote a document that speaks for itself, and no response is required. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 19.

20.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 20.

### *The Fraud Schemes*

21.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 21.

### *The Scam Compounds*

22.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 22.

23.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 23.

24.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 24.

25.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 25.

26.     The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 26.

### *The Use of Bribes and Violence in Furtherance of the Schemes*

27. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 27.

28. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 28.

29. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 29.

30. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 30.

31. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 31.

### *The Brooklyn Network*

32. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 32.

33. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 33.

34. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 34.

35. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 35.

36. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 36.

37. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 37 and Footnote 2.

### *The Money Laundering Schemes*

38. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 38.

39. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 39.

40. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 40 and Footnote 3.

41. Footnote 4 purports to quote a document that speaks for itself, and no response is required. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 41.

42. On information and belief, the Ambush Claimants admit that the Iran-China Group doing business as LuBian operated a Bitcoin mining facility that "produced large sums of clean bitcoin dissociated from criminal proceeds." The Ambush Claimants also admit that this was the sixth largest Bitcoin mining operation in the world for some of the time it was active. On information and belief, the Ambush Claimants deny that the Iran-China Group was based in China. To the contrary, on information and belief, the Iran-China Group was an Iranian joint-stock company funded by Chinese investors that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions, and LuBian was the name of its cryptocurrency mining pool. The Ambush Claimants deny any implication that Chen provided all of the financial support for the Iran-China Group's

mining operations. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 42.

43. On information and belief, the Ambush Claimants deny the implication that the wallets containing the Defendant Cryptocurrency were exclusively controlled by Chen. Rather, on information and belief, the Iran-China Group doing business as LuBian controlled the wallets containing the Defendant Cryptocurrency. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 43 and Footnote 5.

## THE DEFENDANTS IN REM

44. On information and belief, the Ambush Claimants admit the allegations contained in Footnote 7 and that the government is seeking to forfeit Bitcoin that was stored at the 25 cryptocurrency addresses identified in the table following Paragraph 44.[1] On information and belief, the Ambush Claimants deny that the table following Paragraph 44 accurately identifies the amount of Bitcoin stored at each address in December 2020, provides a complete list of all addresses containing the Iran-China Group's Bitcoin in December 2020, or identifies all of the Bitcoin owned by the Iran-China Group that is currently in the government's possession. The Ambush Claimants also deny that the Defendant Cryptocurrency comprises solely the proceeds of Chen's fraud packaged as heavily laundered cryptocurrency. On information and belief, at least 11,166.51 BTC of the Defendant Cryptocurrency are directly traceable to Bitcoin mined by the Iran-China Group's Rafsanjan mine, and all of the Defendant Cryptocurrency constituted the Iran-

---

[1] Throughout its Verified Complaint, including in Paragraphs 44, 46, 48, 49, 52, 55, and 56, the government describes the addresses that stored the Defendant Cryptocurrency in December 2020 as "Chen Wallets." The Ambush Claimants deny that those addresses are properly described as "Chen Wallets" to the extent the term implies that all the Defendant Cryptocurrency necessarily belonged to Chen.

8

China Group's pool-level reserve of Bitcoin. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 44 and Footnote 6.

45. On information and belief, the Ambush Claimants admit that at least some of the cryptocurrency addresses were funded using Bitcoin newly mined by the Iran-China Group doing business as LuBian. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 45 and Footnote 8.

46. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 46 and the following table.

47. On information and belief, the Ambush Claimants admit that the four (4) cryptocurrency wallet addresses listed in Cluster Index-4 as described in subsection (d) and Footnote 9 of Paragraph 47 were associated with the Iran-China Group doing business as LuBian and were funded at least in part using the newly mined proceeds of the Iran-China Group's Bitcoin mining operations. On information and belief, the Ambush Claimants deny any implication that the other cryptocurrency wallet addresses described in subsections (a) through (c) and (e) through (m) of Paragraph 47 were not associated with the Iran-China Group doing business as LuBian. On information and belief, to the contrary, all of the wallets described in Paragraph 47 were held by the Iran-China Group doing business as LuBian. On information and belief, the Ambush Claimants also deny that Paragraph 47 accurately identifies the total amount of Bitcoin stored at the address(es) constituting each Cluster in December 2020. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 47 and Footnote 9, including subparagraphs (a) through (m).

48. On information and belief, the Ambush Claimants deny that all of the Defendant Cryptocurrency went "through a process of high-volume disaggregation and funneling" "across a

9

complex network of hosted and unhosted cryptocurrency wallets," as at least some of the Defendant Cryptocurrency was Bitcoin that was newly mined by the Iran-China Group doing business as LuBian. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 48.

49. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 49.

50. On information and belief, the Ambush Claimants admit that the Defendant Cryptocurrency encompasses Bitcoin directly traceable to cryptocurrency that was newly mined by the Iran-China Group doing business as LuBian, though the Ambush Claimants calculate that number as encompassing at least 11,166.51 BTC. The Ambush Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 50.

51. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 51.

52. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 52.

53. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 53.

54. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 54.

55. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 55, including subsections (a) through (g).

56. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 56.

57. The Ambush Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 57.

58. On information and belief, the Ambush Claimants admit the allegations in Paragraph 58.

### *Criminal and Regulatory Actions*

59. On information and belief, the Ambush Claimants admit the allegations in Paragraph 59, but they deny any implication that they need a license from the United States Department of the Treasury's Office of Foreign Assets Control to attach and execute against the Defendant Cryptocurrency under the Terrorism Risk Insurance Act ("TRIA").

### FIRST CLAIM FOR RELIEF

*(Proceeds Traceable to Wire Fraud)*

60. The Ambush Claimants incorporate and reallege each and every response to Paragraphs 1 through 59 set forth above as though set forth in full here.

61. Paragraph 61 contains legal conclusions to which no response is required. To the extent a response is required, the Ambush Claimants deny that any of the allegations in Paragraph 61 confer on the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Ambush Claimants in the Defendant Cryptocurrency.

62. Paragraph 62 contains legal conclusions to which no response is required. To the extent a response is required, the Ambush Claimants deny that any of the allegations in Paragraph 62 confer on the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Ambush Claimants in the Defendant Cryptocurrency.

### SECOND CLAIM FOR RELIEF

*(Property Involved in Money Laundering)*

63. The Ambush Claimants incorporate and reallege each and every response to Paragraphs 1 through 62 set forth above as though set forth in full here.

64. Paragraph 64 contains legal conclusions to which no response is required. To the extent a response is required, the Ambush Claimants deny that any of the allegations in Paragraph 64 confer on the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Ambush Claimants in the Defendant Cryptocurrency.

65. Paragraph 65 contains legal conclusions to which no response is required. To the extent a response is required, the Ambush Claimants deny that any of the allegations in Paragraph 65 confer on the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Ambush Claimants in the Defendant Cryptocurrency.

## AFFIRMATIVE AND OTHER DEFENSES

In addition to the foregoing denials, the Ambush Claimants assert the affirmative and other defenses set forth below. No assertion of any defense is intended or may be construed as a concession that any particular issue or subject matter is relevant to the Government's allegations. The defenses asserted herein are based on the Ambush Claimants' knowledge, information, and belief at this time. The Ambush Claimants specifically reserve the right to assert additional affirmative defenses and other defenses and/or modify, amend, or supplement any defense contained herein at any time. Without admitting any of the facts alleged in the Verified Complaint except as specifically set forth above, and without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of the Government's claims, the Ambush Claimants assert the affirmative and other defenses set forth below. The Ambush Claimants further state that the affirmative defenses set forth below constitute grounds for denying all claims of the Government in the Defendant Cryptocurrency, as well as grounds for affirmative

relief in favor of the Ambush Claimants and against the claim of the Government in the Defendant Cryptocurrency.

**FIRST DEFENSE:** The Ambush Claimants, as Judgment Creditors of Iran, possess an interest in the Defendant Cryptocurrency.

**SECOND DEFENSE:** The Ambush Claimants, as Judgment Creditors of Iran, possess an interest in the Defendant Cryptocurrency that is senior and superior to the Government's claim, as well as to other non-TRIA claimants, under TRIA (the Terrorism Risk Insurance Act, Pub. L. No. 107-297, § 201(a) (2002) (codified at 28 U.S.C. § 1610 Note), notwithstanding the instant civil forfeiture action.

**THIRD DEFENSE:** The Defendant Cryptocurrency constitutes a "blocked asset" under TRIA, by virtue of Executive Order 13,599, 77 Fed. Reg. 6659 (Feb. 5, 2012).

**FOURTH DEFENSE:** The Defendant Cryptocurrency is a blocked asset of a terrorist party, Iran.

**FIFTH DEFENSE:** The Defendant Cryptocurrency is the blocked asset of an agency and instrumentality of a terrorist party, the Iran-China Group.

