**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br>        v.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>                    Defendant *In Rem*. | JURY TRIAL DEMANDED<br><br>Civil Action No. 25-5745 (RPK) |

## 9/11 CLAIMANTS' AMENDED ANSWER TO VERIFIED COMPLAINT *IN REM*

Pursuant to Rule G(5)(b) of the Federal Rules of Civil Procedure, the *O'Neill*, *Burnett*, *Ashton*, and *Ashton-Burlingame* Claimants (together, the "9/11 Claimants"), on behalf of over 12,000 family members and individuals who either sustained physical injuries as victims of the September 11, 2001 terrorist attacks (the "9/11 Attacks") or are the estate representatives of individuals killed in the 9/11 Attacks and have been awarded compensatory damages judgments totaling over approximately $93,577,300,499, *exclusive of interest,* under 28 U.S.C. §§ 1605A and 1605B against the Islamic Republic of Iran ("Iran") for its role in sponsoring the 9/11 Attacks, hereby submit an amended answer to the United States government's Verified Complaint *In Rem*, dated October 14, 2025 (ECF No. 1), as follows:[1]

---

[1] A full list of the 9/11 Claimants is included as exhibits to the Verifications of the 9/11 Claimants' Claims. *See* ECF Nos. 160-3, 160-7, 160-11, 160-15, 163-1, 163-5, 163-9, 163-15, 258-3, 260-1.

## NATURE OF THE ACTION

1.      The 9/11 Claimants admit the allegations in Paragraph 1, but deny that the United States has any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the 9/11 Claimants in the Defendant Cryptocurrency.

2.      Paragraph 2 contains legal conclusions to which no response is required. To the extent a response is required, the 9/11 Claimants deny that any of the authorities referenced in Paragraph 2 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the 9/11 Claimants in the Defendant Cryptocurrency.

## JURISDICTION AND VENUE

3.      Paragraph 3 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the 9/11 Claimants admit that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.      Paragraph 4 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the 9/11 Claimants lack knowledge sufficient to confirm or deny the allegation that acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## THE DEFENDANTS IN REM

5.      The 9/11 Claimants admit that the Defendant Cryptocurrency is the 127,271 Bitcoin that was once stored at the addresses listed in Attachment A to the Verified Complaint. The Defendant Cryptocurrency is owned by the Iran and China Investment Development Group ("Iran-China Group"), an Iranian joint-stock company doing business as LuBian that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions.

2

6.      On information and belief, the 9/11 Claimants admit the allegations in Paragraph 6.

## **RELEVANT STATUTES AND REGULATIONS**

**A.      Wire Fraud**

7.      Paragraph 7 characterizes a statute that speaks for itself, and no response is required.

8.      Paragraph 8 characterizes a statute that speaks for itself, and no response is required.

**B.      Money Laundering**

9.      Paragraph 9 characterizes a statute that speaks for itself, and no response is required.

10.     Paragraph 10 characterizes a statute that speaks for itself, and no response is required.

11.     Paragraph 11 characterizes a statute that speaks for itself, and no response is required.

12.     Paragraph 12 characterizes and purports to quote a statute that speaks for itself, and no response is required.

**C.      Forfeiture Statutes**

13.     Paragraph 13 characterizes a statute that speaks for itself, and no response is required. To the extent a response is required, the 9/11 Claimants deny that any of the authorities referenced in Paragraph 13 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the 9/11 Claimants in the Defendant Cryptocurrency.

DOCS-100888292.1

14.     Paragraph 14 characterizes a statute that speaks for itself, and no response is required. To the extent a response is required, the 9/11 Claimants deny that any of the authorities referenced in Paragraph 14 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the 9/11 Claimants in the Defendant Cryptocurrency.

## FACTS

### A.    Introduction

15.     The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 15.

### B.    Relevant Individuals and Entities

16.     On information and belief, the 9/11 Claimants admit that LuBian was the cryptocurrency mining pool and front for the Iran-China Group, an Iranian joint-stock company backed by Chinese investors that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions. The 9/11 Claimants further admit that the Iran-China Group maintained a Bitcoin mining facility in Iran. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 16, including subsections (a) through (t) and (v) through (y).

