UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                                     :

UNITED STATES OF AMERICA,                    :

                Plaintiff,       :

-against-     :    No. 1:25-cv-05745-RPK

APPROXIMATELY 127,271 BITCOIN ("BTC")  :
PREVIOUSLY STORED AT THE VIRTUAL
CURRENCY ADDRESSES LISTED IN        :
ATTACHMENT A, AND ALL PROCEEDS
TRACEABLE THERETO,                          :

          Defendants *In Rem*.   :

-----------------------------------------------------------x

## *HAVLISH* CLAIMANTS' MOTION TO DISMISS
## THE CROSSCLAIMS OF THE *BREITWEISER* CLAIMANTS[1]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Havlish Claimants respectfully moves to dismiss the cross-claims filed by the Breitweiser Claimants for failure to state a claim upon which relief may be granted.

### I. FACTUAL BACKGROUND

#### A. The Claimants and Their Judgments

The *Havlish* Claimants comprise four groups of judgment creditors who secured final, enforceable judgments against the Islamic Republic of Iran for its material support of al-Qaeda's September 11, 2001, terrorist attacks. *See Havlish* Notice of Claim at ECF 73. These judgments followed extensive evidentiary proceedings in the multidistrict litigation captioned *In Re Terrorist Attacks on September 11, 2001*, No. 1:03-md-01570 (S.D.N.Y.) ("9/11 MDL"). *Id*.

---

[1] The Motion and Memorandum is directed at any other any group of claimants who have brought similar crossclaims, including the *Hamen* Claimants (ECF 225 on 2/17/26) and the *IBHLAW* Claimants (ECF 236 on 2/19/26).

Following the *Havlish* lead, the *Hoglan*, *Ray*, and *Maher* judgment creditors—represented by the same counsel—obtained their own judgments predicated upon the same foundational evidence. *Id.*

The *Breitweiser* Claimants, representing three families victimized by the 9/11 attacks, also obtained judgments against Iran under the § 1605A anti-terrorism exception and they have also filed a notice of claim in this forfeiture proceeding. *See Breitweiser* Notice of Claim at ECF 107.

B.     **The Defendant Cryptocurrency's Nexus to the Iranian State**

In January 2026, the *Havlish* Claimants discovered that the approximately 127,271 Bitcoin ("Defendant Cryptocurrency") subject to this forfeiture action was the property of LuBian, a commercial entity operating a massive mining facility in Rafsanjan, Iran. *See Havlish* Notice of Claim, ECF 73; Exhibit A. As set forth in the *Havlish* Verified Claim, LuBian operated as a front for the Iran-China Group—an entity acting as an agency and instrumentality of the Islamic Republic of Iran. *See Havlish* Verified Claim at ¶¶5-8.

Under Second Circuit precedent, LuBian and the Iran-China Group satisfy the criteria for agencies or instrumentalities because they operate under the explicit direction and support of the Iranian government. *See Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 123 (2d Cir. 2016) (defining the scope of "agency or instrumentality" in the context of judgment enforcement against Iranian assets); *Havlish* Verified Claim at ¶¶ 6-7. The mining operation functioned within a cartel-like structure run by the Islamic Revolutionary Guard Corps ("IRGC") and utilized state-owned power grids and religious organizations to evade the United States' comprehensive sanctions regime. *See Havlish* Verified Claim at ¶7(c). Indeed, Iranian legislative

fiat mandates that all proceeds from such mining operations be sold to the central bank, directly linking the Defendant Cryptocurrency to the Iranian sovereign.

### C. Procedural History.

Following the discovery of these assets, the Havlish Claimants did two things. First, they filed a motion on January 16, 2026, seeking an order pursuant to 28 U.S.C. § 1601(c), which requires the court to find that a "reasonable period of time has elapsed following the entry of judgment." *See* MDL ECF 11458. Second, they filed their Notice of Claim in this Forfeiture proceeding at ECF 73 on January 19, 2026. Section 1610(c) orders serve as a statutory condition precedent that must be satisfied before terrorism plaintiffs who obtained default judgments against a foreign state can undertake to attach or execute upon that foreign state's property. In the Second Circuit, terrorism judgment holders are required to obtain a court order pursuant to § 1610(c) for each group of assets they seek to attach. *Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 291 (2d Cir. 2011) (§ 1610(c) "requires a prior judicial determination that the execution is warranted under one of the § 1610(a) or (b) exceptions and with respect to specifically identified property.") The *Havlish* Claimants sought the Section 1610(c) order so they could file their complaint in the Eastern District of New York seeking to enforce their judgment against the Defendant Cryptocurrency pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA").

After initially objecting to the *Havlish* Claimants' motions for the Section 1610(c) orders, the *Breitweiser* Claimants eventually filed their own motion for an order pursuant to Section 1610(c) at MDL ECF 11710 on February 9, 2026.

