

7 Times Square, New York, NY 10036-6569  Tel: 212-421-4100  Fax: 212-326-0806        www.pryorcashman.com

New York | Los Angeles | Miami

March 4, 2026

**VIA ECF**

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States of America v. Approximately 127,271 Bitcoin (BTC) Previously Stored at the Virtual Currency Addresses Listed in Attachment A, and All Proceeds Traceable Thereto*, **No. 25-cv-05745 (RPK)**

Dear Judge Kovner,

    We represent claimant Warp Data Technology Lao Sole Co. Ltd ("Warp Data") in this action.  We submit this letter in response to the government's letter, dated February 23, 2026, requesting a pre-motion conference concerning the government's proposed motion to strike, among others, Warp Data's verified claim filed on January 19, 2026 (the "Warp Claim").  For the reasons stated below, the government's proposed motion is meritless.

**I.    Procedural Background**

    The complaint filed in this action (ECF No. 1, hereinafter, the "Complaint") seeks forfeiture of approximately 127,271 Bitcoin ("BTC") ("Defendant BTC"). (Compl. ¶¶ 5-6.) The Complaint further alleges that at least 47,680.03 of the Defendant BTC was "newly mined," "newly minted," or "from bitcoin mining" (the "Mined BTC").  (Compl. ¶¶ 50 & 55.)  The Complaint further alleges that Warp Data, a cryptocurrency mining company, produced the Mined BTC.  In particular, the Complaint alleges, among other things, that (i) Warp Data is an entity incorporated in Laos that operated Bitcoin mining facilities; (ii) Warp Data is a "Prince Group mining operation" that was used to launder illicit funds; and (iii) Mr. Chen and his alleged co-conspirators "laundered illicit proceeds by using the proceeds to fund large-scale cryptocurrency mining operations, including the Laos-based Warp Data and its Texas-based subsidiary, … which produced large sums of clean bitcoin dissociated from criminal proceeds." (Compl. ¶¶ 16(t), 40, 42.)  The Complaint further alleges that the Defendant BTC is forfeitable under (1) 18 U.S.C. § 981(a)(1)(C), as property that "constitutes or is derived from proceeds traceable to an offense constituting a 'specified unlawful activity,'" namely, wire fraud and wire fraud conspiracy (Compl. ¶¶ 61-62); and (2) 18 U.S.C. § 981(a)(1)(A), as property "involved in or traceable to" a money laundering transaction designed to conceal or disguise proceeds of a prior specified unlawful activity (Compl. ¶¶ 64-65).

The Honorable Rachel P. Kovner
March 4, 2026
Page 2

On January 19, 2026, Warp Data filed the Warp Claim, asserting an interest in the Mined BTC. Specifically, Warp Data claimed ownership over the portion of that Defendant BTC that the Complaint calls "newly mined," "newly minted," or "from bitcoin mining," or that Warp Data otherwise mined or acquired. (ECF No. 64.) In addition, the Warp Claim specifically identified the amount of the Defendant BTC that Warp Data claims—namely, the 47,680.03 Bitcoin that the Complaint alleges was mined. (*Id.*) On February 23, 2026, the government filed its request for a pre-motion conference in support of its proposed motion to strike the Warp Claim. (ECF No. 246.)

## II.     Argument

The government's proposed motion to strike fails as a matter of law and logic. On the one hand, the government has filed the Complaint alleging a massive fraud, broadly implicating Warp Data in that fraud (albeit with almost no detail), and alleging that Warp Data was responsible for producing the Mined BTC. On the other hand, through its proposed motion to strike, the government argues that Warp Data has not supplied sufficient evidence concerning its ownership interest in the Mined BTC to establish statutory standing under Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The government cannot have it both ways—it cannot allege that Warp Data produced the Mined BTC but then seek to disallow Warp Data's right to claim those same coins.

