

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

March 4, 2026

**VIA ECF**
The Honorable Rachel P. Kovner
United States District Judge
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Approximately 127,271 Bitcoin*, Case No. 25 Civ. 5745 (RPK)

Dear Judge Kovner:

    We represent Claimants Chen Zhi and Prince Holding Group and write in response the government's February 23, 2026 letter. ECF No. 246 ("Ltr. Mot."). The Court should reject the government's premature motions to strike Claimants' verified claims. The government's own allegations make clear Claimants have standing—if they don't, there is no basis for forfeiture at all, as the Complaint turns entirely on the government's allegation that the Defendant Cryptocurrency belonged to Mr. Chen and was involved in Mr. Chen's purported crimes. A motion to strike is also premature where, as here, the government has served special interrogatories and intends to move to strike based on the Claimants' responses. And the government's arguments fail on the merits in any event, as the law is clear that (1) a claim need only identify the nature of the interest that would be harmed by forfeiture, not the specific portion of the forfeited assets claimed, and (2) multiple parties can have different interests in the same assets. For all of these reasons and more, the Court should not waste its or Claimants' time with the government's misplaced and mistimed motions to strike and should instead find that Claimants have standing based on the allegations in the Complaint alone.

I.    <u>The Government Cannot Disavow Its Own Allegations to Challenge Standing</u>

    Where the government's own allegations in a civil forfeiture complaint establish a claimant's standing to contest forfeiture, it cannot move to strike that claimant's claim. For example, in *United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014), the government sought to strike multiple claims on fugitive disentitlement grounds, and on appeal argued that claimants also had failed to meet their burden of establishing standing. *Id*. The Second Circuit flatly disagreed, holding that "the government's Complaint itself alleges that each of the bank accounts is held in the name or names of [claimants or their affiliates]" and "also alleges that the relevant parcels of real property were purchased—with the proceeds of their crimes—by the [Claimants]." *Id*.[1]

---

[1] *Technodyne* is no outlier. In *United States v. $38,570 U.S. Currency,* the Fifth Circuit held that, while a claimant ordinarily must "submit some additional evidence of ownership along with his claim in order to establish standing," the claimant there "need not have supplemented his claim with additional evidence, because the government had admitted [claimant's] relationship to the currency in its complaint." 950 F.2d 1108, 1113 (5th Cir. 1992). And in *United States v. 208 Burberry Handbags*, the court noted that the government had "made allegations of [claimant] Brighton Trading's interest in the property," such that "facts surrounding the investigation as alleged in the complaint, mitigate the likelihood that Brighton Trading's claim is false," and accordingly, held that an "assertion of ownership, in combination with the facts alleged in the complaint, are sufficient to establish Article III and statutory standing to bring a claim against the



This case presents the same situation. The government alleges that the Defendant Cryptocurrency was held in so-called "Chen Wallets" that were "controlled and personally tracked by Chen," Compl. ¶ 44, and that it is forfeitable because it was the proceeds of Mr. Chen's frauds, *id.* ¶¶ 21–37, 44, 60–62, and involved in the Prince Group's money laundering operation, *id.* ¶¶ 38–58, 63–65.[2] Given those allegations, the government cannot now complain that Claimants have failed to meet their pleading requirements under Rule G(5)(a). As another District Court has explained, "where the complaint describes the claimant's interest in the property in detail, the goals of the Rules have been met because the Government is on notice of the claimant's interest in the property, and there is very little risk that the claimant is filing a false claim. The application of the statutory requirements should be strict, but not needlessly pedantic." *United States v. $263,327.95*, 936 F. Supp. 2d 468, 473 (D.N.J. 2013). So too here.

Were the allegations in the Complaint not enough, the government has repeatedly taken the same position in other filings and should be estopped from contesting Claimants' standing as a result. In its letter motion to strike, the government concedes the Defendant Cryptocurrency was "in Chen's control." Ltr. Mot. at 1. On the very same day it filed that motion, the government stated in a related proceeding that the Defendant Cryptocurrency "originated from virtual currency wallets in the possession of the criminal defendant Chen Zhi" from conduct allegedly carried out "under the umbrella of the Prince Group." Mem. in Opp'n to Pl.'s Emergency Mot. for Ex Parte Order at 2, *Fritz et al. v. Iran and China Investment Development Group*, No. 1:25-cv-07093 (RPK) (E.D.N.Y. Feb. 23, 2026), ECF No. 96. And earlier, when opposing Claimants' request to extend the claims deadline, the government told this Court that Mr. Chen "has access to the facts that he needs in order to state a claim" because "the private keys to the Defendant Cryptocurrency were in Chen's personal possession." ECF No. 10, at 4. Given these representations to the Court, the government should be estopped from trying to challenge Claimants' standing. *See Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993) (the doctrine of judicial estoppel "seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions").

II.     The Government's Proposed Motion is Premature and Invites Serial Motion Practice

Putting aside the question of whether the government should be allowed to tactically ignore its own allegations, the Court should adjourn any standing challenges at this time. The government acknowledges that it has served Special Interrogatories on Claimants under Rule G(6) "to assess their constitutional standing," and that it "will thereafter" move to strike based on Claimants' responses. *See* Ltr. Mot. at 1 n.1. Thus, at the same time the government seeks to strike the Claims as "barebones," it is pursuing discovery expressly designed to test those same issues and appears likely to return with additional motions if it is not satisfied with the evidence Claimants' produce.

