*** Filed ***
11:11 AM, 10 Mar, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------

**In re Grand Jury Subpoena Served on Hassan Miah**

**Misc. No. _**


**Related Case: United States v. Approximately 127,271 Bitcoin,**

**No. 1:25-cv-05745 (RPK)**

------------------------

MOTION FOR LEAVE TO FILE EXHIBIT A UNDER SEAL

Claimant Hassan Miah respectfully moves this Court for leave to file Exhibit A to his Motion to Quash — consisting of the grand jury subpoena served on him on March 9, 2026, and the accompanying DOJ correspondence — under seal.

In support of this motion, Claimant states:

1. Exhibit A contains a federal grand jury subpoena and related correspondence from the United States Attorney's Office requesting that the existence and contents of the subpoena not be publicly disclosed.

2. Although the Government's nondisclosure request is not legally binding on a litigant seeking judicial relief, Claimant seeks to respect the Government's stated interests and avoid unnecessary public dissemination of grand jury materials.

3. Courts in this District routinely permit grand jury subpoenas and related correspondence to be filed under seal to protect the integrity of ongoing investigations and to avoid public disclosure of sensitive information.

4. Sealing Exhibit A will not prejudice any party. The Government will receive a full copy of the exhibit through ECF service, and the Court will have access to the materials necessary to adjudicate the Motion to Quash.

5. Claimant seeks only to seal Exhibit A; all other filings will remain public.

For these reasons, Claimant respectfully requests that the Court enter an order:

(1) granting leave to file Exhibit A under seal;

(2) directing the Clerk to maintain Exhibit A under seal unless otherwise ordered; and

(3) granting such other relief as the Court deems just and proper.

Dated: March 10, 2026

Nassau County, New York

Hassan Miah

Pro Se Claimant

1080 Old Country Road, Suite 1042

Westbury, NY 11590

Email: hmiah@brookvillellc.com

Phone: 917-545-0137

---

[PROPOSED] ORDER

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------

**In re Grand Jury Subpoena Served on Hassan Miah**

**Misc. No. _**

**Related Case: United States v. Approximately 127,271 Bitcoin,**

**No. 1:25-cv-05745 (RPK)**

-----------------------

Upon consideration of Claimant's Motion for Leave to File Exhibit A Under Seal, and for good cause shown, it is hereby:

ORDERED that the motion is GRANTED; and it is further

ORDERED that Exhibit A to the Motion to Quash shall be filed and maintained under seal until further order of the Court.

SO ORDERED.

Dated: _____, 2026

Brooklyn, New York

Nassau County, New York
March 10, 2026

Hassan Miah

---

United States District Judge

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------

**In re Grand Jury Subpoena Served on Hassan Miah**

**Misc. No. __**


**Related Case: United States v. Approximately 127,271 Bitcoin,**
**No. 1:25-cv-05745 (RPK)**
-------------------------------------------

**DECLARATION OF HASSAN MIAH**

I, **Hassan Miah**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Claimant in the related civil forfeiture action United States v. Approximately 127,271 Bitcoin, Case No. 1:25-cv-05745 (RPK), pending in the Eastern District of New York. I submit this Declaration in support of my Motion to Quash Grand Jury Subpoena and Motion for Protective Order.

2. I filed my Verified Claim on January 19, 2026. I understand that Supplemental Rule G(6) provides the exclusive mechanism for standing-related discovery in civil forfeiture cases, and that the Government did not serve Special Interrogatories within the 21-day period required by that Rule.

3. I am not mentioned in the forfeiture complaint, and I am not alleged to have engaged in any wrongdoing. I am not a target or subject or witness of any criminal investigation known to me.

4. On or about March 3–4, 2026, the Government contacted my former counsel to ask whether she would accept service of a grand jury subpoena on my behalf. She declined. I have not accepted service voluntarily.

5. Based on the Government's communications and the timing of the subpoena, I believe the subpoena is being used to obtain civil discovery relating to standing—discovery the Government forfeited by missing the Rule G(6) deadline.

6. I respectfully request that the Court rule on standing before requiring me to answer any questions—written or oral—or supply any requested documents in connection with the grand jury subpoena. Standing is a threshold issue in the civil forfeiture action, and I

believe that answering questions before standing is resolved would prejudice my rights and allow the Government to obtain civil discovery it waived.

7. I am willing to comply with any lawful order of the Court. However, I respectfully request that the Court stay any obligation to respond to the subpoena until standing is resolved in the civil forfeiture case.

8. I respectfully request that Exhibit A be filed under seal if the Court deems sealing appropriate.

9. I respectfully state that the subpoena seeks civil-discovery materials the Government waived its right to obtain. I therefore respectfully request that the Court grant the relief sought in the accompanying motions and protect me from improper use of the grand jury.

**EXHIBITS**

Attached to this Declaration are true and correct copies of the following documents:

**Exhibit A:** Left Blank

**Exhibit B:** Verified Claim filed January 19, 2026, and Answer filed on January 21, 2026.

**Exhibit C:** Government's January 27, 2026 status letter.

**Exhibit D:** Government's February 13, 2026 status letter.

**Exhibit E:** Government's February 27, 2026 status letter.

**Exhibit F:** Email from AUSA Ben requesting to arrange service of the subpoena.

**Exhibit G:** Judge Kovner's February 17, 2026 Order authorizing Rule G(6) interrogatories for other claimants.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on March 9, 2026**

**Brookville, New York**

Hassan Miah
1080 Old Country Road, Suite 1042
Westbury, NY 11590
Email: hmiah@brookvillellc.com
Phone: 917-545-0137

**Exhibit A:  Left Blank**

Exhibit B



**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2026, I submitted the foregoing Verified Claim and Letter
Motion for Extension of Time via email to the EDNY Pro Se Office at
https://prose.nyed.uscourts.gov/, with a request that the documents be docketed in Case
No. 1:25-cv-05745 (RPK). Upon docketing, all counsel of record, including the United
States Attorney's Office, will be served via the Court's ECF system.

Dated: Nassau County, New York

January 19, 2026

_____

Hassan Miah, Pro Se

1080 Old Country Road, Suite 1042

Westbury, NY 11590

hmiah@brookvillellc.com

917-545-0137

LETTER MOTION FOR EXTENSION OF TIME NUNC PRO TUNC

VIA https://prose.nyed.uscourts.gov/


**Honorable Rachel P. Kovner**

**United States District Judge**

**United States District Court**

**Eastern District of New York**

**225 Cadman Plaza East**

**Brooklyn, NY 11201**


**Re: United States v. Approximately 127,271 Bitcoin, Case No. 1:25-cv-05745 (RPK)**

Dear Judge Kovner:

I respectfully submit this letter pro se requesting that the Court extend my deadline to file a Verified Claim pursuant to Supplemental Rule G(5)(a)(ii) and Federal Rule of Civil Procedure 6(b)(1)(B), and accept my Verified Claim nunc pro tunc and extend my filing deadline.  See ECF Nos. 6, 9, 14, 17.

**Reason for the Delay**

My delay in filing was inadvertent and occurred for reasons like those raised by other claimants whose extensions the Court has already granted:

1. This is an unusually large and complex forfeiture action involving approximately $15 billion in Bitcoin, and determining my interest required time and effort.

2. I did not receive direct notice and was uncertain about the applicable deadline, as other claimants have also reported.

3. I acted promptly once I understood the need to file a Verified Claim and have now submitted it contemporaneously with this motion.

No Prejudice to the Government

The government will suffer no prejudice from this short extension. The Defendant Assets are securely in government custody, and the Court has already extended the deadline for multiple claimants. Granting me the same deadline promotes fairness and consistency.

