# AMBUSH

JOSHUA M. AMBUSH, LLC | 106 OLD COURT RD | SUITE 303 | BALTIMORE, MD 21208 | USA
O: 410.484.2070 | WWW.AMBUSHLAW.COM

March 23, 2026

**VIA ECF**

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: *No. 25-cv-5745, United States v. Approximately 127,271 Bitcoin Etc.***

Dear Judge Kovner:

We represent 434 judgment creditors (the "Ambush Claimants") of the Islamic Republic of Iran with claims to the defendant assets that the Government seeks to forfeit in this *in rem* action. On February 6, 2026, the undersigned filed a Letter/Motion requesting the Court to accept the claims of the Ambush Claimants after the December 29, 2025, deadline, for "good cause" under Supplemental Rule G(5)(a)(ii), and a Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem.* (ECF 188; 188-1-3.)

The purpose of this Letter is to supplement the February 6, 2026, Letter/Motion of the Ambush Claimants by demonstrating that the good cause standard is the correct standard to apply to the Letter/Motion of the Ambush Claimants. (ECF 188 at 1-2.) For the reasons explained below, the position of the Government that the "excusable neglect" standard should be applied by the Court to motions for extensions, (ECF 126 at 3-5), misstates the applicable law and ignores binding precedent of the Second Circuit.

In accordance with the Court's Order of January 20, 2026,[1] on January 27, 2026, the Government filed its opposition to several motions for extension of time. (ECF 126; the "Government's Opposition".) In its Opposition, the Government cited 3 district court decisions, with an additional citation to an affirmance

---

[1] The February 6, 2026, Letter/Motion of the Ambush Claimants was, obviously, not included in the Court's January 20, 2026, Order. The Ambush Claimants are submitting this Letter to supplement their February 6, 2026, Letter/Motion in which good cause was asserted for the extension of time. The Ambush Claimants reserve the right to file a formal opposition in the event that the Government moves to dismiss or strike (or similar papers) the February 6, 2026, request of the Ambush Claimants for an extension of time, including presenting argument that even if the excusable neglect standard would be applied, the Ambush Claimants have satisfied that standard as well, and their "standing" arguments if necessitated by any filing by the Government. The Ambush Claimants note that the decision of the Second Circuit in *United States v. Starling,* 76 F.4th 92 (2nd Cir. 2023), which the Government failed to even cite in its Opposition, dealt directly with the issue of standing under Supplemental Rule G(5). *Starling*, 76 F.4th at 101, n. 4.

INTERNATIONAL LAW | WORLD CLASS REPRESENTATION

by the Second Circuit of one of those cases; ECF 126 at 4), in support of its excusable neglect argument. For each of the cited 3 decisions, the Government provided the Court with a convenient one sentence quote from each case without any analysis whatsoever of the facts in each case; and there is "good cause" for the Government's failure to do so--the facts in those cases have no application to the facts in this case, as will be demonstrated below. Most notably missing from the Government's Opposition is even a citation to the most recent binding precedent on this issue by the Second Circuit in *United States v. Starling,* 76 F.4th 92 (2nd Cir. 2023), wherein the Court applied the good cause standard,[2] discussed immediately below.

## I.      The Decision of the Second Circuit in *United States v. Starling*

### a.  Facts and Holding[3]

In *Starling*, the Government sought forfeiture of money that it found at Starling's residence based on its belief that the money was proceeds of drug trafficking. As required, the government provided notice of the forfeiture proceeding on its website *and by mail sent directly to Starling.*[4] Starling asserted that she missed the notice, *and after months went by without response* to the judicial forfeiture action, the U.S. Attorney's Office for the Western District of New York moved for entry of default against the seized currency. *The clerk of court entered default.* Roughly *three months later* [i.e. after the default order had been entered]*,* and before the government's motion for default judgment had been granted, Starling sent the first of four undated letters to the U.S. Attorney's Office and the district court. The government moved to strike her letters as an untimely claim to the assets, arguing that because she was given direct notice of the action on June 14, 2021, Starling's claim was due on July 16, 2021. *Starling,* 76 F.4th at 95-97. Because Starling had submitted her letters after the entry of default but before a default judgment had been entered, the Court had to decide whether the correct standard to apply was the good cause standard set forth in Rule 55 to vacate a default order, as argued by Starling, or the stricter standard of excusable neglect under Rule 6 for a party who has missed a deadline, including a deadline set under Supplemental Rule G(5)(a), as argued by the Government. *Starling,* 76 F.4th at 98-99. The Court rejected the argument of the Government and explained:

