AFM:RMS
F. #2024R00105

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

       - against -

APPROXIMATELY 127,271 BITCOIN,
AND ALL PROCEEDS TRACEABLE
THERETO,

            Defendants *In Rem*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Case No. 25-CV-5745 (RPK)

THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO STRIKE THE CLAIM AND ANSWER FILED BY CONNIE WILSON

                                  JOSEPH NOCELLA, JR.
                                    United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

Alexander F. Mindlin
Tanisha R. Payne
Andrew D. Reich
Benjamin L. Weintraub
Rebecca M. Schuman
Assistant U.S. Attorneys
      (Of Counsel)

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 1

      APPLICABLE LAW ...................................................................................................... 3

         I.      Standard for Reviewing *Pro Se* Filings ................................................... 3

         II.     Standing in Civil Forfeiture Actions ........................................................ 3

               A.      Constitutional Standing ........................................................... 5

               B.      Statutory Standing ................................................................... 8

         III.    Motion to Strike a Claim or Answer Under Rule G(8)(c) ..................... 11

         IV.   The Remission Process ........................................................................... 12

DISCUSSION ...................................................................................................................... 14

         I.      Claimant Lacks Constitutional Standing ............................................... 15

         II.     Claimant Lacks Statutory Standing ....................................................... 18

CONCLUSION .................................................................................................................... 21

PRELIMINARY STATEMENT

Pursuant to Rule G(8)(c)(ii)(B) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"), the government moves to strike the claim and answer filed by Connie Wilson ("Claimant") for failure to allege facts that, even if true, would be sufficient to establish either constitutional standing under Article III of the Constitution or statutory standing to contest the instant forfeiture action.

First, as a victim of a scheme to defraud, Claimant lacks constitutional standing because she relinquished any legal interest in the funds when she transferred those funds to the perpetrator. Claimant also lacks statutory standing because her claim fails to adequately state her interest in the property at issue here and to identify the specific property claimed, and because she failed to timely file an answer. While fraud victims have avenues for legal redress, asserting a claim in this forfeiture action is not the right means to achieve that end, because forfeiture actions are not designed or intended as a method for fraud victims to seek recovery against a perpetrator's assets.

BACKGROUND

On October 14, 2025, the government filed a civil complaint *in rem* (the "Complaint"), seeking to forfeit 127,271 Bitcoin (the "Defendant Cryptocurrency") as proceeds of fraud and property involved in money laundering. ECF No. 1. As described in the Complaint, Chen Zhi served as Chairman of Prince Holding Group ("Prince Group"), a Cambodian corporate conglomerate that operated dozens of business entities, including Prince Real Estate Group. *Id.* ¶¶ 15, 16(r). While ostensibly focused on real estate development, financial services, and consumer services, Prince Group, under Chen's direction, made enormous profits for Chen and his associates by operating forced-labor scam compounds across Cambodia that engaged in

1

cryptocurrency investment fraud schemes and used its vast network of seemingly legitimate business enterprises to launder its criminal proceeds. *Id.* ¶ 15.

Pursuant to Rule G(4)(a)(iv)(C), the government published notice of this action on its official forfeiture website, advising that the deadline to file claims for potential claimants who did not receive direct notice is 60 days from the first day of publication (October 16, 2025), i.e. December 15, 2025. Ex. A.[1] By Order dated December 11, 2025, the Court extended that deadline to December 29, 2025. Dkt. Entry Dec. 11, 2025.

On December 29, 2025, Claimant, proceeding *pro se*, submitted a 72-page claim (the "Claim") asserting that she had been fraudulently induced to transfer funds to a wrongdoer. ECF No. 39 ("Cl.").[2] Specifically, Claimant asserts that she "lost [her] entire 36 years life savings to a con artist" after, "[u]nder his influence, [she] wired all of [their] savings to a fraudulent exchange" that then "would not allow [her] to withdraw [her] money." *Id.* at 16. According to the Claim, that exchange "is believed to be an instrumentality of the Prince Holding Group." *Id.* at 11; *see also id.* at 13 (same).[3] Notwithstanding her occasional characterization of the crime as a theft, *see, e.g.*, *id.* at 2 (alleging "a permanent theft"); *id.* at 16 (referring to a "theft"), the Claim makes clear that Claimant alleges she is the victim of fraud, *see, e.g.*, *id.* at 11 (referring to "the fraudulent transfer of [her] assets through the [fraudulent exchange]"); *id.* at 13 (same); *id.* at 18

---

[1]     A copy of this notice is attached as Exhibit A.

