**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br> Plaintiffs,<br><br>v.<br><br>APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br> Defendants *In Rem*. | Civil Action No. 1:25-cv-05745 (RPK) |

**ANSWER TO VERIFIED COMPLAINT *IN REM***

Pursuant to Rule G(5)(b) of the Federal Rules of Civil Procedure, the Mark Claimants and Hirshfeld Claimants (the "Claimants") hereby answer the government's Verified Complaint *In Rem*, dated October 14, 2025 as follows:[1]

**NATURE OF THE ACTION**

1.      The Claimants admit the allegations in Paragraph 1, but deny that the United States has any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the Claimants in the Defendant Cryptocurrency.

2.      Paragraph 2 contains legal conclusions to which no response is required. To the extent a response is required, the Claimants deny that any of the authorities referenced in Paragraph 2 confer on the United States any right, title or interest in the Defendant

---

[1] A full list of Claimants is included as Exhibit 1.

Cryptocurrency that is superior to the right, title or interest of the Claimants in the Defendant Cryptocurrency.

## JURISDICTION AND VENUE

3. Paragraph 3 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the Claimants admit that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Paragraph 4 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the Claimants lack knowledge sufficient to admit or deny the allegation that acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## THE DEFENDANTS IN REM

5. The Claimants admit that the Defendant Cryptocurrency is the 127,271 Bitcoin that was once stored at the addresses listed in Attachment A to its Verified Complaint. The Defendant Cryptocurrency is owned by the Iran and China Investment Development Group ("Iran-China Group"), an Iranian joint-stock company doing business as LuBian that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions.

6. On information and belief, the Claimants admit the allegations in Paragraph 6.

## RELEVANT STATUTES AND REGULATIONS

**A.     Wire Fraud**

7. Paragraph 7 contains legal conclusions and describes a statute that speaks for itself, to which no response is required.

2

8. Paragraph 8 contains legal conclusions and describes a statute that speaks for itself, to which no response is required.

### B. Money Laundering

9. Paragraph 9 contains legal conclusions and describes a statute that speaks for itself, to which no response is required.

10. Paragraph 10 contains legal conclusions and describes a statute that speaks for itself, to which no response is required.

11. Paragraph 11 contains legal conclusions and describes a statute that speaks for itself, to which no response is required.

12. Paragraph 12 contains legal conclusions and describes a statute that speaks for itself, to which no response is required.

### C. Forfeiture Statutes

13. Paragraph 13 contains legal conclusions and describes a statute that speaks for itself, to which no response is required. To the extent a response is required, the Claimants deny that any of the statutory authorities referenced in Paragraph 13 confer on the United States any right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Claimants in the Defendant Cryptocurrency. To the contrary, by operation of the Terrorism Risk Insurance Act ("TRIA"), the Claimants, as Judgment Creditors of Iran, hold an interest in the Defendant Cryptocurrency superior to the claims of the Government, as well as all other non-TRIA claimants, in this forfeiture action.

14. Paragraph 14 contains legal conclusions and describes a statute that speaks for itself, to which no response is required. To the extent a response is required, the Claimants deny that any of the statutory authorities referenced in Paragraph 14 confer on the United States any

right, title, or interest in the Defendant Cryptocurrency that is superior to the right, title, or interest of the Claimants in the Defendant Cryptocurrency. To the contrary, by operation of TRIA, the Claimants, as Judgment Creditors of Iran, hold an interest in the Defendant Cryptocurrency superior to the claims of the Government, as well as all other non-TRIA claimants, in this forfeiture action.

## FACTS

### A.      Introduction

15.      The Claimants lack sufficient knowledge to admit or deny the allegations in Paragraph 15.

### B.      Relevant Individuals and Entities

16.      On information and belief, the Claimants admit that LuBian was the cryptocurrency mining pool and front for the Iran-China Group, an Iranian joint-stock company backed by Chinese investors that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions. The Claimants further admit that the Iran-China Group maintained a Bitcoin mining facility in Iran. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 16, including subsections (a) through (t) and (v) through (y).

### C.      Relevant Terms and Definitions

17.      The Claimants admit the allegations in subsections (d) through (l) of Paragraph 17. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 17, including subsections (a) through (c).

### D.      Criminal Schemes

#### I.      Background

18. The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 18.

19. Paragraph 19 purports to quote a document that speaks for itself, and no response is required. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 19.

