# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

In re:

    **TERRORIST ATTACKS ON**
    **SEPTEMBER 11, 2001**

-------------------------------------------------------------X

**03-MD-01570 (GBD)(SN)**

**OPINION & ORDER**

```
┌──────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED: 4/14/2026        │
└──────────────────────────────┘
```

**SARAH NETBURN, United States Magistrate Judge:**

This document relates to:

    Ashton v. al Qaeda Islamic Army, No. 02-cv-06977
    Burlingame v. Bin-Laden, No. 02-cv-07230
    Bauer v. al Qaeda Islamic Army, No. 02-cv-07236
    Havlish v. Bin-Laden, No. 03-cv-09848
    Hoglan v. Islamic Republic of Iran, No. 11-cv-07550
    Ashton v. Kingdom of Saudi Arabia, No. 17-cv-02003
    Parker v. Islamic Republic of Iran, No. 18-cv-11416
    Dickey v. Islamic Republic of Iran, No. 18-cv-11417
    Anaya v. Islamic Republic of Iran, No. 18-cv-12341
    Chairnoff v. Islamic Republic of Iran, No. 18-cv-12370
    Ray v. Islamic Republic of Iran, No. 19-cv-00012
    Maher v. Islamic Republic of Iran, No. 20-cv-00266

The United States Government has seized approximately 127,271 Bitcoin (the "Bitcoin") with purported ties to the Islamic Republic of Iran ("Iran") and is holding the Bitcoin in the United States District Court for the Eastern District of New York (E.D.N.Y.). In response, numerous judgment holders with claims against Iran have filed cases in the E.D.N.Y. to satisfy their judgments through attachment or execution on the Bitcoin. In this district, many victims of the 9/11 Attacks and their family members hold judgments against Iran or its agencies and instrumentalities. Certain plaintiffs in this litigation (the "Plaintiffs")[1] filed ten motions, pursuant

---

[1] The Court refers to subgroups of the Plaintiffs by either their case name if they are all parties to the same member case (e.g., the "Havlish Plaintiffs"), see ECF No. 11458; or their family name if they are parties to multiple member cases (e.g., the "Breitweiser Plaintiffs"), see ECF No. 11710.

to 28 U.S.C. § 1610(c), to permit attachment and execution on the Bitcoin. See ECF Nos. 11458, 11461, 11465, 11470, 11676, 11679, 11710, 11711, 11712, 11819.[2]

Section 1610(c) is a procedural checkpoint for judgment holders wishing to pursue attachment and execution on the purported assets of their sovereign judgment debtors. Nearly all of the Plaintiffs establish the notice and timing requirements of § 1610(c), and the Court therefore grants these Plaintiffs certifications to pursue execution and attachment on the Bitcoin pursuant to § 1610(c). Two Plaintiffs have not provided the required diplomatic notes confirming that Iran received notice of their default judgments. The Court thus denies these two Plaintiffs' § 1610(c) motion without prejudice to their refiling with complete documentation. Some Plaintiffs also ask the Court to issue writs of execution on the Bitcoin. The Court denies this request on jurisdictional and procedural grounds.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background.

### I.    Litigation Against Iran

The Plaintiffs sued Iran, as well as certain political subdivisions, individual officials, agencies, and instrumentalities of Iran (together, the "Iranian Defendants"),[3] for providing material support to Al Qaeda for the 9/11 Attacks. The Plaintiffs brought their claims under the

---

[2] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

[3] The Iranian Defendants included (1) Ayatollah Ali Hoseini Khamenei, Supreme Leader of Iran; (2) Ali Akbar Hashemi Rafsanjani, Chairman, Expediency Discernment Counsel and former President of Iran; (3) Iran's Ministry of Information and Security; (4) the Islamic Revolutionary Guard Corps; (5) Iran's Ministry of Petroleum; (6) the National Iranian Tanker Corporation; (7) the National Iranian Oil Corporation; (8) the National Iranian Gas Company; (9) the National Iranian Petrochemical Company; (10) Iran Airlines; (11) Iran's Ministry of Economic Affairs and Finance; (12) Iran's Ministry of Commerce; (13) Iran's Ministry of Defense and Armed Forces Logistics; (14) the Central Bank of the Islamic Republic of Iran; and (15) Hezbollah. See ECF Nos. 2515 ¶¶ 36–65, 11459 at 4.

Foreign Sovereign Immunities Act ("FSIA"). <u>See</u> 28 U.S.C. §§ 1605A(c), 1605B(b). Neither Iran nor the Iranian Defendants have ever appeared to defend themselves. The Court has thus repeatedly held that it has jurisdiction over all the defendants, and that the Plaintiffs have sufficiently established Iran's and the Iranian Defendants' liability for the entry of default judgments. <u>See</u> 28 U.S.C. § 1608(e).

The attached Appendix lists, by § 1610(c) motion, the Plaintiffs' judgments against Iran and the Iranian Defendants (the "Iran Judgments").[4] The Plaintiffs' motions provided the information for the Appendix. All but two of the Plaintiffs have filed certified copies of the diplomatic notes confirming service of their Judgments on Iran and the Iranian Defendants, as applicable, through diplomatic channels. <u>See</u> Appendix (Columns F to J). Two Plaintiffs, Jacqueline Eaton-Garland and the Estate of Robert D. Eaton (collectively, the "Eaton Plaintiffs") have not obtained diplomatic notes confirming service of their two Iran Judgments. Accordingly, they request to withdraw their motion concerning their "2020 Judgment" (ECF No. 5452), but to proceed with respect to their "2016 Judgment" (ECF No. 3226) based on Iran's "actual notice" of that judgment. <u>See</u> ECF No. 11959.

## II.    The Plaintiffs' § 1610(c) Motions

The Plaintiffs' motions all request that the Court (1) determine that "a reasonable period of time has elapsed" since entry of the Plaintiffs' Iran Judgments and service of notices of these judgments on the defendants, 28 U.S.C. § 1610(c); and (2) authorize the Plaintiffs to pursue

---

[4] The Iran Judgments are, with one exception, all "final" for the purposes of judgment enforcement. <u>See</u> ECF Nos. 11878, 11879, 11940 (certifying Iran Judgments as final under Rule 54(b) and finding good cause for their registration in the E.D.N.Y.). One judgment for the <u>Ray</u> Plaintiffs partly resolves their claims against Iran. <u>See</u> ECF Nos. 10387 (order), 11129 (judgment). But the <u>Ray</u> Plaintiffs still gave proper notice to the Iran Defendants, as the Court discusses below. <u>See Ray</u>, No. 19-cv-00012, ECF No. 345. And § 1610(c) does not require a final, non-appealable judgment—only "the passage of reasonable time specifically tethered to the event of the *entry* of judgment." <u>Owens v. Republic of Sudan</u>, 141 F. Supp. 3d 1, 9 (D.D.C. 2015) (emphasis added) (finding requirements of § 1610(c) satisfied and authorizing plaintiffs' collection efforts). The <u>Ray</u> Plaintiffs may proceed for all their listed judgments.

