UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,
    Plaintiff,

  - against –

APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,
    Defendants *in rem*.

No. 25 Civ. 05745 (RPK) (CHK)

---

### CLAIMANT WARP DATA TECHNOLOGY LAO SOLE CO. LTD'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH CERTAIN OF <u>THE GOVERNMENT'S SPECIAL INTERROGATORIES</u>

Of counsel:

David Abramowicz
Jeffrey Alberts
Sidhardha Kamaraju
Katherine Reilly
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

    I.     RELEVANT BACKGROUND ....................................................................... 3

          A.     The Government Initiates This Action ........................................... 3

          B.     The Forfeiture Complaint ............................................................. 4

          C.     Warp Data's Claim and Motion to Dismiss ................................. 5

          D.     The Special Interrogatories .......................................................... 6

    II.    ARGUMENT .................................................................................................. 8

          A.     Applicable Law ............................................................................. 8

          B.     The Government's Complaint Establishes Warp Data's Standing ................. 10

          C.     Warp Data's Responses to the Special Interrogatories Provide Ample Information to Establish Standing Under Rule G(6) ..................................... 12

              1.     Warp Data's Responses Establish Its Identity ................................. 13

              2.     Warp Data's Responses Establish Its Relationship to the Warp Data Bitcoin .......................................................... 14

          D.     The Contested Interrogatories Exceed the Scope of Supplemental Rule G(6) ................................................................... 17

               1.     The Contested Interrogatories Seek Information About Assets Other Than the Warp Data Bitcoin ................................. 17

              2.     The Contested Interrogatories Seek Information About Persons and Entities Other Than Warp Data ................................. 19

              3.     The Contested Interrogatories Seek Details Unnecessary to Establish Standing and Are Designed to Facilitate Premature Merits Discovery ................................. 21

CONCLUSION ........................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. $104,250.00 in U.S. Currency*,
  947 F. Supp. 2d 560 (D. Md. 2013) ................................................................................13, 22

*United States v. $128,915.00 In United States Currency*,
  No. 20 Civ. 00667 (JPG), 2021 WL 243585 (S.D. Ill. Jan. 25, 2021)....................................10

*United States v. $154,853.00 in U.S. Currency*,
  744 F.3d 559 (8th Cir. 2014) ................................................................................................10

*United States v. $17,900.00 in U.S. Currency*,
  859 F.3d 1085 (D.C. Cir. 2017) ..........................................................................................8, 16

*United States v. $215,587.22 in U.S. Currency*,
  282 F. Supp. 3d 109 (D.D.C. 2017) ................................................................................9, 12, 22

*United States v. $31,000.00 in U.S. Currency*,
  872 F.3d 342 (6th Cir. 2017) ................................................................................................16

*United States v. $38,570 U.S. Currency*,
  950 F.2d 1108 (5th Cir. 1992) ..............................................................................................12

*United States v. $515,060.42 in U.S. Currency*,
  152 F.3d 491 (6th Cir. 1998) ................................................................................................12

*United States v. $557,933.89, More or Less, in U.S. Funds*,
  287 F.3d 66 (2d Cir. 2002)..........................................................................................9, 11, 16

*United States v. $574,840*,
  719 F.3d 648 (7th Cir. 2013) ..............................................................................................9, 13

*United States v. 5208 Los Franciscos Way*,
  385 F.3d 1187 (9th Cir. 2004) ..............................................................................................16

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
  959 F. Supp. 2d 81 (D.D.C. 2013) ..................................................................................8, 9, 21

*United States v. Amadea*,
  No. 23 Civ. 9304 (DEH), 2024 U.S. Dist. LEXIS 54490 (S.D.N.Y. Mar. 22,
  2024) ....................................................................................................................................21

*United States v. Cambio Exacto, S.A.*,
  166 F.3d 522 (2d Cir. 1999)....................................................................................................8

*United States v. Funds in the Amount of $239,400*,
795 F.3d 639 (7th Cir. 2015) ..............................................................................9, 16

*United States v. Technodyne LLC*,
753 F.3d 368 (2d Cir. 2014)..............................................................................10, 12

*United States v. Two Hundred Seventy-Two Thousand Dollars*,
No. 16 Civ. 06564 (AMD), 2017 WL 8780158 (E.D.N.Y. Oct. 26, 2017) ........................9, 18

**Other Authorities**

U.S. Dep't of Justice, "*Chairman of Prince Group Indicted for Operating Cambodian Forced Labor Scam Compounds Engaged in Cryptocurrency Fraud Schemes*" (Oct. 14, 2025), *available at* https://tinyurl.com/3xz4s5ss ...........................4

U.S. Dep't of Treasury, "*U.S. and U.K. Take Largest Action Ever Targeting Cybercriminal Networks in Southeast Asia*" (Oct. 14, 2025), *available at* https://tinyurl.com/mt2ysyc8 ..............................................................................5

Claimant Warp Data Technology Lao Sole Co. Ltd. ("Warp Data") respectfully submits this memorandum in support of its motion (the "Motion") to quash Special Interrogatories 7, 11, 14, and 16, portions of Special Interrogatories 1-6, 8-10, 12-13, and 15, and the government's so-called "clarifying requests" (collectively, the "Contested Interrogatories"), propounded by the government.

