UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    - against -<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>    Defendants *in rem*. | No. 25 Civ. 05745 (RPK) (CHK) |

**CLAIMANT WARP DATA TECHNOLOGY LAO SOLE CO. LTD'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH
<u>CERTAIN OF THE GOVERNMENT'S SPECIAL INTERROGATORIES</u>**

Of counsel:

David Abramowicz
Jeffrey Alberts
Sidhardha Kamaraju
Katherine Reilly
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .....................................................................................................................1

I.      STANDING REQUIRES MERELY A FACIALLY COLORABLE INTEREST, NOT THE DETAILED PROOF THE GOVERNMENT DEMANDS .........................1

        A.     The Government's Own Allegations Establish Standing Under *Technodyne* ...2

        B.     Warp Data's Sworn Assertion of Continued Ownership Confirms Standing....3

        C.     LuBian's Role and Warp Data's Lack of Possession Do Not Defeat Standing.4

        D.     Warp Data's Claim Is Sufficiently Specific to the Res, and Address-Level Tracing Is Not Required at This Stage................................................................5

II.     THE GOVERNMENT'S RULE G(6) AUTHORITIES DO NOT JUSTIFY THE TYPE OF MERITS DISCOVERY THE GOVERNMENT SEEKS ............................5

        A.     Unlike the Claimants in the Government's Cited Cases, Warp Data Has an Established Connection to the Res...................................................................5

        B.     The Concern About Impostor Claimants Does Not Apply When the Government Named the Claimant and Tied It to the Res.................................7

        C.     The Government's Nominee/Alter-Ego Theory Lacks Any Predicate and Does Not Justify Expanded Rule G(6) Discovery ......................................................8

        D.     The Contested Interrogatories Sweep Far Beyond What Rule G(6) Allows .....8

        E.     The Government's Remaining Critiques Go to the Merits, Not Standing.......10

CONCLUSION.................................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 650 Fifth Ave. and Related Props.*,
No. 08-CV-10934 (KBF), 2013 WL 4572527 (S.D.N.Y. Aug. 27, 2013) ...............................5

*In re Enforcement of Philippine Forfeiture Judgment*,
153 F.4th 142 (2d Cir. 2025) ...................................................................................................2

*Mercado v. U.S. Customs Serv.*,
873 F.2d 641 (2d Cir. 1989).................................................................................................2, 7

*Torres v. $36,256.80*,
25 F.3d 1154 (2d Cir. 1994)..................................................................................................2, 4

*United States v. $100,348*,
354 F.3d 1110 (9th Cir. 2004) ..................................................................................................7

*United States v. $104,250.00*,
947 F. Supp. 2d 560 (D. Md. 2013) ..........................................................................................7

*United States v. $128,915.00*,
No. 20-CV-00667-JPG, 2021 WL 243585 (S.D. Ill. Jan. 25, 2021)........................................6

*United States v. $133,420.00*,
672 F.3d 629 (9th Cir. 2012) .................................................................................................1, 6

*United States v. $17,900.00*,
859 F.3d 1085 (D.C. Cir. 2017)................................................................................................2

*United States v. $196,969.00*,
719 F.3d 644 (7th Cir. 2013) ....................................................................................................9

*United States v. $215,587.22*,
282 F. Supp. 3d 109 (D.D.C. 2017)........................................................................................10

*United States v. $239,400*,
795 F.3d 639 (7th Cir. 2015) ...........................................................................................2, 7, 9

*United States v. $272,000*,
No. 16-CV-06564-AMD, 2017 WL 8780158 (E.D.N.Y. Oct. 26, 2017) .........................5, 8, 9

*United States v. $307,970.00*,
No. 12-CV-136-FL, 2013 WL 4095373 (E.D.N.C. Aug. 13, 2013).........................................6

*United States v. $31,000.00*,
    872 F.3d 342 (6th Cir. 2017) ........................................................................3, 5

*United States v. $38,000.00*,
    816 F.2d 1538 (11th Cir. 1987) ........................................................................5

*United States v. $38,570*,
    950 F.2d 1108 (5th Cir. 1992) ........................................................................3, 7

