

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:RMS
F. #2024R00105

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 18, 2026

<u>By ECF</u>

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   United States v. Approximately 127,271 Bitcoin
>       <u>Civil Docket No. 25-5745 (RPK)</u>

Dear Judge Kovner:

The government respectfully submits this reply in support of its motion to strike the claim and answer filed by Connie Wilson ("Claimant") pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G").

I.    <u>Relevant Procedural History</u>

On March 30, 2026, the government moved to strike Claimant's claim and answer on the basis that (1) she lacks constitutional standing because, as a fraud victim, she has no cognizable interest in the 127,271 Bitcoin that is the subject of the instant forfeiture action (the "Defendant Cryptocurrency"); and (2) she has failed to establish statutory standing because her claim does not comport with Rule G(5)(a)'s requirements and she did not timely file her answer. ECF No. 378.[1]

On April 10, 2026, Claimant filed a response in opposition to the government's motion to strike, arguing that the "motion should be denied because [she] ha[s] provided

---

[1]   That same day, the government separately submitted a motion to strike the claims and answer filed by Aylstock, Witkin, Kreis & Overholtz, PLLC on behalf of claimants identified via pseudonym ("AWKO Claimants"), ECF No. 376, and a motion to strike the claims filed by Hoda Law Firm, PLLC on behalf of various claimants identified via pseudonym ("HLF Claimants"), ECF No. 377.  AWKO Claimants and HLF Claimants subsequently filed notices of voluntary dismissal, in lieu of responding to those motions.  ECF Nos. 431–32.

documented proof of legitimate ownership and because the [g]overnment's current tactics violate the Department of Justice's own new mandate for 'fair administration.'" ECF No. 403 ("Opp'n").[2]

Pursuant to the Court's scheduling order dated March 9, 2026, this reply follows to address the arguments raised in Claimant's response.

II.    Discussion

Claimant did not—nor can she—dispute the well-established law that precludes her from contesting the instant forfeiture action. Nonetheless, the government addresses, in turn, her baseless accusations against the government and the two arguments set forth in her response.

First and foremost, it bears emphasis that the government has not seized Claimant's funds, notwithstanding her repeated assertions to the contrary. *See, e.g.*, ECF No. 113, at 1 ("The Government's seizure of our entire retirement has caused extreme financial hardship."). Her claim and subsequent filings allege that the transfer of her funds occurred in 2025, *see, e.g.*, ECF Nos. 39, at 16 (describing conduct that occurred in 2025); 113, at 1 (referring to "$805,805.24 stolen in early 2025"); 126, at 1 (referring to "[f]unds distributed in 2025"), and she asserts she "identified that these specific stolen funds were comingled into the infrastructure currently seized by the United States," *i.e.*, the Defendant Cryptocurrency, ECF No. 219, at 1; *see also, e.g.*, ECF No. 220-1, at 1 ("Claimant has performed over 2,000 hours of forensic analysis to trace the $805,805.24 in stolen VA Disability benefits directly into the pool of [Defendant Cryptocurrency]." (boldface omitted)). However, the Defendant Cryptocurrency consists only of funds stored at specified addresses—listed in Attachment A of the government's forfeiture complaint—*as of December 2020*, which are now in the government's custody. *See* ECF No. 1, at n.7, ¶ 58. Simply put, there was no opportunity for Claimant's retirement funds to become part of the Defendant Cryptocurrency, much less for the government to seize Claimant's retirement funds. Nor have any of Claimant's many, many filings explained why Claimant is persuaded that this is the case.

Even putting aside that this uncontroverted timeline makes clear that Claimant's funds are not included in the Defendant Cryptocurrency, her claim necessarily fails as a matter of law. In responding to the government's motion to strike, Claimant asserts that her "federal tax document proves that the funds in question are [her] legitimate retirement savings" and that she "ha[s] a clear and documented interest in these assets." Opp'n at 1. In doing so, however, she acknowledges that she is "a victim of fraud." *Id.* Thus, notwithstanding her bare assertion to the contrary, *see id.* (simultaneously asserting she has constitutional standing and is a fraud victim),

---

[2]    Claimant also filed a notice of non-joinder and opposition on March 30, 2026, but that submission responded to the government's above-referenced motions to strike AWKO Claimants and AWKO Claimants, *see* ECF No. 380 (citing ECF Nos. 376–77), and, therefore, is not addressed herein. Similarly, on March 31, 2026, Claimant filed a notice of supplemental authority purportedly responding to one of those motions to strike and claiming that "the [g]overnment misidentifies Claimant as a Florida resident." ECF No. 382 (citing ECF No. 377). While no substantial reply to those submissions is warranted, it bears mention that Claimant is never once referenced in those motions and that the government has never asserted that Claimant (or any other claimant) is a Florida resident. *See generally* ECF No. 377.

