UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————x

UNITED STATES OF AMERICA,         :

                                        :

                Plaintiff,        :     **MEMORANDUM AND ORDER**

                                          :

     -against-                  :

                                          :

APPROXIMATELY 127,271 BITCOIN (BTC) :    25-CV-5745 (RPK) (CHK)
PREVIOUSLY STORED AT THE VIRTUAL :
CURRENCY ADDRESSES LISTED IN     :
ATTACHMENT A, AND ALL PROCEEDS  :
TRACEABLE THERETO,            :

                                          :

               Defendant.      :

—————————————————————x

**CLAY H. KAMINSKY, United States Magistrate Judge:**

Claimant Warp Data Technology Lao Sole Co. Ltd. ("Warp Data") requests that this Court quash the special interrogatories propounded by the government pursuant to Supplemental Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. ECF No. 410. For the reasons explained below, Warp Data's Motion to Quash is granted in part and denied in part.

**I.    Background**

On October 14, 2025, the government initiated this *in rem* civil action seeking forfeiture of approximately 127,271 bitcoin (the "Defendant Bitcoin") as proceeds of fraud and money laundering in connection with a cryptocurrency investment fraud scheme. *See* Compl., ECF No. 1. The Complaint alleges that Chen Zhi, the Chairman of Prince Holding Group, operated a transnational cryptocurrency fraud scheme that "used its vast network of seemingly legitimate business enterprises to

launder its criminal proceeds." *Id.* ¶ 15. The government alleges that Zhi and other executives of Prince Holding Group built and operated a forced labor compound to effectuate Zhi's fraudulent cryptocurrency scheme. *Id.* ¶ 20. According to the Complaint, workers were forced to execute a high volume of scams, generating a large sum of illicit proceeds that Prince Holding Group then laundered through online gambling and cryptocurrency mining operations. *Id.* Several parties that the government alleges were involved in this scheme have filed claims to the Defendant Bitcoin, including Warp Data, a Laos-based cryptocurrency mining company that the government alleges is a "Prince Group mining operation." *See id.* ¶¶ 16(t), 40; Warp Data's Verified Claim of Interest ("Warp Data's Claim"), ECF No. 64.

In February 2026, the government served special interrogatories (the "Special Interrogatories") on Warp Data pursuant to Supplemental Rule G(6), which authorizes the government to propound a limited set of interrogatories to assess a claimant's standing in a civil forfeiture case. *See* Fed. R. Civ. P. Suppl. R. G(6). Warp Data responded to the interrogatories in March 2026, providing answers to some interrogatories and objecting to others. *See* Claimant Warp Data's Response to the government's Special Interrogatories (the "Special Interrogatory Responses"), ECF No. 411-1. After a meet-and-confer, the government informed Warp Data that it would propound additional clarifying interrogatories. *See* Claimant Warp Data's Mem. in Supp. of Mot. to Quash ("Cl. Mem."), ECF No. 411, at 7. The government served the additional requests (the "Supplemental Interrogatories") on March 25, 2026. *Id.*

By the instant motion, Warp Data asks the Court to quash both the Special Interrogatories and the Supplemental Interrogatories. *Id.* The government opposes the motion and asks the Court to compel Warp Data to respond to the Special and Supplemental Interrogatories. Gov't Resp. in Opp'n to Mot. to Quash ("Gov't Opp'n"), ECF No. 439, at 1.

## II.    <u>Legal Standards</u>

To contest this civil forfeiture action, Warp Data must have standing under both the statute governing its claims and Article III. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999).[1] To have standing under Article III, Warp Data must have suffered (1) an injury in fact (2) traceable to the challenged action and (3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In the civil forfeiture context, Article III standing requires "a possessory or ownership interest in the [*res*], which may be proven by actual possession, dominion, control, title, or financial stake." *United States v. M/Y Amadea*, 770 F. Supp. 3d 558, 606 (S.D.N.Y. 2025) (quotation marks omitted), *aff'd sub nom. United States v. Khudainatov*, 177 F.4th 224 (2d Cir. 2026).

