**GIBSON DUNN**

Robert Weigel
Partner
T: +1 212.351.3845
M: +1 917.573.8265
rweigel@gibsondunn.com

July 16, 2026

VIA CM/ECF

The Honorable Rachel P. Kovner
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Approximately 127,271 Bitcoin*, No. 25-cv-5745
      *Fritz et al. v. Iran and China Investment Development Group*, No. 25-cv-7093

Dear Judge Kovner:

LuBian's motion to stay the *Fritz* action is a remarkable attempt to avoid its obligations under the Federal Rules. Dkt. 473 ("Mot."). LuBian acknowledges that it has known of *Fritz* for months but made a calculated choice not to appear and not to answer despite being served. Having abandoned its right to defend *Fritz* on the merits, LuBian now asks in the separate forfeiture proceeding (studiously avoiding appearing in *Fritz* even for purposes of its stay request) for the Court to halt *Fritz* and thereby allow LuBian to avoid the consequences of its failure to respond to the *Fritz* Victims' complaint. Although LuBian's tactic is clever, it cannot relieve LuBian of the obligation to answer the *Fritz* Victims' allegations. The Federal Rules simply do not allow that result. Since LuBian is now in default, it cannot seek relief in *Fritz* without entering either a special or general appearance and undertaking the obligation to respond to the complaint and submit to discovery. LuBian's procedural gambit—an obvious tactic to avoid having the facts come out— must be rejected.

LuBian's stay motion only confirms that default must be entered. LuBian has been served but has failed to appear. LuBian's candid acknowledgment that it has been aware of *Fritz* for months but chose not to participate establishes that its default is willful. Mot. at 2. LuBian's flimsy excuse is that it viewed an order seeking further briefing to help the Court resolve the *Fritz* Victims' emergency attachment motion as "foreclosing" *Fritz* from "going forward." *Id.* That is hardly tenable. LuBian ignored the *Fritz* Victims' *subsequent* service of the complaint, and the order authorizing this service was entered after the order LuBian supposedly thought put the case on hold.

LuBian's real reason for not appearing in *Fritz* is transparent. It has not even attempted to show that it has any defense to *Fritz*. Instead, LuBian's stay motion merely contains conclusory denials—without any evidentiary support—of LuBian's connections to Iran. Unsupported assertions by LuBian's lawyers cannot overcome the extensive evidence introduced by the *Fritz* Victims in support of their attachment motion. The *Fritz* Victims' uncontested evidence establishes that LuBian was merely a front for the Iran and China Investment Development Group ("Iran-China Group"). *See, e.g.*, *Fritz* Dkt. 72-24, at 3 (LuBian's co-founder boasting about its

**Gibson, Dunn & Crutcher LLP**

200 Park Avenue  |  New York, NY 10166-0193  |  T: 212.351.4000  |  F: 212.351.4035  |  gibsondunn.com

**GIBSON DUNN**

July 16, 2026
Page 2

"good local resources in Iran" and "good relations with the Ministry of energy, the Ministry of foreign affairs, and even the army in Iran").

LuBian's request for a stay makes little sense. LuBian is wrong to suggest that the *Fritz* Victims cannot recover until LuBian's ability to collect has been established through the forfeiture action. The Terrorism Risk Insurance Act ("TRIA") gives the *Fritz* Victims a unique and independent ability to attach and execute on LuBian's interests in the Bitcoin even when LuBian itself cannot. While the forfeiture statute may allow the government to prevail against LuBian if it is not an innocent owner, it does not pose an obstacle for the *Fritz* Victims. TRIA makes clear that "*[n]otwithstanding any other provision of law* . . . in every case in which a person has obtained a judgment against a terrorist party . . . the blocked assets of that terrorist party . . . shall be subject to execution or attachment in aid of execution." TRIA, Pub. L. No. 107-297, § 201(a), 116 Stat. 2337 (Nov. 26, 2002), *codified as a note to* 28 U.S.C. § 1610 (emphasis added). LuBian and the government are wrong to suggest that the *Fritz* Victims would suffer no prejudice from putting their action on ice, as the government has signaled it will argue that the *Fritz* Victims do not have standing to participate in the forfeiture action without an attachment. Staying *Fritz* could therefore allow LuBian to achieve through a procedural gambit what it could not achieve on the merits.

