

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:ADR
F. #2024R00105

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 24, 2026

<u>By ECF</u>

The Honorable Clay H. Kaminsky
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     United States v. Approximately 127,271 Bitcoin
        <u>Civil Docket No. 25-5745 (RPK) (CHK)</u>

Dear Judge Kaminsky:

The government respectfully submits this reply in support of its motion to compel claimants Chen Zhi ("Chen") and Prince Holding Group ("Prince Group") to comply with the government's special interrogatories. *See* ECF No. 468 ("Gov. Mot."). Boies Schiller's opposition on behalf of a shifting roster of purported clients and client surrogates asks this Court to ignore threshold deficiencies in its responses and to disregard the law and the Court's own order setting forth the obligations of putative claimants in this case. *See* ECF No. 478 ("BSF Opp."). Moreover, counsel's repeated claim that Chen need not comply with Rule G(6) is fundamentally incorrect. Chen and Prince Group are not exempt from the rules. The Court should compel them to adequately respond to the government's basic inquiries, just as it did Warp Data, *see* ECF No. 472 ("July 7 Order"), and just as all claimants must do.

I.     <u>Chen Is Not Exempt From Rule G(6)'s Obligations</u>

To begin with, as argued in the government's motion, Chen is not somehow exempt from the obligations of Rule G(6) simply because he is alleged to have previously possessed the Defendant Cryptocurrency. *See* Gov. Mot. at 7 (citing cases). "A claimant asserting a possessory interest . . . must at the motion to dismiss stage 'offer some "factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property."'" *United States v. $1,106,775.00 in United States Currency*, 177 F.4th 986, 992 (9th Cir. 2026) (quoting *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012)).[1] Moreover, even where a claimant meets his burden of establishing standing at the motion to dismiss stage (and Chen has

---

[1]     Boies Schiller's opposition focuses heavily on this recent Ninth Circuit decision but misrepresents its holdings. As discussed in further detail below, *$1,106,775.00* only further supports the government's motion to compel proper responses.

not), "the government could still tee up a challenge to his stated basis for standing. The government need not accept [the claimant's] claim of ownership at face value. Instead, it is entitled to investigate [the claimant's] factual account to see if it holds up . . . including through reasonable use of Rule G(6) interrogatories." *Id.* at 997.

Indeed, Rule G(6) "broadly allows the government to collect information regarding the claimant's 'relationship to the defendant property.'" *Id.* (quoting *$133,420.00,* 672 F.3d at 642 and Supp. R. G(6)(a)). And, even where "a claimant asserts an ownership interest," as Chen does as to some undisclosed portion of the Defendant Cryptocurrency, "the government can still probe the veracity of his claim . . . through Rule G(6) interrogatories." *Id.* (cleaned up). As the Ninth Circuit explained:

> [The claimant's] unequivocal assertion of ownership and the fact that he possessed the money when seized would establish standing so long as the government did not further contest the point. But the government can subject [the claimant's] representations to the crucible of the discovery process in an effort to show why his narrative is unsupported and why he thus lacks standing . . . . [I]n a case like this one, where the government intends to dispute the core facts underlying the claimant's assertion of standing, Rule G(6) interrogatories are still fair game.

*$1,106,775.00,* 177 F.4th at 997-98 (cleaned up) (citing *United States v. 17 Coon Creek Rd.*, 787 F.3d 968, 978 n.4 (9th Cir. 2015) (noting that the government is entitled to adversarial testing of a claimant's continued standing) and *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 652 (7th Cir. 2013) ("It is always open to a party to contest standing by proving facts that contradict his opponent's allegations of standing.")).

