**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendant *In Rem*. | Civil Action No. 1:25-cv-05745 (RPK) |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST**
**OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE _IN REM_**

Claimants are victims of state-sponsored terrorism (the "Owens Victims"), who have obtained final judgments against the Islamic Republic of Iran, including under 28 U.S.C. § 1605A and its predecessor statute, 28 U.S.C. § 1605(a)(7).[1]  Like the other Iran judgment creditors who have asserted claims against the Defendant Cryptocurrency, the Owens Victims have been waiting years—and in some cases decades—for Iran to satisfy their judgments.

The Owens Victims now seek to attach the Defendant Cryptocurrency on the same legal basis as the other Iran judgment creditors: the Terrorism Risk Insurance Act ("TRIA"), which provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may "execut[e]" on or attach "in aid of execution" the "blocked assets" of that terrorist party or its "agency or instrumentality." Pub. L. No. 107-297 § 201(a), 116 Stat. 2322,

---

[1] A full list of Claimants and the compensatory damages that they have been awarded is included as Attachment A to the Verification of the Owens Victims' Claims.

2337 (2002) (codified as 28 U.S.C. § 1610 (note)). "Congress specifically intended TRIA to address the Executive Branch's reluctance to allow blocked funds to be used to compensate terrorism victims." *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 538 (S.D.N.Y. 2010). And Congress designed both TRIA and the FSIA to permit attachment and execution in precisely these circumstances, where victims of terrorism identify assets in the United States belonging to a state sponsor of terrorism that were blocked after being used for a paradigmatic commercial activity. *See* TRIA § 201; 28 U.S.C. § 1610(a)(7), (g).

The evidence establishing that the Defendant Cryptocurrency constitutes blocked assets of Iran through the Iran-China Group—an agency or instrumentality of Iran—has already been extensively briefed by the Fritz Victims and Baxter Victims. *See* ECF 29 (summarizing evidence presented in turnover proceeding, *Fritz v. Iran & China Invs. Dev. Grp.*, No. 1:25-cv-07093 (E.D.N.Y.)); ECF 30 ¶¶ 16-18 (same); *see also* Complaint for Execution and Turnover, *Fritz*, No. 1:25-cv-07093 (E.D.N.Y. Dec. 26, 2025), ECF 1 ("*Fritz* Compl."). Accordingly, the Owens Victims hereby assert their superior interest in all of the Defendant Cryptocurrency, or at least so much as may ultimately be necessary to satisfy the outstanding compensatory damages, with post-judgment interest, on their judgments, which TRIA makes senior to any interest the government could assert.[2]

## I.    Background

### A.    The Owens Victims Hold Billions of Dollars in Judgments Against Iran.

The Owens Victims are direct victims of Iranian state-sponsored terrorism who have obtained final judgments against Iran in the U.S. District Court for the District of Columbia. *Owens*

---

[2] Because the value of Bitcoin fluctuates from day to day, the amount of Bitcoin necessary to satisfy the Owens Victims' judgments cannot be fully determined until the Bitcoin is transferred or otherwise liquidated in satisfaction of the judgments.

*v. Republic of Sudan*, No. 1:01-cv-02244 (D.D.C. Nov. 28, 2011), ECF 214; *Mwila v. Islamic Republic of Iran*, No. 1:08-cv-01377 (D.D.C. Nov. 30, 2011), ECF 30; *Khaliq v. Republic of Sudan*, No. 1:10-cv-00356 (D.D.C. Nov. 30, 2011) ECF 25; *Taitt v. Islamic Republic of Iran*, No. 1:20-cv-01557 (D.D.C. Mar. 16, 2023) , ECF 21; *Gunn v. Islamic Republic of Iran*, No. 1:21-cv-01187 (D.D.C. Aug. 2, 2024), ECF 46. These judgments were entered pursuant to 28 U.S.C. § 1605A or its predecessor statute, 28 U.S.C. § 1605(a)(7), which provide an exception to foreign sovereign immunity for claims arising from acts of terrorism by state sponsors of terrorism—a category that includes Iran. *See Havlish v. Taliban*, 152 F.4th 339, 360 (2d Cir. 2025) (recognizing that Iran is a "terrorist party" under TRIA).

