UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,

Defendant.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
1:25-CV-5745 (RPK) (CHK)

RACHEL P. KOVNER, United States District Judge:

The United States filed this *in rem* civil forfeiture action seeking to condemn approximately 127,271 Bitcoin stored at various virtual addresses. Many groups of claimants have filed claims seeking to attach the Bitcoin. Some allege that the Bitcoin constitutes funds of which they were defrauded, while others allege that they are entitled to attach the Bitcoin as victims of state-sponsored terrorism who are judgment creditors of Iran. A subset of those judgment creditors have moved to proceed pseudonymously, principally relying on the fact that they were allowed to proceed pseudonymously in the lawsuits in which they obtained judgments against Iran.

The motion to proceed pseudonymously is denied without prejudice. The Court does not question the rulings permitting the claimants to proceed pseudonymously in litigating their underlying claims against Iran, principally because the litigation of those cases involved matters of a highly sensitive and personal nature. But this lawsuit is centered not on the events giving rise to the claimants' judgments, but on whether certain assets that have been seized by the United

States government are appropriately forfeited to the United States, on the one hand, or distributed to judgment creditors like the movants or to other claimants, on the other. Claimants' motion does not make a persuasive showing that litigating those matters under their own names will expose sensitive or highly personal information. Nor have claimants shown that they face other harms from the disclosure that they are Iran judgment creditors—a status shared by multiple claimants in this action who have *not* moved to proceed pseudonymously. Accordingly, the motion to proceed pseudonymously is denied without prejudice.

**BACKGROUND**

The following facts are taken from the government's complaint, which alleges a scheme referenced in the claimants' filings. The government alleges that Chen Zhi, the founder and chairman of Prince Holding Group ("Prince Group"), operated "forced-labor scam compounds across Cambodia that engaged in cryptocurrency investment fraud schemes." Compl. ¶¶ 15, 21 (Dkt. #1). Under one scheme alleged in the complaint, scam operators would contact "victims around the world, including in the United States," about investment opportunities in cryptocurrency and foreign exchange markets. *Id.* ¶ 32. When victims wired money to bank accounts controlled by Prince Group associates in Brooklyn, the associates would purportedly move the proceeds through various accounts, convert them into cryptocurrency, and transfer them to "networks" of "virtual currency addresses" ultimately controlled by the Prince Group. *Id.* ¶¶ 33–35. The complaint further asserts that the Prince Group "laundered [its] illicit profits . . . through a variety of complex money laundering networks," including by using the profits "to fund large-scale cryptocurrency mining operations." *Id.* ¶¶ 38, 42. One mining operation—called "Lubian"—was a "Chinese bitcoin mining operation that maintained bitcoin mining facilities . . . in China and Iran." *Id.* ¶¶ 16(u), 42.

On October 14, 2025, the United States filed an *in rem* civil forfeiture complaint against approximately 127,271 Bitcoin stored at various virtual addresses. *Id.* ¶ 2. The complaint alleges that the Bitcoin is subject to forfeiture as proceeds of wire fraud or conspiracy to commit wire fraud under 18 U.S.C. § 1343, or as property traceable to money laundering transactions or their attempt and conspiracy under 18 U.S.C. § 1956. *Ibid.* The Court issued a warrant for the arrest of the articles.

Since then, Chen Zhi, Lubian, and a number of other parties have filed claims contesting the forfeiture. Those parties include victims of fraud who believe that the Bitcoin constitutes proceeds of the crimes against them. The court has previously denied two motions to proceed pseudonymously filed by fraud victim claimants.

In addition, several groups of claimants assert an interest in the assets that the government seeks to forfeit on the basis that they are victims or family members of victims of state-sponsored terrorism who hold judgments against Iran. Those claimants argue that Lubian is an agency or instrumentality of Iran and that as judgment creditors of Iran, they have a right to attach and execute on the Bitcoin as property of Iran under the Terrorism Risk Insurance Act. *See, e.g.*, Motion for Leave to File Verified Claims 1-2 (Dkt. #52) ("Mot. for Leave"); *see also id.* ¶¶ 41–50; Fritz Claimants' Notice of Verified Claim (Dkt. #29).

