UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendant. | **ORDER**<br><br>25-CV-5745 (RPK) (CHK) |

**CLAY H. KAMINSKY, United States Magistrate Judge:**

Before the Court are two motions: (1) the government's motion to compel Claimants Chen Zhi ("Chen") and Prince Holding Group ("Prince Group") (together, "Claimants") to respond to the special interrogatories propounded under Supplemental Rule G(6); and (2) Claimants' motion to for leave to file electronically under seal. Mot. to Compel, ECF No. 469; Mot. to Seal, ECF No. 480. For the reasons explained below, the government's motion to compel is granted in part and denied in part and Claimants' motion to file under seal is granted.

## I. Background

The Court assumes familiarity with the general background of this case. *See, e.g.*, Order on Mot. to Quash ("July 7 Order"), ECF No. 472. Briefly, the government initiated this *in rem* civil action seeking forfeiture of approximately 127,271 bitcoin (the "Defendant Bitcoin") as proceeds of fraud and money laundering in connection with a cryptocurrency investment fraud scheme and other fraud schemes alleged to

have been operated by Chen, the Chairman of Prince Group, that used a "vast network of seemingly legitimate business enterprises to launder its criminal proceeds." Compl., ECF No. 1, ¶¶ 15, 20.

In February 2026, the government served special interrogatories on Chen and Prince Group pursuant to Supplemental Rule G(6), which authorizes the government to propound limited-scope interrogatories to assess a claimant's standing in a civil forfeiture case. *See* Fed. R. Civ. P. Supp. R. G(6). After this Court entered a protective order in April 2026, Claimants served their responses, providing answers to some interrogatories and objecting to others. Following a meet and confer in May 2026, Claimants supplemented some of their responses with additional information.

The government filed the instant motion on June 26, 2026, requesting that this Court compel Claimants to fully respond to the special interrogatories. Claimants oppose this motion and filed a motion for leave to file documents related to the motion under seal.

## II. Legal Standards

To contest this civil forfeiture action, Claimants must have standing under both the statute governing their claims and Article III of the U.S. Constitution. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999); *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025).[1] To have Article III standing, Claimants must have suffered (1) an injury in fact (2) traceable to the challenged action and

[1] To establish statutory standing, a claimant asserting rights to property that has been seized and that is the subject of a forfeiture action *in rem* must file a verified claim within fourteen days after process has been executed, unless the court grants an extension. *See* Supp. R. C(6). There is no dispute that Claimants met this requirement and thus have statutory standing.

(3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In the civil forfeiture context, a claimant with a "colorable interest in the property," such as a possessory or ownership interest, typically satisfies the constitutional standing requirements because their interest in the seized property creates an injury that may be redressed by the return of that property. *See United States v. $1,106,775.00 in United States Currency*, 177 F.4th 986, 992 (9th Cir. 2026) (en banc); *United States v. M/Y Amadea ("M/Y Amadea II")*, 770 F. Supp. 3d 558, 606 (S.D.N.Y. 2025), *aff'd sub nom. United States v. Khudainatov*, 177 F.4th 224 (2d Cir. 2026). But claimants who are mere nominees or "straw owners," *i.e.*, those who legally "own" the property but hold title for another party, lack standing because they "do not themselves suffer an injury when the property is taken." *Khudainatov*, 177 F.4th at 229; *cf. Ross*¸ 161 F.4th at 110.

Standing is a threshold jurisdictional question in civil forfeiture actions. *M/Y Amadea II*, 770 F. Supp. 3d at 604. At the initial stages of a civil forfeiture action, claimants "need not prove the full merits of their underlying claim to demonstrate Article III standing." *Khudainatov*, 177 F.4th at 228–29 (internal alterations and quotation marks omitted). Ultimately, however, the claimant bears the burden of establishing standing by a preponderance of the evidence. *See* Supp. R. G(8)(c)(ii)(B).

