# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,

Defendant.

----------------------------------x

**MEMORANDUM AND ORDER**
1:25-CV-5745 (RPK) (CHK)

RACHEL P. KOVNER, United States District Judge:

The United States filed this *in rem* civil forfeiture action seeking to forfeit approximately 127,271 Bitcoin stored at various virtual addresses. Claimants Ath Leepinyo and Connie Wilson timely filed notices of claim asserting their interest in the Bitcoin under Rule G(5) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions. Claimants Danli Wang, Ravi Anand, Andy Yan, Lawrence Van Dyn Hoven, Haining Zhang, Louis Selvon, and Lingzhi Chen moved for leave to file untimely claims. The government moved to strike Leepinyo's and Wilson's claims and opposed the other claimants' motions to file untimely claims. For the reasons that follow, the government's motions to strike Leepinyo's and Wilson's claims are granted, and the remaining claimants' motions for leave to file untimely claims are denied.

## BACKGROUND

The following facts are taken from the government's complaint and the claimants' notices of claim.

The government alleges that Chen Zhi has served as the founder and chairman of Prince Holding Group ("Prince Group"), "a Cambodian corporate conglomerate that [has] operated dozens of business entities in more than thirty countries" since 2015. Compl. ¶ 15 (Dkt. #1). "Prince Group units operated in a range of business sectors, including 'real estate development, banking, finance, tourism, logistics, technology, food and beverages, and lifestyle,'" but the group's "largest profits came from its illicit and fraudulent activities." *Id.* ¶ 21.

The Prince Group's criminal activities included the operation of "forced-labor scam compounds across Cambodia that engaged in cryptocurrency investment fraud schemes and other fraud schemes." *Id.* ¶ 15. These included "pig-butchering" scams, "in which malicious actors contacted unwitting victims through messaging or social media applications and convinced them to transfer cryptocurrency or other funds to specified accounts based on false promises that the funds would be invested and generate profits." *Id.* ¶ 17(a). In one such scheme alleged in the complaint, scam operators would contact "victims around the world, including in the United States," about investment opportunities in cryptocurrency and foreign exchange markets. *Id.* ¶ 32. When victims wired money to bank accounts controlled by Prince Group associates in Brooklyn, the associates would "misappropriate[] and launder[]" the funds through the Brooklyn accounts and other accounts, ultimately sending the funds "back to Prince Group scammers" at a particular forced labor compound in Cambodia and to other locations, where they were further laundered before "returning to Prince Group and its top executives." *Id.* ¶¶ 33–35. The Prince Group "often employed multiple layers of laundering techniques to further obscure the illicit sources of [their] profits," including by investing the money in other business ventures, such as an online gambling business and cryptocurrency mining operations. *Id.* ¶¶ 40–41, 43. The bulk of the funds were never returned to the victims. *Id.* ¶ 34.

On October 14, 2025, the United States filed an *in rem* civil forfeiture complaint against approximately 127,271 Bitcoin stored at various virtual addresses, alleging that the Bitcoin is subject to forfeiture as proceeds of wire fraud or conspiracy to commit wire fraud under 18 U.S.C. § 1343, or as property traceable to money laundering transactions or their attempt and conspiracy under 18 U.S.C. § 1956. *Id.* ¶ 2. The United States describes the Bitcoin it seeks to forfeit as a portion of the "vast sum of fraud proceeds packaged as heavily laundered cryptocurrency" that "Chen had amassed" by "approximately 2020." *Id.* ¶ 44. It further alleges that it has determined through blockchain tracing analysis that the defendant cryptocurrency comes from "two categories of sources: (1) cryptocurrency mining," and "(2) indirect transfers from wallets at centralized cryptocurrency exchanges." *Id.* ¶ 45. The funds had been "moved across a complex network of hosted and unhosted cryptocurrency wallets affiliated with various shell companies and individuals through a process of high-volume disaggregation and funneling before it ultimately converged into" the wallets in which the currency was stored—"patterns consistent with known money laundering typologies" that "were apparently designed to disassociate funds from their illicit sources, complicate the audit trail and hide the illicit origins of the funds." *Id.* ¶ 48.

