**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br>Defendant, *In Rem*. | Civil Action No. 25-5745(RPK) |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM**

The Chairnoff Claimants are 95 victims of the September 11th terrorist attack on the World Trade Center in New York City who collectively hold judgments for more than $671 million in compensatory damages under 28 U.S.C. § 1605A against the Islamic Republic of Iran ("Iran") for its role in sponsoring that attack.[1] As Chairnoff Claimants just recently learned from the allegations in a separate proceeding, *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-cv-07093 (E.D.N.Y.) ("*Fritz* Suit"), the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ("Iran-China Group"). Upon learning this information, the Chairnoff Claimants promptly sought leave to file this Notice.

As alleged in the *Fritz* Suit, the Iran-China Group, doing business on the blockchain as Lubian.com or LuBian, is an agency or instrumentality of Iran that has materially

[1] A full list of the Chairnoff Claimants and the amount of compensatory damages they have each been awarded against Iran is included as Exhibit 1 to the accompanying Verification of Chairnoff Claimants' Claims.

supported Iran's efforts to evade U.S. sanctions by mining cryptocurrency in Iran. Through this scheme, sanctioned Iranian oil and gas are converted into electricity, which miners then use to generate cryptocurrency for the Iranian government to use outside the traditional global banking systems.

Based on the information newly revealed by the allegations in the *Fritz* Suit, under the Terrorism Risk Insurance Act ("TRIA"), the Chairnoff Claimants have the right to attach and execute on the property of Iran and its agencies and instrumentalities, including the Iran-China Group, "[n]otwithstanding any other provision of law." Accordingly, the Chairnoff Claimants hereby assert their superior interest in so much of the Defendant Cryptocurrency as may ultimately be necessary to satisfy the Chairnoff Claimants outstanding compensatory damages judgments against Iran, plus post-judgment interest thereon. TRIA makes the Chairnoff Claimants' interest in the Defendant Cryptocurrency senior to any interest of the government or any claimants other than the similarly-situated Fritz and Baxter Claimants who filed verified claims in this action on December 29, 2025. *See* ECF 29 and 30.

In support of this Notice, the Chairnoff Claimants state as follows:

## I. Chairnoff Claimants Have Been Awarded More Than $671 Million in Compensatory Damages Against Iran.

1. The Chairnoff Claimants are representatives, and surviving family members, of 15 individuals killed in the September 11th terrorist attack on the World Trade Center in New York City. In 2021, the U.S. District Court for the Southern District of New York determined that Iran was liable under 28 U.S.C. § 1605A for causing those deaths, and thereafter entered a series of judgments awarding the Chairnoff Claimants compensatory damages and pre-judgment interest.

2. In *Chairnoff v. Islamic Republic of Iran*, Civil Action No. 18-cv-12370(GBD)(SN) (S.D.N.Y.), judgments were entered on October 5, 2021 [ECF 64], March 30, 2023 [ECF 111], and April 17, 2024 [ECF 137].

3. In *Anaya v. Islamic Republic of Iran*, Civil Action No. 18-cv-12341(GBD)(SN) (S.D.N.Y.), judgments were entered on January 10, 2022 [ECF 97], July 28, 2022 [ECF 119], August 2, 2022 [ECF 123], August 2, 2023 [ECF 163], October 5, 2023 [ECF 171], and June 16, 2024 [ECF 179].

4. In total, these judgments awarded the Chairnoff Claimants approximately $750 million, including $671,157,680 in compensatory damages for pain and suffering, economic loss, and solatium.

5. The amount of compensatory damages awarded to each Chairnoff Claimant pursuant to the above-referenced judgments is listed in Exhibit 1 to the accompanying Verification of Chairnoff Claimants' Claims.

## II. The Chairnoff Claimants Are Entitled To Enforce Their Judgments

6. All of the above-referenced Chairnoff Claimants' judgments have been served on Iran over a year ago through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4).

7. To date, Iran has not paid any portion of any of the Chairnoff Claimants' judgments, and not one of the judgments has been satisfied. The judgments continue to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

## III. The Government Commenced This Forfeiture Action Against the Defendant Cryptocurrency—But Without Disclosing Its Extensive Connections To Iran

8. On October 14, 2025, the government initiated the instant civil forfeiture action against approximately 127,271 Bitcoin once stored in the virtual-currency addresses identified in Attachment A of its complaint. *See* ECF 1 ("Forfeiture Compl.") at 1 & Attachment. On the

same day, this Court issued an arrest warrant *in rem* for Defendant Cryptocurrency pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* ECF 3.

