**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br>Defendant *In Rem*. | Civil Action No. 25-5745 (RPK) |

**MEMORANDUM IN SUPPORT OF IRANIAN TERRORISM VICTIMS' RENEWED MOTION TO PROCEED UNDER PSEUDONYMS AND TO FILE UNDER SEAL**

The Iranian Terrorism Victims, specifically, the claimants identified in Exhibit A of this motion (the "Pseudonymous Claimants"), respectfully submit additional evidence in support of their application and renew their motion for an order permitting those claimants to file their verified claim under pseudonyms and to further permit those claimants to file under seal information that discloses their full and true identities to the Court.[1] The Pseudonymous Claimants are judgment-holders and/or representative judgment-holders against Iran. As demonstrated by the Declaration of Matthew Levitt (the "Levitt Declaration"), attached as Exhibit B, the life-and-safety concerns that led the district courts in the underlying cases to permit the Pseudonymous Claimants to proceed pseudonymously continue to exist with regard to plaintiffs who live, or whose family members live, in Lebanon. *See generally* Levitt Declaration. These Pseudonymous Claimants face

[1] The Pseudonymous Claimants will provide the same information to the government upon the entry of an appropriate protective order that ensures that the information is not publicly disclosed or provided to third parties.

a very real and significant risk of retaliatory harm from being identified in this proceeding as judgment-holders against Iran flowing from Hezbollah's close and enduring relationship to Iran, its established pattern of targeting adversaries, and the impunity with which Hezbollah operates in Lebanon. *See* Levitt Declaration at ¶ 14.

## I. BACKGROUND

On October 14, 2025, the government filed a civil forfeiture complaint against approximately 127,271 Bitcoin that are alleged to be the proceeds of an international cryptocurrency scam. At the close of 2025, the Iranian Terrorism Victims learned from allegations in a separate proceeding, *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-cv-07093 (E.D.N.Y.) ("*Fritz* Suit"), that the Bitcoin subject to potential forfeiture is the property of the Iran and China Investment Development Group ("Iran-China Group"). As alleged in the *Fritz* suit, the Iran-China Group is an agency or instrumentality of Iran that has materially supported the country's efforts to evade Western sanctions by mining cryptocurrency in Iran.

The Iranian Terrorism Victims are direct victims, or the surviving family members of victims, of Iranian-sponsored terrorism. They each hold judgments against Iran for its role in supporting the terrorist attacks that forever changed their lives. Because of their judgments against Iran, the Iranian Terrorism Victims submitted their claims in this case on January 14, 2026 (*see* Dkt. No. 52).[2]

---

[2] The Iranian Terrorism Victims filed their notice on January 14, 2026, (*see* Dkt. No. 52). The Court construed the "notice of verified claim as a motion for leave to file a verified claim" and initially ordered the government to respond by January 23, 2026 (*see* January 15, 2026 Order), before extending the government's deadline to January 27, 2026, after similar claims were filed by other victims (*see* January 20, 2026 Order).

On January 23, 2026, the Pseudonymous Claimants moved this Court for an order permitting those claimants identified using pseudonyms in underlying cases to proceed in this action under those pseudonyms and to further permit those claimants to file under seal information that discloses their full and true identities to the Court (*see* Dkt. No. 108) (the "Initial Motion"). On September 29, 2026, this Court denied the Initial Motion without prejudice to filing a renewed motion on the basis that the Initial Motion did not make a persuasive showing that litigating under their own names will expose sensitive or highly personal information, or that they will face other harm from disclosure. *See* Dkt. No. 508.

The Court granted the Iranian Terrorism Victims leave to file claims out of time on September 30, 2026.[3]

Accordingly, the Pseudonymous Claimants now respectfully renew their motion to proceed under pseudonyms and file under seal, for the reasons set forth below. In support of this renewed motion, the Pseudonymous Claimants attach a declaration from Matthew Levitt, an expert in international terrorism, with particular expertise in Hezbollah, its operations in Lebanon, and its relationship with Iran. *See* Levitt Declaration at ¶ 2. As outlined by Levitt, claimants holding and seeking to enforce judgments against Iran or family members of such claimants face substantial risk of retaliatory harm to themselves or their families in Lebanon due to their participation in underlying litigations and any related enforcement actions based on the terrorist actions of Hezbollah and other proxies in the region. *See* Levitt Declaration at ¶ 1.

