**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESS LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br>Defendant *In Rem*. | Civil Action No. 25-cv-5745 (RPK) |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORTFEITURE *IN REM***

The Pennington and Driscoll Claimants include over 300 servicemembers, their estates, and family members, who were victims of Iranian-sponsored terror attacks. The Pennington and Driscoll Claimants have been awarded compensatory damages judgments totaling approximately $1.2 billion under 28 U.S.C. §§1605A and 1605B against the Islamic Republic of Iran ("Iran") for its role in sponsoring terror attacks in Iraq.

Upon discovering the connection between Iran and the Defendant Bitcoin, the Pennington and Driscoll Claimants promptly sought leave to file a verified claim on January 19, 2026, ECF 68, which the Court granted on October 1, 2026. *See* Oct. 1, 2026, Order on the Docket. Accordingly, the Pennington and Driscoll Claimants hereby assert their superior interest in all of the Defendant Cryptocurrency, or at least so much as may ultimately be necessary to satisfy the outstanding compensatory damages, plus post-judgment interest, on their judgments, which the

Terrorism Risk Insurance Act (TRIA) makes senior to any interest that the government or other claimants could assert. In support of this Notice, the Pennington and Driscoll Claimants state as follows:

## I. The Pennington and Driscoll Claimant Have Been Awarded More Than $2 Billion Against Iran.

1. From 2006-2011, Iran provided material support to various terrorist organizations operating in Iraq. With Iran's substantial material support, these terrorist organizations carried out sixty-three attacks on U.S. military servicemembers that killed hundreds of United States servicemembers and left substantially more victims with life-altering injuries, including lost limbs and facial features, paralysis, and severe post-traumatic stress disorder. These attacks left the families of these victims, both deceased and injured, with lifelong grief and financial hardship.

2. The Pennington and Driscoll Claimants are servicemembers and their estates who brought two separate actions in the United States District Court for the District of Columbia seeking compensatory and punitive damages against Iran resulting from these attacks.

3. In *Diane Pennington, et. al. v. Islamic Republic of Iran*, Case 1:19-cv-00796-JEB (D.D.C.), the district court awarded the Pennington Claimants a judgment against Iran on May 3, 2022 (ECF 60), as amended on January 16, 2026 (ECF 70).

4. In *All Plaintiffs Represented by John Driscoll*, Case No. 1:20-cv-00622-ZMF (D.D.C.), the district court awarded the Driscoll Claimants a judgment against Iran on September 13, 2024 (ECF 76), as amended on December 3, 2025 (ECF 91).

5. These judgments awarded the Pennington and Driscoll Claimants total

approximately $2,079,097,984, including $1,268,173,992 in compensatory damages for pain and suffering, economic loss, and solatium.[1]

**II. The Pennington and Driscoll Claimants Are Entitled to Enforce Their Judgments.**

6. The Pennington and Driscoll Claimants are all judgment-holders—either directly or as the estate, heir, or other beneficiary or successor-in-interest of the original judgment holder—in the above actions.

7. All of the above-referenced Pennington and Driscoll Claimants' judgments have been served on Iran through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4).

8. To date, Iran has not paid any portion of any of the Pennington and Driscoll Claimants' judgments, and not one of the Pennington or Driscoll Claimants' judgments has been satisfied. The Pennington and Driscoll Claimants' judgments continue to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**III. The Government Commenced This Forfeiture Action Against Defendant Cryptocurrency Without Disclosing Its Strong Connection to Iran.**

9. On October 14, 2025, the U.S. government initiated the instant civil forfeiture action against approximately 127,271 Bitcoin once stored in the virtual-currency addresses identified in Attachment A of its complaint. *See* ECF 1 ("Forfeiture Compl.") at 1 & Attachment. On the same day, this Court issued an arrest warrant in rem for Defendant Cryptocurrency pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* ECF 3.

10. The U.S. government alleges the Defendant Cryptocurrency is subject to condemnation and forfeiture by the United States: (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a

---

[1] A full list of Claimants and the compensatory damages they have been awarded is included as Exhibit A. Undersigned counsel has diligently attempted to obtain signed verifications from all Pennington and Driscoll Claimants but has not yet received them all. Counsel will continue to collect verified signatures and amend the claim as appropriate.

conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956. *See* Forfeiture Compl. ¶ 2A. Specifically, the U.S. government alleges that the Defendant Cryptocurrency was involved in or derived from money-laundering operations conducted by Chen Zhi and Prince Holding Group, an alleged front for Chen's transnational criminal organization. *Id.* at ¶¶ 20, 38-43.

11. According to the U.S. government, one such scheme involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds." *Id.* ¶ 42.

12. The U.S. government describes "Lubian" as "a Chinese bitcoin mining operation that maintained bitcoin mining facilities across Asia, including in China and Iran." *Id.* ¶ 16(u) (emphasis added). However, the U.S. government did not include information that put the Pennington and Driscoll Claimants on notice that the bitcoin mining operation involved conduct attributable to the Iranian Government, or otherwise that the Pennington and Driscoll Claimants had a basis to claim any of the Defendant Cryptocurrency.

## IV. The Relationship Between the Defendant Cryptocurrency and the Government of Iran.

13. Instead, as detailed in the extensive documentary and blockchain evidence, including expert analysis of hash rates, power capacity, and shipping records, submitted in another action currently pending before this Court, *Fritz v. Iran & China Development Group*, No. 25-cv-07093 (E.D.N.Y) ("*Fritz* Suit"), LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian government to build a large

Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions. *See generally Fritz* Suit, Dkt. 1, Complaint.

