**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendants *In Rem*. | : | No. 25-cv-5745 (RPK) (CHK) |

**VERIFIED CLAIM OF THE *SWINNEY* JUDGMENT CREDITORS**
**PURSUANT TO SUPPLEMENTAL RULE G(5) AND 18 U.S.C. § 983(a)(4)**

The *Swinney* Judgment Creditors identified in Exhibit A (the "*Swinney* Claimants") are judgment creditors of the Islamic Republic of Iran ("Iran"), the Islamic Revolutionary Guard Corps ("IRGC"), and the Iranian Ministry of Intelligence and Security ("MOIS") (collectively, the "Iranian Judgment Debtors"). The *Swinney* Claimants' claims relate to terrorist attacks perpetrated in Iraq during the War on Terror, for which Iran has been found responsible. Following an evidentiary trial, a default judgment was entered by the Honorable Ana C. Reyes in *Swinney v. Islamic Republic of Iran, et al.,* Case No. 1:20-cv-02316-ACR (D.D.C.) (the "Swinney Judgment Creditors"). Each *Swinney* Claimant on Exhibit A has a final, enforceable judgment, entered pursuant to 28 U.S.C. § 1605A, against the Iranian Judgment Debtors for damages caused by their participation in and material support for those terrorist attacks. Iran and the IRGC, in particular, have played significant roles in funding and supporting international terrorism.

The *Swinney* Claimants first learned, on or about February 5, 2026, from the allegations in a separate proceeding, *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com,* No. 25-cv-07093 (E.D.N.Y.) ("Fritz Suit"), and from the Notice of Verified Claim filed by in this proceeding by the plaintiffs in the Fritz Suits (the "Fritz Claimants"), in this proceeding, that the approximately 127,271 Bitcoin ("BTC") at issue in this forfeiture action, previously stored at the virtual currency addresses listed in Attachment A to the government's complaint (ECF No. 1), and all proceeds traceable thereto (the "Defendant Cryptocurrency"), are, upon information and belief, property of the Iran and China Investment Development Group ("Iran-China Group"). Upon learning this information, the Swinney Claimants promptly sought leave to file this Claim on February 10, 2026 (ECF No. 211), which the Court granted by Order dated September 30, 2026.

As alleged in the Fritz Suit, the Iran-China Group, doing business on the blockchain as Lubian.com or LuBian, is an agency or instrumentality of Iran within the meaning of Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"). Pub. L. No. 107-297, § 201, 116 Stat. 2322, 2337-40, as amended, Pub. L. No. 112-158, 126 Stat. 1214, 1260 (codified at 28 U.S.C. § 1610 note). As alleged, Iran has used the Iran-China Group to evade U.S. sanctions by mining cryptocurrency in Iran. Through this alleged scheme, sanctioned Iranian oil and gas are converted into electricity, which miners then use to generate cryptocurrency for the Iranian government. The Iran-China Group's activities enabled Iran to transact business outside traditional global banking systems, to evade U.S. sanctions, and to fund its worldwide terrorism network.

The United States alleges that the Defendant Cryptocurrency is in its possession, custody, and control. Forfeiture Compl. ¶ [6]. Upon information and belief, the Defendant Cryptocurrency belongs to the Iran-China Group and remains in wallets controlled by the United States.

TRIA expressly authorizes the *Swinney* Claimants to execute on the blocked assets of Iran and of any agency of instrumentality of Iran –including, as alleged, the Iran-China group-- "notwithstanding any other provision of law." Consequently, TRIA gives, and the *Swinney* Claimants assert, an interest in the Defendant Cryptocurrency, superior to that of the government, to the extent necessary to satisfy their outstanding compensatory damages, together with such interest as may lawfully be recovered. The *Swinney* Claimants' right to execute on the Defendant Cryptocurrency is statutorily superior to any interest the government or any other non-TRIA claimant might assert.

