**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>APPROXIMATELY 127,271 BITCOIN ("BTC") PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendants *In Rem.* | : | No. 25-cv-5745 (RPK) (CHK) |

**_SWINNEY_ CLAIMANTS' SUPPLEMENTAL ANSWER TO THE VERIFIED COMPLAINT (SUPPLEMENTAL RULE G(5)(b)) AND CONSOLIDATED ANSWER TO CROSSCLAIMS, WITH AFFIRMATIVE DEFENSES AND JURY DEMAND DEFENSES**

The *Swinney* Claimants, by and through undersigned counsel, submit this pleading (the "Submission" in two parts. Part I is their Answer to the Verified Complaint *In Rem* (ECF No. 1) pursuant to Supplemental Rule G(5)(b), conforming to their Verified Claim (ECF No. 594) and restating and supplementing their Answer at ECF No. 242. Part II answers the crossclaims asserted in ECF Nos. 216, 236, 350, 399, 406, 414, and 501 (the "Competing Crossclaims," and the parties asserting them, the "Crossclaimants") as follows. The *Swinney* Claimants previously answered the crossclaims asserted in ECF No. 252. See ECF No. 306. To the extent any further response to ECF No. 252 is required, the *Swinney* Claimants rely on and incorporate ECF No. 306 and the responses and defenses stated in this Answer. To the extent ECF No. 306 states that the Swinney Claimants' request for leave or authorization under 28 U.S.C. § 1610(c) was pending, those statements are superseded by the Court's September 30, 2026 Order, the Order Authorizing Execution and Attachment entered March 17, 2026 (D.D.C. ECF No. 75; see ECF No. 594-3), and the Verified Claim (ECF No. 594). ECF No. 261, the 9/11 Claimants' earlier

amended answer, is superseded by ECF No. 501 (their Second Amended Answer, which adds the Additional O'Neill Claimants) and is not separately answered. To the extent ECF No. 261 is not superseded, the Swinney Claimants' responses to ECF No. 501 in Part II apply to it and are incorporated by reference. This Answer is filed subject to the objections and reservations stated in the First Defense below.

Part I is the *Swinney* Claimants' operative answer to the Verified Complaint upon filing. It is timely under Supplemental Rule G(5)(b) whether measured from the Court's September 30, 2026 Order or from the filing of ECF No. 594. If the Court declines to accept Part I, ECF No. 242 remains the *Swinney* Claimants' operative answer. The *Swinney* Claimants do not concede that ECF No. 242 was premature or ineffective, that a further answer is required, or that leave to amend is necessary. To the extent Part I is treated as an amendment, they request consent or leave under Fed. R. Civ. P. 15(a)(2), and, to the extent Part I pleads events that occurred after ECF No. 242 was filed, Fed. R. Civ. P. 15(d), as set out in their letter of the same date. Parts I and II are severable, and references in Part II to "this Answer" are to Part II. The *Swinney* Claimants do not assert crossclaims in this pleading and reserve the right to seek leave to assert them. Capitalized terms not defined here have the meanings given in the Verified Claim of the *Swinney* Claimants, ECF No. 594.

## PART I: ANSWER TO THE VERIFIED COMPLAINT

Pursuant to Supplemental Rule G(5)(b), the *Swinney* Claimants answer the Verified Complaint *In Rem* dated October 14, 2025 (ECF No. 1) (the "Complaint"). This Part I restates and supplements their Answer at ECF No. 242 and conforms it to their Verified Claim (ECF No. 594), filed pursuant to the Court's September 30, 2026 Order. The paragraph numbers below correspond to the paragraphs of the Complaint.

Unless expressly admitted below, the *Swinney* Claimants deny each allegation of the Complaint, including any allegation in a heading, footnote, table, or unnumbered paragraph. Where the *Swinney* Claimants state that they lack knowledge or information sufficient to form a belief about the truth of an allegation, that statement has the effect of a denial under Fed. R. Civ. P. 8(b)(5).

**A. Nature of the Action**

1. Admitted in part and denied in part. The *Swinney* Claimants admit that this is a civil action in rem against the Defendant Cryptocurrency. They deny that the Defendant Cryptocurrency should be forfeited and condemned to the use and benefit of the United States. By operation of TRIA § 201(a), the *Swinney* Claimants, as judgment creditors of Iran, hold an interest in the Defendant Cryptocurrency, to the extent of their compensatory damages, that is superior to the claims of the Government and of all non-TRIA claimants.

2. Paragraph 2 states legal conclusions to which no response is required. To the extent a response is required, the *Swinney* Claimants deny that any authority cited in Paragraph 2 gives the United States an interest in the Defendant Cryptocurrency that is superior to the interest of the *Swinney* Claimants.

**B. Jurisdiction and Venue**

3. Paragraph 3 states jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the *Swinney* Claimants admit that this Court has jurisdiction over this action under 28 U.S.C. §§ 1345 and 1355.

4. Paragraph 4 states jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegation that the acts and omissions giving rise to forfeiture accrued in this District.

**C. The Defendants In Rem**

5. Admitted in part and denied in part. The *Swinney* Claimants admit that the Defendants In Rem consist of the Defendant Cryptocurrency as described in this paragraph. They deny that the Defendant Cryptocurrency is the property of the United States. Upon information and belief, the Defendant Cryptocurrency is the property of the Iran and China Investment Development Group (the "Iran-China Group"), an agency or instrumentality of Iran, doing business as LuBian, which partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran, to assist Iran's efforts to evade U.S. sanctions.

6. Admitted.

**D. Relevant Statutes and Regulations**

7–12. Paragraphs 7 through 12 characterize statutes that speak for themselves, and no response is required.

13–14. Paragraphs 13 and 14 characterize statutes that speak for themselves, and no response is required. To the extent a response is required, the *Swinney* Claimants deny that the Defendant Cryptocurrency is subject to forfeiture to the United States as against their interest. By operation of TRIA § 201(a), the *Swinney* Claimants hold an interest in the Defendant Cryptocurrency, to the extent of their compensatory damages, that is superior to the claims of the Government and of all non-TRIA claimants.

