**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,

Defendants.

1:25-cv-05745 (RPK) (CHK)

**CLAIMANTS TIGER MINES NEW YORK INC. AND HASSAN MIAH'S OPPOSITION TO THE MOTION TO STRIKE THE AMENDED CLAIM ON THE PLEADINGS FOR LACK OF STANDING [ECF NO. 512]**

**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Kiersten A. Fletcher
32 Old Slip
New York, NY 10005
(212) 701-3000

*Attorneys for Claimants Hassan Miah and Tiger Mines New York Inc.*

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND ..... 1

A. Mr. Miah Was Engaged to Help Unfreeze the Tether Wallets ..... 1

B. Tiger Mines Filed Suit Against Tether Holdings ..... 2

C. Mr. Miah and Chen Zhi Entered an Agreement to Settle the Tether Litigation ..... 2

D. Mr. Miah and Chen Zhi Both Performed in Accordance with Their Agreement ..... 3

E. The Government Is Attempting to Forfeit Assets Belonging to Tiger Mines ..... 4

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

A. The September 2024 Agreement Is Valid and Enforceable ..... 5

B. Chen Zhi Assigned the Assets in the Lubian Wallets to Tiger Mines ..... 6

C. Claimants Have Plausibly Alleged a Colorable Interest in the *Defendants In Rem* ..... 8

V. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bellis* v. *Kelly*,
797 F. Supp. 3d 431 (D.N.J. 2025) ....................7

*In re Celsius Network LLC*,
676 B.R. 647 (Bankr. S.D.N.Y. 2025) ....................7

*CoraMed USA, LLC* v. *Alexion Pharms., Inc.*,
695 F. Supp. 3d 251 (E.D.N.Y. 2023) ....................6

*Hotel 71 Mezz Lender LLC* v. *Falor*,
14 N.Y.3d 303 (2010) ....................7

*Kowalchuk* v. *Stroup*,
61 A.D.3d 118 (App. Div. 2009) ....................5

*Landscape Details, Inc.* v. *Bernard*,
245 A.D.3d 924 (App. Div. 2026) ....................6

*Mark J. Elkowitz, M.D., P.C.* v. *UnitedHealthcare of New York, Inc.*,
2021 WL 9594380 (E.D.N.Y. Mar. 31, 2021) ....................10

*Martha Graham Sch. & Dance Found., Inc.* v. *Martha Graham Ctr. of Contemp. Dance, Inc.*,
43 F. App'x 408 (2d Cir. 2002) ....................7

*Miller* v. *Wells Fargo Bank Int'l Corp.*,
540 F.2d 548 (2d Cir. 1976) ....................7

*Shin* v. *ICON Found.*,
553 F. Supp. 3d 724 (N.D. Cal. 2021) ....................7

*Torres* v. *$36,256.80 U.S. Currency*,
25 F.3d 1154 (2d Cir. 1994) ....................8

*United States* v. *BCCI Holdings (Luxembourg), S.A.*,
841 F. Supp. 1 (D.D.C. 1993) ....................9–10

*United States* v. *Ross*,
161 F.4th 100 (2d Cir. 2025) ....................5

*United States* v. *White*,
675 F.3d 1073 (8th Cir. 2012) ....................9–10

*Wu* v. *Uber Techs., Inc.*,
43 N.Y.3d 288 (2024) ....................................................6

## I. PRELIMINARY STATEMENT[1]

The Government's motion to strike (ECF No. 512) ("Motion to Strike" or "MTS") Claimants Tiger Mines New York Inc. ("Tiger Mines") and Hassan Miah's (collectively, "Claimants") Amended Verified Claim fails as a matter of law. In September 2024, Mr. Miah and Chen Zhi entered into a binding oral agreement, and in partial consideration, Chen Zhi assigned certain Bitcoin, which Mr. Miah has since identified as the *Defendants In Rem*, to Tiger Mines. Tiger Mines has held that ownership interest ever since. The Government's motion attempts to recharacterize this assignment as a mere unfulfilled promise, reducing Claimants to unsecured creditors who hold a contingent or future interest in the assets. But that recharacterization contradicts Claimants' well-pleaded allegations, which must be accepted as true at the pleadings stage, and asks the Court to resolve disputed questions of fact against Claimants—precisely what the Rule 12 standard forbids. Because Claimants have alleged "a facially colorable interest in the property at issue[,]" the Government's Motion to Strike should be denied. ECF No. 506 at 7.

