UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendant, In Rem. | Civil Action No. 1:25-cv-5745 (RPK) (CHK) |

**NOTICE OF CORRECTED VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM**

This Notice of Corrected Verified Claim supplements and relates back to the Verified Claim and Statement of Interest filed by the Ambush Claimants on February 6, 2026 (ECF Nos. 188-1 through 188-3), for which the Court granted leave to file out of time by its Order of September 30, 2026. It restates the Verified Claim with its totals conformed to Exhibit 1 and the regulation cited in paragraph 13 corrected, substitutes Exhibit 1 for Attachment A as the list of the Ambush Claimants whom undersigned counsel represents, and adds Part VI below.

The Ambush Claimants are 428 judgment creditors of the Islamic Republic of Iran ("Iran") who hold unsatisfied judgments totaling $1,574,238,000 in compensatory damages, plus post-judgment interest, arising from acts of state-sponsored terrorism. The Ambush Claimants include survivors and family members of victims of the June 25, 1996 Khobar Towers bombing in Saudi Arabia, the October 12, 2000 attack on the USS Cole in Yemen, and the January 17,

2007 ambush in Baghdad, Iraq that killed American Andrea Parhamovich. The names, case citations, and judgment amounts for each claimant are set forth in Exhibit 1 hereto.

The Ambush Claimants just recently learned about this forfeiture action, and the allegations in Fritz v. Iran & China Inv. Dev. Grp., No. 1:25-cv-07093 (E.D.N.Y.) ("Fritz Action"), and the claims of the Fritz plaintiffs recently set forth in this action, ECF No. 29, that the Defendant Cryptocurrency at issue in this forfeiture action is property of the Iran and China Investment Development Group ("Iran-China Group"). The Ambush Claimants promptly sought leave to file this verified claim upon learning of this information and this proceeding.

## I. The Ambush Claimants Hold Approximately $1.57 Billion in Compensatory Damages Judgments Against Iran

1. The underlying judgments arise from the following actions in the United States District Court for the District of Columbia: Flanagan v. Islamic Republic of Iran, No. 10-cv-1643 (5 claimants; $18,750,000 compensatory); Parhamovich v. Islamic Republic of Iran, No. 17-cv-00061 (6 claimants; $23,738,000 compensatory); Schooley v. Islamic Republic of Iran, No. 17-cv-01376 (213 claimants; $866,000,000 compensatory); Ackley v. Islamic Republic of Iran, No. 20-cv-00621 (157 claimants; $533,750,000 compensatory); and Breezee v. Islamic Republic of Iran, No. 23-cv-03392 (47 claimants; $132,000,000 compensatory).[1]

2. Each of these judgments was entered against Iran under 28 U.S.C. § 1605A based on claims arising from acts of state-sponsored terrorism. Each judgment qualifies under section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322, codified at 28 U.S.C. § 1610 note.

[1] Judgment amounts shown reflect the original compensatory damages awards as entered by the Court. The Ambush Claimants have received partial distributions through the U.S. Victims of State Sponsored Terrorism Fund pursuant to 34 U.S.C. § 20144, but their judgments remain substantially unsatisfied.

## II. The Ambush Claimants Are Entitled to Enforce Their Iran Judgments

3. The judgments in Flanagan, Parhamovich, Schooley, and Ackley have been served on Iran through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4). Service of the Breezee judgment is currently being effectuated through the U.S. Department of State.

4. To date, Iran has not paid any portion of any of the Ambush Claimants' judgments. The Ambush Claimants have received partial distributions through the United States Victims of State Sponsored Terrorism Fund, but their judgments remain substantially unsatisfied. These judgments continue to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

## III. The U.S. Government Commenced This Forfeiture Action Against the Defendant Cryptocurrency Without Disclosing Its Connections to Iran

5. On October 14, 2025, the U.S. government initiated the instant civil forfeiture action against approximately 127,271 Bitcoin. See ECF 1 ("Forfeiture Compl."). The Government alleges the Defendant Cryptocurrency is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) (wire fraud proceeds) and 18 U.S.C. § 981(a)(1)(A) (money laundering). See Forfeiture Compl. ¶ 2A.

