**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiffs,<br>v.<br>APPROXIMATELY 127,271 BITCOIN (BTC) PREVIOUSLY STORED AT THE VIRTUAL CURRENCY ADDRESSES LISTED IN ATTACHMENT A, AND ALL PROCEEDS TRACEABLE THERETO,<br><br>Defendants *In Rem*. | Civil Action No. 1:25-cv-05745 (RPK) |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM ON BEHALF OF CLAIMANTS WITH SUCCESSFUL JUDGMENTS AGAINST IRAN**

The Claimants with Successful Judgments Against Iran ("Claimants") are victims of state-sponsored terrorism who hold judgments against the Islamic Republic of Iran ("Iran") collectively equaling more than $1,000,000,000.00, including $422,181,328.00 in compensatory damages under 28 U.S.C. § 1605A[1], through the following actions:

- *Ewan, et al. v. Islamic Republic of Iran*, Case No. 17-1628-JDB (D.D.C.) ("*Ewan* Action");
- *Aronow, et al. v. Islamic Republic of Iran*, Case No. 18-cv-12001-GBD (S.D.N.Y.) ("*Aronow* Action");
- *Fuld, et al. v. Islamic Republic of Iran*, Case No. 20-cv-2444-RCL (D.D.C.) ("*Fuld* Action");
- *Estate of Judah Herzel Henkin, et al., v. Islamic Republic of Iran*, Case No. 1:18-cv-1273-RCL (D.D.C.) ("*Henkin* Action");

[1] Exhibit A lists all Claimants and the compensatory damages each has been awarded.

- *Shawn Kenny, et al., v. Islamic Republic of Iran*, Case No. 1:22-cv-03299-TNM (D.D.C.) ("*Kenny* Action");
- *Charyn F. Selig, et al., v. Islamic Republic of Iran*, Case No. 1:19-cv-02889-TNM (D.D.C.) ("*Selig* Action");
- *Estate of Max Steinberg, et al. v. Islamic Republic of Iran*, Case No. 17-cv-1910-RCL (D.D.C.) ("*Steinberg* Action");
- *Xiyue Wang, et al. v. Islamic Republic of Iran*, Case No. 22-cv-583-TJK (D.D.C.) ("*Wang* Action");
- *Ashton, et al. v. Islamic Republic of Iran*, Case No. 1:02-cv-06977 (S.D.N.Y.) ("*Ashton* Action");
- *Boothe, et al. v. Islamic Republic of Iran*, Case No. 22-1747 (D.D.C.) ("*Boothe* Action");
- *Namazi, et al. v. Islamic Republic of Iran*, Case No. 24-3506 (D.D.C.) ("*Namazi* Action").

Claimants have served their respective judgments on Iran through diplomatic channels under 28 U.S.C. § 1608(a)(4), have initiated such service through the U.S. Department of State, or have received an order authorizing enforcement of their judgments pursuant to 28 U.S.C. § 1610(c).[2]

The Claimants reviewed the complaint at ECF No. 1 in *Fritz v. Iran and China Investment Development Group d/b/a Lubian.com,* No. 1:25-cv-07093, pending in this District (the "*Fritz* Action"), which shows that the Defendant Cryptocurrency belongs to the Iran and China Investment Development Group ("Iran-China Group"). *Fritz* Action, ECF No. 1 at 53. The Claimants—victims of, and family members of victims killed or injured in, terrorist acts that Iran sponsored or carried out—learned of this proceeding only through the *Fritz* Action, after the Court's December 29, 2025 claim deadline had passed. The complaint does not trace the Defendant

[2] *See Ewan* Action, ECF No. 44; *Aronow* Action, ECF No. 28; *Fuld* Action, ECF No. 38; *Henkin* Action, ECF No. 61; *Kenny* Action, ECF Nos. 39-40; *Selig* Action, ECF No. 41; *Steinberg* Action, ECF No. 27; *Wang* Action, ECF No. 32; *Ashton* Action, ECF No. 1580; *Boothe* Action, ECF No. 44; *Namazi* Action, ECF No. 26.