**SIXTH DEFENSE:** The Ambush Claimants are entitled to attach and execute upon the Defendant Cryptocurrency because they have satisfied TRIA. Specifically, the Ambush Claimants obtained their judgments against the Islamic Republic of Iran—a terrorist party—based on an act of terrorism; the Defendant Cryptocurrency is blocked under the International Emergency Economic Powers Act; and the Defendant Cryptocurrency is owned by the Iran and China Investment Development Group, an agency or instrumentality of Iran.

**SEVENTH DEFENSE:** The Ambush Claimants specifically deny each and every assertion of fact or law by the Government that the Defendant Cryptocurrency is in any way the

property of the Government, or that the Government has any legal, equitable or any other right to it. Upon information and belief, the Defendant Cryptocurrency was the property of the Iran and China Investment Development Group, a joint venture between the underlying criminal defendants and the Islamic Revolutionary Guard Corps, doing business as LuBian and mining the blockchain as Lubian.com, that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade sanctions imposed by the United States and other countries. Therefore, the Ambush Claimants are entitled to attach and execute upon the Defendant Cryptocurrency because they have satisfied TRIA.

**EIGHTH DEFENSE:** To the extent the Defendant Cryptocurrency is not required to be transferred to the Ambush Claimants, it is required to be deposited into the United States Victims of State Sponsored Terrorism Fund. See 34 U.S.C. § 20144(e)(2)(A).

**NINTH DEFENSE:** The Government's claim for forfeiture is barred in whole or in part by the doctrine of unclean hands because, upon information and belief, the Government omitted material information regarding the connections between the Defendant Cryptocurrency and Iran, thereby failing to provide adequate notice to the Ambush Claimants that demonstrates the Ambush Claimants' interest in the Defendant Cryptocurrency and/or the requirement that the Defendant Cryptocurrency be deposited into the United States Victims of State Sponsored Terrorism Fund.

**TENTH DEFENSE:** The Defendant Cryptocurrency should be placed into a constructive trust for the benefit of all claimants.

**ELEVENTH DEFENSE:** The United States' claim for forfeiture is barred in whole or in part by the statute of limitations because the United States did not commence this action within the time period prescribed by 19 U.S.C. § 1621.

**TWELFTH DEFENSE:** The Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. Because of their claim under TRIA, the Ambush Claimants have a property interest in the Defendant Cryptocurrency governed by the Fifth Amendment. As a result, forfeiting the Defendant Cryptocurrency to the government without "due process of law" would violate the Ambush Claimants' rights to substantive and procedural due process under the Fifth Amendment.

**THIRTEENTH DEFENSE:** The Fifth Amendment also provides "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Because of the Ambush Claimants' property interest in the Defendant Cryptocurrency, forfeiting that property to the government would result in a taking of their property without just compensation.

**FOURTEENTH DEFENSE:** The forfeiture of the Ambush Claimants' property would violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

**FIFTEENTH DEFENSE:** The Ambush Claimants deny all allegations not expressly admitted herein and specifically reserve the right to amend this Answer, to raise additional defenses, counterclaims, cross-claims, and third-party claims not asserted herein as may be warranted by the revelation of information during further proceedings, and to pursue alternative remedies under civil forfeiture law.

## RELIEF REQUESTED

The Ambush Claimants demand judgment:

(a) recognizing their right to attach and execute on the Defendant Cryptocurrency to the full amount of their unsatisfied judgments against the Islamic Republic of Iran;

(b) in the alternative, directing that the Defendant Cryptocurrency be deposited into the United States Victims of State Sponsored Terrorism Fund pursuant to 34 U.S.C. § 20144(e)(2)(A);

15

(c) denying the relief requested by the Government to the extent inconsistent with the foregoing; and

(d) for such other relief that the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38, and any other applicable Rule or Statute, the Ambush Claimants demand a trial by jury on all issues so triable.

Dated: February 26, 2026                                                  Respectfully submitted,

/s/ Joshua M. Ambush
Joshua M. Ambush, Esq.
Law Offices of Joshua M. Ambush, LLC
106 Old Court Road, Suite 303
Baltimore, Maryland 21208
Phone: (410) 484-2070
Email: joshua@ambushlaw.com

Counsel for the Ambush Claimants

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2026, I electronically filed the foregoing Ambush Claimants' Answer to Verified Complaint In Rem and Request for Jury Trial as Permitted by Law via CM/ECF for the United States District Court for the Eastern District of New York and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the government, in the above-captioned matter.


Dated: February 26, 2026                                                                 /s/ Joshua M. Ambush