### C.    Relevant Terms and Definitions

17.     The 9/11 Claimants admit the allegations in subsections (d) through (l) of Paragraph 17. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 17, including subsections (a) through (c).

4

### D.    The Criminal Schemes

#### i.    Background

18.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 18.

19.    Paragraph 19 purports to quote a document that speaks for itself, and no response is required. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 19.

20.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 20.

#### ii.    The Fraud Schemes

21.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 21.

##### a.    The Scam Compounds

22.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 22.

23.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 23.

24.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 24.

25.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 25.

26.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 26.

DOCS-100888292.1

b.    <u>The Use of Bribes and Violence in Furtherance of the Schemes</u>

27.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 27.

28.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 28.

29.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 29.

30.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 30.

31.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 31.

c.    <u>The Brooklyn Network</u>

32.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 32.

33.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 33.

34.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 34.

35.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 35.

36.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 36.

DOCS-100888292.1

37.     The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 37 and Footnote 2.

### iii.     The Money Laundering Schemes

38.     The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 38.

39.     The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 39.

40.     The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 40 and Footnote 3.

41.     Footnote 4 purports to quote a document that speaks for itself, and no response is required. The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 41.

42.     On information and belief, the 9/11 Claimants admit that the Iran-China Group doing business as LuBian operated a Bitcoin mining facility that "produced large sums of clean bitcoin dissociated from criminal proceeds." The 9/11 Claimants also admit that this was the sixth largest Bitcoin mining operation in the world for some of the time it was active. On information and belief, the 9/11 Claimants deny that the Iran- China Group was based in China. To the contrary, on information and belief, the Iran-China Group was an Iranian joint-stock company funded by Chinese investors that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions, and LuBian was the name of its cryptocurrency mining pool. The 9/11 Claimants deny any implication that Chen provided all of the financial support for the Iran-China Group's mining operations. The 9/11

Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 42.

43.    On information and belief, the 9/11 Claimants deny the implication that the wallets containing the Defendant Cryptocurrency were exclusively controlled by Chen. Rather, on information and belief, the Iran-China Group doing business as LuBian controlled the wallets containing the Defendant Cryptocurrency. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 43 and Footnote 5.

E.    **The Defendants *In Rem***

44.    On information and belief, the 9/11 Claimants admit the allegations contained in Footnote 7 and that the government is seeking to forfeit Bitcoin that was stored at the 25 cryptocurrency addresses identified in the table following Paragraph 44.[2] On information and belief, the 9/11 Claimants deny that the table following Paragraph 44 accurately identifies the amount of Bitcoin stored at each address in December 2020, provides a complete list of all addresses containing the Iran-China Group's Bitcoin in December 2020, or identifies all of the Bitcoin owned by the Iran-China Group that is currently in the government's possession. The 9/11 Claimants also deny that the Defendant Cryptocurrency comprises solely the proceeds of Chen's fraud packaged as heavily laundered cryptocurrency. On information and belief, at least 11,166.51 BTC of the Defendant Cryptocurrency are directly traceable to Bitcoin mined by the Iran-China Group's Rafsanjan mine, and all of the Defendant Cryptocurrency constituted the Iran-China Group's pool-level reserve of Bitcoin. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 44 and Footnote 6.

---

[2] Throughout its Verified Complaint, including in Paragraphs 44, 46, 48, 49, 52, 55, and 56, the government describes the addresses that stored the Defendant Cryptocurrency in December 2020 as "Chen Wallets." The 9/11 Claimants deny that those addresses are properly described as "Chen Wallets" to the extent the term implies that all the Defendant Cryptocurrency necessarily belonged to Chen.

8

45.    On information and belief, the 9/11 Claimants admit that at least some of the cryptocurrency addresses were funded using Bitcoin newly mined by the Iran-China Group doing business as LuBian. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 45 and Footnote 8.

46.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 46 and the following table.