The motions for Section 1610(c) orders relating to the Defendant Cryptocurrency filed by the Havlish Claimants[2] and the Breitweiser Claimants[3] remain pending in the 9/11 MDL.

### D. Current Posture and the *Breitweiser* Cross-Claims

On February 11, 2026, the *Breitweiser* Claimants filed a Verified Answer and Cross-Claims against all other non-sovereign claimants—including the *Havlish* Claimants—whom they termed "Priority Defendants." ECF 216.

The Breitweiser cross-claims seek a judicial declaration of "super-priority" over all other creditors. ECF 216 at 15. Specifically, they assert that:

1. They hold priority rights for attachment and execution over all other victims;

2. All competing attachments are legally subordinate to their own; and

3. Any distribution of the Bitcoin Assets must respect this purported priority.

These claims of priority rest upon New York's execution and attachment statutes—specifically C.P.L.R. §§ 5234 and 6201—and TRIA. ECF 216 at 13–15. However, the cross-claims offer no factual basis for this superior status other than threadbare recitals of their judgment history and service of process. The *Havlish* Claimants now move to dismiss these cross-claims for failure to state a claim upon which relief can be granted.

## ARGUMENT

A terrorism judgment creditor does not need a Section 1610(c) order before filing a claim in this forfeiture proceeding. Claims in forfeiture proceedings are not attachment or execution proceedings within the meaning of Section 1610(a) or Section 1610(b). The *Breitweiser* Claimants' cross-claims, however, go beyond seeking to establish a claim pursuant to federal

---

[2] While the *Havlish* Claimants motion for a specific Section 1610(c) order relating to the Defendant Cryptocurrency remains pending, the 9/11 MDL has granted the *Havlish* Plaintiffs Section 1610(c) orders on two prior instances.

[3] The Breitweiser Claimants have never received an order pursuant to Section 1610(c).

forfeiture statutes and rules. The *Breitweiser* Claimants' cross-claims seek to establish priority over other claimants by asserting rights under NY CPLR 5234, governing the execution of judgments against assets belonging to a judgment creditor (Count One), NY CPLR Art. 62, governing the post-judgment attachment of assets belonging to a judgment creditor (Count Two), and TRIA (Count Three).

Unlike Rule G claims in forfeiture proceedings, their cross-claims relating to priorities that arise under state and federal execution and attachment statutes do involve claims within the meaning of Section 1610(a) and Section 1610(b). By definition, claims and rights arising under NY CPLR 5234, NY CPLR Art. 62, and TRIA involve "attachment" and "execution." Those claims, therefore, do require Section 1610(c) orders. Because the *Breitweiser* Claimants do not have a Section 1610(c) order, their cross-claims fail and must be dismissed.

**I.      All Four Counts of the Cross-Claims for Priority Are Premature, Fail to Comport with Second Circuit Precedent, and Lack Legal Standing.**

The Breitweiser Claimants' cross-claims fail as a matter of law. Section 1610(c) strictly prohibits a judgment creditor who obtained their judgment by default from beginning attachment or execution proceedings against a foreign state's property until the court has issued an order determining that a "reasonable period of time has elapsed following entry of judgment" and that proper notice has been served. This statutory mandate is not a mere procedural formality. The Second Circuit has determined that it is essential to ensure sufficient protection to foreign states, which often require several months to coordinate payment through internal legislative or administrative channels. *See Levin v. Bank of New York*, No. 1:09-cv-5900 (RPP), 2011 WL 270830, at *11 (S.D.N.Y. Jan. 28, 2011) (noting that the subsection contemplates courts will exercise discretion in permitting execution).

In this Circuit, the requirements of § 1610(c) are strictly applied. A terrorism judgment holder must obtain a specific court order for *each* group of assets they seek to attach. *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 291 (2d Cir. 2011) (holding that § 1610(c) "requires a prior judicial determination that the execution is warranted . . . with respect to specifically identified property"). General or blanket Section 1610(c) orders are not sufficient. The Second Circuit requires judgment creditors to identify the specific assets they are seeking to enforce their judgments against so that the court can make a corresponding judicial determination that the property is subject to execution or attachment. *Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001).

### A. Counts One and Two Fail Because the *Breitweiser* Claimants Lack the Requisite Section 1610(c) Order.

Counts One, Two, and Three—styled as claims for priority under N.Y. CPLR § 5234, Article 62, and TRIA—are barred as a matter of law because the *Breitweiser* Claimants lack a § 1610(c) order. While CPLR § 5234 and Art. 62 governs priorities among competing creditors, it only rewards those who have properly perfected their execution or attachment rights. TRIA rights are, in turn, prosecuted through state law judgment enforcement procedures, like CPLR § 5234 and Art. 62. Here, the *Breitweiser* Claimants do not, and cannot, allege any facts entitling them to execute upon or attach the Defendant Cryptocurrency. They do not have Section 1610(c) orders and they do not have writs of execution or attachment, which are prerequisites to the priority rights asserted in Counts, One, Two, and Three of their cross-claims.