Indeed, the Second Circuit has squarely rejected similar attempts by the government to have its cake and eat it too. In particular, in *United States v. Technodyne*, 753 F.3d 368 (2d Cir. 2014), the Second Circuit considered the government's contention that the claimants had failed to establish statutory standing because they had not come forth with evidence supporting their interest in the disputed property. *See id*. at 379-80. The Second Circuit roundly rejected the government's argument. Instead, the Second Circuit held that because the government had alleged in its complaint that the disputed assets were in the name of the claimant and that the claimant had purchased the assets, those allegations, *standing alone*, were sufficient to establish both statutory and constitutional standing. *See id*. at 381. *Technodyne* squarely forecloses the government's argument that Warp Data must come forward with any additional evidence beyond the government's allegations to demonstrate its right to participate in this proceeding.

*Technodyne's* rationale is imminently logical—permitting the government to seize the Mined BTC on the basis of allegations tying Warp Data to these coins but then to ignore those same allegations when it comes to the standing issue makes no sense. That is likely why even the authority cited by the government rejects this inconsistent approach. For example, in *United States v. $5253.00*, No. 11 Civ. 6335, 2014 WL 122254 (W.D.N.Y. Jan. 13, 2014), a claimant asserted a claim as "the owner of the above listed property." *Id*. at *4. The government moved to strike, arguing that the claim was too cursory and lacked sufficient evidence of ownership to satisfy Rule G(5). *See id*. The court rejected that argument because the government had alleged facts in its complaint that demonstrated the claimant's standing. *See id*. As a result, the court found that the claimant's "assertion of ownership, in combination with the facts alleged in the complaint, are sufficient to establish Article III and statutory standing to bring a claim against the forfeiture action." *Id.; see also United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir. 1992)

The Honorable Rachel P. Kovner
March 4, 2026
Page 3

(claimant "need not have supplemented his claim with additional evidence, because the government had admitted [claimant's] relationship to the currency in its complaint").

The same is true in this case. The government has alleged a direct connection between Warp Data and the Mined BTC in the Complaint. The government alleges that Warp Data itself "produced large sums of clean bitcoin disassociated from criminal proceeds" through its mining operation by which Warp Data was "rewarded" with cryptocurrency for "verifying 'blocks' of legitimate" transactions on the blockchain. (Compl. ¶¶ 17(g), 42.) It further claims that Warp Data's cryptocurrency mining operation was one of two sources from which the addresses associated with the Defendant BTC were "primarily funded." (Compl. ¶¶ 16(t), 45.) The government concedes that coins mined by Warp Data are part of the cryptocurrency seized by the government, which it seeks to forfeit. (Compl. ¶¶ 45, 50, 55(a), 55(c), 55(d).) Put simply, the Complaint itself describes Warp Data's interest in the Mined BTC—Warp Data created it.

Nor should the Court credit the government's feigned surprise or confusion over what portion of the Defendant BTC Warp Data is claiming. The Complaint describes 47,680.03 Bitcoin as "newly mined," "newly minted," or "from bitcoin mining." (*See* Complaint ¶¶ 50 ("approximately 11,115.83 newly mined bitcoin"), 55(a) ("approximately 13,469 newly minted BTC"), 55(c) ("approximately 5,608 BTC from bitcoin mining"), 55(d) ("approximately 2,272.9 BTC from bitcoin mining"), 55(d) ("approximately 15,214.30 newly mined BTC").) Warp Data uses this same language to describe the portion of the Defendant Cryptocurrency to which Warp Data asserts an interest. (*See* Warp Claim, ECF No. 64 at ¶ 5 ("Warp Data mined or acquired—and thus owns—all 47,680.03 Bitcoin included in the Defendant *in rem* that the government describes as 'newly mined,' 'newly minted,' or 'from bitcoin mining.'").) Thus, between the Complaint and the Warp Claim, there is no mystery surrounding what property Warp Data would be deprived of if the government's forfeiture action is successful. Nothing more is required—Warp Data's standing has been established because "the government had admitted [Warp Data's] relationship to the [Mined BTC] in its complaint." *$38,570 U.S. Currency*, 950 F.2d at 1113.

## Conclusion

For the foregoing reasons, Warp Data respectfully submits that the government's proposed motion to strike the Warp Claim is without merit and should be denied, should the Court permit the government to make it.

Respectfully submitted,

*/s/ Jeffrey Alberts*
Jeffrey Alberts
Sidhardha Kamaraju
Katherine Reilly
David Abramowicz

cc: All counsel of record (via ECF)