The government's approach is wasteful of judicial resources and, even if successful, would strike the claims only to have them repleaded with the same information that is already being

---

forfeiture action." No. 12-CV-6015-CJS, 2012 WL 5398676, at *7 (W.D.N.Y. Nov. 2, 2012). *See also United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 351 (6th Cir. 2017) ("Here, where the government alleged that it took a bundle of cash from a claimant's suitcase, and each claimant stated that he owned the cash, there is a clear allegation of ownership that satisfies Article III. And the claimant's making of such a statement is what satisfies Rule G's statutory standing requirement."); *cf. United States v. Starling*, 76 F.4th 92, 101 n.4 (2d Cir. 2023) ("What we have described as 'statutory standing' operates as an obstacle only to dispositive motions which follow from establishing the initial claim.").

[2] Similarly, the government cannot claim there is "no such legal entity" as the Prince Group, Ltr. Mot. at 3, when in its own Complaint it alleges that the Prince Group was "a Cambodian-registered corporate holding company that operated more than 100 business entities across more than thirty countries" involved in "a range of business sectors," including "legitimate business operations across Prince Group's holdings," Compl. ¶¶ 15, 16(o), 21, 57.



produced through discovery. Indeed, as noted below, many of the purported "deficiencies" the government identifies are the subject of the government's Rule G(6) interrogatories. Any Rule G(8) motion practice should be deferred pending completion of the Rule G(6) process, which may narrow or moot the government's purported concerns and avoid unnecessary, serial motion practice.

III.  The Government's Arguments to Strike Have No Merit

The government's arguments on the merits fare no better.

First, the government contends that the Claims are deficient because they do not identify "specific portions" of the seized assets – *i.e.,* the Claims do not allot specific Bitcoin to each individual claimant. Ltr. Mot. at 2. Rule G(5), however, imposes no such requirement: a verified claim simply has to identify the *nature* of the interest that would be harmed by forfeiture. *See, e.g.*, *United States v. 421,090.00 in U.S. Currency*, No. 11-CV-00341 JG, 2011 WL 3235632, at *4 (E.D.N.Y. July 27, 2011) ("[Claimant]'s colorable ownership in even a portion of the funds is sufficient to establish a concrete interest in the proceedings as a whole.").[3] As a leading treatise explains, this is because "[r]equiring the claimant to state the nature of his interest in the property at the outset of the case allows the Government to commence discovery on the standing issue without having to guess at the nature of the interest being asserted." Stefan Cassella, *Asset Forfeiture Law in the United States*, 2d ed. § 7-13(d); *see also $579,475.00 in U.S. Currency*, 917 F.3d at 1049 ("[C]ourts are not licensed to impose heightened pleading requirements in certain classes of cases simply to avoid the risk that unsubstantiated claims will burden the courts and opposing parties.").[4]

Second, the government argues that the Claims should be struck because they are allegedly "overlapping" or "competing." Ltr. Mot. at 3. But multiple parties can have different interests in the same asset: one can hold legal title to an asset, another may possess it, and yet another may hold a secured interest. The government cites no authority that only one claimant can assert an interest in a given asset, or that overlapping claims justify striking claims rather than adjudicating them on the merits, and courts have expressly rejected that proposition. *See, e.g.*, *United States v. Portrait of Wally, A Painting By Egon Schiele*, No. 99 CIV. 9940 (MBM), 2002 WL 553532, at *5 (S.D.N.Y. Apr. 12, 2002) ("[A] court does not have discretion to dismiss a claim for lack of standing merely because one claimant's interest is derivative of another's.").

Finally, the government argues that Claimants have not pled enough detail about their constructive trust or bailment interests. Ltr. Mot. at 2. Both issues are the subject of Special Interrogatories, however, and should be addressed once that process is complete.

---

[3] *See also United States v. $579,475.00 in U.S. Currency*, 917 F.3d 1047, 1049 (8th Cir. 2019) ("[B]y asserting that it was 'the owner' of the currency at issue, and that it had 'a claim to, interest in, and right to the property,' [claimant] satisfied the requirement of Rule G(5) to 'state the claimant's interest in the property.'"); *$31,000.00 in U.S. Currency*, 872 F.3d at 350 ("Rule G(5) requires claimants to do no more than identify themselves and state their interest in the property subject to forfeiture.").

[4] The government's cited precedent, *United States v. $153,115.00 United States Currency*, No. 21-CV-380S, 2021 WL 3507894, at *3 (W.D.N.Y. Aug. 10, 2021), is simply off base – there was no argument there that the government's complaint alleged facts sufficient to show standing, and the court there relied on out-of-circuit district court case law, but failed to address the numerous circuit courts that have held to the contrary – and even then, the court allowed 14 days for the claimant to amend. And contrary to the government's suggestion, Ltr. Mot. at 2, the Court's order extending time to file claims here did not require Claimants to identify the specific portions of the seized Bitcoin to have standing. *See* Ltr. Mot. at 2. Indeed, the Court's December 11, 2025 Order did not address standing at all.

3



**Conclusion**

      For all of these reasons, the Court should find Claimants have standing or, alternatively, delay any standing motions until after the Special Interrogatory discovery process is completed.

      Respectfully,

BOIES SCHILLER FLEXNER LLP

 /s/ *Matthew L. Schwartz*
Matthew L. Schwartz
Peter M. Skinner
55 Hudson Yards
New York, New York 10001

Dan G. Boyle
2029 Century Park East, Suite 1520
Los Angeles, California 90067