For these reasons, I respectfully request that the Court accept my Verified Claim nunc pro tunc and extend my filing deadline.

Respectfully submitted,

_____

Hassan Miah, Pro Se

1080 Old Country Road, Suite 1042

Westbury, NY 11590

hmiah@brookvillellc.com

917-545-0137

Dated: New York, New York

January 17, 2026

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

　　**Plaintiff,**

**v.**

**APPROXIMATELY 127,271 BITCOIN,**

　　**Defendant in Rem.**


**Case No. 1:25-cv-05745 (RPK)**

--------------------

**VERIFIED CLAIM OF HASSAN MIAH, PRO SE**

I, Hassan Miah, submit this Verified Claim pursuant to Supplemental Rule G(5)(a):

1. I am a natural person filing this claim pro se.

2. I assert a direct, personal, and legally cognizable interest in the Defendant Assets, including but not limited to the Bitcoin associated with the wallet addresses identified in the Verified Complaint and any traceable proceeds.

3. I intend to contest the forfeiture of the Defendant Assets.

4. I respectfully request that the Court accept this Verified Claim nunc pro tunc and deem it timely as granted to other claimants.

5. I declare under penalty of perjury that the foregoing is true and correct.


Dated: Nassau County, New York

January 17, 2026

_____

Hassan Miah, Pro Se

1080 Old Country Road, Suite 1042

Westbury, NY 11590

hmiah@brookvillellc.com

917-545-0137

[PROPOSED] ORDER GRANTING EXTENSION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA,

    Plaintiff,

v.

APPROXIMATELY 127,271 BITCOIN,

    Defendant in Rem.


Case No. 1:25-cv-05745 (RPK)

---

Upon consideration of the pro se Claimant's Letter Motion for Extension of Time Nunc Pro Tunc, and for good cause shown, it is hereby ORDERED that:


1. The Verified Claim is accepted nunc pro tunc; and

2. The deadline for the pro se Claimant to file a Verified Claim is extended consistent with the Court's prior orders.


SO ORDERED.

Dated: Brooklyn, New York

Nassau County, New York
March 10, 2026

Hassan Miah

---

Hon. Rachel P. Kovner

United States District Judge



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| AFM:BW | *271 Cadman Plaza East* |
|---|---|
| F. #2024R00105 | *Brooklyn, New York 11201* |

Exhibit C:  Government's January 27, 2026 status letter

January 27, 2026

<u>By ECF</u>

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:     United States v. Approximately 127,271 Bitcoin
               Civil Docket No. 25-5745 (RPK)

Dear Judge Kovner:

        The government respectfully submits this letter in response to the Court's January 20, 2026 Order (the "Order") directing the government to respond to various putative claimants' motions for leave or for extensions of time to file claims.

        With the exception of LuBian, the putative claimants generally fall into two categories: (1) claimants who assert that they are cryptocurrency investment fraud victims (the "Investment Fraud Claimants") and (2) claimants who possess judgments against the state of Iran and assert that the Defendant Cryptocurrency or some part of it is subject to those judgments (the "Iran Claimants").  The table below identifies the claimants, the dates and docket numbers of their submissions, and the categories into which they fall:

| ECF No. | Filing Date | Claimant | Category |
|---------|-------------|----------|----------|
| 48 | 1/12/2026 | Danli Wang | Investment Fraud |
| 52 | 1/14/2026 | Iranian Terrorism Victims | Iran |
| 53 | 1/14/2026 | Ravi Anand | Investment Fraud |
| 54 | 1/15/2026 | Andy Yan[1] | Investment Fraud |
| 56 | 1/16/2026 | Chairnoff Claimants | Iran |
| 62 | 1/16/2026 | LuBian | N/A |
| 66 | 1/19/2026 | O'Neill Claimants | Iran |
| 68 | 1/19/2026 | Pennington and Driscoll Claimants | Iran |
| 72 | 1/19/2026 | Lawrence D. Van Dyn Hoven | Investment Fraud |
| 73 | 1/19/2026 | Havlish Claimants | Iran |
| 85 | 1/20/2026 | Gold Star Claimants | Iran |
| 106 | 1/23/2026 | Kristen Breitweiser, Caroline Breitweiser, Patricia Ryan, Laura Ryan, Colin Ryan, Kristen Ryan, Jacqui Eaton-Garland (collectively, the "Breitweiser Claimants") | Iran |
| 111 | 1/23/2026 | Fishbeck Claimants | Iran |
| 125 | 1/27/2026 | Federal Insurance Claimants[2] | Iran |

With the exception of the motion for an extension of time filed by LuBian (ECF No. 62), each of the motions for leave or for extensions of time was filed after the expiration of the applicable Court-imposed December 29, 2025 filing deadline—itself an extension of the statutorily specified December 15, 2025 deadline.[3]  The Court should deny these putative claimants leave to file out of time because they have not established "excusable neglect."  To the contrary, these claimants' failure to file on time flows from their fundamental lack of standing.  They were unaware of their purported interests within the prescribed timeframe, *not* because they were unlucky and failed to hear about the government's forfeiture action in time, but because—as discussed below—their purported interests are not sufficiently definite and direct to support a cognizable claim against the Defendant Cryptocurrency.

In addition, the Court should deny the motions because permitting these claimants to enter the case despite their untimely claims would prejudice the government, and overwhelm

---

[1]    Andy Yan filed an untimely claim on January 15, 2026, but did not file a motion for an extension of time or for leave to file.  Although Yan's claim is not covered by the Order, the government addresses it here as well.

[2]    Subsequent to the Order, the Gold Star, Breitweiser, Fishbeck and Federal Insurance Claimants also filed motions for extension of time or to leave to file.  This letter addresses the motions filed by these putative claimants, in addition to the motions identified in the Order.

[3]    Unlike the other putative claimants, LuBian was required to file its claim by January 19, 2026.  *See* Dec. 18, 2025 Order.  LuBian filed its motion for extension of time on January 16, 2026.  ECF No. 62.

the Court's docket, by opening the floodgates to countless more untimely claims by similarly situated—and similarly unmeritorious—claimants.

In the alternative, the government proposes that the Court reserve decision on the instant motions pending Your Honor's adjudication of similarly situated—but timely—claims that the government intends to oppose for lack of standing. If the Court determines that those claimants in fact have standing, it can then reassess the pending motions for extension in light of that determination.

### A. Procedural Background

On October 8, 2025, Chen Zhi ("Chen") was indicted by a grand jury sitting in the Eastern District of New York. *See United States v. Chen Zhi*, No. 25-cr-321 (RPK), ECF No. 1 (the "Indictment"). The Indictment charges that Chen operated and profited from forced-labor scam compounds across Cambodia that engaged in cryptocurrency investment fraud schemes. On October 14, 2025, the Indictment was unsealed. On that same day, the government filed a civil complaint in the above-captioned case (the "Complaint"), seeking to forfeit, as proceeds of fraud and property involved in money laundering, 127,271 Bitcoin (the "Defendant Cryptocurrency"). Compl. ¶ 44 n.6; *see also* Indictment ¶ 53.

Pursuant to Rule G(4)(a)(iv)(C), the government published notice of this action on its official forfeiture website, advising that the deadline to file claims for potential claimants who did *not* receive direct notice is 60 days from the first day of publication (October 16, 2025), *i.e.* December 15, 2025. On December 11, 2025, the Court extended the filing deadline until December 29, 2025. *See* Dec. 11, 2025 Order. On December 18, 2025, the Court extended the filing deadline for LuBian until January 19, 2026. *See* Dec. 18, 2025 Order.