> The text of Supplemental Rule G suggests that good cause is the appropriate standard. The rule sets deadlines for when a claim to the defendant assets "must be filed . . . [u]nless the court for good cause sets a different time." Supp. R. G(5)(a)(ii)… It gives no indication that a harsher standard should govern a later motion. And applying the standard to defaulting claimants would mirror the government's burden when it seeks an extension of time to convert an administrative forfeiture proceeding into a judicial one. See 18 U.S.C. §

---

[2] Several parties who have filed a request for extension of time have cited the *Starling* decision; however, without an in depth analysis. The Gold Star Claimants' Letter of February 3, 2026 (ECF 167 at 2-3), did briefly address the facts in *Starling.*

[3] A portion of the paragraph immediately below is taken directly from various parts of the decision in *Starling.*

[4] Starling did not contest the delivery of the notice to her home. Instead, she claimed that she was on a vacation. *Starling,* 76 F.4th at 96.

983(a)(3)(A) ("[A] court . . . may extend the period for filing a complaint for good cause shown or upon agreement of the parties.").

*Starling,* 76 F.4ᵗʰ at 100. After characterizing the Government's position as "misapprehend[ing]" how Rules 6 and 55 operate and concluding that "The government's argument to the contrary is defective" *Starling,* 76 F.4ᵗʰ at 100-101, the *Starling* Court wrote:

> Like the Sixth Circuit, we do not perceive "anything functionally different about civil forfeiture cases that compels us to treat untimely response in these cases differently than untimely responses in all other civil cases." $22,050.00 U.S. Currency, 595 F.3d at 323. *To the contrary, civil forfeiture procedure magnifies the importance of deciding such cases on the merits rather than by default. Civil forfeiture can "enable the government to seize… property without any pre-deprivation judicial process and to obtain forfeiture of the property even when the owner is personally innocent."* Leonard v. Texas, 580 U.S. 1178, 1179, 137 S. Ct. 847, 197 L. Ed. 2d 474 (2017) (statement of Thomas, J., respecting denial of certiorari). As was made clear in this case, the lax notice requirements allow the government to start the clock toward default judgment with perfunctory measures, such as ordinary mail, and by posting on a government forfeiture website that the citizenry has no reason to know of. See Supp. R. G(4)…*All this is driven by incentive: The authorities can pocket what they can seize by forfeit…*[5] ("Between 2001 and 2014, deposits in the U.S. Department of Justice and Treasury forfeiture accounts totaled almost $29 billion.").
> *Each of these reasons alone would be enough to compel trial courts to consider untimely claims with particular indulgence.* We therefore hold that when, as in this case, a claimant with Article III standing seeks to file an untimely claim against seized assets after default has been entered but before default judgment has been granted, district courts should apply the "good cause" standard.

*Starling,* 76 F.4ᵗʰ at 101-102 (emphasis added.) Based on the foregoing analysis by the Court, the Court vacated the default judgment of the district court and held that the letters that Starling had written to the U.S. Attorney's Office and the district court *3 months* after the entry of the default order, satisfied the good cause standard.

In sum, the *Starling* Court held that the good cause standard should be applied, and had been satisfied, even with respect to a claimant who had been sent direct notice by mail and who failed to take any action to file a claim until approximately 3 months after a default order had been issued. In this case, the Ambush Claimants did not receive notice by mail[6] and the Court has not issued a default order against the

---

[5] This case involves "the largest forfeiture action in the history of the Department of Justice" against approximately (at the time of the filing of the complaint) $15 billion worth of Bitcoin. https://www.justicve.gov/opa/pr/chairman-prince-group-indicted-operating-cambodian-forced-labor-scam-compounds-engaged. Indeed, "*All this is driven by incentive: The authorities can pocket what they can seize by forfeit…."*

[6] The Ambush Claimants are not arguing at this time that they should have received notice by mail; rather, the Ambush Claimants emphasize that the Second Circuit in its *2023* decision in *Starling,* held that the good cause standard applies even in a case in which a claimant was sent notice by mail and fails to file a claim until approximately 3 months after the default order had been entered.