[2]     Although Claimant has made more than 55 submissions to date, including at least two other documents identified as a "verified claim," *see* ECF Nos. 152, 342, the government takes her initial, timely filing as her verified claim for purposes of Rule G and liberally construes the assertions set forth therein, *cf. Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (recognizing that *pro se* litigants must be accorded "special solicitude").

[3]     Citations to text from the Claim and other of Claimant's filings are reproduced verbatim except where otherwise noted, with the exception that boldface has been removed throughout.

2

(describing her "pecuniary loss suffered as a victim of the [State: Pig Butchering Crypto Fraud]" (*sic*; brackets in original)).[4]  The Claim asserts that Claimant suffered a total of approximately $1.1 million as direct and incidental results of the fraudulent scheme, and Claimant asks that these "losses be satisfied from the $15.4 billion in seized assets," i.e., the Defendant Cryptocurrency. *Id.* at 2.

On January 29, 2026, Claimant filed an answer (the "Answer") to the Complaint that provided no further information about her asserted interest in the Defendant Cryptocurrency. ECF No. 143.  She stated that she "is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the 'Prince Group' or the criminal conduct occurring between 2021 and 2024, and therefore denies them." *Id.* ¶ 1.  She also "specifically DENIES that the Defendant [Cryptocurrency] is 'proceeds' of any crime." *Id.* ¶ 2.

By letter dated February 27, 2026, the government requested that the Court enter a proposed briefing schedule without a hearing or, should the Court prefer, hold a pre-motion conference with respect to certain anticipated motions to strike.  ECF No. 262.  By Order dated March 9, 2026, the Court advised that a pre-motion conference was unnecessary and entered a briefing schedule.  Dkt. Entry Mar. 9, 2026.  This motion follows.

APPLICABLE LAW

I.      Standard for Reviewing *Pro Se* Filings

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed.*

---

[4]      So-called "pig-butchering" scams are cyber-enabled cryptocurrency investment fraud schemes in which malicious actors contact unwitting victims through messaging or social media applications and convince them to transfer cryptocurrency or other funds to specified accounts based on false promises that the funds would be invested and generate profits.  In reality, the funds are misappropriated from the victims and laundered for the benefit of the perpetrators.

3

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics in original) (internal quotation marks omitted). However, "[i]t is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *cf. Cobar v. Drug Enf't Admin. Asset Forfeiture Section*, 2014 WL 1303110, at \*6 (S.D.N.Y. Mar. 31, 2014) ("[T]he liberal pleading standard accorded to pro se litigants is not without limits, and all normal rules of pleading are not absolutely suspended." (internal quotation marks omitted)), *aff'd sub nom. Cobar v. Drug Enf't Admin.*, 600 F. App'x 31 (2d Cir. 2015).

II.     Standing in Civil Forfeiture Actions

In order to assert a claim over property that is subject to a civil forfeiture action, a claimant "must have both standing under the statute or statutes governing [its] claims *and* standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (emphasis added); *see also, e.g.*, *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025); *United States v. Technodyne*, 753 F.3d 368, 380 (2d Cir. 2014). Standing is "a prerequisite to challenging the forfeiture," *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014); *accord United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (1st Cir. 2013) ("Standing is a threshold consideration in all cases, including civil forfeiture cases."); *United States v. $38,570 in U.S. Currency*, 950 F.2d 1108, 1111–13 (5th Cir. 1992) ("Unless claimant can first establish his standing he has no right to put the government to its proof."), and the burden of proof to establish standing rests with the claimant, *Mercado v. United States Customs Service*, 873 F.2d 641, 644 (2d Cir. 1989); *United States v. The*

*M/Y Amadea*, 770 F. Supp. 3d 558, 606 (S.D.N.Y. 2025).[5] "Without standing, the claimant lacks the right to bring any motion, regardless of the basis." *Vazquez-Alvarez*, 760 F.3d at 197.

A.    Constitutional Standing

To establish constitutional standing, a claimant must demonstrate (1) an injury-in-fact; (2) that is fairly traceable to the complained-of conduct; and (3) that can likely be redressed by a favorable decision. *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015); *In re 650 Fifth Ave. & Related Props.*, 2013 WL 4572527, at \*4 (S.D.N.Y. Aug. 27, 2013), *aff'd*, 581 F. App'x 61 (2d Cir. 2014); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In forfeiture cases, this typically requires the claimant to establish an ownership or possessory interest in the specific property at issue. *See Cambio Exacto*, 166 F.3d at 527; *In re 650 Fifth Ave.*, 2013 WL 4572527, at \*4; *cf. United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004) (finding that standing in a civil forfeiture action requires a showing of an ownership interest in the forfeited property, not merely a right to payment). In this context, "an interest 'in' property must be an interest in *a particular, specific asset*, as opposed to a general interest in an entire forfeited estate or account." *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997) (emphasis added). "[A] bare assertion of ownership of the res, without more, is inadequate to prove an ownership interest sufficient to establish standing." *Olivo v. United States*, 1997 WL 23181, at \*7 (S.D.N.Y. Jan. 22, 1997) (internal quotation marks omitted).