20. The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 20.

## II.    The Fraud Schemes

21. The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 21.

### a.   The Scam Compounds

22. The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 22.

23. The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 23.

24. The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 24.

25. The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 25.

26. The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 26.

### b.   Use of Bribes and Violence in Furtherance of the Schemes

27.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 27.

28.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 28.

29.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 29.

30.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 30.

31.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 31.

c.   The Brooklyn Network

32.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 32.

33.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 33.

34.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 34.

35.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 35.

36.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 36.

37.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 37 and Footnote 2

###   III.    The Money Laundering Scheme

38.    The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 38.

39.    The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 39.

40.    The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 40 and Footnote 3.

41.    The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 41. Footnote 4 purports to quote a document that speaks for itself, and no response is required.

42.    On information and belief, the Claimants admit that the Iran-China Group doing business as LuBian operated a Bitcoin mining facility that "produced large sums of clean bitcoin dissociated from criminal proceeds." The Claimants also admit that this was the sixth largest Bitcoin mining operation in the world for some of the time it was active. On information and belief, the Claimants deny that the Iran-China Group was based in China, because the Iran-China Group was an Iranian joint-stock company funded by Chinese investors that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions, and LuBian was the name of its cryptocurrency mining pool. The Claimants deny any implication that Chen provided all of the financial support for the Iran-China Group's mining operations. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 42.

43.    On information and belief, the Claimants deny the implication that the wallets containing the Defendant Cryptocurrency were exclusively controlled by Chen, because the Iran-

7

China Group doing business as LuBian controlled the wallets containing the Defendant Cryptocurrency. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 43 and Footnote 5.

### E.     The Defendants *In Rem*

44.     On information and belief, the Claimants admit the allegations in Footnote 7 and that the government is seeking to forfeit Bitcoin that was stored at the 25 cryptocurrency addresses identified in the table following Paragraph 44. On information and belief, the Claimants deny that the table following Paragraph 44 accurately identifies the amount of Bitcoin stored at each address in December 2020, provides a complete list of all addresses containing the Iran-China Group's Bitcoin in December 2020, or identifies all of the Bitcoin owned by the Iran-China Group that is currently in the government's possession. The Claimants also deny that the Defendant Cryptocurrency comprises solely the proceeds of Chen's fraud packaged as heavily laundered cryptocurrency. On information and belief, at least 11,166.51 BTC of the Defendant Cryptocurrency are directly traceable to Bitcoin mined by the Iran-China Group's Rafsanjan mine, and all of the Defendant Cryptocurrency constituted the Iran-China Group's pool level reserve of Bitcoin. The Claimants further deny that the addresses are properly described as "Chen Wallets" to the extent it implies that all of the Defendant Cryptocurrency necessarily belonged to Chen. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 44 and Footnotes 6 and 7.

45.     On information and belief, the Claimants admit that at least some of the cryptocurrency addresses were funded using Bitcoin newly mined by the Iran-China Group doing business as LuBian. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 45 and Footnote 8.

8

46.     The Claimants deny that the addresses are properly described as "Chen Wallets" to the extent it implies that all of the Defendant Cryptocurrency necessarily belonged to Chen. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 46 and the following table.

47.     On information and belief, the Claimants admit that the four cryptocurrency wallet addresses listed in Cluster Index-4 as described in subsection (d) and Footnote 9 of Paragraph 47 were associated with the Iran-China Group doing business as LuBian and were funded at least in part using the newly mined proceeds of the Iran-China Group's Bitcoin mining operations. On information and belief, the Claimants deny any implication that the other cryptocurrency wallet addresses described in subsections (a) through (c) and (e) through (m) of Paragraph 47 were not associated with the Iran-China Group doing business as LuBian. On information and belief, to the contrary, all of the wallets described in Paragraph 47 were held by the Iran-China Group doing business as LuBian. On information and belief, the Claimants also deny that Paragraph 47 accurately identifies the total amount of Bitcoin stored at the address(es) constituting each Cluster in December 2020. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 47 and Footnote 9, including subparagraphs (a) through (m).

48.     On information and belief, the Claimants deny that all of the Defendant Cryptocurrency went "through a process of high-volume disaggregation and funneling" "across a complex network of hosted and unhosted cryptocurrency wallets," as at least some of the Defendant Cryptocurrency was Bitcoin that was newly mined by the Iran-China Group doing business as LuBian. The Claimants further deny that the addresses are properly described as "Chen Wallets" to the extent it implies that all of the Defendant Cryptocurrency necessarily belonged to

9

Chen. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 48.