attachment of, and execution against, the Bitcoin pursuant to the Terrorism Risk Insurance Act of

2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note). The

Court previously granted orders pursuant to § 1610(c) for certain Plaintiffs on their Iran

Judgments. For the Havlish Plaintiffs, the Court granted a § 1610(c) order to generally pursue

attachment and execution on any Iranian assets, as well as a specific order related to Bank

Markazi assets held by Clearstream. See ECF Nos. 2778 (general), 6134 (specific). Likewise, the

Court granted multiple § 1610(c) orders (general and specific to Bank Markazi assets) for the

Hoglan Plaintiffs. See ECF Nos. 6092, 6129.

The Court received many letters about the § 1610(c) motions from the Plaintiffs, the

Plaintiffs Executive Committee (the "PECs"), and other plaintiffs groups in this litigation. See

ECF Nos. 11473, 11477, 11480, 11479, 11667, 11702, 11708, 11801; Chairnoff, ECF No. 172.

In response to the Court's request, the United States filed a statement of interest on the motions.

ECF No. 11802. The U.S. Government opposes the Plaintiffs' motions on several grounds and

incorporates by reference its opposition, filed in the E.D.N.Y., to similar turnover actions and

emergency requests for writs of attachment on the Bitcoin. See ECF Nos. 11802 at 2–3, 11802-1

at 1. At the Court's direction, certain Plaintiffs supplemented their motions with additional

documents establishing service on Iran. See ECF Nos. 11882, 11892, 11893, 11894, 11895.

### III.    The Bitcoin Proceedings

The § 1610(c) motions coincided with activity in the E.D.N.Y. concerning the Bitcoin.

First, in 2025, the U.S. Government initiated a civil forfeiture proceeding for the Bitcoin after

seizing it in connection with criminal investigations for wire fraud and money laundering. United

States v. Approximately 127,271 Bitcoin, No. 25-cv-05745 (E.D.N.Y.) (the "Forfeiture Case").

Second, victims of non-9/11 terrorist attacks with judgments against Iran initiated two post-

judgment turnover proceedings. Fritz v. Iran & China Inv. Dev. Grp., No. 25-cv-07093

(E.D.N.Y.); <u>Relvas v. Iran & China Inv. Dev. Grp.</u>, No. 26-cv-00642 (E.D.N.Y.) (together with the <u>Forfeiture Case</u>, the "E.D.N.Y. Proceedings").

The Plaintiffs seek to satisfy their Iran Judgments with the Bitcoin. Some Plaintiffs are participating, or intending to participate, in the E.D.N.Y. Proceedings. <u>See, e.g.</u>, <u>Forfeiture Case</u>, ECF Nos. 163, 260 (verified claims of <u>O'Neill</u> Plaintiffs); <u>Fritz</u>, ECF Nos. 93, 94 (motions to intervene of <u>O'Neill</u>, Breitweiser Plaintiffs). Others intend to file separate turnover actions in the E.D.N.Y. <u>See</u> ECF No. 11667 at 2–3 (<u>Havlish</u>, <u>Hoglan</u>, <u>Ray</u> and <u>Maher</u> Plaintiffs). The Plaintiffs seek the Court's authorization under § 1610(c) to rely on their Iran Judgments in filing turnover actions or requests for writs of execution on the Bitcoin under the TRIA.

## DISCUSSION

Property in the United States of foreign states is typically immune from attachment, arrest, or execution. 28 U.S.C. § 1609. This "execution immunity" extends to the property of foreign states' political subdivisions and agencies or instrumentalities. 28 U.S.C. § 1603(a); <u>Walters v. Indus. & Com. Bank of China, Ltd.</u>, 651 F.3d 280, 287–88 (2d Cir. 2011). The property of Iran and the Iranian Defendants in the United States initially benefits from execution immunity. The FSIA, however, provides exceptions to this immunity under §§ 1610 and 1611. 28 U.S.C. §§ 1610, 1611; <u>see</u> <u>Havlish v. Taliban</u>, 154 F.4th 339, 352 (2d Cir. 2025) (reviewing the parts of the FSIA addressing execution immunity). The Plaintiffs contend that § 1610 authorizes their efforts to enforce the Iran Judgments. (No party suggests that § 1611 is relevant here.) The Court's analysis therefore involves three parts of § 1610.

First, the Plaintiffs request orders pursuant to § 1610(c). This subsection concerns the procedures for parties relying on certain immunity exceptions discussed below. It states:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c). The Plaintiffs contend that they have complied with all parts of this provision, and that the Court should allow them to pursue execution or attachment on the Bitcoin to hopefully satisfy their Iran Judgments.

Second, § 1610(c) references § 1610(a) and (b). These subsections together provide the general exceptions to execution immunity for property in the United States of foreign states or their agencies or instrumentalities. See Walters, 651 F.3d at 287–88 (explaining requirements of the exceptions in § 1610(a) and (b)). These exceptions include provisions authorizing execution and attachment of foreign-sovereign property when parties hold judgments for certain terrorism claims authorized by the FSIA. See 28 U.S.C. § 1610(a)(7), (b)(3) (citing 28 U.S.C. § 1605A). The FSIA rescinds "jurisdictional immunity" for state sponsors of terrorism (meaning they may be sued in the U.S. courts) on claims for "money damages . . . for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a), (c); see Havlish, 152 F.4th at 352 (jurisdictional immunity "operate[s] independently" from execution immunity). The Plaintiffs all hold final judgments for these types of terrorism claims, pursuant to 28 U.S.C. § 1605A, against Iran and the Iranian Defendants. See Appendix (Column E).

Third, § 1610(c) references § 1608(e), which concerns the service of judgments. Section 1608(e) requires that default judgment holders serve their judgments on foreign states, their political subdivisions, or their agencies and instrumentalities. See 28 U.S.C. § 1608(e) (copy of

default judgment must be sent to foreign State or political subdivision "in the manner prescribed for service in this section"); Murphy v. Islamic Republic of Iran, 778 F. Supp. 2d 70, 71 (D.D.C. 2011) ("Under the FSIA, entry of a default judgment against a foreign state or its instrumentalities must be accompanied by service of that judgment."). This service must comply with the methods prescribed in § 1608(a) for foreign states and their political subdivisions or § 1608(b) for agencies or instrumentalities. Each subsection lists a hierarchy of service methods in descending order of preference. 28 U.S.C. § 1608(a)(1)–(4); id. § 1608(b)(1)–(3). The Plaintiffs argue they provided notice of their judgments to Iran and the Iranian Defendants consistent with these service methods.