**<u>PRELIMINARY STATEMENT</u>**

Special interrogatories exist in civil forfeiture cases for the sole and express purpose of providing the government with sufficient information to assess a claimant's standing. In this case, the government answered its own standing question before it thought to ask it. Specifically, in laying claim to the billions of dollars' worth of stolen Bitcoin at issue, the government chose to allege in its Complaint that Warp Data "produced large sums of clean bitcoin" through mining, that Warp Data's mining activity was the source of the mined defendant cryptocurrency, and that this clean bitcoin was subsequently transferred into wallets from which it was stolen. These facts clearly describe Warp Data's interest in the seized cryptocurrency: Warp Data owned the bitcoin because Warp Data created it. Thus, put simply, Warp Data's standing is not actually at issue because the government has already conceded it.

Despite its clear acknowledgment of Warp Data's standing in its Complaint, the government nevertheless has served 16 "special interrogatories" on Warp Data (the "Special Interrogatories"). A narrow band of the Special Interrogatories touch on the question of Warp Data's "identity and connection to the" seized cryptocurrency, the relevant inquiry under the rules and as articulated by the District Court. Warp Data has answered those inquiries, thus confirming the government's assertion that Warp Data is the entity that produced much of the seized Bitcoin.

1

Between the allegations in the Complaint and Warp Data's responses to certain of the Special Interrogatories, standing is not (and cannot be) reasonably in dispute.

The government, however, demands more—information that goes far beyond standing. This motion exposes that demand for what it is: not a genuine inquiry into standing, but a transparent effort to investigate the merits of several claims to the forfeited property, while delaying the day when the government will have to answer Warp Data's motion to dismiss the Complaint.

The government's desire to avoid responding to Warp Data's motion to dismiss is both obvious and understandable. In December 2020, an unidentified hacker stole billions of dollars' worth of cryptocurrency—including cryptocurrency belonging to Warp Data. Control over the stolen cryptocurrency was a complete mystery for nearly five years. Then, in October 2025, a grand jury indicted Chen Zhi for wire fraud and money laundering conspiracy. Six days later, the government unsealed the indictment—despite Chen Zhi remaining at large—and simultaneously filed a forfeiture complaint, touting it as "the largest forfeiture action in the history of the Department of Justice."

Despite asserting a claim to an unprecedented haul, the government's Complaint did not have a commensurate level of support. The core deficiency in the Complaint is as blatant as it is fatal. Specifically, the Complaint contains (i) no allegations tracing the Bitcoin to criminal activity predating the theft; (ii) wire fraud allegations only for conduct after 2020—after the cryptocurrency was already stolen; and (iii) silence about what happened between December 2020 and the government's seizure. In other words, despite its sound and fury over the course of scores of pages, the government failed to establish its most basic requirement: to show that the seized

2

cryptocurrency was either the result of or used as part of wire fraud or money laundering. That is the motion to dismiss that the government seeks to run from.

Rather than defend its pleading, the government changed the subject. It served the Special Interrogatories, ostensibly to test standing, while postponing its response to the motion to dismiss. Warp Data answered the Special Interrogatories bearing on standing. But the government now seeks responses to additional interrogatories about other entities, other assets, and matters relevant only to the merits.

The government's strategy is transparent: use the special interrogatories to impermissibly inquire into all manner of issues it should have investigated before seizing the assets at issue, all the while delaying its response to Warp Data's motion to dismiss. This strategy is not permitted under the relevant rules or precedents. The Contested Interrogatories should be quashed.

## I.        RELEVANT BACKGROUND

### A.        The Government Initiates This Action

On October 8, 2025, a grand jury sitting in the Eastern District of New York returned an indictment charging Chen Zhi with wire fraud conspiracy and money laundering conspiracy. (ECF 1 ("Complaint" or "Compl."), at ¶ 59). The indictment was unsealed on October 14, 2025.

That same day, the government commenced this action by filing the Complaint, which seeks forfeiture *in rem* against 127,271 Bitcoin ("BTC") that in December 2020 had been stored at 25 specified blockchain addresses, and all proceeds traceable thereto (collectively, the "Defendant Cryptocurrency"). (Compl. ¶¶ 5-6 & Attachment A). The government filed a notice of forfeiture action the same day. (ECF 4). At the same time, the Department of Justice issued a press release announcing the indictment and the filing of this civil forfeiture action, which the press release described as "the largest forfeiture action in the history of the Department of Justice." Press Release, U.S. Dept. of Justice, "*Chairman of Prince Group Indicted for Operating Cambodian*

*Forced Labor Scam Compounds Engaged in Cryptocurrency Fraud Schemes*" (Oct. 14, 2025), *available at* https://tinyurl.com/3xz4s5ss. The press release acknowledged that "the defendant is at large." *Id.*

### B.    The Forfeiture Complaint

According to the Complaint, "extensive blockchain tracing" by the FBI determined that the Defendant Cryptocurrency came primarily from "two categories of sources," one of which was "cryptocurrency mining, including addresses associated with Lubian and Warp Data." (Compl. ¶ 45).

Warp Data, the Complaint alleges, is "an entity registered in Laos that operated bitcoin mining facilities" (*Id.* ¶ 16(t)) with a "large-scale cryptocurrency mining operation[] . . . which produced large sums of clean bitcoin" (*id.* ¶ 42). Cryptocurrency "mining," the Complaint explains, "was the process by which certain types of virtual currency transactions, including bitcoin transactions, were verified and added to the public ledger (in the case of bitcoin, the Bitcoin blockchain), and also the means through which new units of those virtual currencies were generated and released." (*Id.* ¶ 17(g)). The "miners" who "carried out the task of verifying 'blocks of legitimate transactions,'" the Complaint continues, "were rewarded with an amount of that cryptocurrency." (*Id.*).