*United States v. $421,090.00*,
    No. 11-CV-00341-JG, 2011 WL 3235632 (E.D.N.Y. July 27, 2011) ...................................2, 7

*United States v. $515,060.42*,
    152 F.3d 491 (6th Cir. 1998) ........................................................................3, 4, 7

*United States v. $557,933.89*,
    287 F.3d 66 (2d Cir. 2002)........................................................................2, 7, 11

*United States v. Cambio Exacto S.A.*,
    166 F.3d 522 (2d Cir. 1999)........................................................................4, 8

*United States v. M/Y Amadea*,
    770 F. Supp. 3d 558 (S.D.N.Y. 2025)........................................................................2

*United States v. M/Y Amadea*,
    No. 23-CV-9304-DEH, 2024 U.S. Dist. LEXIS 54490 (S.D.N.Y. Mar. 22,
    2024) ........................................................................8, 10

*United States v. Real Properties*,
    No. 18-CV-9293, 2019 WL 4877490 (D.N.J. Oct. 2, 2019) ...................................6, 7

*United States v. Ribadeneira*,
    105 F.3d 833 (2d Cir. 1997)........................................................................5

*United States v. Ross*,
    161 F.4th 100 (2d Cir. 2025) ........................................................................2

*United States v. Technodyne LLC*,
    753 F.3d 368 (2d Cir. 2014)........................................................................2, 3

**Statutes**

Fed. R. Civ. P. 8(d)(2)-(3)........................................................................11

Fed. R. Civ. P. 26(b)(1)........................................................................9, 10

Supp. R. G(6)(a)........................................................................1

## PRELIMINARY STATEMENT

The government characterizes Warp Data Technology Lao Sole Co. Ltd. ("Warp Data") as "seeking to make itself a litigant in this dispute." That rhetoric is backwards: the government seized the Defendant Cryptocurrency, and its own Complaint ties those assets to Warp Data's mining; of course Warp Data seeks to recover its property. Rule G(6) allows only identity-and-relationship-to-the-res questions bearing on standing, and this Court has so confined the government's interrogatories. Warp Data has answered them and verified its mining-based claim under oath. The government nevertheless demands merits discovery—"which bitcoin" Warp Data owns and address-level tracing through particular wallets—that Rule G(6) does not require front-loading. Because the government cannot articulate how the contested requests bear on Warp Data's colorable interest in the res, they should be quashed.

## ARGUMENT

**I.  STANDING REQUIRES MERELY A FACIALLY COLORABLE INTEREST, NOT THE DETAILED PROOF THE GOVERNMENT DEMANDS**

The government's opposition mischaracterizes the applicable legal standard, demanding that Warp Data identify "which bitcoin" it owns, explain how it could own coins the government apparently thought were "mined and controlled by others," and reconcile competing claimants' narratives—all under Rule G(6). (ECF 439 ("Gov't Opp."), at 4-13). But Rule G(6) permits only "special interrogatories limited to the claimant's identity and relationship to the defendant property" to "gather information that bears on the claimant's standing." Supp. R. G(6)(a) & Advisory Comm. Note (2006); *see also United States v. $133,420.00*, 672 F.3d 629, 635 (9th Cir. 2012).[1] This Court has drawn the same line. (Text Order of Feb. 17, 2026). Wallet-by-wallet tracing and precise

---

[1] Unless otherwise noted, this memorandum's case law citations omit internal quotation marks, alterations, citations, and footnotes.

1

quantum are merits questions, and courts repeatedly warn against "erroneous melding of standing and the merits" at this threshold stage. *United States v. $239,400*, 795 F.3d 639, 645, 646 (7th Cir. 2015).

Article III standing in forfeiture is a "very forgiving" inquiry. *United States v. $17,900.00*, 859 F.3d 1085, 1089 (D.C. Cir. 2017). "[T]he only question that the courts need assess regarding a claimant's standing is whether he or she has shown the required facially colorable interest, not whether he ultimately proves the existence of that interest." *United States v. $557,933.89*, 287 F.3d 66, 78 (2d Cir. 2002).[2] Standing is binary: a colorable interest in any portion of the res confers standing to contest the forfeiture as a whole. *See United States v. $421,090.00*, No. 11-CV-00341-JG, 2011 WL 3235632, at *5 (E.D.N.Y. July 27, 2011) ("colorable ownership interest in even a portion of the funds is sufficient to establish a concrete interest in the proceedings as a whole"). Warp Data plainly meets that low threshold.