Claimant necessarily concedes she lacks constitutional standing because, as a victim of fraud, she is an unsecured creditor without standing to contest the forfeiture, *even if* she could trace her loss to the Defendant Cryptocurrency, *see, e.g.*, *United States v. $16,816.30 in Funds Maintained in Bank of Am. Acct. No. xxxxxxxxxxxx, Held in Name of B.V. Ventures*, 2023 WL 6613774, at *2 (N.D. Ga. Sept. 28, 2023) (finding that victim of fraudulent "robocalling" scams lacked standing to contest forfeiture of wrongdoer's seized property because victim "has no more of a legal right to the funds in the [a]ccount than anyone else because forfeiture proceeds are not intended to compensate victims in the first instance"); *United States v. Hoffman*, 2012 WL 5351797, at *2 (D. Minn. Oct. 30, 2012) (concluding that victims who loaned money to perpetrators of a mortgage fraud scheme lacked standing because, regardless of whether they could "show that [their money] was used to perpetrate the fraud," they "voluntarily transferred" that money and thus relinquished their "legal or possessory title"); *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009) (finding victims of fraudulent investment schemes that promised significant returns for "each purchase" lacked standing to contest forfeiture of seized funds because "[f]raud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property" but "instead . . . acquire a debt against their wrongdoers").

Additionally, Claimant argues that the government's motion to strike is "in direct opposition to th[e] new national policy" set forth in a Department of Justice memorandum (the "Memorandum") that directs "employees to ensure that enforcement actions are handled fairly and to avoid 'regulation by prosecution.'"[3] Her reliance on the Memorandum is misplaced because, by its own terms, the Memorandum is "not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States." Ex. A, at 1 n.1. It therefore does not create any enforceable rights for individuals like Claimant, as courts have widely recognized of similar Department of Justice guidelines and policies. *See, e.g.*, *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994) (reaffirming that "the internal guidelines of a federal agency, that are not mandated by statute or

---

[3] Claimant's response describes the relied-upon memorandum as having been issued by Acting Attorney General Todd Blanche on April 7, 2026. Opp'n at 1. However, to the government's knowledge, the only memorandum issued by Acting Attorney General Blanche on that date announced the creation of the National Fraud Enforcement Division to investigate and prosecute those who fraudulently misuse taxpayer dollars. *See* Office of the Attorney General, Dept. of Justice, "Creation of the National Fraud Enforcement Division," Apr. 7, 2026, *available at* https://www.justice.gov/ag/media/1435311/dl?inline. The phrase "regulation by prosecution," referenced in Claimant's response, *see* Opp'n at 1, does not appear in that 2026 memorandum, whose content, as a general matter, is entirely inapposite to Claimant's argument. But in "interpret[ing]" Claimant's submission "to raise the strongest arguments that [it] suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and internal quotation marks omitted); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (recognizing that *pro se* litigants must be accorded "special solicitude"), the government believes Claimant instead may have sought to refer to then-Deputy Attorney General Blanche's memorandum from April 7, *2025*, announcing the Department of Justice's prioritization of investigations and prosecutions involving individuals who cause financial hardship to digital assets investors and consumers, *see* Office of the Deputy Attorney General, Dept. of Justice, "Ending Regulation By Prosecution," Apr. 7, 2025, *available at* https://www.justice.gov/dag/media/1395781/dl. A copy of this memorandum (the "Memorandum") is attached hereto as Exhibit A.

the constitution, do not confer substantive rights on any party" (internal quotation marks omitted)); *United States v. Loften*, 518 F. Supp. 839, 857 (S.D.N.Y. 1981) (underscoring that "internal [g]overnment policies do not create rights in private citizens"), *aff'd*, 819 F.2d 1130 (2d Cir. 1987); *accord United States v. Henry*, 482 F.3d 27, 33 (1st Cir. 2007) ("Justice Department guidelines were not compelled by statute, nor intended to create private rights."). But, in any event, the government's efforts to forfeit the Defendant Cryptocurrency and criminally prosecute Chen Zhi, *see United States v. Chen*, No. 25-CR-312 (RPK), plainly align with the priorities outlined in the Memorandum.

Of note, Claimant's response (and her other filings) do not address the government's arguments regarding her failure to establish statutory standing. *See generally* Opp'n. She accordingly concedes those points. *See, e.g.*, *Blessinger v. City of New York*, 2017 WL 3841873, at *3 (S.D.N.Y. Sept. 1, 2017) (concluding that litigants who "did not respond to" certain arguments in the opposing party's motion "concede those points"), *aff'd sub nom. Byrne v. City of New York*, 736 F. App'x 263 (2d Cir. 2018); *In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *5 n.4 (S.D.N.Y. Jan. 10, 2017) (finding that arguments not rebutted in opposition briefs are deemed conceded).

III.    Conclusion

For the reasons set forth above and in the government's memorandum of law in support of its motion to strike, Claimant has failed to establish constitutional standing or statutory standing.  Accordingly, her claim and answer should be dismissed on the pleadings pursuant to Rule G(8)(c)(ii)(B).

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    ___/s/_____
Alexander F. Mindlin
Tanisha R. Payne
Benjamin Weintraub
Andrew D. Reich
Rebecca M. Schuman
Alessandra V. Rafalson
Assistant U.S. Attorneys
(718) 254-7000

Christopher B. Brown
Supervisory Trial Attorney
National Security Cyber Section
National Security Division
U.S. Department of Justice

cc:    Clerk of Court (RPK) (via ECF)
Claimant Connie Wilson (via mail)