Standing is a threshold jurisdictional question in civil forfeiture actions. *M/Y Amadea*, 770 F. Supp. 3d at 605. At this stage, claimants "need not prove the full merits of their underlying claim to demonstrate Article III standing." *Khudainatov*, 177 F.4th at 228–29 (internal alterations and quotation marks omitted). Instead,

---

[1] To establish statutory standing, a claimant asserting rights in property that has been seized and that is the subject of a forfeiture action *in rem* must file a verified claim within fourteen days after process has been executed, unless the court grants an extension. *See* Supp. R. C(6). There is no dispute that Warp Data met this requirement and thus has statutory standing.

claimants "need show only a facially colorable interest in the property at issue." *Id.* at 229 (quoting *United States v. Ross*, 161 F.4th 100, 110 (2d Cir. 2025)).

Rule G of the Supplemental Rules, which governs *in rem* forfeiture actions, authorizes the government to probe a claimant's standing by serving special interrogatories "limited to the claimant's identity and relationship to the defendant property." Fed. R. Civ. P. Suppl. R. G(6)(a). This allows the government to "test the veracity of the claimant's claim of ownership and interest." *United States v. Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000)*, No. 16-CV-06564 (AMD), 2017 WL 8780158, at *3 (E.D.N.Y. Oct. 26, 2017) (internal quotation marks omitted). Claimants must answer or object to the interrogatories within 21 days. Supp. R. G(6)(b). If a claimant fails to respond to the special interrogatories, the government may move to compel the claimant's responses under Rule 37 or may move to strike that party's claim pursuant to Rule G.

## III.   Analysis

Warp Data makes several arguments in support of its motion to quash the government's special interrogatories. First, Warp Data argues that special interrogatories are unwarranted because, it asserts, the Complaint itself establishes its standing. Second, Warp Data argues that its responses to the government's interrogatories already provide sufficient information to assess standing. Finally, Warp Data argues that certain interrogatories exceed the scope of Supplemental Rule G(6).

4

### A.   The Complaint does not, by itself, establish Warp Data's standing.

Warp Data's initial argument is that the Complaint establishes its standing to claim the Defendant Bitcoin—thus rendering the government's Special and Supplemental Interrogatories unnecessary. This argument fails.

The Complaint makes several limited references to Warp Data. First, the Complaint alleges that Warp Data managed a "large-scale cryptocurrency mining operation" that produced large amounts of bitcoin. Compl. ¶¶ 16(t), 42. Second, the Complaint alleges that Chen Zhi and his co-conspirators laundered proceeds from the group's cryptocurrency fraud scheme by pouring the proceeds into Warp Data's bitcoin mining operations to "produce[] large sums of clean bitcoin dissociated from criminal proceeds." *Id.* ¶¶ 40–42. Third, the Complaint explains that the Federal Bureau of Investigation's blockchain tracing determined that the Defendant Bitcoin was comprised of, in part, bitcoin associated with the mining operations of Warp Data and another claimant—LuBian. *Id.* ¶ 45. The Complaint further estimates that about 30% of the bitcoin seized was newly mined. *Id.* ¶ 47(d) n.9. Warp Data argues that, considered together, these allegations are sufficient to establish its standing.

Although allegations set forth in a civil forfeiture complaint may establish standing on its face, *see United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014), that is not the case here. To establish standing in a civil forfeiture case, a claimant must—at a minimum—demonstrate an ownership or possessory interest in the defendant property. *See Cambio Exacto*, 166 F.3d at 527. The

allegations in the Complaint do not establish Warp Data's ownership or possessory interest in the property.

Warp Data's argument overlooks details from the Complaint that undermine its claim of ownership. For example, the government alleges that Chen Zhi personally controlled the cryptocurrency wallets containing the Defendant Bitcoin. Compl. ¶¶ 43–44. This allegation indicates that there is at least a genuine question as to who (or what) was truly injured by the seizure of the Defendant Bitcoin, contrary to Warp Data's argument.

Further, accepting Warp Data's argument would require the Court to make a logical leap absent from the face of the Complaint. Although Warp Data is correct that the Complaint notes that some of the Defendant Bitcoin was mined by Warp Data—and that some of that bitcoin is, in turn, newly mined—the Complaint does not allege that any of the newly mined bitcoin was owned by Warp Data. Based solely on the allegations in the Complaint, it is possible that Warp Data owned *none* of the seized bitcoin. It could have, for example, transferred its interest in the newly mined bitcoin to another party or entity. Thus, the Complaint leaves open the possibility that Warp Data did not have ownership or control of the bitcoin it claims and thus does not establish Warp Data's relationship to the defendant property.