### I.  LuBian's Motion Underscores That Its Default Cannot Be Excused.

There is no question that LuBian has defaulted in *Fritz*. As LuBian concedes, it was served through court-approved means on the attorney who filed its motion to stay. Mot. at 2 n.1 (noting service on "the undersigned"); *see also Fritz* Dkt. 123 (affidavit of service). But "LuBian has not appeared," Mot. at 2, and the deadline for its answer expired over a month ago, *see Fritz* Dkt. 127 (request for entry of default). That is the classic circumstance in which a party "has failed to plead or otherwise defend" and the court "*must* enter the party's default." Fed. R. Civ. P. 55(a) (emphasis added); *see also Silverman v. RTV Commc'ns Grp.*, 2002 WL 483421, at *6 (S.D.N.Y. Mar. 28, 2002) (explaining that this is a "mandatory" duty for which the court has "no discretion").

LuBian's motion seeks relief from that default through the back door. A party seeking to set aside a default must be prepared to defend the suit on the merits. But rather than appearing in *Fritz* and assuming that duty, LuBian has attempted to excuse its default through a stay motion in another proceeding. Although that scheme lacks merit on its own terms, *see infra* pp. 4-9, it also reveals LuBian's recognition that it cannot show the "good cause" necessary to "set aside" its default under Rule 55(c). Courts determine whether a party has good cause to set aside a default by asking whether the default was "willful," whether the moving party has put forward "a meritorious defense" to the suit, and whether the other party would suffer "prejudice." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). None of those factors favor a request to set aside LuBian's default.

*First*, LuBian's default was plainly "willful." *Enron*, 10 F.3d at 96. Under Second Circuit precedent, that standard is satisfied by a default that was "deliberate." *Bricklayers & Allied*

**GIBSON DUNN**

*Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). And LuBian's motion concedes that point. That filing acknowledges that LuBian has been monitoring *Fritz* for at least four months and was served with process by court-approved means. *See* Mot. at 2 & n.1. (Indeed, LuBian was watching *Fritz* so closely that it filed its motion to stay a mere *three days* after the *Fritz* Victims requested entry of default. *See Fritz* Dkt. 127.) The motion also establishes that LuBian made the conscious choice not to appear: The company deliberately "limited its litigation activity to the Forfeiture Action" based on its purported misinterpretation of this Court's February 2, 2026 Minute Order in *Fritz*. Mot. at 2. That is all that is required to show that LuBian's default was willful.

Because LuBian "does not deny that [it] received the complaint," its failure to show any "circumstances beyond [its] control" "justif[ies]" an "inference of willful default." *Moulton Masonry*, 779 F.3d at 187. LuBian's excuse for not answering merely confirms the point. LuBian purports to have "understood" this Court's minute order on February 2 as a "practical signal" that the proceedings in *Fritz* were "foreclose[d]" from "going forward." Mot. at 2. That is difficult to square with the text of the order itself, which deferred resolution of the *Fritz* Victims' attachment motion to allow the government to file a "response" that might "aid the Court *in determining whether the requirements for attachment under New York law are satisfied*" in the future. *Fritz*, Minute Order (Feb. 2, 2026) (emphasis added). There is no plausible way to read an order delaying decision for further input as foreclosing that decision in the future. Regardless, the Court proceeded to issue *other* orders inviting further input and addressing other motions, including the very order authorizing alternative service of the summons on LuBian. *See, e.g.*, *Fritz*, Minute Order (Feb. 25, 2026) (inviting a reply from the *Fritz* Victims); *Fritz*, Minute Order (Mar. 25, 2026) (referring motion for leave to effect alternative service); *Fritz*, Minute Order (Apr. 6, 2026) (granting leave to effect alternative service). Experienced counsel cannot plausibly argue that they thought that the plain language of the summons served pursuant to Judge Kaminsky's April 6th order—"If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint," *Fritz* Dkt. 76—could be safely ignored. At minimum, that steady progress should have alerted LuBian that the litigation was "going forward." Mot. at 2.