Thus, Chen's prior access to the Defendant Cryptocurrency does not erase his obligation to describe the nature of his claim and to be held to those answers. As discussed in the government's motion, Chen's claim and purported interrogatory responses assert multiple vague and incompatible theories of ownership that will shape the litigation going forward, including an alleged bailment on behalf of Prince Group and some arrangement by which ███████████ ████████████████████████ Each theory sets a different path for this litigation. The point of the verification requirement is that Chen himself must pick a story and swear that it is true. His counsel cannot proceed on multiple theories and pick the most advantageous one down the line.[2] *See United States v. Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000)*, No. 16-CV-06564 (AMD), 2017 WL 8780158, at *3 (E.D.N.Y. Oct. 26, 2017) (interrogatories may broadly inquire into any matter necessary "to test the veracity of the

---

[2]    Boies Schiller's own filing asserts that questions around standing in this case are open and shut because Chen possessed the private keys to access the cryptocurrency wallets containing the Defendant Bitcoin, *see* BSF Opp. at 9, and that whoever has the private keys to access a digital asset "controls that asset," *id.* at 10. But the filing simultaneously concedes that ████████████ *also* had access to the wallets, raising more questions than it answers. *See id.* at 16; *see also* Chen Response No. 4.

claimant's claim of ownership and interest" (cleaned up)).  Indeed, Boies Schiller's "narrow construction of Rule G(6) [is] untenable because it would make the requirements of Rule G(6) coextensive with what is already required for the claim itself under Rule G(5)." *$1,106,775.00*, 177 F.4th at 997.

Nor does *United States v. Technodyne LLC,* 753 F.3d 368 (2d Cir. 2014), relied on by Boies Schiller, suggest otherwise, as the Court has already determined.  *See* July 7 Order at 6-7 (finding Warp Data's reliance on *Technodyne* "unpersuasive").  *Technodyne* addressed a claimant's burden under the fugitive disentitlement doctrine, a separate issue.  The Second Circuit panel separately observed in dicta that "[t]he record in the present case" suggested that standing was not an issue because the government had not alleged that the claimants had failed to comply with Rule G, and because the government's complaint alleged that the claimants owned the defendant properties and held them in their names.  753 F.3d at 380.  Here, unlike in *Technodyne*, the government *does* allege that Chen failed to comply with Rule G, and his own claim and purported interrogatory responses demonstrate that the competing ownership allegations in this case are much more complicated and unclear than those in *Technodyne.  See* July 7 Order at 6 (observing that "there is at least a genuine question as to who (or what) was truly injured by the seizure of the Defendant Bitcoin").

Thus, whether or not "allegations set forth in a civil forfeiture complaint *may* establish standing on its face," July 7 Order at 5 (emphasis added), that is clearly not the case here.  Nor, even if it were, does that absolve Chen from providing sworn admissions about the nature of his claim in response to special interrogatories by the government, as described above.  Boies Schiller knows this, or it would not have provided reams of unresponsive and inadequate answers to the government's interrogatory requests in the first instance and convinced two individuals to sign them.  Its assertion that the government's interrogatories are "[u]nenforceable," BSF Opp. at 9, is belied by its own actions and the law.[3]

## II.    Boies Schiller's Submission in Chen's Name is Improper

Boies Schiller concedes that, following his extradition to China, Chen has been (and continues to be) "unavailable to review and execute discovery responses."  BSF Opp. at 19.  As a result, Boies Schiller created its own responses without Chen's input or sworn verification.  As the government argued in its motion, these purported responses on behalf of Chen are not Chen's responses and are improper.  *See* Gov. Mot. at 5-7.  These are not ministerial requirements.  Instead, they are fundamental to the litigation and serve critical functions that cannot be satisfied

---

[3]    Boies Schiller also appears to argue that because Chen is the defendant in parallel criminal proceedings, the government is foreclosed from inquiring into the nature of his standing here.  Of course, that is incorrect.  Civil forfeiture actions are frequently brought in tandem with criminal cases, particularly where the same alleged crimes and criminal proceeds are at issue, and criminal defendants are therefore frequently claimants in those actions.  As with any other claimant, they still must comply with Rule G, and Boies Schiller does not provide any authority suggesting otherwise.  Nor is the government having it "both ways," BSF Opp. at 11, by asserting forfeiture allegations against funds previously controlled by Chen and then seeking Rule G(6) discovery from him and other claimants.  This is, in fact, what Rule G prescribes.