The Owens Victims have suffered devastating losses as a result of Iran's material support for terrorist organizations. They consist of the victims and family members of victims of al Qaeda's 1998 suicide bombings of the U.S. embassies in Kenya and Tanzania and al Qaeda's 2000 bombing of the U.S.S. Cole in Yemen. *See Owens*, No. 1:01-cv-02244 (D.D.C. Nov. 28, 2011), ECF 215; *Mwila*, No. 1:08-cv-01377 (D.D.C. Nov. 30, 2011), ECF 31; *Khaliq*, No. 1:10-cv-00356 (D.D.C. Nov. 30, 2011), ECF 26; *Taitt*, No. 1:20-cv-01557 (D.D.C. Mar. 16, 2023), ECF 22; *Gunn*, No. 1:21-cv-01187 (D.D.C. July 29, 2024), ECF 39. The judgments entered on behalf of the Owens Victims reflect the gravity of their injuries and represent the legal determination by U.S. courts that Iran is liable for its role in enabling these terrorist attacks. *See Owens*, No. 1:01-cv-02244 (D.D.C. Nov. 28, 2011), ECF 215; *Mwila*, No. 1:08-cv-01377 (D.D.C. Nov. 30, 2011), ECF 31; *Khaliq*, No. 1:10-cv-00356 (D.D.C. Nov. 30, 2011), ECF 26; *Taitt*, No. 1:20-cv-01557 (D.D.C. Mar. 16, 2023), ECF 22; *Gunn*, No. 1:21-cv-01187 (D.D.C. July 29, 2024), ECF 39. Iran has refused to honor its obligations under these judgments.

3

**B.    The Defendant Cryptocurrency Is Property of Iran Through the Iran-China Group.**

As extensively documented in the Fritz Victims' Complaint and attachment motion papers, the Defendant Cryptocurrency—approximately 127,271 Bitcoin—constitutes blocked assets of Iran through the Iran-China Group, an agency or instrumentality of Iran. *See generally* ECF 29.

The Iran-China Group, doing business on the blockchain as Lubian.com or "LuBian," is an Iranian joint-stock company that created and operated a cryptocurrency mining pool in Iran's Rafsanjan Special Economic Zone. *Fritz* Compl. ¶¶ 20, 72-106. Through this mining operation, the Iran-China Group converted Iranian energy resources into cryptocurrency, enabling Iran to evade comprehensive U.S. sanctions. *Id.* ¶¶ 72-87. Iranian officials have openly acknowledged that cryptocurrency mining is "a tool for bypassing sanctions" and that "digital currency is most efficient during times of sanctions." *Id.* ¶ 77.

The Iran-China Group worked closely with the Iranian government to establish this operation. LuBian boasted of its "good local resources in Iran" and "good relations" with Iran's Ministry of Energy, Ministry of Foreign Affairs, "and even the army." *Id.* ¶ 4. The Iran-China Group built and then donated "massive" electric infrastructure for the project back to Iran's state-owned power company, Tavanir. *Id.*

Before LuBian's wallets were hacked in December 2020, LuBian accumulated at least 127,271 Bitcoin—worth approximately $11.4 billion as of December 2025. *Id.* ¶ 108. Under Iranian law, licensed miners were required to supply their mined cryptocurrency to "channels" selected by the Central Bank of Iran or pay industrial taxes of 25% to Iran. *Id.*

In December 2020, a "whitehat" hacker breached LuBian's crypto wallets and stole over 127,000 Bitcoin. *Id.* ¶¶ 109-10. The Iran-China Group—as LuBian—sent numerous messages to the hacker on the blockchain, claiming ownership of the Bitcoin (calling it "our asset") and

demanding the hacker "contact us through 1228btc@gmail.com to discuss the return." *Id.* Eventually, the hacker apparently handed over the keys to the Iran-China Group's cryptocurrency wallets to the U.S. government. *Id.*