A subset of these Iran judgment-creditor claimants represented by Crowell & Moring LLP have moved to proceed under pseudonyms. *See* Mem. in Supp. of Mot. to Seal & Proceed Under Pseudonyms (Dkt. #108-1) ("Mot. to Proceed"). These claimants are described in their filings as 1,436 victims or family members of victims of state-sponsored terrorism who "collectively hold more than $5.9 billion in judgments" against Iran. Mot. for Leave 1; *see* Jan. 15, 2026 Order (construing claimants' notice of claim as a motion for leave to file a verified claim). Claimants

won these judgments in *Barry v. Islamic Republic of Iran*, No. 1:16-cv-1625 (RC) (D.D.C.); *Estate of John Doe v. Islamic Republic of Iran*, No. 1:08- cv-540 (JDB) (D.D.C.); *Jones v. Islamic Republic of Iran*, No. 1:20-cv-850 (RC) (D.D.C.); *Maxwell v. Islamic Republic of Iran*, No. 1:22-cv-173 (RC) (D.D.C.). They were granted leave to proceed pseudonymously in those cases.

**DISCUSSION**

Federal Rule of Civil Procedure 10(a) requires the title of a complaint to "name all the parties." The Second Circuit has recognized that, while it is sometimes appropriate for a litigant to proceed under a pseudonym, Rule 10(a)'s requirement "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008). "[P]seudonyms are the exception and not the rule," and a party seeking to "receive the protections of anonymity . . . must make a case rebutting" the "presumption of disclosure." *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020) (per curiam).

When considering a claimant's request to proceed anonymously, courts in this Circuit balance the claimant's "interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff*, 537 F.3d at 189. The Second Circuit has set forth a non-exhaustive list of ten factors to guide courts in balancing these interests. *Id.* at 189–90. Specifically, courts should consider whether:

(1) "the litigation involves matters that are highly sensitive and [of a] personal nature";

(2) "identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties";

(3) "identification presents other harms and the likely severity of those harms . . . including whether the injury litigated against would be incurred as a result of the disclosure of the [claimant]'s identity";

(4) "the [claimant] is particularly vulnerable to the possible harms of disclosure . . . particularly in light of his age";

(5) "the suit is challenging the actions of the government or that of private parties";

(6) "the defendant is prejudiced by allowing the [claimant] to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court";

(7) "the [claimant]'s identity has thus far been kept confidential";

(8) "the public's interest in the litigation is furthered by requiring the [claimant] to disclose his identity";

(9) "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities"; and

(10) "there are any alternative mechanisms for protecting the confidentiality of the [claimant]."

*Id.* at 190 (internal quotations and citations omitted).

Claimants' main argument is that because the district courts in their underlying cases against Iran "previously granted [them] leave to proceed under pseudonyms," this Court should "continue to [grant them leave] here." *See* Mot. to Proceed 5. But because claimants' motion makes clear that the underlying cases against Iran presented distinct risks not present here, the district courts' determinations in those cases does not rebut for purpose of this case the general presumption that parties must litigate in their own names. *See Pilcher*, 950 F.3d at 45.

To begin, claimants admit that this suit does not involve "matters that are highly sensitive" and "personal." *Sealed Plaintiff*, 537 F.3d at 190 (factor one); *see* Mot. to Proceed 5 ("the instant litigation may not directly involve matters which are highly sensitive and of a personal nature"). After all, this action is focused on whether certain seized assets are properly forfeited to the government as proceeds of criminal activity, attached to claimants' judgments under the TRIA, or disbursed to other third parties. Claimants still argue that this *Sealed Plaintiff* factor favors

pseudonymity because "the underlying litigations . . . did" involve personal details about the injuries they suffered in terrorist attacks, and disclosing their identities here would force them to "endure the burdens of disclosing [these] sensitive matters." *Ibid.* Claimants, however, do not substantiate their assumption that disclosing their identities in this suit would result in the tacit disclosure of the details about their injuries that were at issue in the underlying cases against Iran, in which they proceeded anonymously. Many plaintiffs received identical awards against Iran in the underlying suits. *See, e.g.*, Appendix C, Redacted Report & Recommendation, *Barry v. Islamic Republic of Iran*, No. 1:16-cv-01625 (RC), Dkt. #40-1 (D.D.C. Aug. 21, 2019) (listing claimants by pseudonym and total award). It thus appears difficult—if not impossible—for anyone to deduce which facts are associated with particular claimants if claimants disclose only their names and their awards here. Claimants' filings thus do not carry their burden of showing that pseudonymity is necessary to protect highly personal information. And for the same reason, claimants have not shown that that disclosure would result in "other harms." *Sealed Plaintiff*, 537 F.3d at 190 (third factor). The harm claimants describe—"emotional distress and stigma" from the disclosure of their "intimate details"—will not occur if these "intimate details" are not disclosed. Mot. to Proceed 6.