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which governs *in rem* civil forfeiture actions, authorizes the government to probe a claimant's standing at any stage of the proceeding by serving special interrogatories "limited to the claimant's identity and relationship to the

defendant property." Supp. R. G(6)(a). This allows the government to "test the veracity of the claimant's claim of ownership and interest" by gathering information that bears on the claimant's standing. *United States v. Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000)*, No. 16-CV-6564, 2017 WL 8780158, at *3 (E.D.N.Y. Oct. 26, 2017) (internal quotation marks omitted). Claimants must answer or object to the interrogatories within 21 days. Supp. R. G(6)(b). If a claimant fails to respond to the special interrogatories, the government may move to compel the claimant's responses under Rule 37 or may move to strike that party's claim pursuant to Supplemental Rule G(8)(c)(i)(A).

## III. Analysis

### A. Chen's standing in this case does not excuse him from responding to the government's interrogatories.

As an initial matter, the Court rejects Chen's argument that he need not respond to the government's interrogatories because the allegations in the Complaint have established his standing.

Standing in a civil forfeiture action may be apparent from the face of the complaint. *See* July 7 Order at 5; *United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014) (acknowledging the claimants' standing where the complaint alleged that the forfeited bank accounts were held in the claimants' name and the real property was purchased by the claimants). But what is needed to sufficiently establish Article III standing in a civil forfeiture case depends on the stage of the case. *See United States v. M/Y Amadea ("M/Y Amadea I")*, No. 23-CV-9304, 2024 WL 4799887, at *2 (S.D.N.Y. Nov. 15, 2024); *$1,106,775.00*, 177 F.4th at 992 ("As is

standard in civil litigation, the civil forfeiture claimant's burden to show standing depends on the stage of the case."). A claimant's standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. In the civil forfeiture context, what is needed to establish standing also depends on the nature of the interest asserted, as the Ninth Circuit recently explained:

> The showing required at each phase also depends on the nature of the claimed property interest. For ownership claims, we have been clear that at the motion to dismiss stage, a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing. A claimant asserting a possessory interest, by contrast, must at the motion to dismiss stage offer some factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property.

*$1,106,775.00*, 177 F.4th at 992 (cleaned up).

The Complaint clearly alleges that Chen had, at a minimum, a possessory interest in the Defendant Bitcoin. The Complaint is centered around Chen. It traces his leadership of the Prince Group and its operations, alleging that Chen personally directed a "forced-labor scam compounds across Cambodia that engaged in cryptocurrency investment fraud schemes and other fraudulent schemes" that generated substantial profits later laundered through Prince Group's network of subsidiaries. Compl. ¶¶ 15, 20. It explains that "Chen was directly involved in managing the scam compound," maintained records of the schemes, and "laundered Prince Group's illicit profits, including the Defendant Cryptocurrency, through a

variety of complex money laundering networks." Compl. ¶¶ 24–25, 38–39, 42. Proceeds of the Prince Group's mining operations—which were funded in part by the illicit schemes—were also "stored in unhosted cryptocurrency wallets personally controlled by Chen" and to which Chen personally held the keys. Compl. ¶ 43; *see SEC v. Payward, Inc.*, 2024 WL 4511499, at *1 (N.D. Cal. Aug. 23, 2024) ("Whoever controls the private key to a crypto asset, controls that asset."). Tellingly, the government refers to the wallets that held the Defendant Bitcoin as the "Chen Wallets." Compl. ¶ 44.

At the pleading stage, the Complaint appears to establish Chen's standing by explaining how he personally controlled the Chen Wallets and maintained their private keys. *See $1,106,775.00*, 177 F.4th at 992. The Complaint also contains ample factual allegations of how Chen came to possess the Defendant Bitcoin, *see id.*, providing significant detail about Chen's business ventures and his alleged use of the illicit proceeds, which include the Defendant Bitcoin.