The complaint does not suggest that all of the proceeds of the Prince Group's pig butchering or other fraud schemes were routed through the cryptocurrency wallets it seeks to forfeit. Indeed, while the complaint alleges that the wallets contain approximately 127,271 Bitcoin—about $10.7 billion dollars at today's conversion rates—the complaint also describes a co-conspirator of Chen's as "stat[ing] that Prince Group was earning over $30 million a day in 2018 from fraudulent [pig butchering] schemes and related illicit activities, an amount which annualizes to approximately $11 billion." *Id.* ¶ 57.

Since the government filed its complaint, a number of parties have filed claims contesting the forfeiture. Several of these parties claim to be victims of the alleged fraudulent schemes operated by Chen and the Prince Group. Two victims—Ath Leepinyo and Connie Wilson—timely filed claims contesting the forfeiture, and six other victims—Danli Wang, Ravi Anand, Andy Yan, Lawrence D. Van Dyn Hoven, Haining Zhang, Louis Michael Sylvain Selvon, and Lingzhi Chen—either moved for leave to file untimely claims or submitted an untimely claim, which the Court construes as a motion for leave to file such a claim. All of the claimants except Van Dyn Hoven have appeared *pro se*.

Each claimant asserts that he or she was fraudulently induced to transfer either money or cryptocurrency—with values ranging from $62,245 (Leepinyo) to $2.5 million (Van Dyn Hoven)—to scammers that appear to be associated with the Prince Group or Chen. *See* Leepinyo Claim ¶¶ 2, 6 (Dkt. #11); Wilson Claim 2 (Dkt. #39); Wang Mot. for Leave to File ¶¶ 6, 8 (Dkt. #48); Wang Second Mot. for Leave to File (Dkt. #89); Yan Claim ¶¶ 2–3 (Dkt. #54); Yan Amended Claim ¶¶ 2–3 (Dkt. #88); Van Dyn Hoven Claim ¶¶ 3, 14, 27, 29 (Dkt. #72-1); Anand Claim ¶¶ 4, 6 (Dkt. #118); Zhang Mot. for Leave to File ¶¶ 6, 8 (Dkt. #360); Selvon Claim 2, 3, 7, 21–24 (Dkt. #424); Chen Mot. for Leave to File ¶ 6 (Dkt. #456); Chen Second Mot. for Leave to File (Dkt. #458); Chen Third Mot. for Leave to File (Dkt. #459); Chen Fourth Mot. for Leave to File (Dkt. #463); Chen Fifth Mot. for Leave to File (Dkt. #465). The claimants' basis for their belief that they were scammed by the Prince Group or Chen, and that the Bitcoin includes their lost funds, varies. Some simply assert that they are a "verified victim of [the alleged] fraud." Yan Amended Claim ¶ 3; *see, e.g.*, Leepinyo Claim ¶ 1; Anand Claim ¶ 4. Others arrived at that conclusion by "comparing publicly available court filings to [their] personal experience[s]." Wang Mot. for Leave to File ¶ 3; *see, e.g.*, Zhang Mot. for Leave to File ¶¶ 3, 8–10; Selvon Claim 3;

Case 1:25-cv-05745-RPK-CHK Document 516 Filed 09/12/25 Page 5 of 18 PageID #: 12308

Chen Mot. for Leave to File ¶ 8. All of the claimants allege that they never recovered the money they lost.

The government moved to strike Leepinyo's and Wilson's claims, arguing that Leepinyo and Wilson lack Article III standing to contest this civil forfeiture action. *See* Mem. of L. in Supp. of Mot. to Strike Claim and Answer by Ath Leepinyo (Dkt. #197); Mem. of L. in Supp. of Mot. to Strike Claim and Answer by Connie Wilson (Dkt. #378). The government opposed the motions to file out of time filed by Wang, Anand, Yan, and Van Dyn Hoven for the same reasons. Opp'n to Mots. to File Out of Time 6 (Dkt. #126).

**LEGAL STANDARDS**

The Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions govern civil forfeiture actions. *See United States* v. *Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). Supplemental Rule G authorizes any person "who asserts an interest in the defendant property" in a civil forfeiture action to "contest the forfeiture by filing a claim in the court where the action was pending." Supp. R. G(5)(a)(i). Claims contesting forfeiture must be filed within the time limits set by Rule G(5), "[u]nless the court for good cause sets a different time." Supp. R. G(5)(a)(ii).