9. The government alleges the Defendant Cryptocurrency is subject to condemnation and forfeiture by the United States: (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956. *See* Forfeiture Compl. ¶ 2A. Specifically, the government alleges that the Defendant Cryptocurrency was involved in or derived from money-laundering operations conducted by Chen Zhi and Prince Holding Group, an alleged front for Chen's transnational criminal organization. *Id.* at ¶¶ 20, 38-43.

10. According to the government, one such scheme involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds." *Id.* ¶ 42.

11. The government describes "Lubian" as "a Chinese bitcoin mining operation" and acknowledges that it had at least one facility in "Iran." *Id.* ¶ 16(u). The government did not include information that put the Chairnoff Claimants on notice that the bitcoin mining operation involved conduct attributable to the Iranian Government, or otherwise that the Chairnoff Claimants had a basis to claim any of the Defendant Cryptocurrency.

### IV. The Chairnoff Claimants Recently Learned of the Relationship Between the Defendant Cryptocurrency and the Government of Iran

12. Based on information the Chairnoff Claimants only recently learned, it appears that the Defendant Cryptocurrency is directly tied to Iran, which was not clear from the forfeiture pleadings.

13. On December 26, 2025, other victims of Iran's state-sponsored terrorism filed a separate action alleging that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions. *See Fritz* Suit.

14. Plaintiffs in the *Fritz* Suit, along with another group of victims of Iran's state-sponsored terrorism (the "*Baxter* Victims"), filed Notices of Verified Claims in this instant proceeding on December 29, 2025. *See* ECF 29, 30.

15. Based on the information revealed in the allegations in the *Fritz* Suit, and summarized by the Notices of Verified Claims filed by the other terrorism victim claimants, the Chairnoff Claimants now submit this Notice of Verified Claim. *See generally* ECF 29, 30.

### V. Under TRIA, the Chairnoff Claimants Have a Senior Interest in the Defendant Cryptocurrency

16. In the context of a forfeiture action, at this stage of the proceedings, the Chairnoff Claimants need only assert that they have a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (citation omitted). "[W]hether [they] ultimately prove[ ] the existence of that interest is a question for a later stage in the proceedings." *Id*. (citation omitted). Here, based on the information alleged in the *Fritz* Suit, the Chairnoff Claimants have far more than a "facially colorable interest" in the Defendant Cryptocurrency.

17. The Chairnoff Claimants are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. As has now been alleged, because the Iran-China Group was an agent or instrumentality of Iran, TRIA entitles the Chairnoff Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the Chairnoff Claimants have a possessory interest in the Defendant Cryptocurrency, which permits them to bring the claims asserted here.

18. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note. TRIA's cornerstone is the statute's broad "notwithstanding" clause. The clause aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). The notwithstanding clause "mak[es] plain that the force of the [statute] extends everywhere" and "'supersede[s] all other laws.'" *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (citation omitted). Accordingly, because it expressly overrides "conflict[ing] laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

19. Because the Chairnoff Claimants satisfy the requirements of TRIA, their interest in the Defendant Cryptocurrency necessarily is superior to the claims of the government, as well as all other non-TRIA claimants, in the forfeiture action here. First, as explained above, the

Chairnoff Claimants hold judgments for compensatory damages against Iran based on an act of terrorism under 28 U.S.C. § 1605A. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. *See* TRIA § 201(d)(4); Executive Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012). Third, as now alleged in the *Fritz* suit, the Iran-China Group operated as Iran's agency or instrumentality by materially serving that country in avoiding sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction and behest. *Fritz* Suit, ECF 70, Plaintiffs' Memorandum of Law in Support of Motion for Attachment, at 13-17 (Dec. 28, 2025); *see Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016). Fourth, under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act. TRIA § 201(d)(2)(A).

20. The government has used its authority under that statute to "block" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 120. As a result, if the Iran-China Group is an agency or instrumentality of Iran, all property of the Iran-China Group qualifies as a blocked asset under TRIA. *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022). Because the Defendant Cryptocurrency is property of the Iran-China Group, it is therefore blocked and subject to execution by the Chairnoff Claimants under TRIA.

Pursuant to 28 U.S.C. § 983(a) and Rule G, the Chairnoff Claimants hereby assert a protective, prophylactic claim against such amount of the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—as may ultimately be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran,

plus post-judgment interest, based on the date the Defendant Cryptocurrency is valued for purposes of judgment. The Chairnoff Claimants' claim is senior to the government's claim. Notwithstanding the government's forfeiture efforts, the Chairnoff Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency.

Dated: January 16, 2026

Respectfully submitted,

*/s/ James P. Bonner*

James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
FLEISCHMAN BONNER & ROCCO LLP
445 Hamilton Ave., Suite 402
White Plains, NY 10601
(646) 415-1399

*Attorneys for Chairnoff Claimants*