In four of the underlying cases in which the Pseudonymous Claimants received their judgments, *Barry, et al. v. Islamic Republic of Iran, Estate of John Doe, et al. v. Islamic Republic*

[3] *See* September 30, 2026 Order.

*of Iran, et al.*, *Jones, et al. v. Islamic Republic of Iran*, and *Maxwell, et al. v. Islamic Republic of Iran*, some Pseudonymous Claimants either resided in Lebanon or had family members in Lebanon and feared for their lives, or the lives of their family members, by taking the step of participating in the lawsuits.[4] As a result, in each of the four cases, the federal district court permitted the requesting Pseudonymous Claimants to proceed under pseudonyms to protect themselves and their families from potential harm and reprisal.[5] The courts in those cases granted permission to proceed pseudonymously, generally finding the "presumption in favor of open proceedings or public interest in disclosing the [Iranian Terrorism Victims'] identity is significantly outweighed by the deadly threat that such disclosure would entail." Order at 7, *Maxwell, et al. v. Islamic Republic of Iran*, Civ. A. No. 1:22-cv-00173-RC (D.D.C. Jan. 19, 2022) Dkt. No. 2; *see also* Order, *Barry, et al. v. Islamic Republic of Iran, et al.*, Civ. A. No. 1:16-cv-01625-RC (D.D.C. Nov. 15, 2017), Dkt. No. 14; Order, *Estate of John Doe, et al. v. Islamic Republic of Iran, et al.*, Civ. A. No. 1:08-cv-00540-JDB (D.D.C. Mar. 28, 2008), Dkt. No. 2; Mem. and Order, *Jones, et al. v. Islamic Republic of Iran*, Civ. A. No. 1:20-cv-00850-RC (D.D.C. Mar. 30, 2020), Dkt. No. 2. As set forth in the attached Levitt Declaration, that deadly threat continues to exist.

---

[4] *See* Motion, *Barry, et al. v. Islamic Republic of Iran, et al.*, Civ. A. No. 1:16-cv-01625-RC (D.D.C. Nov. 15, 2017), Dkt. No. 12; Ex Parte Motion, *Estate of John Doe, et al. v. Islamic Republic of Iran, et al.*, Civ. A. No. 1:08- cv-00540-JDB (D.D.C. Mar. 28, 2008), Dkt. No. 1; Ex Parte Motion, *Jones, et al. v. Islamic Republic of Iran*, Civ. A. No. 1:20-cv-00850-RC (D.D.C. Mar. 30, 2020), Dkt. No. 1; Ex Parte Motion, *Maxwell, et al. v. Islamic Republic of Iran*, Civ. A. No. 1:22-cv-00173-RC (D.D.C. Jan. 19, 2022) Dkt. No. 1.

[5] Order at 7, *Maxwell, et al. v. Islamic Republic of Iran*, Civ. A. No. 1:22-cv-00173-RC (D.D.C. Jan. 19, 2022) Dkt. No. 2; *see also* Order, *Barry, et al. v. Islamic Republic of Iran, et al.*, Civ. A. No. 1:16-cv-01625-RC (D.D.C. Nov. 15, 2017), Dkt. No. 14; Order, *Estate of John Doe, et al. v. Islamic Republic of Iran, et al.*, Civ. A. No. 1:08- cv-00540-JDB (D.D.C. Mar. 28, 2008), Dkt. No. 2; Mem. and Order, *Jones, et al. v. Islamic Republic of Iran*, Civ. A. No. 1:20-cv-00850-RC (D.D.C. Mar. 30, 2020), Dkt. No. 2.