14. According to an expert in terrorism and illicit financing, over the last decade, Iran has turned to cryptocurrency mining as a central part of its sanctions-evasion strategy. *See generally* Fritz Suit, Dkt. 73, Declaration of Jessica Davis ("Davis Decl."). That is because cryptocurrency transactions are not subject to international banking controls, and cryptocurrency provides a means of laundering Iran's substantial oil and gas reserves, by converting them into electricity, which is then used to generate cryptocurrency. *Id*. ¶¶ 21-22, 25-35, 62-65.

15. Another *Fritz* Suit expert on cryptocurrency investigations, financial forensics, digital asset tracing, and open-source intelligence analysis concluded that Lubian and the Iran-China group project is "best understood as a state-funded entity working at the behest of the Iranian government and in service of its purposes," and that the Defendant Bitcoin "came from Lubian-controlled wallets." *Fritz* Suit, Dkt. 72, Declaration of Avigdor Sason Cohen ¶¶ 229-230 ("Cohen Decl."). This conclusion was based on "[s]ubstantial documentary evidence and careful blockchain and hash rate analysis." *Id.* ¶ 230.

16. Based on information revealed in the allegations in the *Fritz* action and summarized by the Notices of Verified Claims filed by the other terrorism victim claimants in this action, the Pennington and Driscoll Claimants now submit this Notice of Verified Claim.

## V. Under TRIA, the Pennington and Driscoll Claimants Have a Senior Interest in the Defendant Cryptocurrency.

17. At this stage of the proceedings, the Pennington and Driscoll Claimants need only assert that they have a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (citation omitted). "[W]hether [they] ultimately prove[ ] the existence of that interest is a question for a later stage in the proceedings." *Id.* (citation omitted).

Here, based on the information alleged in the *Fritz* action and summarized by the Notices of Verified Claims filed by the other Iranian terrorism victim claimants in this action, the Pennington and Driscoll Claimants have far more than a "facially colorable interest" in the Defendant Cryptocurrency.

18. The Pennington and Driscoll Claimants are judgment creditors of Iran because of Iran's acts of state-sponsored terrorism. As has now been alleged, because the Iran-China Group was or is an agent or instrumentality of Iran, TRIA entitles the Pennington and Driscoll Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the Pennington and Driscoll Claimants have a possessory interest in the Defendant Cryptocurrency, which permits them to bring the claims asserted here.

19. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note. TRIA's cornerstone is the statute's broad "notwithstanding" clause, which aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). The notwithstanding clause "mak[es] plain that the force of the [statute] extends everywhere" and "'supersede[s] all other laws.'" *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (citation omitted). Accordingly, because it expressly overrides "conflict[ing]

laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

20. Because the Pennington and Driscoll Claimants satisfy the requirements of TRIA, their interest in the Defendant Cryptocurrency necessarily is superior to the claims of the U.S. government, as well as all other non-TRIA claimants, in this forfeiture action. First, as explained above, the Pennington and Driscoll Claimants hold judgments for compensatory damages against Iran based on an act of terrorism under 28 U.S.C. §§ 1605A and 1605B. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. *See* TRIA § 201(d)(4); Executive Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012). Third, as alleged in the *Fritz* action, the Iran-China Group operated as Iran's agency or instrumentality by materially helping Iran avoiding U.S. sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction and behest. *Fritz* Suit, ECF 70, Plaintiffs' Memorandum of Law in Support of Motion for Attachment, at 13-17 (Dec. 28, 2025); *see Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016). Fourth, under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A).

21. The U.S. government has used its authority under that IEEPA to "block" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 120. As a result, because the Iran-China Group is an agency or instrumentality of Iran, all property of the Iran-China Group qualifies as a blocked asset under TRIA. *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022). Because the Defendant Cryptocurrency is property of the Iran-

China Group, it is therefore blocked and subject to execution by the Pennington Driscoll Claimants under TRIA.

Pursuant to 28 U.S.C. § 983(a) and Rule G, the Pennington and Driscoll Claimants hereby assert a protective, prophylactic claim against such amount of the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—as may ultimately be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran, plus post-judgment interest, based on the date the Defendant Cryptocurrency is valued for purposes of judgment. The Pennington and Driscoll Claimants' claim is senior to the U.S. government's claim. Notwithstanding the U.S. government's forfeiture efforts, the Pennington and Driscoll Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency.

Respectfully,

*/s/ Daniel Alberstone*

Daniel Alberstone (*pro hac vice* filed)
Celeste Evangelisti
Russell Budd (*pro hac vice* filed)
Mike Thakur
Marco A. Palmieri
Baron & Budd, P.C.
3102 Oak Lawn Avenue #1100
Dallas, TX 75219
(214) 521-3605 telephone
cevangelisti@baronbudd.com
rbudd@baronbudd.com
dalberstone@baronbudd.com
mthakur@baronbudd.com
mpalmieri@baronbudd.com

THE DRISCOLL FIRM, P.C.
Christopher J. Quinn (*pro hac vice* forthcoming)
211 N. Broadway, 40th Floor
St. Louis, MO 63102
(314) 932-3232 telephone

(314) 932-3233 facsimile
chris@thedriscollfirm.com

THE DRISCOLL FIRM, LLC
John J. Driscoll (*pro hac vice* forthcoming)
1311 Avenida Juan Ponce de Leon, 6th Floor
San Juan, PR 00907
(314) 222-2605 telephone
(314) 932-3233 facsimile
john@jjlegal.com

cc: Counsel of record (via ECF)

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record who have appeared.

*/s/ Daniel Alberstone*
Daniel Alberstone