The *Swinney* Claimants submit this Verified Claim pursuant to Supplemental Rule G(5)(a) and 18 U.S.C. § 983(a)(4)(A). The *Swinney* Claimants reserve their rights to pursue all legally available means of enforcing their judgments, including any appropriate separate turnover or enforcement proceeding under TRIA and applicable law.

**Property Claimed.** Pursuant to Supplemental Rule G(5)(a)(i)(A), the specific property claimed is the Defendant Cryptocurrency, that is, approximately 127,271 BTC previously stored at the virtual currency addresses listed in Attachment A to the government's complaint (ECF No. 1), and all proceeds traceable thereto, in such amount as is necessary to satisfy the *Swinney* Claimants' outstanding compensatory damages.

**Claimants and Statement of Interest.** Pursuant to Supplemental Rule G(5)(a)(i)(B), the claimants are the *Swinney* Claimants identified, with the amount of each one's judgment, in Exhibit A. Each *Swinney* Claimant holds a final judgment against the Iranian Judgment Debtors

under 28 U.S.C. § 1605A and, by operation of Section 201(a) of TRIA, holds a statutory right to execute upon the Defendant Cryptocurrency, as the blocked assets of an agency or instrumentality of Iran, to the extent of the compensatory damages awarded to that *Swinney* Claimant.

**Verification and Service.** Each *Swinney* Claimant has signed this Claim under penalty of perjury by the verification attached as Exhibit C. *See* Supp. R. G(5)(a)(i)(C). This Claim is being served on the government attorney designated in the notice of this action. *See* Supp. R. G(5)(a)(i)(D).

**Timeliness.** This Claim is timely because the Court, for good cause, set a different time for its filing by Order dated September 30, 2026. *See* Supp. R. G(5)(a)(ii).

**Answer.** The *Swinney* Claimants will serve and file their Answer within the time required by Supp. R. G(5)(b).

## I. The *Swinney* Claimants Have Judgments Against a Terrorist Party for an Act of Terrorism.

1. In *Swinney, et al., v. Islamic Republic of Iran, et al.,* Case No. 1:20-cv-02316-ACR (D.D.C.), the United States District Court for the District of Columbia entered a final judgment against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Iranian Ministry of Intelligence and Security as to the bellwether plaintiffs on Exhibit A on May 30, 2025, awarding the damages specified for each judgment creditor in the judgment order, including compensatory damages, prejudgment interest, and punitive damages awarded at a 1:1 ratio. The judgment order, which identifies the judgment creditors and their respective awards, is attached as Exhibit A. The *Swinney* Claimants seek relief in this action only to the extent authorized by TRIA and other applicable law.

2. Each of the above-stated judgments accrues post-judgment interest pursuant to 28 U.S.C. § 1961. None has been fully satisfied, and each *Swinney* Claimant's outstanding compensatory damages are as set forth in Exhibit A On March 17, 2026, the District Court for the District of Columbia entered an order pursuant to 28 U.S.C. § 1610(c) finding that the judgment creditors effected service of their default judgment on the Islamic Republic of Iran on December 8, 2025, that a reasonable time has elapsed since that date, and that they may now pursue attachment and enforcement efforts to satisfy their judgment. That order is attached as Exhibit B. Each *Swinney* Claimant's judgment has been registered in this District pursuant to 28 U.S.C. § 1963.

## II. Iran is a Terrorist Party.

3. Iran is a designated state sponsor of terrorism. It was first designated in 1984. It remains a state sponsor of terrorism to this day. Iran is therefore a "terrorist party" within the meaning of TRIA § 201(d)(4), which includes a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371). The IRGC likewise qualifies as a "terrorist party" under TRIA § 201(d)(4) because it is a "terrorist organization" within the meaning of 8 U.S.C. § 1182(a)(3)(B)(vi)(I). The Secretary of State designated the IRGC as a foreign terrorist organization effective April 15, 2019. *See In the Matter of the Designation of the Islamic Revolutionary Guard Corps (and Other Aliases) as a Foreign Terrorist Organization*, 84 Fed. Reg. 15,278 (Apr. 15, 2019). Because the *Swinney* Claimants hold judgments against these terrorist parties, TRIA reaches the blocked assets of those terrorist parties and of any of their agencies or instrumentalities.