**E. Facts**

15. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15.

16. Admitted in part and denied in part. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations in subparagraphs 16(a) through (t) and 16(v) through (y). They admit that LuBian maintained a Bitcoin mining facility

in Iran. They deny that LuBian was a Chinese Bitcoin mining operation that maintained facilities across Asia, including China. Upon information and belief, LuBian was the cryptocurrency mining pool of the Iran-China Group, an agency or instrumentality of Iran that partnered with the Iranian government to build the Rafsanjan Bitcoin mine.

17. Admitted in part. The *Swinney* Claimants admit the allegations in subparagraphs 17(d) through (l). They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 17, including subparagraphs (a) through (c).

18. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18.

19. Paragraph 19 purports to quote a document that speaks for itself, and no response is required. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 19.

20–37. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraphs 20 through 37, including Footnote 2.

38. Denied in part. The *Swinney* Claimants deny that the Defendant Cryptocurrency, or any portion of it that belongs to the Iran-China Group, constitutes laundered Prince Group profits. They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 38.

39–40. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraphs 39 and 40, including Footnote 3.

41. Footnote 4 purports to quote a document that speaks for itself, and no response is required. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 41.

42. Admitted in part and denied in part. Upon information and belief, the *Swinney* Claimants admit that the Iran-China Group, doing business as LuBian, operated a large-scale Bitcoin mining operation that produced large sums of clean Bitcoin dissociated from criminal proceeds, and that it was at one time the sixth largest Bitcoin mining operation in the world. They deny that LuBian was based in China. Upon information and belief, they deny that LuBian was owned or exclusively controlled by Chen or Prince Group, and deny that LuBian's operating capital consisted of money stolen from Prince Group's victims. Upon information and belief, LuBian's costs were low because Iranian state-controlled entities, including entities affiliated with the IRGC, supplied electricity to the Rafsanjan mine at little or no cost. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 42.

43. Denied in part. The *Swinney* Claimants deny that the Defendant Cryptocurrency was stored in unhosted wallets personally controlled by Chen. Upon information and belief, the wallets were controlled by the Iran-China Group. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 43 and Footnote 5.

44. Admitted in part and denied in part. Upon information and belief, the *Swinney* Claimants admit that the Government seeks to forfeit Bitcoin stored at the 25 addresses identified in the table following Paragraph 44. They deny that the addresses were controlled and personally tracked by Chen, and deny the allegations of Footnote 6 to the extent they imply that Chen alone controlled the wallets. Upon information and belief, they deny that the table accurately states the amount of Bitcoin stored at each address in December 2020, deny that it lists every address that held the Iran-China Group's Bitcoin, and deny that it identifies all of the Iran-China Group's Bitcoin now in the Government's possession. They deny that the Defendant Cryptocurrency

consists solely of the proceeds of Chen's fraud, laundered. Upon information and belief, at least 11,166.51 BTC of the Defendant Cryptocurrency is directly traceable to Bitcoin mined at the Iran-China Group's Rafsanjan mine, and all of the Defendant Cryptocurrency constituted the Iran-China Group's pool-level reserve of Bitcoin. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 44 and Footnotes 6 and 7.

45. Admitted in part. Upon information and belief, the *Swinney* Claimants admit that the addresses described in Paragraph 45 were funded in part by cryptocurrency mining, including addresses associated with LuBian. They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 45 and Footnote 8.

46. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46, including the table.

47. Admitted in part and denied in part. Upon information and belief, the *Swinney* Claimants admit that the four wallet addresses listed in Cluster Index-4, which contain approximately 23,738.17 BTC as alleged in subparagraph 47(d), were associated with the Iran-China Group, doing business as LuBian, and were funded at least in part with newly mined proceeds of its Bitcoin mining operations, as the Complaint alleges in Footnote 9. They deny the allegation in Footnote 9 that the funding profile of those addresses suggests commingling of funds for the purpose of laundering. They deny any allegation that other clusters were controlled solely by Chen or Prince Group. They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 47 and Footnote 9, including subparagraphs (a) through (m).

48. Denied in part. The *Swinney* Claimants deny that all of the Defendant Cryptocurrency passed through high-volume disaggregation and funneling before converging in

the wallets the Complaint calls the "Chen wallets." At least some of the Defendant Cryptocurrency was Bitcoin newly mined by the Iran-China Group, doing business as LuBian. They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 48.

49. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49.

50. Admitted in part. Upon information and belief, the *Swinney* Claimants admit that, between April 24, 2020 and December 28, 2020, approximately 11,115.83 newly mined bitcoin were sent directly to the 34J Wallet in Cluster Index-4 in approximately 1,477 transactions, and that those bitcoin were mined by the Iran-China Group, doing business as LuBian. Upon information and belief, at least 11,166.51 BTC of the Defendant Cryptocurrency is directly traceable to Bitcoin mined by the Iran-China Group. They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 50.

51–56. The *Swinney* Claimants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraphs 51 through 56, including subparagraphs (a) through (g) of Paragraph 55.

57. Denied in part. The *Swinney* Claimants deny that the patterns described in the Complaint show that the Defendant Cryptocurrency, to the extent it belongs to the Iran-China Group or was newly mined by it, was laundered. The Complaint itself alleges that LuBian's mining operation produced large sums of clean Bitcoin dissociated from criminal proceeds (Complaint ¶ 42). They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 57.

58. Admitted in part. The *Swinney* Claimants admit that the Defendant Cryptocurrency is in the possession, custody, and control of the United States. They lack knowledge or information sufficient to form a belief about the truth of the remainder of Paragraph 58.