## II. FACTUAL BACKGROUND

### A. Mr. Miah Was Engaged to Help Unfreeze the Tether Wallets

In or around November 2023, Mr. Miah was approached by members of Chen Zhi's business team regarding whether Mr. Miah might assist with unfreezing two of Chen Zhi's cryptocurrency wallets (the "Tether Wallets"), holding a combined value of approximately $160 million, that had allegedly been improperly frozen by Tether Holdings Limited ("Tether Holdings") at the request of the Chinese police. (Miah Decl. I ¶¶ 8–9). Mr. Miah ultimately agreed to help Chen Zhi, but recognized that he would need to take an ownership interest in the Tether

[1] Unless stated otherwise, emphasis is added and internal citations and quotations have been omitted. As used herein, "Miah Decl. I" refers to Mr. Miah's August 10, 2026 declaration (ECF No. 499-1) and "Miah Decl. II" refers to Mr. Miah's October 21, 2026 declaration (filed substantially contemporaneously herewith).

Wallets in order to engage directly with Tether Holdings. (*Id.* ¶ 10). Accordingly, in April 2024, Chen Zhi assigned the Tether Wallets to Tiger Mines, an entity wholly owned by Mr. Miah, for $500,000, with the expectation that Chen Zhi would reacquire the funds in the Tether Wallets if they were unfrozen. (*Id.* ¶¶ 17, 37). As consideration, Mr. Miah (i) was to be paid a "success fee" when the Tether Wallets were unfrozen (*id.* ¶ 10), and (ii) would be permitted to keep for himself any damages awarded to Tiger Mines in a potential litigation with Tether Holdings (*id.* ¶ 17).

**B. Tiger Mines Filed Suit Against Tether Holdings**

Throughout the spring and summer of 2024, Tiger Mines engaged with Tether Holdings regarding unfreezing the Tether Wallets. (*Id.* ¶¶ 19–20). Those negotiations proved unsuccessful. (*See id.* ¶ 22). On August 2, 2024, Tiger Mines filed suit against Tether Holdings (the "Tether Litigation") in the Southern District of New York, seeking damages and equitable relief. (*Id.*).

Approximately one month later, on or around September 6, 2024, Tether Holdings approached Tiger Mines about settling the litigation. (*Id.* ¶ 23). Tether Holdings provided an initial draft settlement agreement whereby the Tether Wallets would be unfrozen, but Mr. Miah would be required to personally indemnify Tether Holdings against any future liability in connection with the Tether Wallets. (*See id.*). Mr. Miah responded with a revised draft of the settlement agreement that removed the personal indemnification provision and added a provision entitling Tiger Mines to damages. (*Id.*). By Mr. Miah's estimate, the value of the damages claim, which included lost staking fees and related lost profits, totaled at least $50 million. (*Id.* ¶ 27).

**C. Mr. Miah and Chen Zhi Entered an Agreement to Settle the Tether Litigation**

On or around September 18, 2024, Mr. Miah traveled to London to meet with Chen Zhi to discuss potentially settling the Tether Litigation (the "September 2024 Meeting"). (*Id.* ¶ 28). At this meeting, Chen Zhi requested that Mr. Miah accept Tether Holdings' original settlement

terms—*i.e.*, Mr. Miah would personally indemnify Tether Holdings and Tiger Mines would abandon its damages claim. (*Id.* ¶ 29). In order to induce Mr. Miah to settle the litigation on those terms, Chen Zhi offered to (i) assign his interest in the Bitcoin previously held in several wallets, which Chen Zhi referred to collectively as the "Lubian wallets," to Tiger Mines, (ii) pay Mr. Miah the agreed-upon success fee, and (iii) indemnify Mr. Miah against any personal exposure resulting from the litigation and settlement. (*Id.*). Mr. Miah accepted Chen Zhi's offer, and the parties entered into a binding oral agreement (the "September 2024 Agreement"). (*Id.* ¶¶ 30, 33).