6. The Government describes "Lubian" as "a Chinese bitcoin mining operation that maintained bitcoin mining facilities across Asia, including in China and Iran." Id. ¶ 16(u). However, the Government did not include information that put the Ambush Claimants on notice that the bitcoin mining operation involved conduct attributable to the Iranian Government, or otherwise that the Ambush Claimants had a basis to claim any of the Defendant Cryptocurrency.

## IV. The Ambush Claimants Recently Learned of the Relationship Between the Defendant Cryptocurrency and the Government of Iran

7. On December 26, 2025, other victims of Iran's state-sponsored terrorism commenced a separate action alleging that LuBian was the cryptocurrency mining pool for the Iran-China

Group, an Iranian joint-stock company that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist Iran's longstanding efforts to evade U.S. sanctions. See Fritz v. Iran and China Investment Development Group d/b/a Lubian.com, No. 1:25-cv-07093 (E.D.N.Y.), Complaint for Execution and Turnover, ECF No. 1.

8. Counsel for the Ambush Claimants was not aware that the defendant assets herein might be property of an agency or instrumentality of Iran until February 3, 2026. Upon learning of the potential connection, counsel promptly prepared this verified claim on behalf of the Ambush Claimants.

**V. Under TRIA, the Ambush Claimants Have a Senior Interest in the Defendant Cryptocurrency**

9. At the claim stage of a civil forfeiture proceeding, a claimant is not required to prove the merits of its interest in the property. Rather, the claimant need only demonstrate a "facially colorable interest" sufficient to establish standing. United States v. Ross, 161 F.4th 100, 109 (2d Cir. 2025). Whether that interest is ultimately proven "is a question for a later stage in the proceedings." Id. The Ambush Claimants readily satisfy this threshold.

10. Congress enacted TRIA to ensure that American victims of state-sponsored terrorism could collect on their judgments against foreign states that refuse to pay. To that end, TRIA provides that "[n]otwithstanding any other provision of law," holders of terrorism-related judgments may attach and execute against the "blocked assets" of a "terrorist party," including the blocked assets of "any agency or instrumentality of that terrorist party," in satisfaction of compensatory damages. Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 note.

11. The Supreme Court has recognized that TRIA's broad "notwithstanding" clause serves to "enable" victims of terrorism "to execute on" the assets of terrorist states by preventing

other laws from "bar[ring] victims' efforts to enforce [their] judgments." Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi, 556 U.S. 366, 391-92 (2009) (Kennedy, J., concurring). The Second Circuit has confirmed that this language "mak[es] plain that the force of the [statute] extends everywhere" and "`supersede[s] all other laws.'" Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 49 (2d Cir. 2010). Where TRIA's notwithstanding clause conflicts with other statutory schemes--including the civil forfeiture statutes--TRIA prevails. See Estate of Levin v. Wells Fargo Bank, N.A., 156 F.4th 632, 643 n.1 (D.C. Cir. 2025) (noting that because TRIA's attachment provision applies "[n]otwithstanding any other provision of law," TRIA prevails over conflicting provisions of the civil-forfeiture statute).

12. The Ambush Claimants satisfy each element required for TRIA execution rights. First, they hold compensatory damages judgments against Iran entered under 28 U.S.C. § 1605A, each arising from an act of state-sponsored terrorism. Second, Iran has been designated as a state sponsor of terrorism, making it a "terrorist party" within the meaning of TRIA § 201(d)(4). See Executive Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012). Third, as credibly alleged in the Fritz Action, the Iran-China Group is an agency or instrumentality of Iran. The Fritz plaintiffs have detailed how the Iran-China Group partnered with the Iranian government to operate a large-scale cryptocurrency mining facility in Rafsanjan, Iran, converting sanctioned Iranian energy resources into cryptocurrency to help Iran evade U.S. sanctions. Fritz Action, ECF 70 at 13-17; see Kirschenbaum v. 650 Fifth Ave. & Related Props., 830 F.3d 107, 135 (2d Cir. 2016) (setting forth agency-or-instrumentality analysis under the FSIA).