Cryptocurrency to Iran. *See generally* ECF No. 1. It focuses on property seized from the Prince Holding Group, an international criminal enterprise, and mentions Iran only once, in describing Prince Holding Group affiliate Lubian. ECF No. 1 ¶ 16(u).

As this Court recognized, TRIA claimants' potential interests "were not apparent on the face of the government's complaint." Order dated Sept. 30, 2026 (the "Sept. 30 Order"). The link to Iran was first recognized by this Court in the Sept. 30 Order. Undersigned counsel then had to identify and resolve potential conflicts among the many Claimants across multiple separate actions before responsibly filing a verified claim on their collective behalf. That delay was neither willful nor tactical, and the Claimants promptly sought leave to file this Notice of Verified Claim ("Notice") once counsel completed that process.

As the plaintiffs in the *Fritz* Action allege, the Iran-China Group—which does business on the blockchain as Lubian.com or LuBian—is an agency or instrumentality of Iran that materially supported Iran's efforts to evade U.S. sanctions by mining cryptocurrency in Iran. *See Fritz* Action, ECF No. 1 ¶¶ 75–108. Under this scheme, Iran converts sanctioned oil and gas into electricity, which miners then use to generate cryptocurrency that Iran can spend outside the traditional global banking system. *Id.* ¶¶ 73–77.

Based on the evidence revealed in the *Fritz* Action, the Terrorism Risk Insurance Act ("TRIA"), Pub. L. 107-297, 116 Stat. 2322 (Nov. 26, 2002), codified at 28 U.S.C. § 1610 Note, gives the Claimants the right to attach and execute on the property of Iran and its agencies and instrumentalities—including the Iran-China Group—"[n]otwithstanding any other provision of law." The Claimants therefore assert their superior interest in as much of the Approximately 127,271 bitcoin previously stored at the virtual currency addresses listed in Attachment A, and all proceeds traceable to it (the "Defendant Cryptocurrency"), as they need to satisfy their outstanding compensatory damages judgments against Iran, plus post-judgment interest.[3] TRIA makes the

[3] Because the value of Bitcoin fluctuates daily, the Claimants cannot determine the amount of the Defendant Cryptocurrency needed to satisfy their respective judgments until the transfer or liquidation of the Defendant Cryptocurrency in satisfaction of those judgments.

Claimants' interest in the Defendant Cryptocurrency senior to any interest of the United States Government. In support of this Notice, the Claimants state as follows:

**I. The Claimants' Judgments Against Iran**

**A. The Claimants in the *Ewan* Action**

1. The Claimants in the Ewan Action include individuals who were injured in the 1983 bombing of the U.S. Embassy in Beirut ("Beirut Embassy Bombing") sponsored by Iran, their estates, and family members.

2. In 2020, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Ewan* Action suffered because of the Beirut Embassy Bombing.

3. The amount of compensatory damages awarded to the Claimants in the *Ewan* Action totals $11,659,570.00 without prejudgment interest. Claimants were also awarded $2,637,000.00 in punitive damages. *See Ewan* Action, ECF No. 39.

4. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Ewan* Action. The Claimants' judgment in the *Ewan* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**B. The Claimants in the *Aronow* Action**

5. The Claimants in the *Aronow* Action include individuals who were killed in the September 11, 2001 Terrorist Attack sponsored by Iran, as well as the spouses, parents, children, siblings, and estates of those individuals, including the estates of such spouses, parents, children, and siblings.

6. In 2019, the United States District Court for the Southern District of New York entered an order of judgment under 28 U.S.C. § 1605A as to liability and for partial final default judgments against Iran for the damages the Claimants in the *Aronow* Action suffered because of the September 11, 2001 Terrorist Attack.