47.    On information and belief, the 9/11 Claimants admit that the four (4) cryptocurrency wallet addresses listed in Cluster Index-4 as described in subsection (d) and Footnote 9 of Paragraph 47 were associated with the Iran-China Group doing business as LuBian and were funded at least in part using the newly mined proceeds of the Iran-China Group's Bitcoin mining operations. On information and belief, the 9/11 Claimants deny any implication that the other cryptocurrency wallet addresses described in subsections (a) through (c) and (e) through (m) of Paragraph 47 were not associated with the Iran-China Group doing business as LuBian. On information and belief, to the contrary, all of the wallets described in Paragraph 47 were held by the Iran-China Group doing business as LuBian. On information and belief, the 9/11 Claimants also deny that Paragraph 47 accurately identifies the total amount of Bitcoin stored at the address(es) constituting each Cluster in December 2020. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 47 and Footnote 9, including subparagraphs (a) through (m).

48.    On information and belief, the 9/11 Claimants deny that all of the Defendant Cryptocurrency went "through a process of high-volume disaggregation and funneling" "across a complex network of hosted and unhosted cryptocurrency wallets," as at least some of the Defendant Cryptocurrency was Bitcoin that was newly mined by the Iran-China Group doing

business as LuBian. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 48.

49.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 49.

50.    On information and belief, the 9/11 Claimants admit that the Defendant Cryptocurrency encompasses Bitcoin directly traceable to cryptocurrency that was newly mined by the Iran-China Group doing business as LuBian, though the 9/11 Claimants calculate that number as encompassing at least 11,166.51 BTC. The 9/11 Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 50.

51.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 51.

52.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 52.

53.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 53.

54.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 54.

55.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 55, including subsections (a) through (g).

56.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 56.

57.    The 9/11 Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 57.

58.    On information and belief, the 9/11 Claimants admit the allegations in Paragraph 58.

**F.    Criminal and Regulatory Actions**

59.    On information and belief, the 9/11 Claimants admit the allegations in Paragraph 59, but they deny any implication that they need a license from the United States Department of the Treasury's Office of Foreign Assets Control to attach and execute against the Defendant Cryptocurrency under the Terrorism Risk Insurance Act ("TRIA").

**FIRST CLAIM FOR RELIEF**
**(Proceeds Traceable to Wire Fraud)**

60.    The 9/11 Claimants incorporate and reallege each and every response to Paragraphs 1 through 59 set forth above as though set forth in full here.

61.    Paragraph 61 contains legal conclusions to which no response is required. To the extent a response is required, the 9/11 Claimants deny that any of the allegations in Paragraph 61 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the 9/11 Claimants in the Defendant Cryptocurrency.

62.    Paragraph 62 contains legal conclusions to which no response is required. To the extent a response is required, the 9/11 Claimants deny that any of the allegations in Paragraph 62 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the 9/11 Claimants in the Defendant Cryptocurrency.

**SECOND CLAIM FOR RELIEF**
**(Property Involved in Money Laundering)**

63.    The 9/11 Claimants incorporate and reallege each and every response to Paragraphs 1 through 62 set forth above as though set forth in full here.

64.    Paragraph 64 contains legal conclusions to which no response is required. To the extent a response is required, the 9/11 Claimants also deny that any of the allegations in Paragraph

64 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the 9/11 Claimants in the Defendant Cryptocurrency.

65.    Paragraph 65 contains legal conclusions to which no response is required. To the extent a response is required, the 9/11 Claimants deny that any of the allegations in Paragraph 65 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the 9/11 Claimants in the Defendant Cryptocurrency.

## AFFIRMATIVE AND OTHER DEFENSES

The defenses asserted herein are based on the 9/11 Claimants' knowledge, information, and belief at this time. The 9/11 Claimants specifically reserve the right to assert additional affirmative defenses and other defenses and/or modify, amend, or supplement any defense contained herein at any time. Without admitting any of the facts alleged in the Complaint except as specifically set forth above, and without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of the government's claims, the 9/11 Claimants assert the following affirmative and other defenses:

1.    The 9/11 Claimants possess an interest in the Defendant Cryptocurrency.

2.    The 9/11 Claimants, as Judgment Creditors of the Islamic Republic of Iran, by operation of TRIA, 28 U.S.C. § 1610 note, hold an interest in the Defendant Cryptocurrency superior to the claims of the United States, as well as all other non-TRIA claimants, notwithstanding the instant civil forfeiture action.

3.    The Defendant Cryptocurrency constitutes a "blocked asset" under TRIA, by virtue of Executive Order 13,559, 77 Fed. Reg. 6659 (Feb. 5, 2012).