The *Breitweiser* Claimants attempt to circumvent these obvious deficiencies by asserting their claims are for the "limited purpose" of preserving priority. This is a distinction without a difference. Claiming a "limited purpose" does not waive the mandate of § 1610(c) or requirement for writs of execution or attachment in order to qualify for a claim to priority.

Priority cannot be "preserved" by filing nothing more than cross-claims against similarly situated victims. Priorities are preserved only by adhering to the FSIA, TRIA, and state judgment enforcement law. Because the *Breitweiser* Claimants have failed to meet these statutory prerequisites, they cannot adjudicate priority.

### B. Count Three Improperly Asserts a TRIA Claim Against Competing Victims Rather than a Terrorist Party.

Count Three fails for an additional reason. TRIA is not a sword to be used against other victims of terrorism. TRIA is a specialized enforcement statute designed to allow judgment holders to reach the blocked assets of "terrorist parties" and their "agencies or instrumentalities." *See Levinson v. Kuwait Fin. House Malaysia Berhad*, 44 F.4th 91, 96–97 (2d Cir. 2022).

The statute provides no right of action for one victim to sue another. Neither does it provide a basis for determining priorities among judgment creditors. Instead, the relative priorities of competing claimants are determined (1) according to state law and (2) only *after* a finding that the res—the Defendant Cryptocurrency—is indeed a blocked asset of an agency or instrumentality of a terrorist party. *See Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 135 (2d Cir. 2016). The Breitweiser Claimants' assertion of a "super-priority" over other claimants in this forfeiture proceeding is unsupported by the text of TRIA, which subordinates blocked assets to execution for the benefit of terror judgment holders. Nothing in TRIA creates a hierarchy among those judgment holders. Any priorities are determined solely by, and in compliance with, state law.

### C. Count Four Seeks Improper and Premature Declaratory Relief.

Finally, Count Four seeks a declaration of priority that is untethered to the current procedural reality of this litigation. The *Breitweiser* Claimants currently do not hold a Section 1610(c) order, do not hold a writ of execution, and have not been granted a writ of attachment

7

against the Defendant Cryptocurrency. Moreover, even if they were to obtain a § 1610(c) order, *Levinson* dictates the Court must first determine that the Cryptocurrency is the property of an agency or instrumentality of Iran—in this case, the Iran-China Group—before any writ of execution or attachment can issue. The Government—which currently holds the res—does not concede this ownership and, in fact, opposes the victims' claims. Any issuance of a writ of execution is, therefore, "far off," and the *Breitweiser* Claimants have provided no facts to distinguish their judgments from those held by the Priority Defendants. Seeking a declaration of priority at this nascent stage is not only premature but legally baseless.

## II.   The *Breitweiser* Cross-Claims Consist of Naked Legal Conclusions That Fail to State a Plausible Claim for Relief.

The Cross-Claim for Priority is governed by Federal Rule of Civil Procedure 8(a)(2), which mandates that a pleading contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the pleading standard does not require "detailed factual allegations," it demands more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under this well-settled precedent, a pleading that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" cannot survive a motion to dismiss—nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678.

The *Breitweiser* Claimants' Cross-Claim for Priority is precisely the type of threadbare pleading disallowed by the Supreme Court. The factual basis for all four counts rests on a limited set of five allegations: (1) the Claimants hold final judgments under 28 U.S.C. § 1605A; (2) these judgments were served on Iran pursuant to 28 U.S.C. § 1608(a)(4); (3) they filed a Verified Claim in this action; (4) they are pursuing judicial authorization under 28 U.S.C. § 1610(c); and

8

(5) the Defendant Cryptocurrency constitutes "blocked assets" of Iran subject to attachment under Section 201 of the Terrorism Risk Insurance Act ("TRIA"). (ECF No. 216 at ¶¶ 6–9). Beyond these perfunctory assertions—most of which apply to every creditor in this litigation—the Cross-Claim offers no factual development to support its demand for "super-priority" over other similarly situated victims.

From this skeletal framework, the *Breitweiser* Claimants urge the Court to declare that their interests have absolute priority over all other parties under CPLR § 5234, CPLR Article 62, TRIA, and the FSIA. *See* ECF 126, ¶¶ 1-10 pp. 11-13. But, these assertions are not allegations of fact. They are self-serving legal conclusions that masquerade as a cause of action. The Cross-Claim fails to plead *why* these Claimants are entitled to jump the queue—an omission that is particularly glaring given that their purported right to priority is based on the same statutory provisions invoked by the Priority Defendants – and fails to explain how they are legally entitled to determine priority without a Section 1610(c) order, a writ of execution, or a writ of attachment.