Of particular relevance here, on December 26, 2025, a group comprising hundreds of individuals who are judgment creditors of Iran filed a complaint against LuBian seeking to attach the Defendant Cryptocurrency pursuant to the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, sec. 201(a), 116 Stat. 2322, 2337–40 (2012) (codified at 28 U.S.C. § 1610 note) under New York procedural law, *see* N.Y. CPLR §§ 5225(b) and 5227 (governing attachment of assets). *See* Complaint for Execution and Turnover, *Fritz, et al. v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-CV-07093 (E.D.N.Y.) (the "Fritz Suit") (ECF No. 1). On December 29, 2025, those individuals filed a claim in this case (the "Fritz Claim"). *See* ECF No. 29. The Fritz Claim and the Fritz Suit allege that LuBian is an agency or instrumentality of Iran. *See* ECF No. 29 at 1-2. The majority of the Iran Claimants' assertions are predicated on the allegations in the Fritz Suit and the Fritz Claim.

### B. Applicable Law

Rule G(5)(a)(ii)(B) requires claimants who did not receive direct notice to file their claims within 60 days of publication on the government's forfeiture website, "[u]nless the court for good cause sets a different time." Rule G(5)(a)(ii)(B). Although a court may alter the deadlines set forth in Rule G "for good cause," once a deadline is set "courts generally permit a party to file a belated claim [only] if the party demonstrates excusable neglect for failure to

3

timely file." *United States v. $417,143.48*, No. 13-CV-5567 (MKB), 2015 WL 5178121, at *9 (E.D.N.Y. Sept. 2, 2015) (aff'd *United States v. $417,143.48*, 682 F. App'x 17 (2d Cir. 2017)); *see also United States v. All Assets of Blue Chip Coffee, Inc.*, 836 F. Supp. 104, 108 (E.D.N.Y. 1993) ("A claimant in a civil forfeiture action may file a late claim only upon a showing of excusable neglect.") (internal quotation marks omitted). "The late claimant has the burden of proving excusable neglect." *United States v. $96,000 in United States Currency*, No. 18-CV-5993 (ALC), 2019 WL 3334493, at *3 (S.D.N.Y. July 25, 2019) (citing *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005)).

In evaluating whether a party has demonstrated excusable neglect, the Supreme Court has directed courts to consider: (i) the danger of prejudice to the non-movant, (ii) the length of the delay and its potential impact on judicial proceedings, (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). In addition, courts in this district consider (i) "when the claimant became aware of the seizure" and (ii) "whether the government was aware of the claimant's interest." *$417,143.48*, 2015 WL 5178121, at *9; *see also* Report and Recommendation at *2, *United States v. Approximately $168,052.25*, No. 14-CV-4219 (NGG) (RER) (E.D.N.Y. Mar. 16, 2016). "When balancing these factors, the 'reason for delay' factor 'predominates, and the other three [factors set forth in *Pioneer*] are significant only in close cases.'" *$96,000*, 2019 WL 3334493, at *3 (quoting *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004)).

In all cases, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

C. Argument

The Court should deny the motions filed by the Investment Fraud Claimants and the Iran Claimants because the putative claimants have not satisfied their burden of establishing that their failure to file timely claims was the result of excusable neglect. Further, were the Court to grant the motions, it would prejudice the government by opening the door to an extremely large number of similarly situated—and similarly untimely—putative claimants. In the alternative, the Court should reserve judgment on these applications in order to manage its docket and permit the efficient progress of the central litigation. The Court should also deny LuBian's motion because LuBian's proffered justification for needing an extension of time—to assess the effect of the Fritz Claim on LuBian's claim—does not constitute good cause for a delay.

1. *The Investment Fraud and Iran Claimants Have Not Provided a Compelling Reason for their Delay in Filing*

The Investment Fraud Claimants and Iran Claimants offer similar justifications for failing to file timely claims. Claimants in both groups generally assert that they were

unaware of the instant action or did not realize the supposed connection between their losses and the Defendant Cryptocurrency until it was too late to file a timely claim.[4]

At best, these reasons amount to mere neglect, rather than excusable neglect. Both the Indictment and Complaint were highly publicized. Furthermore, the 60-day window for claimants who did not receive direct notice to file claims—which the Court has already once extended by 14 days—exists precisely to provide putative claimants with time to learn of the forfeiture action and file a claim. Neither set of claimants cites any case in which a court has found neglect to be excusable on the mere basis that a putative claimant was unaware of the forfeiture action or failed to realize that it had a basis to file a claim. To the contrary, courts have tended to find neglect excusable only where concrete, real-world obstacles intervened to prevent timely filing. *Compare United States v. $153,115.00 United States Currency*, No. 21-CV-380 (WMS), 2021 WL 3507894, at \*3 (W.D.N.Y. Aug. 10, 2021) (finding excusable neglect where six-day delay was result of claimant's attorney being "adversely impacted due to COVID-19 and other health related reasons"); *United States v. $10,990.00 in United States Currency*, No. 18-CV-15 (JCH), 2019 WL 1332585, at \*3 (D.N.M. Mar. 25, 2019) (finding excusable neglect where claimant asserted that his "incarceration has made it difficult to file pleadings on time because he does not have access to electronic filing"); *and $96,000*, 2019 WL 3334493, at \*4 (finding excusable neglect where missed deadline caused by counsel's "administrative office failure" to record filing deadline) *with Blue Chip Coffee*, 836 F. Supp. at 108 (claimant who "believed in her husband's innocence and therefore did not make a claim to the property prior to his conviction" did not demonstrate excusable neglect for late filing) *and United States v. Funds in the Amount of $130,000 United States Currency*, No. 19-CV-3440 (EEB), 2021 WL 2433733, at \*3 (N.D. Ill. June 15, 2021) (counsel's failure to realize he needed to file a claim despite being so advised by the government did not constitute excusable neglect).

In any event, the putative claimants' untimeliness reflects a fundamental, substantive defect in their claims. As discussed below, forfeiture proceedings are open only to those who can demonstrate an "ownership or possessory interest in the property at issue." *United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004). The late-filing movants failed to become aware of their putative claims precisely because they lacked that necessary interest. In staying or denying these motions, therefore, the Court will not prejudice anyone with a legally cognizable claim to the Defendant Cryptocurrency.

---

[4]    In particular, the Iran Claimants typically assert that they only "realized" that they had a basis to file a claim upon learning of the Fritz Claimants' civil lawsuit and/or forfeiture claim, or upon seeing a follow-on suit that itself relied on the Fritz Claimants' applications. *See, e.g.*, ECF No. 52 ("As the Iranian Terrorism Victims just recently learned from the allegations in a separate proceeding [the Fritz Suit] . . . the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ('Iran-China Group'). Upon learning this information, the Iranian Terrorism Victims promptly filed this Notice."); ECF No. 56 ("We have just recently learned, from the allegations in [the Fritz Suit], that the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ('Iran-China Group')"); ECF No. 85 (The Gold Start claimants' "counsel only recently learned—after the December 29, 2025, deadline—of Iran's interest in the Defendant Cryptocurrency by its review of the filings in [the Fritz Suit].").

a. *The Investment Fraud Claimants Lack Standing*

"To establish standing in a civil forfeiture proceeding, the claimant must demonstrate some ownership or possessory interest in the property at issue." *United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004). "A claim of entitlement to payment is not the same as claiming an ownership interest in seized accounts." *Id.* (citing *United States v. All Funds on Deposit on or Before November 8, 1994 in Citibank Account Number 42773634 In The Name of Kahn*, 955 F. Supp. 23, 26 (E.D.N.Y. 1997), *aff'd*, 129 F.3d 114 (2d Cir. 1997)). "Fraud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property; instead, such victims acquire a debt against their wrongdoers." *United States v. 8 Gilcrease Lane, Quincy Florida 32351*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *Agnello*). This "generalized legal interest . . . does not equate to the necessary particularized interest in any specific asset . . . required for standing" in a civil forfeiture proceeding. *Id.* A fraud victim's "ability to trace his property to defendant's assets is irrelevant." *Id.* at n.2.