Ambush Claimants, or any other claimants; *a fortiori,* the Ambush Claimants February 6, 2026, Letter/Motion to extend the deadline is governed by the good cause standard.

**b.  The Good Cause Standard Analysis with Respect to the Ambush Claimants**

The *Starling* Court explained the factors that a Court should consider when applying the good cause standard:

> …the good cause standard considers three factors: (i) the willfulness of the defaulting party, (ii) prejudice to the non-movant, and (iii) whether the defaulting party has a meritorious defense… While excusable neglect penalizes negligent parties for failing to prosecute their cases, *the good cause standard attaches consequences only to bad faith or tactical violations of court orders.* See, e.g., Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 507 (2d Cir. 1991) (default would not be vacated where movant "admit[ted] he deliberately chose not to appear in the action").

*Starling,* 76 F.4th at 102 (emphasis added.) As explained by the *Starling* Court, "the good cause standard attaches consequences only to bad faith or tactical violations of court orders." There is no "bad faith or tactical violations of court orders" and the Government cannot point to facts in that regard. Under that general rubric, there was no "willfulness" by the Ambush Claimants, who filed their Verified Claims on February 6, 2026, within days after learning of the forfeiture. ECF 188 & 188-1 at 2-3.The Government will not suffer any prejudice by the Court granting the request for extension of time of the Ambush Claimants as this case is in its earliest stages and prior to the initiation of discovery. Finally, as set forth in the Verified Claim and Letter/Motion, ECF 188 &188-1, and the Answer filed by the Ambush Claimants, ECF 253, they have asserted a meritorious defense.

## II.    The Second Circuit's Decision Cited by the Government, as well as the District Court Decisions, are Irrelevant to the Analysis of the Request for Extension of Time in this Case

a.  *United States v. $417,143.48,* **No. 13-CV-5567 (MKB), 2015 WL 5178121 (E.D.N.Y. Sept. 2, 2015) (aff'd *United States v. $417,143.48,* 682 F. App'x 17 (2nd Cir. 2017)[7]**

In its Opposition, the Government wrote the following and quoted from the District Court's decision:

> Although a court may *alter the deadlines* set forth in Rule G *"for good cause,"* once a *deadline is set* "courts generally permit a party to file a belated claim*[only]* if the party demonstrates *excusable neglect* for failure to timely file."

ECF 126 at 3-4 (emphasis added.)

---

[7] In contradistinction to the opinion in *Starling*, which is a published opinion of the Second Circuit, the Second Circuit opinion cited by the Government is unpublished—"F.App'x. Such summary orders "do not have precedential effect." 2d Cir. L.R. 32.1.1(a).

The Government has misquoted from the Opinion of the District Court. First, the word "only", which the government placed in brackets in its quote from the Opinion of the District Court, does not appear in that sentence in the Opinion. Second, the Government concluded its quotation from the District's Opinion with the words "timely file" without an ellipsis to indicate that the sentence of the Opinion continued. The sentence continues a follows, "in line with the standards set forth in Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure." Once again, there is "good cause" for the Government not to quote the full sentence from the Opinion--the application of the excusable neglect standard expressed in Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure to *in rem* forfeiture proceedings by the District Court in its 2015 Opinion-- was expressly rejected by the Second Circuit in Starling in 2023. *See supra,* pp. 2-3. The reasoning the Government infuses into the District Court's Opinion is also contrary to the plain reading of Supp. R. G(5)(a)(ii)—"must be filed . . . [u]nless the court for good cause sets a different time." According to the Government's reading of the passage quoted above, a Court may extend the deadline to file claims under Rule G for good cause; however, once the extended deadline is set, a Court's authority to extend that deadline mysteriously changes from good cause to excusable neglect—a distinction the Government manufactures by inserting the word "only" into the District Court's Opinion.