---

[5]    The goal of this requirement is "to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." *United States v. $557,993.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002) *cf. Mercado*, 873 F.2d at 645 (recognizing "a substantial danger of false claims in forfeiture proceedings"); *United States v. $421,090.00 in U.S. Currency*, 2011 WL 3235632, at \*4 (E.D.N.Y. July 27, 2011) (noting "the likelihood of false claims of ownership in civil forfeiture actions—where the government must publish notice of the proceedings—is high").

An "unsecured creditor," also referred to as a "general creditor," is an individual or entity to whom money is owed but who "takes no right against specific property of the debtor." *United States v. Madoff*, 2012 WL 1142292, at *4 (S.D.N.Y. Apr. 3, 2012) (internal quotation marks omitted); *cf.* 28 C.F.R. § 9.2(g) (defining "general creditor" in the context of remission or mitigation of forfeitures as "one whose claim or debt is not secured by a specific right to obtain satisfaction against the particular property subject to forfeiture").  In civil forfeiture actions, an unsecured creditor "does not possess a legal right, title, or interest in the property that [is] forfeited as required for standing." *DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (internal quotation marks omitted); *accord United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994) (explaining that "the federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property" because they "cannot claim an interest in any particular asset").

Where a fraud victim transfers money to a wrongdoer, the money becomes the wrongdoer's property (as opposed to the victim's), and the victim becomes an unsecured creditor of the wrongdoer, even if she can trace her money to the property being forfeited.  *See, e.g.*, *United States v. $16,816.30 in Funds Maintained in Bank of Am. Acct. No. xxxxxxxxxxxx, Held in Name of B.V. Ventures*, 2023 WL 6613774, at *2 (N.D. Ga. Sept. 28, 2023) (finding that victim of fraudulent "robocalling" scams lacked standing to contest forfeiture of wrongdoer's seized property because victim "has no more of a legal right to the funds in the [a]ccount than anyone else because forfeiture proceeds are not intended to compensate victims in the first instance"); *United States v. Hoffman*, 2012 WL 5351797, at *2 (D. Minn. Oct. 30, 2012) (concluding that victims who loaned money to perpetrators of a mortgage fraud scheme lacked standing because, regardless of whether they could "show that [their money] was used to perpetrate the fraud," they

6

"voluntarily transferred" that money and thus relinquished their "legal or possessory title"); *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009) (finding victims of fraudulent investment schemes that promised significant returns for "each purchase" lacked standing to contest forfeiture of seized funds because "[f]raud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property" but "instead . . . acquire a debt against their wrongdoers").

This is not to say that the fraud victim lacks a *moral* claim on the wrongdoer's assets or that fraud victims lack legal means to make their injuries whole. Fraud victims may seek redress through the remission process, as described below in Part IV. But, for the reasons discussed below, challenging the government's forfeiture complaint is not the proper vehicle to assert that interest. Put differently, the government vindicates fraud victims' interests; it does not compete with them.

Notably, the law makes an important distinction regarding the nature of the victims seeking to contest forfeiture. Victims of theft or embezzlement—whose property is taken from them without their knowledge and against their will—generally have constitutional standing because they at all times retained ownership of their property. *See, e.g.*, *United States v. $7,599,358.09*, 953 F. Supp. 2d 549, 556 (D.N.J. 2013) (finding company from which fraud proceeds were wrongfully diverted had standing). On the other hand, victims of fraud—who are induced under false pretenses to transfer their property to another—relinquish ownership of their property to wrongdoers and, as a result, lack constitutional standing to contest the forfeiture of that property. *See, e.g.*, *Hoffman*, 2012 WL 5351797, at *2. By way of example, a person whose money is stolen from his bank account by a thief who obtained his account name and password would have standing to contest the civil forfeiture of the money when it is recovered

7

from the thief.  In contrast, a person induced to transfer money from his bank account in response to a solicitation to engage in a fraudulent investment would not.  Where, as here, a fraud victim transfers funds to an account—or cryptocurrency wallet—operated by the wrongdoer but that the victim believes he still retains a right to control, the victim is no less of an unsecured creditor for that, because title to the funds "passe[d] immediately" to the wrongdoer once the transfer is made. *See, e.g.*, *United States v. BCCI Holdings (Luxembourg), S.A.*, 814 F. Supp. 106, 109 (D.D.C. 1993) (finding persons who had deposited funds at a bank to be general creditors of the bank who lacked a cognizable interest in forfeited funds because once a deposit is made, "title to the deposited funds passes immediately to the bank" (citing, *inter alia*, *Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327, 330 (2d Cir. 1992)); *cf. Peoples Westchester*, 961 F.2d at 330 (explaining that a person who deposits his money in a bank account is presumed to be a general creditor of the bank because, in making the deposit, he transfers title to the money to the bank).