49.     The Claimants deny that the addresses are properly described as "Chen Wallets" to the extent it implies that all of the Defendant Cryptocurrency necessarily belonged to Chen. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 49.

50.     On information and belief, the Claimants admit that the Defendant Cryptocurrency encompasses Bitcoin directly traceable to cryptocurrency that was newly mined by the Iran-China Group doing business as LuBian, though the Claimants calculate that number as encompassing at least 11,166.51 BTC. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 50.

51.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 51 and the accompanying chart.

52.     The Claimants deny that the addresses are properly described as "Chen Wallets" to the extent it implies that all of the Defendant Cryptocurrency necessarily belonged to Chen. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 52 and the accompanying diagrams.

53.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 53 and accompanying chart.

54.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 54.

55.     The Claimants deny that the addresses are properly described as "Chen Wallets" to the extent it implies that all of the Defendant Cryptocurrency necessarily belonged to Chen. The

Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 55, including subsections (a) through (g) and the accompanying diagram.

56.     The Claimants deny that the addresses are properly described as "Chen Wallets" to the extent it implies that all of the Defendant Cryptocurrency necessarily belonged to Chen. The Claimants lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 56 and the accompanying diagram.

57.     The Claimants lack knowledge sufficient to admit or deny the allegations in Paragraph 57.

58.     On information and belief, the Claimants admit the allegations in Paragraph 58.

**F.     Criminal and Regulatory Action**

59.     On information and belief, the Claimants admit the allegations in Paragraph 59, but deny any implication that they need a license from the United States Department of the Treasury's Office of Foreign Assets Control to attach and execute against the Defendant Cryptocurrency under TRIA.

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Proceeds Traceable to Wire Fraud)**

60.     Paragraph 60 contains no allegations to which a response is required. To the extent one is required, see paragraphs 1–59 alleged above.

61.     Paragraph 61 contains legal conclusions to which no response is required. To the extent a response is required, the Claimants deny that any of the allegations in Paragraph 61 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the Claimants in the Defendant Cryptocurrency.

62.     Paragraph 62 contains legal conclusions to which no response is required. To the extent a response is required, the Claimants deny that any of the allegations in Paragraph 62 confer

11

on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the Claimants in the Defendant Cryptocurrency.

## SECOND CLAIM FOR RELIEF
### (Property Involved in Money Laundering)

63.     Paragraph 63 contains no allegations to which a response is required. To the extent one is required, see paragraphs 1–62 alleged above.

64.     Paragraph 64 contains legal conclusions to which no response is required. To the extent a response is required, the Claimants also deny that any of the allegations in Paragraph 64 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the Claimants in the Defendant Cryptocurrency.

65.     Paragraph 65 contains legal conclusions to which no response is required. To the extent a response is required, the Claimants deny that any of the allegations in Paragraph 65 confer on the United States any right, title or interest in the Defendant Cryptocurrency that is superior to the right, title or interest of the Claimants in the Defendant Cryptocurrency.

## AFFIRMATIVE AND OTHER DEFENSES

The defenses asserted herein are based on the Claimants' knowledge, information, and belief at this time. The Claimants specifically reserve the right to assert additional affirmative defenses and other defenses and/or modify, amend, or supplement any defense contained herein at any time. Without admitting any of the facts alleged in the Complaint except as specifically set forth above, and without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of the government's claims, the Claimants assert the following affirmative and other defenses:

12

1. The Government's Complaint fails to provide adequate notice to the Claimants of their potential right to proceeds from the action.

2. The Claimants possess an interest in Defendant Cryptocurrency.

3. The Claimants possess an interest in the Defendant Cryptocurrency that is senior to the government's claim under TRIA, Pub. L. No. 107-297, § 201(a) (2002) (codified at 28 U.S.C. § 1610 note), notwithstanding the instant civil forfeiture action.

4. The Defendant Cryptocurrency constitutes a "blocked asset" under TRIA, by virtue of Executive Order 13,559, 77 Fed. Reg. 6659 (Feb. 5, 2012).