Given this background on the structure of §§ 1608 and 1610, the Court assesses whether all of the Plaintiffs have complied with each requirement of § 1610(c).

## I.  Section 1610(c) Requires Only Procedural Determinations About Notice and Timing

Section 1610(c) functions as a "mandatory" procedural checkpoint for judgment holders intending to pursue attachment or execution on any foreign assets.[5] Levin v. Bank of New York, No. 09-cv-5900 (RPP), 2011 WL 812032, at *7 (S.D.N.Y. Mar. 4, 2011). Before granting a § 1610(c) motion, the Court must make two findings: (1) that "any notice required under section

---

[5] Section 1610(c) references attachment and execution pursuant to § 1610(a) or (b), but it does not explicitly mention the TRIA. Courts have disagreed on whether judgment holders must receive § 1610(c) orders before seeking attachment or execution under the TRIA. Compare Levin, 2011 WL 812032, at *10 ("There is no indication in the text of TRIA or 1610 that TRIA was intended to eliminate 1610(c)'s court order requirement in the context of terrorist assets, and no evidence that Congress intended for TRIA to trump section 1610."), with Stansell v. FARC, 771 F.3d 713, 730 (11th Cir. 2014) (holding that § 1610(c) does not govern attachment and executions pursuant to TRIA § 201 because "§ 1610(c) governs attachments or executions referred to in subsections (a) and (b) of this section" (cleaned up)), and Havlish, 154 F.4th at 358 (all parties agreed that "[n]one of the exceptions in section 1610 apply" in appeal involving TRIA collection efforts). The Anaya/Chairnoff Plaintiffs acknowledge this tension in their motion and request a § 1610(c) order "out of an abundance of caution, in light of conflicting authority." ECF No. 11473 at 3. Because all the Plaintiffs request § 1610(c) orders, and thus suggest those orders are mandatory for their respective TRIA collection efforts in the E.D.N.Y., the Court assumes without deciding that the Plaintiffs require § 1610(c) orders to proceed.

1608(e) has been given," and (2) that "a reasonable period of time has elapsed following entry of judgment." Warmbier v. Democratic People's Republic of Korea, No. 18-cv-977 (BAH), 2019 WL 11276677, at *1 (D.D.C. Apr. 9, 2019) (quoting Baker v. Socialist People's Libyan Arab Jamahirya, 810 F. Supp. 2d 90, 101–02 (D.D.C. 2011)). A primary purpose of § 1610(c) is thus to ensure that foreign-sovereign defendants receive notice of default judgments against them and have "adequate opportunity to respond." Agudas Chasidei Chabad of U.S. v. Russian Federation, 798 F. Supp. 2d 260, 266–67 (D.D.C. 2011). Specifically, Congress intended the procedures mandated by § 1610(c) to ensure "sufficient protection" for foreign states as defendants in U.S. courts:

> In some jurisdictions in the United States, attachment and execution to satisfy a judgment may be had simply by applying to a clerk or local sheriff. This would not afford sufficient protection to a foreign state. This subsection contemplates that the courts will exercise discretion in permitting execution. Prior to ordering attachment and execution, the court must determine that a reasonable period of time has elapsed following the entry of judgment.

Levin, 2011 WL 812032, at *7 (quoting H.R. Rep. No. 94-1487 at 30 (1976), as reprinted in 1976 U.S.C.C.A.N. 6604, 6629). Although the caselaw is unclear on whether asset identification is required at this stage, the Plaintiffs have all identified the Bitcoin in the E.D.N.Y. as "the property on which [they] seek[] to execute." Walters, 651 F.3d at 291 (upholding denial of turnover because "petitioners have not identified the specific accounts of funds . . . upon which they seek to execute judgment"); see Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan, 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001) (faulting plaintiffs for not "identif[ying] any specific assets in its motion" under § 1610(c) for the attachment of judgment debtor's assets); but see Mexico Infrastructure Fin., LLC v. Corporation of Hamilton, No. 17-cv-6424 (DLC), 2024 WL 1468415, at *1 (S.D.N.Y. Mar. 15, 2025) ("Neither the plain language of § 1610(c) nor

8

Walters require that specific assets be identified prior to a finding that a reasonable period of time has elapsed following the entry of a judgment.").

Importantly, § 1610(c) orders are not writs of execution or attachment. They do not "authorize the attachment or execution of particular property—or any property at all"; instead, they "merely—and only—find[] that the requirements of § 1610(c) have been satisfied." Agudas Chasideai Chabad, 798 F. Supp. 2d at 270, 271 n.2. The Court of Appeals has opined that § 1610(c), "through its explicit cross-reference" to § 1610(a) and (b), "clearly signals that *execution* depends on a judicial determination that the property at issue falls within one of the exceptions to immunity set forth in those subsections." Walters, 651 F.3d at 297 (emphasis added). This statement applied to the district court's decision about the final turnover of, and execution on, specific assets. Id. at 283 (reviewing district court's dismissal of petition for issuance of a turnover order against banks to satisfy default judgment against China); id. at 288 (stating that "two conditions must be met before execution against sovereign property under a default judgment may be effected," including that "a court must have ordered such attachment and execution consistent with [§ 1610(a) or (b)]"). Here, the Plaintiffs are earlier in the judgment-collection process and have not yet filed any turnover actions for the Bitcoin. See, e.g., Fritz, ECF No. 121 at 2. To grant the Plaintiffs' § 1610(c) motions, the Court need not conclude whether the Bitcoin fall within specific exceptions to execution immunity enumerated in the FSIA or TRIA. See Baker, 810 F. Supp. 2d at 101–02 ("Execution of the judgment with respect to any particular property requires a separate judicial determination that the property at issue falls within one of the exceptions to immunity."). While the Plaintiffs also ask the Court to issue writs of execution on the Bitcoin, the Court declines to take that separate step. See infra Part III.

II.     **The Plaintiffs Establish the Requirements of § 1610(c)**

At this stage, the Plaintiffs must establish only § 1610(c)'s two requirements: (1) that notice as required under § 1608(e) has been given, and (2) that a reasonable period of time has elapsed following entry of their Iran Judgments and the provision of notice. Because the Court previously granted the Havlish and Hoglan Plaintiffs § 1610(c) orders for other purported Iranian assets, the Court relies on the previous findings for these Plaintiffs. For all other Plaintiffs, the Court must find, for the first time, that these Plaintiffs properly served their judgments on Iran, a reasonable period of time has elapsed, and enforcement proceedings for the Bitcoin can proceed. All Plaintiffs make the required showings—except for the Eaton Plaintiffs.