The Complaint groups these addresses into "clusters" of wallets that exhibit "similar funding patterns," according to FBI cryptocurrency analysts. (*Id.* ¶ 46). According to the government, a primary source of funds in five such "clusters" was "bitcoin mining proceeds." (*Id.* ¶ 47(a), (b), (d), (g) & (k)). The Complaint further identifies certain specific amounts of "newly mined" or "newly minted" bitcoin that were held in specific wallets or clusters of wallets. (*See id.* ¶ 50 ("approximately 11,115.83 newly mined bitcoin"), 55(a) ("approximately 13,469 newly minted BTC"), 55(c) ("approximately 5,608 BTC from bitcoin mining") & 55(f) ("approximately

4

15,214.30 newly mined BTC"); *see also* Complaint at 36 (diagram summarizing certain allegations that bitcoin was mined) and n.9 (certain wallets were 30% funded by newly mined cryptocurrency)).

The Complaint identifies at least 47,680.03 bitcoin included in the Defendant Cryptocurrency as "newly mined," "newly minted," or "from bitcoin mining." Specifically, the Complaint alleges that the Defendant Cryptocurrency includes:

- "approximately 11,115.83 newly mined bitcoin" in one transaction set (Compl. ¶ 50);
- "approximately 13,469 newly minted BTC" transferred through shell company accounts (*id.* ¶ 55(a));
- "approximately 5,608 BTC from bitcoin mining" (*id.* ¶ 55(c));
- "approximately 2,272.9 BTC from bitcoin mining" (*id.* ¶ 55(d)); and
- "approximately 15,214.30 newly mined BTC" transferred directly to one of the seized wallets (*id.* ¶ 55(f)).

The Complaint thus identifies Warp Data by name, describes it as a cryptocurrency mining company, alleges that it "produced large sums of clean bitcoin," and specifies the quantity of mined bitcoin in the seized property.

### C.  Warp Data's Claim and Motion to Dismiss

On the same day the government filed the Complaint in this forfeiture matter—October 14, 2025—the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") imposed what it described as "sweeping sanctions" on Warp Data and numerous other parties named in the Complaint, blocking their property and prohibiting U.S. persons from transacting business with them. Press Release, U.S. Dept. of Treasury, "*U.S. and U.K. Take Largest Action Ever Targeting Cybercriminal Networks in Southeast Asia*" (Oct. 14, 2025), *available at* https://tinyurl.com/mt2ysyc8. OFAC's designation complicated Warp Data's ability to retain counsel and participate in the forfeiture proceeding.

Despite these obstacles, Warp Data retained counsel in an effort to secure the return of its property. On November 13, 2025, Warp Data filed a letter requesting an extension of time to file

its claim. (ECF 9). The government opposed the request the next day, arguing that Warp Data had sufficient time and that deadlines should be strictly enforced. (ECF 10). On December 11, 2025, the Court granted in part and denied in part the motions for extension, permitting Warp Data to file its claim by January 19, 2026. (Text Order of Dec. 11, 2025). On January 19, 2026, Warp Data filed a verified claim asserting ownership of the portion of the Defendant Cryptocurrency that the Complaint describes as "newly mined," "newly minted," or "from bitcoin mining"—at least 47,680.03 bitcoin (the "Warp Data Bitcoin"). (ECF 64).

On February 9, 2026, Warp Data filed a letter requesting a pre-motion conference to discuss its planned motion to dismiss. (ECF 201). The letter identified fundamental deficiencies in the Complaint: no allegations tracing the Bitcoin to criminal activity predating the theft; wire fraud allegations only for conduct after December 2020—after the cryptocurrency was already stolen; and silence about what happened between December 2020 and the government's seizure. (ECF 201 at 2-3). Warp Data submitted its motion to dismiss on March 9, 2026. (ECF 309).

### D.    The Special Interrogatories

In February, after Warp Data notified the Court of its intent to file a motion to dismiss the complaint, the government sought to hold its response to that motion in abeyance, pending the service of special interrogatories. Judge Kovner granted that relief, noting, however, that the government was entitled to "serve special interrogatories limited to each claimant's identity and relationship to the defendant property." (Text Order of Feb. 17, 2026).

On February 20, 2026, the government served Special Interrogatories pursuant to Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule

6

G(6)"). On March 13, 2026, Warp Data responded; that response is attached as **Exhibit A**.[1] Warp Data answered the interrogatories bearing on standing—providing its legal name, registration details, tax identification number, sole shareholder, manager, and details about its mining operations and relationship to LuBian. Warp Data objected to interrogatories exceeding Rule G(6)'s scope, which limits special interrogatories to "the claimant's identity and relationship to the defendant property." The government itself conceded that "Warp Data … ha[s] answered [its] interrogatories in full." (ECF 395 at 1).

Nevertheless, the government was unsatisfied. On March 20, 2026, Warp Data and the government participated in a meet-and-confer in an attempt to narrow the areas of dispute. At that time, the government indicated it would send additional requests about whether Warp Data is an "alter ego" of Chen Zhi. In email correspondence attached as **Exhibit B**, Warp Data's counsel requested an explanation of how any further requests related to standing. (Ex. B at 2). The government ignored that request entirely. Instead, on March 25, 2026, the government served what it styled "clarifying requests"—in reality, new interrogatories—without explaining their relevance to standing. (Ex. B at 1-2).