## A.    The Government's Own Allegations Establish Standing Under *Technodyne*

The government concedes the Complaint "alleges *some* involvement by Warp Data in bitcoin mining that ultimately funded the wallets containing the Defendant Cryptocurrency."

---

[2] The government's opposition letter neglects to mention the "facially colorable interest" standard and asserts—incorrectly—that standing "must be proved by a preponderance of the evidence." (Gov't Opp. 3). The word "preponderance" does not appear in the first case the government cites for that proposition, *Mercado v. U.S. Customs Serv.*, 873 F.2d 641 (2d Cir. 1989). *Mercado* holds only that an attorney's "hearsay and conclusory" affidavit on information and belief is insufficient absent "some indicia of reliability or substance to reduce the likelihood of a false or frivolous claim." *Id.* at 645. The second case the government cites, *United States v. M/Y Amadea*, 770 F. Supp. 3d 558 (S.D.N.Y. 2025), concluded as a "matter of apparent first impression" that the preponderance standard applies at a Rule G(8) evidentiary hearing "[w]here the government makes a prima facie showing of straw ownership." *Id.* at 559, 613. Neither case displaces the Second Circuit's repeated holding that, in the ordinary civil forfeiture matter, standing requires only a "facially colorable" ownership or possessory interest. *United States v. Ross*, 161 F.4th 100, 110 (2d Cir. 2025); *In re Enforcement of Philippine Forfeiture Judgment*, 153 F.4th 142, 165 (2d Cir. 2025); *$557,933.89*, 287 F.3d at 78; *Torres v. $36,256.80*, 25 F.3d 1154, 1158 (2d Cir. 1994).

(Gov't Opp. 10 n.3). And the Complaint goes well beyond "*some*" involvement: it alleges that Warp Data's "large-scale cryptocurrency mining operation[] … produced large sums of clean bitcoin" and that "extensive blockchain tracing" traced the Defendant Cryptocurrency primarily to "cryptocurrency mining, including addresses associated with Lubian and Warp Data." (Compl. ¶¶ 42, 45). These concessions resolve the standing question. *See United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998) ("owner or possessor" of seized property "necessarily suffers an injury").

The Second Circuit's decision in *United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014), confirms that the government cannot reverse course on standing where its own complaint ties the claimant to the res. The government tries to wave *Technodyne* away as dictum (Gov't Opp. 10), but the standing ruling is a holding. Standing is jurisdictional, the government in *Technodyne* fully briefed an Article III challenge, and the panel "reject[ed] the government's challenge to Claimants' standing to contest forfeiture" as a necessary predicate to reaching the merits. *Technodyne*, 753 F.3d at 380.. A ruling that resolves a fully litigated jurisdictional question necessary to the disposition is the paradigm of a holding that is binding on this Court. The government's contrary reading would let it allege a claimant's ownership to justify seizure and then deny that claimant standing to challenge it. That cannot be the law.

**B.     Warp Data's Sworn Assertion of Continued Ownership Confirms Standing**

Warp Data has also verified under oath that it did not transfer any ownership interest in the bitcoin it mined and remains the owner. (ECF 64 ("Warp Data Verified Claim") ¶¶ 4-7; ECF 411.1 ("Ex. A"), at 10). A verified ownership assertion, paired with the Complaint's tie to the res, clears Article III's low bar. *See United States v. $31,000.00*, 872 F.3d 342, 351 (6th Cir. 2017) ("At the pleading stage, a verified claim of ownership is sufficient to satisfy Article III and the procedural requirements of Rule G."); *United States v. $38,570*, 950 F.2d 1108, 1113 (5th Cir. 1992). The

3

government's reliance on *Olivo*'s "bare assertion" language (Gov't Opp. 4 (citing *Olivo v. United States*, No. 96-CV-2620-MBM, 1997 WL 23181, *7 (Jan. 22, 1997)) is misplaced: Warp Data's claim is not bare. It is sworn; particularized as to the basis (mining with Warp Data's own equipment); tied to a subset of a fixed res; and corroborated by the Complaint's own allegations.