Warp Data's reliance on the Second Circuit's decision in *United States v. Technodyne LLC* is unpersuasive. In *Technodyne*, the government sought the forfeiture of several bank accounts and real property that it alleged were purchased with criminal proceeds. 753 F.3d 368, 380 (2d Cir. 2014). Although the government

6

questioned the claimants' standing, the Second Circuit found that standing was established by the complaint itself because it alleged that the defendant bank accounts were held in the claimants' names and that the claimants purchased the defendant real properties. 753 F.3d at 380. Here, in contrast, the Complaint does not allege that Warp Data owned any of the Defendant Bitcoin. It alleges at most that Warp Data's mining operation generated some of the bitcoin in the wallets that contained the Defendant Bitcoin. Thus the Complaint does not establish Warp Data's standing on its face, and the Court will not quash the government's interrogatories on that basis.

> **B.    Warp Data must respond to the government's interrogatories requesting information about the source of Warp Data's interest in the Defendant Bitcoin.**

Warp Data objects to several of the government's interrogatories that request information about the source of Warp Data's ownership interest: the nature of its interest, how it acquired that interest, virtual currency addresses or accounts that held the bitcoin, how the bitcoin was transferred, and how Warp Data's interest is affected by other parties, among other similar requests. Warp Data argues that these interrogatories exceed the scope of Supplemental Rule G(6) and go to the merits of Warp Data's claim rather than its standing in this case. The Court finds that while some of the government's interrogatories go beyond the scope of what the Supplemental Rules allow, others are appropriately relevant to Warp Data's standing and thus Warp Data must respond to those interrogatories.

Courts have routinely approved interrogatories that ask about the circumstances surrounding the acquisition of the claimant's interest, including

7

"when, from whom, where, and how [the claimant] acquired [its] interest in the Defendant Funds." *$272,000*, 2017 WL 8780158, at \*3; *United States v. Real Props.*, No. CV 18-9293 (MCA), 2019 WL 4877490, at \*3 (D.N.J. Oct. 2, 2019) ("Courts have approved special interrogatories that inquire into a claimant's identity, its interest in the defendant property, and the circumstances surrounding its acquisition of the defendant property."). Such requests are properly within the scope of Supplemental Rule G(6) because they "seek to elucidate the nature of claimants' alleged ownership interest." *United States v. $307,970.00, in U.S. Currency*, No. 4:12-CV-136-FL, 2013 WL 4095373, at \*4 (E.D.N.C. Aug. 13, 2013). Here, information about how the bitcoin Warp Data claims was mined, stored, or transferred is relevant to understanding Warp Data's relationship to the defendant property. The government is entitled to probe the circumstances of Warp Data's asserted ownership, *e.g.*, through Special Interrogatory 4.

Similarly proper are the interrogatories that seek information about the source and identity of the specific portions of the *res* Warp Data is claiming. *See* Supplemental Interrogatory 4. Warp Data objects to these interrogatories on the basis that it need only assert ownership over some part of the *res* to have standing in this case. Claimant Warp Data's Reply Mem. in Supp. of Mot. to Quash "Cl. Reply," ECF No. 448, at 7; *see United States v. $421,090.00*, No. 11-CV-00341-JG, 2011 WL 3235632, at \*5 (E.D.N.Y. July 27, 2011). Although Warp Data is correct that it need not establish standing over the entire *res*, it must of course establish standing over some part of the *res*, and the government is entitled to inquire what

8

part that is. Several courts have required claimants to provide information about the amount claimed and how the claimant came into possession of the defendant property. *See $272,000*, 2017 WL 8780158, at *3 (approving interrogatory asking claimant to identify "each and every source from which [she] claim[s] the Defendant Funds was derived, including the exact amount of money derived from each source"); *United States v. $209,815 in United States Currency*, No. C 14-0780 SC, 2015 WL 1927431, at *4 (N.D. Cal. Apr. 28, 2015) (approving similar interrogatory). This information is directly relevant to understanding Warp Data's relationship to the defendant property and is especially relevant here, where claimants assert conflicting claims to the defendant property. *See United States v. $70,670.00 in U.S. Currency*, No. 15-23616-CIV, 2016 WL 233405 (S.D. Fla. Jan. 20, 2016) (permitting the government to serve special interrogatories where claimants had overlapping claims and provided no factual support about their ownership of the defendant property or the circumstances of how they acquired the property). Despite Warp Data's objection that such interrogatories are better suited for the merits stage, "[t]hat some evidence relevant to standing may also ultimately bear on the merits question of who owns the [defendant property] does not transform the threshold standing inquiry into an improper merits determination." *Khudainatov*, 177 F.4th at 230.