*Second*, LuBian has failed to advance any "meritorious defense" to the *Fritz* Victims' suit. *Enron*, 10 F.3d at 96. LuBian cannot make this showing without "present[ing] some evidence beyond conclusory denials to support [its] defense." *Id*. But LuBian merely asserts without explanation or a supporting affidavit that it "has no connection to Iran, the Islamic Republic of Iran, or any entity associated therewith," including the Iran-China Group. Mot. at 1, 2 n.1. Although those "general denials" might have been enough "*in an answer*" to postpone a finding of liability, they are not sufficient to avoid or set aside a default now that LuBian has declined its opportunity to submit such a pleading. *Moulton Masonry*, 779 F.3d at 187 (emphasis added). This is especially true because the *Fritz* Victims have submitted extensive evidence to the contrary. For example, LuBian's co-founder has boasted to the press about its "good relations" with the Iranian government, including "the army." *Fritz* Dkt. 72-24, at 3; *see also* Jamie Redman, *Chinese Bitcoin Miners Develop Strong Relationships and Crypto Mining Facilities in Iran*, Bitcoin.com News

# GIBSON DUNN

(Aug. 14, 2020), https://news.bitcoin.com/chinese-bitcoin-miners-develop-strong-relationships-and-crypto-mining-facilities-in-iran ("*Strong Relationships in Iran*").  And LuBian's computing power, block production, and mining activity all closely correlate with those of the Iran-China Group's facility, establishing that LuBian and the Iran-China Group are one and the same.  *Fritz* Dkt. 72, ¶¶ 71-119.  In light of the *Fritz* Victims' evidentiary showing, LuBian needs far more than a blanket denial to be excused from the consequences of its own choices.

For its part, the government does not dispute that some of the Bitcoin were mined in Iran or that LuBian is an agency or instrumentality of Iran.  In fact, the government concedes that LuBian "maintained bitcoin mining facilities" in "Iran," Dkt. 1, ¶ 16(u), and has not challenged any of the evidence introduced by the *Fritz* Victims that establishes the extensive connections between LuBian and Iran—presumably because it cannot.  Yet the government has nonetheless chosen to side with LuBian and support its motion to stay *Fritz* if the Court denies the government's (nonexistent) motion to dismiss that action.  Dkt. 474, at 1 ("Gov't Resp."); *see infra* pp. 9-10.  While that choice is disappointing given LuBian's support for Iranian terrorism, it is striking that both LuBian and the government would plainly prefer to avoid adjudicating whether LuBian is a tool of Iran.  The only parties not seeking to hide from the evidence are the *Fritz* Victims, which only confirms why it would be improper to stay *Fritz*.

*Finally*, LuBian's refusal to answer has also "prejudiced" the *Fritz* Victims (although this factor is not necessary given LuBian's inability to make the required showings under the first two factors).  *Enron*, 10 F.3d at 96; *see, e.g.*, *Moulton Masonry*, 779 F.3d at 187.  LuBian's failure to answer has prevented the *Fritz* Victims from being able to conduct discovery into the company's ownership of the Bitcoin or its self-described "good local resources in Iran" and "good relations with the Ministry of energy, the Ministry of foreign affairs, and even the army in Iran."  *Fritz* Dkt. 72-24, at 3; *see also Strong Relationships in Iran*.  Indeed, concealment of the facts would appear to be the very reason that LuBian has defaulted and is now effectively seeking to set aside the default in a *different* proceeding.  This Court should not countenance such procedural gamesmanship.

## II.    Staying *Fritz* Is Unwarranted.

LuBian's stay request should also be denied on its own terms.