by the purported verification of counsel or attorneys-in-fact (much less by alleged attorneys-in-fact for whom no evidence has been provided of their appointment).[4] *See id.*

The importance of Rule 33's requirements is reflected in courts' pattern of strict adherence to them. It simply is not the case that "courts regularly allow a party's agent to verify interrogatory responses where, as here, that party is unavailable." BSF Opp. at 2. Instead, courts routinely emphasize that inability to reach a client does *not* justify exceptions to Rule 33's answer, signature and verification requirements. *See* Gov. Mot. at 6 (citing cases); *see also McDougall v. Dunn*, 468 F.2d 468, 472 (4th Cir. 1972) ("Nor is the requirement of the Rule to be relaxed merely because of difficulties relating to the availability of the party."); *In re CCA Recordings 2255 Litig. v. United States*, No. 19-CV-2491, 2021 WL 63281, at *1 (D. Kan. Jan. 6, 2021) ("Rule 33 makes no exception where a party is unavailable to sign his or her answers."); *Lackey v. SDT Waste & Debris Servs.*, No. 11-CV-1087, 2013 WL 5772325 at *10 (E.D. La. Oct. 23, 2013) ("Deviation from this rule is almost never granted.").

The cases cited by Boies Schiller do not suggest any other outcome. For example, citing *Fyodorova v. National Enquirer, Inc.*, 89 F.R.D. 68 (S.D.N.Y. 1981), Boies Schiller asserts that "exigent circumstances" warrant bypassing Rule 33's requirements. *See* BSF Opp. at 18-19. In *Fyodorova*, the court approved counsel's preparation of interrogatory responses while the plaintiff was residing in the Soviet Union as an interim measure to expedite the defendant's preparation for an impending trial. *See* 89 F.R.D. at 69. The court did *not* waive the plaintiff's obligation to verify her own responses, and instead set a one-month deadline for the plaintiff to do so. *See id. Fyodorova* in no way supports Boies Schiller's request that the Court accept someone else's responses as Chen's, and such a request is inconsistent with the law. *See also Trueman v. N.Y. State Canal Corp.*, No. 09-CV-049, 2010 WL 681341, at *5 (N.D.N.Y. Feb. 24, 2010) ("[T]he answer must remain the party's and not the attorney's."); *Lastick v. Bahama Cruise Line, Inc.*, No. 88-CV-3624, 1990 WL 139023, at *5 (S.D.N.Y. 1990) ("[T]he importance of sworn answers given upon personal knowledge is obvious.").

Boies Schiller also relies on a handful of district court cases permitting verification by an appointed agent for incompetent parties with acute mental health conditions or dementia. *See* BSF Opp. at 19. To begin with, courts have rightfully identified those cases as extreme outliers and have declined to be bound by them outside those rare circumstances. *See, e.g.*, *In re CCA Recordings,* 2021 WL 63281, at *1. More fundamentally, however, if Boies Schiller wishes to justify its noncompliance with Rule 33 on the grounds that Chen is analogous to a permanently incompetent party because he will never be able to appear in these proceedings, then that raises a much broader set of concerns about the future of this litigation and Boies Schiller's authority to pursue a claim. *Cf. Wright v. Elton Corp.*, No. 17-CV-286, 2021 WL 9385092, at *2 (D. Del. Mar.

---

[4]    The government is currently aware of no basis for the claim that either of the individuals identified by Boies Schiller legally hold any sort of power of attorney for Chen beyond the bare assertion made in the verification. Boies Schiller incorrectly asserts that the government never made any inquiry into these individuals or the source of their alleged authority, but in fact the government did that during its April 27, 2026 meet and confer with Boies Schiller. To date, the government has not received any supplemental responses by Boies Schiller on this topic (or any other).