**C.     The Government Initiates Forfeiture Proceedings but Downplays the Iran Connection.**

On October 14, 2025, the government initiated the instant civil forfeiture action against the Defendant Cryptocurrency. ECF 1. The government alleges that the Defendant Cryptocurrency was involved in money-laundering and wire-fraud schemes conducted by Chen Zhi and Prince Holding Group. *Id.* ¶ 15. However, as the Fritz Victims have demonstrated, the government's complaint minimizes LuBian's connection to Iran. *Fritz* Compl. ¶ 112 (discussing ECF 1). While the government acknowledges that LuBian had mining facilities in Iran, it describes LuBian simply as "a Chinese bitcoin mining operation"—understating the extensive evidence that the Iran-China Group was an agency or instrumentality of Iran. ECF 1¶ 16(u). Indeed, all of the wallets belonged to and were controlled by LuBian, because all of the addresses in the government's complaint initiated messages to the whitehat hacker starting with "MSG from LB [LuBian]" and begging for the funds to be returned. *Fritz* Compl. ¶ 112. The only way to send these messages was by signing a transaction with a wallet's private keys—conclusively establishing LuBian's ownership of the Defendant Cryptocurrency. *Id.*

**D.     Multiple Groups of Iran Judgment Creditors Have Filed Claims and Attachment Motions.**

Numerous groups of Iran judgment creditors have already filed claims and attachment motions in this proceeding. On December 29, 2025, the Fritz Victims—nearly 2,300 victims of state-sponsored terrorism holding more than $23 billion in judgments against Iran, including more than $9.1 billion in compensatory damages—filed a Notice of Verified Claim and Statement of Interest. ECF 29. On the same date, the Baxter Victims—holding judgments worth more than $2

billion, including over $470 million in compensatory damages—filed a similar notice. ECF 30. The Fritz Victims also filed an emergency motion for ex parte order of attachment on December 28, 2025, in their related turnover action. *Fritz*, No. 1:25-cv-07093, ECFs 69, 70. Additional groups of Iran judgment creditors, including the O'Neill Claimants, Fishbeck Claimants, and Iranian Terrorism Victims, have also filed claims in this action.

## II.    The Owens Victims Are Entitled to Attachment Under TRIA and New York Law.

The Owens Victims satisfy every element required for attachment under TRIA. TRIA § 201(a) provides:

> Notwithstanding any other provision of law … in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism … the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA's requirements are satisfied here. The Owens Victims hold final judgments against Iran, a state sponsor of terrorism, *Havlish*, 152 F.4th at 360, for compensatory damages for acts of terrorism under 28 U.S.C. § 1605A. Further, the Iran-China Group d/b/a Lubian.com is an "instrumentality" of Iran within the meaning of TRIA. *See Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 135 (2d Cir. 2016) (observing that an entity qualifies as an "agency or instrumentality of a terrorist party" if it "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by the terrorist party." (cleaned up)). Indeed, as the Fritz Victims have extensively documented, "Iran orchestrated the construction and operation of the Rafsanjan mine through and in partnership with the Iran-China Group, from which it derived substantial infrastructural and economic benefits used to avoid sanctions." Memo. of Law in Support of *Ex Parte* Order at 16, *Fritz*, No. 1:25-cv-07093, ECF 70. Iran "'could not have

carried out' this project 'had it not been' for the Iran-China Group's equipment and services in constructing and operating the mine." *See id.* at 16 (quoting *Levin v. Bank of N.Y. Mellon*, 2019 WL 564341, at *4 (S.D.N.Y. Feb. 12, 2019) (analyzing "material support").) As such, blocked assets of the Iran-China Group are subject to attachment in aid of execution to satisfy the Owens Victims' judgment.

The Defendant Cryptocurrency here qualifies as a blocked asset. Under TRIA, "blocked asset[s]" include "any asset seized or frozen by the United States" pursuant to certain sections of the International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A). In 2012, President Obama issued—pursuant to IEEPA—Executive Order 13,599, blocking "[a]ll property and interests in property of the Government of Iran" that "are in the United States," "come within the United States," or "come within the possession or control of any United States person, including any foreign branch." 77 Fed. Reg. 6659, 6659 (Feb. 8, 2012) (later codified at 31 C.F.R. §§ 510.211, 594.201(a)(5)). Consequently, the Second Circuit has recognized that "all assets belonging to an entity that satisfies Executive Order 13,599's definition of 'Government of Iran' are automatically blocked." *Kirschenbaum*, 830 F.3d at 137. That definition includes both the Government of Iran and "any ... agency, or instrumentality thereof." *Id.* at 120 (quoting 77 Fed. Reg. at 6660). Because the Iran-China Group is such an agency or instrumentality, the Defendant Cryptocurrency qualifies as a blocked asset.