Claimants' next argument is that disclosing their identities in this suit "poses a risk of retaliatory physical or mental harm." *Sealed Plaintiff*, 537 F.3d at 190 (second factor). But claimants offer no "direct evidence linking disclosure of [their] name[s] to a specific injury," as courts require to support a claim for pseudonymity based on the risk of retaliation. *Doe v. Brown Harris Stevens Residential Mgmt., LLC*, 809 F. Supp. 3d 163, 166 (S.D.N.Y. 2025) (quoting *Doe v. Combs*, No. 24-CV-8054 (MKV), 2024 WL 4635309, at *3 (S.D.N.Y. Oct. 30, 2024)); *see also Pilcher*, 950 F.3d at 43 (affirming denial of pseudonymity when claim of retaliation was

"unsubstantiated speculation"). Instead, claimants conclusorily assert that disclosing their identities would make them and their families "susceptible to real and credible threats of injury and harm," and they note that some of the courts in the underlying suits found that this factor favored pseudonymity. Mot. to Proceed 5–6. But these courts seem to have to relied on factual allegations not present here—*e.g.*, that the plaintiffs "still reside[d] in Lebanon or ha[d] family members" there, who may face retaliation by Hezbollah. Memorandum Opinion & Order at 5, *Maxwell v. Islamic Republic of Iran,* No. 1:22-cv-173 (RC), (D.D.C. Jan. 19, 2022). Claimants do not make similar contentions in this lawsuit—in which many other Iran judgment creditors are proceeding without pseudonymity. Nor do they offer any factual basis for the Court to assess whether disclosing their identities will put them at risk of harm. The Court thus cannot conclude on the present record that claimants or their family members will face a specific injury if their names are disclosed.

Absent stronger privacy interests or better substantiated concerns of collateral harms, the Court also does not find pseudonymity justified simply because the claimants oppose the government's forfeiture complaint and have protected their identities thus far. *See Sealed Plaintiff*, 537 F.3d at 190 (factors five and seven). The fact that a party "is suing the government or seeking to challenge a government policy does not, by itself, justify granting a motion to proceed pseudonymously because doing so 'would lead, inappropriately, to granting anonymity to any plaintiff suing the government to challenge a law or regulation,'" and "override the significant public interest in requiring all of the parties to be named." *Plaintiffs # 1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 275 (E.D.N.Y. 2015). Neither does the fact that claimants "have previously been permitted to keep their identities confidential." Mot. to Proceed 8. While a party's privacy interest "is weaker where anonymity has already been compromised," this factor does not provide

an affirmative interest that outweighs the public's interest. *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006); *see Doe v. Combs*, No. 1:24-CV-9852 (JLR), 2025 WL 934380, at *3 (S.D.N.Y. Mar. 27, 2025) (collecting cases in which a party's anonymity was not dispositive), *aff'd,* No. 25-1021, 2026 WL 742650 (2d Cir. Mar. 17, 2026).

Moreover, other factors set out in *Sealed Plaintiff* counsel against permitting the claimants to proceed pseudonymously. This is not a case in which the public interest in disclosure is "atypically weak" because "of the purely legal nature of the issues presented," *Sealed Plaintiff*, 537 F.3d at 190 (factor nine), as courts occasionally find when "litigation involves . . . abstract challenges to public policies," *Doe v. Fashion Inst. of Tech.*, No. 25-CV-950 (JPC), 2025 WL 1000927, at *5 (S.D.N.Y. Apr. 3, 2025) (citation omitted). And as a general matter, the public's interest in identifying the parties to a proceeding is significant. *See Sealed Plaintiff*, 537 F.3d at 190 (factor eight). "[P]eople have a right to know who is using their courts," *id.* at 189 (citation omitted), "even in ordinary civil litigation between private parties," *Del Rio*, 241 F.R.D. at 159. Claimants' pledge to disclose their full names to the government under seal would not mitigate the public's interest in knowing those names. Mot. to Proceed 1 n.1. Taking together the factors set out in *Sealed Plaintiff*, the claimants have not "rebut[ted] the presumption of disclosure," *Pilcher*, 950 F.3d at 45, as required to justify proceeding pseudonymously in this case.

## CONCLUSION

For the reasons stated above, claimants' motion is denied without prejudice to filing a renewed motion. In the absence of such a motion, claimants are directed to file their claims and the verifications for their claims using their full names by October 13, 2026. If they do not, the Court will consider the claims of only the claimants whose full names are attached to claimants' Motion for Leave to File Verified Claims.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 29, 2026
Brooklyn, New York