Chen must nonetheless respond to the government's special interrogatories. Supplemental Rule G(6) authorizes the government to test a claimant's standing "at any time after the claim is filed and before discovery is closed." Supp. R. G(6)(a). Thus, even a claimant who has established standing at the pleading stage can be required to respond to the government's Rule G(6) interrogatories. As the Ninth Circuit has explained, the government "need not accept [the claimant's] claim of ownership at face value" and may instead "investigate [the claimant's] factual account to see if it holds up" including through the use of Rule G(6) interrogatories. *See $1,106,775.00*,

177 F.4th at 997. Here, although the Complaint appears to establish Chen's standing, the government asserts that standing is not a settled matter, noting that Chen has alleged theories of ownership that contradict relevant allegations in the Complaint. *See* Mot. to Compel at 7; *cf. $1,106,775.00*, 177 F.4th at 998 (Rule G(6) interrogatories are proper in cases "where the government intends to dispute the core facts underlying the claimant's assertion of standing"). Other claimants have also asserted claims that are inconsistent with Chen's. Thus, Chen's standing is not preordained once this case moves beyond the pleadings; this case is in its early stages and facts are being developed that may perhaps cast doubt on Chen's ownership or possessory claims. Accordingly, the government may propound interrogatories focused on Chen's relationship to the Defendant Bitcoin, and the Court may compel Chen to respond. *Cf. United States v. Real Property Located at 17 Coon Creek Rd.*, 787 F.3d 968, 978 n.4 (9th Cir. 2015) (recognizing government's "entitlement" to testing the claimant's "continued standing" even while his standing was not reasonably in doubt); *$1,106,775.00*, 177 F.4th at 993 (noting that "the government is entitled to develop evidence to show that the claim of ownership is unfounded" even where the claimant could survive a summary judgment motion on standing).

**B. The Court will not require Chen to personally sign the interrogatory answers at this time.**

Before turning to the substance of Claimants' answers, the Court first addresses the government's argument that Chen's interrogatory responses are invalid because he did not personally sign the responses as required by Rule 33. Chen (through his counsel) explains that compliance with Rule 33's signature requirement

is impossible, as Chen has been held incommunicado in the custody of the People's Republic of China since January 2026. *See* Claimants' Opp., ECF No. 478, at 4–5, 17–20.

Rule 33 provides that a party responding to interrogatories must sign the answers, and courts have explained that this is a mandatory requirement. Fed. R. Civ. P. 33(b)(5); *see CCA Recordings 2255 Litig. v. United States*, No. 19-CV-2491, 2021 WL 63281, at *1 n.2 (D. Kan. Jan. 6, 2021) (collecting cases); *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976, 2012 WL 1899222, at *9 (E.D.N.Y. May 24, 2012). Yet few cases have discussed this requirement in depth, and none has analyzed it in the context presented here, where a party is unavailable because he is held incommunicado by a foreign sovereign.

Courts that have discussed the Rule 33 signature requirement have largely enforced the rule's party-signature requirement. *See CCA Recordings*, 2021 WL 63281, at *1–2. But the majority of these cases involved circumstances where, unlike here, the party in question was merely difficult to locate or access but obtaining the party's signature was possible. *See, e.g.*, *id.* at *2–3 (COVID-19 pandemic did not excuse signature requirement where the court had reason to believe that the government could "fairly readily" facilitate counsel's access to their incarcerated clients and obtain the signature); *McDougall v. Dunn*, 468 F.2d 468, 472 (4th Cir. 1972) (requiring defendant to sign interrogatories despite being located out of state because counsel "could easily have arranged through counsel in Michigan to have had the defendant answer personally"); *Lackey v. SDT Waste & Debris Servs.*, No. 11-CV-

1087, 2013 WL 5772325, at *10 (E.D. La. Oct. 23, 2013) (class plaintiffs were required to personally sign interrogatories where "there have been no allegations that any of the plaintiffs suffer from mental impairments or have sought to grant a power of attorney").