"In a civil forfeiture case, the claimant contesting the forfeiture bears the burden of demonstrating he or she has standing." *Bacchus v. United States*, No. 12-CV-5104 (DLI) (JMA), 2014 WL 2558800, at *2 (E.D.N.Y. June 6, 2014) (citing *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989)). A claimant must demonstrate both Article III and "statutory standing." *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025). The latter requires claimants to file their claims in compliance with the procedures of Supplemental Rule G and 18 U.S.C. § 983, the civil forfeiture statute. *Id.* at 111.

The Court may deny a motion to file out of time if a putative claimant lacks standing. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 529 (2d Cir. 1999). For claims that are timely filed, the government may move to strike the claim for lack of standing. *See* Supp. R. G(8)(c)(i). The government's motion to strike "may be presented as a motion for judgment on the pleadings." *Id.* G(8)(c)(ii). Courts consider such motions to strike as motions filed under Federal Rule 12(c) or 12(f), and in both cases apply the standard of review for motions made under Rule 12(b). *See, e.g.*, *United States v. U.S. Currency in Amount of Five Hundred Ninety-Eight Thousand Eight Hundred Twenty Six Dollars*, No. 00-CV-7073 (DLI) (VVP), 2007 WL 2713367, at *5 (E.D.N.Y. Sept. 13, 2007) (construing motion under Rule 12(f)); *United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567 (MKB), 2015 WL 5178121, at *5 (E.D.N.Y. Sept. 2, 2015) (construing motion under Rule 12(c)), *aff'd sub nom. United States v. $417,143.48*, 682 F. App'x 17 (2d Cir. 2017). Under that standard, the Court must "accept[] all factual allegations in the [claim] as true and draw[] all reasonable inferences in favor of the [claimant]." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). When a party proceeds *pro se*, his pleadings must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

## DISCUSSION

The government's motions to strike Leepinyo's and Wilson's claims are granted, and the motions to file claims out of time by Wang, Anand, Yang, Van Dyn Hoven, Zhang, Selvon, and Chen are denied because these claimants lack Article III standing to contest this civil forfeiture action.

To have Article III standing to contest a civil forfeiture action, a claimant "must demonstrate (1) a concrete, particularized, and 'actual or imminent' injury, (2) 'a causal connection

between the injury and the conduct complained of,' and (3) a 'likel[ihood] . . . that the injury will be redressed by a favorable decision' of the court." *United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 91 (2d Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Ownership of or a possessory interest in the forfeited property generally establishes Article III standing because such an owner "necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *Cambio*, 166 F.3d at 528 (quoting *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)); *see United States v. PokerStars*, No. 11-CV-2564 (LBS), 2012 WL 1659177, at *2 (S.D.N.Y. May 9, 2012) ("[A]n ownership or possessory interest in the seized or forfeited property" generally "establish[es] standing . . . in civil forfeiture actions.").

A claimant in a civil forfeiture action "need show only a facially colorable interest in the property at issue" and "need not prove the full merits of [their] underlying claim" to have Article III standing. *United States v. Khudainatov*, 177 F.4th 224, 228–29 (2d Cir. 2026) (citations omitted). But a general, unsecured interest in the seized property does not suffice. The Second Circuit has held that a claimant who is only an "unsecured creditor[] of the owner's seized property . . . do[es] not have standing to challenge [a] seizure," *United States v. Khan*, No. 97-6083, 1997 WL 701366, at *1 (2d Cir. 1997), and it has rejected a claim by a claimant with only a "claim of reimbursement" against seized property because it did not have "Article III standing to challenge the forfeiture," *Cambio*, 166 F.3d at 528–29. District courts also routinely reject claims to forfeited property by general, unsecured creditors for lack of standing. *See PokerStars*, 2016 WL 4411421, at *4 (same, because an "unsecured creditor has no standing to contest the forfeiture of seized property" (citation omitted)); *United States v. $541,395.06 U.S. Currency*, No. 10-CV-6555 (CJS), 2012 WL 3614294, at *4 (W.D.N.Y. Aug. 21, 2012) (same, because "the claimant is a general

Case 1:25-cv-05745-RPK-CHK Document 503 Filed 12/30/25 Page 8 of 13 PageID #: 13301

unsecured creditor having no specific ownership interest in the defendant currency"); *United States v. Agnello*, 344 F. Supp. 2d 360, 373 (E.D.N.Y. 2004) (same, because claimant "is a general creditor and does not have standing to bring this claim in this action").