The Pseudonymous Claimants will be identified in their verified claim by the same pseudonym under which the court that awarded their underlying judgment permitted them to proceed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) requires that the title of a complaint name all parties. Fed. R. Civ. P. 10(a). There are, however, "a limited number of exceptions to the general requirement of disclosure [of the names of parties], that permit plaintiffs to proceed anonymously." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). In "determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* The Second Circuit has "note[d] with approval the following factors, with the caution that this list is non-exhaustive" for courts to consider when assessing this balance:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent nonparties;
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;
> (5) whether the suit is challenging the actions of the government or that of private parties;
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
> (7) whether the plaintiff's identity has thus far been kept confidential;
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;
> (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
> (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190.

A district court is not required to analyze each of the above-listed factors or "use any particular formulation" provided that it "balance[s] the interests at stake in reaching its conclusion." *Id.* at 191 n.4.; *see also Doe v. Daedone*, 2024 WL 3897078, at *4 (E.D.N.Y. Aug. 22, 2024) (granting protective order to proceed under pseudonyms and finding that "the first *Sealed Plaintiff* factor strongly weighs in favor of granting Plaintiffs' motion" and that "[t]he other factors that are most relevant here. … do not, at this stage, outweigh Plaintiffs' interest in anonymity in light of the sensitive nature of the allegations in the complaint").

## III. ARGUMENT

Those Iranian Terrorism Victims who the district courts previously granted leave to proceed under pseudonyms before other courts and who wish to continue proceeding under those same pseudonyms seek this Court's permission to do so here. The factors identified by the Second Circuit and balancing the risk of harm to the Pseudonymous Claimants, as explained in the Levitt Declaration, against both the public interest in disclosure and any prejudice to the other parties supports permitting these victim claimants to proceed pseudonymously. The Pseudonymous Claimants' relevant circumstances that supported sealing in the underlying cases have not changed. They either still reside in Lebanon or have family members who do.

**1. Sensitivity of the Subject Matter.** As to the first factor, while this case may not directly involve matters that are highly sensitive and of a personal nature, the underlying litigations where the Pseudonymous Claimants received their judgments certainly did. Disclosure here would reveal their identities as named plaintiffs adverse to Iran, and that is highly sensitive information for individuals who reside or whose family members reside in Lebanon due to Hezbollah's presence and active operations there.

Hezbollah is deeply embedded in Lebanon, and can identify and locate individuals, including family members and others associated with claimants residing abroad, for the purpose of not only intimidation and harassment, but also to perpetrate the very real threat of violence, bodily harm, or death. *See* Levitt Declaration at ¶ 11. Hezbollah employs surveillance and tracking methods like informer networks, telephone monitoring, and electronic monitoring to identify and obtain information on their perceived adversaries both within Lebanon and in other countries. *See* Levitt Declaration at ¶¶ 11-12.

As victims of previous terrible atrocities, the Pseudonymous Claimants deserve the continued peace and security the federal district courts previously afforded them, and they should not have to now endure the burdens of disclosing sensitive matters regarding the past and ongoing suffering and open themselves and their family members in Lebanon to new threats when it is unnecessary to do so. Nor should the Pseudonymous Claimants be compelled to choose between exposing themselves or their family members to new threats or forgoing collection on judgments that federal district courts have awarded against the very network that they are now worried about causing future harm to them. Although claimants proceeded pseudonymously in the underlying litigations, the plain fact that they can be identified now as having been actively involved with the United States in holding Iran and its proxies to account financially for historical acts of terror exposes them to an entirely avoidable risk of retaliation from Hezbollah as a proxy of Iran. *See* Levitt Declaration at ¶¶ 1, 13-14.

Through this renewed motion, the Pseudonymous Claimants continue to face the same harms that existed when they sought to proceed by pseudonyms in various other litigations in U.S. district courts, which courts previously found is appropriate for them. *See generally* Levitt Declaration.