**III. The Iran-China Group Was an Agency or Instrumentality of Iran.**

4. The government alleges that "Lubian" was a bitcoin mining operation connected to a large, transnational criminal enterprise that engaged in a variety of cybercrime schemes. *See* Complaint in *U.S. v. Approximately 127,271 Bitcoin ("BTC") Previously Stored at the Virtual Currency Addresses Listed in Attachment A, and All Proceeds Traceable Thereto,* 1:25-cv-05745-RPK at ECF 1 ¶¶ [15, 16(u), 42]. As alleged in the Fritz Suit, "LuBian" is the cryptocurrency mining pool of the Iran-China Group, which operated a large Bitcoin mine in Rafsanjan, Iran. The *Swinney* Claimants take no position at this time on the government's allegations concerning Chen Zhi and Prince Holding Group, except as stated in this Claim.

5. The Iran-China Group qualifies as an agency or instrumentality of Iran if (1) it was a means through which a material function of Iran was accomplished; (2) it provided material services to, on behalf of, or in support of Iran; or (3) it was owned, controlled, or directed by Iran. *Kirschenbaum v. 650 Fifth Ave. and Related Props.,* 830 F.3d 107, 132-35 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018). The Iran-China Group needs to meet only one of the three tests to be an agency or instrumentality of Iran.

6. Even at this very early stage, the facts alleged in the Fritz Suit and the public sources cited herein indicate that the Iran-China Group satisfies all three tests.

a. Means through which Iran accomplishes a material function. Upon information and belief, Iran uses the Iran-China Bitcoin mine at Rafsanjan to generate cryptocurrencies it uses to evade U.S. sanctions and to fund international terrorism by financing its activities outside traditional global banking systems.

b. Material support to Iran. Generating large sums of clean, dissociated cryptocurrency enabled Iran to more easily carry out otherwise sanctioned activities. The

cryptocurrency makes it harder for monitors like the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") and its Financial Crimes Enforcement Network ("FinCEN") to link activity to Iran and makes it much easier for financial institutions and business counterparties to do business with Iran without detection.

c. Controlled or directed by Iran. Upon information and belief, the government of Iran, including the IRCG and MOIS (each of which is an Iranian Judgment Debtor), as well as the Central Bank of Iran a/k/a Bank Markazi ("CBI"), were deeply involved in the Iran-China Group's activities. The scale of the Rafsanjan mine's operations supports the reasonable inference that the mine could not operate without their approval, support, and direction.

For example, the Rafsanjan Bitcoin mine's power consumption needs were so large that, by January 2021, the Rafsanjan Bitcoin mine was reportedly causing electricity blackouts in Tehran.[1] Yet, the Iranian government reportedly supplied the mine with effectively costless electricity through its state-owned electricity company.[2] The government also reportedly impeded efforts to reduce the facility's electricity consumption.[3] The IRGC itself is reported to control a substantial share of cryptocurrency mining in Iran. In a 2021 incident, for instance armed IRGC units physically prevented a raid by the Ministry of Energy, preventing the attempt to shut down an illegal mining center and ensuring mining operations continued.[4] And, the Rafsanjan Bitcoin mine was operated in conjunction with powerful IRGC-affiliated entities.[5]

[1]Kia, Shahariar, *Bitcoin Mining in Iran, IRGC Operations and the Power Grid Crisis*, National Council for Resistance for Iran (May 26, 2025) https://www.ncr-iran.org/en/publications/special-reports/bitcoin-mining-in-iran-irgc-operations-and-the-power-grid-crisis/.