**F. Criminal and Regulatory Actions**

59. Admitted in part. Upon information and belief, the *Swinney* Claimants admit that on or about October 8, 2025 a grand jury returned an indictment charging Chen; that the indictment was unsealed on October 14, 2025; that on October 14, 2025 OFAC designated the Prince Group Transnational Criminal Organization and placed Prince Holding Group, many of its affiliates, and Chen and others on the SDN List; and that, as the Complaint alleges, a block was placed as a result on all property of the designees subject to United States jurisdiction. The Indictment (Attachment B to the Complaint) and the OFAC actions speak for themselves. The *Swinney* Claimants deny that the Defendant Cryptocurrency, to the extent it belongs to the Iran-China Group, is property of Chen or Prince Group. They deny any implication that they need a license from OFAC to attach and execute against the Defendant Cryptocurrency under TRIA § 201(a), which applies "[n]otwithstanding any other provision of law."

**G. First Claim for Relief (Proceeds Traceable to Wire Fraud)**

60. The *Swinney* Claimants incorporate their responses to Paragraphs 1 through 59 as if fully set forth here.

61. Paragraph 61 states legal conclusions to which no response is required. To the extent a response is required, the *Swinney* Claimants deny that the Defendant Cryptocurrency is subject to forfeiture as against their interest.

62. Denied. By operation of TRIA § 201(a), the *Swinney* Claimants, as judgment creditors of Iran, hold an interest in the Defendant Cryptocurrency, to the extent of their

compensatory damages, that is superior to the claims of the Government and of all non-TRIA claimants.

**H. Second Claim for Relief (Property Involved in Money Laundering)**

63. The *Swinney* Claimants incorporate their responses to Paragraphs 1 through 59 as if fully set forth here.

64. Paragraph 64 states legal conclusions to which no response is required. To the extent a response is required, the *Swinney* Claimants deny that the Defendant Cryptocurrency is subject to forfeiture as against their interest.

65. Denied. By operation of TRIA § 201(a), the *Swinney* Claimants, as judgment creditors of Iran, hold an interest in the Defendant Cryptocurrency, to the extent of their compensatory damages, that is superior to the claims of the Government and of all non-TRIA claimants.

**I. Affirmative and Other Defenses to the Government's Claims**

The following defenses to the Complaint rest on the *Swinney* Claimants' knowledge, information, and belief at this time. By pleading a matter as a defense, the *Swinney* Claimants do not assume a burden of proof, persuasion, or production that the law places on the Government.

**66. First Defense to the Complaint (Standing).** The *Swinney* Claimants have standing to contest forfeiture. Each holds a final judgment under 28 U.S.C. § 1605A and, under TRIA § 201(a), a statutory right to execute on the blocked assets of Iran and of its agencies or instrumentalities, to the extent of the compensatory damages awarded. That interest is at least facially colorable under 18 U.S.C. § 983(a)(4)(A) and Supplemental Rule G(5), as pleaded in the Verified Claim (ECF No. 594).

**67. Second Defense to the Complaint (Terrorist Party).** Iran is a "terrorist party" under TRIA § 201(d)(4) because it is designated a state sponsor of terrorism. The IRGC is also a "terrorist party" because it is designated a foreign terrorist organization.

**68. Third Defense to the Complaint (Agency or Instrumentality).** Upon information and belief, the Iran-China Group, doing business as LuBian, is and was at all relevant times an agency or instrumentality of Iran and, in the alternative, of the IRGC, because it was a means through which Iran carried out a material function, it provided material services to or in support of Iran, and it was owned, controlled, or directed by Iran.

**69. Fourth Defense to the Complaint (Blocked Asset: Iran Sanctions).** Upon information and belief, the Defendant Cryptocurrency is property of an agency or instrumentality of Iran. It was and is blocked under the International Emergency Economic Powers Act ("IEEPA") by Executive Order 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012), and 31 C.F.R. Part 560, which block all property and interests in property of the Government of Iran, including its agencies and instrumentalities, that are in the United States. The Defendant Cryptocurrency is a "blocked asset" under TRIA § 201(d)(2)(A). The Defendant Cryptocurrency is in the custody of the United States under this Court's process and is therefore property "in the United States" within the meaning of 31 C.F.R. § 560.211(a).

**70. Fifth Defense to the Complaint (Blocked Asset: OFAC Designations).** The Complaint alleges that, as a result of OFAC's October 14, 2025 designations, "a block was placed on all property of the SDN List designees subject to United States jurisdiction" (Complaint ¶ 59). In the alternative, to the extent that block reached the Defendant Cryptocurrency, it is "seized or frozen by the United States" under IEEPA within the meaning of TRIA § 201(d)(2)(A).

**71. Sixth Defense to the Complaint (TRIA Controls over the Forfeiture Statutes).** TRIA § 201(a) applies "[n]otwithstanding any other provision of law." It therefore prevails over any contrary provision of the civil forfeiture statutes, including the relation-back provision of 18 U.S.C. § 981(f). The commencement of this forfeiture action, and the Government's possession of the Defendant Cryptocurrency, do not by themselves remove an otherwise applicable IEEPA block.

**72. Seventh Defense to the Complaint (28 U.S.C. § 1610(c)).** The District Court for the District of Columbia found in *Swinney* that service of the default judgment on Iran was effected on December 8, 2025, that a reasonable time has elapsed, and that the *Swinney* Claimants may proceed with attachment and enforcement (D.D.C. ECF No. 75, entered March 17, 2026; ECF No. 594-3).

**73. Eighth Defense to the Complaint (Sufficiency of the Complaint).** The Complaint does not allege facts supporting a reasonable belief that the Government will be able to meet its burden at trial, Supplemental Rule G(2)(f); 18 U.S.C. § 983(c)(1), as to the Defendant Cryptocurrency to the extent it belongs to the Iran-China Group. The Complaint itself alleges that LuBian's mining operation produced "clean bitcoin dissociated from criminal proceeds" (Complaint ¶ 42), and that the four addresses in Cluster Index-4, which contain approximately 23,738.17 BTC, were associated with LuBian (Complaint ¶ 47(d) & n.9).

**74. Ninth Defense to the Complaint (Due Process).** Because of their TRIA interest, the *Swinney* Claimants hold a property interest in the Defendant Cryptocurrency protected by the Fifth Amendment. Forfeiting it without due process of law would violate the *Swinney* Claimants' rights under the Fifth Amendment.