Chen Zhi informed Mr. Miah that "a member of his team would need to assemble" information regarding the individual Lubian wallets, and that information would be shared with Mr. Miah in due course. (*Id.* ¶ 32). Chen Zhi represented that the Lubian wallets "contained 'billions' of dollars' worth of Bitcoin that belonged to him, but that they had been hacked and were for the time being inaccessible to him." (*Id.* ¶ 30). Mr. Miah understood that "notwithstanding the 'hacked' status" of the Lubian wallets, "Chen Zhi owned the assets" therein, and the inability to access the assets hacked from the wallets was a "temporary condition" that Mr. Miah—based on his experience working with digital assets—may be able to remedy over time. (*Id.* ¶ 33). As such, Mr. Miah "viewed the Lubian wallets as essentially distressed assets that might prove worthless, but might also be worth billions of dollars if [he] succeeded in recovering the assets Chen Zhi previously stored in them." (*Id.* ¶ 30).

**D. Mr. Miah and Chen Zhi Both Performed in Accordance with Their Agreement**

Mr. Miah performed under the September 2024 Agreement. On or around November 6, 2024, Tiger Mines and Tether Holdings settled the Tether Litigation. (*Id.* ¶ 36). Shortly thereafter, the Tether Wallets were unfrozen and Chen Zhi took possession of those funds. (*Id.* ¶ 37).

Chen Zhi likewise performed his obligations. First, upon execution of the agreement, Chen Zhi assigned his ownership interest in the Bitcoin held in the Lubian wallets to Tiger Mines. (*Id.* ¶¶ 32–33). The assignment was binding and immediate: "Chen Zhi never disclaimed or retracted his assignment of the assets previously held in the Lubian wallets to Tiger Mines," and his associates—including William Wei and Yun Zhou—separately "acknowledged . . . Tiger Mines' ownership of the Bitcoin." (*Id.* ¶¶ 40, 44–45). Second, on November 21, 2024, Chen Zhi paid Mr. Miah the success fee, totaling $2.8 million. (Miah Decl. II ¶ 4). Third, Chen Zhi agreed to indemnify Mr. Miah against any personal exposure to Tether Holdings. (*Id.* ¶ 5).

However, Chen Zhi failed to subsequently deliver to Mr. Miah the relevant identifying information for the Lubian wallets. (Miah Decl. I ¶¶ 32–33, 38, 41). Because the Lubian wallets had been hacked, neither Chen Zhi nor Mr. Miah could access or control the Bitcoin therein at that time; rather, Mr. Miah needed this information to begin his recovery efforts. (*Id.* ¶ 38). When Mr. Miah inquired about this further, Chen Zhi again represented that a member of his team would collect and share the information, but no such information was provided. (*Id.* ¶¶ 38, 41).

**E. The Government Is Attempting to Forfeit Assets Belonging to Tiger Mines**

On October 14, 2025, the United States filed the Verified Complaint in this action seeking the *in rem* forfeiture of approximately 127,271 Bitcoin. (ECF No. 1). Mr. Miah has come to the understanding "that the assets previously stored in the Lubian wallets Chen Zhi conveyed to Tiger Mines are the same assets that the Government seeks to forfeit as the *Defendants In Rem*, and the description Chen Zhi and his representatives gave [to Mr. Miah] is consistent with how the *Defendants In Rem* are described in this matter." (Miah Decl. I ¶ 32; *see also id.* ¶ 45). This understanding was further confirmed to Mr. Miah by Chen Zhi's associates. (*Id.* ¶¶ 44–45). Tiger Mines thus asserts a direct and legally cognizable ownership interest in the *Defendants In Rem*.