13. Fourth, the Defendant Cryptocurrency constitutes "blocked assets" subject to TRIA execution. Under TRIA, "blocked assets" include any asset seized or frozen pursuant to the

International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A). Executive Order No. 13599, issued February 5, 2012, blocks all property and interests in property of the Government of Iran, including any agency or instrumentality thereof. 77 Fed. Reg. 6659. The Treasury Department's Office of Foreign Assets Control has implemented this directive by regulation. See 31 C.F.R. §§ 560.211, 594.201(a)(5). Accordingly, if the Iran-China Group is an agency or instrumentality of Iran--as the Fritz plaintiffs have alleged--then all of its property is blocked by operation of law and subject to TRIA execution. See Levinson v. Kuwait Fin. House (Malaysia) Berhad, 44 F.4th 91, 98 n.6 (2d Cir. 2022); Kirschenbaum, 830 F.3d at 120.

**VI. Corrections to the List of Ambush Claimants**

14. Certain of the awards listed in Exhibit 1 were entered in favor of, or were held by, judgment holders who have since died. Each such award is listed in Exhibit 1 in the name of the estate, which succeeds to the decedent's right to enforce the judgment under the law of the decedent's domicile.

15. Six of the claimants listed in Attachment A (ECF No. 188-3), all judgment holders under the Schooley judgment, are no longer represented by undersigned counsel: Michael Rusnak (docketed as Elvis (fka Michael) Rusnak), Brenda Eilers, Mark Broda, Pamela Broda, Alycia Broda, and the Estate of Rosemary Ritt (together, the "Six Claimants"). By order entered October 23, 2026, as amended October 27, 2026, the Court granted undersigned counsel's motion at ECF No. 592 for leave to withdraw as their counsel. The Six Claimants are represented in this action by Robert A. Braun of Cohen Milstein Sellers & Toll PLLC (ECF Nos. 212, 559). Their awards total $26,750,000.

16. Paragraph 2 of the motion at ECF No. 592 stated that each of the Six Claimants terminated undersigned counsel's representation after the Verified Claim was filed. This was an

error, as Mr. Rusnak had ended undersigned counsel's representation before the Verified Claim was filed. Including him in Attachment A was also an error. Mr. Rusnak had, prior to undersigned counsel filing the Verified Claim, asserted his own claim through his current counsel (ECF No. 169; *see also* ECF No. 213), and that claim is unaffected by this Notice. The Supplemental Declaration of Joshua M. Ambush correcting paragraph 2 is attached as Exhibit 2.

17. Consistent with paragraph 9 of the motion at ECF No. 592, Exhibit 1 lists the 430 awards, totaling $1,574,238,000, held by the 428 individuals and estates whom undersigned counsel represents. This Notice does not ask the Court to strike or modify the Six Claimants' entries in ECF No. 188-3, and nothing in it supersedes, withdraws, or waives any claim asserted on their behalf in the Verified Claim.

Pursuant to 18 U.S.C. § 983(a) and Supplemental Rule G(5), the Ambush Claimants hereby assert a protective claim against such portion of the Defendant Cryptocurrency--as the property of an agency or instrumentality of Iran--as may be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran, plus post-judgment interest. Subject to the proof of the allegations in the Fritz Action, the Ambush Claimants' interest in the Defendant Cryptocurrency is superior to that of the United States and all other non-TRIA claimants in this forfeiture action.

The Ambush Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Cryptocurrency, including but not limited to any rights under TRIA and applicable state law.

Dated: November 9, 2026

Respectfully submitted,

/s/ Joshua M. Ambush
Joshua M. Ambush, Esq.
Law Offices of Joshua M. Ambush, LLC
106 Old Court Road, Suite 303
Baltimore, Maryland 21208
Phone: (410) 484-2070
Email: jambush@ambushlaw.com
Counsel for the Ambush Claimants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendant, In Rem. | : | Civil Action No. 1:25-cv-5745 (RPK) (CHK) |

-------------------------------------------------------------x

**VERIFICATION OF AMBUSH CLAIMANTS' CORRECTED CLAIM**

I, Joshua M. Ambush, Esq., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the principal of the Law Offices of Joshua M. Ambush, LLC, counsel of record for the Ambush Claimants in this action. I make this verification on behalf of the Ambush Claimants based on my personal knowledge and my review of the firm's case files and the official dockets of this Court and the United States District Court for the District of Columbia. This Notice of Corrected Verified Claim and this Verification supplement and relate back to the Verified Claim and associated documents submitted on February 6, 2026 (ECF Nos. 188-1 through 188-3).