7. The amount of compensatory damages awarded to the Claimants in the *Aronow* Action totals $95,604,376.00. *See Aronow* Action, ECF Nos. 22, 26.

8. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Aronow* Action. The Claimants' judgment in the *Aronow* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**C. The Claimants in the *Fuld* Action**

9. The Claimants in the *Fuld* Action include the Estate of Ari Fuld ("Mr. Fuld") and the family members of Mr. Fuld. Mr. Fuld was an American citizen who was murdered on September 16, 2018, near the Gush Etzion junction in Israel in a terrorist attack committed by HAMAS with Iran's sponsorship and material support.

10. In 2024, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Fuld* Action suffered because of the terrorist attack that killed Mr. Fuld.

11. The amount of compensatory damages awarded to the Claimants in the *Fuld* Action totals $47,812,737.00. The amount of punitive damages awarded to Claimants totals $143,438,211.00. *See Fuld* Action, ECF No. 29.

12. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Fuld* Action. The Claimants' judgment in the *Fuld* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**D. Claimants in the *Henkin* Action**

13. The Claimants in the *Henkin* Action include the family members of Eitam Simon Henkin ("Mr. Henkin"), and the estates of these family members. Mr. Henkin was an American citizen who was murdered on October 1, 2015, when he, his wife, and four children were driving past the town of Beit Furik in the West Bank of Palestine and HAMAS—with Iran's sponsorship and material support—killed Mr. Henkin and his wife.

14. In 2023, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Henkin* Action suffered because of the terrorist attack that killed Mr. Henkin.

15. The amount of compensatory damages awarded to the Claimants in the *Henkin* Action totals $22,500,000.00. The amount of punitive damages awarded to Claimants totals $67,500,000.00. *See Henkin* Action, ECF No. 52.

16. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Henkin* Action. The Claimants' judgment in the *Henkin* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

### E. Claimants in the *Kenny* Action

17. The Claimants in the *Kenny* Action are individuals who were injured in, or whose family members were killed in, the January 20–21, 2018 terrorist attack at the Intercontinental Hotel in Kabul, Afghanistan (the "Intercontinental Hotel Attack"), as well as the estates and family members of those victims. The Afghan Taliban carried out the Intercontinental Hotel Attack with the sponsorship and material support of Iran.

18. In 2024, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Kenny* Action suffered because of the Intercontinental Hotel Attack.

19. The amount of compensatory damages awarded to the Claimants in the *Kenny* Action totals $18,750,000.00. The amount of punitive damages awarded to Claimants totals $18,750,000.00. *See Kenny* Action, ECF No. 24.

20. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Kenny* Action. The Claimants' judgment in the *Kenny* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

### F. Claimants in the *Selig* Action

21. The Claimants in the *Selig* Action are individuals who were injured in, or whose family members were killed in, the terrorist attack at the Intercontinental Hotel in Kabul, Afghanistan, or the May 13–14, 2015 terrorist attack at the Park Palace Hotel in Kabul (the "Park Palace Hotel Attack"), as well as the estates and family members of those victims.

Like the Intercontinental Hotel Attack, the Park Palace Hotel Attack was carried out by the Afghan Taliban with the sponsorship and material support of Iran.

22. In 2021, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Selig* Action suffered because of the Intercontinental Hotel and Park Palace Hotel Attacks.

23. The amount of compensatory damages awarded to the Claimants in the *Selig* Action totals $68,022,627.00. The amount of punitive damages awarded to Claimants totals $68,022,627.00. *See Selig* Action, ECF No. 36.

24. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Selig* Action. The Claimants' judgment in the *Selig* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**G. Claimants in the *Steinberg* Action**

25. The Claimants in the *Steinberg* Action include the Estate of Max Steinberg ("Mr. Steinberg") and Mr. Steinberg's family members. Mr. Steinberg was an American citizen who was murdered on July 20, 2014, in a terrorist attack carried out by HAMAS with the sponsorship and material support of Iran.