4.    The Defendant Cryptocurrency is the "blocked asset" of the Iran-China Group, an agency and instrumentality of the Islamic Republic of Iran, a "terrorist party."

5.      The 9/11 Claimants are entitled to execute and attach upon the Defendant Cryptocurrency because they have satisfied TRIA. Specifically, the 9/11 Claimants obtained their judgments against the Islamic Republic of Iran—a terrorist party—based on an act of terrorism; the Defendant Cryptocurrency is blocked under the International Emergency Economic Powers Act including through Executive Orders issued thereunder; and the Defendant Cryptocurrency is owned by the Iran and China Investment Development Group, an agency or instrumentality of Iran.

6.      Claims of law and equity in this forfeiture action brought by the United States cannot override statutory priority rights conferred by TRIA or constitutional due process protections owed to the 9/11 Claimants. To the extent a forfeiture may be imposed in a manner that operates punitively against the 9/11 Claimants' asserted statutory interests, such forfeiture would be constitutionally excessive and invalid.

7.      The 9/11 Claimants specifically deny each and every assertion of fact or law by the United States that the Defendant Cryptocurrency is in any way the property of the United States, or that the United States has any legal, equitable or any other right to it. Upon information and belief, the Defendant Cryptocurrency was the property of the Iran and China Investment Development Group, a joint venture between the underlying criminal defendants and the Islamic Revolutionary Guard Corps, doing business as LuBian and mining the blockchain as Lubian.com, that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade sanctions imposed by the United States and other

countries. Therefore, the 9/11 Claimants are entitled to execute and attach upon the Defendant Cryptocurrency because they have satisfied TRIA.

8.    The Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. Because of their claim under TRIA, the 9/11 Claimants have a property interest in the Defendant Cryptocurrency governed by the Fifth Amendment. As a result, forfeiting the Defendant Cryptocurrency to the government without "due process of law" would violate the 9/11 Claimants' rights under the Fifth Amendment.

9.    The Fifth Amendment also provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Because of the 9/11 Claimants' property interest in the Defendant Cryptocurrency, forfeiting that property to the government would result in a taking of their property without just compensation.

10.    To the extent the Defendant Cryptocurrency is not required to be transferred to the 9/11 Claimants, it is required to be deposited into the United States Victims of State Sponsored Terrorism Fund. *See* 34 U.S.C. § 20144(e)(2)(A).

11.    The United States' claim for forfeiture is barred in whole or in part by the doctrine of unclean hands because, upon information and belief, the United States omitted material information regarding the connections between the Defendant Cryptocurrency and the Islamic Republic of Iran, thereby failing to provide adequate notice to the 9/11 Claimants that demonstrates the 9/11 Claimants' interest in the Defendant Cryptocurrency and/or the requirement that the Defendant Cryptocurrency be deposited into the United States Victims of State Sponsored Terrorism Fund.

12.    The Defendant Cryptocurrency should be placed into a constructive trust for the benefit of all claimants.

14

13.     The United States' claim for forfeiture is barred in whole or in part by the statute of limitations because the United States did not commence this action within the time period prescribed by 19 U.S.C. § 1621.

14.     The forfeiture of the 9/11 Claimants' property would violate the Excessive Fines clause of the Eighth Amendment.

15.     The 9/11 Claimants deny all allegations not expressly admitted herein and specifically reserve the right to amend this Answer, to raise additional defenses, cross-claims, and third-party claims not asserted herein as may be warranted by the revelation of information during further proceedings, and to pursue alternative remedies under civil forfeiture law.

16.     The 9/11 Claimants incorporate by reference any defense that any other claimant pleads in this action, to the extent the defense applies to any claims against the Defendant Cryptocurrency, in whole or in part.

## <u>CROSS-CLAIM AND COUNTERCLAIMS</u>

The 9/11 Claimants assert the following cross-claims and counterclaims (the "TRIA Claims") against the United States and all other claimants asserting an interest in the Defendant Cryptocurrency who appear in this action. Therein, the 9/11 Claimants seek a declaration that, as a matter of New York and federal law, their claims are entitled to priority—in order to facilitate an equitable distribution among all Iran terror victims—over all competing claims for the purpose of execution and attachment, including but not limited to competing forfeiture claims, terrorism judgment creditors, execution creditors, and non-TRIA claimants, and allege as follows:

1.      This Court has jurisdiction over the TRIA Claims pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Supplemental Rule G.