The threadbare facts asserted in the Cross-Claim compel dismissal of Counts One through Four. The Breitweiser Claimants have done nothing more than assert legally unsupported claims in the face of a complex forfeiture proceeding involving thousands of victims. Because the Cross-Claim cannot satisfy even the most basic pleading requirements, it must be dismissed as a matter of law. *Iqbal*, 556 U.S. at 678.

### III. The Court Lacks Authority to Grant the Breitweiser Claimants' Requested Alternative Relief Concerning the USVSST Fund.

In their Prayer for Relief, the Breitweiser Claimants request that, should this Court find they are unable to effectuate attachment or execution under the Terrorism Risk Insurance Act ("TRIA"), the Foreign Sovereign Immunities Act ("FSIA"), or the New York Civil Practice Law

9

and Rules ("CPLR"), the Court must declare that any "disposition of such assets must comply with the United States Victims of State Sponsored Terrorism Fund statutory scheme". This request—a transparent attempt to bypass the rigid statutory requirements of the United States Victims of State Sponsored Terrorism Fund ("USVSSTF" or the "Fund")—is contrary to law and must be rejected out of hand.

### A. The USVSSTF Is a Rigid Statutory Scheme Governed by Explicit Predicates for Eligibility and Funding.

The *Breitweiser* Claimants' assertions relating to the United States Victims of State Sponsored Terrorism Fund ("USVSSTF") fail as a matter of law. The USVSSTF is not an all-purpose compensatory vehicle for victims of terrorism. It is a narrow, non-appropriated fund with specific statutory constraints. Under 34 U.S.C. § 20144, the Fund operates as follows:

1. <u>Strict Eligibility Requirements</u>. A necessary predicate for Fund compensation is a valid final judgment entered by a United States district court against a foreign state designated as a state sponsor of terrorism at the time of the underlying act.

2. <u>Limited Funding Sources</u>. The Fund is replenished solely through criminal penalties and civil fines imposed against sanctions violators doing business with state sponsors of terrorism under the International Emergency Economic Powers Act ("IEEPA") or the Trading with the Enemy Act ("TWEA"). Only funds and proceeds forfeited to the United States arising from such specific violations are eligible for deposit into the Fund. Courts have no authority to order that funds be deposited into the USVSSTF.

3. <u>Pro Rata Distribution Framework</u>. Deposits are divided equally into two pools—one for victims of the September 11 attacks and one for victims of unrelated attacks—and distributed on a pro rata basis subject to statutory caps. Notably, claimants retain the right to satisfy their judgments through other mechanisms, including TRIA collection actions, notwithstanding their participation in the Fund.

10

B.  **The Defendant Cryptocurrency Does Not Satisfy the Statutory Criteria for Deposit Into the Fund.**

The Breitweiser Claimants' request for a declaration concerning the USVSSTF also fails because the Defendant Cryptocurrency does not meet the requirements for Fund deposit under 34 U.S.C. § 20144(e)(2)(A)(i-ii).

C.  **The Speculative Nature of Potential Forfeiture Precludes the Declaratory Relief Requested**

The *Breitweiser* Claimants ask this Court to stand by while the United States pursues a forfeiture that may never result in a Fund deposit. Given the significant size of the *Havlish* Claimants' outstanding compensatory judgments and the unique nature of the Defendant Cryptocurrency, the *Havlish* Claimants should not be required to rely on the Government's legal positions concerning the Defendant Cryptocurrency, especially given the statutory restrictions governing contributions to the USVSSTF. The *Havlish* Claimants must be free to pursue their claims in this forfeiture proceeding and their anticipated TRIA enforcement proceeding.

Dated: March 2, 2026

                              Respectfully submitted,

                              */s/* Douglass A. Mitchell
                              Douglass A. Mitchell (NV Bar No. 3775)
                              Appearing Pro Hac Vice
                              MITCHELL ALLYN, LTD.
                              1000 N. Green Valley Pkwy, Suite 440-575
                              Henderson, NV 89074
                              Tel: (702) 350-1208
                              dmitchell@mitchellallyn.com

                                          Robert M. Foote (IL Bar No. 03124325)
                                        *Appearing Pro Hac Vice*
                                        FOOTE, MIELKE, CHAVEZ
                                        & O'NEIL, LLC
                                        10 West State Street, Suite 200
                                        Geneva, IL  60134
                                        (630) 232-7450

                                        *Attorneys for the* Havlish *Claimants*