Put simply, fraud victims who are unsecured creditors of fraudsters do not have standing to assert a claim in a civil forfeiture action involving property belonging to the fraudster. *See id.*; *see also United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003) ("[F]ederal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.") (quoting *United States v. $20,193.39*, 16 F.3d 344, 346 (9th Cir.1994) (collecting cases)); *United States v. 1976 Sabreliner Business Jet and Log Books*, No. 12-CV-368 (TAV), 2017 WL 5691009, at *6 (E.D. Tenn. Mar. 7, 2017) ("[F]raud victims do not retain a legal interest in property when they voluntarily transfer the property to fraudsters."); *United States v. $58,000.00 in U.S. Currency*, No. 11-CV-95 (RLV), 2012 WL 2884697, at *3 (W.D.N.C. July 13, 2012) ("Because [fraud victim claimant] is a mere unsecured creditor under the facts alleged in his Verified Complaint, the Court finds that he lacks constitutional standing to challenge forfeiture"); *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, No. 11-CV-4175 (MFK), 2012 WL 1032904, at *6 (N.D. Ill. Mar. 27, 2012).

The Investment Fraud Claimants purport to be fraud victims who claim they can trace their lost assets to the Defendant Cryptocurrency. As such, they are paradigmatic unsecured creditors and so lack standing to assert a claim in this civil forfeiture proceeding. In light of this fundamental defect in the Investment Fraud Claimants' claims, the Court should not grant them leave to file untimely claims, or should reserve judgment on the motions pending further briefing on the underlying standing issues.

b. *The Iran Claimants Lack Standing*

The Iran Claimants' purported claims are similarly invalid. As a preliminary matter, the Iran Claimants are, at best, judgment creditors of the LuBian mining operation, and as such they face the same challenges in establishing standing that the Investment Fraud Victims face. Their claims are also premised on the assertion that the Defendant Cryptocurrency "is property of" LuBian, which they characterize as an agency or instrumentality of Iran. *See, e.g.*, ECF No. 73, at 1 (Havlish Claimants). Their claims therefore depend on LuBian prevailing on

6

its own claim of ownership over the Defendant Cryptocurrency—a disputed claim that will be contested by the government as well as by other competing claimants, including the defendant Chen Zhi and his alter ego the Prince Holding Group. *See Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 438 (D.D.C. 2012) ("[J]udgment debtors normally pay for whatever caused the adverse judgment against them—third parties do not usually pick up the tab.").

       The Iran Claimants' claims fail for a more fundamental reason. They assert that TRIA provides them with an interest in the Defendant Cryptocurrency and a basis to assert claims in the instant forfeiture proceeding. Under the plain text of the statute, however, TRIA only applies to the "blocked assets" of a terrorist party. *See Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi,* 556 U.S. 366, 374, (2009) (TRIA permits "a person with a terrorism-related judgment to attach an asset . . . provided the asset was a 'blocked asset' "). A "blocked asset" is defined in the statute as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act ['TWEA'] . . . or under sections 202 and 203 of the International Emergency Economic Powers Act ['IEEPA']." TRIA § 201(d)(2)(A). That means that a blocked asset must have been "seized or frozen," and it must have been seized or frozen "under" either TWEA or IEEPA. *See Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63, 75 (E.D.N.Y. 2004) ("[T]he term 'blocked' under the TRIA is specifically limited to assets that are 'seized or frozen'—a limitation that this Court cannot ignore."). The Defendant Cryptocurrency is not a blocked asset under TRIA, because it was not seized or frozen "under" TWEA or IEEPA. It was seized and brought within this Court's *in rem* jurisdiction in a civil forfeiture proceeding based on criminal violations of the wire fraud and money laundering statutes.

       TRIA, therefore, does not provide a basis for the Iran Claimants to assert a claim and recover against the Defendant Cryptocurrency in this forfeiture action. *See, e.g.*, *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 915 (11th Cir. 2013) (holding that TRIA did not reach funds frozen under a different statute, the Foreign Narcotics Kingpin Designation Act, explaining: "Section 201(d)(2)(A) declares that 'blocked asset' *means* an asset frozen under select provisions of the Trading Act and the Economic Powers Act. Assets frozen under the Kingpin Act, however, are absent from that definition. The unavoidable conclusion is that 'blocked assets' under the Terrorism Act does not mean assets frozen pursuant to the Kingpin Act." (emphasis in the original)). And even if this Court were to disregard the words of the statute by holding that an asset seized for forfeiture under criminal wire fraud and money laundering theories counts as an asset "seized or frozen by the United States under [IEEPA] or under [TWEA]," TRIA § 201(d)(2)(A), numerous courts in this Circuit and elsewhere have held that TRIA does not reach property that is already subject to a forfeiture proceeding. *See, e.g.*, *Levin v. United States*, 774 F. App'x 49, 50 (2d Cir. 2019) (TRIA does not "extend so far" as to permit a judgment creditor against Iran to "seek a distribution of property *seized by the Government*" for forfeiture) (emphasis in the original); *United States v. BNP Paribas S.A.*, No. 14-CR-460 (LGS), 2015 WL 1962882, at *3 (S.D.N.Y. Apr. 30, 2015) (third party petitioner seeking to assert a lien based on TRIA on funds forfeited in criminal case lacked standing because the criminal forfeiture did not involve any "blocked assets"); *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, 783 F.3d 607, 622-25 (7th Cir. 2015) (denying TRIA-based claim where the subject funds were not "blocked" as defined by TRIA and noting that once the United States "executed its warrants of arrest *in rem,* the funds . . . were no longer

'seized or frozen' as TRIA contemplates the terms" but rather "were seized under civil forfeiture"); *United States v. Holy Land Foundation for Relief and Development*, 722 F.3d 677, 685 (5th Cir. 2013) (TRIA does not "reach those funds which the government has been given authorization to control through another means" outside those stated in TRIA); *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 139 (2d Cir. 2016) (citing *Holy Land Foundation* for principle that "the plain text of the TRIA permits attachment of assets 'seized or frozen by the United States . . . under sections 202 and 203 of the [IEEPA],' but it "does not reach" assets seized "through other means" such as the appointment of a court monitor).

Because the Iran Claimants' claims are not only untimely, but fundamentally unmeritorious, the Court should deny leave to file out of time, or should, at minimum, reserve judgment on the late-filed claims until it has had the opportunity to rule on the Fritz Claim.

2. *Granting Investment Fraud and Iran Claimants' Motions Would Prejudice the Government by Opening the Floodgates to Numerous Meritless Claims*

Since the expiration of the claims deadline in this case, 13 putative claimants have already filed submissions, representing more than 6,500 individuals and multiple entities. These claims are being filed with such frequency that four of the latest groups of purported claimants appeared in the case *after* the Court's ruling attempting to consolidate and expand the scope of the government's response and "catch up" with recently arrived claimants. Several Iran Claimants have also filed actions before other judges, seeking attachment of the Defendant Cryptocurrency and pointing to the growing pool of competing Iran Claimants as evidence that the Defendant Cryptocurrency is subject to "dissipation" requiring an emergency remedy. *See, e.g.*, *Fritz*, ECF No. 85, at 2 (complaining of "thousands of other claimants with billions of dollars of claims against the Bitcoin all seeking to jump the line").