Rather than quoting the extreme facts detailed in the District Court's Opinion, the Ambush Claimants will rely on the summary of those facts detailed in the Opinion of the Second Circuit:

> Accordingly, the critical issue on appeal is whether the district court abused its discretion in denying Dominguez leave to file a verified notice of claim *nunc pro tunc. See* [United States v. Amiel, 995 F.2d 367, 371 (2d Cir. 1993)](#) "[A] court has discretion in appropriate circumstances to depart from the strict compliance standard" embodied by Rule G(5)). We hold it did not. *Dominguez offers no compelling explanation* for why her counsel failed to file a claim by the deadline for doing so. When the Claimants did finally file a claim *months after the deadline* for doing so had lapsed, *it was unverified* and thus not compliant with Rule G(5). It was only once the government advised the district court of its intention to move to strike — *about a year after it had served its Complaint* — that Dominguez moved for leave to file a verified claim. *Moreover, Dominguez failed to answer the Complaint* as required by Rule G(5)(b), *never sought an extension of time to do so, and has not offered any explanation for her noncompliance with Rule G in this regard.* As the district court observed, *"there is no indication that Dominguez has been pursuing her rights diligently in this action."*

*United States v. $417,143.48,* 682 F. App'x at 19 (emphasis added.) That is the only Second Circuit Opinion cited by the Government, and in that (unpublished) Opinion the Second Circuit did not do any analysis of the good cause standard versus the excusable neglect standard; obviously because the extreme and repeated failures by the claimant to "pursue her rights diligently" did not require any such analysis. For the Government to rely on that Opinion in this case is proof of the inherent weakness in the Government's argument.

    **b.**   ***United States v. All Assets of Blue Chip Coffee, Inc.*, 836 F. Supp. 105 (E.D.N.Y. 1993)**

In its Opposition, the Government quoted from the District Court's Opinion in *Blue Chip Coffee* as follows, "A claimant in a civil forfeiture action may file a late claim only upon a showing of excusable neglect." ECF 126 at 4. Immediately after that sentence, the District Court provided the citation to support its conclusion (which, again, the Government did not include in its quote)—"Fed. R. Civ. P. 6(b)(2)." *Blue Chip Coffee, Inc.*, 836 F. Supp.at 108. Thus, the Government relies on the 1993 decision of the District Court that is based on Rule 6(b)(2), which the Second Circuit in 2023, in *Starling,* expressly rejected. *See supra,* pp. 2-3.[8]

    c. ***United States v. $96,000 in United States Currency,* No. 18-CV-5993 (ALC), 2019 WL 3334493 (S.D.N.Y. July 25, 2019)**

In its Opposition, the Government quoted from the District Court's Opinion in $96,000 in U.S. Currency, as follows, "The late claimant has the burden of proving excusable neglect." ECF 126 at 4. As in *Blue Chip Coffee, Inc.*, the District Court in $96,000 in U.S. Currency, explained its holding as based on "Fed.R.Civ.P. 6(b)." 2019 U.S. Dist. LEXIS 124333 at 5 (2019). Thus, the Government relies on the 2019 decision of the District Court that is based on Rule 6(b), which the Second Circuit in 2023, in *Starling,* expressly rejected. *See supra,* pp. 2-3. Additionally, the District Court in  $96,000 in U.S. Currency stated, "Finally, *policy considerations* favor a denial of the government's motion because striking the Verified Claim, which would be functionally equivalent to entering a default judgment, would 'violate the policy of resolving cases on the merits.'"2019 U.S. Dist. LEXIS 124333 at 10. (Emphasis added.)

### III.    The Government's Notice Did Not Comply with Special Rule G

The Ambush Claimants incorporate by reference and adopt the arguments presented by the "9/11 Claimants" with respect to "Inadequate Notice". ECF 187, pp. 4-6.

Additionally, on February 6, 2026, the Fishbeck Claimants submitted their response to the Government's January 27, 2026, opposition to their Letter Motion for extension of time. ECF 191. With respect to inadequate notice, the Fishbeck Claimants made the following salient point:

> In a complaint that spans 68 pages containing more than 14,000 words (including attachments) Iran is mentioned once, in paragraph 16(u), which generally alleges that Lubian had facilities across Asia including China and Iran. The Government's complaint did not contain information concerning Lubian's extensive ties to the Iranian government, the size of Lubian's operations in Iran, or that the bitcoin at issue was allegedly owned by Lubian…Instead the complaint refers to Lubian as a "China-based" company.

ECF 191 at 2.