      B.      <u>Statutory Standing</u>

In addition to constitutional standing, a claimant also must establish statutory standing by following the procedural requirements set forth in Rule G.  *See Cambio Exacto*, 166 F.3d at 526.  "[S]trict compliance . . . is typically required."  *United States v. Conolly*, 694 F. App'x 10, 13 (2d Cir. 2017) (quoting *Cambio Exacto*, 166 F.3d at 529); *see also United States v. $27,601.00 U.S. Currency*, 800 F. Supp. 2d 465, 467 (W.D.N.Y. 2011) ("Courts generally expect claimants to adhere strictly to those requirements." (internal quotation marks omitted)); *accord United States v. Approximately $3,275.20 Seized From Bank of Am. Acct. No. XXXXXXXXXXX*, No. 24-14253, 2025 WL 3565098, at *3 (11th Cir. Dec. 12, 2025) ("Courts consistently require claimants to follow the language of the Supplemental Rules to the letter." (internal quotation marks omitted)); *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 665 (3d Cir. 2007)

8

("Courts have repeatedly emphasized that forfeiture claimants must strictly adhere to the filing requirements to perfect standing."), *as amended* (May 14, 2007).

This is because statutory standing is not merely a technicality but rather a critical tool in providing clarity, ensuring fairness, and protecting judicial resources throughout civil forfeiture cases. Thus, "the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently," *United States v. All Assets Held at Bank Julius Baer & Co.*, 664 F. Supp. 2d 97, 101 (D.D.C. 2009), including by "require[ing] claimants to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay," *United States v. Contents of Acct. No. 901121707*, 36 F. Supp. 2d 614, 616 (S.D.N.Y. 1999) (internal quotation marks omitted)), and requiring an answer in which "claimant[s] . . . state defenses and admit or deny the allegations in the government's complaint," so "the government can[ ] know what issues to prepare for trial," *$3,275.20*, 2025 WL 3565098, at *3. As the Second Circuit has observed, the "purpose" of Rule G "would be thwarted if claimants came to view the strictures of Rule G as mere suggestions rather than as rules that will presumptively be enforced." *United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17, 19–20 (2d Cir. 2017); *cf. Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003) ("[T]he legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.").

Where a potential claimant has not received direct notice of a forfeiture action from the government, he or she has 60 days after the government commences a forfeiture proceeding to

9

assert an interest in the defendant property, provided it published notice of its forfeiture proceeding "on an official internet government forfeiture site."  R. G(5)(a)(ii)(B).  Then, "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim."  *Id.* (5)(b).

As relevant here, Rule G requires that a claim "identify the specific property claimed" and "state the claimant's interest in the property."  R. G(5)(a)(i)(A)–(B).  "A person seeking to challenge forfeiture therefore lacks statutory standing if he or she has not filed a claim pursuant to Rule G(5)."  *Conolly*, 694 F. App'x at 13.  Of note, blanket assertions of ownership are insufficient to identify a claimant's interest in the property to be forfeited.  *See, e.g.*, *United States v. $100,348.00 in U.S. Currency*, F.3d 1110, 1118–19 (9th Cir. 2004) (underscoring that "the danger of false claims in [civil forfeiture] proceedings is substantial" and therefore requiring that claimants provide "more than conclusory or hearsay allegations of some 'interest' in the forfeited property" (alteration and internal quotation marks omitted)); *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 563 (D. Md. 2013) (explaining that "a bald assertion of ownership is insufficient to comply with [Rule G]" in part because "[c]ivil forfeiture cases are *in rem* proceedings in which anyone could conceivably file a claim to the defendant property" (internal quotation marks omitted)); *United States v. $39,557.00, More or Less, in U.S. Currency*, 683 F. Supp. 2d 335, 339 (D.N.J. 2010) (concluding that a claimant's "bald assertion of ownership" "fail[ed] to sufficiently identify [his] interest in the currency [to be forfeited]").