5. The Claimants are entitled to attach and execute upon the Defendant Cryptocurrency because they have satisfied TRIA. Specifically, the Claimants obtained judgments against the Islamic Republic of Iran based on an act of terrorism; the Defendant Cryptocurrency is blocked under the International Emergency Economic Powers Act including through Executive Orders issued thereunder; and the Defendant Cryptocurrency is owned by the Iran and China Investment Development Group, an agency or instrumentality of Iran.

6. The Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. Because of their claim under TRIA, the Claimants have a property interest in the Defendant Cryptocurrency governed by the Fifth Amendment. As a result, forfeiting the Defendant Cryptocurrency to the government without "due process of law" would violate the Claimants' rights under the Fifth Amendment.

7. The Fifth Amendment also provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Because of the Claimants' property interest in the Defendant Cryptocurrency, forfeiting that property to the government would result in a taking of their property without just compensation.

13

8.      To the extent the Defendant Cryptocurrency is not required to be transferred to the Claimants, it is required to be deposited into the United States Victims of State Sponsored Terrorism Fund. *See* 34 U.S.C. § 20144(e)(2)(A).

9.      The Claimants deny all allegations not expressly admitted herein and specifically reserve the right to amend this Answer, to raise additional defenses, cross-claims, and third-party claims not asserted herein as may be warranted by the revelation of information during further proceedings, and to pursue alternative remedies under civil forfeiture law.

## CROSS-CLAIMS AND COUNTERCLAIMS

The Claimants assert the following cross-claims and counterclaims (the "TRIA Claims") against the United States and all other claimants asserting an interest in the Defendant Cryptocurrency who appear in this action. The Claimants seek a declaration that, as a matter of New York and federal law, their claims are entitled to priority—in order to facilitate an equitable distribution among all Iran terror victims—over all competing claims for the purpose of execution and attachment, including but not limited to competing forfeiture claims, terrorism judgment creditors, execution creditors, and non-TRIA claimants, and allege as follows:

1.      This Court has jurisdiction over the TRIA Claims pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Supplemental Rule G.

2.      Venue is proper in this District because the TRIA Claims are ancillary to, and arise from, the same proceeding pending before this Court.

3.      The Claimants are judgment creditors of the Islamic Republic of Iran, holding final, unsatisfied judgments for damages arising from acts of state-sponsored terrorism.

14

4.     The defendants to the TRIA Claims include the United States and all other parties who assert any legal, equitable, possessory, property, or contingent interest in the Defendant Cryptocurrency.

5.     The TRIA Claims are asserted for the purpose of preserving the Claimants' priority rights in order to facilitate an equitable distribution among all Iran terror victims and do not seek adjudication of priority until the universe of legally permissible claimants in this action is established.

6.     Through the TRIA Claims, the Claimants do not assert any cause of action against the United States, or any foreign sovereign, other than execution against blocked assets as specifically permitted and authorized by TRIA, as set forth herein.

7.     The Claimants have filed a Verified Claim in this action and have already and/or will continue to pursue judicial authorization under 28 U.S.C. § 1610(c) to execute on their judgments.

8.     The Defendant Cryptocurrency constitutes blocked assets of Iran and/or its agency or instrumentality, and is therefore subject to execution and attachment by the Claimants pursuant to TRIA § 201.

9.     Multiple parties now assert competing interests in the Defendant Cryptocurrency, including the United States, other terrorism judgment creditors, and non-TRIA claimants.

### FIRST COUNT
**(Priority under CPLR 5234—Executions, as modified by CPLR 5240)**

10.    The Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

11.    Federal courts routinely apply state execution priority rules, including, but not limited to, CPLR 5234, in aid of federal execution proceedings.

15

12.     CPLR 5234(b) establishes a priority regime among judgment creditors executing on the same property, keyed to the time of delivery of execution, levy, and related enforcement steps as modified by CPLR 5240 that authorizes a "court . . . at any time" to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

13.     Under CPLR 5234(c), where executions are returned unsatisfied or partially satisfied, priority is preserved for creditors who first perfect execution rights as modified by CPLR 5240 that authorizes a "court . . . at any time" to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

14.     The Claimants have priority over competing judgment creditors under CPLR 5234, as modified by CPLR 5240, in order to facilitate an equitable distribution among all Iran terror victims.

15.     The Claimants have acted and will act diligently and in good faith to: (i) pursue authorization orders under 28 U.S.C. § 1610(c); (ii) assert their claims in this action; and (iii) pursue execution against the Defendant Cryptocurrency.