A.      **Iran and the Iranian Defendants Received Notice of All the Plaintiffs' Judgments Except for the Eaton Plaintiffs' Judgments**

The Plaintiffs must have notified Iran and the Iranian Defendants of their judgments pursuant to the FSIA's methods for serving foreign states and their agencies or instrumentalities. The Havlish and Hoglan Plaintiffs have judgments against both Iran and the Iranian Defendants and thus needed to comply with the service provisions under both § 1608(a) and (b). All other Plaintiffs have judgments against Iran only, and § 1608(a) governs their service efforts.

1.      **Most Plaintiffs Properly Served Iran Pursuant to § 1608(a)(4)**

The FSIA specifies four methods of serving foreign states (and their political subdivisions) in descending order of preference. See 28 U.S.C. § 1608(a). The first, service by "special arrangement," was impossible because the Plaintiffs have no such arrangements with Iran. 28 U.S.C. § 1608(a)(1); see, e.g., ECF No. 11459 at 5 (Havlish). The second, service according to an "international convention on service of judicial documents," was unavailable because there is no service convention between the U.S. and Iran. 28 U.S.C. § 1608(a)(2); see, e.g., ECF No. 11459 at 6 (Havlish). The third, service by registered "mail," proved ineffective;

10

the Clerk of Court mailed the requisite documents, but Iran refused service or failed to acknowledge receipt. 28 U.S.C. § 1608(a)(3); see ECF Nos. 11459 at 6–7 (Havlish), 11462 at 6–7 (Hoglan); ECF No. 11471 ("Bonner Decl.") ¶ 6 (Anaya/Chairnoff).

After the preceding three methods failed,[6] the fourth, service via "diplomatic channels," finally succeeded. 28 U.S.C. § 1608(a)(4). Under this method, the Plaintiffs delivered to the Clerk of Court copies of their default judgments against Iran and all other required documents, and the Clerk then dispatched these packages to the State Department. The State Department, through diplomatic channels, then effected service of these packages on Iran and provided the Clerk with certified copies of the diplomatic notes confirming that service. See ECF Nos. 11459 at 7–8, 10 (Havlish), 11462 at 8–9 (Hoglan), 11466 at 3, 4–5 (Ray), Bonner Decl. ¶¶ 7–12 (Anaya/Chairnoff), 11677 at 4–6 (Bauer), 11680 at 3–4 (Parker), 11710 at 2, 11892 (Breitweiser Plaintiffs), 11712 at 2, 11894 (Ryan Plaintiffs), 11819 at 5–6 (Maher). Service on a foreign state is "deemed to have been made as of the date of transmittal indicated in the certified copy of the diplomatic note." 28 U.S.C. § 1608(c)(1). The Appendix lists, for each of the Plaintiffs' judgments against Iran, the relevant diplomatic notes and the transmittal date (Columns H and J). The Eaton Plaintiffs are the only exception; the Court discusses their situation below.

### 2. The Havlish and Hoglan Plaintiffs Properly Served the Iranian Defendants Pursuant to § 1608(b)(3)(A)

The Havlish and Hoglan Plaintiffs have default judgments against Iranian Defendants that are agencies or instrumentalities of Iran. These Plaintiffs thus needed to follow the service methods under § 1608(b). As with service on Iran itself, the first and second service methods were unavailable to the Havlish and Hoglan Plaintiffs. See 28 U.S.C. § 1608(b)(1) ("special

---

[6] The Court authorized certain Plaintiffs to proceed directly to service through diplomatic channels given Iran's prior refusal to accept service through direct mail. See Ray, ECF No. 223; Maher, ECF No. 14.

arrangement"); id. § 1608(b)(2) ("international convention"); ECF No. 11459 at 5–6 (Havlish). The third, service by registered "mail" directly to either the foreign state or the agency or instrumentality, proved ineffective; the Clerk of Court mailed the requisite documents, but Iran refused service on behalf of the Iranian Defendants. 28 U.S.C. § 1608(a)(3); see ECF Nos. 11459 at 6–7 (Havlish), 11462 at 6–7 (Hoglan). The Havlish and Hoglan Plaintiffs thus needed to ask the Court for letters rogatory requesting that the State Department assist with service for the Iranian Defendants. See 28 U.S.C. § 1608(b)(3)(A). The Court issued the letters rogatory, and the State Department executed service through diplomatic channels, similar to its service on Iran for all other Plaintiffs. See ECF Nos. 11459 at 7–9 (Havlish), 11462 at 4 n.1, 9–11 (Hoglan). The Appendix lists, for the Havlish and Hoglan Plaintiffs' judgments against the Iranian Defendants, the relevant filings, including the diplomatic note and the transmittal date (Columns H and J). Moreover, the Court previously ruled that these Plaintiffs gave proper notice to the Iranian Defendants pursuant to § 1610(c). See ECF Nos. 2887 (Havlish), 6092 (Hoglan).

### 3. The Eaton Plaintiffs Have Not Established That They Properly Served Iran Pursuant to § 1608(a)(4)

The Eaton Plaintiffs initially sought a § 1610(c) order for their two judgments against Iran only. They asserted that Iran was served with these judgments under § 1608(a)(4). Despite diligent efforts to obtain proof of service through diplomatic channels (including contacting the State Department, their Congressional representatives, and the Clerk's Office), the Eaton Plaintiffs could not provide certified copies of the diplomatic notes confirming that service. See ECF Nos. 11711 at 2, 11893 at 1, 11929 at 1–3. They later confirmed that no such diplomatic notes exist because their former counsel withdrew the request to the State Department to serve the Eaton Plaintiffs' judgments. See ECF No. 11959 at 1. For this reason, the Eaton Plaintiffs withdrew without prejudice their § 1610(c) motion for their 2020 Judgment. See id.; ECF No.

12

11960 (reinitiating service process for the 2020 Judgment). But the Eaton Plaintiffs argue that the Court should still grant a § 1610(c) motion for their 2016 Judgment because other Plaintiffs have served the same judgment on Iran. Id. at 1–2. Without a diplomatic note confirming their service of the 2016 Judgment, however, the Eaton Plaintiffs have not established to the Court's satisfaction that Iran was properly served.