On April 1, 2026, Warp Data filed a pre-motion letter requesting permission to file this motion to quash. (ECF 384). On April 3, 2026, the Court granted that request, determining that a pre-motion conference was unnecessary and directing Warp Data to file its motion to quash with

---

[1]  A protective order was not entered in this matter until April 14, 2026. (ECF 405). As a result, Warp Data timely served its responses and objections on the government but asked that pending the entry of a protective order, the government agree to keep those responses and objections confidential. The government refused without explanation. Because Warp Data's responses and objections contain, among other things, personal identifying information, Warp Data is filing a redacted Exhibit A on the docket and will seek leave from the Court to file an unredacted Exhibit A under seal.

Magistrate Judge Kaminsky. (Text Order of Apr. 3, 2026). Consistent with its delay tactics, on April 7, 2026, the government sought to stall its response to even Warp Data's motion to quash until at some indeterminate time the government received and evaluated other claimants' responses to special interrogatories. (ECF 395). Because the government offered no meritorious rationale for why Warp Data should have to wait to move its case forward, Warp Data opposed the government's request. (ECF 398).

## II.    ARGUMENT

### A.    Applicable Law

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999).[2]

Article III standing requires "a 'sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" *Id.* (quoting *Sierra Club v. Morton,* 405 U.S. 727, 731 (1972)). In the forfeiture context, "[t]he requirements for a claimant to demonstrate constitutional standing to challenge a forfeiture are very forgiving. In general, any colorable claim on the property suffices—typically, an ownership or possessory interest." *United States v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1090 (D.C. Cir. 2017). The Second Circuit "look[s] to ownership and possession" of the seized property. *Cambio Exacto, S.A.*, 166 F.3d at 527; *see also $17,900.00*, 859 F.3d at 1090. A claimant must show only "a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 959 F. Supp. 2d 81, 95 (D.D.C. 2013).

---

[2] Unless otherwise noted, this memorandum's case law citations omit internal quotation marks, alterations, citations, and footnotes.

The standing question is "truly threshold only—to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002). The "standing inquiry" is distinct from the "merits determination that comes later." *Bank Julius Baer*, 959 F. Supp. 2d at 95; *accord $557,933.89*, 287 F.3d at 78 ("[T]o establish standing the claimant need not prove the full merits of his underlying claim. All that needs to be shown is a facially colorable interest in the proceeding…."). "Standing must be clearly separated from the merits in civil forfeiture cases so that the government is not relieved of its burden to prove that property is subject to forfeiture." *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 647 (7th Cir. 2015).

Rule G(6)(a) permits the government to "serve special interrogatories limited to the claimant's identity and relationship to the defendant property," but only to "gather information that bears on the claimant's standing." Supp. R. G(6)(a) & Advisory Committee Notes, 2006 Adoption. Special interrogatories are distinct from merits discovery: their purpose is "to smoke out fraudulent claims—claims by persons who have no colorable claims." *United States v. $574,840*, 719 F.3d 648, 650 (7th Cir. 2013). Special interrogatories that go beyond "claimant's identity and relationship to the defendant property"—*i.e.*, those seeking information unnecessary to determine standing—are improper. Permissible Rule G(6) inquiries are "limited to questions dealing solely with claimant's ownership interests in the property." *Bank Julius Baer*, 959 F. Supp. 2d at 92. "The scope of these interrogatories is much more limited than the scope of ordinary interrogatories issued under the Civil Rules." *Id.* at 92 n.8.

Claimants need not respond to special interrogatories that exceed that limited scope. *See, e.g.*, *United States v. $215,587.22 in U.S. Currency*, 282 F. Supp. 3d 109 (D.D.C. 2017) (quashing special interrogatories that did not implicate standing); *United States v. Two Hundred Seventy-Two*

9

*Thousand Dollars*, No. 16 Civ. 06564 (AMD), 2017 WL 8780158, at \*4 (E.D.N.Y. Oct. 26, 2017) (claimant did not need to respond to special interrogatories that were overbroad or unrelated to identity and relationship to defendant funds); *United States v. $128,915.00 In United States Currency*, No. 20 Civ. 00667 (JPG), 2021 WL 243585, at \*5 (S.D. Ill. Jan. 25, 2021) ("Because the Government's special interrogatories foreshadow a motion to strike that would meld standing and the merits, the Court will not compel Cook to respond."); *see also United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (district court's ruling striking claim "for failure to adequately respond to the special interrogatories when no special interrogatories were necessary to determine standing" was abuse of discretion), *overruled in part on other grounds by United States v. $579,475.00 in U.S. Currency*, 917 F.3d 1047 (8th Cir. 2019).

**B.    The Government's Complaint Establishes Warp Data's Standing**

The Second Circuit has made clear that a claimant's standing to contest a civil forfeiture may be established by the government's own complaint. In *United States v. Technodyne LLC*, 753 F.3d 368 (2d Cir. 2014), the government sought forfeiture of real property and bank accounts allegedly purchased with criminal proceeds. The claimants moved to dismiss; the government opposed, raising standing concerns. The Second Circuit rejected the government's argument, holding that "[t]he record in the present case belies any notion that the [claimants] lack statutory or Article III standing to oppose forfeiture of the 23 defendant properties at issue here." *Id.* at 380. The court reasoned that "the government's Complaint itself alleges that each of the bank accounts is held in the name or names of" the claimants, and "alleges that the relevant parcels of real property were purchased—with the proceeds of their crimes—by" the claimants. *Id*. Because the government's own pleading established the claimants' ownership interest, the court "reject[ed] the government's challenge to Claimants' standing to contest forfeiture." *Id*. *Technodyne* makes clear that the government cannot have it both ways; when the government's complaint alleges facts

10

establishing a claimant's ownership or possessory interest in the defendant property, the government may not then challenge that claimant's standing.