### C.      LuBian's Role and Warp Data's Lack of Possession Do Not Defeat Standing

The government argues that Warp Data lacks standing because it did not control the 25 addresses when the Defendant Cryptocurrency was stolen by a hacker in December 2020, and because LuBian maintained wallets for pool participants. (Gov't Opp. 8-9). Both arguments fail.

First, Article III turns on a colorable ownership interest—legal or equitable—not contemporaneous possession. *See United States v. Cambio Exacto S.A.*, 166 F.3d 522, 527 (2d Cir. 1999) (ownership/possession are indicators of injury, not rigid requirements); *$515,060.42*, 152 F.3d at 498. A thief cannot convey good title, and successive possessors hold stolen property in constructive trust for the true owner. *See Torres*, 25 F.3d at 1157-58. That equitable interest is a property interest in the very coins at issue, not a generalized creditor claim untethered to the res. The Defendant Cryptocurrency was stolen from the LuBian-maintained pool wallets in December 2020 (Ex. A at 10), but Warp Data's equitable title in the coins it mined survived the theft, providing an independent basis for standing alongside its mining-based legal title.

Second, custody is not ownership. The Second Circuit "look[s] to ownership and possession" to weed out straw owners, but does not require a custodian to lack control for an owner to establish a colorable interest. *Cambio Exacto*, 166 F.3d at 527-28. Holding assets in a custodian-maintained wallet is akin to storing jewelry in a safe-deposit box: the custodian maintains access, but the depositor remains the owner. The bailment framework confirms the point. Warp Data, the bailor, owns the bitcoin it mined; LuBian, the bailee, held those coins in pool wallets. A bailee "has a possessory interest in the bailed currency" sufficient for Article III standing, while the bailor's

4

independent ownership-based standing remains intact. *United States v. $38,000.00*, 816 F.2d 1538, 1544 (11th Cir. 1987). Even if LuBian had custody of these coins, that custody would not negate Warp Data's ownership of the bitcoin Warp Data mined. (Ex. A at 10-11, 15).

### D. Warp Data's Claim Is Sufficiently Specific to the Res, and Address-Level Tracing Is Not Required at This Stage

Warp Data's claim is specific to a defined subset of a fixed res—the approximately 127,271 bitcoin at the 25 Attachment A addresses—and is tied to coins the Complaint itself attributes to mining (ECF 64 ¶¶ 5-7; Compl. ¶¶ 50, 55(a), 55(c)-(f)). The government's reliance on cases requiring an interest in a "particular, specific asset" (Gov't Opp. 4) is misplaced: those decisions reject creditor-style claims untethered to the seized property, not ownership claims by the very entity the Complaint identifies as the miner. *See United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997) (general creditors lacked standing); *In re 650 Fifth Ave. and Related Props.*, No. 08-CV-10934 (KBF), 2013 WL 4572527, at *3 (S.D.N.Y. Aug. 27, 2013). Nor does Rule G(6) require the address-level tracing the government demands—that Warp Data "identify the virtual currency addresses or accounts from which any of [its claimed] assets originated and through which they passed." (Gov't Opp. 7); *see $31,000.00*, 872 F.3d at 351-52.

## II. THE GOVERNMENT'S RULE G(6) AUTHORITIES DO NOT JUSTIFY THE TYPE OF MERITS DISCOVERY THE GOVERNMENT SEEKS

### A. Unlike the Claimants in the Government's Cited Cases, Warp Data Has an Established Connection to the Res

The Rule G(6) decisions the government cites allowed limited interrogatories only where the claimant asserted at most a possessory interest and the complaint provided no independent basis to tie the claimant to the res. (Gov't Opp. 4-5). Those courts used Rule G(6) to confirm any connection to the property, not to probe how much a concededly entitled claimant owns. *See United States v. $272,000*, No. 16-CV-06564-AMD, 2017 WL 8780158, at *1, 3-4 (E.D.N.Y. Oct. 26,

5

2017) (cash held for friend, no independent corroboration); *United States v. $307,970.00*, No. 12-CV-136-FL, 2013 WL 4095373, at *1 (E.D.N.C. Aug. 13, 2013) (currency seized from vehicle, no detail or complaint tie); *$133,420.00*, 672 F.3d at 640 (no unequivocal claim of ownership).