Nevertheless these interrogatories are overbroad to the extent they seek information about Warp Data's assets that are *not* part of the *res*, such as unrelated funds held in Warp Data's accounts. Warp Data need not respond to those parts of

9

the request. *See $272,000*, 2017 WL 8780158, at \*4 (interrogatory requesting information about all of the claimant's bank accounts was overbroad because it sought "information about other properties or money that the claimant owns."); *$307,970.00*, 2013 WL 4095373, at \*4 (question about the claimant's relationship to property not included in the defendant *res* was beyond the scope of Rule G(6)). The government has already conceded this point in its brief, noting that "[t]o the extent Warp Data reads Special Interrogatory Nos. 5 and 6 also to exceed the scope of its claim . . . it should respond to those requests only as they apply to the claimed bitcoin." Gov't Opp'n at 12, n.6.

Accordingly, Warp Data is directed to supplement its answers or respond to Special Interrogatory 4 and Supplemental Interrogatories 4–6. *Cf. United States v. $333,806.93 in Proceeds from Foreclosure of Real Prop. Located at 26948 Pac. Coast Highway, Malibu, CA*, No. CV 05-2556 DOC ANX, 2010 WL 3733932, at \*3 (C.D. Cal. Aug. 30, 2010) (requiring claimant to supplement responses about the source of the defendant proceeds following the claimant's response that the proceeds were "surplus of a foreclosure sale"). Warp Data's responses to these interrogatories may be limited to information about the Defendant Bitcoin it is claiming.

**C.    Warp Data need only respond to the government's interrogatories concerning its own relationship with certain third parties.**

Warp Data also objects to several of the government's interrogatories that seek information about third parties, including some that are also claimants in this action such as LuBian, Prince Holding Group, and Chen Zhi. Warp Data argues that these interrogatories exceed the scope of Supplemental Rule G(6). While the

Court agrees that some of the government's interrogatories exceed the scope of what is allowed by Rule G(6), several requests are appropriate to the extent they seek information related to whether Warp Data's relationship with third parties affects its ownership interest in the Defendant Bitcoin.

Uncontested legal title alone does not establish a colorable interest sufficient to establish standing. *Khudainatov*, 177 F.4th at 229. Rather, the focus of the standing inquiry is *injury* to the party seeking standing. *Id.* While this means that an owner of the defendant property "will normally have standing to challenge the forfeiture," "straw owners"—those who legally "own" the property but hold title for another party—lack standing because they "do not themselves suffer an injury when the property is taken." *Id.* Accordingly, courts have permitted interrogatories that "test the Claimant's assertion that she is the true owner of the defendant property and not merely a courier for a third party." *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 565 (D. Md. 2013); *see also United States v. M/Y Amadea ("M/Y Amadea II")*, No. 23 Civ. 9304 (DEH), 2024 U.S. Dist. LEXIS 54490, at *1–3 (S.D.N.Y. Mar. 22, 2024) (permitting interrogatories about third parties "to the extent any such ownership or possession affects [the claimant's] claim of ownership.").

Many of the government's interrogatories seek information about third parties to determine whether another party had ownership or control over Warp Data and its assets in a manner that affects Warp Data's injury from the seizure of the *res*. The government argues that these interrogatories help clarify Warp Data's

11

ownership interest given the government's assertion that several third parties either mined the Defendant Bitcoin, possessed the private keys, or owned the wallets containing the Defendant Bitcoin. Gov't Opp'n at 12. Warp Data argues that these questions are beyond the scope of the standing inquiry and that there is nothing to the government's theory that Warp Data may be an "alter ego" or nominee of Chen Zhi or Prince Holding Group. *See* Cl. Mem. at 16; Cl. Reply at 8. The Court agrees with the government that these questions serve to further clarify Warp Data's identity and relationship to the Defendant Bitcoin and are thus proper under Rule G(6). It remains to be seen whether the government's "alter ego" theory has merit; responses to these interrogatories will develop the record.