As a threshold matter, LuBian "do[es] not have standing to file a motion to stay" a case in which it has yet to appear as a party.  *Cribb v. BR Mountain Homes, LLC*, 2017 WL 10574071, at *2 (N.D. Ga. Aug. 3, 2017) (collecting authorities); *e.g.*, *Piambino v. Bailey*, 757 F.2d 1112, 1136 n.62 (11th Cir. 1985) (litigant who was "not . . . a party to the proceedings[ ] lacked standing to move the court . . . to stay the execution of the final judgment"); *SEC v. WorldCom, Inc.*, 452 F. Supp. 2d 531, 531 (S.D.N.Y. 2006) (noting that "it is doubtful whether" "a non-party to this lawsuit . . . has standing to bring the instant motion seeking a stay"); *cf. N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992) (nonparty lacks standing to move for sanctions).  If LuBian wants

**GIBSON DUNN**

to seek some form of relief in *Fritz*, it must appear on the docket in that action and make the request there—not use the forfeiture action as a vehicle to try to evade its default in *Fritz*.

In any event, LuBian has not demonstrated its entitlement to a stay. The Supreme Court has long emphasized that staying one case in favor of proceedings in another case is appropriate "[o]nly in rare circumstances," and that if there is "even a fair possibility" that a stay will cause hardship to another party, the movant must demonstrate "a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). LuBian bears the burden to justify a stay, since absent "undue prejudice" to a defendant or similarly compelling circumstances, "there is no reason why [a] plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (citation omitted).

There is more than a fair possibility that staying *Fritz* in favor of the forfeiture action could "work a hardship, inequity, or injustice" to the *Fritz* Victims. *Louis Vuitton*, 676 F.3d at 99. While the government now contends that the *Fritz* Victims will not be prejudiced and *Fritz* can be stayed, Dkt. 474, at 2, the United States has previously asserted that it "likely" will challenge the *Fritz* Victims' claim in the forfeiture action, and that "the Court's resolution of the Fritz Claimants' pending motion for an order of attachment . . . could have a substantial impact on the government's contemplated motion to strike," Dkt. 224, at 2. Although the *Fritz* Victims strongly dispute that the government has a viable motion to strike and will contest any such motion at the appropriate juncture, granting the attachment motion necessarily would have a "substantial impact" on the government's position, as it has conceded. *Id.* In contrast, staying *Fritz* and leaving the attachment motion unresolved will potentially endanger the *Fritz* Victims' ability to proceed on their claim in the forfeiture action if the government's view prevails.

The prejudice will be even greater if, as the government proposes, the government succeeds and *Fritz* is paused until "*after* the conclusion of the forfeiture proceeding." Gov't Resp. at 2. At that point, the government will undoubtedly argue, similar to what it has said elsewhere, that the *Fritz* Victims have *no* claim to the Bitcoin because title has been vested in the government, and the Bitcoin no longer belong to Iran for purposes of TRIA. *Cf. Fritz* Dkt. 96, at 4 (arguing that "[s]overeign immunity bars creditors from attaching or garnishing funds in the Treasury" (citation omitted)); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 687 (5th Cir. 2013); *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 431 (D.C. Cir. 2023).

Given that risk of hardship, LuBian is required to show "a clear case of hardship or inequity" in proceeding with *Fritz*. *Landis*, 299 U.S. at 255. Its arguments come nowhere close. LuBian claims "significant burdens" from having to litigate in both the forfeiture action and *Fritz*. Mot. at 3. But the mere fact of having to litigate multiple lawsuits is not the sort of "clear" "hardship or inequity" that can justify a stay. *E.g.*, *In re Nursing Facility COVID-Related Damages Actions Removed Under the PREP Act*, 2023 WL 394888, at *3 (E.D.N.Y. Jan. 24, 2023); *Youngbloods v. BMG Music*, 2011 WL 43510, at *7 (S.D.N.Y. Jan. 6, 2011).