2, 2021) ("[T]he Court suspects that separate and apart from its decision on the interrogatories, a broader ruling might be eventually needed in this case as to whether Ms. Wright is competent and capable of suing and being sued here[.]").

Given Chen's complete lack of involvement in making, signing and verifying the interrogatory responses, and the insufficiency of his attorneys' proposed solution—preparation of the answers by parties lacking first-hand knowledge and verification by individuals with unproven authority—Rule 33's mandates remain unsatisfied. The government recognizes that Chen's detention means that his attorneys currently cannot reach him through ordinary channels, but the proper solution is not to simply waive Rule 33's requirements, which are critical to ensuring a claimant's complete, truthful and consistent responses. *See Fyodorova,* 89 F.R.D. at 69.

Boies Schiller alludes to accommodations such as an extension of time or the initiation of unspecified international processes. See BSF Opp. at 19-20. But it has been nearly six months since the government served its special interrogatories on Chen and Prince Group. Counsel has not identified or initiated any particular procedure, nor asked for an adjournment of deadlines, nor provided any proposal to the Court as to how they intend to proceed in this action without Chen's participation (or even his awareness that they are doing so and making representations and decisions on his behalf). The Court should order Chen to comply, and if he is not able to, then the parties will need to litigate his ability to continue to press a claim in this action.

III.   Boies Schiller's Submissions for Chen and Prince Group Are Otherwise Deficient

Counsel's vague and inadequate answers illustrate why uninformed third parties cannot stand in for sworn fact witnesses. As set forth in the government's motion, Chen's and Prince Group's purported responses fail to answer key questions necessary to parsing their claims in this action. *See* Gov. Mot. at 7-12. While the government raised in its motion numerous inadequacies in the responses across multiple interrogatories, Boies Schiller focuses on two general categories—inquiries about Chen's and Prince Group's claims to portions of the Defendant Cryptocurrency, and information about Lubian. As described below, these categories are actually one and the same. But the government addresses each in turn.

A.   Boies Schiller Fails to Provide Adequate Answers to Proper Inquiries About Chen's and Prince Group's Claimed Interests in the Defendant Cryptocurrency

To begin with, Boies Schiller contends that the government's inquiries are improper because they probe the legitimacy of the manner in which Chen and Prince Group allegedly came to own and possess the claimed property. *See* BSF Opp. at 10. That is incorrect. The government has made inquiries to understand and "test the veracity of the claimant's claim of ownership and interest." July 7 Order at 4 (citing *$272,000,* 2017 WL 8780158, at *3 (internal quotation marks omitted)). The government does not at this stage question whether the funds were obtained through legal and proper means, but rather what those means were in the first instance. That has not been sufficiently explained. Nowhere in the responses, including in the "thousands of pages of corporate records" provided, BSF Opp. at 7, do Chen and Prince Group explain where the funds in any of the 25 virtual currency addresses listed in the Complaint came from. Despite the smoke and mirrors from the "extensive" materials provided, the only explanation that Boies Schiller offers is the bare, conclusory assertion that "[b]y late 2020, Mr. Chen had acquired a substantial

amount of bitcoin with the proceeds from the above-described legitimate businesses[.]" BSF Opp. at 4. But those business activities go back more than a decade, and Boies Schiller makes no effort to actually link, in sworn responses submitted under penalty of perjury, particular funds to the funds in the 25 virtual currency addresses that constitute the Defendant Cryptocurrency. Without more, Boies Schiller asks the government and the Court "to make a logical leap absent from the face of the Complaint," July 7 Order at 6, and from any other information provided in its submissions.[5]