In addition to satisfying TRIA's substantive requirements, the Owens Victims satisfy the requirements for attachment under New York law. Article 62 of the CPLR, specifically CPLR § 6205, authorizes attachment "in aid of execution" for "a party that has been awarded a money judgment against a foreign state, as defined in 28 United States Code Section 1603, in accordance with and subject to the limitations of 28 United States Code Section 1610 and other applicable

law." N.Y. CPLR § 6205. The Owens Victims have obtained money judgments against Iran, which is "certainly" a foreign state under 28 U.S.C. § 1603. *Kirschenbaum*, 830 F.3d at 125. Furthermore, to the extent CPLR § 6212(a)'s requirements apply to post-judgment attachment under Section 6205, the Owens Victims satisfy those requirements: (1) they have causes of action under TRIA, (2) "it is probable" that they will succeed on the merits, (3) grounds for attachment exist under CPLR § 6201, and (4) there are no known counterclaims, so that "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y. CPLR § 6212(a).

## III.    TRIA Supersedes the Government's Forfeiture Claims.

TRIA's cornerstone is the statute's broad "notwithstanding" clause, which aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Rep. of Iran v. Elahi*, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). That notwithstanding clause "mak[es] plain that the force of the [statute] extends everywhere" and "'supersede[s] all other laws.'" *Weinstein v. Islamic Rep. of Iran*, 609 F.3d 43, 49, 53 (2d Cir. 2010) (quoting *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)). Accordingly, because it overrides "'statutory provisions that conflict with the scope of the TRIA,'" TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025) (quoting *Greenbaum v. Islamic Rep. of Iran*, 67 F.4th 428, 432 (D.C. Cir. 2023)). Thus, under TRIA, the Owens Victims' interest in the Defendant Cryptocurrency is superior to the government's forfeiture claims.

## IV.    The Owens Victims Are Entitled to Equal Treatment With Other Iran Judgment Creditors.

TRIA makes no distinction among categories of terrorism victims—all victims who have obtained judgments against terrorist parties based on acts of terrorism are entitled to execute on

blocked assets. TRIA § 201. The Owens Victims satisfy the same legal requirements under TRIA as the Fritz Victims, Baxter Victims, and other Iran judgment creditors. All of these groups hold final judgments against Iran based on acts of terrorism, all seek to attach the same Defendant Cryptocurrency, and all rely on the same statutory framework and factual predicates. Thus, there is no legal basis for treating the Owens Victims differently from the other Iran judgment creditors who have already filed claims and attachment motions. Moreover, this Court has indicated that it will "exercise its docket-management authority to equitably consolidate any requests for writs of attachment, so that all such claims can be adjudicated in an orderly fashion." *Fritz*, No. 1:25-cv-07093 (E.D.N.Y. Feb. 2, 2026) (text order). Granting the Owens Victims' motion alongside the pending attachment motions would advance this goal by ensuring that all similarly situated Iran judgment creditors are treated consistently.

Pursuant to 28 U.S.C. § 983(a) and Rule G, the Owens Victims hereby assert a claim to the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—that is senior to the government's claim. Notwithstanding the government's forfeiture efforts, the Owens Victims reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency.

Dated: July 27, 2026

Respectfully submitted,

/s/ Matthew V.H. Noller
Matthew V.H. Noller (No. 5288998)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
(415) 318-1200
mnoller@kslaw.com

Matthew D. McGill
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington DC 20006

9

(202) 737-0500
matthew.mcgill@kslaw.com

*Attorneys for Owens, Gunn, Khaliq, Mwila, and Taitt Claimants*

Craig Carlson
THE CARLSON LAW FIRM
100 E Central Texas Expressway
Killeen, TX 76541
(254) 526-5688

*Attorney for Gunn and Taitt Claimants*