In the few cases that have excused this requirement, the non-signing party was mentally incapacitated and had delegated power of attorney to the individual who signed the interrogatories on that person's behalf. *See Miller v. Holzmann*, 238 F.R.D. 111, 111–12 (D.D.C. 2006); *Tomlinson v. United Behav. Health*, No. 19-CV-6999, 2025 WL 3485634, at *1 (N.D. Cal. Dec. 4, 2025). A court in this Circuit has also temporarily waived the Rule 33 signature requirement because the plaintiff lived in the Soviet Union and faced "arguable risk" if required to sign. *Fyodorova v. National Enquirer, Inc.*, 89 F.R.D. 68, 69 (S.D.N.Y. 1981).

This Court will excuse Chen from personally signing his interrogatory responses while it is impossible for him to do so. It is clear that Chen is not merely difficult to reach, but completely inaccessible. The government does not contend otherwise, yet it encourages the Court to compel the impossible, *i.e.*, to compel Chen to personally sign his interrogatory answers. This Court will not do so. *Cf. In re Grand Jury Proceeding*, 971 F.3d 40, 50 (2d Cir. 2020) (district court lacked the power to order party to comply with a subpoena where compliance was "obviously impossible"). Compelling Chen's signature would be worse than futile given the unique due process concerns presented in civil forfeiture cases. *See Culley v. Marshall*, 601 U.S. 377, 396–401 (2024) (Gorsuch, J., joined by Thomas, J., concurring); *id.* at 407–08 (Sotomayor,

J., joined by Kagan and Jackson, JJ., dissenting). Moreover, Chen's anticipated failure to comply with such an order would only lead to impasse because courts are rightly reluctant to strike a claim for failure to comply with Rule G(6) where the claimant's standing "is not reasonably in dispute." *See $1,106,775.00*, 177 F.4th at 997–98; *17 Coon Creek Rd.*, 787 F.3d at 975–78.

Nevertheless, the government's concerns about the future litigation of this case if Chen remains inaccessible are well founded. For example, the government may experience some prejudice by not obtaining answers from Chen himself, who may be able to provide more information about the origins of the Defendant Bitcoin than his signers and attorneys. *See Chow v. Shorefront Operating LLC*, No. 19-CV-3541, 2021 WL 225933, at *1 n.1 (E.D.N.Y. Jan. 20, 2021) ("[I]nterrogatory answers are equivalent to sworn witness testimony, which cannot be supplied by counsel."). Further, Claimants have not yet offered proof of the signers' authority to act on Chen's behalf, although they have indicated a willingness to do so. Absent evidence of the signers' authority to bind Chen, the validity of Chen's interrogatory responses is in doubt. *Cf. Wright v. Elton Corp.*, No. 17-CV-286, 2021 WL 9385092 (D. Del. Mar. 2, 2021) (denying request to allow the plaintiff's daughter to sign the interrogatories on her behalf where the court had no evidence that the daughter was granted the legal authority to respond). However, these questions, while legitimate, are better addressed later in this proceeding given Chen's apparent standing at this stage.

### C. Claimants must provide more detailed responses to some, but not all, of the disputed interrogatories

Turning to the substance, the government urges the Court to compel Claimants to provide more fulsome responses to its interrogatories. Specifically, the parties are in dispute over Claimants' responses to interrogatories seeking: (1) information about the source and amount of the Defendant Bitcoin in which Claimants assert an interest (Chen Interrogatory 4; Prince Interrogatory 3); and (2) or information about Claimants' relationship with several third parties (Chen Interrogatories 10–12; Prince Interrogatories; Prince Interrogatories 7–9). The Court addresses each category in turn.

#### 1. Claimants must respond more fully to the interrogatories seeking information about the Defendant Bitcoin they claim, but they need not provide a transaction-by-transaction accounting.