Claimants' status as fraud victims who voluntarily transferred their money to scammers allegedly associated with the Prince Group and Chen makes them general, unsecured creditors because "[f]raud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property." *United States v. 8 Gilcrease Lane, Quincy Fla. 32351*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009); *see United States v. Lesak*, No. 07-CR-0396, 2009 WL 1788411, at *4 (S.D.N.Y. June 23, 2009) (Lynch, J.) ("[A] fraud victim who voluntarily transfers property to the defendant has a cause of action in tort against the defendant but has no greater interest in the forfeited property than does any other general creditor." (quoting *United States v. Eldick*, 223 Fed. App'x 837, 840 (11th Cir. 2007))). Some claimants argue that, *e.g.*, they did not transfer their funds "voluntarily" because they were "deceived into believing" they were engaging in legitimate transactions and never intended to "relinquish ownership" permanently. Anand Reply in Supp. of Mot. 1–2 (Dkt. #155). But "that [claimants] wired the[ir] money in reliance on misrepresentations or false pretenses does not alter the voluntariness of that parting." *Martin, Shudt, Wallace, Dilorenzo & Johnson v. Travelers Indem. Co. of Connecticut*, No. 1:13-CV-498 (LEK), 2014 WL 460045, at *3 (N.D.N.Y. Feb. 5, 2014) (collecting cases). So—like other general, unsecured creditors—claimants lack Article III standing as such to contest the government's forfeiture of the Bitcoin. *See Khan*, 1997 WL 701366, at *1; *Cambio*, 166 F.3d at 528–29.

One prospective claimant—Lawrence D. Van Dyn Hoven—argues that he has standing to contest forfeiture because he has an ownership interest in the seized property under the doctrine of constructive trust. A constructive trust is an equitable remedy defined by state law. In general, "a

constructive trust arises when, in the eyes of equity, a [party] is the true owner of the property at issue due to his right to the underlying assets from which it derives." *United States v. Watts*, 786 F.3d 152, 168 (2d Cir. 2015) (internal quotation marks, brackets, and ellipses omitted). "In these circumstances, the trust confers on the true owner of the property an equitable interest in the property superior to that of anyone who claims a later interest." *Ibid.* (internal quotation marks omitted). The Second Circuit has thus acknowledged that an "apparent beneficiary of a constructive trust . . . [has] standing" to contest the government's forfeiture of property. *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1160 (2d Cir. 1994); *see United States v. Ovid*, No. 09-CR-216 (JG) (ALC), 2012 WL 2087084, at *9 (E.D.N.Y. June 8, 2012) (concluding that claimant "sufficiently pleaded that [its f]unds were held in constructive trust for its benefit and has standing to challenge the preliminary order of forfeiture on that basis").

But neither Van Dyn Hoven nor the other claimants have alleged facts that would warrant the imposition of a constructive trust here. Van Dyn Hoven, the only prospective claimant who has meaningfully briefed a constructive trust claim, invokes New York law as the source of law. Van Dyn Hoven Mot. for Leave to File ¶ 3 (Dkt. #72); Van Dyn Hoven Reply in Supp. of Mot. 3 (Dkt. #182). In New York, "[i]t is hornbook law that *before* a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 n.4 (2d Cir. 2001) (citation omitted); *see also F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011) (discussing the tracing requirement generally); Restatement (Third) of Restitution and

Unjust Enrichment § 55, cmt. g (2011) (referring to the tracing requirement as a "fundamental limitation" of constructive trusts).[1]

Neither Mr. Van Dyn Hoven nor any of the other claimants have done so. Mr. Van Dyn Hoven's basis for believing he was one of the victims of the scams perpetrated by Chen and the Prince Group is itself limited. He alleges that he was victimized by a fraud matching the "pig butchering" modus operandi, and that at least one of the people who victimized him "is located in Southeast Asia." Van Dyn Hoven Mot. for Leave to File ¶¶ 8–10, 13 (Dkt. #72). But the government's complaint describes "pig butchering" scams as rampant in southeast Asia, and describes "transnational fraud" as "perhaps the most dominant activity in the entire Mekong sub-region." Compl. ¶ 19 (citation omitted). Neither geography nor modus operandi appear to be Prince Group signatures.