**2. Risk of Retaliation.** As to the second factor, the public disclosure of the Pseudonymous Claimants' real identities would make them and their families, the latter of whom are innocent nonparties, susceptible to real and credible threats of injury and harm due to the close and enduring relationship between Hezbollah and Iran, Hezbollah's established pattern of targeting adversaries, and the impunity with which it operates in Lebanon. *See* Levitt Declaration at ¶¶ 6-14.

Hezbollah and Iran continue to share a close relationship and Hezbollah often aligns directly with and acts for Iranian interests. *See* Levitt Declaration at ¶ 8. Iran provides Hezbollah with most of its funding, training, weapons, and explosives, as well as political, diplomatic, monetary, and organizational aid. This structural dependence means that any adverse action directed at Iran and its interests constitutes a threat to Hezbollah. *See* Levitt Declaration at ¶ 8.

Hezbollah and other Iranian-linked nonstate arms groups operate with impunity in Lebanon, using intimidation, harassment, and violence against perceived critics and opponents. *See* Levitt Declaration at ¶ 9. Individuals who are publicly identified as adverse to Hezbollah-linked interests cannot rely on Lebanese state institutions for protection due to Hezbollah's presence within the Lebanese government itself. *See* Levitt Declaration at ¶ 9. Indeed, Hezbollah has carried out politically sensitive murders that authorities have been unable to effectively investigate—much less prevent. *See* Levitt Declaration at ¶¶ 9-10.

Hezbollah continues to pose a real and serious threat to anyone it perceives to be enemies of Hezbollah or Iran as its sponsor. *See* Levitt Declaration at ¶ 13. Public identification of individuals who are seeking or have obtained judgments and their family members face serious risk of retaliation or harm. *See* Levitt Declaration at ¶ 14.

This credible risk of retaliation to the Pseudonymous Claimants and their innocent non-party families remains a real risk and was a leading reason several federal district courts already

permitted the Pseudonymous Claimants to proceed pseudonymously. As the court in *Jones* found, those plaintiffs sought "to prevent the publication of their identities out of a 'well-founded fear' that Iran and its agents will seek retribution" and "[g]iven the deadly nature of the possible retaliation plaintiffs would face should their identities be made public, this factor, too, clearly weighs in favor of allowing the plaintiffs to proceed anonymously." Order at 4-5, *Jones, et al. v. Islamic Republic of Iran*, No. 1:20-cv-00850-RC (D.D.C. Mar. 30, 2020), Dkt. No. 2 (citations omitted). As the court in *Maxwell* found, the risks associated with disclosing those plaintiffs' real names extended not only to putting those plaintiffs at risk "but also 'their family and friends in Lebanon, including those not participating in this litigation,' for whom 'the possible retaliation' could be 'deadly.'" Order at 6, *Maxwell, et al. v. Islamic Republic of Iran*, No. 1:22-cv-00173-RC (D.D.C. Jan. 19, 2022) Dkt. No. 2. And these risks remain today. *See generally* Levitt Declaration.

Given the heightened and credible risk of retaliatory harm, this factor alone outweighs any interest in publicly disclosing the names of the Pseudonymous Claimants in this action. *See, e.g., Does 1-4 v. Foukas*, 2021 WL 8892823, at *2 (E.D.N.Y. Mar. 20, 2021) ("The risk to Plaintiffs and their families–innocent non-parties–is decidedly greater if Plaintiffs had to proceed publicly … [t]herefore, the second *Sealed Plaintiff* factor weighs in Plaintiffs' favor.").

**3. Other Harms.** Under the third *Sealed Plaintiff* factor, courts consider "whether identification presents other harms and the likely severity of those harms." *Sealed Plaintiff*, 537 F.3d at 190 (quotation omitted). Beyond just physical harm, publicly identifying the pseudonymous claimants risks exposing them to emotional distress and stigma stemming from their injuries. Many of them shared intimate details of how Iran's heinous acts destroyed their lives and the lives of their loved ones, but did so knowing that they would be protected from being publicly identified. Even though these details are not individually attributable to any specific

claimant, this risk still arises from their identities being associated with these collective injuries and claims. If the Pseudonymous Claimants are not permitted to proceed pseudonymously, they will be forced to either not proceed with their claims or be forced to disclose sensitive information about their injuries and experiences. This factor also weighs in favor of permitting the Pseudonymous Claimants to continue to proceed pseudonymously.