[2]*Id.*

[3]*Id.*

[4]*Id.*

[5]Wisconsin Project on Nuclear Arms Control, Iran Watch, *Astan Quds Razavi* (September 29, 2022) https://www.iranwatch.org/iranian-entities/astan-quds-razavi.

7. Upon information and belief, the Iran-China Group is, at all relevant times was, an agency or instrumentality of Iran, and, in the alternative, of the IRGC.

**IV. The Defendant Cryptocurrency Is a Blocked Asset of Iran or of Its Agency or Instrumentality.**

8. The Defendant Cryptocurrency is a blocked asset of a terrorist party within the meaning of TRIA. Under TRIA, "blocked assets" means "any asset seized or frozen by the United States" under section 5(b) of the Trading With the Enemy Act or under sections 202 and 203 of the International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A).

9. TRIA excludes from the definition of blocked assets only property that is subject to a license issued for final payment, transfer, or disposition in connection with a transaction for which the license is specifically required by a statute other than IEEPA or the United Nations Participation Act of 1945, and certain diplomatic property. TRIA § 201(d)(2)(B). The Swinney Claimants are not aware of any license issued with respect to the Defendant Cryptocurrency that would satisfy the statutory exclusion. Moreover, the commencement of this forfeiture action, or the issuance of a license authorizing the government to pursue forfeiture, would not, standing alone, remove an otherwise applicable IEEPA block for purposes of TRIA. *See Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632 (D.C. Cir. 2025).

10. The U.S. government long ago exercised its IEEPA authority to "block" all property and interests in property of the Government of Iran that are in the United States, a term the regulations define to include Iran's agencies and instrumentalities. 31 C.F.R. §§ 560.211(a), 560.304; Exec. Order No. 13,599, 77 Fed. Reg. 6659 (Feb. 5, 2012); *Kirschenbaum,* 830 F.3d at 120, 137. As a result, because the Iran-China Group is an agency or instrumentality of Iran, all property of the Iran-China Group in the United States qualifies as blocked assets for purposes of

TRIA. *See Levinson v. Kuwait Finance House (Malaysia) Berhad,* 44 F.4th 91, 98 n.6 (2d Cir. 2022).

11. The Defendant Cryptocurrency is in the custody of the United States, as acknowledged in the government's Verified Complaint, and is the subject of an arrest warrant issued by this Court in this *in rem* forfeiture proceeding. *See* ECF No. 1 ¶ 6; ECF No. 3. The Swinney Claimants therefore assert that the Defendant Cryptocurrency constitutes property "in the United States" within the meaning of 31 C.F.R. § 560.211(a).

12.

**V. The Forfeiture Action and the Timing of This Claim.**

13. On October 14, 2025, the government filed the instant civil forfeiture action against approximately 127,271 Bitcoin once stored in the virtual-currency addresses identified in Attachment A of its complaint. *See* ECF 1 ("Forfeiture Complaint") at 1 & Attachment. On the same day, this Court issued an arrest warrant *in rem* for Defendant Cryptocurrency pursuant to 18 U.S.C. § 981(a)(1)(C) and (a)(1)(A). *See* ECF 3.

14. The government alleges the Defendant Cryptocurrency is subject to condemnation and forfeiture by the United States: (1) under 18 U.S.C. § 981(a)(1)(C), as property that constitutes proceeds or is derived from proceeds of a violation of the wire fraud statute or a conspiracy to violate that statute, 18 U.S.C. §§ 1343, 1349; and (2) under 18 U.S.C. § 981(a)(1)(A), as property that was involved in or is derived from property involved in a money laundering transaction, an attempted money laundering transaction, or a conspiracy to make a money laundering transaction, 18 U.S.C. § 1956. *See* Forfeiture Complaint. Specifically, the government alleges that the Defendant Cryptocurrency was involved in or derived from money-

laundering operations conducted by Chen Zhi and Prince Holding Group, an alleged front for Chen's transnational criminal organization. *Id.* at ¶¶ 20, 38-43.