**75. Tenth Defense to the Complaint (Takings).** Forfeiting the *Swinney* Claimants' interest in the Defendant Cryptocurrency to the Government would take private property for public use without just compensation, in violation of the Fifth Amendment.

**76. Eleventh Defense to the Complaint (Excessive Fines).** To the extent forfeiture would reach the *Swinney* Claimants' interest, it would be grossly disproportionate and would violate the Excessive Fines Clause of the Eighth Amendment.

**77. Twelfth Defense to the Complaint (Defenses of Other Claimants).** The *Swinney* Claimants incorporate any defense pleaded by another claimant to the Government's claims, to the extent it applies to the Government's claims against the Defendant Cryptocurrency and is consistent with the positions stated here.

**Priority among Claimants.** Nothing in this pleading concedes that any other claimant's judgment, execution, or lien ranks equal to or ahead of the *Swinney* Claimants' interest. The *Swinney* Claimants expressly preserve every position on the relative priority of competing interests in the Defendant Cryptocurrency.

**Reservation.** The *Swinney* Claimants will seek leave under Fed. R. Civ. P. 15 to assert additional defenses, claims, or cross-claims as the proceedings warrant.

### J. Jury Demand

Pursuant to Fed. R. Civ. P. 38(b) and Supplemental Rule G(9), the *Swinney* Claimants demand trial by jury on all issues so triable.

### K. Prayer for Relief on the Complaint

WHEREFORE, the *Swinney* Claimants respectfully request that the Court:

(a) deny forfeiture of the Defendant Cryptocurrency to the United States to the extent of the *Swinney* Claimants' interest under TRIA § 201(a);

(b) determine that the Defendant Cryptocurrency is a blocked asset of Iran or of an agency or instrumentality of Iran, subject to execution by the *Swinney* Claimants under TRIA § 201(a) to the extent of the compensatory damages awarded to each of them;

(c) order that the Defendant Cryptocurrency be preserved, and that no disposition affecting the rights of claimants occur, until those rights are adjudicated; and

(d) grant such other and further relief as the Court deems just and proper.

## PART II: ANSWER TO CROSS-CLAIMS AND COUNTERCLAIMS

### I. PRELIMINARY STATEMENT

1. The *Swinney* Claimants are judgment creditors of the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Iranian Ministry of Intelligence and Security, holding final judgments entered under 28 U.S.C. § 1605A for acts of state-sponsored terrorism that have not been fully satisfied.

2. The *Swinney* Claimants assert rights under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), which authorizes holders of qualifying terrorism judgments to execute upon blocked assets of a terrorist party, including assets of its agencies or instrumentalities, to satisfy compensatory damages.

3. On October 19, 2026, pursuant to the Court's September 30, 2026 Order granting leave to file their claim, the *Swinney* Claimants filed their Verified Claim to the Defendant Cryptocurrency. ECF No. 594.

4. The Competing Crossclaims ask the Court to declare that the Crossclaimants have priority over other claimants, including other holders of terrorism judgments against Iran. Several also ask that the Defendant Cryptocurrency be released or turned over to the Crossclaimants.

5. Six of the Competing Crossclaims plead that they do not seek an adjudication of priority until the universe of legally permissible claimants is established. See ECF Nos. 216, 236, 350, 406, 414, and 501, each at ¶ 5. The *Swinney* Claimants agree that priority is not ripe for adjudication, and deny that any Crossclaimant is entitled to priority over them.

6. No Crossclaimant has an automatically superior interest in the Defendant Cryptocurrency merely by holding a terrorism judgment, filing a Verified Claim, or invoking TRIA. The *Swinney* Claimants hold terrorism judgments and invoke TRIA and are not "non-TRIA claimants." Nothing in this Answer concedes that any Crossclaimant's interest ranks equal to or ahead of theirs.

. The relative rights of competing claimants depend on the applicable federal and state law, the nature of each claimant's interest, any applicable execution or attachment requirements, and the legal effect of any steps taken to establish or perfect those rights. Any distribution among Iran terrorism judgment creditors must account for the *Swinney* Claimants.

## II. CONSOLIDATED ANSWER TO CROSSCLAIMS

### A. General Responses

8. Except as expressly admitted below, the *Swinney* Claimants deny each and every allegation in the Competing Crossclaims, including their headings, unnumbered introductory paragraphs, jury demands, and prayers for relief. Fed. R. Civ. P. 8(b)(3).

9. The unnumbered introductory paragraph of each Competing Crossclaim characterizes the relief the Crossclaimants seek and requires no response. To the extent a response is required, the *Swinney* Claimants deny that any Crossclaimant is entitled to the declarations or other relief described.

10. Where the *Swinney* Claimants state below that they lack knowledge or information sufficient to form a belief as to the truth of an allegation, that statement has the effect of a denial. Fed. R. Civ. P. 8(b)(5).

11. Where an allegation states a legal conclusion or characterizes a statute, rule, or document that speaks for itself, no response is required. To the extent a response is required, the *Swinney* Claimants deny any characterization inconsistent with the text of the statute, rule, or document.

12. The *Swinney* Claimants admit that this action concerns the approximately 127,271 Bitcoin and traceable proceeds identified in the government's Verified Complaint In Rem, and that numerous parties, including persons asserting unsatisfied judgments against Iran arising from acts of state-sponsored terrorism, claim interests in them.

13. The *Swinney* Claimants admit that TRIA § 201(a) provides a statutory mechanism for execution against qualifying blocked assets, subject to satisfaction of its requirements.

**B. Response to the Breitweiser Claimants' Cross-Claim for Priority — ECF No. 216**

14. As to paragraphs 1 and 2 of ECF No. 216, which state legal conclusions on jurisdiction and venue, the *Swinney* Claimants admit that the Court has jurisdiction over the underlying forfeiture action under 28 U.S.C. §§ 1345 and 1355 and that venue lies in this District for that action. No further response is required.

15. As to paragraph 3, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Breitweiser Claimants' judgments, including whether they are final or unsatisfied, and therefore deny them.