## III. LEGAL STANDARD

"[A]n ownership interest in the specific property sought to be forfeited, including . . . [a] valid assignment of an ownership interest[,]" is sufficient to confer standing to contest forfeiture. 18 U.S.C. § 983(d)(6)(A). And "[a] claimant in a civil forfeiture action 'need show only a facially colorable interest in the property at issue' and 'need not prove the full merits of [their] underlying claim' to have Article III standing." ECF No. 506 at 7; *see also United States* v. *Ross*, 161 F.4th 100, 110 (2d Cir. 2025) ("The requirement to demonstrate Article III standing . . . is hardly onerous: a person need show only a facially colorable interest in the property at issue; whether he ultimately proves the existence of that interest is a question for a later stage in the proceedings.").

A motion to strike a claim "presented as a motion for judgment on the pleadings" under Supp. R. G(8)(c)(ii) is governed by the same "standard of review for motions made under Rule 12(b)." ECF No. 506 at 6. "Under that standard, the Court must 'accept[] all factual allegations in the [claim] as true and draw[] all reasonable inferences in favor of the [claimant].'" *Id.*

## IV. ARGUMENT

### A. The September 2024 Agreement Is Valid and Enforceable

During the September 2024 Meeting, Mr. Miah and Chen Zhi entered into a binding oral agreement, whereby Tiger Mines acquired a present ownership interest in the *Defendants In Rem*. The elements of an enforceable oral agreement include: "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk* v. *Stroup*, 61 A.D.3d 118, 121 (App. Div. 2009). Each is readily satisfied here.

First, Chen Zhi made an offer to induce Mr. Miah to settle the Tether Litigation. (Miah Decl. I ¶ 29). Second, Mr. Miah "accepted Chen Zhi's offer." (*Id.* ¶ 30). Third, both sides gave valuable consideration—Mr. Miah agreed to indemnify Tether Holdings and relinquish a valuable

damages claim, and Chen Zhi agreed to assign to Tiger Mines the assets in the Lubian wallets, pay Mr. Miah the success fee, and indemnify Mr. Miah against Tether Holdings. (*Id.* ¶¶ 29–30). Fourth, the parties assented to all material terms, as reflected in Mr. Miah's detailed account of the in-person negotiations at the September 2024 Meeting.[2] (*Id.* ¶¶ 28–32). *See Wu* v. *Uber Techs., Inc.*, 43 N.Y.3d 288, 299 (2024) ("[A] binding contract requires an objective manifestation of mutual assent . . . to the essential terms comprising the agreement."). Fifth, both parties manifested an intent to be bound by performing their respective obligations under the contract. *See CoraMed USA, LLC* v. *Alexion Pharms., Inc.*, 695 F. Supp. 3d 251, 263 (E.D.N.Y. 2023) (performance "is an unmistakable signal" that the parties "understand[] a contract to be in effect"). On the one hand, Mr. Miah settled the litigation with Tether Holdings as agreed (Miah Decl. I ¶ 36), and on the other hand, Chen Zhi assigned the assets to Tiger Mines (*id.* ¶¶ 32–33), paid Mr. Miah the success fee (Miah Decl. II ¶ 4), and agreed to indemnify Mr. Miah against Tether Holdings (*id.* ¶ 5).

Lastly, the September 2024 Agreement does not run afoul of the statute of frauds, because it is a contract for the provision of services that may be fully performed within one year. *See Landscape Details, Inc.* v. *Bernard*, 245 A.D.3d 924, 926 (App. Div. 2026) (citing N.Y. Gen. Oblig. Law § 5-701(a)(1)). Mr. Miah settled the litigation with Tether Holdings—thereby fully performing the primary purpose of the contract—within two months. (Miah Decl. I ¶ 36).

**B. Chen Zhi Assigned the Assets in the Lubian Wallets to Tiger Mines**

As partial consideration for the September 2024 Agreement, and immediately upon its execution, Chen Zhi assigned his full ownership interest in the Bitcoin to Tiger Mines, which "has

---

[2] Any challenge regarding whether there was a meeting of the minds with respect to the "Lubian wallets"—*i.e.*, that it is unclear what each of the parties meant by this term—is belied by Mr. Miah's allegations that (i) he understood the Lubian wallets to refer to Chen Zhi's Bitcoin holdings (Miah Decl. I ¶ 29); (ii) Chen Zhi confirmed to Mr. Miah that the Lubian wallets "contained 'billions' of dollars' worth of Bitcoin that belonged to him" (*id.* ¶ 30); and (iii) "Chen Zhi's representatives confirmed [Mr. Miah's] understanding that Chen Zhi used the term 'Lubian wallets' in [the] agreement to describe a broader set of Bitcoin holdings" (*id.* ¶ 32).