2. I represent 428 individuals and estates (the "Ambush Claimants") who hold unsatisfied judgments against the Islamic Republic of Iran totaling $1,574,238,000 in compensatory damages, plus post-judgment interest.

3. These judgments arise from the following cases: Flanagan v. Islamic Republic of Iran, No. 10-cv-1643 (D.D.C.); Parhamovich v. Islamic Republic of Iran, No. 17-cv-00061 (D.D.C.); Schooley v. Islamic Republic of Iran, No. 17-cv-01376 (D.D.C.); Ackley v. Islamic Republic of Iran, No. 20-cv-00621 (D.D.C.); and Breezee v. Islamic Republic of Iran, No. 23-cv-03392 (D.D.C.).

4. Each of these judgments was entered against the Islamic Republic of Iran based on claims arising from acts of state-sponsored terrorism, including the June 25, 1996 Khobar Towers bombing in Saudi Arabia, the October 12, 2000 USS Cole bombing in Yemen, and the January 17, 2007 ambush in Baghdad, Iraq that killed American Andrea Parhamovich. Each judgment qualifies under section 201 of the Terrorism Risk Insurance Act of 2002.

5. The judgments in Flanagan, Parhamovich, Schooley, and Ackley have been served on Iran through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4). Service of the Breezee judgment is currently being effectuated through the U.S. Department of State.

6. To date, Iran has not paid any portion of any of the Ambush Claimants' judgments. The Ambush Claimants have received partial distributions through the United States Victims of State Sponsored Terrorism Fund, but their judgments remain substantially unsatisfied.

7. As has been credibly alleged in the Fritz Action and in various recent filings in this case, the 127,271 Bitcoin that constitute the Defendant Cryptocurrency in the instant action belong to the Iran and China Investment Development Group ("Iran-China Group"), doing business as Lubian.com or LuBian. See Fritz Action, ECF 70. The Iran-China Group is an agency or instrumentality of Iran. Subject to the proof of those allegations, its assets are blocked by operation of U.S. law. See Executive Order No. 13599, 77 Fed. Reg. 6659, 6659 (Feb. 5, 2012).

8. I was not aware that the defendant assets in this action might be property of an agency or instrumentality of the Islamic Republic of Iran until February 3, 2026. On that date, I learned of the allegations in Fritz v. Iran & China Inv. Dev. Grp., No. 1:25-cv-07093 (E.D.N.Y.), that the "Lubian" cryptocurrency mining operation referenced in the Government's complaint was operated by an agency or instrumentality of Iran. The original complaint in this action, filed October 14, 2025, did not identify the defendant assets as property of Iran or any Iranian entity.

9. Upon learning of the potential connection between the defendant assets and Iran, I promptly prepared and filed this verified claim on behalf of the Ambush Claimants.

10. The statements in the attached Notice of Corrected Verified Claim and Statement of Interest are true and correct to the best of my knowledge, information, and belief. Attached hereto as Exhibit 1 and incorporated in this Verification is the corrected list of the Ambush Claimants, including their names, underlying cases, and judgment amounts, which replaces Attachment A as described in Part VI of the Corrected Verified Claim.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on November 9, 2026, at Baltimore, Maryland.

/s/ Joshua M. Ambush
Joshua M. Ambush, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2026, I electronically filed the foregoing Ambush Claimants' Notice of Corrected Verified Claim and Statement of Interest, together with the Verification of counsel, Exhibit 1, and Exhibit 2, via CM/ECF for the United States District Court for the Eastern District of New York, which caused it to be served on all parties registered for CM/ECF, including counsel for the United States and counsel for the Six Claimants, in the above-captioned matter. On the same date I served a copy by first-class mail on the following claimants, whom the Court's Notice of Electronic Filing identifies as not receiving electronic notice: Connie Wilson, 8736 E 375 S, Lafayette, IN 47905; Corneliu Hristovschi, 5 Sewall Ave, Apt C3, Clifton, NJ 07011; and Ravi Anand, 33 W Ontario Street, #17F, Chicago, IL 60654.

/s/ Joshua M. Ambush
Joshua M. Ambush, Esq.