26. In 2019, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Steinberg* Action suffered because of the terrorist attack that killed Mr. Steinberg.

27. The amount of compensatory damages awarded to the Claimants in the *Steinberg* Action totals $15,934,010.00. The amount of punitive damages awarded to Claimants totals $150,000,000.00. *See Steinberg* Action, ECF No. 19.

28. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Steinberg* Action. The Claimants' judgment in the *Steinberg* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**H. Claimants in the *Wang* Action**

29. The Claimants in the *Wang* Action include Xiyue Wang ("Mr. Wang"), who was wrongfully imprisoned and tortured in Iran's infamous Evin Prison for forty months (1,216 days), and Mr. Wang's family members.

30. In 2025, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Wang* Action suffered because of Iran's wrongful imprisonment and torture of Mr. Wang.

31. The amount of compensatory damages awarded to the Claimants in the *Wang* Action totals $29,885,283.00. The amount of punitive damages awarded to Claimants totals $29,885,283.00. *See Wang* Action, ECF No. 24.

32. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Wang* Action. The Claimants' judgment in the *Wang* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**I. Claimants in the *Ashton* Action**

33. The Claimants in the *Ashton* Action include individuals who were killed in the September 11, 2001 Terrorist Attack sponsored by Iran, as well as the spouses, parents, children, siblings, and estates of those individuals, including the estates of such spouses, parents, children, and siblings.

34. In 2019, the United States District Court for the Southern District of New York entered an order of judgment under 28 U.S.C. § 1605A as to liability and for partial final default judgments against Iran for the damages the Claimants in the *Ashton* Action suffered because of the September 11, 2001 Terrorist Attack.

35. The amount of compensatory damages awarded to the Claimants in the *Ashton* Action totals $12,500,000.00. *See Ashton* Action, ECF No. 1047.[4]

---

[4] The U.S. Department of State has initiated service of the judgment in the *Ashton* Action through diplomatic channels under 28 U.S.C. § 1608(a)(4). Other counsel handled service, and Claimants have not yet obtained proof of service. Claimants will promptly file that proof with the Court as a supplemental exhibit once they obtain it.

36. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Ashton* Action. The Claimants' judgment in the *Ashton* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**J. Claimants in the *Boothe* Action**

37. The Claimants in the *Boothe* Action include Captain Shastri Boothe ("Captain Boothe") and his minor child. Captain Boothe is an American citizen who served in Afghanistan as a member of the U.S. Army. On August 7, 2012, Captain Boothe was injured in a motor truck bomb terrorist attack committed by terrorists supported by Iran in Logar Province, Afghanistan.

38. In 2026, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Boothe* Action suffered because of a series of terrorist attacks carried out by Iran and its terrorist proxies, including the terrorist attack that severely injured Captain Boothe.

39. The amount of compensatory damages awarded to the Claimants in the *Boothe* Action totals $38,618,139.00. The amount of punitive damages awarded to Claimants totals $38,618,139.00. *See Boothe* Action, ECF No. 35.[5]

40. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Boothe* Action. The Claimants' judgment in the *Boothe* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**K. Claimants in the *Namazi* Action**

41. The Claimants in the *Namazi* Action include Mr. Siamak Namazi and Mr. Mohammad Baquer Namazi. Both Claimants are American citizens who were detained, arrested, taken hostage, and caused to be imprisoned on false charges by Iran. Mr. Siamak Namazi was held in Iran for more than eight years. Mr. Mohammad Baquer Namazi was held in Iran for more than six years.

---

[5] The U.S. Department of State has initiated service of the judgment in the *Boothe* Action through diplomatic channels under 28 U.S.C. § 1608(a)(4). Claimants will file proof of service with the Court once they receive it.

42. In 2026, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Namazi* Action suffered because of their arrest and false imprisonment, and the torture they suffered at the hands of agents of Iran.