2.      Venue is proper in this District because the TRIA Claims are ancillary to, and arise

from, the same proceeding pending before this Court.

3.    The 9/11 Claimants are judgment creditors of the Islamic Republic of Iran, holding final, unsatisfied judgments for damages arising from acts of state-sponsored terrorism.

4.    The defendants to the TRIA Claims include the United States and all other parties who assert any legal, equitable, possessory, property, or contingent interest in the Defendant Cryptocurrency.

5.    The TRIA Claims are asserted for the limited purpose of preserving the 9/11 Claimants' priority rights in order to facilitate an equitable distribution among all Iran terror victims and do not seek adjudication of priority until the universe of legally permissible claimants in this action is established.

6.    Through the TRIA Claims, the 9/11 Claimants, do not assert any cause of action against the United States, or any foreign sovereign, other than execution against blocked assets as specifically permitted and authorized by TRIA, as set forth herein.

7.    The 9/11 Claimants have filed a Verified Claim in this action and will pursue judicial authorization under 28 U.S.C. § 1610(c) to execute on their judgments.

8.    The Defendant Cryptocurrency constitutes blocked assets of Iran and/or its agency or instrumentality, and is therefore subject to execution and attachment by the 9/11 Claimants pursuant to TRIA § 201.

9.    Multiple parties now assert competing interests in the Defendant Cryptocurrency, including the United States, other terrorism judgment creditors, and non-TRIA claimants.

## FIRST COUNT

### (Priority under CPLR 5234 – Executions, as modified by CPLR 5240)

10.     The 9/11 Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

11.     Federal courts routinely apply state execution priority rules, including, but not limited to, CPLR 5234, in aid of federal execution proceedings.

12.     CPLR 5234(b) establishes a priority regime among judgment creditors executing on the same property, keyed to the time of delivery of execution, levy, and related enforcement steps as modified by CPLR 5240 that authorizes a "court . . . at any time" to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

13.     Under CPLR 5234(c), where executions are returned unsatisfied or partially satisfied, priority is preserved for creditors who first perfect execution rights as modified by CPLR 5240 that authorizes a "court . . . at any time" to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

14.     The 9/11 Claimants have priority over competing judgment creditors under CPLR 5234, as modified by CPLR 5240, in order to facilitate an equitable distribution among all Iran terror victims.

15.     The 9/11 Claimants have acted diligently and in good faith to: (i) pursue authorization orders under 28 U.S.C. § 1610(c); (ii) assert their claims in this action; and (iii) pursue execution against the Defendant Cryptocurrency.

## SECOND COUNT

**(Priority under CPLR Article 62 – Attachment, as modified by CPLR 5240)**

16.     The 9/11 Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

17.     CPLR Article 62 governs prejudgment and post-judgment attachment and establishes priority based on the timing of attachment orders, levy, and perfection as modified by CPLR 5240 that authorizes a "court . . . at any time" to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

18.     The 9/11 Claimants' attachment rights arise from final judgments, New York law, statutory authorization under TRIA, and judicial permission under FSIA § 1610(c).

19.     The 9/11 Claimants have priority over competing judgment creditors under CPLR 5234, as modified by CPLR 5240, in order to facilitate an equitable distribution among all Iran terror victims.

### THIRD COUNT

### (Priority under TRIA § 201)

20.     The 9/11 Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

21.     TRIA § 201(a) provides that, "[n]otwithstanding any other provision of law," blocked assets of a terrorist party or its agency or instrumentality shall be subject to execution by holders of terrorism judgments.

22.     TRIA's "notwithstanding" clause preempts inconsistent state and federal law, overrides competing claims not grounded in TRIA, and elevates qualifying terrorism judgment creditors over all non-TRIA claimants.

23.     Federal courts have consistently recognized that TRIA creates a priority execution regime favoring holders of terrorism judgments over competing non-TRIA claimants.

24.     Accordingly, even if competing claimants satisfy federal forfeiture and/or state-law execution or attachment requirements, their claims are subordinate to the 9/11 Claimants' TRIA Claims.