There is no reason to think that the flood is over. The claimants in this case alone have amassed over $80 billion of outstanding judgments against Iran, and there are almost certainly additional plaintiffs with judgments against Iran who have not yet come forward. Each of those additional creditors has a rational incentive to file a claim in this case, and to take action in other courts seeking to box out competing creditors. *See id.* (calling separate action in the Southern District of New York a "blatant attempt to circumvent this Court").

In light of the unchecked influx of potential claimants, the government respectfully suggests that the Court deny the motions for untimely filing that are at issue here. The Court may, if it wishes, reopen the claims period if it finds that the timely-filed claims are meritorious.

c. *In the Alternative, the Court Should Reserve Judgment on the Motions*

As noted above, the Court has the inherent authority to take necessary steps to manage its docket. The government intends shortly to begin opposing timely motions filed by claimants who are similarly situated to the Investment Fraud and Iran Claimants. Additionally, the government is required to file a response in the Fritz Case by February 9, 2026. Though the government respectfully submits that the Court should deny the instant motions outright, the

8

Court may, as an alternative, manage its docket by reserving decision pending adjudication of timely claims by similarly situated claimants.

### 3. *The Court Should Deny LuBian's Motion for an Extension of Time*

LuBian seeks an extension of time "to permit adequate review" of the claims advanced in the Fritz suit. *See* ECF No. 61 at 1. However, LuBian does not explain what bearing the allegations in the Fritz Suit could possibly have on LuBian's ability to file a claim. Those allegations, describing LuBian as an Iranian instrumentality, do not controvert LuBian's ownership or possessory interest in the Defendant Cryptocurrency.

To the extent LuBian needs maneuvering room in order to make a tactical decision about its positioning in light of the recent flood of Iran Claimants, that request is not one that this Court should indulge, because it is unrelated to the facts of the case and does not constitute good cause under Rule G.

### D. Conclusion

For all of the reasons discussed above, the Court should deny the pending motions for leave or for extensions of time to file claims, or should, in the alternative, reserve judgment on those motions.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:      /s/
     Alexander Mindlin
     Tanisha R. Payne
     Benjamin Weintraub
     Rebecca Schuman
     Andrew Reich
     Assistant U.S. Attorneys
     (718) 254-7000

     Christopher B. Brown
     Supervisory Trial Attorney
     National Security Cyber Section
     National Security Division
     U.S. Department of Justice



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| AFM | *271 Cadman Plaza East* |
| F. #2024R00105 | *Brooklyn, New York 11201* |

Exhibit D

February 13, 2026

<u>By ECF</u>

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:    United States v. Approximately 127,271 Bitcoin
                Civil Docket No. 25-5745 (RPK)

Dear Judge Kovner:

        The government respectfully submits this status report pursuant to the Court's February 11, 2026 order directing it to "identify[] the timely filed claims that it intends to move to strike," and further directing "the government and the claimants identified in the 2/13/2026 status report . . . to confer and propose a consolidated briefing schedule for the government's planned motions to strike by 2/27/2026."

I.    <u>Relevant Background</u>

    The timely claimants in this action are identified for the Court's convenience as follows:

| Claimant Name | Date of Claim | ECF No. |
|---|---|---|
| Ath Leepinyo | 11/17/2025 | 12 |
| AWKO Claimants (444 claimants) | 12/15/2025 | 19 |
| HLF Claimants (42 claimants) | 12/15/2025 | 21 |
| Chen Zhi | 12/29/2025 | 27 |
| Prince Group | 12/29/2025 | 28 |
| Fritz Victims (2,296 claimants) | 12/29/2025 | 29 |
| Baxter Victims (425 claimants) | 12/29/2025 | 30 |
| Connie Wilson | 12/30/2025 | 39 |
| Jian Yang | 1/19/2026 | 63 |
| Warp Data Technology Lao Sole Co. Ltd | 1/19/2026 | 64 |
| Yuan Tian | 1/19/2026 | 67 |
| LuBian | 1/19/2026 | 79 |

The government moved to strike the claim of Ath Leepinyo (ECF No. 12) on February 9, 2026.  *See* ECF No. 197.

II.    The Government's Motions

The government will move to strike the claims of AWKO (ECF No. 19), HLF (ECF No. 21), and Connie Wilson (ECF No. 39) without first issuing special interrogatories. Consistent with the Court's order, the government will confer with these claimants and propose a consolidated briefing schedule.

The government believes it is likely that it will move to strike the claims of the Fritz and Baxter claimants (ECF Nos. 29-30) without special interrogatories, but the Court's resolution of the Fritz Claimants' pending motion for an order of attachment in the related case, *Noala Fritz, et al. v. Iran & China Investment Development Group, d/b/a LuBian.com*, No. 25-cv-7093 (RPK), could have a substantial impact on the government's contemplated motion to strike.  The government therefore requests that the Court defer scheduling any motions deadline with respect to those two claims until after any decision has been made on the attachment motion.  The government's submission with respect to that motion is due on February 23, 2026.

The government respectfully submits that it cannot, at this time, determine which other claimants should be struck for lack of standing until the government has had an opportunity to assess each remaining claimant's standing with special interrogatories under Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  *See* Rule G Advisory Committee's note to 2006 adoption (purpose of special interrogatories is to "gather information that bears on the claimant's standing"); *United States v. $284,950 in U.S. Currency*, 933 F.3d 971 (8th Cir. 2019) (purpose of special interrogatories is to test validity of claimant's claim and allow the government to obtain evidence to challenge standing in a motion to strike the claim); *United States v. Funds in the Amount of $547,840*, 719 F.3d 648, 653 (7th Cir. 2013) (underlying reason for special interrogatories is that "the government need[s] discovery in order to determine whether the claimants ha[ve] valid claims").

Although the government may permissibly, consistent with Rule G(6), file such interrogatories "at any time . . . before discovery is closed," it will do so in this case no later than March 1, 2026 as to each claim that it believes warrants such inquiry. [1]  Once the government has received responses to those interrogatories, it will determine whether the answers are adequate and, if not, move to compel the claimants' compliance to the special interrogatories. *See, e.g., United States v. Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000)*, No. 16-cv-06564 (AMD), 2017 WL 8780158, at *5 (E.D.N.Y. Oct. 26, 2017) (granting in part government's motion to compel); *United States v. Approximately $750,000.00 in U.S. Currency*, No. 10-cv-6069 BSJ, 2011 WL 6155687, at *3 (S.D.N.Y. Dec. 8, 2011) (granting motion to compel).

Once any dispute regarding a claimant's responses to the special interrogatories is resolved, the government will so inform the Court and will, if appropriate, file a motion to strike the claim for lack of standing or any other applicable basis.

---

[1]     The government served special interrogatories on counsel for Prince Group and Chen Zhi on February 6, 2026.