In a recent decision (March 3, 2026), the U.S. District Court for the Northern District of New York, Honorable Brenda K. Sannes (Chief United States District Judge), denied the Government's motion for a default judgment, in a cryptocurrency forfeitures case, based on inadequate notice—on the Government's

---

[8] The Ambush Claimants note that the District Court, itself, vacated its decision in *Blue Chip Coffee, Inc.*—also not noted in the Government's Opposition. *United States v. All Assets of Blue Chip Coffee, Inc.*, 882 F. Supp. 45(E.D.N.Y. 1995; due process considerations.)

official website. *United States v. 674,739.480211 USDT of Tether cryptocurrency, with an approximate value of $674,469.58,* 2026 U.S. Dist. LEXIS 42940 (N.D.N.Y. 2026). In summary, Judge Sannes held:

> However, the record does not reflect whether the Government's posted notice is sufficient to satisfy Supplemental Rule G(4). While the Government published public notice of the action on an official government forfeiture website, www.forfeiture.gov, from August 7, 2025 to September 5, 2025, …it is not clear that the public notice "describe[s] the [Defendant Cryptocurrency] with reasonable particularity" in satisfaction of Supplemental Rule G(4)(a)(ii)(A). The public notice identifies Defendant Cryptocurrency as "674,739.480211 USDT from Tether account number #XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX5usu, held in the name of Best Acct# XXXXXXXXXXXXXXXXXXXXXXXXX (25-FBI-003794) seized from Tether on May 22, 2025 in Albany, NY." …But the verified complaint indicates Tether cryptocurrency was traced from the Victim's accounts to a "Target Wallet" identified as "Wallet TNj4y6nnTX," and funds were seized from the Target Wallet… There is nothing in this record, beyond the notice of forfeiture, regarding a Tether account ending in 5usu; *the Government has not provided any explanation of its connection to the Target Wallet or how the description in the public notice would give sufficient notice to a potential claimant.*

*674,739.480211 USDT of Tether cryptocurrency,* at 13 (emphasis added.) Similarly, in this case, the Government has failed to explain how referencing Iran once in its 68 page Complaint "gave sufficient notice" to the victims of Iranian terrorism about whom it had actual knowledge. The Government's website notice was even worse. As explained in the Letter of the 9/11 Claimants:

> On information and belief, the announcements concerning the forfeiture proceeding that appeared on the government's website made no mention whatsoever of the government of Iran, or any connection between Iran and the Bitcoin.

ECF 187 at 4-5. Thus, the website notice did not mention Iran, and the 68 page Complaint mentioned Iran once. Clearly, the Government failed to provide notice, "reasonably calculated to notify potential claimants of the action", Rule G(4)(b)(i). In fact, virtually all of the numerous requests for extensions of time, the Government's opposition and the replies by claimants, which occupy a fair amount of the docket in this case, could have been avoided if, at the very least, the Government had simply published notice on the website of the United Staes Victims of State Sponsored Terrorism Fund, which is also operated by the Department of Justice.

## IV.    CONCLUSION

The Government was well aware of the many victims of Iranian terrorism and its statutory obligation, an obligation that expresses the public policy of the Government to make whole, to the extent possible, the victims of Iranian terrorism, at the time the Government published its defective notice and filed its complaint for "the largest forfeiture action in the history of the Department of Justice…." The Government had an obligation to ensure that those victims had notice –"reasonably calculated to notify

potential claimants of the action", Rule G(4)(b)(i). The Government failed to do so. To add insult to injury, the Government now argues, based on a "summary order"—an unpublished opinion[9]—that the excusable neglect standard applies rather than the good cause standard set forth in the 2023 published opinion in *Starling*, after its own conduct caused the delay. As summarized by the 9/11 Claimants:

> The government's effort to deprive the 9/11 Claimants of their day in court on this issue is unwarranted and, indeed, unworthy of the government. See *United States v. Borromeo*, 750 F.2d 750, 753-54 (4th Cir. 1991) ("We cannot applaud the government's effort to deny [claimant] a hearing on the merits of her claims….The government may still "win the money, but it must let the claimants into the courthouse."

ECF 187 at 3.

Based on the foregoing, the Ambush Claimants respectfully request that the Court grant the extension of time requested in their February 6, 2026, Letter/Motion.

We thank the Court for its attention to this matter.

Respectfully submitted,

/s/ Joshua M. Ambush
Joshua M. Ambush, Esq.
*Counsel for the Ambush Claimants*

CC: Counsel of Record (via ECF)

---

[9] *United States v. $417,143.48,* 682 F. App'x 17 (2nd Cir. 2017).