"A single deviation from [Rule G]'s requirements deprives a claimant of statutory standing."  *United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 349 (6th Cir. 2017).  Thus, where a claimant fails to comply with any of these procedural dictates, the claim and answer should be stricken for lack of statutory standing.  *See, e.g.*, *Cambio Exacto*, 166 F.3d at 526; *United States*

10

*v. Premises & Real Prop. with all Bldgs., Appurtenances, Improvements, Located at 509 Raspberry Patch Drive, Rochester, N.Y.*, 116 F. Supp. 3d 190, 193 (W.D.N.Y. 2015).

III.     Motion to Strike a Claim or Answer Under Rule G(8)(c)

"[T]he government may move to strike a claim or answer" at "any time before trial" on the basis that "the claimant lacks standing." Supp. R. G(8)(c)(i)(B). Such a challenge to a claimant's standing "may be presented as a motion for judgment on the pleadings," Supp. R. G(8)(c)(ii)(B), which, in turn, is governed by Rule 12(c) of the Federal Rules of Civil Procedure, *United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, 2015 WL 5178121, at \*5 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Generally speaking, a Rule 12(b)(6) motion to dismiss should be granted if the complaint does not "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025). However, "[i]n making that assessment, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Twombly*, 550 U.S. at 555).

11

IV.    The Remission Process

As discussed above, victims of fraud lack standing to contest the forfeiture of a wrongdoer's property. Yet such victims are not without remedy.[6] Instead of contesting forfeiture actions, victims rely on the government's power to recover illicit proceeds from wrongdoers, and then on the government's authority, pursuant to 18 U.S.C. § 981(e)(6), the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), to remit forfeited funds to victims once the civil forfeiture action is complete. *See, e.g.*, *$7,599,358.09*, 2011 WL 3611451, at *4 (finding that fraud victims were unsecured creditors who thus lacked standing to contest the forfeiture action and noting they instead could file remission petitions with the Attorney General); *8 Gilcrease*, 641 F. Supp. 2d at 6 (explaining that fraud victims lacked standing to contest the forfeiture of the wrongdoer's property in the forfeiture proceeding but "are not without remedy" and could file remission petitions with the Attorney General); *cf. United States v. Schwimmer*, 968 F.2d 1570, 1584 (2d Cir. 1992) (referring to similar RICO criminal forfeiture provisions as "a statute that states that the Attorney General, and not the judiciary, shall make decisions about how to divide up the funds in order to compensate victims" and explaining "[b]ecause Congress has chosen to allocate to the Attorney General the power to remit funds for victim compensation, it is inappropriate . . . to relax conceptions of property rights in order to permit courts to compensate victims"). As the First Circuit explained, "Congress has provided for justice a different way: it has provided that the Government, which stands for all the citizens, may take the criminal's property by forfeiture" and

---

[6]    Indeed, undersigned counsel understands that the United States Secret Service—referenced in some of Claimant's submissions, *see, e.g.*, ECF No. 153, ¶ 1—has discussed the remission process with Claimant directly, as has the Victim Witness Unit of the United States Attorney's Office for the Eastern District of Texas—also referenced in some of Claimant's submissions, *see, e.g.*, Cl. at 3. Moreover, Claimant has, in fact, submitted a remission petition. *See* ECF No. 104; *cf.* Cl. at 11 (referencing her "Petition for Remission, originally mailed on December 5, 2025").

has authorized the victims to petition the Attorney General for remission.  *United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 45 (1st Cir. 2003).

Were it otherwise, each court adjudicating forfeiture actions "would be converted into a bankruptcy court," which "appears patently at odds with the statutory scheme, which directs parties without an interest in specific property to seek relief from the Attorney General, not the court adjudging the forfeiture."  *United States v. Watkins*, 320 F.3d 1279, 1283 (11th Cir. 2003) (alteration and internal quotation marks omitted).  Moreover, there would be substantial risk of unfairness in allowing one victim to recover assets that are the subject of a forfeiture proceeding to the detriment of other victims of the same criminal scheme.  *See, e.g.*, *United States v. Burke*, 2014 WL 11381556, at *3 (N.D. Ala. July 15, 2014) (underscoring the "proper legal remedy as a crime victim is to seek remission" and explaining "the use of those procedures will ensure that all similarly-situated victims are treated equally, with no one victim's claim elevated above that of the others"); *cf. United States v. Ramunno*, 599 F.3d 1269, 1275 (11th Cir. 2010) ("[E]quity demands that no victim be given priority over any other similarly situated victim.").  As the court noted in *8 Gilcrease*:

> If persons with civil causes of action against wrongdoers had the right to litigate their claims in forfeiture proceedings, forfeiture cases would become forums for general civil litigation of all manner of claims involving wrongdoers. Forfeiture would cease to be an effective tool of federal law enforcement; federal prosecutors would, in every case, have to weigh the benefits of pursuing assets and seeking their forfeiture against the prospect of being dragged into potentially unlimited civil litigation over torts, contracts, and other theories of liability beyond the ken of federal law enforcement.
>
> The remedies available under CAFRA are designed to prevent this by compensating crime victims without added burdens on the civil litigation system.