## SECOND COUNT
### (Priority under CPLR Article 62 – Attachment, as modified by CPLR 5240)

16.     The Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

17.     CPLR Article 62 governs prejudgment and post-judgment attachment and establishes priority based on the timing of attachment orders, levy, and perfection as modified by CPLR 5240 that authorizes a "court . . . at any time" to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

18. The Claimants' attachment rights arise from final judgments, New York law, statutory authorization under TRIA (including 28 U.S.C. § 1610 note), and judicial permission under FSIA § 1610(c).

19. The Claimants have priority over competing judgment creditors under CPLR 5234, as modified by CPLR 5240, in order to facilitate an equitable distribution among all Iran terror victims.

### THIRD COUNT
### (Priority under TRIA § 201)

20. The Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

21. TRIA § 201(a) provides that, "[n]otwithstanding any other provision of law," blocked assets of a terrorist party or its agency or instrumentality shall be subject to execution by holders of terrorism judgments.

22. TRIA's "notwithstanding" clause preempts inconsistent state and federal law, overrides competing claims not grounded in TRIA, and elevates qualifying terrorism judgment creditors over all non-TRIA claimants.

23. Federal courts have consistently recognized that TRIA creates a priority execution regime favoring holders of terrorism judgments over competing non-TRIA claimants.

24. Accordingly, even if competing claimants satisfy federal forfeiture and/or state-law execution or attachment requirements, their claims are subordinate to the Claimants' TRIA Claims.

### FOURTH COUNT
### (Declaratory Relief)

25. The Claimants restate and reallege the foregoing Paragraphs as if fully set forth herein.

17

26.     An actual and justiciable controversy exists concerning the relative priority of the parties' interests in the Defendant Cryptocurrency.

27.     The Claimants seek a declaration that: (i) they hold priority rights for execution and attachment purposes in order to facilitate an equitable distribution among all Iran terror victims; (ii) any competing executions and/or attachments are subordinate to their TRIA Claims; and (iii) any distribution of the Defendant Cryptocurrency must respect that priority.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and Rule G(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Claimants demand a trial by jury on all issues so triable.

## PRAYER FOR RELEF

WHEREFORE, the Claimants respectfully request that the Court:

28.     Order that judgment be entered in their favor and against Plaintiff and all other claimants in this action.

29.     Order that the Defendant Cryptocurrency be released from Plaintiff's custody and returned to the Claimants.

30.     Declare the Claimants' interests have priority over other parties for execution and attachment purposes under CPLR 5234, CPLR Article 62, CPLR 5240, TRIA § 201, FSIA § 1610, FSIA § 1610 note, and all other applicable laws, in order to facilitate an equitable distribution among all Iran terror victims.

31.     Declare that any competing executions, attachments, liens, or asserted interests are subordinate to the Claimants' rights for execution and attachment purposes.

18

32.     Order that the Defendant Cryptocurrency be preserved and maintained subject to the Court's jurisdiction, and that no distribution or disposition affecting the priority of claimants occur unless and until the Claimants' asserted statutory rights are adjudicated.

33.     In the alternative, the Court should declare that any forfeiture, remission, or other disposition of such assets must be deposited into the United States Victims of State Sponsored Terrorism Fund pursuant to the statutory scheme set forth in 34 U.S.C. § 20144(e), and that no disposition inconsistent with that statutory framework may occur.

34.     Order that the Claimants be awarded attorneys' fees and the costs of suit.

35.     Grant the Claimants such other and further relief as the Court deems just and proper.

Dated: April 14, 2026

*/s/ Robert A. Braun*_____
Robert A. Braun (Bar Code 5384748)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
(202) 408-4600
RBraun@cohenmilstein.com

*Counsel for All Claimants*

Paul G. Gaston (pro hac vice)
The Law Offices of Paul G. Gaston
1101 Connecticut Avenue, NW, Suite 450
Washington DC 20036
(202) 296-5856
paul@gastonlawoffice.com

*Counsel for Hirshfeld Claimants*

Asher Perlin (Bar Code 2712586)
LAW OFFICE OF ASHER PERLIN
4300 Biscayne Boulevard
Suite 203

19

Miami, Florida 33137
(786) 687-0404
asher@asherperlin.com

*Counsel for Mark Claimants*