For service under § 1608(a)(4), the diplomatic note is the critical document. Judgment holders first deliver to the Clerk of Court copies of their default judgments and the required documents, which the Clerk dispatches to the State Department in Washington, D.C. The State Department must then take certain actions: It "[1] shall transmit one copy of the papers through diplomatic channels to the foreign state and [2] shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." 28 U.S.C. § 1608(a)(4). Diplomatic notes typically specify the member cases, the plaintiffs' requests through the Clerk, and the details of the underlying judgments. See, e.g., ECF No. 11892-1 at 3 (Breitweiser Plaintiffs). Service on a foreign state is then deemed complete as of "the date of transmittal indicated in the certified copy of the diplomatic note." Id. § 1608(c)(1). Section 1608 employs this timing provision to ensure "there is a strong basis for concluding that the service packet will very shortly thereafter come into the hands of a foreign official who will know what needs to be done." Republic of Sudan v. Harrison, 587 U.S. 1, 14 (2019). Certified copies of diplomatic notes thus serve as the only confirmation that the State Department completed service through diplomatic channels. See Agudas Chasideai Chabad, 798 F. Supp. 2d at 269 (stating that service under § 1608(a)(4) was proper when "the State Department informed the Court that service through this method had been completed"); Owens v. Republic of Sudan, 141 F. Supp. 3d 1, 8 (D.D.C. 2015) (citing diplomatic notes confirming service).

Courts typically require "strict adherence to the terms of 1608(a)" and "rarely excuse[] defective service"—even when a foreign state has "actual notice." Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 154 (D.C. Cir. 1994). They have faulted plaintiffs for failing to follow exactly the terms of § 1608(a), which provides "steps that must be taken in a particular sequence in order to properly effectuate service." Hirshfeld v. Islamic Republic of Iran, 235 F. Supp. 3d 45, 48 (D.D.C. 2017) (denying service when plaintiff attempted service pursuant to § 1608(a)(4) before attempting service pursuant to § 1608(a)(3)). In contrast, service under § 1608(b), on foreign agencies or instrumentalities, may be accomplished through "substantial compliance . . . that is, service that gives actual notice" to the proper individuals within the agency or instrumentality. Magness v. Russian Federation, 247 F.3d 609, 616 (5th Cir. 2001); see Agudas Chasidei Chabad, 798 F. Supp. 2d at 268 (noting that the Third, Sixth, Ninth, Eleventh, and District of Columbia Circuits take the same substantial-compliance approach). Plaintiffs serving foreign states pursuant to § 1608(a) have not received the same leeway.

The Eaton Plaintiffs cannot establish that they properly served Iran with their 2016 Judgment without providing their own diplomatic note. The record shows that (1) the Eaton Plaintiffs' former counsel delivered to the Clerk of Court copies of the 2020 Judgment and related documents; (2) the Clerk dispatched this packages to the State Department; and (3) former counsel withdrew the request to have this package served through diplomatic channels because his client "obtained service on [Iran] through alternative means." See ECF Nos. 11711-4 at 2, 4, 11893-3 at 5, 11929-3 at 5–6, 11959-1 at 4. Counsel later confirmed that his withdrawal was a "miscommunication" because he intended to "cease service of a new Summons & Complaint upon Iran," not service of the 2020 Judgment. ECF No. 11959-2 at 2. As a result, the Eaton Plaintiffs lack any diplomatic notes confirming that their 2016 or 2020 Judgments were

14

served on Iran pursuant to § 1608(a)(4). In fact, the Eaton Plaintiffs did not include their 2016 Judgment in the later-withdrawn service package. See ECF No. 11959-1 at 8, 11 (attaching copies of only the 2020 Judgment). The Court thus does not have a "strong basis" for concluding that the State Department transmitted the 2016 Judgment through diplomatic channels per the Eaton Plaintiffs' request, and that Iran received the Judgment. Harrison, 587 U.S. at 14. In the absence of a diplomatic note specific to the 2016 Judgment, the Court cannot definitely say if or when the Eaton Plaintiffs completed service consistent with § 1608(c)(1).

The Eaton Plaintiffs argue that the Court should still grant their § 1610(c) motion because other Plaintiffs served the 2016 Judgment on Iran. This is not enough to establish proper service on Iran. Sections 1610(c) and 1608(e) do not state whether each Plaintiff seeking to enforce their judgment must give separate notice of their judgment to the sovereign judgment debtor. See 28 U.S.C. § 1610(c) (requiring only "the giving of any notice required under section 1608(e) of this chapter"); id. § 1608(e) ("A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section."). But § 1608(c)(1)'s timing rule—that service on foreign states is complete as of "the date of transmittal" in the diplomatic note—suggests that individual service of default judgments, confirmed by individualized diplomatic notes, is expected. Requiring every group of plaintiffs to provide their own notice to a foreign sovereign also promotes the sovereign's "adequate opportunity to respond," even if the notices include the same underlying judgment. Agudas Chasidei Chabad, 798 F. Supp. 2d at 266–67. This approach furthers the purposes behind § 1610(c).

Importantly, no plaintiffs have relied on others to serve their judgment and instead have followed the practice of individually serving their default judgments. Pursuant to § 1608(a)(4), several groups of Plaintiffs served the 2016 Judgment on Iran during the last decade. See

15

Appendix, entries #18 (<u>Bauer</u> Plaintiffs on Sept. 19, 2017); #37 (<u>Breitweiser</u> Plaintiffs on Dec. 6, 2018); #41 (<u>Ryan</u> Plaintiffs on July 2, 2020); #43 (<u>Maher</u> Plaintiffs on Sept. 19, 2017). All of these Plaintiffs provided individual diplomatic notes. The Eaton Plaintiffs cite no case in which a court found that service under § 1608(a)(4) was complete without a diplomatic note confirming the plaintiffs' service. <u>See</u> ECF Nos. 11959 at 2, 11929 at 3–4. Because Iran is a foreign state subject to the "strict" requirements of § 1608(a), the Court cannot excuse "defective" service, even if Iran has actual notice of the 2016 Judgment. <u>Transaero</u>, 30 F.3d at 154.

The Court therefore denies the Eaton Plaintiffs' § 1610(c) motion without prejudice to their refiling and supplementing the record with their diplomatic notes and supporting materials for both of their Iran Judgments, ECF Nos. 3226, 5254.

**B.      A Reasonable Period of Time Has Elapsed Since Iran and the Iranian Defendants Received Notice of the Plaintiffs' Judgments**

The Plaintiffs (other than the Eaton Plaintiffs) must next show that "a reasonable period of time has elapsed" since they gave notice to Iran and the Iranian Defendants of the Iran Judgments. <u>See</u> <u>Olympic Chartering</u>, 134 F. Supp. 2d at 536 (for default judgments against foreign states, period runs "from the time notice of the judgment was given to the foreign state under § 1608(e)"). A reasonable period of time has elapsed for all the Iran Judgments.