Here, the Complaint, without more, establishes Warp Data's standing beyond reasonable dispute. The Complaint alleges that Warp Data is "an entity registered in Laos that operated bitcoin mining facilities" (Compl. ¶ 16(t)) and that Warp Data's "large-scale cryptocurrency mining operation[] … produced large sums of clean bitcoin" (*id.* ¶ 42). The Complaint further alleges that "extensive blockchain tracing" by the FBI determined that the Defendant Cryptocurrency came primarily from "two categories of sources," the first being "cryptocurrency mining, including addresses associated with Lubian and Warp Data." (*Id.* ¶ 45). The Complaint identifies at least 47,680.03 Bitcoin as "newly mined," "newly minted," or "from bitcoin mining." (*See id.* ¶¶ 50, 55(a), 55(c), 55(d), 55(f)).

These allegations establish Warp Data's standing. An entity that mines cryptocurrency both creates and possesses it. The miner is the original and sole owner of the cryptocurrency, unless the miner validly transfers title to someone else. The government's Complaint acknowledges as much, describing Warp Data's mining as the source of "large sums of clean bitcoin." (Compl. ¶ 42). By alleging that Warp Data mined a substantial portion of the Defendant Cryptocurrency—and specifying the quantity of mined bitcoin in the seized property—the government has itself alleged the facts necessary to establish Warp Data's colorable ownership interest. Having identified Warp Data by name as the original miner of much of the *res*, the government cannot now profess uncertainty about whether Warp Data has a "facially colorable interest" in the property it created. *$557,933.89*, 287 F.3d at 78.

The government's claim, now, that it must use Rule G(6) interrogatories to "test" standing that it has already established in its own verified pleading is disingenuous and runs afoul of the

rule's limited purpose. Warp Data is not seeking to interject itself into a forfeiture of property it has no connection to; it is the very entity named in the government's Complaint and identified as the miner of much of the bitcoin at issue in this proceeding. The government cannot use Rule G(6) to manufacture a standing dispute where its own allegations have foreclosed one. *See $215,587.22*, 282 F. Supp. 3d at 113 ("With their ownership and control acknowledged by Government, asking Claimants about, for example, the source of the funds and the circumstances of their ownership is unnecessary for the purpose of testing standing.").

In sum, the government's Complaint—like the complaint in *Technodyne*—"itself alleges" the facts necessary to establish Warp Data's standing. 753 F.3d at 381; *see also United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 501 (6th Cir. 1998) (concluding that although "the claimants could have produced more concrete evidence of ownership or possession of the seized currency," the Court was "nonetheless satisfied that the Government's own allegations of fact, which have gone uncontroverted, introduced sufficient explanation of ownership and possession to confer standing on these claimants to challenge the forfeiture"); *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir. 1992) (claimant "need not have supplemented his claim with additional evidence, because the government had admitted [claimant's] relationship to the currency in its complaint"). Warp Data mined much of the bitcoin in the Defendant Cryptocurrency. The government says so. That is the very bitcoin that Warp Data claims. The standing inquiry should end there.

## C.    Warp Data's Responses to the Special Interrogatories Provide Ample Information to Establish Standing Under Rule G(6)

Even setting aside the government's own allegations, Warp Data's responses to the Special Interrogatories independently establish both its identity and its relationship to the claimed portion

12

of the Defendant Cryptocurrency (*see* Ex. A)—the two elements Rule G(6) permits the government to probe.

### 1.    Warp Data's Responses Establish Its Identity

Rule G(6)'s requirements ensure that claimants satisfy Article III standing. These requirements set a threshold designed to "deter false claims" and bar impostors from contesting the forfeiture of property in which they have no true interest. *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 562 (D. Md. 2013); *see also United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 652-53 (7th Cir. 2013) (explaining that Rule G(6) allows the government to ensure that persons with "no colorable claim to property in government hands" do not "bog down forfeiture proceedings" with fraudulent claims). Warp Data has cleared that threshold by a wide margin. As set forth in greater detail below, it has provided comprehensive information establishing its identity: a Lao company engaged in cryptocurrency mining, registered in 2018, with clearly identified ownership, management, and corporate registration details. This information satisfies—indeed, far exceeds—Rule G(6)'s requirements, and confirms that the claimant is the same Warp Data identified in the government's Complaint.

Warp Data's responses to the Special Interrogatories provide all information necessary to establish its identity. In response to Special Interrogatory No. 1, Warp Data identified itself by its full legal name: Warp Data Technology Lao Sole Co., Ltd., along with its Tax ID number and the date and location of its registration.[3] (Ex. A at 4). Warp Data identified the addresses of its principal office and its Luang Prabang branch. (*Id.*). Warp Data also identified its registered agent, Duangtavanh Vongnalath, along with her address. (*Id.*).

---

[3] Notably, Warp Data provides in these responses its tax ID number, the very same tax ID number OFAC used to identify Warp Data when designating it as a Specially Designated National.

13

Warp Data went further still. It identified specific individuals involved in its creation. (Ex. A at 4). It identified its sole Manager, Vongnalath, and its sole shareholder, Fongthida Luengkhamfong, specifying that Luengkhamfong holds 100% of the ownership interest in the company. (*Id.* at 4-5). Warp Data also stated that its business is cryptocurrency mining. (*Id.* at 5).

Warp Data did not stop there. In response to Special Interrogatory Nos. 2 and 3, it further supplemented its identity information by providing the full name, ID Card number, nationality, and address of Vongnalath. (Ex. A at 6-7). Warp Data further provided Vongnalath's date of appointment as Manager and explained her authority as Manager, including describing the relevant shareholder resolution, employment agreements, letter of appointment, and Enterprise Registration Certificates, along with the dates of each. (Ex. A at 5-7).