Warp Data stands in a fundamentally different posture. It has unequivocally asserted ownership under oath (ECF 64 ¶¶ 4-7), and the Complaint alleges that it mined bitcoin that funded the seized wallets—as the government concedes (Gov't Opp. 10 n.3). *See $133,420.00*, 672 F.3d at 638 ("unequivocal assertion of an ownership interest" alone establishes standing at the threshold). The government disputes only *how much* Warp Data owns and *which* units it claims; indeed, it candidly describes its contested interrogatories as "designed to determine which bitcoin Warp Data claims to own and how it can be that it owns bitcoin that was mined and controlled by others." (Gov't Opp. 13). Using Rule G(6) to probe quantum improperly crosses the standing/merits line. *See United States v. $128,915.00*, No. 20-CV-00667-JPG, 2021 WL 243585, at *5 (S.D. Ill. Jan. 25, 2021).

The government's argument that the Complaint *contradicts*—rather than corroborates—Warp Data's claim, and therefore heightens Warp Data's Rule G(6) burden (Gov't Opp. 10-11 (citing *United States v. Real Properties*, No. 18-CV-9293, 2019 WL 4877490, at *3 (D.N.J. Oct. 2, 2019))), misreads both the Complaint and *Real Properties*. The Complaint corroborates Warp Data's standing in material part: it identifies Warp Data as a real Lao cryptocurrency-mining operation (Compl. ¶ 16(t)) whose "large-scale cryptocurrency mining operation[]" "produced large sums of clean bitcoin" (Compl. ¶ 42), and it traces the Defendant Cryptocurrency primarily to mining "including addresses associated with Lubian and Warp Data" (Compl. ¶ 45). That suffices for Article III. The points the government characterizes as "contradictions"—the precise quantum of Warp Data's interest, particular wallet attribution, and the interplay among Warp Data's,

6

LuBian's, and Chen Zhi's claims—do not negate Warp Data's colorable interest; they concern allocation among potentially overlapping ownership claims, which is a classic merits question. *See $557,933.89*, 287 F.3d at 78; *$239,400*, 795 F.3d at 644-46. *Real Properties* is inapposite: there, multiple LLC claimants asserted bare title to real estate that the complaint alleged was beneficially owned and controlled by a single individual—a textbook nominee scenario in which the complaint and claims were facially irreconcilable. 2019 WL 4877490, at *3. Here, the Complaint and Warp Data's claim align on the dispositive standing fact: Warp Data mined bitcoin that funded the res.

## B. The Concern About Impostor Claimants Does Not Apply When the Government Named the Claimant and Tied It to the Res

The government invokes Rule G(6)'s purpose of guarding against "false claims" and impostors (Gov't Opp. 3-4). In most of the cases it cites for that proposition, the claimant's connection to the res was genuinely in question. *See Mercado*, 873 F.2d at 645 (only attorney affidavit on information and belief supported claim); *United States v. $100,348*, 354 F.3d 1110, 1118 (9th Cir. 2004) (deficient verification); *United States v. $104,250.00*, 947 F. Supp. 2d 560, 563 (D. Md. 2013) (vague claim, multiple aliases). The government's reliance on *$421,090.00* in fact cuts the other way: standing was found there because, as here, the claimant attested to ownership of at least "a portion of the funds" and the government's own allegations corroborated him in part. *See* 2011 WL 3235632, at *4-5.

These concerns have no application to Warp Data. The government investigated Warp Data to the point of designating it a Specially Designated National through OFAC, named it in the Complaint, and alleged that its mining was a primary source of the Defendant Cryptocurrency. (Compl. ¶¶ 16(t), 42, 45). Warp Data is not a stranger parachuting in with an amorphous claim; it is the very entity the government identified as the miner. *See $515,060.42*, 152 F.3d at 500-01; *$38,570*, 950 F.2d at 1113.