For example, Special Interrogatory 13 parts (a), (b), and (d) ask Warp Data to explain whether Chen Zhi has ever had an ownership interest in, exercised control over, or directed the affairs of Warp Data. These questions go to Warp Data's identity and may reveal information about whether Warp Data itself had "possession, dominion, control, title, or a financial stake" in the *res* sufficient to assert standing. *See M/Y Amadea*, 770 F. Supp. 3d at 604 (cleaned up). Similarly, Special Interrogatories 4(c) and 5 direct Warp Data to identify other individuals or entities with an interest in, or that exercised control over, the portion of the *res* over which Warp Data asserts ownership. These requests are properly within the scope of Supplemental Rule G(6), as both interrogatories seek to elucidate information about the nature of Warp Data's relationship to the property. *See $307,970.00*, 2013 WL 4095373, at *4 (E.D.N.C. Aug. 13, 2013) (approving similar interrogatory).

12

However, some of the government's other interrogatories about third parties go beyond the legitimate scope of Supplemental Rule G(6). For example, Special Interrogatories 10–12 seek information about LuBian and other entities, including their identity, corporate structure, business operations, and accounts. To the extent these interrogatories seek to elucidate information about whether another person or entity had control over Warp Data's assets, that query is covered by other interrogatories. Otherwise, the information sought is not relevant to Warp Data's standing. Further, many of these interrogatories request information about individuals or entities that are also claimants in this action and are more appropriately directed to those claimants. *See Real Props.*, 2019 WL 4877490, at *4 (interrogatories about identity of a claimant homeowners association was more appropriately directed to that association). The Court will not require Warp Data to explain the difference between its interest in the Defendant Bitcoin and that of other claimants or to opine on the merits of other parties' claims. *See United States v. $128,915.00 In United States Currency*, No. 20-CV-00667-JPG, 2021 WL 243585, at *4 (S.D. Ill. Jan. 25, 2021) (rejecting the government's argument that its interrogatories are proper to determine whether "the currency seized from [the claimant] is truly his and his alone").

Some of the government's other interrogatories seeking information about third parties are also overbroad and disproportionate to the needs of this case. For example, Special Interrogatory 6 requests the identity and contact information of "any person who has knowledge of any of the facts relevant to each of the foregoing

13

interrogatories," the identity of "any and all documents containing information" relevant to Warp Data's interrogatory responses, and "all forms of electronic communication . . . used to exchange information regarding the interests of yourself and/others." ECF No. 411-1, at 11–12. Interrogatories seeking information about persons with knowledge of a claimant's interest or documents supporting that interest have been approved in some simple cases. *See $307,970.00*, 2013 WL 4095373, at *4 (two claimants claiming ownership over the defendant currency that was held in a single bag); *United States v. Funds in Amount of $174,000.00*, No. 11 C 6698, 2012 WL 473146, at *1–2 (N.D. Ill. Feb. 6, 2012) (one claimant asserting ownership over defendant currency held in the claimant's luggage). But the Court finds that this broad request is disproportionate to the needs of the standing inquiry in this matter. A narrower version of this interrogatory that is more particularized to eliciting facts relevant to Warp Data's standing may be appropriate. However, the Court will not compel Warp Data to respond to this request as presently articulated.

Similarly, Special Interrogatory 14 is overbroad in that it requests that Warp Data identify "any documents, emails, text messages, or other communications relating in any way to the relationship between Chen Zhi and Warp Data." Because not all communications or documents related to Chen Zhi that Warp Data may have are relevant to the question of Warp Data's standing, the scope of this request is disproportionate to its relevance.

Accordingly, Warp Data must respond to Special Interrogatories 4, 5, 8(a) and (d), 9(a) and (d),[2] 13(a)–(b) and (d), and Supplemental Interrogatories 2 and 3 (in part).[3] Warp Data need not respond to Special Interrogatories 7, 8(b)–(c), 9(b)–(d), 10–11, 12, 13(c), 14–16, and Supplemental Interrogatories 2 and 3 (in part).

### D.    Warp Data must supplement its responses to the interrogatories seeking information related to its identity

Warp Data objects to or provides only partial answers to many of the government's interrogatories that seek information about the identity of Warp Data—including the identities of its managers, owners, and stakeholders. The Court finds that Warp Data's answers fall short of what the government may require under Rule G(6).