**GIBSON DUNN**

LuBian asserts that allowing *Fritz* to proceed "risks prejudging or interfering" with LuBian's claim in the forfeiture action because, it contends, the *Fritz* Victims' claim to the Bitcoin is "entirely contingent" on LuBian's. Mot. at 3-4. The government makes similar points. *See* Gov't Resp. at 2 (contending that the *Fritz* Victims are seeking "a preemptive ruling . . . without the benefit of adversarial testing" and their claim "is contingent on LuBian's claim of ownership in the forfeiture proceeding"). Both are wrong. For one, any claimants to the Bitcoin who can establish a right to be heard (including the government, which has already opposed the *Fritz* Victims' attachment request, *Fritz* Dkt. 96) may raise their objections in any confirmation process—*after* an attachment has issued—or turnover proceedings in conjunction with final judgment. *See* CPLR §§ 6211(b), 5225(b).

More importantly, LuBian and the government are wrong to contend that the issues in the forfeiture action are antecedent to the *Fritz* Victims' attachment motion and their claim to the Bitcoin. *See* Mot. at 3-4 (claiming that the *Fritz* Victims "cannot attach or execute upon LuBian's interest in [the Bitcoin] . . . until that interest is first resolved in the Forfeiture Action"); Gov't Resp. at 2 (similar). The *Fritz* Victims' claim to the Bitcoin does not depend on LuBian presenting a successful claim in the forfeiture action—their claims are factually and legally distinct—so there is no need to adjudicate LuBian's claim before the *Fritz* Victims' attachment.

To avoid forfeiture of the Bitcoin, LuBian is required to establish that it is an "innocent owner" of the Bitcoin, 18 U.S.C. § 983(d)(1), showing that "(1) [it] had a vested or superior interest in the property at issue at the time of the criminal acts giving rise to the forfeiture, or (2) [it] was a bona fide purchaser for value without reason to know that the property was subject to forfeiture," *United States v. Peterson*, 2013 WL 1830217, at *4 (S.D.N.Y. May 1, 2013) (citing 21 U.S.C. § 853(n)(6)(A)-(B)). Alternatively, LuBian must succeed on some other defense to the government's forfeiture action, such as the absence of any U.S. connection between the underlying alleged wire fraud and the United States, so that forfeiture based on purported wire fraud is inapplicable. *See Bascuñán v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) (holding that "a claim predicated on . . . wire fraud [must] involve[ ] sufficient domestic conduct").

These requirements are not applicable to the *Fritz* Victims. Contrary to the government, *see* Gov't Resp. at 2-3, the *Fritz* Victims need not prove that LuBian "was an 'innocent owner'" or otherwise demonstrate that the government is not entitled to forfeiture, because such a showing is not required for attachment and execution under TRIA. *See* TRIA § 201(a). Indeed, it would make no sense to require TRIA claimants to make such a showing; it is highly unlikely that the sort of "terrorist party" whose blocked assets are the subject of execution under TRIA, *id.*, is an "innocent owner" of those assets. And as *between* the *Fritz* and forfeiture actions, TRIA's "notwithstanding" clause renders "inoperative" any provisions of the forfeiture statute that would interfere with the *Fritz* Victims' claims. *Havlish v. Taliban*, 152 F.4th 339, 359, 361 (2d Cir. 2025); *accord Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025); *see Fritz* Dkt. 113, at 7-10; TRIA § 201(a).

**GIBSON DUNN**

For the *Fritz* Victims' claims to the Bitcoin to succeed under TRIA and pursuant to New York law, they only need to show that the Bitcoin are blocked assets "in which the judgment debtor [here, Iran] has an interest." *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 97 (2d Cir. 2022) (quoting CPLR § 5225(b)); *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 131 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018); *see Fritz* Dkt. 70, at 12-13. Thus, they need to show—as they have already done, *see Fritz* Dkts. 70, 113—that LuBian is an agency or instrumentality of Iran and that the Bitcoin belonged to LuBian. *See* TRIA § 201(a). By contrast, neither LuBian nor the government needs to address this Iranian connection to succeed in the forfeiture action.