Thus, the government's inquiries into "how the claimant came to possess the property" or "the story behind the claimant's control of the property" are not merits questions probing the legitimacy or the "why" behind Chen's and Prince Group's alleged accrual of the Defendant Cryptocurrency, as Boies Schiller argues. *See* BSF Opp. at 7-8, 10. Instead, these are questions meant to sharpen their sweeping claims of possession and ownership among a sea of similar claims. To be sure, there may be overlaps in coverage between questions pertaining to standing and those pertaining to the merits of the case. But such overlaps do not make the special interrogatories "a substitute for merits discovery." BSF Opp. at 7. As the Court observed in its July 7 Order, "[t]hat some evidence relevant to standing may also ultimately bear on the merits question of who owns the [defendant property] does not transform the threshold standing inquiry into an improper merits determination." July 7 Order at 9 (alterations in original) (quoting *United States v. Khudainatov*, 177 F.4th 224, 230 (2d Cir. 2026)). In that Order, the Court squarely foreclosed such objections from Warp Data, particularly as to interrogatories inquiring into the source of its alleged interest, and the circumstances by which that interest was acquired. *See* July 7 Order at 7-9.

Boies Schiller also argues that Special Interrogatory No. 4 to Chen and Special Interrogatory No. 3 to Prince Group are "facially overbroad" and go "far beyond Claimants' 'relationship to the defendant property' under Rule G(6)." BSF Opp. at 12. Boies Schiller takes particular issue with the government's inquiries into wallets or accounts that the Defendant Cryptocurrency originated in or passed through, the identity of individuals or entities that had ownership or control of those wallets or accounts (or access to private keys), and the sources that funded those wallets or accounts. *Id.* These objections do not withstand scrutiny. As the Court concluded in its July 7 Order, the government's authority to seek information is broad: "Courts

---

[5]    Indeed, it is curious that although Chen and Prince Group are assertedly "still attempting to trace the Defendant Cryptocurrency," Chen Response No. 4, *see also* Prince Group Response No. 3, they can somehow provide sworn representations that the Defendant Cryptocurrency is directly derived from these dozens of sources. Boies Schiller asserts that, "for the avoidance of doubt, the sources of funds extensively detailed in Mr. Chen's responses to Interrogatory Nos. 3 and 13 were, in fact, the sources of funds used to purchase the seized bitcoin he owned. *See* Chen Resp. at 17." BSF Opp. at 12 n.12. Boies Schiller provides no explanation for how it could know this, which portions of those profits it means to refer to, or which portions of the Defendant Cryptocurrency it means to refer to (as the government noted in its motion, it certainly cannot be *all* of it, since some of it was newly mined). Nor does it explain what "purchase[s]" it is referring to. Rather, it appears that Boies Schiller simply compiled a list of every single business venture of Chen's that it was able to identify, and then summarily represented that *those* are the sources of the Defendant Cryptocurrency. That is not an adequate explanation.

have routinely approved interrogatories that ask about the circumstances surrounding the acquisition of the claimant's interest, including 'when, from whom, where, and how [the claimant] acquired [its] interest in the Defendant Funds.'" July 7 Order 7-8 (quoting *$272,000*, 2017 WL 8780158, at *3); *see United States v. Real Props.*, No. 18-CV-9293, 2019 WL 4877490, at *3 (D.N.J. Oct. 2, 2019) ("Courts have approved special interrogatories that inquire into a claimant's identity, its interest in the defendant property, and the circumstances surrounding its acquisition of the defendant property."). In *$272,000*, for example, the court upheld an interrogatory asking "the claimant to identify 'each and every source from which [she] claim[s] the Defendant Funds was derived, including the exact amount of money derived from each source[.]" *$272,000*, 2017 WL 8780158, at *3; *see also United States v. $209,815 in U.S. Currency*, No. 14-CV-0780, 2015 WL 1927431, at *4 (N.D. Cal. Apr. 28, 2015). These inquiries are no less probing than those the government makes here. As the Court made clear, the question is whether the information sought "is relevant to understanding [the claimant's] relationship to the defendant property." July 7 order at 8. Indeed, an accounting of the sources that funded the Defendant Cryptocurrency is "especially relevant . . . where claimants assert conflicting claims to the defendant property." *Id.* at 9 (citing *United States v. $70,670.00 in U.S. Currency*, No. 15-CV-23616, 2016 WL 233405 (S.D. Fla. Jan. 20, 2016)).