The government first contends that Claimants have provided insufficient information in response to its interrogatories seeking information about, *inter alia*, where the Defendant Bitcoin was held, who had control over it, and how it came into Claimants' possession. Claimants counter the government's interrogatories are overbroad and unduly burdensome. Specifically, Claimants argue that the government is attempting to require Claimants to turn over a transaction-by-transaction accounting of its interest in the Defendant Bitcoin, which is more than Rule G(6) requires. Claimants further argue that the information it has already provided is sufficient to answer the legitimate scope of the government interrogatories.

Supplemental Rule G(6) interrogatories that seek information about the circumstances of a claimant's interest are proper, including those that ask "when, from whom, where, and how [the claimant] acquired [its] interest in the Defendant Funds." *$272,000*, 2017 WL 8780158, at *3; *United States v. Real Props.*, No. 18-CV-9293, 2019 WL 4877490, at *3 (D.N.J. Oct. 2, 2019) ("Courts have approved special interrogatories that inquire into a claimant's identity, its interest in the defendant property, and the circumstances surrounding its acquisition of the defendant property."). Even though a claimant must assert an interest over only a portion of the *res* to have standing, the government may still request information about the specific portion claimed. *See $272,000*, 2017 WL 8780158, at *3 (approving interrogatory asking claimant to identify "each and every source from which [she] claim[s] the Defendant Funds was derived, including the exact amount of money derived from each source"). Thus, to the extent the government's interrogatories seek information about the source of Claimant's interest and amount claimed, those questions are properly within the scope of Rule G(6).

Supplemental Rule G(6) does not, however, allow the government to require a granular transaction-by-transaction accounting of Claimants' ownership or possessory interest. The Ninth Circuit recently rejected an interrogatory requiring that level of detail, explaining that the government's interrogatory seeking "every transaction by which you acquired or obtained each interest in the property. . . . went beyond what Rule G(6) envisions." *$1,106,775.00*, 177 F.4th at 997–99. The claimant's claim and interrogatory responses in that case already provided the government

"with a sufficient basis for conducting further investigation into his claimed ownership of the money." *Id.* at 999. Similarly here, the Court will not require Claimants to provide a detailed breakdown of every transaction that led to Claimants' alleged ownership or possession of the Defendant Bitcoin.

Accordingly, Claimants need not provide a detailed accounting of all transactions related to the Defendant Bitcoin, but Claimants must respond more fully to the interrogatories seeking information related to the source of their interest. Claimants cannot merely list all their sources of revenue or income and claim that their response is sufficient. Claimants must provide enough information to allow the government to accurately assess their interest in the Defendant Bitcoin, for example, by providing information about whether the Defendant Bitcoin they claim was mined or purchased; the identity of any mining pool, seller, or exchange from which Claimants acquired the Defendant Bitcoin; how much Bitcoin Claimants mined or purchased there; and where it was held thereafter. While tracing Claimants' alleged interest in the Defendant Bitcoin may be difficult, Claimants are nonetheless required to "provide the best answer they can based upon information within their possession." *Carl v. Edwards*, No. 16-CV-3863, 2017 WL 4271443, at *3 (E.D.N.Y. Sept. 25, 2017) (citation omitted); Fed. R. Civ. P. 33(b)(3). Claimants must also supplement their answers with this information as new information about the Defendant Bitcoin comes into Claimants' possession, as Claimants have represented they will do. *See* Fed. R. Civ. P. 26(e)(1); Chen Interrogatories, ECF No. 469-1, at 16–17; Prince Group Interrogatories, ECF No. 469-2, at 14. Accordingly, Claimants are

directed to supplement their responses to Chen Interrogatory 4 and Prince Group Interrogatory 3, as construed above, to the extent Claimants' answers withheld responsive information in their possession, custody, or control.

### 2. Claimants need only respond to the government's interrogatories concerning third parties to the extent the information sought relates to Claimants' own interest in the Defendant Cryptocurrency.