But even assuming Mr. Van Dyn Hoven plausibly alleged he was a victim of a Prince Group fraud, he does not offer a plausible basis to trace his property into the cryptocurrency wallets at issue in this forfeiture action. The government's complaint does not suggest that the Prince Group routed all of its pig-butchering proceeds into the wallets that the government seeks to seize; rather, it contends only that the seized wallets contain proceeds of those schemes. And Mr. Van Dyn Hoven does not offer facts that would plausibly draw the missing connection. His basis for

[1] As far as the Court can tell, the tracing requirement applies in all of the other the states with apparent relations to this dispute—*i.e.*, the states of residence of the United States claimants. *See Aebig v. Com. Bank of Seattle*, 674 P.2d 696, 697 (Wash. Ct. App. 1984) (traceability requirement under Washington law, Wang's state of residence); *Eychaner v. Gross*, 779 N.E.2d 1115, 1143 (Ill. 2002) (traceability requirement under Illinois law, Anand's state of residence); *Tikalsky v. Friedman*, 928 N.W.2d 502, 513 (Wis. 2019) (traceability requirement under Wisconsin law, Van Dyn Hoven's state of residence); *Am. Exp. Travel Related Servs. Co. v. Laughlin*, 623 A.2d 854, 856 (Pa. Super. Ct. 1993) (traceability requirement under Pennsylvania law, Zhang's state of residence); *Mervis Indus., Inc. v. Sams*, 866 F. Supp. 1143, 1148 (S.D. Ind. 1994) (traceability requirement under Indiana law, Wilson's state of residence); *Optional Cap., Inc. v. DAS Corp.*, 222 Cal. App. 4th 1388, 1402 (Cal. Ct. App. 2014) (traceability requirement under California law, Yan's state of residence).

drawing this inference is that an individual employed by "Rexxfield Cybercrime Investigations," expressed his "belie[f]"—albeit not "with 100% certainty"—that "the proceeds of Mr. Van Dyn Hoven's Stolen Cryptocurrency was with the Prince Group and was part of the seizure." Van Dyn Hoven Mot. for Leave to File ¶¶ 12, 17. But Mr. Van Dyn Hoven's filings do not include any facts to support or explain that individual's belief; instead, he states that the individual in question "did not elaborate," "left Rexxfield," and was thereafter "not available to provide further information." *Id.* ¶¶ 17–18. Without any facts providing a *basis* for believing Mr. Van Dyn Hoven's funds were part of the cryptocurrency seizure, the fact that an unnamed individual held this belief does not render plausible Mr. Van Dyn Hoven's traceability claim.

The remaining prospective claimants, who have not meaningfully invoked the doctrine of constructive trust, have also failed to plead facts supporting the inference that their funds can be traced into the seized wallets. While some claimants have asserted without explanation that the seized Bitcoin is traceable to the cryptocurrency or money stolen from them, none have alleged facts that make these bare claims plausible. *See, e.g.*, Leepinyo Claim ¶ 12 (asserting, without explanation, that the Bitcoin at certain addresses is "traceable to" his monetary payments for a condominium in Cambodia); Selvon Claim ¶ 5 (alleging that his funds are "traceable into the aggregation and laundering structure underlying the [Bitcoin]"). Without plausible allegations that these cryptocurrency wallets housed the prospective claimants' funds, or housed assets derived from the prospective claimants' funds, claimants offer no basis for the court to impose a constructive trust. *Cf. United States v. Vilar*, No. 05-CR-621, 2021 WL 4504699, at *5 (S.D.N.Y. Sept. 30, 2021) (Sullivan, J.) (imposing a constructive trust based, in part, on tracing "fictions" when claimants could "follow their investments to the comingled funds and to any property

acquired with, or profits resulting from, those comingled funds”). Claimants’ plausible allegations thus at best support the theory that they are general, unsecured creditors.

The fact that these claimants are unsecured creditors does not mean they are without recourse. If this action concludes in the government’s favor, the claimants may seek remission for their losses under Section 981(e)(6), which authorizes the government to remit forfeited funds to “any victim of the offense giving rise to the forfeiture, including, in the case of a money laundering offense, any offense constituting the underlying specified unlawful activity.” 18 U.S.C. § 981(e)(6). To do so, claimants can file a petition with the Attorney General of the United States, 28 C.F.R §§ 9.4(e), 9.8(a), and they may seek remission for “a specific amount [that] has been directly caused by the criminal offense, or a related offense, that was the underlying basis for the forfeiture,” *id.* § 9.8(b). If all the filed petitions “cannot be granted in full due to the limited value of the forfeited property,” the Attorney General may “grant remission on a pro rata basis,” thus ensuring that all the Prince Group’s victims can recover from the forfeited property. *Id.* § 9.8(f). In the absence of a plausible basis for tracing their funds to the seized Bitcoin, this is the avenue of relief available to claimants.