**4. Claimants' Ages.** For the fourth factor, the Pseudonymous Claimants readily acknowledge that if "a plaintiff is not a child, this factor weighs against a finding for anonymity." *Doe v. Solera Capital LLC*, 2019 WL 1437520, at *6 (S.D.N.Y. Mar. 31, 2019), *vacated* 2020 WL 11027792 (S.D.N.Y. Dec. 16, 2020). This factor is one of many factors to consider and courts have granted requests to proceed pseudonymously even where this specific factor does not apply. *See, e.g., Does 1-4*, 2021 WL 8892823 at *3, 5 (finding that the fourth factor "counsels against proceeding anonymously" but still holding that "Plaintiffs are entitled to proceed via pseudonym").

**5. Public vs Private Defendants.** "A suit between private parties counsels against allowing a party to proceed under a pseudonym because '[p]rivate civil suits create strong interests in open proceedings given that such suits implicate legal and social norms.'" *Id.* (quoting *Doe v. Solera Capital LLC*, 2019 WL 5485210, at *7 (S.D.N.Y. Oct. 25, 2019)). This is not a proceeding among private litigants akin to a breach of contract or other civil claim. Rather, the Pseudonymous Claimants are challenging a government-initiated forfeiture action predicated on alleged violations of federal criminal laws and judgments the Pseudonymous Claimants have obtained against Iran, a foreign state. Accordingly, this factor weighs in favor of permitting the Pseudonymous Claimants to continue to be identified pseudonymously. *See Doe v. Salina*, 2024 WL 1259362, at *6 (E.D.N.Y. Mar. 25, 2024) ("Indeed, where a plaintiff sues a governmental entity, plaintiff's interest in proceeding anonymously is considered 'particularly strong.'") (quoting *EW v. N.Y. Blood Ctr.*,

213 F.R.D. 108, 111 (E.D.N.Y. 2003)). Any benefit arising from the public's "right to know who is using their courts," *Sealed Plaintiff*, 537 F.3d at 189, is outweighed by the substantial risk of retaliatory harm for the claimants here.

**6. Prejudice to the Defendant.** The sixth *Sealed Plaintiff* factor is "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190. There is no prejudice to the government. The relief sought by the Pseudonymous Claimants requires they provide their true identities to the Court under seal and to the government upon the entering of protective order that permits the government access to sealed filings. In a short matter of time, should they request it, the Pseudonymous Claimants will supply their actual identities to the government. At this stage in the litigation, there is no prejudice to the government by not immediately having that information.

**7. Confidentiality to Date.** The seventh factor, "whether the plaintiff's identity has thus far been kept confidential," also weighs in favor of permitting the Pseudonymous Claimants to proceed pseudonymously. *Sealed Plaintiff*, 537 F.3d at 190. As detailed *supra*, the Pseudonymous Claimants have previously been permitted to keep their identities confidential in the prior underlying proceedings because of significant safety risks to them and their families. When a "a plaintiff has been named in another case or publicly connected with the facts underlying the suit, courts will find this factor cuts against proceeding anonymously" but where "Plaintiffs' identities have not been revealed in connection with the facts at issue" the "seventh *Sealed Plaintiff* factor favors anonymity." *Does 1-4 v. Foukas*, 2021 WL 8892823, at *4 (E.D.N.Y. Mar. 20, 2021). Courts consistently have permitted the Pseudonymous Claimants to proceed pseudonymously, they have not since been publicly identified, and there has been no underlying change to the basis

for their pseudonymous status. The Pseudonymous Claimants should continue to be permitted to keep their identities confidential.