15. According to the government, one such scheme involved using stolen cryptocurrency to fund a "large-scale cryptocurrency mining operation[ ]" called "Lubian," which was the "sixth largest bitcoin mining operation in the world" "[f]or some of the time it was active" and produced "large sums of clean bitcoin dissociated from criminal proceeds." *Id.* ¶ 42.

16. The government describes "Lubian" as "a Chinese bitcoin mining operation" and acknowledges that it had at least one facility in "Iran." *Id.* at ¶ 16(u). The government did not include information that put the *Swinney* Claimants on notice that the bitcoin mining operation involved conduct attributable to the Iranian Government, or that the *Swinney* Claimants had a basis to claim any of the Defendant Cryptocurrency. The government did not send direct notice of this action to the *Swinney* Claimants under Supplemental Rule G(4)(b), and the *Swinney* Claimants did not otherwise have actual notice of a basis to assert an interest before the claim's deadline.

17. Based on information the *Swinney* Claimants learned after the original claim's deadline of December 29, 2025, the Defendant Cryptocurrency appears to be directly tied to Iran and activity directly involving the Iranian government, which was not clear from the forfeiture pleadings.

18. On December 26, 2025, other victims of Iran's state-sponsored terrorism filed a separate action alleging that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian government to build a

large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions. *See* Fritz Suit.

19. The Fritz Claimants, along with another group of victims of Iran's state-sponsored terrorism (the "Baxter Victims"), filed Notices of Verified Claims in this instant proceeding on December 29, 2025. *See* ECF Nos. 29 and 30.

20. Based on the information revealed in the allegations in the Fritz Suit, and summarized by the Notices of Verified Claims filed by the other terrorism victim claimants, the *Swinney* Claimants submit this Verified Claim pursuant to the Court's September 30, 2026 Order granting the *Swinney* Claimants' motion for leave to file (ECF No. 211), within the time that Order allows. *See* Supp. R. G(5)(a)(ii) (permitting the Court, for good cause, to set a different time for filing a claim).

## VI. Under TRIA, the *Swinney* Claimants Have a Superior Interest in the Defendant Cryptocurrency.

21. To establish Article III standing at this stage of the proceedings in a forfeiture action, a claimant need show only a "facially colorable interest" in the property at issue. *United States v. Ross,* 161 F.4th 100, 110 (2d Cir. 2025) (citation omitted). "[W]hether [they] ultimately prove[ ] the existence of that interest is a question for a later stage in the proceedings." *Id.* (citation omitted). Here, based on the information alleged in the Fritz Suit, the *Swinney* Claimants have far more than a "facially colorable interest" in the Defendant Cryptocurrency.

22. The *Swinney* Claimants are not general unsecured creditors of the kind that lack an interest in specific property. *See* 18 U.S.C. § 983(d)(6)(B)(i). TRIA § 201(a) gives each *Swinney* Claimant a statutory right to execute upon specific property, namely, the blocked assets of an agency or instrumentality of Iran, "[n]otwithstanding any other provision of law," and that mandate displaces any general-creditor limitation that would otherwise apply in a civil forfeiture

action. *See United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7tth Cir. 2015) (holding that TRIA judgment creditors had constitutional and statutory standing in a civil forfeiture action).

23. The *Swinney* Claimants are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. As has now been alleged, because the Iran-China Group was an agent or instrumentality of Iran, TRIA entitles the *Swinney* Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the *Swinney* Claimants have a statutory right under TRIA § 201(a) to execute upon the Defendant Cryptocurrency, which is an interest sufficient to permit them to contest the forfeiture under Supplemental Rule G(5).

24. Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" arising out of an "act of terrorism", or for which the terrorist party is not immune under 28 U.S.C. § 1605A, may execute on the "blocked assets" of that terrorist party, including the blocked assets of a "any agency or instrumentality" of that terrorist party "to satisfy such judgment to the extent of any compensatory damages." TRIA, § 201(a).