16. As to paragraph 4, the *Swinney* Claimants admit that they assert an interest in the Defendant Cryptocurrency and are therefore among the parties described. They deny that the

Breitweiser Claimants are entitled to any relief against them, and lack knowledge or information sufficient to form a belief as to the allegations regarding other parties.

17. As to paragraph 5, the *Swinney* Claimants admit that the Breitweiser Claimants so plead. The *Swinney* Claimants agree that no adjudication of priority is appropriate until the universe of claimants is established, and deny that the Breitweiser Claimants are entitled to priority over them.

18. As to paragraphs 6, 7, and 8, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Breitweiser Claimants' judgments, the service of those judgments on Iran, the filing of their Verified Claim, and any authorization under 28 U.S.C. § 1610(c), and therefore deny them.

19. As to paragraph 9, the *Swinney* Claimants admit that, as set forth in their Verified Claim (ECF No. 594), they allege on information and belief that the Defendant Cryptocurrency belongs to the Iran and China Investment Development Group, an agency or instrumentality of Iran, and constitutes blocked assets subject to execution or attachment in aid of execution under TRIA § 201(a) to the extent of the *Swinney* Claimants' compensatory damages. The *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the Crossclaimants' remaining allegations, and therefore deny them.

20. As to paragraph 10, the *Swinney* Claimants admit that multiple parties assert competing interests in the Defendant Cryptocurrency.

21. As to paragraphs 11, 18, 24, and 29, which incorporate prior paragraphs, the *Swinney* Claimants repeat their responses to those paragraphs.

22. As to paragraphs 12 and 19, the *Swinney* Claimants admit that the Breitweiser Claimants plead their First and Second Counts in the alternative, and only to the extent state-law execution or attachment principles apply in aid of federal judgment enforcement "following

forfeiture or disposition of the res." The *Swinney* Claimants deny that the Breitweiser Claimants are entitled to priority under those principles.

23. As to paragraphs 13, 14, 15, and 20, which describe CPLR 5234 and CPLR Article 62, the statutes speak for themselves. The *Swinney* Claimants deny any characterization inconsistent with their text and deny that those provisions give the Breitweiser Claimants priority over the *Swinney* Claimants.

24. As to paragraphs 16 and 21, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Breitweiser Claimants' diligence, any authorization under FSIA § 1610(c), and the basis of any attachment rights, and therefore deny them.

25. The *Swinney* Claimants deny the allegations in paragraphs 17, 22, 23, 26, and 28. As to paragraph 25, TRIA § 201(a) speaks for itself. As to paragraph 27, the *Swinney* Claimants deny the allegations, except that they admit only that the Breitweiser Claimants acknowledge that any TRIA priority is "subject to the procedural sequencing required by forfeiture and execution law," and deny that TRIA itself establishes priority among terrorism judgment creditors.

26. As to paragraphs 30 and 31, the *Swinney* Claimants admit that the Breitweiser Claimants and the *Swinney* Claimants dispute relative priority, deny that the dispute is ripe for adjudication before the universe of claimants is established, and deny that the Breitweiser Claimants are entitled to the declaration they seek.

27. As to the prayer for relief (paragraphs A through E), the *Swinney* Claimants deny that the Breitweiser Claimants are entitled to the relief requested in paragraphs A, B, and E. As to paragraph C, the *Swinney* Claimants agree that the Defendant Cryptocurrency should be preserved pending adjudication of the claimants' rights, and deny that any priority should be determined in the Breitweiser Claimants' favor. As to paragraph D, 34 U.S.C. § 20144(e)(2)(A)

speaks for itself, and the *Swinney* Claimants deny that the Breitweiser Claimants are entitled to relief that would prejudice the *Swinney* Claimants' rights.

**C. Response to the IBHLAW Claimants' Cross-Claims and Counterclaims — ECF No. 236**

28. The *Swinney* Claimants respond only to the "Cross-Claims & Counterclaims" section of ECF No. 236 (paragraphs 1 through 34 following the heading). The IBHLAW Claimants' answers to the Verified Complaint and affirmative defenses are directed to the government and require no response from the *Swinney* Claimants. To the extent a response is required, those allegations are denied as to the *Swinney* Claimants.

29. As to paragraphs 1 and 2, the *Swinney* Claimants admit that the Court has jurisdiction over the underlying forfeiture action under 28 U.S.C. §§ 1345 and 1355 and that venue lies in this District for that action. The remaining allegations are legal conclusions requiring no response.

30. As to paragraph 3, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the IBHLAW Claimants' judgments, and therefore deny them.

31. As to paragraph 4, the *Swinney* Claimants admit that they assert an interest in the Defendant Cryptocurrency and are therefore among the parties described, deny that the IBHLAW Claimants are entitled to relief against them, and lack knowledge or information sufficient to form a belief as to the allegations regarding other parties.

32. As to paragraph 5, the *Swinney* Claimants admit that the IBHLAW Claimants plead that their TRIA Claims are asserted for the limited purpose of preserving priority rights and do not seek adjudication of priority until the universe of claimants is established. The *Swinney* Claimants agree that no adjudication of priority is appropriate until then, and deny that the IBHLAW Claimants are entitled to priority over them.

33. As to paragraph 6, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the IBHLAW Claimants' Verified Claim and any authorization under 28 U.S.C. § 1610(c), and therefore deny them.

34. As to paragraph 7, the *Swinney* Claimants respond as stated above to paragraph 9 of ECF No. 216.

35. As to paragraph 8, the *Swinney* Claimants admit that multiple parties assert competing interests in the Defendant Cryptocurrency.

36. As to paragraphs 9, 16, 22, and 27, which incorporate prior paragraphs, the *Swinney* Claimants repeat their responses to those paragraphs.

37. As to paragraphs 10 and 17, the *Swinney* Claimants admit that the IBHLAW Claimants plead their First and Second Counts in the alternative and only to the extent state-law execution or attachment principles apply. The *Swinney* Claimants deny that the IBHLAW Claimants are entitled to priority under those principles.

38. As to paragraphs 11, 12, 13, and 18, which describe CPLR 5234 and CPLR Article 62, the statutes speak for themselves. The *Swinney* Claimants deny any characterization inconsistent with their text.