held its ownership interest in the *Defendants In Rem* continuously since" the assignment. (*Id.* ¶ 32). Under New York law, an assignment "may be oral" and requires only "a perfected transaction between the assignor and assignee, intended . . . to vest in the assignee a present right in the things assigned." *Martha Graham Sch. & Dance Found., Inc.* v. *Martha Graham Ctr. of Contemp. Dance, Inc.*, 43 F. App'x 408, 413 (2d Cir. 2002). Mr. Miah's declaration pleads exactly such a "binding conveyance of [Chen Zhi's] full ownership interest," which "Chen Zhi never disclaimed . . . thereafter." (Miah Decl. I ¶ 33).

That the assignment did not convey mechanical possession of the Bitcoin is immaterial: "[d]elivery of the property [is not] fundamental to an assignment." *Miller* v. *Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir. 1976). And more to the point, the Lubian wallets had been hacked, and thus neither party could access or control the Bitcoin previously held therein. Nevertheless, Chen Zhi still could—and, in fact, did—assign his legal ownership interest in the Bitcoin itself, which granted Tiger Mines the right to try and recover it. *See Hotel 71 Mezz Lender LLC* v. *Falor*, 14 N.Y.3d 303, 314 (2010) ("ownership/membership interests" are "intangible property" and are "clearly assignable and transferable"); *see also Bellis* v. *Kelly*, 797 F. Supp. 3d 431, 437 (D.N.J. 2025) (plaintiff had ownership interest in cryptocurrency stolen from his hacked wallet); *In re Celsius Network LLC*, 676 B.R. 647, 673 (Bankr. S.D.N.Y. 2025) (plaintiff had ownership interest in cryptocurrency held in a wallet to which plaintiff "did not have the private keys"); *Shin* v. *ICON Found.*, 553 F. Supp. 3d 724, 733 (N.D. Cal. 2021) (plaintiff "plausibly allege[d] a possessory interest" in cryptocurrency even after platform had "restricted his access"). This assignment vested a present interest in the Bitcoin immediately and irrevocably when made, and Chen Zhi could not revoke, reclaim, or otherwise control that interest in any way.

**C. Claimants Have Plausibly Alleged a Colorable Interest in the *Defendants In Rem***

As set forth above, the September 2024 assignment vested in Tiger Mines a present ownership interest in the *Defendants In Rem*, and Claimants' allegations, taken as true, suffice to establish a colorable interest. Claimants have also identified the specific *res*: Mr. Miah attests that the assets Chen Zhi conveyed to Tiger Mines "are the same assets that the Government seeks to forfeit as the *Defendants In Rem*." (Miah Decl. I ¶ 32). That interest vested upon assignment: title passed as partial consideration for the September 2024 Agreement, with no further act by either party required to complete the conveyance. And the assignment conveyed a present ownership interest, not a future expectancy or contingent right. The only remaining uncertainty was the assets' recoverability and value—not their ownership. Claimants have thus made a sufficient showing to defeat the Government's Motion to Strike, because "an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." *Torres* v. *$36,256.80 U.S. Currency*, 25 F.3d 1154, 1158 (2d Cir. 1994). The Government's arguments in support of the Motion to Strike are without merit.

First, the Government claims the assignment was not consummated at the September 2024 Meeting, but was contingent upon Mr. Miah's later settlement with Tether Holdings. (MTS at 7). But as shown above, the assignment turned on Mr. Miah's ***agreement*** to settle—given at the meeting—and was therefore complete that same day, not upon the settlement's later execution. (*See* Miah Decl. I ¶ 29 ("Chen Zhi stated that ***if [Mr. Miah] agreed to sign*** the Tether Holdings settlement . . . he would . . . assign to Tiger Mines the assets.")).