43. The amount of compensatory damages awarded to the Claimants in the *Namazi* Action totals $60,894,586.00. The amount of punitive damages awarded to Claimants totals $60,894,586.00. *See Namazi* Action, ECF No. 21.[6]

44. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Namazi* Action. The Claimants' judgment in the *Namazi* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**II. The Defendant Cryptocurrency Belongs to Iran.**

45. When the United States Government filed its forfeiture complaint in this action on October 14, 2025, it did not trace the Defendant Cryptocurrency to Iran. *See* ECF No. 1, Complaint ("Forfeiture Compl."). The evidence in the *Fritz* Action, however, now shows that the Defendant Cryptocurrency belongs to an agency or instrumentality of Iran. As soon as the Claimants learned this, they promptly sought counsel to pursue their claims against Iran jointly.

46. Specifically, the plaintiffs in the *Fritz* Action presented extensive documentary and blockchain evidence—including careful analysis of hash rates, power capacity, and shipping records—demonstrating that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with Iran to build a large Bitcoin mine in Rafsanjan, Iran, to help Iran evade U.S. sanctions. *See generally Fritz* Action, ECF No. 1, Complaint.

47. Since the 1979 Iranian Revolution, the United States has imposed comprehensive sanctions on Iran to combat its capacity and willingness to sponsor terrorism. *See, e.g.*, Exec. Order

---

[6] The U.S. Department of State has initiated service of the judgment in the *Namazi* Action through diplomatic channels under 28 U.S.C. § 1608(a)(4). Claimants will file proof of service with the Court once they receive it.

No. 13599, 77 Fed. Reg. 6659, 6659 (Feb. 5, 2012) (blocking assets in which Iran or its agencies and instrumentalities have an interest). Over the last decade, Iran has made cryptocurrency mining a central part of its sanctions-evasion strategy. *See generally Fritz* Action, ECF No. 73, Declaration of Jessica Davis ("Davis Decl."). Cryptocurrency transactions bypass international banking controls, and mining lets Iran launder its substantial oil and gas reserves by converting them into electricity and then into cryptocurrency. *Id.* ¶¶ 21–22, 25–35, 62–65.

48. In 2020, a key part of Iran's cryptocurrency initiative was the massive crypto mining "farm" in the Rafsanjan Special Economic Zone in Kerman Province—which Iranian media touted as "the largest digital currency production unit in Iran." *Fritz* Action, ECF No. 72, Declaration of Avigdor Sason Cohen ("Cohen Decl.") ¶ 48. Once complete, the Rafsanjan facility ran more than 50,000 purpose-built, high-powered mining computers with the capacity to draw 175 MW of electrical power—as much power as New Orleans consumes. *Id.* ¶¶ 48–49.

49. The Iran-China Group built and operated the site in partnership with Iran. Cohen Decl. ¶¶ 26–70. As Iran-China Group Chairman Mohammad Hassan Ranjbar put it, the Iran-China Group's relationship with Iran was one of "mutual help." *Id.* Ex. 30.

50. Once the Rafsanjan mine began operating, the Iran-China Group mined under the pool label "LuBian," tagging itself as "lubian.com" in blockchain transactions.[7] Cohen Decl. ¶¶ 71–119.

51. In this action, the United States Government alleges a link between "Lubian" and several of the cryptocurrency addresses that once held the Defendant Cryptocurrency. Forfeiture Compl. ¶¶ 44–45. It also asserts—without explanation—that "[t]he Defendant Cryptocurrency was subsequently transferred in its entirety to multiple additional addresses." *Id.* ¶ 58.

52. In reality, the Iran-China Group, through LuBian, owned and controlled every original address that held the Defendant Cryptocurrency. Cohen Decl. ¶¶ 120–21.

[7] A pool "is the consolidation of computational power amongst a group of cryptocurrency miners" to enable more efficient mining. *Mining Pool*, https://crypto.com/en/glossary/mining-pool.

53. A white-hat hacker transferred the Defendant Cryptocurrency from the Iran-China Group's addresses to new addresses on December 28, 2020. Cohen Decl. ¶¶ 132–36.