## FOURTH COUNT

## (Declaratory Relief)

25.     The 9/11 Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

26.     An actual and justiciable controversy exists concerning the relative priority of the parties' interests in the Defendant Cryptocurrency.

27.     The 9/11 Claimants seek a declaration that: (i) they hold priority rights for execution and attachment purposes in order to facilitate an equitable distribution among all Iran terror victims; (ii) any competing executions and/or attachments are subordinate to their TRIA Claims; and (iii) any distribution of the Defendant Cryptocurrency must respect that priority.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and Rule G(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the 9/11 Claimants demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the 9/11 Claimants respectfully request that the Court:

28.     Order that judgment be entered in their favor and against Plaintiff and all other claimants in this action.

29.     Order that the Defendant Cryptocurrency be released from Plaintiff's custody and returned to the 9/11 Claimants.

30.    Declare the 9/11 Claimants' interests have priority over other parties for execution and attachment purposes under CPLR 5234, CPLR Article 62, CPLR 5240, TRIA § 201, FSIA § 1610, and all other applicable laws, in order to facilitate an equitable distribution among all Iran terror victims.

31.    Declare that any competing executions, attachments, liens, or asserted interests are subordinate to the 9/11 Claimants' rights for execution and attachment purposes.

32.    Order that the Defendant Cryptocurrency be preserved and maintained subject to the Court's jurisdiction, and that no distribution or disposition affecting the priority of claimants occur unless and until the 9/11 Claimants' asserted statutory rights are adjudicated.

33.    In the alternative, and only if the Court determines that the Defendant Cryptocurrency, or any portion thereof, is not lawfully subject to execution and attachment by the 9/11 Claimants, the Court should declare that any forfeiture, remission, or other disposition of such assets must be deposited into the United States Victims of State Sponsored Terrorism Fund pursuant to the statutory scheme set forth in 34 U.S.C. § 20144(e), and that no disposition inconsistent with that statutory framework may occur.

34.    Order that the 9/11 Claimants be awarded attorneys' fees and the costs of suit.

35.    Grant the 9/11 Claimants such other and further relief as the Court deems just and proper.

DOCS-100888292.1

Dated: February 27, 2026

Respectfully submitted,

**ANDERSON KILL P.C.**
By:  */s/ Jerry S. Goldman*

    Jerry S. Goldman, Esq.
    Bruce E. Strong, Esq.
    Alexander A. Greene, Esq.
    7 Times Square, 15th Floor
    New York, NY 10036
    Tel.: (212) 278-1000
    jgoldman@andersonkill.com
    bstrong@andersonkill.com
    agreene@andersonkill.com
    *Attorneys for the O'Neill Claimants*

**KREINDLER & KREINDLER LLP**
By:  */s/ Megan Wolfe Benett*

    Justin T. Green, Esq.
    Megan Wolfe Benett, Esq.
    485 Lexington Ave
    New York, NY 10017
    Tel.: (212) 973-3438
    jgreen@kreindler.com
    mbenett@kreindler.com
    *Attorneys for the Ashton Claimants*

21

DOCS-100888292.1

**MOTLEY RICE LLC**

By: */s/ John M. Eubanks*

    John M. Eubanks, Esq.
    John C. Duane, Esq.
    28 Bridgeside Boulevard
    Mount Pleasant, SC 29465
    jeubanks@motleyrice.com
    jduane@motleyrice.com
    Tel.: (843) 216-9218
    *Attorneys for the Burnett Claimants*

**SPEISER KRAUSE, P.C.**

By: */s/ Jeanne M. O'Grady*

    Jeanne M. O'Grady, Esq.
    800 Westchester Avenue, Suite S-608
    Rye Brook, New York 10573
    jog@speiserkrause.com
    Tel.: (914) 220-5333
    *Attorneys for the Ashton-Burlingame Claimants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2026, I electronically filed the foregoing 9/11 Claimants' Amended Answer to Verified Complaint *In Rem* via CM/ECF for the United States District Court for the Eastern District of New York and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the government, in the above-captioned matter.

Dated: February 27, 2026

/s/ *Jerry S. Goldman*

Jerry S. Goldman

23