For the reasons set forth above, the government respectfully submits (1) that it will move to strike the claims of AWKO (ECF No. 19), HLF (ECF No. 21) and Connie Wilson (ECF No. 39), and (2) that it will serve its first round of special interrogatories on any claimant so warranting no later than March 1, 2026.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/
             Alexander Mindlin
             Tanisha R. Payne
             Benjamin Weintraub
             Andrew Reich
             Rebecca Schuman
             Assistant U.S. Attorneys
             (718) 254-7000

             Christopher B. Brown
             Supervisory Trial Attorney
             National Security Cyber Section
             National Security Division
             U.S. Department of Justice



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:RMS                                                    *271 Cadman Plaza East*
F. #2024R00105                                             *Brooklyn, New York 11201*

Exhibit E:  Government February 27, 2026 letter           February 27, 2026

By ECF

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Approximately 127,271 Bitcoin
               Civil Docket No. 25-5745 (RPK)

Dear Judge Kovner:

       The government respectfully submits this letter (1) to request a pre-motion conference with respect to anticipated motions to strike certain pleadings for lack of standing; and (2) to propose a briefing schedule for those motions, pursuant to the Court's order dated February 11, 2026.[1]  For the reasons below, AWKO Claimants, HLF Claimants and Claimant Connie Wilson ("Claimant Wilson") each have failed to demonstrate they have both standing under Article III of the Constitution and statutory standing pursuant to 18 U.S.C. § 983(d)(1).  Therefore, the government will move to strike their claims and AWKO Claimants' answer.

I.      Background

       On October 14, 2025, the government filed a civil complaint *in rem* (the "Complaint"), seeking to forfeit 127,271 Bitcoin (the "Defendant Cryptocurrency") as proceeds of fraud and property involved in money laundering.  ECF No. 1.  As described in the Complaint, Chen Zhi served as Chairman of Prince Holding Group ("Prince Group"), a Cambodian corporate conglomerate that operated dozens of business entities, including Prince Real Estate Group.  *Id.* ¶¶ 15, 16(r).  While ostensibly focused on real estate development, financial services, and consumer services, Prince Group, under Chen's direction, made enormous profits for Chen and his associates by operating forced-labor scam compounds across Cambodia that engaged in cryptocurrency investment fraud schemes and used its vast network of seemingly legitimate business enterprises to launder its criminal proceeds.  *Id.* ¶ 15.

---

       [1]      The government respectfully requests an expansion of the page-limit requirement for this pre-motion letter under the Court's Individual Practice Rules so that the government may address multiple motions in a single letter as well as the proposed briefing schedule.

On December 15, 2025, AWKO Claimants—444 claimants identified via pseudonym—filed notice of filing claims, asserting that each was a victim of a cryptocurrency investment fraud scheme.  ECF No. 19.  The government received 398 individual claim forms executed by these claimants under penalty of perjury.  On January 5, 2026, AWKO Claimants filed an answer to the Complaint that provided no further information about their asserted interest in the Defendant Cryptocurrency.  ECF No. 42.

On December 15, 2025, HLF Claimants—42 claimants identified via pseudonym—filed a "complaint of interest," asserting that each was a victim of a fraudulent investment scheme.  *See* ECF No. 21.[2]  The government has not received any individual claim forms executed by these claimants under penalty of perjury.[3]  To date, HLF Claimants have not filed an answer.

On December 30, 2025, Claimant Wilson, proceeding *pro se*, filed a claim asserting that she had been fraudulently induced to transfer funds to a wrongdoer.  ECF No. 39.[4]  On January 29, 2026, Claimant Wilson filed an answer to the Complaint that provided no further information about her asserted interest in the Defendant Cryptocurrency.  ECF No. 143.

## II.    The Anticipated Motions

In order to assert a claim over property that is subject to a civil forfeiture action, a claimant "must have both standing under the statute or statutes governing [its] claims *and* standing under Article III of the Constitution as required for any action brought in federal court."  *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (emphasis added).  "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' [or 'constitutional standing'] relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution."  *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5–6 (D.D.C. 2009) (internal quotation marks omitted).  Standing is "a prerequisite to challenging the forfeiture," *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014), and the burden of proof to establish standing rests with the claimant, *Mercado v. United States Customs Service*, 873 F.2d 641, 644 (2d Cir. 1989).

---

[2]    Of note, the "complaint of interest" filed by HLF Claimants, ECF No. 21, is identical to the notice filed by AWKO Claimants shortly beforehand on the same date, ECF No. 19.

[3]    The government repeatedly has requested these individual claims from counsel for HLF Claimants but still has not received any.

[4]    Although Claimant Wilson has made approximately 41 submissions to date, including at least one other document identified as a verified claim, ECF No. 152, the government construes her initial, timely filing as her claim for purposes of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G").

"[T]he government may move to strike a claim or answer" at "any time before trial" on the basis that "the claimant lacks standing."  Supp. R. G(8)(c)(i)(B).

### A.  AWKO Claimants, HLF Claimants, and Claimant Wilson Lack Constitutional Standing

To establish Article III standing, a claimant must demonstrate an ownership or possessory interest in the specific property at issue, except in limited circumstances.  *See Cambio Exacto*, 166 F.3d at 527.  An unsecured creditor "does not possess a legal right, title, or interest in the property that [is] forfeited as required for standing."  *DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (internal quotation marks omitted).  To that end, numerous courts have found that where a fraud victim transfers money to a wrongdoer, the victim lacks standing to contest the forfeiture of the wrongdoer's property because once the transfer was made, the money became the wrongdoer's property and the victim became his unsecured creditor, even if the fraud victim can trace her money to the property being forfeited.  *See, e.g.*, *United States v. Eldick*, 223 F. App'x 837, 839–40 (11th Cir. 2007); *United States v. $16,816.30 in Funds Maintained in Bank of Am. Acct. No. xxxxxxxxxxx, Held in Name of B.V. Ventures, LLC*, 2023 WL 6613774, at *2 (N.D. Ga. Sept. 28, 2023); *United States v. Real Property Located in Los Angeles*, 2023 WL 3564732, *5 (C.D. Cal. Apr. 17, 2023); *United States v. Hoffman*, No. 11-CV-238 (DSD), 2012 WL 5351797, at *2 (D. Minn. Oct. 30, 2012); *United States v. $7,599,358.09*, 2011 WL 3611451, *3 (D.N.J. Aug. 15, 2011); *8 Gilcrease Lane*, 641 F. Supp. 2d at 5; *United States v. BCCI Holdings (Luxembourg) S.A.*, 69 F. Supp. 2d 36, 59 (D.D.C. 1999); *cf. Disner v. United States*, 888 F. Supp. 2d 83, 88 (D.D.C. 2012) ("[A] fraud victim who voluntarily transfers property to a wrongdoer does not retain a legal interest in the property; instead, the victim becomes a creditor of the wrongdoer."), *aff'd*, 2013 WL 1164502 (D.C. Cir. Feb. 20, 2013); *United States v. $58,000.00 in U.S. Currency*, No. 11-CV-95 (RLV), 2012 WL 2884697, at *3 (W.D.N.C. July 13, 2012) ("Persons including fraud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property; instead, *such victims acquire a debt against their wrongdoers*." (alteration and internal quotation marks omitted) (emphasis in original)).