641 F. Supp. 2d at 6.

DISCUSSION

Pursuant to Rule G(8)(c)(ii)(B), the government submits this motion for judgment on the pleadings to strike the Claim and Answer because they fail to allege facts that, even if true, would be sufficient to establish constitutional or statutory standing to contest the instant forfeiture action.

To be clear, the government is sympathetic to Claimant's plight. But, as a matter of law, this victim of fraud lacks constitutional standing because she did not retain a legal interest in her funds once she transferred those funds, and she lacks statutory standing because the Claim fails to adequately state her interest in the Defendant Cryptocurrency and identify the specific property claimed, and the Answer is time-barred.

While Claimant may obtain relief, it is not by contesting the government's forfeiture in this case. The government, in moving to strike the Claim and Answer, seeks to ensure that the division of the Defendant Cryptocurrency will be fair and equitable among all demonstrated victims of Chen's crimes after the Defendant Cryptocurrency is forfeited.

Moreover, although the government accepts as true the assertions in the Claim for purposes of this motion, *see, e.g.*, *Xeriant*, 141 F.4th at 411, it bears noting that there is substantial disagreement among the assertions made by Claimant in her various filings. Certain of those submissions refer to nonexistent documents. *See, e.g.*, ECF No. 339, at 1 (accusing the government of "fraud and lack of candor" for filing a purported declaration asserting that Claimant's assets are "linked to 'terrorism,'" although no such declaration has been filed). Other filings present narratives that sharply diverge from the assertions in the Claim. *See, e.g.*, ECF No. 177, at 5 (asserting that the government seized funds from Claimant's retirement account). Still others appear to contain interpolations from a source other than Claimant, urging unsupported factual

14

theories. *See id.* at 1 (stating, "[t]he DOJ is trying to claim this is all 'old money' from 5 years ago to get your claim dismissed" but "your evidence provide proves the opposite"); Cl. at 7 ("They are desperate because the money you just summarized above is no longer theirs—it's officially being moved into the fund for your May 2026 payout."). The government's arguments below, in attempting to construe and respond to a single coherent version of Claimant's allegations, potentially overstate the cohesiveness of those allegations.

I.      Claimant Lacks Constitutional Standing

Claimant lacks constitutional standing because once she parted with her funds—even under fraudulent inducement—she relinquished any legal interest in that property, which instead became the wrongdoer's. She thus is not an owner with a cognizable interest in the Defendant Cryptocurrency and, as a result, cannot contest the civil forfeiture here.

As noted above, the asserted basis for the Claim is that Claimant deposited funds in what she believed to be a legitimate cryptocurrency exchange, but which was in fact a malicious platform operated by a bad actor who stole her money. Cl. at 16. Claimant—in her own words—is "a victim of . . . Pig Butchering Crypto Fraud," who was fraudulently induced to voluntarily transfer money to a cryptocurrency platform operated by a wrongdoer. *Id.* at 16. At the core of that narrative is a voluntary transfer, a conscious decision to move money onto the purported investment platform, which deprives Claimant of standing in this civil forfeiture action. Indeed, though the Claim at times characterizes the crime as a theft, *see, e.g.*, *id.* at 2; *id.* at 16, saying it does not make it so, and the Court need not credit a "legal conclusion couched as a factual allegation." *Buon*, 65 F.4th at 76 (quoting *Twombly*, 550 U.S. at 555); *see also Okoh v. Sullivan*, 441 F. App'x 813, 813 (2d Cir. 2011) ("Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" (quoting *Iqbal*, 556 U.S. at

15

678)).    The Court should instead look to the underlying facts stated in the Claim, which, as described above, amount to a voluntary transfer of assets.