Section 1610(c) provides no express guidance on assessing whether a period of time is "reasonable." The Court should, however, consider several factors: (1) "procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, and which may take several months"; (2) "representations by the foreign state of steps being taken to satisfy the judgment"; or (3) "evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment." <u>Gadsby & Hannah v. Socialist Republic of Romania</u>, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (citing H.R. Rep. No. 94-1487 at 30). Based on these

16

factors, periods between six weeks and eleven months are reasonable when "there is no evidence that the defendant has taken any steps toward the payment of its debt." <u>Ned Chartering & Trading, Inc. v. Republic of Pakistan</u>, 130 F. Supp. 2d 64, 67 (D.D.C. 2001) (finding that six weeks was reasonable and noting that "other courts have found periods such as two or three months sufficient"); <u>Ferrostaal Metals Corp. v. S.S. Lash Pacifico</u>, 652 F. Supp. 420, 423 (S.D.N.Y. 1987) (three months); <u>Gadsby & Hannah</u>, 698 F. Supp. at 486 (two months); <u>Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela</u>, No. 19-cv-3123 (AT), 2021 WL 2168916, at *1, 3 (S.D.N.Y. May 27, 2021) (seven months); <u>Contrarian Capital Mgmt., L.L.C. v. Bolivarian Republic of Venezuela</u>, No. 19-cv-11018 (AT), 2024 WL 5264456, at *1–2 (S.D.N.Y. Dec. 12, 2024) (11 months). Moreover, the Court found that the almost four months between notice of the <u>Havlish</u> judgment and the issue date of the Court's order constituted "[a] reasonable period of time." ECF No. 2887 at 1 (May 22 to Sept. 12, 2013); <u>see also</u> ECF No. 6092 at 2 (seven and a half months was reasonable for the <u>Hoglan</u> Plaintiffs).

The Plaintiffs plainly clear this timing hurdle. The Appendix lists the confirmed dates of service of the Iran Judgments on Iran and the Iranian Defendants. <u>See</u> Appendix, Column J. The time elapsed since these service dates ranges from approximately 11 months to over 13 years. <u>See</u> <u>Havlish</u>, ECF No. 2737-9 (confirming service on Feb. 13, 2013 [Appendix, entry #1]); ECF No. 11465-4 (confirming service on May 19, 2025 [Appendix, entry #8]). Iran and the Iranian Defendants have never appeared in this litigation. No evidence confirms that the defendants have voluntarily paid any money to these Plaintiffs—or any plaintiffs holding a judgment against Iran for its terrorist activities. <u>See</u> Bonner Decl. ¶ 14; <u>In re Islamic Republic of Iran Terrorism Litig.</u>, 659 F. Supp. 2d 31, 85 (D.D.C. 2009); <u>Heiser v. Islamic Republic of Iran</u>, 807 F. Supp. 2d 9, 24 (D.D.C. 2011). The Bitcoin are also in U.S. Government custody, and thus the chance of their

17

dissipation is essentially zero. See ECF No. 11802-1 at 17–18. Consistent with caselaw and prior decisions in this litigation, "a reasonable period of time has elapsed" since service of each of the Plaintiffs' Judgments. See ECF No. 2887 at 1; Pharo Gaia Fund Ltd., 2021 WL 2168916 at *1, 3 (finding shorter time period reasonable).

Accordingly, the Court grants the Plaintiffs' requests to proceed with attachment of, and execution on, the Bitcoin in the E.D.N.Y. pursuant to § 1610(c).

**III.    The Court Declines to Grant Any Writs of Execution for the Bitcoin**

The Plaintiffs all reference the TRIA as the purported basis for their rights to attach or execute on the Bitcoin. See, e.g., ECF Nos. 11459 at 3 (Havlish), 11677 at 11 (Bauer). Some Plaintiffs go further: They argue that the Bitcoin are not immune from execution under the TRIA and ask the Court to issue writs of execution for the Bitcoin. See ECF Nos. 11470-1 at 2–3, 11473 at 8 (Anaya/Chairnoff). The Court declines to do so for three reasons.

First, the Court need not decide the legal issues necessary for attachment or execution at this stage. Section 1610(c) does not require the Court to consider whether the Bitcoin fall within specific exceptions to execution immunity enumerated in the FSIA or the TRIA. See supra Part I. Instead, the Court makes procedural determinations about notice and timing that permit the Plaintiffs to pursue judgment enforcement for the Bitcoin in the E.D.N.Y. See, e.g., Warmbier, 2019 WL 11276677 at *1 (stating the two required elements for a § 1610(c) order: (1) a reasonable period of time, and (2) notice given pursuant to § 1608(e)). Because the Court entered the Iran Judgments listed in the Appendix, this judicial district is the "proper venue" for the Plaintiffs to seek § 1610(c) orders related to these Iran Judgments. ECF No. 11667 at 2. But the ultimate issue of whether the Plaintiffs will be able to execute on, or attach, the Bitcoin involves separate legal findings that the Court leaves to the E.D.N.Y. See Agudas Chasidei Chabad, 798 F. Supp. 2d at 271 ("In light of the severe hurdles to enforcement of judgments that often face

18

FSIA plaintiffs, a 1610(c) order makes practical sense. But such orders say nothing about the remaining jurisdictional immunities that must be overcome before an order granting the attachment or execution of particular property may issue.").

Second, granting the Plaintiffs writs of execution on the Bitcoin would require the Court to improperly exercise jurisdiction over the Bitcoin. The Government holds the Bitcoin in the E.D.N.Y., and three active proceedings (to date) concern the Bitcoin as disputed property. See ECF No. 11802-1 at 17–18 (The Bitcoin are "secure within the government's possession" and "remain[] within [the E.D.N.Y.'s] jurisdiction pursuant to the arrest warrant *in rem* issued in the forfeiture proceeding"). When one district court has exercised jurisdiction over certain property, other district courts may not simultaneously assert jurisdiction over the same property. See Marshall v. Marshall, 547 U.S. 293, 311 (2006) (restating "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*"); 13F Wright & Miller, Fed. Prac. & Proc. § 3631 (3d ed. 2020) ("[W]hen a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any other court."). Issuing writs of execution on the Bitcoin would necessarily involve exercising jurisdiction over that property. See Havlish, 152 F.4th at 361 (holding that the TRIA provides an independent basis to exercise subject matter jurisdiction over the blocked assets of a terrorist party or its agencies or instrumentalities). The Court thus declines to interfere with the E.D.N.Y.'s existing jurisdiction over the Bitcoin.