This detailed information is more than sufficient to establish Warp Data's identity under Rule G(6). There can be no genuine dispute about who Warp Data is, or that it is the entity described in the government's Complaint: a Lao company engaged in cryptocurrency mining, registered in 2018, with clearly identified ownership, management, and corporate addresses. Warp Data's responses confirm that the claimant is the same entity the government identified in its pleadings, not an impostor seeking to interfere with the forfeiture of property belonging to someone else. For the government to argue in the face of this information that it is uncertain whether the Warp Data asserting the instant claim has a colorable claim to the Warp Data Bitcoin strains credulity.

2.    Warp Data's Responses Establish Its Relationship to the Warp Data Bitcoin

Warp Data has also established the essential facts demonstrating its relationship to the Warp Data Bitcoin. The chain of ownership could hardly be more direct: Warp Data mined the bitcoin it claims using its own equipment and has been the sole rightful owner from the date mined through the present. This is not a case of attenuated or derivative claims passed through intermediaries.

14

The bitcoin at issue was born of Warp Data's own mining operations and belongs to Warp Data. This showing readily satisfies the "colorable interest" standard.

Warp Data's responses to the Special Interrogatories confirm this relationship in detail. In response to Special Interrogatory No. 4, Warp Data stated that it claims an ownership interest in at least 47,680.03 BTC previously held at the 25 virtual currency addresses listed in Attachment A of the Verified Complaint. (Ex. A at 10). Warp Data identified this bitcoin as the portion described in the Complaint as "newly mined," "newly minted," or "from bitcoin mining"—labels the government itself chose based on information in the government's possession. (*Id.*). Warp Data explained the basis for its ownership: mining through operations in Laos and elsewhere from 2018 through 2020, or mining through participation in mining pools, including the LuBian pool, during the same period. (*Id.*). Warp Data specified that this mining was conducted using its own equipment. (*Id.*). The thread connecting Warp Data to the Warp Data Bitcoin is unbroken: Warp Data mined the Bitcoin it claims using its own equipment and has been the rightful owner of it from the moment those coins came into existence. (*Id.*).

Warp Data also explained an alternative basis for its interest—one rooted in fundamental property law. Warp Data stated that it claims an interest in the Warp Data Bitcoin as the beneficiary of a constructive trust. (Ex. A at 10). In December 2020, the Defendant Cryptocurrency was stolen. (*Id.*). Because a thief cannot convey good title, successive possessors could not have acquired valid ownership and thus held the Warp Data Bitcoin in trust for Warp Data. (*Id.*).

In response to Special Interrogatory Nos. 5 and 9, Warp Data explained the arrangement relevant to the Warp Data Bitcoin: LuBian maintained the wallets that contained the Defendant Cryptocurrency, including the Warp Data Bitcoin, through Warp Data's participation in the LuBian

15

mining pool. (Ex. A at 11, 15). Warp Data owned the coins and kept them at wallets maintained by LuBian.

Warp Data's responses also make clear that its claim stands alone. No one else has ever held an ownership stake in the bitcoin Warp Data mined. (Ex. A at 10). Warp Data specifically stated that neither Prince Holding Group, Chen Zhi, nor any of the other entities identified by the government has ever had an ownership interest in Warp Data or in the mining equipment owned by Warp Data. (*Id.* at 10, 14, 18, 19, 21). Thus, to the extent the government is asking whether Warp Data somehow acts as an "alter ego" of Chen Zhi or Prince Holding Group, it has Warp Data's answer—there is no such connection.

These responses fully satisfy Rule G(6). Warp Data has identified the portion of the Defendant Cryptocurrency to which it claims ownership, quantified that interest as at least 47,680.03 BTC, explained the basis for its ownership, described the custodial arrangement, and confirmed that no other party has an ownership interest in the bitcoin it mined. *See United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 351 (6th Cir. 2017) ("At the pleading stage, a verified claim of ownership is sufficient to satisfy Article III and the procedural requirements of Rule G."); *$17,900.00*, 859 F.3d at 1089-90 ("The requirements for a claimant to demonstrate constitutional standing to challenge a forfeiture are very forgiving. In general, any colorable claim on the property suffices—typically, an ownership or possessory interest."); *$239,400*, 795 F.3d at 643 ("[S]atisfying procedural requirements—not demonstrating 'legitimate' ownership—is all that Rule G asks of claimants aside from showing constitutional standing."); *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004) ("[T]he claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake."); *$557,933.89*, 287 F.3d at 79 ("[T]he only question that the courts need assess

16

regarding a claimant's standing is whether he or she has shown the required facially colorable interest, not whether he ultimately proves the existence of that interest.").

In the face of this comprehensive showing, the government's attempt to question Warp Data's standing rings hollow. Taken together with the government's own allegations acknowledging Warp Data as the miner, Warp Data's responses leave no genuine dispute that it has a legitimate interest in the bitcoin it created.

**D.      The Contested Interrogatories Exceed the Scope of Supplemental Rule G(6)**

Rule G(6) provides a narrow procedural path for the government: it lets the government test whether a claimant has standing—nothing more. The disputed requests blow past that limitation. They do not probe Warp Data's standing; they demand detailed information about assets, transactions, and third parties that could matter only if the Court were deep into the merits. The simplest test for whether an interrogatory is permissible under Rule G(6) is whether the answer makes it more or less likely that Warp Data has a colorable interest in the property it claims. If it would instead have no bearing on whether Warp Data has this colorable interest, the interrogatory has no place in a Rule G(6) inquiry. By that measure, the requests Warp Data moves to quash fail.