### C. The Government's Nominee/Alter-Ego Theory Lacks Any Predicate and Does Not Justify Expanded Rule G(6) Discovery

The government suggests that Warp Data or those associated with it may be "nominees" or "alter egos" of others and that Rule G(6) permits broad third-party questioning on such issues (Gov't Opp. 8-10, 13). That suggestion fails at the threshold. The Complaint alleges that Warp Data is a real mining operation whose mining funded the res (Compl. ¶¶ 16(t), 42, 45; Gov't Opp. 10 n.3) and Warp Data denied under oath that Chen or Prince Holding Group has ever owned Warp Data or its mining equipment (Ex. A at 10, 14-15, 18-19, 21). Rule G(6) does not authorize third-party relationship-mapping untethered to the claimant's identity or relationship to the res. *See United States v. M/Y Amadea*, No. 23-CV-9304-DEH, 2024 U.S. Dist. LEXIS 54490, at *1-2 (S.D.N.Y. Mar. 22, 2024) (denying motion to compel response to interrogatories "seek[ing] information about relationships among third parties").

In any event, even some connection between Chen and Warp Data's operations would not defeat standing. Warp Data is not alleged to hold bare title to property created or owned by someone else; it is the entity the Complaint identifies as the operator of mining facilities that produced the bitcoin at issue. (Compl. ¶¶ 16(t), 42). A corporate entity that actually created property through its own operations suffers a "distinct and palpable injury" when that property is seized, regardless of who directed or funded its affairs. *See Cambio Exacto*, 166 F.3d at 527-28. The government has offered no standing-based theory for why nominee-style mapping bears on Article III. Any further inquiry into corporate governance or intercompany relationships is for merits discovery, not Rule G(6).

### D. The Contested Interrogatories Sweep Far Beyond What Rule G(6) Allows

Even when Rule G(6) interrogatories are appropriate, courts cabin them to identity and relationship to the res. The government's principal authority, *$272,000*, illustrates the point. The

8

claimant there asserted only that she was holding the seized currency for a friend in China, whose address she did not know and whose existence the government could not independently verify. *See* 2017 WL 8780158, at *3-4. On those facts, the court compelled basic "when, from whom, where, and how" acquisition details to test her bare possessory claim. *See id.* But the same court rejected interrogatories that strayed beyond Rule G(6)'s narrow remit, including a "purpose" interrogatory, an "any and all bank accounts" inventory, tax and employment fishing, and document-style demands. *Id.* at *4-5. Courts likewise reject extra-textual "spell out your interest" or "legitimate ownership" showings at the threshold. *See United States v. $196,969.00*, 719 F.3d 644, 646-47 (7th Cir. 2013); *$239,400*, 795 F.3d at 644-46.

The government's further demands—every specific virtual currency address that held Warp Data's bitcoin, every intermediate "hop," everyone who ever exercised control over any portion of the newly mined bitcoin, and corporate-audit mapping of seven non-party entities—are not "who/when/where/how" inquiries. They are the digital-asset analog to the "any and all bank accounts" inventory and "purpose/" questions *$272,000* refused to allow. 2017 WL 8780158, at *4-5. And unlike in *$272,000*, the Complaint here already ties Warp Data to the res (Gov't Opp. 10 n.3), making further "relationship to the res" discovery largely unnecessary. The demands also fail Rule 26(b)(1)'s proportionality requirement. The government holds the seized wallets and private keys (Compl. ¶ 44 & n.6), has performed "extensive blockchain tracing" (Compl. ¶ 45), and has the entire transaction history of the 25 Attachment A addresses on the public blockchain. It also already knows who Warp Data is—it used Warp Data's own tax identification number to designate Warp Data an SDN the very day it filed this action. Warp Data, by contrast, is a Lao operation whose records and personnel are largely Lao-speaking and whose pool wallets were maintained by a separate entity. Conscripting Warp Data—at the threshold standing stage—to

9

reconstruct address-by-address tracing, identify every intermediate possessor, and produce corporate audits of seven non-parties is the textbook definition of disproportionate discovery. *See* Fed. R. Civ. P. 26(b)(1); *see, e.g.*, *United States v. $215,587.22*, 282 F. Supp. 3d 109, 113-14 (D.D.C. 2017).