For example, Special Interrogatories 1–3 seek information about Warp Data, its owners, and its managers. In response to Special Interrogatory 1, Warp Data provided some information but refused to respond to subparts (d) and (e), which ask it to identify (1) Warp Data's operating agreements or other governing documents,

---

[2] Warp Data need only supplement its responses to these subparts of Special Interrogatory 8 and 9 to the extent they ask about whether Prince Holding Group or LuBian had access or control over the Defendant Bitcoin. Warp Data need not provide any information about virtual currency addresses that did not hold any of the Defendant Bitcoin claimed by Warp Data.

[3] Although Supplemental Interrogatories 2 and 3 are generally relevant to Warp Data's identity and ownership interest, they are too broad. Warp Data must answer the interrogatories to the extent they seek information about Fongthida Luenkhamfong, Zhang Bo, and William Wei's the ownership interests in Warp Data between 2018 to 2020. But Warp Data need not respond to the interrogatories to the extent they seek information related to those individuals' relationships with Chen Zhi or Prince Holding Group, as the government does establish a connection between the relationship of several third parties to Claimant's ownership interest. *See M/Y Amadea II*, 2024 U.S. Dist. LEXIS 54490, at *3 ("To the extent that the interrogatories seek information about relationships among third parties . . . it is unclear how this information bears on Claimants' relationship to the res.").

15

and (2) all affiliates, subsidiaries, and parent companies of Warp Data.[4] This information is sufficiently relevant to Warp Data's identity, as it requests information about how Warp Data is managed and by whom. However, Warp Data may limit its response to part (d) to the operating agreements or other government documents that identify who (or what) may have ownership, dominion, or control over Warp Data's assets, and may also limit its response to part (e) to affiliates, subsidiaries, and parent companies of Warp Data that have ownership or control over Warp Data and/or the Defendant Bitcoin.

Other parts of Warp Data's responses lack sufficient detail. For example, Warp Data's responses to Supplemental Interrogatory 1(g) and (i) are inadequate. In subpart (g), Warp Data merely states that Duangtavanh Vongnalath is the manager of Warp Data, but fails to provide any other information about whether there are any other corporate officers or directors. If there are none, Warp Data's response to this interrogatory must make a statement to that effect. Warp Data must also provide a more fulsome description of the nature of its business in response to subpart (i).

Warp Data's responses to Special Interrogatories 2 and 3 also lack sufficient detail. To the extent that the individuals or entities identified by Warp Data in its responses have additional contact information such as email addresses or phone

---

[4] Supplemental Interrogatory 1 also directs Warp Data to identify all affiliates and subsidiaries of Warp Data and explain its relationship to those affiliates and subsidiaries. Similar to Special Interrogatory 1, Warp Data need only provide a response to the extent that any affiliates, subsidiaries, or parent companies have ownership, dominion, or control over Warp Data or its assets, and to the extent such information is not duplicative of Special Interrogatory 1.

16

numbers, Warp Data is directed to supplement its answer with that information. *See $272,000*, 2017 WL 8780158, at \*3 (directing claimant to supplement her answer to interrogatory requesting specific identifying information).

## IV.    Conclusion

For the reasons set forth above, the Court grants in part and denies in part Warp Data's motion to quash. The Court grants the motion as to Special Interrogatories 5, 7,[5] 8(b)–(c), 9(b)–(c)), 10–11, 12, 13(c), 14–16, and Supplemental Interrogatories 2 and 3 (in part), and 7. It denies the motion as to Special Interrogatories 1–3, 4, 8(a) and (d); 9(a) and (d), 13(a)–(b), and Supplemental Interrogatories 2 and 3 (in part), and 4–6. Warp Data must respond to the Special and Supplemental Interrogatories, as directed herein, within 30 days of the entry of this Order.

SO ORDERED.

/s/ Clay H. Kaminsky
CLAY H. KAMINSKY
United States Magistrate Judge

Dated:    July 7, 2026
          Brooklyn, New York

---

[5] The government does not explain—in its opposition or in the complaint—the relevance of the email account identified in Special Interrogatory 7 to Warp Data or to this case. Accordingly, the Court does not find that this question goes to Warp Data's identity or relationship to the *res* and Warp Data need not respond to the request.