These distinctions between the issues in the two actions undercut LuBian's supposed need for a stay. *See, e.g.*, *In re Nursing Facility COVID-Related Damages Actions*, 2023 WL 394888, at *3 (no stay given "substantial question as to whether a decision in the [related cases] would be dispositive, or even helpful, in the consideration of the instant actions"). To the *Fritz* Victims, it does not matter if LuBian is an innocent owner of the Bitcoin or not. LuBian is an agency or instrumentality of Iran, so its interest in the Bitcoin is a blocked asset, and the *Fritz* Victims may execute upon the Bitcoin "[n]otwithstanding any other provision of law." TRIA § 201(a). LuBian may not like that TRIA gives the *Fritz* Victims a superior claim to the Bitcoin, but that is no basis to stay the *Fritz* Victims' attachment action.

Finally, LuBian's concerns about "inconsistent adjudications" from "multiple judges" and "wasted resources," Mot. at 3-4, are entirely makeweight. Both the forfeiture action and the *Fritz* action are before this Court, which undoubtedly can resolve matters in the two actions in a consistent manner and in a way that ensures their efficient adjudication. Allowing both to proceed in parallel and resolving issues in each as they arise, with an eye to addressing threshold matters first, is the best way to respect the rights of all relevant parties and enable the fair and orderly resolution of these cases.

LuBian's stay request therefore fails under *Landis*. And the same result follows under the stay factors that courts in this Circuit have often applied. In vindicating "the basic goal" of "avoid[ing] prejudice," courts have considered "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Rodriguez v. City of New York*, 2025 WL 458243, at *2 (E.D.N.Y. Feb. 11, 2025) (citations omitted).

To start, the *Fritz* Victims have a "legitimate interest in the expeditious resolution" of their action. *Rodriguez*, 2025 WL 458243, at *3 (citation omitted). They hold valid and unpaid federal judgments that deserve to be paid forthwith. *Fritz* Dkt. 70, at 1-3. The *Fritz* Victims filed their complaint and an emergency motion for a writ of attachment *nearly seven* months ago, and briefing on the motion has been complete for over four months. *See Fritz* Dkts. 70, 113.

**GIBSON DUNN**

Blocking *Fritz* from proceeding, particularly given the multitude of other claims against the Bitcoin, would significantly prejudice the *Fritz* Victims. *See Fritz* Dkts. 85, 89. The prejudice is especially substantial given the risk that, absent an attachment, the United States will seek to strike the *Fritz* Victims' claim in the forfeiture action. *See supra* p. 5. And, as explained, the *Fritz* Victims' claim may face even further prejudice if their action is put on ice until after the conclusion of the forfeiture action and the government thereby succeeds in obtaining title to the Bitcoin. *Id.* The government's suggestion that the *Fritz* Victims "would suffer no prejudice," Gov't Resp. at 2, is entirely disingenuous.

While LuBian may wish to avoid having to respond to the *Fritz* allegations, its willful decision to ignore the suit means that it has no legitimate interest in avoiding its default in *Fritz* or in blocking adjudication of the *Fritz* Victims' allegations, and it has not shown any prejudice or real burden from proceeding in *Fritz*. Because LuBian's claim in the forfeiture action is not "dispositive" of the *Fritz* Victims' claims, "proceeding with the litigation on schedule" would neither prejudice LuBian nor "be a waste" of the parties' or the Court's resources. *United States v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 291-92 (E.D.N.Y. 2014).

Finally, the interests of the Court, other parties, and the public all weigh against a stay. "[T]he Court's interest lies in controlling 'its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Rodriguez*, 2025 WL 458243, at *3 (quoting *Landis*, 299 U.S. at 254). Given that resolving the attachment motion may obviate the need for some motion practice in the forfeiture action, and given that the issues in *Fritz* and the forfeiture action are distinct and not fully overlapping, judicial economy favors allowing both cases to proceed, rather than imposing an illogical ordering onto the cases that may hamper the *Fritz* Victims' ability to properly advance their interests. *See, e.g.*, *Galati v. Pharmacia & Upjohn Co.*, 2011 WL 2470047, at *2 (E.D.N.Y. June 17, 2011) ("[T]he Court's interest in judicial economy counsels against a stay, as [the resolution of the other proceeding] will neither completely discard nor sufficiently clarify any issue enough to warrant further delay."). Although the government contends that there will be no "adversarial testing" or the "procedural safeguards of civil forfeiture law," Gov't Resp. at 2-3, the former argument is wrong and the latter a red herring. As discussed, under long-established New York procedures, which set forth a fair and orderly process, "any" claimant may move to intervene to protect an interest in the property subject to attachment or turnover. *See* CPLR §§ 6211(b), 6223(a), 5225(b). Thus, resolving the attachment motion in *Fritz* would not harm any other parties' interests since they will have multiple opportunities to seek to be heard.