Boies Schiller invokes the Ninth Circuit's recent decision in *$1,106,775.00* primarily for the proposition that courts cannot compel "exhaustive transaction-by-transaction details concerning a claimant's acquisition of seized property." BSF Opp. at 13; 177 F.4th at 999. But this is misleading. For one, as described above, the Ninth Circuit supported the government's authority to propound broad interrogatories into the nature of a claimant's purported claim. Moreover, the claimant in that case *did provide* additional responses to supplement his inadequate initial submission, which contained the very type of information the government seeks from Chen and Prince Group. In particular, that claimant "explained how he earned the [funds in question] . . . , what documentation would support his ownership . . . , and where he kept the money," and "provided the government with the names of the movie companies he received money from, a link to his [online] page listing past projects, a Chase Bank account number, and various personal identifying information." *$1,106,775.00*, 177 F.4th at 998. Thus, under the circumstances of that case, the claimant's "responses . . . provided the government with a sufficient basis for conducting further investigation into his claimed ownership of the money." *Id.* at 999 (limiting the interrogatories "if the responses already given provide adequate fodder for investigation of the claimant's asserted basis for standing"). In other words, the government in that case could reconstruct and verify the claimant's asserted ownership interest. It simply cannot do that here.[6]

Central to that inquiry is the government's request for information regarding the specific portions of the Defendant Cryptocurrency Chen and Prince Group claim to own or possess.

---

[6] Crucially, *$1,106,775.00* involved far simpler circumstances than those present here. That was a case with a single claimant that did not involve the sifting and verifying of dozens of nuanced claims of possession and/or ownership of non-traditional digital assets stored across a series of 25 separate virtual currency addresses accessible from anywhere in the world. The same is true of *United States v. Funds in the Amount of $574,840*, 719 F.3d 648 (7th Cir. 2013), also relied on by Boies Schiller.

Boies Schiller objects to this request. *See* BSF Opp. at 14. But this Court already firmly rejected such challenges in its July 7 Order: "Similarly proper are the interrogatories that seek information about the source and identity of the specific portions of the *res* [the claimant] is claiming." July 7 Order at 8. The Court explained that claimants "must . . . establish standing over some part of the *res*, and the government is entitled to inquire what part that is." *Id.* at 8-9 (citing *$272,000*, 2017 WL 8780158, at *3). Such inquiries are appropriate because "[t]his information is directly relevant to understanding [the claimant's] relationship to the defendant property and is especially relevant here, where claimants assert conflicting claims to the defendant property." *Id.* at 9 (citing *United States v. $70,670.00 in U.S. Currency*, No. 15-CV-23616, 2016 WL 233405 (S.D. Fla. Jan. 20, 2016)).[7] Boies Schiller cites *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994) (which is not a decision about the proper scope of special interrogatories) for the uncontroversial proposition that a claimant may assert an ownership interest in a portion of the *res*. BSF Opp. at 14. Of course, as that same court much more recently confirmed, even where "a claimant asserts an ownership interest, the government can still probe the veracity of his claim . . . through Rule G(6) interrogatories." *$1,106,775.00*, 177 F.4th at 997 (cleaned up).