Claimants also oppose the government's motion to compel responses to interrogatories that seek information about third parties, including other claimants in this action, as outside the scope of Supplemental Rule G(6). As discussed in the Court's July 7 Order, some of the government's interrogatories exceed the scope of what is allowed by Rule G(6) and the Court will not compel a response to those interrogatories. *See* July 7 Order at 10–14. But Claimants must respond to the government's interrogatories about third parties to the extent they seek information related to Claimants' own ownership or possessory interest in the Defendant Bitcoin.

Special interrogatories that seek to "test the Claimant's assertion that she is the true owner of the defendant property and not merely a courier for a third party" are proper. July 7 Order at 11 (quoting *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 565 (D. Md. 2013)). Thus, the government is permitted to propound interrogatories that seek to clarify Claimants' identity and relationship to the Defendant Bitcoin, for example, by asking whether other individuals or entities had an ownership interest in, exercised control over, or directed the affairs of Prince Group. Such interrogatories are proper, as these questions go to Prince Group's identity and may reveal whether Prince Group itself had sufficient ownership or

control over the *res* to justify its standing. *See* July 7 Order at 12; *M/Y Amadea II*, 770 F. Supp. 3d at 604. Therefore, to the extent Claimants withheld information based on their objections, Claimants are directed to supplement their responses.

Although Claimants are required to provide information about how the interest of third parties' affects their own, the government's interrogatories that seek other information about LuBian and other entities, including their identity, corporate structure, business operations, and accounts, are improper under Supplemental Rule G(6). While these requests may be relevant to the standing of other individuals or entities that are also claimants in this action, they are not relevant to *Claimants'* standing and thus Claimants are not required to respond. Instead, those special interrogatories are more appropriately directed to those other claimants. *See Real Props.*, 2019 WL 4877490, at *4. Therefore, Claimants need not supplement their responses to Chen Interrogatories 10–12 and Prince Group Interrogatories 7–9, except as discussed above.

## IV. <u>Motion to File Under Seal</u>

In connection with the government's motion, Claimants request that this Court allow them to file certain portions of their opposition under seal. Claimants argue that the redactions proposed in their motion protect Claimants' sensitive commercial and personal information (and that of third parties) and the identities of nonparty representatives. Mot. to Seal at 1. The government opposes Claimants' motion, arguing that there is "no basis" for redacting information related to LuBian and other information related to Claimants' interest. *See* Gov.'s Opp., ECF No. 488, at 2.

The Court grants Claimants' motion to seal in full. The documents submitted for the Court's consideration in connection with the motion to compel and subsequent briefing are "judicial documents" to which a presumption of the right of public access attaches. *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12-CV-6608, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 122–23 (2d Cir. 2006). However, because these documents are submitted in connection with a motion to compel rather than a dispositive motion, the presumption is not provided significant weight. *Alexander Interactive, Inc.*, 2014 WL 4346174, at *2; *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 7188795, at *2 (S.D.N.Y. Dec. 7, 2016) (the presumption of public access to documents submitted in connection with a motion to compel is "entitled only to modest weight."). Here the Court concludes that the Claimants' interest in protecting the sensitive personal and confidential information outweighs the modest presumption of public access. Because the documents are presented to the Court solely in the context of a discovery dispute, it is appropriate to permit the limited redaction of sensitive information, the disclosure of which could harm the parties. *See Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17-CV-147, 2018 WL 1335354, at *3 (E.D.N.Y. Mar. 15, 2018) (granting motion to file under seal where the confidential information was "presented to the Court solely in connection with a discovery dispute"); *Cunningham v. Cornell Univ.*, 2019 WL 10892081, at *2 (S.D.N.Y. Sept. 27, 2019) (granting motions to seal where proposed redactions were "limited" to cover only commercially sensitive

information). Accordingly, the Court finds that there is good cause to permit the unredacted versions of the parties' submissions to be filed under seal.

SO ORDERED.

_/s/ Clay H. Kaminsky______
CLAY H. KAMINSKY
United States Magistrate Judge

Dated: September 30, 2026
Brooklyn, New York