## CONCLUSION

For the reasons stated above, the government’s motions to strike Leepinyo’s and Wilson’s claims are granted, and the motions to file claims out of time submitted by Wang, Anand, Yan, Van Dyn Hoven, Zhang, Chen, and Selvon are denied. Because Leepinyo and Wilson lack standing to contest the government’s forfeiture of the Bitcoin, their outstanding motions to dismiss and for other relief are also denied. *See* Dkts. #113, #231, #265, #348, #363, #368, #387, #407, #423; *see also United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred*

*Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17, 19 (2d Cir. 2017) (affirming denial of motion to dismiss by claimant without standing).

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 25, 2026
Brooklyn, New York

# EXHIBIT B

Filed
06:30 PM, 26 Jan, 2026
.D.C., Eastern District of New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------X
UNITED STATES OF AMERICA,
Plaintiff,

1:25-cv-05745-RPK

v.

VERIFIED CLAIM

APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,
Defendants In Rem.
--------------------------------------------X

Claimant: Ravi Anand, Pro Se, 1339 N. Dearborn Street, #15C, Chicago, IL 60610
Email: ravi@ravianandlaw.com

**VERIFIED CLAIM AND STATEMENT OF INTEREST**

Claimant, Ravi Anand, pursuant to Supplemental Rule G(5) of the Federal Rules of Civil Procedure, files this Verified Claim and Statement of Interest in the above-captioned in rem forfeiture action, and states as follows:

**1. CLAIMANT INFORMATION**

1. Claimant is Ravi Anand, an individual residing at 1339 N. Dearborn Street, #15C, Chicago, Illinois 60610.
2. Claimant files this claim on his own behalf and not as a nominee, agent, or trustee for any other person or entity.

**2. PROPERTY CLAIMED**

3. Claimant asserts an ownership and equitable interest in a portion of the Defendant Assets traceable to transferred funds, including through layering, commingling, or conversion.

### 3. NATURE AND BASIS OF CLAIMANT'S INTEREST

4. Claimant transferred funds in the approximate amount of $205,779.60 as part of transactions induced by fraudulent representations and criminal conduct that form part of the basis for the seizure of the Defendant Assets.
5. Those funds were transferred to accounts, wallets, or intermediaries controlled by or associated with the perpetrators of the criminal scheme alleged in the Complaint.
6. Claimant's funds were converted into cryptocurrency or used to acquire cryptocurrency that was subsequently seized by the Government and is included within the Defendant Assets.
7. Claimant asserts a superior equitable and possessory interest in the portion of the Defendant Assets traceable to his transferred funds, including but not limited to an interest arising under principles of constructive trust, restitution, and tracing.
8. Claimant did not knowingly or voluntarily relinquish ownership of his funds and did not consent to their conversion, transfer, or use in unlawful activity.

### 4. LEGAL BASIS

9. Claimant asserts this claim pursuant to Supplemental Rule G(5) of the Federal Rules of Civil Procedure, 18 U.S.C. § 983, and applicable principles of federal forfeiture law.
10. Claimant's interest is legally cognizable and superior to any interest of the wrongdoers whose conduct gave rise to the forfeiture.
11. Claimant is an innocent owner and victim within the meaning of 18 U.S.C. §983(d), federal forfeiture law, and asserts this claim without waiving any rights or remedies available through the administrative remission or mitigation process.

12. Claimant asserts all rights under Supplemental Rule G(6), including the right to object to special interrogatories and discovery requests beyond the scope of Claimant's standing, and to assert any applicable privileges.

**5. RELIEF REQUESTED**

13. Claimant respectfully requests that the Court recognize Claimant's verified interest in the Defendant Assets, permit Claimant to contest forfeiture of the portion of the Defendant Assets traceable to his losses, and grant such other relief as the Court deems just and proper.

**6. VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of January, 2026.

/s/Ravi Anand
Ravi Anand, Pro Se
Ravi Anand
Claimant
Address: 1339 N. Dearborn Street, #15C, Chicago, IL 60610
1/26/26
Email: ravi@ravianandlaw.com
Phone: (708) 642-6735

# EXHIBIT C

Filed
04:02 PM, 30 Jan, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------X
UNITED STATES OF AMERICA,
Plaintiff,

v. 1:25-cv-05745 (RPK)

APPROXIMATELY 127,271 BITCOIN (BTC),
Defendants in Rem.
---------------------------------------X

**REPLY OF CLAIMANT RAVI ANAND**
**IN SUPPORT OF MOTION FOR LEAVE TO FILE CLAIM**

Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Kovner:

Claimant Ravi Anand respectfully submits this reply in response to the Government's January 27, 2026 letter (ECF No. 126).