**8. Public Interest.** The eighth *Sealed Plaintiff* factor is "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity." *Sealed Plaintiff*, 537 F.3d at 190. The public's interest in this forfeiture action is notice regarding the forfeited assets and the adjudication of the rights to the claims to those assets. Requiring the disclosure of the Pseudonymous Claimants' real names does not advance the public's interest. Any potential interest the public may have is significantly outweighed by the privacy interests of these claimants, who fear violent reprisal in Lebanon for them or their families, for having taken a stand against Iran. Further, allowing the Pseudonymous Claimants to continue to protect their identities serves the broader public interest of ensuring that victims of terrorism are not intimidated from pursuing legal recourse against state sponsors of terrorism, such as Iran, by being forced to subject themselves, and their families, to potential reprisal.[6]

**9. Nature of the Claims.** The penultimate factor, whether, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," also weighs in favor of proceeding pseudonymously. *Sealed Plaintiff*, 537 F.3d at 190 (citation omitted). The Pseudonymous Claimants' real names are not crucial to resolving their claims here, which turn on legal questions and other, unrelated, factual inquiries. The only fact that matters regarding the Pseudonymous Claimants is their status as judgment holders against Iran, in cases in which the courts already permitted them to proceed

[6] 28 U.S. Code § 1605A provides a federal cause of action for U.S. nationals, members of the armed forces, and their survivors or heirs to seek damages for personal injury or death caused by acts of terrorism. The statute authorizes recovery of compensatory and punitive damages against the foreign state.

pseudonymously, with claims against the forfeited asset at issue. Given the insignificance of the Pseudonymous Claimants' real names to the legal questions at issue, this Court should permit them to proceed pseudonymously.

**10. Alternative Mechanisms.** Lastly, the tenth factor considers "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Sealed Plaintiff*, 537 F.3d at 190. The Pseudonymous Claimants are unaware of any other possible mechanism that would not be more restrictive but would still achieve the goal of protecting their identities. Accordingly, this factor as well weighs in favor of proceeding pseudonymously. *See, e.g., Does 1-4 v. Foukas*, 2021 WL 8892823, at *5 ("Plaintiffs say they are 'unaware of alternative mechanisms' that would sufficiently protect their confidentiality … [t]his factor weighs in favor of anonymity.").

"A district court is not required to list each of the factors or use any particular formulation as long as it is clear the court balanced the interests at stake in reaching its conclusion." *Sealed Plaintiff*, 537 F.3d at 189 n.4. The Pseudonymous Claimants' interests in proceeding pseudonymously in order to remain free from physical violence and retaliation clearly outweigh any limited interest in forcing their public identification. Their interests extend to the safety of their families and the public interest in ensuring victims of state sponsored terrorism are allowed a real forum to pursue recourse against rogue state actors.

## IV. CONCLUSION

Based on the foregoing reasons, the Pseudonymous Claimants respectfully renew their request that the Court to permit those claimants who are identified in their respective underlying judgments using a pseudonym and wish to proceed using that same pseudonym to file their claims publicly using that same pseudonym and to file under seal or hand-deliver to the Court within seven days of any order by this Court authorizing such sealed filing, their claims which include the real identity of each claimant.

Dated: October 13, 2026

Respectfully submitted,

/s/ *Joshua S. Sohn*
Joshua S. Sohn
Kelly Currie
CROWELL & MORING LLP
Two Manhattan West
375 9th Ave
New York, NY 10001
(212) 590-5442
JSohn@crowell.com
KCurrie@crowell.com

Alexander J. Kramer (*pro hac vice*)
Michael J. Williams (*pro hac vice*)
CROWELL & MORING LLP
600 5th Street NW
Washington, DC 20001
(202) 624-2500
Akramer@crowell.com
Mwilliams@crowell.com

*Attorneys for Claimants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I electronically filed the foregoing document via CM/ECF for the United States District Court for the Eastern District of New York and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the government, in the above-captioned matter.

Dated: October 13, 2026

/s/ *Joshua S. Sohn*
Joshua S. Sohn