25. TRIA's cornerstone is the statute's broad "notwithstanding" clause. The clause aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce judgments against terrorist states." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi,* 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring in part and dissenting in part). The clause "mak[es] plain that the force of the section extends everywhere" and "'supersede[s] all other laws.'" *Weinstein v. Islamic Republic of Iran,* 609 F.3d 43, 49, 53 (2d Cir. 2010) (quoting *Cisneros v. Alpine Ridge*

*Group*, 508 U.S. 10, 18 (1993)). Accordingly, "if TRIA specifically allows attachments that the civil-forfeiture statute specifically prohibits, TRIA prevails." *Estate of Levin v. Wells Fargo Bank, N.A.,* 156 F.4th 632, 643 n.1 (D.C. Cir. 2025) (citing *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 432 (D.C. Cir. 2023)).

26. Because, as explained above, the *Swinney* Claimants satisfy the requirements of TRIA, their interest in the Defendant Cryptocurrency is superior to the claims of the government, including any interest the government claims through the relation-back provision of 18 U.S.C. § 981(f), as well as all other non-TRIA claimants, in the forfeiture action here.

a. First, the *Swinney* Claimants hold judgments pursuant to 28 U.S.C. § 1605A for compensatory damages against Iran based on an act of terrorism. TRIA § 201(a) also independently reaches judgments entered against a terrorist party under 28 U.S.C. § 1605A.

a. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371. *See* TRIA § 201(d)(4); *Determination Pursuant to Section 6(i) of the Export Administration Act of 1979—Iran*, 49 Fed. Reg. 2836 (Jan. 23, 1984). The IRGC is also a terrorist party, having been designated a Foreign Terrorist Organization. *See* 8 U.S.C. § 1182(a)(3)(B)(vi); TRIA § 201(d)(4).

b. Third, as now alleged in the Fritz Suit, the Iran-China Group operated as Iran's agency or instrumentality by materially serving that country in avoiding sanctions, while providing the material function to Iran of laundering its energy resources through cryptocurrency mining, at Iran's direction. *See* Plaintiffs' Memorandum of Law in Support of Motion for Attachment in the Fritz Suit, dated Dec. 28, 2025 (ECF No. 70), at 13-17; *see also Kirschenbaum,* 830 F.3d at 135-36.

c. Fourth, the Defendant Cryptocurrency constitutes "[b]locked assets" within the meaning of TRIA, for the reasons stated in Section IV above.

27. Pursuant to 18 U.S.C. § 983(a)(4)(A) and Supplemental Rule G(5)(a), the *Swinney* Claimants hereby assert a claim to and an interest in, such amount of the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—as may be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran, together with such interest as may lawfully be recovered, based on the date the Defendant Cryptocurrency is valued for purposes of judgment.

28. The *Swinney* Claimants' claim is superior to the government's claim and superior to any other non-TRIA claimant.

29. Notwithstanding the government's forfeiture efforts, the *Swinney* Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency. The *Swinney* Claimants further reserve the right to amend or

supplement this Claim as additional facts concerning the Iran-China Group and the Defendant Cryptocurrency become known.

Dated: October 19, 2026

*/s/ Hillary M. Nappi*
Hillary M. Nappi (NY Bar 5204045)
AWK Survivor Advocate Attorneys PLLC
1133 Westchester Avenue, Suite N-224
White Plains, NY 10604
Email: hnappi@awk-saa.com
Telephone: (914) 468-4840

-and-

*/s/ Douglass A. Kreis*
Douglass A. Kreis (FL Bar 0129704)
(admitted pro hac vice in this action)
Aylstock Witkin Kreis Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Email: dkreis@awkolaw.com
Telephone: (850) 202-1010

*Attorneys for the Swinney Claimants*