39. As to paragraphs 14 and 19, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the IBHLAW Claimants' diligence, any authorization under FSIA § 1610(c), and the basis of their attachment rights, and therefore deny them.

40. The *Swinney* Claimants deny the allegations in paragraphs 15, 20, 21, 24, and 26. As to paragraph 23, TRIA § 201(a) speaks for itself. As to paragraph 25, the *Swinney* Claimants deny the allegations, except that they admit only that the IBHLAW Claimants acknowledge that any

TRIA priority is "subject to the procedural sequencing required by forfeiture and execution law," and deny that TRIA itself establishes priority among terrorism judgment creditors.

41. As to paragraphs 28 and 29, the *Swinney* Claimants admit that the IBHLAW Claimants and the *Swinney* Claimants dispute relative priority, deny that the dispute is ripe for adjudication before the universe of claimants is established, and deny that the IBHLAW Claimants are entitled to the declaration they seek.

42. As to the prayer for relief (paragraphs 30 through 34), the *Swinney* Claimants deny that the IBHLAW Claimants are entitled to the relief requested in paragraphs 30, 31, and 34. As to paragraph 32, the *Swinney* Claimants agree that the Defendant Cryptocurrency should be preserved pending adjudication of the claimants' rights, and deny that any priority should be determined in the IBHLAW Claimants' favor. As to paragraph 33, 34 U.S.C. § 20144(e)(2)(A) speaks for itself, and the *Swinney* Claimants deny that the IBHLAW Claimants are entitled to relief that would prejudice the *Swinney* Claimants' rights.

**D. Response to the TRIA Crossclaims in ECF Nos. 350, 406, 414, and 501**

43. The crossclaims in ECF No. 350 (the Aceto, Akin, Blais, Blank, Brewer, Thole, Valencia, and Welch Claimants and Clayton Omar Zook), ECF No. 406 (the Mark and Hirshfeld Claimants), ECF No. 414 (the Encinas and DiBenedetto Claimants), and ECF No. 501 (the 9/11 Claimants' Second Amended Answer) are pleaded in materially identical numbered paragraphs 1 through 35. The *Swinney* Claimants respond to those paragraphs collectively, and each response applies to the corresponding paragraph of each of the four pleadings. Differences in wording among them, such as whether a Crossclaimant alleges it has "already," "will," or "already and/or will" pursue § 1610(c) authorization in paragraph 7, do not change the response.

44. As to paragraphs 1 and 2, the *Swinney* Claimants admit that the Court has jurisdiction over the underlying forfeiture action under 28 U.S.C. §§ 1345 and 1355 and that venue lies in

this District for that action. The remaining allegations are legal conclusions requiring no response.

45. As to paragraph 3, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding each Crossclaimant's judgments, including whether they are final or unsatisfied, and therefore deny them.

46. As to paragraph 4, the *Swinney* Claimants admit that they assert an interest in the Defendant Cryptocurrency and are therefore among the parties described, deny that any Crossclaimant is entitled to relief against them, and lack knowledge or information sufficient to form a belief as to the allegations regarding other parties.

47. As to paragraph 5, the *Swinney* Claimants admit that each Crossclaimant so pleads. The *Swinney* Claimants agree that no adjudication of priority is appropriate until the universe of legally permissible claimants is established, and deny that any Crossclaimant is entitled to priority over them. The *Swinney* Claimants also admit that the Crossclaimants plead that priority is sought "to facilitate an equitable distribution among all Iran terror victims," and state that, to the extent the Court considers any such distribution, it must include the *Swinney* Claimants.

48. As to paragraph 6, the Crossclaimants' pleading speaks for itself, and no response is required. To the extent a response is required, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the Crossclaimants' intent and therefore deny the allegations.

49. As to paragraph 7, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding each Crossclaimant's Verified Claim and any authorization under 28 U.S.C. § 1610(c), and therefore deny them.

50. As to paragraph 8, the *Swinney* Claimants respond as stated above to paragraph 9 of ECF No. 216.

51. As to paragraph 9, the *Swinney* Claimants admit that multiple parties assert competing interests in the Defendant Cryptocurrency.

52. As to paragraphs 10, 16, 20, and 25, which incorporate prior paragraphs, the *Swinney* Claimants repeat their responses to those paragraphs.

53. As to paragraph 11, which states a legal conclusion, the *Swinney* Claimants admit only that Fed. R. Civ. P. 69(a) looks to state law for the procedure on execution, and deny the remaining allegations.

54. As to paragraphs 12, 13, and 17, which describe CPLR 5234, CPLR 5240, and CPLR Article 62, the statutes speak for themselves. The *Swinney* Claimants deny any characterization inconsistent with their text, and deny that those provisions give any Crossclaimant priority over the *Swinney* Claimants.

55. As to paragraphs 14 and 19, the *Swinney* Claimants deny that any Crossclaimant has priority over them. To the extent those paragraphs seek an equitable distribution among all Iran terrorism victims, the *Swinney* Claimants state that, to the extent the Court considers any such distribution, it must include the *Swinney* Claimants.

56. As to paragraphs 15 and 18, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding each Crossclaimant's diligence, any authorization under FSIA § 1610(c), and the basis of their attachment rights, and therefore deny them.

57. As to paragraph 21, TRIA § 201(a) speaks for itself. The *Swinney* Claimants deny the allegations in paragraphs 22, 23, and 24, and deny that TRIA § 201(a) itself establishes priority among holders of terrorism judgments. The *Swinney* Claimants hold terrorism judgments and are not "non-TRIA claimants."

58. As to paragraphs 26 and 27, the *Swinney* Claimants admit that the Crossclaimants and the *Swinney* Claimants dispute relative priority, deny that the dispute is ripe for adjudication before the universe of claimants is established, and deny that any Crossclaimant is entitled to the declaration it seeks.

59. The jury demand that follows paragraph 27 states a legal conclusion requiring no response. To the extent a response is required, the *Swinney* Claimants deny that any Crossclaimant has established a right to a jury trial on its claims for declaratory relief or priority.