The Government attempts to disprove this by arguing that "if Chen had actually wished to convey ownership of the 'Lubian wallets' to Miah at the September 18, 202[4] meeting, it would have been easy for Chen to give Miah the private keys to those wallets." (MTS at 7). Yet again,

this ignores the facts alleged. When Mr. Miah asked about the private keys during the September 2024 Meeting, Chen Zhi "explained that a member of his team would need to assemble [them]," meaning the parties never contemplated that delivery would be immediate. (Miah Decl. I ¶ 32).

Even if the Government were correct, and the assignment awaited Mr. Miah's performance, Claimants still prevail: Mr. Miah fully performed by November 6, 2024, when Tiger Mines settled the Tether Litigation—nearly a year before the Government filed its Verified Complaint on October 14, 2025. (*Id.* ¶ 36; ECF No. 1).

Second, the Government attempts to rewrite the parties' bargain to add a condition precedent—*i.e.*, the assignment would not be consummated until Chen Zhi provided the private keys. (MTS at 7–8). In support of this, the Government quotes Mr. Miah's declaration out of context, asserting that Claimants "viewed transfer of the private keys . . . as a key element of transferring ownership." (*Id.* at 7). But this is plainly contradicted by Mr. Miah's understanding of the assignment: "[Mr. Miah] accepted the assignment ***notwithstanding*** that [he] did not at that time have cryptographic control" and he "understood the assignment to convey Chen Zhi's full legal and beneficial ownership interest in the wallets and the Bitcoin." (Miah Decl. I ¶ 33). Indeed, the Lubian wallets had been hacked and, therefore, the private keys did not provide either party with access to or control over the Bitcoin at that time. The private keys thus bore only on Mr. Miah's eventual recovery efforts, and in the event the Bitcoin were recovered, Tiger Mines, as the legal owner, would have the exclusive right of control. Accordingly, Chen Zhi's failure to provide the private keys, at most, breached a nonmaterial implied term of the September 2024 Agreement; it did not defeat the assignment of his ownership interest. (*See id.* ¶¶ 32–33, 38).

Lastly, the authorities the Government relies on are inapposite. In *White* and *BCCI Holdings*, the claimants' only interests arose from a contract or breach-of-contract claim against

another party who owned the *res*, making the claimant a mere unsecured creditor with no interest in the specific property subject to forfeiture. (*See* MTS at 8). For example, *White* confirms, rather than undermines, Claimants' position: the defendant "did not promise to transfer" the asset; the claimant sought only a sum "tied to the stock's value but . . . not actually in the stock or the proceeds thereof," and therefore had no interest in the specific forfeited property. *See United States* v. *White*, 675 F.3d 1073, 1080–81 (8th Cir. 2012). Here, Chen Zhi assigned his ownership of the Bitcoin itself, giving Tiger Mines precisely the interest in the specific *res* that the *White* claimant lacked. The Government's remaining authorities likewise involve an interest that had not yet vested. (*See, e.g.*, MTS at 6–7 (citing *Doraville*, *Church & Dwight*, and *Batato*)). Claimants are differently situated in kind, not degree: the September 2024 assignment vested in Tiger Mines a present ownership interest in the *Defendants In Rem* themselves—an interest that vested upon assignment and was not contingent on any future event—and Claimants have held that interest continuously ever since.

In all events, the Government's fact-bound challenges to the assignment cannot be resolved on the pleadings where the Court must accept Claimants' well-pleaded allegations as true. *See Mark J. Elkowitz, M.D., P.C.* v. *UnitedHealthcare of New York, Inc.*, 2021 WL 9594380, at *5 (E.D.N.Y. Mar. 31, 2021) ("The presence of disputed questions of fact regarding the existence, substance, and validity of any assignments Plaintiff received . . . precludes granting dismissal . . . and requires targeted discovery.").

## V. <u>CONCLUSION</u>

For the reasons set forth herein, the Government's Motion to Strike should be denied.

Date: October 21, 2026
New York, New York

_/s/ Kiersten A. Fletcher_
Samson A. Enzer
Kiersten A. Fletcher
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: 212-701-3125
SEnzer@cahill.com
KFletcher@cahill.com

*Attorneys for Claimants Hassan Miah and Tiger Mines New York Inc.*