54. After the hack, each wallet that held the Defendant Cryptocurrency immediately before the hack—i.e., each Iran-China Group wallet—sent the hacker a series of blockchain messages begging for the return of its cryptocurrency. Cohen Decl. ¶¶ 137–41. Each message from these hacked wallets bore the heading "MSG from LB"—i.e., a message from LuBian—and read: "To the whitehat who is saving our asset, you can contact us through 1228btc@gmail.com to discuss the return of asset and your reward." *Id.* ¶ 137.

55. Only a private key—a long alphanumeric sequence similar to a password—can unlock a cryptocurrency wallet. Whoever holds the private key holds—and can spend—the cryptocurrency in the wallet. Knowledge of the private key thus equals ownership of the cryptocurrency, a principle the crypto community captures in the adage "not your keys, not your crypto." Cohen Decl. ¶ 140. Because "no one but the person who physically has access to [the] device [where the private key is stored] … can transact on that user's behalf," *SEC v. Coinbase, Inc.*, 726 F. Supp. 3d 260, 305 (S.D.N.Y. 2024), "[o]wnership of bitcoin" depends on "a user's possession or knowledge of the private key," *United States v. Harmon*, 474 F. Supp. 3d 76, 82 (D.D.C. 2020).

56. Because only the hacked wallets' private keys could send messages from those wallets, the messages confirm that LuBian—and thus the Iran-China Group—owned and controlled all of the Defendant Cryptocurrency. Cohen Decl. ¶¶ 142–50; *see also Fritz* Action, ECF No. 70, Plaintiffs' Memorandum of Law in Support of Motion for Attachment ("*Fritz* Attachment Motion"), at 10, 17–19. On information and belief, the hacker later turned over the keys to the wallets holding the Iran-China Group's hacked cryptocurrency to the United States Government. *See* Forfeiture Compl. ¶ 58.

57. Property taken without consent "still belongs to the original owner," so the hacker's diversion of the Defendant Cryptocurrency from the Iran-China Group's wallets did not change its ownership. *Bakalar v. Vavra*, 619 F.3d 136, 141 (2d Cir. 2010); *accord Solomon R. Guggenheim*

*Found. v. Lubell*, 77 N.Y.2d 311, 317 (Ct. App. 1991). Nor does this forfeiture action "transfer ownership of the [Bitcoin]" to the United States Government unless and until "there is a final judgment of forfeiture." *Counihan v. Allstate Ins. Co.*, 25 F.3d 109, 112 (2d Cir. 1994); *accord United States v. 500 Delaware St.*, 868 F. Supp. 513, 518 (W.D.N.Y. 1994), *aff'd*, 113 F.3d 310 (2d Cir. 1997). The Defendant Cryptocurrency therefore still belongs to the Iran-China Group.

58. Relying on the allegations in the *Fritz* Action, the Claimants now submit this Notice to assert their interest in the Defendant Cryptocurrency.[8]

## III. Under TRIA, Claimants Have a Senior Interest in the Defendant Cryptocurrency.

59. At this stage of a forfeiture action, the Claimants need only assert a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (citation omitted). "[W]hether [they] ultimately prove[ ] the existence of that interest is a question for a later stage in the proceedings." *Id.* at 110 (citation omitted). Here, the allegations in the *Fritz* Action—which the other terrorism-victim claimants in this action summarize in their Notices of Verified Claims—give the Claimants far more than a "facially colorable interest" in the Defendant Cryptocurrency.

60. The Claimants are judgment creditors of Iran because of Iran's acts of state-sponsored terrorism. Because the Iran-China Group was or is an agency or instrumentality of Iran, as the *Fritz* plaintiffs allege, TRIA entitles the Claimants to execute on the Defendant Cryptocurrency to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). The Claimants therefore hold a possessory interest in the Defendant Cryptocurrency, which entitles them to bring these claims.

61. TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C.

[8] Exhibit B contains the Verification of Claimants' Claims.

§ 1610 Note. TRIA's cornerstone is its broad "notwithstanding" clause, which aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391–92 (2009) (Kennedy, J., concurring). That clause "mak[es] plain that the force of the [statute] extends everywhere" and "supersede[s] all other laws." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (citation omitted). Because TRIA expressly overrides conflicting laws, it necessarily overrides "the civil-forfeiture statute." *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

62. Because the Claimants satisfy every requirement of TRIA, their interest in the Defendant Cryptocurrency is superior to the claims of the United States Government and all other non-TRIA claimants in this forfeiture action. First, as explained above, the Claimants hold judgments for compensatory damages against Iran based on acts of terrorism under 28 U.S.C. § 1605A. Second, Iran is a "terrorist party" because the United States has designated it a state sponsor of terrorism under the Export Administration Act of 1979. *See* TRIA § 201(d)(4); Executive Order No. 13599, 77 Fed. Reg. 6659 (Feb. 5, 2012). Third, as the *Fritz* plaintiffs allege, the Iran-China Group operated as Iran's agency or instrumentality by materially helping Iran evade U.S. sanctions and by laundering Iran's energy resources through cryptocurrency mining at Iran's direction. *See Fritz* Attachment Motion, at 13–17 (Dec. 28, 2025); *see also Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 135 (2d Cir. 2016). Finally, TRIA defines "[b]locked assets" to include "any asset seized or frozen by the United States" under the International Emergency Economic Powers Act. TRIA § 201(d)(2)(A).

63. The United States Government has used its authority under that statute to block all Iranian property in the United States, including the property of Iran's agencies and instrumentalities. 31 C.F.R. §§ 560.211, 594.201(a)(5); *Kirschenbaum*, 830 F.3d at 120. As a result, if the Iran-China Group is an agency or instrumentality of Iran, all of its property qualifies as a blocked asset under TRIA. *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th

91, 98 n.6 (2d Cir. 2022). Because the Defendant Cryptocurrency belongs to the Iran-China Group, it is a blocked asset on which the Claimants may execute under TRIA.

64. Under 18 U.S.C. § 983(a) and Rule G, the Claimants assert a protective claim against as much of the Defendant Cryptocurrency—as the property of an agency or instrumentality of Iran—as they need to satisfy the outstanding compensatory damages Iran owes them under their judgments, plus post-judgment interest, measured by the value of the Defendant Cryptocurrency on the date the Court values it for purposes of judgment. The Claimants' claim is senior to the United States Government's claim.

65. Regardless of the United States Government's forfeiture efforts, the Claimants reserve all rights and remedies available at law and in equity to enforce their interest in the Defendant Cryptocurrency.

66. An authorized signatory for the Claimants has verified this claim under penalty of perjury in the attached (or separately filed) declaration under 28 U.S.C. § 1746.

Dated: November 20, 2026

Respectfully submitted,

*<u>/s/ Andrew B. Kratenstein</u>*

Andrew B. Kratenstein
akratenstein@mcdermottlaw.com
McDermott Will & Schulte LLP
One Vanderbilt Ave.
New York, NY 10017
Phone: (212) 547-5695
Fax: (646) 224-8622

Michael Dockterman (*pro hac vice forthcoming*)
mdockterman@mcdermottlaw.com
McDermott Will & Schulte LLP
444 W. Lake St, Suite 4000
Chicago, IL 60606
Phone: (312) 372-2000
Fax: (312) 984-7700

*Attorney for Claimants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2026, I electronically filed the foregoing Notice of Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem* and its attachments, including Verification of Claimants' Claims, via CM/ECF for the United States District Court for the Eastern District of New York and thereby served it on all parties registered for CM/ECF, including attorneys for the United States Government, in this case.

Dated: November 20, 2026

/s/ *Andrew B. Kratenstein*
Andrew B. Kratenstein