Taking as true the facts alleged in their respective claims, AWKO Claimants, HLF Claimants, and Claimant Wilson are victims who have been defrauded, not owners with a cognizable interest in the Defendant Cryptocurrency.  *See* ECF No. 19, ¶ 5 (stating that claimants "fell victim to the scheme(s) the Complaint describes"); ECF No. 21, ¶ 5 (same); ECF No. 39, 2 (stating claimant transferred funds based on a "fraudulent assurance").  Because victims of schemes to defraud, such as these claimants describe, are unsecured creditors, they lack Article III standing to contest the instant civil forfeiture action, even if they are able to trace their losses to the Defendant Cryptocurrency.  Their claims and AWKO Claimants' answer, therefore, warrant dismissal.[5]

---

[5]  The government is certainly sympathetic to the plight of these victims.  Although, as a matter of law, they are not proper parties to the instant action, they are not without remedy.  Instead of contesting forfeiture actions, such victims must rely on the government's authority to remit forfeited funds to victims once the civil forfeiture action is complete.  *See* 18 U.S.C. § 981(e)(6) (authorizing the Attorney General to remit forfeited property to non-owner victims); *cf. $7,599,358.09*, 2011 WL 3611451, at *4 (finding that fraud victims were unsecured creditors

B. <u>AWKO Claimants, HLF Claimants, and Claimant Wilson Lack Statutory Standing</u>

To establish statutory standing, a claimant must follow the procedural requirements set forth in Rule G. *See Cambio Exacto*, 166 F.3d at 526. "Strict compliance" is "typically required." *United States v. Conolly*, 694 F. App'x 10, 13 (2d Cir. 2017) (quoting *Cambio Exacto*, 166 F.3d at 529). Among the requirements is that a claim must "identify the specific property claimed," "state the claimant's interest in the property," and "be signed by the claimant under penalty of perjury." R. G(5)(a)(i)(A)–(C). "A person seeking to challenge forfeiture therefore lacks statutory standing if he or she has not filed a claim pursuant to Rule G(5)." *Conolly*, 694 F. App'x at 13. To that end, "a claimant cannot demonstrate statutory standing unless his verified statement of interest asserts an interest in the actual property sought to be forfeited," *United States v. $822,694.81 in United States Currency, Seized From Acct. No. XXXXXXXXXXX, Held in Names of Godwin Ezeemo & Winifred C.N. Ezeemo, at Bank of Am.*, No. 13-CV-545 (RNC), 2015 WL 13765353, at *2 (D. Conn. July 24, 2015), and "blanket assertions of ownership are insufficient to establish a claim" because "a bald assertion of ownership, without more, could result in the Court entertaining a claim by an individual with no standing whatsoever," *United States v. $5,253.00 U.S. Currency*, No. 11-CV-6335, 2014 WL 122254, at *4 (W.D.N.Y. Jan. 13, 2014).

For purposes of demonstrating such an ownership interest, the relevant statute provides that "the term 'owner' does not include . . . a person with only a general unsecured interest in, or claim against, the property or estate of another." 18 U.S.C. § 983(d)(6)(B)(i); *cf. United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, No. 11-CV-4175 (MFK), 2012 WL 1032904, at *6 (N.D. Ill. Mar. 27, 2012) ("[A]n unsecured creditor lacks statutory standing to challenge a forfeiture."). Additionally, a claimant must file an answer to the forfeiture complaint within 21 days of filing the claim. Supp. R. G(5)(b). Where a claimant fails to comply with these procedural requirements, the claim may be stricken for lack of statutory standing. *Cambio Exacto*, 166 F.3d at 526; *see also, e.g.*, *United States v. $115,413.00 in U.S. Currency*, 770 F. Supp. 3d 862, 873–74 (E.D.N.C. 2025) (finding claimant lacked statutory standing because "threadbare assertions [of ownership] fail to comport with . . . Rule G(5)(a)'s requirement that claimants state their 'interest in the property'" (citing R. G(5)(a)(i)(B));*United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567 (MKB), 2015 WL 5178121, at *7 (E.D.N.Y. Sept. 2, 2015) (striking claims for lack of statutory standing because claimants failed to sign under penalty of perjury), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017); *United States v. $541,395.06 U.S. Currency*, No. 10-CV-6555 (CJS), 2012 WL 3614294, at *5 (W.D.N.Y. Aug. 21, 2012) (finding claimant lacked standing where he filed his answer 22 days after filing a claim and failed to provide an explanation of mitigating factors to excuse the late filing); *United States v. 479 Tamarind Drive, Hallendale, Florida*, No. 99-CV-2279 (DLC), 2011 WL 1045095, at *3

---

who thus lacked standing to contest the forfeiture action and noting they instead could file remission petitions with the Attorney General); *8 Gilcrease*, 641 F. Supp. 2d at 6 (explaining that fraud victims lacked standing to contest the forfeiture of the wrongdoer's property in the forfeiture proceeding but "are not without remedy" and could file remission petitions with the Attorney General). The government previously has discussed the remission process with counsel for AWKO Claimants, counsel for HLF Claimants, and Claimant Wilson.

(S.D.N.Y. Mar. 11, 2011) (striking claim for lack of statutory standing because claimant failed to file an answer); *United States v. One Men's Rolex Masterpiece Watch*, No. 07-CV-2508 (STA), 2008 WL 2769368, at *1 (W.D. Tenn. July 11, 2008) (determining that claimant lacked statutory standing because the claim contained counsel's notarized signature, which is insufficient under Rule G(5)(a)(i)(C)).

   While AWKO Claimants assert "an interest in a portion of the Defendant [Cryptocurrency]," ECF No. 19, ¶ 2, that does not suffice for purposes of statutory standing. In addition to failing to adequately "state [their] interest in the property," they have not "identif[ied] the specific property claimed," since the Claims fail to identify the specific assets each claims at the 25 relevant virtual currency addresses, and their answer contains no additional information or clarification. To the contrary, their claims concede that each claimant's stolen funds "cannot be conclusively traced to a specific address included in the [Defendant Cryptocurrency]," thereby confirming the deficiency of their pleadings. As unsecured creditors, AWKO Claimants lack statutory standing.

   In making the same bald assertion of ownership as AWKO Claimants, *see* ECF No. 21, ¶ 2, HLF Claimants similarly fail to sufficiently state their interest in the property, identify the specific assets claimed, and thus similarly fail to meet the requirements for statutory standing. As unsecured creditors, they, too, lack statutory standing. Moreover, HLF Claimants also have failed to provide any claims, let alone claims signed by each claimant under penalty of perjury, as required. Finally, they have failed to file an answer, and the 21-day deadline from the submission of their complaint of interest has long elapsed. HLF Claimants' pleadings, therefore, are deficient on all these bases.

   While Claimant Wilson "request[s] that [her] losses be satisfied from the [Defendant Cryptocurrency]," ECF No. 39, 2, she has not identified the specific property claimed. Her claim references her transfer of fiat currency to a cryptocurrency exchange platform called ZipCoinEx, *see, e.g., id.* at 13; *id.* at 16, but offers no connection between the funds she wired and the Defendant Cryptocurrency. Like AWKO Claimants, Claimant Wilson fails to identify the specific assets she claims at the 25 relevant virtual currency addresses, and her answer contains no additional information or clarification. She has shown that she is a victim of fraud but has not established an ownership interest in the Defendant Cryptocurrency. As an unsecured creditor, Claimant Wilson lacks statutory standing. Additionally, though she filed an answer to the Complaint, it was submitted 31 days after she filed her claim and is thus untimely pursuant to Rule G.

III.   <u>Proposed Briefing Schedule</u>

The government proposes the below briefing schedule with respect to AWKO Claimants, HLF Claimants, and Claimant Wilson.[6]

- Deadline for the government's motion to strike: March 23, 2026

- Deadline for the claimants' response: April 20, 2026

- Deadline for the government's reply: May 11, 2026

The government has conferred with counsel for AWKO Claimants and counsel for HLF Claimants, who concur with this proposed briefing schedule.[7]

The government proposed the above briefing schedule to Claimant Wilson, who declined it but did not propose an alternative.  *Cf.* ECF No. 254.

---

[6]    This proposed briefing schedule is not intended to apply to claimants Chen Zhi, Prince Holding Group, LuBian, Warp Data Technology Lao Sole Co. Ltd, Jian Yang, and Yuan Tian, who were the subject of a separate pre-motion letter from the government, *see* ECF No. 246, and have been ordered by the Court to respond to the government's motion for a pre-motion conference by March 4, 2026, Dkt. Entry Feb. 25, 2026.  The government will propose a briefing schedule for these claimants if the Court so directs.