Thus, accepting as true the factual allegations contained in the Claim, Claimant is a victim who has been defrauded, not an owner with a cognizable interest in the Defendant Cryptocurrency. *See, e.g.*, *United States v. Eldick*, 223 F App'x 837, 839–40 (11th Cir. 2007) (finding that fraud victim who alleged he "'owned' [the forfeitable properties] at the time they were fraudulently converted" had no legally cognizable interest in the properties and therefore lacked standing to contest the forfeiture in the ancillary proceeding); *B.V. Ventures*, 2023 WL 6613774, at *2; *Hoffman*, 2012 WL 5351797, at *2 (concluding that victims of a mortgage fraud scheme "d[id] not . . . maintain legal or possessory title" to their funds and thus "lack standing based on their victim status").    Once Claimant transferred her funds to the fraudulent cryptocurrency platform, title passed immediately to the platform—i.e., to the wrongdoer—just as "title to . . . deposited funds passes immediately to the bank" once a deposit is made into a bank account, regardless of whether the depositor believes he still can control, or in fact controls, the funds. *BCCI Holdings*, 814 F. Supp. at 109.  In *BCCI Holdings*, where the bank was convicted of crimes and the bank's money was forfeited, the district court found that depositors were unsecured creditors of the bank and, as a result, lacked standing to contest the forfeiture. *Id.*  It makes no difference that each depositor presumably had control over the bank account in which he deposited funds and was able to withdraw money from it (until the bank's money was seized by the government). *See generally id.*; *cf. United States v. Seventy-Three Thousand Eight Hundred Forty-Four Dollars ($73,844.00) in U.S. Currency*, 2016 WL 3165626, at *4 (E.D. Mich. June 7, 2016) (recognizing that a claimant without an expectation that her exact contributions would be returned to her is an unsecured creditor).  The same is true here: Claimant is an unsecured creditor of the

16

wrongdoer, irrespective of whether she believed she owned and controlled the wallet to which she transferred her funds.  As a result, notwithstanding her "bare assertion[s] of ownership," *Olivo*, 1997 WL 23181, at *7, this victim of fraud is an unsecured creditor without standing to contest the forfeiture, *even if* she is able to trace her loss to the Defendant Cryptocurrency, *see, e.g.*, *B.V. Ventures*, 2023 WL 6613774, at *2 (granting motion to strike fraud victim's claim and answer for lack of standing because the fraud victim was "divested of his ownership interest by the fraudster and is merely an unsecured creditor" (alteration and internal quotation marks omitted)); *cf. Disner v. United States*, 888 F. Supp. 2d 83, 88 (D.D.C. 2012) ("[A] fraud victim who voluntarily transfers property to a wrongdoer does not retain a legal interest in the property; instead, the victim becomes a creditor of the wrongdoer."), *aff'd*, 2013 WL 1164502 (D.C. Cir. Feb. 20, 2013); *United States v. $58,000.00 in U.S. Currency*, 2012 WL 2884697, at *3 (W.D.N.C. July 13, 2012) ("Persons including fraud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property; instead, *such victims acquire a debt against their wrongdoers*." (alteration and internal quotation marks omitted) (emphasis in original)).

The Claim and Answer, therefore, should be dismissed.  *See, e.g.*, *United States v. $10,000 in U.S. Currency*, 2020 WL 5757471, at *5–6 (N.D.N.Y. Sept. 28, 2020) (striking claim and answer where the claimant "demonstrate[d] a general unsecured interest in [the property]" but did not establish standing to challenge the forfeiture action); *United States v. All Right, Title & Int. in Real Prop., Appurtenances, & Improvements Known as 479 Tamarind Drive, Hallandale, Fla.*, 2005 WL 2649001, at *4 (S.D.N.Y. Oct. 14, 2005) (granting the government's motion to dismiss on the basis that the claimants lacked standing to contest forfeiture).

II.    Claimant Lacks Statutory Standing

In addition to lacking constitutional standing, Claimant has failed to establish statutory standing because the Claim does not comport with Rule G(5)(a)'s requirements to "identify the specific property claimed" and "state [their] interest in the property," and Claimant did not timely file the Answer.

First, the Claim does not identify the specific assets claimed by Claimant at the 25 relevant virtual currency addresses identified in the Complaint, *see generally* Cl., instead merely asserting that the fraudulent exchange to which she transferred her funds "is believed to be an instrumentality of the Prince Holding Group," *id.* at 11; *see also id.* at 13 (same), and asking that her approximately $1.1 million in "losses be satisfied from the $15.4 billion in seized assets," *id.* at 2. This claim to a generalized portion of the Defendant Cryptocurrency is insufficient under the plain terms of Rule G, *see id.*, and the Answer contains no additional information or clarification as to which of the Defendant Cryptocurrency she claims, *see generally* ECF No. 143. Claimant, therefore, has failed to "identify the *specific* property claimed," as required. R. G(5)(a)(i)(A) (emphasis added); *cf. $822,694.81*, 2015 WL 13765353, at *2 (underscoring that a claimant must "assert[ ] an interest in the *actual* property sought to be forfeited" to establish statutory standing (emphasis added)). This stark "deviation" from the requirements of Rule G, in and of itself, "deprives [Claimant] of statutory standing." *$31,000.00*, 872 F.3d at 349.