Finally, the E.D.N.Y. is the appropriate forum for resolving the legal issues necessary for execution on, or attachment of, the Bitcoin. The Government states that there is "no risk of dissipation" of the Bitcoin from that judicial district. ECF No. 11802-1 at 17–18. The Plaintiffs

19

here are participating in the E.D.N.Y. Proceedings or intending to do so after they receive § 1610(c) orders from this Court. See, e.g., Forfeiture Case, ECF Nos. 163, 260 (verified claims of O'Neill Plaintiffs); Fritz, ECF Nos. 93, 94 (motions to intervene of O'Neill and Breitweiser Plaintiffs); see ECF No. 11667 at 2–3 (Havlish, Hoglan, Ray and Maher Plaintiffs). The Plaintiffs requesting writs of execution rely entirely on evidence submitted in the E.D.N.Y. Proceedings as support for their argument that the TRIA authorizes execution on the Bitcoin here. See, e.g., ECF No. 11473 at 7–8 (Anaya/Chairnoff); Bonner Decl. ¶¶ 15–21. The Government likewise opposes the Plaintiffs' writ requests on multiple grounds that it has raised in the E.D.N.Y., including that the Bitcoin has the "most tenuous of connections to any Iranian entity." ECF Nos. 11802 at 2, 11802-1 at 4–18. If the Court were to undertake an independent TRIA analysis, this analysis would primarily concern evidence about the Bitcoin's ownership submitted in the E.D.N.Y. Proceedings and would plainly duplicate efforts. See e.g., Chairnoff, ECF No. 172 at 2 (noting that the Fritz suit involves the same legal issues, and that the Chairnoff Plaintiffs rely entirely on evidence filed in Fritz for their factual allegations); ECF No. 11802 at 1 (stating that the issues relevant to Plaintiffs' attachment and execution requests are "identical" to those in Fritz). That approach "runs counter to judicial efficiency." ECF No. 11802 at 2.

## CONCLUSION

The Court GRANTS the motions for certifications under § 1610(c) for all the Plaintiffs other than the Eaton Plaintiffs. See ECF Nos. 11458, 11461, 11465, 11470, 11676, 11679, 11710, 11712, 11819. A reasonable period of time has elapsed since the entry of each of these Plaintiffs' Iran Judgments and the provision of notice of each Iran Judgment to the Iranian Defendants. See Appendix, Columns D & J. The Plaintiffs (other than the Eaton Plaintiffs) are authorized, under 28 U.S.C. § 1610(c), to enforce the Iran Judgments by any lawful means, including the attachment of, or execution on, the Bitcoin.

20

Because the Eaton Plaintiffs cannot provide confirmation of proper service of their Iran Judgments on Iran, the Court DENIES their § 1610(c) motion, ECF No. 11711, without prejudice to their refiling with the relevant diplomatic notes and supporting materials for both of their Iran Judgments, ECF Nos. 3226, 5254.

Finally, the Court DENIES without prejudice any requests to issue writs of execution for the Bitcoin. The Clerk of the Court is respectfully directed to terminate the below motions:

- ECF Nos. 11458, 11461, 11465, 11470, 11676, 11679, 11710, 11711, 11712, 11819;
- Ashton, No. 02-cv-06977, ECF Nos. 2356, 2449, 2450, 2451;
- Burlingame, No. 02-cv-07230, ECF Nos. 435, 436;
- Bauer, No. 02-cv-07236, ECF Nos. 333, 338;
- Havlish, No. 03-cv-09848, ECF No. 750;
- Hoglan, No. 11-cv-07550, ECF No. 462;
- Parker, No. 18-cv-11416, ECF No. 125;
- Dickey, No. 18-cv-11417, ECF No. 114;
- Anaya, No. 18-cv-12341, ECF No. 221;
- Chairnoff, No. 18-cv-12370, ECF No. 166;
- Ray, No. 19-cv-00012, ECF No. 352; and
- Maher, No. 20-cv-00266, ECF Nos. 195, 196, 204.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     April 14, 2026
           New York, New York

21

**APPENDIX: Section 1610(q) Motions and Iran Judgments**

| # | (A) Date of Motion to Enforce Judgments | (B) ECF No. of Motion to Enforce Judgments | (C) MDL Member Case in which Underlying Judgment Entered | (D) Date of Underlying Judgment | (E) ECF No. of Underlying Judgment | (F) Defendant Groups | (G) FSIA Service Method | (H) Documentation of Service of Underlying Judgment | (J) Date of Service of Underlying Judgment |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1/16/2026 | 11458 | Havlish, 03-cv-09848 | 10/12/2012 | 2624 | Iran, Iranian political subdivisions | 1608(a)(4) | 2737-8, 2737-9 | 2/13/2013 |
| 2 | 1/16/2026 | 11458 | Havlish, 03-cv-09848 | 10/12/2012 | 2624 | Iranian agencies & instrumentalities | 1608(b)(3)(A) 1608(a)(4) | 2737-11 | 5/22/2013 |
| 3 | 1/19/2026 | 11461 | Hoglan, 11-cv-07550 | 10/31/2016 | 3384 | Iran, Iranian political subdivisions | 1608(a)(4) | 6022-5, 6022-6 | 10/18/2018 |
| 4 | 1/19/2026 | 11461 | Hoglan, 11-cv-07550 | 10/31/2016 | 3384 | Iranian agencies & instrumentalities | 1608(b)(3)(A) 1608(a)(4) | 5100, 5113-19, 6022-7, 6022-8, 6022-14 | 7/17/2019 |
| 5 | 1/19/2026 | 11461 | Hoglan, 11-cv-07550 | 2/26/2018 | 3905 | Iran, Iranian political subdivisions | 1608(a)(4) | 6022-5; 6022-6 | 10/18/2018 |
| 6 | 1/19/2026 | 11461 | Hoglan, 11-cv-07550 | 2/26/2018 | 3905 | Iranian agencies & instrumentalities | 1608(a)(4) 1608(b)(3)(A) | 5100, 5113-19, 6022-7, 6022-8, 6022-14 | 7/17/2019 |
| 7 | 1/20/2026 | 11465 | Ray, 19-cv-00012 | 2/19/2020 | 5985 | Iran | 1608(a)(4) | Ray 223, 11465-2 | 8/16/2020 |
| 8 | 1/20/2026 | 11465 | Ray, 19-cv-00012 | 9/20/2024 | 10387 | Iran | 1608(a)(4) | Ray 345 | 5/19/2025 |
| 9 | 1/21/2026 | 11470 | Anaya, 18-cv-12341 | 1/10/2022 | 7580 | Iran | 1608(a)(4) | 11471-2 | 6/15/2022 |
| 10 | 1/21/2026 | 11470 | Anaya, 18-cv-12341 | 7/28/2022 | 8291 | Iran | 1608(a)(4) | 11471-3 | 11/21/2022 |
| 11 | 1/21/2026 | 11470 | Anaya, 18-cv-12341 | 8/2/2022 | 8311 | Iran | 1608(a)(4) | 11471-4 | 11/21/2022 |
| 12 | 1/21/2026 | 11470 | Anaya, 18-cv-12341 | 8/1/2023 | Anaya 163 | Iran | 1608(a)(4) | 11471-5 | 10/1/2024 |
| 13 | 1/21/2026 | 11470 | Anaya, 18-cv-12341 | 10/5/2023 | 9359 | Iran | 1608(a)(4) | 11471-5 | 10/1/2024 |
| 14 | 1/21/2026 | 11470 | Anaya, 18-cv-12341 | 6/24/2024 | 9989 | Iran | 1608(a)(4) | 11471-5 | 10/1/2024 |
| 15 | 1/21/2026 | 11470 | Chaimoff, 18-cv-12370 | 10/5/2021 | 7173 | Iran | 1608(a)(4) | 11471-6 | 4/27/2022 |
| 16 | 1/21/2026 | 11470 | Chaimoff, 18-cv-12370 | 3/30/2023 | 8976 | Iran | 1608(a)(4) | 11471-7 | 10/1/2024 |
| 17 | 1/21/2026 | 11470 | Chaimoff, 18-cv-12370 | 4/17/2024 | 9694 | Iran | 1608(a)(4) | 11471-7 | 10/1/2024 |
| 18 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 3/8/2016 | 3226 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 19 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 9/12/2016 | 3341 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 20 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 10/31/2016 | 3387 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 21 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 11/29/2016 | 3399 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 22 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 11/30/2016 | 3402 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 23 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 12/1/2016 | 3403 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 24 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 12/5/2016 | 3408 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 25 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 1/30/2020 | 5771 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 26 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 1/30/2020 | 5772 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |

| # | (A) Date of Motion to Enforce Judgments | (B) ECF No. of Motion to Enforce Judgments | (C) MDL Member Case in which Underlying Judgment Entered | (D) Date of Underlying Judgment | (E) ECF No. of Underlying Judgment | (F) Defendant Groups | (G) FSIA Service Method | (H) Documentation of Service of Underlying Judgment | (J) Date of Service of Underlying Judgment |
|---|---|---|---|---|---|---|---|---|---|
| 27 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 1/30/2020 | 5773 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 28 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 1/30/2020 | 5775 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 29 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 1/30/2020 | 5776 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 30 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 1/30/2020 | 5779 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 31 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 1/30/2020 | 5780 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 32 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 1/30/2020 | 5781 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 33 | 2/5/2026 | 11676 | Bauer, 02-cv-07236 | 2/14/2020 | 5947 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 34 | 2/5/2026 | 11679 | Parker, 18-cv-11416 | 9/4/2019 | 5073 | Iran | 1608(a)(4) | 5766 | 12/18/2019 |
| 35 | 2/5/2026 | 11679 | Parker, 18-cv-11416 | 1/7/2020 | 5450 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 36 | 2/5/2026 | 11679 | Parker, 18-cv-11416 | 1/30/2020 | 5775 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 37 | 2/9/2026 | 11710 | Ashton, 02-cv-06977<br>Burlingame, 02-cv-7230<br>Ashton, 17-cv-02003<br>Ryan, 20-cv-00266<br>(Breitweiser Plaintiffs) | 3/18/2016 | 3226 | Iran | 1608(a)(4) | 4107, 11892-1 | 12/6/2018 |
| 38 | 2/9/2026 | 11710 | Ashton, 02-cv-06977<br>Burlingame, 02-cv-7230<br>Ashton, 17-cv-02003<br>Ryan, 20-cv-00266<br>(Breitweiser Plaintiffs) | 5/29/2018 | 4011 | Iran | 1608(a)(4) | 4107, 11892-1 | 12/6/2018 |
| 39 | 2/9/2025 | 11711 | Ashton, 02-cv-06977<br>Burlingame, 02-cv-07230<br>Ashton, 17-cv-02003<br>Dickey, 18-cv-11417<br>(Eaton Plaintiffs) | 3/18/2016 | 3226 | Iran | 1608(a)(4) | 11711-4, 11959 | N/A* |
| 40 | 2/9/2025 | 11711 | Ashton, 02-cv-06977<br>Burlingame, 02-cv-07230<br>Ashton, 17-cv-02003<br>Dickey, 18-cv-11417<br>(Eaton Plaintiffs) | 1/7/2020 | 5452 | Iran | 1608(a)(4) | 6008, 11893, 11929, 11959 | TBD** |
| 41 | 2/9/2025 | 11712 | Ashton, 02-cv-06977<br>Bauer, 02-cv-07236<br>Ashton, 17-cv-02003<br>Ryan, 02-cv-00266<br>(Ryan Plaintiffs) | 3/18/2016 | 3226 | Iran | 1608(a)(4) | 11712-3 | 7/2/2020 |
| 42 | 2/9/2025 | 11712 | Ashton, 02-cv-06977<br>Bauer, 02-cv-07236<br>Ashton, 17-cv-02003<br>Ryan, 02-cv-00266<br>(Ryan Plaintiffs) | 2/21/2020 | 5999 | Iran | 1608(a)(4) | 11712-3, 11894-1 | 10/27/2020 |

**APPENDIX: Section 1610(q) Motions and Iran Judgments**

| # | (A) Date of Motion to Enforce Judgments | (B) ECF No. of Motion to Enforce Judgments | (C) MDL Member Case in which Underlying Judgment Entered | (D) Date of Underlying Judgment | (E) ECF No. of Underlying Judgment | (F) Defendant Groups | (G) FSIA Service Method | (H) Documentation of Service of Underlying Judgment | (J) Date of Service of Underlying Judgment |
|---|---|---|---|---|---|---|---|---|---|
| 43 | 2/28/2026 | 11819 | Maher, 20-cv-00266 | 3/8/2016 | 3226 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 44 | 2/28/2026 | 11819 | Maher, 20-cv-00266 | 10/31/2016 | 3387 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 45 | 2/28/2026 | 11819 | Maher, 20-cv-00266 | 2/21/2020 | 5999 | Iran | 1608(a)(4) | Maher 14, 11819-1, 11895 | 10/27/2020 |
| 46 | 2/28/2026 | 11819 | Maher, 20-cv-00266 | 3/6/2020 | 6036, 6201 | Iran | 1608(a)(4) | Maher 14, 11819-1, 11895 | 10/27/2020 |

* As this Order explains, the Eaton Plaintiffs' filed documentation does not establish when their service on Iran through diplomatic channels was completed

** The initial request to serve this judgment was withdrawn by counsel  See ECF No  11959 at 1  The Eaton Plaintiffs have reinitiated the service process  See ECF No  11960