**1.      The Contested Interrogatories Seek Information About Assets Other Than the Warp Data Bitcoin**

Several Contested Interrogatories cast a wide net, reaching far beyond Warp Data's interest in the seized cryptocurrency in what amounts to a wide-ranging investigation into every asset Warp Data has ever touched. That is not what Rule G(6) permits.

Special Interrogatory No. 4 demands, among other things, that Warp Data identify "all virtual currency addresses, or accounts . . . from which any of the virtual assets at each address in Attachment A originated (the 'source accounts') and through which such assets passed (the 'intermediate accounts')," as well as the "origin of all funds . . . in those source accounts." (Ex. A

at 8). Special Interrogatory No. 5 asks Warp Data to identify "any and all individuals or entities" that have "exercised control over any virtual assets that are part of the Defendant Cryptocurrency"—including portions of the Defendant Cryptocurrency that Warp Data does not claim. (*Id.* at 10). Special Interrogatory No. 6 seeks "all forms of electronic communication . . . used to exchange information regarding the interests of . . . others in the Defendant Cryptocurrency." (*Id.* at 11). And Special Interrogatory No. 15 and Clarifying Request No. 7 ask Warp Data to explain the relationship between its interest and the interests asserted by other claimants, Chen Zhi, Prince Holding Group, and LuBian. (*Id.* at 20; Ex. B at 1).

These requests are overbroad because they seek information about property and claims other than Warp Data's own. Rule G(6) discovery must remain tethered to whether the claimant has a facially colorable interest in the *res*. The government is not entitled to a forensic audit of every "source account" or a map of every other claimant's stake in the seized funds. *See United States v. $272,000*, No. 16 Civ. 06564 (AMD), 2017 WL 8780158, at *4 (E.D.N.Y. Oct. 26, 2017) (declining to require claimant to identify "any and all bank accounts . . . in which she has any interest or which are held for her benefit" because the request was "overbroad" and "seeks information about other properties or money that the claimant owns").

Finally, the government cannot demand the impossible. Warp Data cannot identify "any and all individuals or entities" that "have exercised control over any virtual assets that are part of the Defendant Cryptocurrency," including portions Warp Data does not claim. (Ex. A at 10). No claimant could. If the government wants a complete transaction history, it should consult its own investigative files—the same files that presumably led it to seize these assets. And Warp Data cannot shed any light on what happened between December 2020—when the cryptocurrency was stolen—and October 2025—when the Complaint was filed—because that information lies

18

exclusively in the government's hands. The government is asking Warp Data to produce answers that only the government possesses.

2.    The Contested Interrogatories Seek Information About Persons and Entities Other Than Warp Data

Many of the Contested Interrogatories abandon any pretense of inquiring into Warp Data's standing and instead demand information about the operations, corporate structure, and beneficial ownership of third parties, including other claimants. These requests do not merely exceed Rule G(6)'s narrow scope; they are directed at the wrong party entirely. More importantly, they lay bare what the government is really attempting to do: belatedly investigate the facts underlying its case, in an attempt to avoid dismissal of its Complaint.

Special Interrogatory No. 7 asks Warp Data to identify "each individual or individuals who has had access to" a particular email account. (Ex. A at 12). This question is not limited to Warp Data's identity or relationship to the Warp Data Bitcoin—or, indeed, to any individual's or entity's relationship to the Warp Data Bitcoin. It seeks information not in Warp Data's possession, custody, or control, and Warp Data has no basis to respond.

Special Interrogatories Nos. 10 and 11 are directed entirely at information about LuBian, another claimant. Special Interrogatory No. 10 demands that Warp Data "describe LuBian's operations in detail" and identify LuBian's ownership structure, operating locations, employees, governing documents, financial accounts, and relationship to the governments of China and Iran. (Ex. A at 15). Special Interrogatory No. 11 asks Warp Data to identify all persons who have knowledge of LuBian's business, have an ownership interest in LuBian, or have served as LuBian employees or officers. (*Id.* at 16). Initially, Warp Data is not LuBian and there is no basis for supposing it has knowledge of LuBian's internal operation. Moreover, these questions cannot possibly have anything to do with Warp Data's standing because they do not pertain to Warp Data

19

at all. Rather, these interrogatories seek to conscript Warp Data as an informant on another claimant—a role Rule G(6) does not permit. If the government wants to know about LuBian, it should ask LuBian.

Special Interrogatory No. 12 is even further afield. It asks Warp Data to provide detailed information about the business operations, corporate structure, and personnel of seven separate entities: Warp Data (US) Technology Inc., Future Technology Investment, Amber Hill Ventures Limited, Lateral Bridge Global Limited, Hing Seng Limited, Amiga Entertainment Limited, and Ableton Prestige Global Limited. The interrogatory asks Warp Data to describe each entity's date of incorporation, business addresses, governing documents, subsidiaries, and the identity of all persons with knowledge of each entity's operations. (Ex. A at 17-18). The government has effectively demanded a corporate audit of seven organizations, none of which is a party to this action. Even if Warp Data produced a dossier on each, none of that information could plausibly change whether Warp Data has standing. Warp Data has already confirmed that none of these entities have ever had an ownership interest in Warp Data or its mining equipment (*id.* at 10, 14, 18, 19, 21)—the only information that could even arguably bear on standing.