On third-party relationships specifically, Warp Data has already described LuBian's role, disavowed any ownership by Chen or Prince in Warp Data or its mining equipment, and confirmed that its claim rests on its mining-based title. (Ex. A at 10, 14-15, 18-19, 21). Further demands for corporate audits and sprawling relationship mapping exceed Rule G(6) and contravene this Court's order limiting interrogatories to identity and relationship to the res. *See M/Y Amadea*, 2024 U.S. Dist. LEXIS 54490, at *3; (Text Order of Feb. 17, 2026).

The same is true of the government's identity complaints. The government calls Warp Data's identity responses "contradictory or evasive" because different individuals were involved in formation versus current shareholding (Gov't Opp. 6-7). There is no contradiction: founders, incorporators, and registered agents commonly play a one-time role and then exit. Warp Data identified the individuals involved in its formation, its sole current shareholder, and its sole Manager, along with corporate registration documents, shareholder resolutions, employment agreements, letters of appointment, and enterprise registration certificates with their dates. (Ex. A at 4-7.) Most tellingly, the government has independently confirmed Warp Data's identity: the tax ID Warp Data provided in its Rule G(6) responses is the same one OFAC used to designate it as a Specially Designated National. The government cannot simultaneously sanction Warp Data based on its corporate identity and claim that the same identity is too uncertain to satisfy Rule G(6).

### E. The Government's Remaining Critiques Go to the Merits, Not Standing

The government's remaining critiques—that Warp Data "added up" amounts from illustrative Complaint examples (Gov't Opp. 6-7) and that its use of "mined or acquired" reflects

"mutually exclusive theories" (Gov't Opp. 7)—go to the merits, not standing. Warp Data's undisputed mining-based ownership suffices for standing now; any "acquired" theory is preserved for merits development. *See $557,933.89*, 287 F.3d at 78-79; Fed. R. Civ. P. 8(d)(2)-(3). Questions about precise amounts and tracing belong in merits discovery, not at the Rule G(6) stage.

**CONCLUSION**

For these reasons, and for those stated in Warp Data's opening brief, the Court should grant Warp Data's motion to quash Special Interrogatories 7, 11, 14, and 16, portions of Special Interrogatories 1-6, 8-10, 12-13, and 15, and the government's so-called "clarifying requests," and grant such other and further relief as the Court deems just and proper.[3]

Dated: New York, New York
      May 8, 2026

PRYOR CASHMAN LLP

By: */s/ David Abramowicz*
    David Abramowicz
    Jeffrey Alberts
    Sidhardha Kamaraju
    Katherine Reilly
7 Times Square, 40th Floor
New York, NY 10036
Tel.: 212-326-0800
dabramowicz@pryorcashman.com
jalberts@pryorcashman.com
skamaraju@pryorcashman.com
kreilly@pryorcashman.com

*Attorneys for Claimant Warp Data*
*Technology Lao Sole Co. Ltd*

---

[3] The government styles its filing as both an opposition to Warp Data's motion to quash and a motion to compel, presumably to preserve a sur-reply. Because the Court's ruling on the motion to quash will resolve all disputes over the contested interrogatories, and both sides have now briefed those issues fully, no further briefing is needed. Warp Data has accordingly adhered to the 3,500-word limit in Local Civil Rule 7.1(c), rather than the 8,500-word limit for opposition briefs.

11

## WORD COUNT CERTIFICATION

I, David Abramowicz, an attorney duly admitted to practice law before the courts of the State of New York, hereby certify that this brief complies with the word count limit set forth in Local Civil Rule 7.1(c) because it contains 3,493 words, excluding parts of the memorandum exempted by Local Civil Rule 7.1(c). In preparing this certification, I have relied on the word processing software used to prepare this memorandum.

Dated: New York, New York
       May 8, 2026                                    */s/ David Abramowicz*
                                                      David Abramowicz

12