The government further suggests that it will be "deprive[d] . . . of its ability" to seek discovery from LuBian, Gov't Resp. at 2, but this too is a red herring. The *Fritz* Victims are not seeking to stay the forfeiture proceeding, and the government is already engaged in discovery with LuBian there. Only if and when final judgment is entered in *Fritz* ordering turnover of all of the subject Bitcoin to the *Fritz* Victims—a result that is many steps removed from the initial attachment—would the forfeiture proceeding be effectively mooted (and contrary to the government, such judgment would not "effectively resolve the forfeiture proceeding in LuBian's

**GIBSON DUNN**

favor," Gov't Resp. at 2; it would provide justice to terrorism victims). Allowing the two cases to continue to proceed in parallel, as they have been for nearly seven months, will allow both the government and the *Fritz* Victims, as well as other claimants, to continue to test their claims.

Public policy strongly favors prompt satisfaction of the *Fritz* Victims' federal judgments. *See Yador v. Mowatt*, 2025 WL 2042432, at *2 (E.D.N.Y. July 21, 2025) ("The public has an interest in the enforcement of judgments." (ultimately quoting *State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Phys. Therapy, Inc.*, 376 F. App'x 182, 184 (3d Cir. 2010))). There is no policy favoring an artificial stay of their action at the behest of a party that refuses to comply with the Court's procedures and seeks to avoid a default.

The Court therefore should deny LuBian's stay motion.

### III.    The Government Has No Place To Request Dismissal

While the government contends that it has "moved to dismiss" *Fritz*, and its motion should be granted instead of a stay, Gov't Resp. at 1 (citing *Fritz* Dkts. 96, 97), it is playing fast and loose with the record. The government filed a motion requesting a pre-motion conference for a motion to dismiss. *Fritz* Dkt. 97. The Court directed the *Fritz* Victims to respond to that pre-motion request in conjunction with their reply in support of their attachment action, *Fritz*, Minute Order (Feb. 25, 2026), which they did, *Fritz* Dkt. 113. But to date, the Court has not acted on this pre-motion conference request, there has been no pre-motion conference, and certainly, no motion to dismiss has been filed.

In their reply, the *Fritz* Victims explained why it is wholly inappropriate for the government to be allowed to file a motion to dismiss—namely, it is not a party to *Fritz* and cannot stand in the shoes of LuBian. *See* Fritz Dkt. 113, at 24-25; *Picaro v. Pelham 1135 LLC*, 2015 WL 1854272, at *3 (S.D.N.Y. Apr. 21, 2015) ("Rule 12 does not contemplate defendants' bringing motions to dismiss claims against other co-defendants[.]"). The government has not cited any precedent authorizing it to file a motion to dismiss in a case despite not being a party, and the *Fritz* Victims are not aware of any such cases.

The *Fritz* Victims also explained the impropriety of the arguments the government would present in any future motion to dismiss, since the government requested in a footnote that if leave to file a motion to dismiss was granted, its opposition to the *Fritz* Victims' attachment motion be treated as a "letter memorandum in support of" such motion. *See Fritz* Dkt. 96, at 1 n.1. Thus, as the *Fritz* Victims ably demonstrated, *see* Fritz Dkt. 113, even if the government is somehow deemed to have skipped ahead procedurally and actually filed a motion to dismiss, it would be error to dismiss *Fritz* on the merits as well.

**GIBSON DUNN**

Sincerely,

/s/ *Robert L. Weigel*
Robert L. Weigel