Boies Schiller's remaining arguments are equally unavailing. Boies Schiller contends that it cannot respond to the interrogatories because it lacks information about the Defendant Cryptocurrency after December 2020, *see* BSF Opp. at 12, 14, but this is a red herring. The 25 virtual currency addresses identified in the Complaint are the addresses "at which the Defendant Cryptocurrency was stored as of December 2020," Compl. ¶ 44 n.7, and nowhere in the interrogatories does the government seek information from Chen or Prince Group about the Defendant Cryptocurrency after that date. Boies Schiller also contends that the government cannot compel responses to certain interrogatories because it has already conducted certain tracing in this case. *See* BSF Opp. at 13-14. It cites no authority for this claim, because there is none. Instead it relies broadly on a stray provision of Rule 26(b)(1) to the effect that the scope of discovery depends in part on "the parties' relative access to relevant information." *Id.* at 13 (quoting Fed. R. Civ. P. 26(b)(1)). Of course, Rule G(6) takes precedence over Rule 26 in determining the scope of special interrogatories. *See* Supp. R. G(1) (noting that the Federal Rules of Civil Procedure only apply "[t]o the extent that [Rule G] does not address an issue"). Moreover, Rule 26(b)(1) only weighs the parties' relative access to information as one of multiple factors in determining the scope of discovery, including "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). Nor is it clear that consideration of "the parties' relative access to relevant information" favors Chen and Prince Group. The government's tracing cannot reveal which individuals or

---

[7]    Boies Schiller also claims that the government's interrogatories never requested this information from them and that therefore "the government cannot compel such an answer now." BSF Opp. at 14. This is absurd on its face. Information regarding which funds Chen and Prince Group claim to have possessed and owned is repeatedly requested throughout the government's special interrogatories, beginning in the government's request that "for each of the 25 addresses [listed in the Complaint]," the claimants identify the "nature of your interest in the virtual assets previously stored at that address." Chen Interrogatory No. 4 and Prince Group Interrogatory No. 3. Of course, this objection is in any event academic, as the government can serve additional special interrogatories without limit and "without the court's leave at any time after the claim is filed and before discovery is closed." Supp. R. G(6)(a); *see $1,106,775.00*, 177 F.4th at 993 ("Supplemental Rule G(6) interrogatories are not limited in number . . .").

entities had access to the funds at various times, cannot account for the full picture of off-chain transactions that funded the wallets at issue, and—most importantly—does not currently support or explain any of the contentions being made by Chen and Prince Group. That information is squarely within their possession. Indeed, as the Complaint notes, "[t]he Defendant Cryptocurrency was moved across a complex network of . . . wallets affiliated with various shell companies and individuals," through processes "designed to dissociate funds from their illicit sources." Compl. ¶ 48. Given such efforts at obfuscation, Chen is better positioned than the government to elucidate the precise trail of possession and ownership.[8]

> B.    The Interrogatories Regarding Lubian Are Proper

Boies Schiller separately argues that the Court's July 7 Order excuses their inadequate responses to interrogatories pertaining to Lubian. *See* BSF Opp. at 2, 16. This misreads the Order and its application here. To begin with, Lubian's involvement in Chen's and Prince Group's claims over the Defendant Cryptocurrency is not separate and distinct from the tracing questions discussed above, as Boies Schiller suggests. *See* BSF Opp at 1, 2. The government's questions about the nature of these claims cannot be answered without explaining Lubian's purported role in holding and mining portions of the Defendant Cryptocurrency. Boies Schiller's purported responses explicitly but vaguely implicate Lubian in Chen's and Prince Group's possessory and ownership claims; they must do more to explain how. *See* Gov. Mot. at 10-12.

Moreover, as noted above, the central question governing the proper scope of the government's interrogatories is whether the information sought "is relevant to understanding [the claimant's] relationship to the defendant property." July 7 Order at 8. Among other things, "requests are appropriate to the extent they seek information related to whether [the claimant's] relationship with third parties affects its ownership interest in the Defendant Bitcoin." *Id.* at 11. Such an inquiry is especially relevant when potential nominee or straw owner issues are implicated, for claims by such entities are prohibited in civil forfeiture actions. *See, e.g., United States v. One 1990 Beechcraft*, 619 F.3d 1275, 1278-79 (11th Cir. 2010) (a corporation holding legal title is not an owner if all control is exercised by its majority shareholder in his individual capacity without regard to the corporate form); *United States v. $410,000.00 in U.S. Currency*, No. 07-CV-0598, 2007 WL 4557647, at *7 & n.5 (granting government's motion to compel responses to special interrogatories as necessary to ensure claimant has standing and to protect against nominee claimants). Indeed, while "an owner of the defendant property 'will normally have standing to challenge forfeiture,' 'straw owners'—those who legally 'own' the property but hold title for another party—lack standing[.]" July 7 Order at 11 (quoting *Khudainatov*, 177 F.4th at