The Government's opposition rests on a fundamental mischaracterization: that investment fraud victims who were deceived into transferring funds are mere unsecured creditors without any cognizable interest in forfeited property. That premise is inconsistent with the governing law and the facts of this case.

## I. Claimant Did Not "Voluntarily Transfer" His Funds

The Government relies on cases addressing truly voluntary transfers in commercial contexts. Those authorities do not apply here.

Mr. Anand was the victim of an organized international fraud scheme. He was deceived into believing he was engaging in legitimate cryptocurrency trading, when in fact he was transmitting funds to criminal actors.

Courts recognize that funds obtained by fraud remain the property of the victim and do not become the legitimate property of the wrongdoer. See, e.g., *United States v. $4,224,958.57*, 392 F.3d 1002, 1004–05 (9th Cir. 2004); *United States v. $3,000 in Cash*, 906 F. Supp. 1061, 1065 (E.D. Va. 1995).

Unlike the Government's cited investment creditor cases, Mr. Anand never intended to relinquish ownership. His transfers were procured through deception, making this legally equivalent to theft.

**II. Law Enforcement Tracing Confirms Claimant's Direct Property Interest**

This claim is supported by forensic tracing. The FBI has traced Mr. Anand's funds through blockchain analysis into wallets later consolidated into the Defendant Cryptocurrency. These funds were located at, and processed through, the OKX exchange, which subsequently cooperated with law enforcement and entered into a settlement with federal authorities.

Courts recognize standing where a claimant can trace stolen or misappropriated funds into seized property. See, e.g., *United States v. One-Sixth Share of James J. Bulger*, 326 F.3d 36, 43–44 (1st Cir. 2003); *United States v. $191,910.00*, 16 F.3d 1051, 1058 (9th Cir. 1994).

Mr. Anand's claim is thus not a generalized "right to payment," but a direct property interest in the Defendant Cryptocurrency.

**III. Claimant Qualifies as an Innocent Owner and Crime Victim**

Mr. Anand meets the criteria for an innocent owner under 18 U.S.C. § 983(d):

- He had no knowledge of the criminal scheme;
- He did not consent to any illegal conduct;
- He was affirmatively targeted and exploited by the perpetrators.

He is also a recognized victim of wire fraud and money laundering offenses charged in the related criminal case. Denying him standing would frustrate the intent of the Civil Asset Forfeiture Reform Act, which protects innocent victims swept into forfeiture proceedings.

**IV. Claimant Demonstrated Excusable Neglect**

Mr. Anand acted diligently upon learning of the forfeiture:

- He promptly consulted with counsel during the investigation;
- Investigated his rights;
- Filed his submission shortly thereafter.

The delay was not strategic or negligent; it reflects the opaque nature of international cryptocurrency fraud and reliance on federal investigations. Courts in this district routinely find excusable neglect under comparable circumstances. See, e.g., *United States v. $96,000*, 2019 WL 3334493, at *4.

No prejudice to the Government exists: discovery has not commenced, no merits rulings have been made, and no distribution of assets is imminent.

**V. Denial Would Produce an Inequitable Result**

The Government's position would allow organized fraudsters to secure superior rights to stolen funds merely by laundering assets through exchanges and wallets—a result incompatible with forfeiture law and equity. Courts have discretion to prevent such injustice. See *United States v. $417,143.48*, 2015 WL 5178121.

**VI. Conclusion**

Mr. Anand is not an unsecured creditor. He is a documented fraud victim whose stolen funds have been traced through OKX and identified by the FBI in the Defendant Cryptocurrency. He has demonstrated excusable neglect, good faith, and a direct property interest. Granting leave will not prejudice the Government and will promote the fair administration of justice.

For these reasons, Claimant respectfully requests that the Court grant his motion for leave to file his claim.

Dated: January 30, 2026

/s/ Ravi Anand
Ravi Anand, Pro Se
1339 N. Dearborn Street, #15C
Chicago, IL 60610
ravi@ravianandlaw.com
(708) 642-6735