60. As to the prayer for relief (paragraphs 28 through 35), the *Swinney* Claimants deny that any Crossclaimant is entitled to the relief requested in paragraphs 28, 29, 30, 31, 34, and 35. In particular, the *Swinney* Claimants deny that the Defendant Cryptocurrency should be released from the government's custody and returned to any Crossclaimant (paragraph 29), and deny that any Crossclaimant has established an entitlement to attorneys' fees or costs (paragraph 34). As to paragraph 32, the *Swinney* Claimants agree that the Defendant Cryptocurrency should be preserved pending adjudication of the claimants' rights, and deny that any priority should be determined in any Crossclaimant's favor. As to paragraph 33, 34 U.S.C. § 20144(e)(2)(A) speaks for itself, and the *Swinney* Claimants deny that any Crossclaimant is entitled to relief that would prejudice the *Swinney* Claimants' rights.

**E. Response to the Weinstock, Mustard, Johnson, and Heching Claimants' Crossclaims and Counterclaims — ECF No. 399**

61. The *Swinney* Claimants respond only to the "Crossclaims and Counterclaims" section of ECF No. 399 (paragraphs 1 through 19, the jury demand, and the prayer for relief). The WMJH Claimants' answers to the Verified Complaint and affirmative defenses are directed to the government and require no response from the *Swinney* Claimants. To the extent a response is required, those allegations are denied as to the *Swinney* Claimants.

62. Paragraph 1 requires no response. As to paragraphs 2 and 3, the *Swinney* Claimants admit that the Court has jurisdiction over the underlying forfeiture action under 28 U.S.C. §§ 1345 and 1355 and that venue lies in this District for that action. The remaining allegations are legal conclusions requiring no response.

63. As to paragraphs 4 through 12, the *Swinney* Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Weinstock, Mustard, Johnson, and Heching Claimants' identities, judgments, the amounts and nature of those judgments, and whether they remain unsatisfied, and therefore deny them.

64. As to paragraph 13, TRIA § 201(a) speaks for itself. As to paragraph 14, the *Swinney* Claimants admit that Iran is a terrorist party within the meaning of TRIA § 201.

65. As to paragraph 15, the *Swinney* Claimants admit that they assert an interest in the Defendant Cryptocurrency and are therefore among the parties described, deny that the WMJH Claimants are entitled to relief against them, and lack knowledge or information sufficient to form a belief as to the allegations regarding other parties.

66. As to paragraph 16, the *Swinney* Claimants respond as stated above to paragraph 9 of ECF No. 216.

67. As to paragraph 17, the *Swinney* Claimants admit that TRIA § 201(a) addresses execution by holders of terrorism judgments against blocked assets of terrorist parties, and deny that it establishes priority among holders of terrorism judgments. The *Swinney* Claimants hold terrorism judgments and are not "non-TRIA claimants." As to paragraph 18, the *Swinney* Claimants deny the allegations.

68. As to paragraph 19, which purports to adopt "all applicable crossclaims and counterclaims pleaded by other claimants," the *Swinney* Claimants deny that the paragraph identifies any claim with the specificity Fed. R. Civ. P. 8 and 10 require, deny that it states a

claim against the *Swinney* Claimants, and respond to the other claimants' crossclaims as stated elsewhere in this Answer.

69. The jury demand states a legal conclusion requiring no response. To the extent a response is required, the *Swinney* Claimants deny that the WMJH Claimants have established a right to a jury trial on their claims for turnover or declaratory relief.

70. As to the prayer for relief (paragraphs a through f), the *Swinney* Claimants deny that the WMJH Claimants are entitled to the relief requested in paragraphs a, b, c, e, and f. In particular, the *Swinney* Claimants deny that the Defendant Cryptocurrency should be turned over to the WMJH Claimants (paragraph b), and deny that the WMJH Claimants have established an entitlement to attorneys' fees or costs (paragraph e). As to paragraph d, 34 U.S.C. § 20144(e)(2)(A) speaks for itself, and the *Swinney* Claimants deny that the WMJH Claimants are entitled to relief that would prejudice the *Swinney* Claimants' rights.

## III. AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that the law places on the Crossclaimants, the *Swinney* Claimants assert the following defenses to the Competing Crossclaims.

### First Defense — Service, Party Status, and Timeliness

71. The Competing Crossclaims in ECF Nos. 216, 236, 350, 399, 406, 414, and 501 are directed generally to "all other claimants" or "all other parties" who appear in this action and do not name the *Swinney* Claimants. See ECF No. 216 (introductory paragraph and ¶ 4); ECF No. 236 (cross-claims) ¶ 4; ECF No. 350 ¶ 4; ECF No. 399 ¶ 15; ECF Nos. 406, 414, and 501 ¶ 4. To the extent any of them was not directed to or properly served on the *Swinney* Claimants, the *Swinney* Claimants assert and preserve that objection, including under Fed. R. Civ. P. 12(b)(5), and answer subject to and without waiving it. As to ECF Nos. 216 and 236, which were filed before the *Swinney* Claimants' answer to the Verified Complaint (ECF No. 242), the *Swinney*

Claimants further preserve in the alternative, and without conceding that ECF No. 242 was premature or ineffective, any objection that they were not parties against whom crossclaims could be asserted under Fed. R. Civ. P. 13(g) when those pleadings were filed. The *Swinney* Claimants moved for leave to file their claim on February 10, 2026 (ECF No. 211), the Court granted that motion on September 30, 2026, and the *Swinney* Claimants filed their Verified Claim pursuant to that Order on October 19, 2026 (ECF No. 594).

72. The Court held each of the Competing Crossclaims in abeyance pending the Crossclaimants' own motions for leave to file verified claims or for extensions of time to do so. See Orders of March 5 (ECF No. 216), March 10 (ECF No. 236), April 8 (ECF No. 350), April 13 (ECF No. 399), April 21 (ECF No. 414), May 5 (ECF No. 406), and September 4, 2026 (ECF No. 501). Those Orders set no date for responses. The Court's September 30, 2026 Order lifted the abeyance without setting a response date, and no later order has done so. This Answer is filed within twenty-one days of September 30, 2026.