[7]    The proposed schedule was designed to accommodate lead counsel for AWKO Claimants' multi-week unavailability due to pre-planned international travel.

IV.    <u>Conclusion</u>

For these reasons, the government respectfully requests that the Court enter the above-proposed briefing schedule without a hearing or, should the Court prefer, hold a pre-motion conference with respect to the government's above-discussed anticipated motions to strike.


Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/                                
Alexander F. Mindlin
Tanisha R. Payne
Benjamin Weintraub
Andrew D. Reich
Rebecca M. Schuman
Assistant U.S. Attorneys
(718) 254-7000

Christopher B. Brown
Supervisory Trial Attorney
National Security Cyber Section
National Security Division
U.S. Department of Justice


cc:    Clerk of Court (RPK)
Counsel of Record (via ECF)
Connie Wilson, *pro se* (via ECF and certified mail)

7

1:50 ✈

Exhibit F: Emails from AUSA

**From:** Weintraub, Benjamin (USANYE)
<Benjamin.Weintraub@usdoj.gov>

**Sent:** Tuesday, March 3, 2026 12:55 PM

**To:** Katherine Lemire <klemire@lswlaw.com>

**Cc:** Mindlin, Alexander (USANYE)
<Alexander.Mindlin@usdoj.gov>; Reich, Andrew (USANYE)
<Andrew.Reich@usdoj.gov>; Schuman, Rebecca (USANYE)
<Rebecca.Schuman@usdoj.gov>; Payne, Tanisha (USANYE)
<Tanisha.Payne@usdoj.gov>; Brown, Christopher (NSD)
<Christopher.Brown8@usdoj.gov>

**Subject:** Hassan Miah

**WARNING: External Email**

Hi Katy,

I hope this email finds you well.  I'm one of the AUSAs on the Chen Zhi / Prince Group case.

I'm writing to inquire as to whether you are authorized to accept a Grand Jury subpoena on behalf of Hassan Miah.

Thank you,
Ben

**Benjamin L. Weintraub**
Assistant United States Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

Exhibit G:  Judge Kovner Order of February 17, 2026

**CM/ECF**  Query    Reports ▾    Utilities ▾    Help    Log-Out

| | | |
|---|---|---|
| | | as Personal Representative of the Estate of Alan Beer, Harry Beer, as Administrator for the Estate of Anna Beer, Harry Beer, Estelle Carroll, Phyllis Maisel, Jason Kirschenbaum, David Kirschenbaum, Isabelle Kirschenbaum, as Executrix for the Estate of Martin Kirschenbaum, Isabelle Kirschenbaum, Joshua Kirschenbaum, Danielle Teitelbaum. (Attachments: # 1 Exhibit Verified Claim) (Petrocelli, Patrick) (Entered: 02/13/2026) |
| 02/13/2026 | 224 | Letter *status report* by United States of America (Mindlin, Alexander) (Entered: 02/13/2026) |
| 02/13/2026 | 231 | MOTION for Summary Judgment *and Order for Restoration, filed* by Connie Wilson. (VRM) (Entered: 02/17/2026) |
| 02/17/2026 | 225 | ANSWER to 1 Complaint,, , CROSSCLAIM against All Parties, COUNTERCLAIM against All Parties by Hamen Claimants. (Donoghue, Richard) (Entered: 02/17/2026) |
| 02/17/2026 | | ORDER: In light of the parties' 201 202 214 letters, the Court determines that a pre-motion conference is unnecessary. Claimants Warp Data Technology Lao Sole Co. Ltd. and LuBian may file their full motions to dismiss the action under Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions G(8)(b), and for a more definite statement under Federal Rule of Civil Procedure 12(e), by 3/9/2026.<br><br>The government's deadline to respond to the full motion is held in abeyance. The government may serve special interrogatories limited to each claimant's identity and relationship to the defendant property within 21 days after the motions are served. The government is directed to file a status report on or before 4/20/2026 disclosing its projected deadline to respond to claimants' motions given the date they answered the interrogatories. Ordered by Judge Rachel P. Kovner on 2/17/2026. (AG) (Entered: 02/17/2026) |
| 02/17/2026 | 226 | *ANSWER TO COMPLAINT AT ECF #1* ANSWER to 225 Answer to Complaint, Crossclaim, Counterclaim by AXA Art Insurance Corp., AXA CSA UK Branch, AXA Global Risks (UK) Ltd., AXA Insurance Company, AXA Re, AXA Re Canadian Branch, AXA Re UK Plc, AXA Reinsurance Company, AXA Versicherung, American Alternative Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Chubb Insurance Company of Canada, Chubb Insurance Company of New Jersey, Federal Insurance Company, Great Lakes UK Reinsurance Company, Great Northern Insurance Company, Onebeacon Insurance Company, Pacific Indemnity Company, Princeton Excess and Surplus Lines Insurance Company, SPS RE, Vigilant Insurance Company. (Carter, Sean) (Entered: 02/17/2026) |
| 02/17/2026 | 227 | NOTICE of Government's Failure to Oppose and Request for Ruling, filed by Connie Wilson (VRM) (Entered: 02/17/2026) |
| 02/17/2026 | 228 | SUPPLEMENTAL DECLARATION in Support of Motion for Return of Property, filed by Connie Wilson (VRM) (Entered: 02/17/2026) |
| 02/17/2026 | 229 | RESPONSE to 224 Government's Status Report, filed by Connie Wilson. (VRM) (Entered: 02/17/2026) |
| 02/17/2026 | 230 | NOTICE of Exigent Financial Hardship and Demand for Immediate Severance and Ruling, filed by Connie Wilson (VRM) (Entered: 02/17/2026) |
| 02/18/2026 | 232 | First MOTION to Appear Pro Hac Vice *on behalf of Douglass A. Kreis* Filing fee $ 200, receipt number ANYEDC-19924910 by Swinney Claimants. (Attachments: # 1 Affidavit in Support, # 2 Exhibit, # 3 Proposed Order) (Nappi, Hillary) (Entered: 02/18/2026) |
| 02/18/2026 | 233 | Petitioner's Emergency Request for Status Conference and Declaration of Substantial Hardship, filed by Connie Wilson (VRM) (Entered: 02/18/2026) |

**CERTIFICATE OF SERVICE**


UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------

 In re Grand Jury Subpoena Served on Hassan Miah

Misc. No. _


 Related Case: United States v. Approximately 127,271 Bitcoin,

No. 1:25-cv-05745 (RPK)

-------------------------------------


**CERTIFICATE OF SERVICE**


I, Hassan Miah, certify that on March 10, 2026, I caused the following document to be served:


Motion for Leave to File Exhibit A Under Seal, including the public motion and proposed order (but not Exhibit A, which is the subject of the sealing request), by submitting it through the Eastern District of New York Pro Se Electronic Delivery Portal, which transmits filings to the Clerk of Court for docketing and provides notice of the filing to the United States Attorney's Office for the Eastern District of New York.

No copy of Exhibit A was filed or served, as Claimant seeks leave of Court before submitting the grand jury subpoena and related correspondence under seal.

I certify under penalty of perjury that the foregoing is true and correct.


Dated: March 10, 2026

Nassau County, New York

Hassan Miah
Pro Se Claimant
1080 Old Country Road, Suite 1042
Westbury, NY 11590
Email: hmiah@brookvillellc.com
Phone: 917-545-0137