In addition, the Claim is silent as to the nature of Claimant's interest in the Defendant Cryptocurrency, *see generally* Cl., in contravention of the requirements of Rule G(5)(a), *see, e.g.*, *$487,825.000*, 484 F.3d, at 665 (finding a purported claim to be deficient because it "contain[ed] no description of [the claimant's] interest in the property"). But even liberally construing the pleading to assert a direct ownership interest in the Defendant Cryptocurrency, *see*

18

*Triestman*, 470 F.3d at 474, it is well established that "threadbare assertions [of ownership] fail to comport with . . . Rule G(5)(a)'s requirement that claimants state their 'interest in the property," *United States v. $115,413.00 in U.S. Currency*, 770 F. Supp. 3d 862, 873–74 (E.D.N.C. 2025) (finding claimant lacked statutory standing (citing R. G(5)(a)(i)(B))); *see also, e.g.*, *$104,250.00*, 947 F. Supp. 2d at 563; *$39,557.00*, 683 F. Supp. 2d at 339.  Claimant has not adequately "state[d] [her] interest in the property" at issue, R. G(5)(a)(i)(B), and, as a result, lacks statutory standing.

Finally, Claimant filed the Answer 31 days after filing the Claim, in violation of the Rule G(5)(b)'s 21-day deadline.  The notice published by the government in this case clearly set forth the deadlines for filing a claim and an answer, *see* Ex. A, at 2, and Claimant had actual notice of the deadline for timely filing an answer as evidenced by her timely filing of the Claim.  Although Claimant is proceeding *pro se*, her numerous filings in this case further confirm her attentiveness to the litigation.  As a result of her failure to timely file an answer, Claimant lacks statutory standing on this additional ground.  *See, e.g.*, *United States v. One 2011 Porsche Panamera*, 684 F. App'x 501, 506–08 (6th Cir. 2017) (affirming district court's decision to strike a claim and answer where claimants failed to file an answer within 21 days of filing their claims); *United States v. 524 Florence St., Kalamazoo, MI*, 698 F. Supp. 3d 1018, 1022–23 (W.D. Mich. 2023) (holding that *pro se* litigant answer who filed answer 15 days after the deadline "lack[ed] statutory standing to challenge the forfeiture"); *cf. United States v. $19,840.00 in U.S. Currency More or Less*, 552 F. Supp. 2d 632, 635–36 (W.D. Tex. 2008) (granting the government's motion for default and final judgment of forfeiture where claimant timely filed claim but filed answer two days late).[7]

---

[7]    Regardless of whether the government was prejudiced by this untimeliness, "[a]llowing a late filing whenever the government would not be prejudiced would subvert the strict

Because Claimant lacks statutory standing on all these bases, the Claim and Answer should be dismissed on this basis as well. *See, e.g.*, *$115,413.00*, 770 F. Supp. 3d at 874 (striking claim where claimant failed to state his "interest in the property" and thus lacked statutory standing); *524 Florence*, 698 F. Supp. 3d at 1022–23 (striking *pro se* litigant's answer filed 15 days after the deadline for lack of statutory standing).

---

time limits established by Supplemental Rule [G(5)] and encourage claimants to litigate every untimely filing in a forfeiture case." *Acct. No. 901121707*, 36 F. Supp. 2d at 618 (quoting *United States v. Borromeo,* 945 F.2d 750, 755 (4th Cir. 1991) (J. Wilkinson, concurring)); *see also, e.g.*, *United States v. Prop. Identified As $88,260.00 in U.S. Currency*, 925 F. Supp. 838, 842 n.15 (D.D.C. 1996) (same).

CONCLUSION

By moving to strike the Claim and Answer, the government seeks to ensure that the division of the Defendant Cryptocurrency will fairly and equitably compensate all victims of Chen's criminal network, with no victim's rights elevated above those of any other.

As set forth above, Claimant has failed to establish constitutional standing or statutory standing.  Accordingly, the Claim and Answer should be dismissed on the pleadings pursuant to Rule G(8)(c)(ii)(B).

Dated:      Brooklyn, New York
            March 30, 2026

                                        Respectfully submitted,

                                        JOSEPH NOCELLA, JR.
                                        United States Attorney


                            By:      /s/
                                     Alexander F. Mindlin
                                     Tanisha R. Payne
                                     Andrew D. Reich
                                     Benjamin L. Weintraub
                                     Rebecca M. Schuman
                                     Assistant U.S. Attorneys
                                     (718) 254-7000


                            By:      /s/
                                     Christopher B. Brown
                                     Deputy Chief
                                     National Security Cyber Section
                                     United States Department of Justice


cc:     Clerk of Court (RPK) (via ECF)
        Claimant Connie Wilson (via mail)

21