Special Interrogatories Nos. 8, 9, 13, 14, and 16, along with Clarifying Requests Nos. 2, 3, and 7, seek extensive information about Warp Data's alleged relationships with Prince Holding Group, Chen Zhi, and LuBian. (Ex. A at 13-14, 18-19, 21; Ex. B at 1). They ask Warp Data to describe "any relationship" it has "ever had" with these entities, including ownership interests, employment relationships, advisory roles, financial accounts, and virtual currency addresses. They seek communications between Warp Data and Chen Zhi, the identities of all Warp Data employees with knowledge of Chen Zhi, and detailed information about the business relationships of Warp Data's shareholder and founders with these third parties.

20

These requests are not directed at Warp Data's relationship to any portion of the Defendant Cryptocurrency. They are directed at Warp Data's relationships with individuals and entities that interest the government for reasons unrelated to standing. Any suggestion that these requests go to Warp Data's "identity" stretches Rule G(6) beyond recognition. The rule uses "identity" narrowly—to confirm that a claimant is a real, legally cognizable entity, not to conduct a sprawling investigation into its broader corporate affiliations or business relationships. The contested interrogatories do not ask who Warp Data *is*; they ask who Warp Data *knows*. That is a fishing expedition dressed up as a standing inquiry. *See United States v. Amadea*, No. 23 Civ. 9304 (DEH), 2024 U.S. Dist. LEXIS 54490, at \*1-2 (S.D.N.Y. Mar. 22, 2024) ("To the extent that the interrogatories seek information about relationships among third parties . . . it is unclear how this information bears on Claimants' relationship to the res."). Warp Data has already confirmed that neither Chen Zhi nor Prince Holding Group has ever owned Warp Data or its mining equipment, and that Warp Data is the owner of the bitcoin it mined. No further response is required.

3.    The Contested Interrogatories Seek Details Unnecessary to Establish Standing and Are Designed to Facilitate Premature Merits Discovery

Even apart from the specific defects identified above, the contested requests are objectionable because they seek detail far beyond what is necessary to establish standing—detail that belongs, if anywhere, in a merits phase that has not yet arrived. The "standing inquiry" under Rule G(6) is distinct from the "'merits determination that comes later.'" *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 959 F. Supp. 2d 81, 95 (D.D.C. 2013) (quoting *United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003))). A claimant need only demonstrate "a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *Bank Julius Baer*, 959 F. Supp. 2d at 95. Rule G(6) sets a low bar: the claimant

21

need only show a facially colorable interest. It does not require a full accounting of how the assets were used, where they traveled, or who else may have handled them. The contested requests vault over this threshold, demanding not a showing of colorable interest but a full accounting of Warp Data's operations.

For example, portions of Special Interrogatory Nos. 1 through 6 ask Warp Data to identify "all" persons involved in creating the entity, "all" governing documents, "all" affiliates and subsidiaries, and "all" electronic communication relating to the Defendant Cryptocurrency (Ex. A at 3-12)—none of which could change the standing calculus. Several terms are also vague: Special Interrogatory No. 1 uses undefined terms such as "persons involved in the creation of the entity," "other governing documents," "affiliates," and "other interest in the entity." (*Id.* at 3). Special Interrogatory No. 13 similarly asks about persons "associated with" Chen Zhi without defining that term. (*Id.* at 19). Other requests seek the identity of everyone who has ever controlled any portion of the Defendant Cryptocurrency (*id.* at 10), the circumstances of every intermediate transfer (*id.* at 8), and detailed descriptions of mining operations including "how, when, and by whom they were funded" (*id.*). Clarifying Requests Nos. 4 through 6 demand even more granular information: the specific amount of bitcoin at each of 25 wallet addresses, the source of every bitcoin that is not newly mined, and the location of mining equipment between 2018 and 2020. (Ex. B at 1). These requests are overbroad, unduly burdensome, and disproportionate at this stage. The government is not entitled to information this extensive before merits discovery begins where Warp Data has already demonstrated a colorable interest. *See $215,587.22*, 282 F. Supp. 3d at 111 (quashing special interrogatories that were "overly broad and burdensome"); *$104,250.00*, 947 F. Supp. 2d at 563 (special interrogatories under Rule G(6) must provide "the focused inquiry that the drafters intended and that the interests of justice require").

22

In sum, the contested Special Interrogatories and clarifying requests exceed Rule G(6)'s scope because they seek information about assets other than the Warp Data Bitcoin, information about persons and entities other than Warp Data, and details unnecessary to establish standing. Warp Data has provided responses sufficient to confirm both its identity and its relationship to the property it claims. The government's remaining requests are not standing inquiries; they are impermissible attempts to conduct one-sided and premature discovery and to fill holes in an investigation the government should have conducted long before its seized Warp Data's property. Warp Data respectfully requests that the Contested Interrogatories be quashed.

**CONCLUSION**

The Court should quash Special Interrogatories 7, 11, 14, and 16, portions of Special Interrogatories 1-6, 8-10, 12-13, and 15, and the government's so-called "clarifying requests," and grant Warp Data such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 15, 2026

PRYOR CASHMAN LLP

By:    /s/ David Abramowicz
David Abramowicz
Jeffrey Alberts
Sidhardha Kamaraju
Katherine Reilly
7 Times Square
New York, NY 10036
Tel.: 212-326-0800
dabramowicz@pryorcashman.com
jalberts@pryorcashman.com
skamaraju@pryorcashman.com
kreilly@pryorcashman.com

Attorneys for Claimant Warp Data
Technology Lao Sole Co. Ltd

24