---

[8]    On this topic, Boies Schiller also misleadingly asserts that the government has previously argued that tracing "is an issue for trial" and "go[es] to the merits of this case." BSF Opp. at 15 (citing ECF No. 10 at 4). This is out of context. Those statements were about the *government's* obligation to prove the allegations in the Complaint by tracing funds subject to forfeiture, which need not be met until trial. *See* ECF No. 10 at 4 ("Tracing in a civil forfeiture case is an issue for trial; it is not required to satisfy the government's pleading requirements set forth in Rule G(2)(f)."). Of course, special interrogatories have nothing to do with the government's pleading requirements, nor are they even governed by the claimant's pleading requirements, or else Rule G(6) would be superfluous. *See $1,106,775.00*, 177 F.4th at 997.

229). This is for good reason. As the Court affirmed in its Order, "the focus of the standing inquiry is *injury* to the party seeking standing," and straw owners "'do not themselves suffer an injury when the property is taken.'" *Id.* (emphasis in original). "Accordingly, courts have permitted interrogatories that test the Claimant's assertion that she is the true owner of the defendant property and not merely a courier for a third party." *Id.* (citations and quotation marks omitted).

Here, such concerns abound. As the government argued in its opening brief, the claimants have "assert[ed] multiple incompatible theories of ownership," including "an arrangement by which █████████████████████████████████████████████," even as both Chen and Prince Group have asserted ownership and possessory interests. Gov. Mot. at 7; *see* Chen Response No. 4; Prince Group Response No. 3. If ████████ controlled the funds or owned them, this is a very different litigation than if Chen held them, and again the litigation is different if Chen held them on behalf of Prince Group. *See* Gov. Mot. at 7. Moreover, as described in the government's motion, the responses provide no explanation as to how portions of the Defendant Cryptocurrency that were mined by Lubian belong to Chen and are somehow derived from his and Prince Group's business income, nor how the portions of the Defendant Cryptocurrency not maintained in wallets associated with Lubian were derived or how they also belong to Chen or Prince Group. *See* Gov. Mot. at 10-12.

The government's interrogatories as to Lubian aim to disentangle the convoluted web that these claimants have spun. They ask about Lubian's relationship to their claims of ownership, and they ask broader questions about what Chen and Prince Group claim Lubian to be in the first instance and what their involvement was in it. *See* Chen Special Interrogatories Nos. 10-12; Prince Group Special Interrogatories Nos. 7-9. Proceeding without such clarity will only invite confusion and mischief down the road. To be sure, the Court's July 7 Order granted Warp Data's request to quash broader questions about Lubian, which Warp Data asserted it had no relationship to. The Court further concluded that it would "not require Warp Data to explain the difference between its interest in the Defendant Bitcoin and that of other claimants or to opine on the merits of other parties' claims." July 7 Order at 13. But the government's requests here come in a very different context. ████████████████████████████████████████████████████████████████

IV.    <u>Conclusion</u>

        For these reasons, and for all the reasons stated in the government's motion, the government respectfully requests that the Court compel Chen and Prince Group to properly respond to the government's special interrogatories pursuant to Rule G(6).

        Respectfully submitted,

        JOSEPH NOCELLA, JR.
        United States Attorney

By:    /s/
        Alexander F. Mindlin
        Andrew D. Reich
        Benjamin Weintraub
        Alessandra V. Rafalson
        Tanisha R. Payne
        Assistant U.S. Attorneys
        (718) 254-7000

        Christopher B. Brown
        Supervisory Trial Attorney
        National Security Cyber Section
        National Security Division
        U.S. Department of Justice

cc:    Clerk of Court (CHK)
        Counsel of Record