73. By letter motion of today's date, the Swinney Claimants have asked, to the extent required, that the Court deem this Part II timely or extend the time to respond under Fed. R. Civ. P. 6(b)(1). No priority determination is scheduled, and the Court's October 20, 2026 Order sets the motion-to-strike briefing through January 15, 2027.

**Second Defense — Failure to Establish Superior Priority**

74. The Competing Crossclaims fail to state a claim that the Crossclaimants hold interests superior to those of the *Swinney* Claimants. Holding a terrorism judgment, filing a Verified Claim, or invoking TRIA does not by itself give one terrorism judgment creditor priority over another.

**Third Defense — Priority Is Not Ripe**

75. Crossclaimants in ECF Nos. 216, 236, 350, 406, 414, and 501 each plead, at paragraph 5, that they do not seek adjudication of priority until the universe of legally permissible claimants is established. That universe has not been established. The government's motion to strike the claims of the claimants whose late-claim motions were granted on September 30, 2026 has not yet been served or decided, and the Court's October 20, 2026 Order sets that briefing through January 15, 2027. Any determination of priority is premature.

**Fourth Defense — The *Swinney* Claimants' Rights Under TRIA**

76. The *Swinney* Claimants assert their statutory rights under TRIA § 201(a), including the right to seek attachment and execution upon qualifying blocked assets of Iran or its agencies or instrumentalities to satisfy qualifying compensatory judgments. TRIA § 201(a) does not itself establish a priority among qualifying terrorism judgment creditors.

**Fifth Defense — Execution and Attachment Requirements**

77. To the extent a Crossclaimant relies on CPLR 5234, CPLR Article 62, FSIA § 1610(c), or any other enforcement requirement, it must establish that the requirement was satisfied as to the Defendant Cryptocurrency, and the legal effect of any steps it took, before obtaining the priority it requests. Several Crossclaimants plead those counts only in the alternative and only "following forfeiture or disposition of the res."

**Sixth Defense — Equitable Distribution**

78. To the extent the Crossclaimants invoke CPLR 5240 or an "equitable distribution among all Iran terror victims," to the extent the Court considers any such distribution, it must include the *Swinney* Claimants and should not subordinate their interests.

**Seventh Defense — No Established Entitlement to Release, Turnover, Fees, or a Jury**

79. The Defendant Cryptocurrency remains subject to the Court's jurisdiction and to the government's pending forfeiture claims, which have not been adjudicated. No Crossclaimant has established an entitlement to release, return, or turnover of the Defendant Cryptocurrency, to attorneys' fees or costs, or to a jury trial on the declaratory and priority claims asserted.

**Eighth Defense — Alternative Statutory Distribution**

80. To the extent the Defendant Cryptocurrency is ultimately forfeited rather than made available for execution under TRIA, any applicable statutory requirements concerning deposits into the United States Victims of State Sponsored Terrorism Fund must be considered and followed. See 34 U.S.C. § 20144(e)(2)(A)(ii).

**Ninth Defense — Reservation of Defenses and Claims**

81. The *Swinney* Claimants preserve all defenses available under applicable law and seek leave to amend or supplement their defenses as warranted by information obtained in these proceedings, subject to the Federal Rules of Civil Procedure and orders of this Court. The *Swinney* Claimants also reserve all crossclaims, counterclaims, and requests for relief concerning the priority of interests in the Defendant Cryptocurrency, including rights arising under TRIA, 28 U.S.C. § 1610, and applicable federal and state law, to be asserted by amendment to this pleading or as otherwise permitted. Nothing in this Answer waives any such right.

**IV. PRAYER FOR RELIEF**

WHEREFORE, the *Swinney* Claimants respectfully request that this Court:

A. Deny the Competing Crossclaims to the extent they seek declarations of priority over the *Swinney* Claimants, release or turnover of the Defendant Cryptocurrency, attorneys' fees or costs, or a jury trial;

B. Declare that no Crossclaimant is entitled to priority over the *Swinney* Claimants absent a legally sufficient showing under the governing law;

C. Defer any determination of relative priority until the universe of legally permissible claimants has been established;

D. Preserve the Defendant Cryptocurrency, or provide other appropriate protective relief, pending adjudication of the claimants' competing rights, consistent with the Court's authority and applicable forfeiture procedures;

E. In the alternative, to the extent applicable, require that any forfeiture or subsequent disposition comply with the statutory requirements governing the United States Victims of State Sponsored Terrorism Fund, 34 U.S.C. § 20144(e)(2)(A)(ii);

F. Dismiss the Competing Crossclaims insofar as they seek relief inconsistent with the *Swinney* Claimants' statutory rights; and

G. Grant such other and further relief as the Court deems just and proper.

Dated: October 21, 2026

*/s/ Hillary M. Nappi*
Hillary M. Nappi (NY Bar 5204045)
AWK Survivor Advocate Attorneys PLLC
1133 Westchester Avenue, Suite N-224
White Plains, NY 10604
Email: hnappi@awk-saa.com
Telephone: (914) 468-4840

-and-

*/s/ Douglass A. Kreis*
Douglass A. Kreis (FL Bar 0129704)
(admitted pro hac vice in this action)
Aylstock, Witkin, Kreis & Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Email: dkreis@awkolaw.com
Telephone: (850) 202-1010

*Attorneys for the Swinney Claimants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2026, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will transmit notice of electronic filing to counsel of record registered to receive such notice. I further certify that on the same date a copy was served by first-class mail on the following pro se claimants, who have not consented to electronic notice: Connie Wilson, 8736 E 375 S, Lafayette, IN 47905; Ravi Anand, 33 W. Ontario Street, #17F, Chicago, IL 60654; and Corneliu Hristovschi, 5 Sewall Ave., Apt. C3, Clifton, NJ 07011. Fed. R. Civ. P. 5(b).

*/s/ Hillary M. Nappi*
Hillary M. Nappi (NY Bar 5204045)